**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **KENNETH EUGENE BARRETT,** | ) | |
| | ) | |
| *Movant,* | ) | |
| | ) | |
| | ) | **Case No. 6:09-cv-00105-JHP** |
| **v.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Respondent.* | ) | |

**MOTION TO DISQUALIFY AND RECUSE UNITED STATES DISTRICT JUDGE
JAMES H. PAYNE FROM FURTHER PARTICIPATION IN THIS MATTER**

**TABLE OF CONTENTS**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     APPLICABLE LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.      Constitutional Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.      Statutory Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

                1.      28 U.S.C. § 455(a):  the appearance of bias . . . . . . . . . . . . . . . . . . . . . . 3

                2.      28 U.S.C. § 455(b): actual bias &disqualifying knowledge
                        or association . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        C.      The law requires heightened need for reliability in death penalty cases . . . . . . . . 5

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      Judge Payne's Conduct Provides Reason to Believe he Harbors Bias or
                Prejudice against Mr. Barrett or in Favor of the Government, and Would
                Cause Any Fully Informed Person to Question his Impartiality in this Matter . . . 6

                1.      Judge Payne's ex parte communications with prosecutors and
                        the necessity of adjudicating claims based on those communications
                        constitute grounds for disqualification and recusal . . . . . . . . . . . . . . . . . 6

                2.      Judge Payne's administrative decisions and the necessity of
                        adjudicating claims involving those decisions constitute grounds for
                        disqualification and recusal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                3.      Judge Payne's independent investigation of facts underlying the
                        denial of Mr. Barrett's motion for tolling constitutes grounds for
                        disqualification and recusal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                4.      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        B.      Recusal is Required Under 28 U.S.C. § 455(b) Due to Judge Payne's Status
                as a Witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.     REQUEST FOR EVIDENTIARY HEARING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

### FEDERAL CASES

Aetna Life Insurance v. Lavoie, 475 U.S. 813 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Bracy v. Schomig, 286 F.3d 406 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

Brokaw v. Mercer County, 235 F.3d 1000, 1025 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 4

Gardner v. Florida, 430 U.S. 349 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Lankford v. Idaho, 500 U.S. 110 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Liteky v. United States, 510 U.S. 540 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Mayberry v. Pennsylvania, 400 U.S. 455 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Murchison, 349 U.S. 133 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 13, 21

Murchu v. United States, 926 F.2d 50 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Nichols v. Alley, 71 F.3d 347 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Spaziano v. Florida, 468 U.S. 447 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Taylor v. Hayes, 418 U.S. 488 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21

Tumey v. Ohio, 273 U.S. 510 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. Cooley, 1 F.3d 985 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. Gonzalez, 150 F.3d 1246 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v. Greenspan, 26 F.3d 1001 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ward v. Village of Monroe, 409 U.S. 57 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Woods v. Georgia, 450 U.S. 261 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Woodson v. North Carolina, 428 U.S. 280 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## FEDERAL STATUTES

18 U.S.C. § 3432 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 10, 11

18 U.S.C. § 3005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

18 U.S.C. § 3599 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

28 U.S.C. § 144 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 26

28 U.S.C. § 455 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17

## MISCELLANEOUS

ABA Model Code of Judicial Conduct, Canon 2, Rule 2.9(C) . . . . . . . . . . . . . . . . . . . . . . . . 17

Elizabeth G. Thornburg, *The Curious Appellate Judge: Ethical Limits on
Independent Research*, 28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA


KENNETH EUGENE BARRETT,        )
                               )
            *Movant,*          )
                               )
                               )        **Case No. 6:09-cv-00105-JHP**
v.                             )
                               )
UNITED STATES OF AMERICA,      )
                               )
            *Respondent.*      )


**MOTION TO DISQUALIFY AND RECUSE UNITED STATES DISTRICT JUDGE
JAMES H. PAYNE FROM FURTHER PARTICIPATION IN THIS MATTER**

COMES NOW Kenneth Eugene Barrett, by and through his undersigned counsel, and,

pursuant to 28 U.S.C. § 455, and the Fifth, Sixth, Eighth and Fourteenth Amendments to the

United States Constitution, moves for an order disqualifying and recusing Hon. James H. Payne

from further participation in this case. The grounds for this motion and supporting legal authority

are set forth as follows:

## I.  INTRODUCTION

On March 16, 2009, Mr. Barrett filed a motion pursuant to 28 U.S.C. § 2255 for collateral

relief, including vacating, setting aside and/or correcting his sentence.  Docs. 1 & 2 ("Motion to

Vacate").  Among the grounds set forth in his motion, Mr. Barrett asserts that the trial court,

presided over by Judge James H. Payne, directly violated his constitutional and statutory rights in

ways that include violations of rules of judicial conduct.  In addition, Mr. Barrett contends that

Judge Payne is a material witness to many of the facts and circumstances that comprise the basis

1

of various other claims set forth by Mr. Barrett, including Mr. Barrett's claims of prosecutorial misconduct and his claims of ineffective assistance of counsel.  Accordingly, Judge Payne is either the subject of or a potential material witness to facts that must be considered in evaluating Mr. Barrett's claims and, as such, Judge Payne is disqualified, and must recuse himself, from making any rulings in these proceedings.

Additionally, prior to the filing of his Section 2255 Motion, Mr. Barrett filed a Motion for Equitable Tolling in Case No. 6:04-CR-00115, requesting that the trial court toll the time period for the filing of the Motion to Vacate.  In considering that motion, Judge Payne violated the canons of judicial ethics by conducting an independent investigation on the internet of information he later relied upon to deny relief without giving Mr. Barrett prior notice or an opportunity to be heard.

Whether these acts are considered individually or collectively, any reasonable person fully informed of the law and facts, at a minimum, would question Judge Payne's impartiality.

## II.  APPLICABLE LAW

### A.     Constitutional Authority

The fair trial guarantees of the Due Process Clause of the Fifth Amendment encompass a litigant's right to have "a neutral and detached judge" preside over judicial proceedings.  *Ward v. Village of Monroe,* 409 U.S. 57, 62 (1972). In *In re Murchison,* 349 U.S. 133 (1959), the Supreme Court has stated:

> A fair trial in a fair tribunal is a basic requirement of due process.
> Fairness of course requires an absence of actual bias. But our
> system of law has always endeavored to prevent even the
> probability of unfairness. . . . Such a stringent rule may sometimes
> bar trial by judges who have no actual bias and who would do their

2

> very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice."

*Id.* at 136 (citations omitted).

So important is this constitutional guarantee that its denial is not subject to the harmless error rule. *See, e.g., Tumey v. Ohio,* 273 U.S. 510 (1927); *Bracy v. Schomig,* 286 F.3d 406, 414 (7th Cir. 2002) ("There is no harmless error analysis relevant to the issue of judicial bias.").

**B.     Statutory Authority**

*1.     28 U.S.C. § 455(a):  the appearance of bias*

Section 455(a) is broader than 28 U.S.C. § 144 and Section 455(b), providing that disqualification of a United States judge is warranted not only when there is actual bias or prejudice but also when "the impartiality of the judge might reasonably be questioned."  The goal of Section 455(a) is to avoid even the appearance of partiality.  *See Nichols v. Alley,* 71 F.3d 347, 351 (10th Cir. 1995).  "The test in this circuit is 'whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.'" *United States v. Cooley,* 1 F.3d 985, 993 (10th Cir. 1993) (citations omitted); *see also United States v. Greenspan,* 26 F.3d 1001, 1005 (10th Cir. 1994) (the statute imposes on the trial judge "a continuing duty to ask himself what a reasonable person, knowing all the relevant facts, would think about his impartiality").

Whether recusal is required is determined by an objective standard that considers what a reasonable person might believe.  As summarized by the Supreme Court:

> [W]hat matters is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal was

required [pursuant to § 455(a)] whenever impartiality might be questioned.

*Liteky v. United States,* 510 U.S. 540, 548 (1994).

### 2.    28 U.S.C. § 455(b): actual bias &disqualifying knowledge or association

Section 455 (b)(1) of the Judicial Code provides:

(b) [A judge] shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . .

The first clause of Section 455(b)(1) parallels 28 U.S.C. § 144, and the standard for recusal is similar:  whether a reasonable person would be convinced that the judge was biased. *See Brokaw v. Mercer County,* 235 F 3d 1000, 1025 (7th Cir. 2000).  Recusal under this statute "is required only if actual bias or prejudice is proved by compelling evidence." *Id.*  However, the section is proposed in the disjunctive, requiring disqualification if either bias or personal knowledge of disputed facts exists.

Section 455 (b)(1) is distinct from Section 144 in that its provisions are applicable to all justices, judges and magistrates and places the obligation to identify the existence of these grounds upon the judge, rather than requiring recusal only in response to a party affidavit as in Section 144.  *See Liteky,* 510 U.S. at 548.

A judge must also disqualify himself in the event he has been or will be a witness in the case in controversy.  Section 455(b)(3) provides that a judge shall disqualify himself "[w]here he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the

4

particular case in controversy." Along similar lines, Section 455(b)(5)(iv) states that a judge should disqualify himself when he "[i]s to the judge's knowledge likely to be a material witness in the proceeding."

**C.    The law requires heightened need for reliability in death penalty cases**

Death penalty cases are significantly different from ordinary felony cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. *Woodson v. North Carolina,* 428 U.S. 280, 305(1976); *see also Gardner v. Florida*, 430 U.S. 349, 357-58 (1977) ("From the point of view of society, the action of the sovereign in taking the life of one of its citizens also differs dramatically from any other legitimate state action. It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion."); *Spaziano v. Florida,* 468 U.S. 447, 468 (1984) (Stevens, J., concurring in part and dissenting in part) ("because of its severity and irrevocability, the death penalty is qualitatively different from any other punishment and hence must be accompanied by unique safeguards"). The judge's role under federal law literally gives the power of life and death. Recusal issues are treated differently in capital cases. *See, e.g., Bracy v. Schomig,* 286 F.3d 406, 418 (7th Cir. 2002) ("In evaluating [the trial judge's] rulings at the penalty phase of this proceeding, we are again mindful that death is indeed different.")

### III.  ARGUMENT

This motion presents several grounds for Judge James H. Payne being disqualified from this case. The grounds include that Judge Payne has demonstrated bias, or the appearance of

bias, against Mr. Barrett or in favor of the Government in several ways, and that Judge Payne is a material witness to events that occurred off the record and that are at issue in Mr. Barrett's claims. These circumstances are individually or collectively sufficient to disqualify Judge Payne and require him to recuse himself without taking further action in this case.

**A.** **Judge Payne's Conduct Provides Reason to Believe he Harbors Bias or Prejudice against Mr. Barrett or in Favor of the Government, and Would Cause Any Fully Informed Person to Question his Impartiality in this Matter**

    *1.*      *Judge Payne's* ex parte *communications with prosecutors and the necessity of adjudicating claims based on those communications constitute grounds for disqualification and recusal*

Claim 1 of Mr. Barrett's Motion to Vacate (Doc. 2) raises allegations about the conduct of the trial judge James H. Payne both in his judicial and administrative capacities. Doc. 2 at 17-42. Mr. Barrett hereby incorporates by specific reference the averments made on pages 17 through 42 of his Motion to Vacate and all exhibits cited therein. The relevant allegations are based on witnesses' accounts of statements Judge Payne made off the record, and documents and transcripts that are part of the record. The constitutional and statutory violations alleged in Claim 1 stem from Judge Payne's administrative and *ex parte* conduct, not his judicial rulings.

Evidence obtained by Mr. Barrett's post-conviction counsel gave rise to the following allegations that are relevant to the instant Motion:

    (a) that on September 13, 2005, Judge Payne engaged in improper *ex parte* communications with prosecutors which included giving prosecutors the benefit of (1) the court's independent legal research into the application of 18 U.S.C. § 3432 to Mr. Barrett's case, (2) the court's view that the Government's motion for a protective order

6

lacked merit, (3) knowledge that the court would find merit in a defense request for a

continuance, and (4) advance notice of a potential violation of Federal Rule of Evidence

404(b);

(b) that during the *ex parte* conference on September 13, 2005, prosecutors

informed Judge Payne that they were aware of a witness who when questioned would not

corroborate claims of the Government's trial witness Charles "Monk" Sanders (Tr.

9/13/05 Hr'g at 14, 17);

(c) that later on September 13, 2005, Judge Payne, in describing the content of his

*ex parte* conversation with prosecutors to Mr. Barrett's counsel, misrepresented the

conversation by omitting information important to the defense;

(d) that Judge Payne concealed the full extent of his *ex parte* communications

with prosecutors – including his statements that the Government lacked grounds for

keeping information from the defense – with the knowledge that the Government wanted

to delay revealing that information for as long as possible and that the Government

wanted to obtain concessions from the defense before revealing the information;

(e) that Judge Payne continued to conceal the full extent of his *ex parte*

communications with prosecutors after he observed Mr. Barrett's counsel forego the

pursuit of remedies such as a continuance that Judge Payne anticipated would be needed

by the defense;

(f) that Judge Payne concealed from the defense the existence of the impeachment

witness described to him during the *ex parte* conference even after Sanders testified to the

claims the witness could not corroborate.

Claim 5 of Mr. Barrett's Motion to Vacate asserts that his constitutional and statutory rights were violated by the suppression of evidence that could have been used to impeach prosecution witnesses, including Monk Sanders.  Mr. Barrett hereby incorporates by specific reference the allegations of Claim 5 and all exhibits cited therein.  Judge Payne's failure to disclose the content of prosecutors' *ex parte* communications with him makes him complicit in the suppression of evidence.

The American Bar Association's Model Code of Judicial Conduct ("Model Rules") provides the following:

> A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter, except as follows:
>
> [¶] When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:
>
> (a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; and
>
> (b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.

Canon 2, Rule 2.9.  Judge Payne's conduct on September 13, 2005 violated this rule.

Judge Payne called the *ex parte* hearing for the purpose of addressing the Government's motion for a protective order.  Tr. 9/13/2005 Hr'g at 2.  It appears from the transcript that the *ex*

8

*parte* communications took place in Judge Payne's chambers.[1]  The Government's motion sought approval for prosecutors previously redacting from the Government's witness list the names and contact information of seven witnesses.  While it may be that Judge Payne believed the *ex parte* conference was necessary for "emergency purposes," ABA Model Rule 2.9, what transpired during the hearing shows Judge Payne saw no emergency, and, in any event, that he permitted the discussion to include matters of substance about which he did not inform the defense and to which he gave Mr. Barrett no opportunity to respond.

At the beginning of the hearing, Judge Payne informed the prosecutors that he saw no merit in the written motion where the Government had relied upon the court's prior orders that Mr. Barrett be restrained with an electric shock belt and that the jury be anonymous.  Tr. 9/13/05 Hr'g at 3-4.  He stated that these rulings were not based upon concerns about Mr. Barrett being dangerous.  *Id.* at 4.  Towards the end to the hearing, after he gave prosecutors an opportunity to present additional factual support for the Government's motion, Judge Payne specifically and repeatedly emphasized that the Government had no evidence of any overt act by any person that would suggest the witnesses were in danger.  *Id.* at 20.  The transcript thus gives no indication that Judge Payne might have granted the Government's motion.

The transcript also shows Judge Payne "address[ed] substantive matters" beyond the immediate purpose of the Government's motion.  Model Rule 2.9.  At the end of the *ex parte* conference Judge Payne said "there is 404(b) material obviously in the proposed motion, it appears to me," Tr. 9/13/05 Hr'g at 22, referring to Federal Rule of Evidence 404(b), which

---

[1] At the conclusion of the *ex parte* conference, Judge Payne stated that they would "proceed with jury selection," and "I'll see you downstairs."  Tr. 9/13/2005 Hr'g at 23.

9

would have required the Government to "provide reasonable notice in advance of trial."  The

prosecutor agreed that Rule 404(b) matter "appears to be implicit" in the information provided in

the motion for a protective order.  *Ibid.*  Then the prosecutor offered a rationale for not providing

notice, and Judge Payne said he would "take this matter under advisement" before calling the

conference to an end.  *Id.* at 23.  But that was not the only substantive matter addressed in the *ex*

*parte* hearing.

During the *ex parte* hearing, Judge Payne invited the prosecutors to proffer additional

grounds for a protective order beyond the matter set forth in the written motion.  Tr. 9/13/05 Hr'g

at 13, 19 (Judge Payne:  "what evidence amy I going to be furnished to demonstrate that these

people are in danger").  Assistant United States Attorney Michael Littlefield attempted to

persuade Judge Payne that Mr. Barrett posed a danger to witnesses by telling about an interview

he conducted with a female witness.  Littlefield told Judge Payne that Sanders, the confidential

informant, had been in a woman's apartment when she received a telephone call.  Sanders

claimed that although the woman held the receiver he could hear the voice on the other end and

recognized it as Mr. Barrett's voice calling from the jail.  Sanders claimed Mr. Barrett said

something to the woman about finding the identity of the confidential informant and doing harm

to him.  Littlefield told Judge Payne he interviewed the woman Sanders named, and she did not

confirm his story, but, Littlefield added, he believed she was afraid.  Tr. 9/13/05 Hr'g at 14, 17.

At the conclusion of this presentation Judge Payne summed up the prosecution's evidence

as follows:

> . . . what you are telling me is nothing  –  you have no evidence of
> anyone being threatened that is on your witness list now. You are
> saying if we list them, we are afraid they will be threatened?

10

Tr. 9/13/05 Hr'g at 19.

Based on his statements during the *ex parte* hearing, Judge Payne believed at the time, that cases interpreting 18 U.S.C. § 3432 gave Mr. Barrett the legal right to be informed of the Government's witnesses. Tr. 9/13/05 Hr'g at 4-5. Judge Payne's statements also indicated he saw no merit in the Government's motion for an order permitting those witnesses' identities to be retained under seal. *Id.* at 4-5, 7, 13 & 19-20. Judge Payne learned from the prosecutors' *ex parte* communications that they believed the Government would "gain a procedural, substantive, or tactical advantage," Model Rule 2.9, if the motion for a protective order were not simply denied, and the Government was permitted to pursue negotiations for concessions from the defense in exchange for disclosure. Judge Payne also permitted the Government the tactical advantage of making *ex parte* representations regarding the defense attorneys' alleged view of the law. Tr. 9/13/05 Hr'g at 7. At the conclusion of the *ex parte* hearing, Judge Payne failed "promptly to notify all other parties of the substance of the ex parte communication," Model Rule 2.9, and consequently failed to give Mr. Barrett an opportunity to respond.

Following the *ex parte* conference, the court held further proceedings with defense counsel present. At the beginning of these proceedings the prosecutor sought guidance from the Judge Payne regarding "where we were when we stopped" the *ex parte* conference. Tr. 9/13/05 Hr'g at 26. Judge Payne said they had been discussing "security issues." *Ibid.* He said, "it sounded like there had been some discussion with defense counsel. And that's about as much as the Court knows."[2] *Ibid.* The Court did not describe the discussion of § 3432, the prosecutor's

---

[2] Immediately after this misleading characterization of the *ex parte* conference, and on the basis of that characterization, the prosecutor withdrew opposition to having the transcript remain under seal. Tr. 9/13/05 Hr'g at 26.

11

representations regarding the defense attorney's view of the law, the court's rejection of the written grounds in the Government's motion, the prosecutors' factual proffer, including the information about Monk Sanders, or the discussion of Rule 404(b).

Most importantly, Judge Payne did not reveal his understanding that the Government's witnesses were so important that the defense would likely request, and be entitled to, a continuance. Rather than ensure that the Government gained no procedural, substantive, or tactical advantage from the *ex parte* communication, Judge Payne permitted the defense to agree to concessions from the Government – including further delay – before gaining access to information about the witnesses.

On September 14, 2005, after jury selection proceedings ended, the court raised the issue of the unidentified witnesses. The United States Attorney informed the court that the Government and Mr. Barrett's counsel had reached an agreement that the witnesses' names, contact information, criminal histories and (allegedly) promises made to them would be revealed the following Monday. R. 840. The United States Attorney further advised the court that the defense would, possibly, have access to some of the witnesses at the prosecutor's office. R. 841. defense counsel Roger Hilfiger stated that he had no objection to the arrangement, "based on what we talked about yesterday." *Ibid.* The court then stated that this would make a "clear record" and the parties' "announcement . . . resolves everything that is under seal." R. 843.

The record thus shows that Judge Payne's violation of Model Rule 2.9 on September 13 and 14, 2005, provided the prosecution with advantages and Mr. Barrett with disadvantages, and that Judge Payne was aware of these trade-offs when he concealed the full extent of his *ex parte* conference. Any reasonable person informed of these circumstances would question Judge

12

Payne's impartiality as regards Mr. Barrett's position in this case.  On the basis of this record, Judge Payne is disqualified from presiding in this case, and he must recuse himself.

At a minimum, Judge Payne is disqualified from adjudicating Claims 1 and 5 of Mr. Barrett's Motion to Vacate due to his own conduct being at issue.  Proceeding after the *ex parte* hearing without giving Mr. Barrett notice of the court's intentions or the bases for its (in)action with respect to the Government's motion violated Mr. Barrett's right to due process.  *Cf. Lankford v. Idaho*, 500 U.S. 110 (1991).  This is not a question of the correctness of a ruling that might be reversed by a higher court, but whether Judge Payne engaged in conduct that could subject him to disciplinary proceedings and public obloquy.  Any reasonable person fully informed of these circumstances would doubt that Judge Payne, or any other judge, could impartially adjudicate the propriety of his own conduct.  *In re Murchison*, *supra*, 349 U.S. at 136. It would violate Mr. Barrett's right to due process in these proceedings for Judge Payne to continue to decide matters in this case.  *Aetna Life Ins. v. Lavoie*, 475 U.S. 813, 825 (1986).

### 2. *Judge Payne's administrative decisions and the necessity of adjudicating claims involving those decisions constitute grounds for disqualification and recusal*

A judge is required to recuse himself "[w]here he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy."  28 U.S.C. § 455(b)(3).  Several claims in Mr. Barrett's Motion to Vacate raise constitutional and statutory violations stemming in whole or in part from decisions Judge Payne made in an administrative capacity under the Criminal Justice Act.  Judge Payne's prior administrative decisions express opinions prejudging the merits of the relevant claims.

Claim 1 asserts in relevant part that Judge Payne's administrative decisions to deny Mr. Barrett's counsel access to investigative and expert assistance encroached upon the constitutionally and statutorily protected independence of defense counsel.  Claim 2 asserts in relevant part that Mr. Barrett's trial counsel were ineffective in various ways including lack of preparation and a failure to secure expert and investigative assistance.  Claim 3 asserts in relevant part that Mr. Barrett was denied his constitutional and statutory right to expert and investigative assistance due to the budgeting decisions Judge Payne made prior to trial.  Mr. Barrett hereby incorporates by specific reference the averments made on pages 17 through 247 of his Motion to Vacate (Doc. 2) and all exhibits cited therein.

Judge Payne's opinions expressed in his administration of funds under the Criminal Justice Act cannot be separated from the issues that must be decided in Mr. Barrett's claims.  For example, in Claims 2 and 3 Mr. Barrett alleges the outcome of the trial is unreliable because his trial counsel unreasonably failed to challenge the "expert" testimony of Iris Dalley and her "reconstruction" of the crime scene.  Judge Payne denied Mr. Barrett's counsel access to funds necessary to have a crime scene reconstruction expert assist in challenging Dalley's testimony.  Although Judge Payne would permit counsel to consult with an expert on a limited basis, he denied counsel's request for funds to have a defense expert travel to Oklahoma where he could observe the Government's expert's testimony and advise counsel about its shortcomings.  In denying these funds, Judge Payne advised Mr. Barrett's counsel that he had never permitted a crime scene reconstruction expert to testify.  Order filed 3/18/05 at 3 in Case No. 04-cr-115-JHP.  He later permitted the Government to present such testimony.  R. 3154-3484.

14

Section 455(b)(3), on its face, applies to actions a judge carried out in something other than a judicial capacity. Judge Payne's decisions regarding assistance to the defense were administrative, not judicial. As the Court of Appeals for the Tenth Circuit has said, "the court essentially acts in an administrative, not a judicial, capacity when approving voucher requests and related motions for trial assistance." *United States v. Gonzalez*, 150 F.3d 1246, 1255 (10th Cir. 1998). While "grounds for a later appeal might be created by the denial of funds for expert witnesses, investigators, or other services relating to an adequate defense," the court involved in creating that record "at most is acting in a quasi-judicial capacity in the CJA process." *Ibid*.

In the course of his administrative duties Judge Payne expressed distrust of John Echols, Mr. Barrett's former counsel, whose requests for investigative and expert assistance are now at issue. In Claims 1, 2, and 3, Mr. Barrett asserts that Mr. Echols made reasonable requests for expert assistance and other resources. Judge Payne's responses to those requests included implicit and explicit attacks on Mr. Echols. Judge Payne's letter to Mr. Echols dated February 22, 2005, implies that Mr. Echols was seeking to enrich himself through his representation of Mr. Barrett. Exh. 65 to Mot. to Vacate. Judge Payne's order in response to Mr. Echols motion to withdraw accuses Mr. Echols of violating court orders requiring detailed descriptions of tasks for budget requests. Order in Case No. 04-cr-115-JHP filed 5/5/05 at 4. Judge Payne did not impose the same requirements on Roger Hilfiger, whose representation of Mr. Barrett is the subject of Claim 2. Judge Payne personally nominated Mr. Hilfiger to represent Mr. Barrett over the recommendations of two Federal Defenders who recommended another attorney. Exhs. 34 & 67 to Mot. to Vacate.

15

Mr. Barrett alleges, *inter alia*, that Mr. Hilfiger unreasonably failed to secure the assistance of experts and other forms of evidence.  Mr. Barrett's pleadings demonstrate prejudice in part through the opinions of witnesses whose expertise parallels that of the experts Mr. Echols tried to retain.  Judge Payne's prior rulings on Mr. Echols's budget requests create a source of bias.  Judge Payne, through his budget rulings, communicated to trial counsel that he believed Mr. Echols's requests were unreasonable.  In that respect Judge Payne has prejudged issues that arise in Mr. Barrett's claims.

Under analogous circumstances where a relationship of distrust or animosity developed between counsel and the court, the Supreme Court has required judges to recuse themselves.  In *Taylor v. Hayes*, 418 U.S. 488, 503 (1974), the Court concluded that the case of an attorney accused of contempt had to be heard by a different judge than the one who initially brought the charges because the record showed the judge had "an unfavorable personal attitude toward petitioner, his ability, and his motives."  418 U.S. at 501.  Similarly, in *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971), the Court held that the trial judge should have recused himself and permitted another judge to decide the issue of contempt because, during the course of the dispute between the contempt and the court, "marked personal feelings were present on both sides."  400 U.S. at 464.  Judge Payne's statements on the record reflect both marked dissatisfaction with Mr. Echols as an attorney and marked personal regard for Mr. Hilfiger.

In sum, Judge Payne's administration of the Criminal Justice Act, his interpretation of the Judicial Conference's CJA Guidelines, and his expressed attitude towards Mr. Barrett's various counsel reflect prejudgment of the issues presented in Claims 1, 2, and 3.  Judge Payne, in his administrative decisions, expressed the opinion that it was not necessary for trial counsel to

16

conduct the investigation and preparation for trial that Mr. Barrett asserts in Claim 2 was

reasonably necessary under the circumstances and the prevailing norms of capital defense

practice.  Any reasonable person fully apprised of the circumstances would question Judge

Payne's impartiality in adjudicating the affects of his own administrative decisions, particularly

where those decisions expressly prejudged the question whether certain areas of investigation or

expert assistance were necessary.  It would be a violation of Mr. Barrett's due process rights for

Judge Payne to adjudicate the affects of his own administrative decisions.

> **3.      *Judge Payne's independent investigation of facts
> underlying the denial of Mr. Barrett's motion for tolling
> constitutes grounds for disqualification and recusal***

"A judge shall not investigate facts in a matter independently, and shall consider only the

evidence presented and any facts that may properly be judicially noticed."  ABA Model Code of

Judicial Conduct, Canon 2, Rule 2.9(C).  The ABA Model Rules appropriately place the

prohibition on independent judicial investigation within the context of other *ex parte*

communications due to the judge collecting "evidence" from third-party sources without

providing notice or an opportunity to be heard to the parties that may be affected by the judge's

investigation.[3]  "The prohibition against a judge investigating the facts in a matter extends to

information available in all mediums, including electronic."  *Id.*, commentary.  Judge Payne

exhibited bias or the appearance of bias against Mr. Barrett when he violated Model Rule 2.9(C)

and relied upon "facts" he independently collected as a basis for denying Mr. Barrett's motion to

toll time without giving Mr. Barrett prior notice or an opportunity to be heard.

---

[3] *See* Elizabeth G. Thornburg, *The Curious Appellate Judge: Ethical Limits on Independent Research*, 28 Rev. Litig. 131(Fall 2008).

On February 9, 2009, Mr. Barrett filed a motion to toll the time limits imposed in 28 U.S.C. § 2255. Doc. No. 382 in Case No. CR-04-115-JHP. Mr. Barrett's motion was based primarily on the inability of his appointed counsel to perform the work necessary to complete the motion due to a medical condition. *Ibid.* The Government responded that "Defendant's counsel cites unique and extraordinary circumstances which justify the time relief requested herein." Doc. No. 390 in Case No. CR-04-115-JHP. Although Mr. Barrett tentatively reported that the Government opposed the motion, in its response, the Government withdrew its initial opposition to granting Mr. Barrett any relief, and conceded that the circumstances presented in the motion satisfied the higher courts' criteria for tolling. *Ibid.*

The court's order filed February 27, 2009, denied Mr. Barrett's motion *in toto*. The order shows that Judge Payne searched the Web site for the Federal Defender Office for the Eastern District of California ("FDO") in order to gather information he would use to adjudicate the motion. Order filed 2/27/2009 in Case No. CR-04-115-JHP at 1-2. Judge Payne expressly and primarily relied upon the Web site's list of attorneys working both in the Sacramento and Fresno branches of the FDO to "find[] the Defendant has failed to establish that counsel can not timely file a completed motion to vacate within the current statute of limitations period." *Id.* at 3.

The record shows Judge Payne gave neither party notice that he was conducting his own independent investigation. The record also shows Judge Payne gave Mr. Barrett no opportunity to be heard regarding the "evidence" he believed he had developed as a basis for denying the motion. The record shows Judge Payne gave no consideration to whether any of the attorneys listed on the FDO Web site were qualified to represent Mr. Barrett as required by 18 U.S.C. § 3599. Evidence would lead a reasonable person to conclude that Judge Payne consciously

omitted from his order any mention of the qualifications for appointment to a case such as Mr.

Barrett's because to do so would undermine reliance upon the information Judge Payne gleaned

from the FDO Web site.

Judge Payne's February 27 Order misstated the circumstances under which Assistant

Federal Defender Tivon Schardl was appointed to represent Mr. Barrett, and did so in such a way

as to make the findings of his independent investigation seem more pertinent than could be

justified under the true circumstances.  As Judge Payne stated, "this Court appointed David B.

Autry as lead counsel and the Federal Defender for the Eastern District of California, Capital

Habeas Unit as co-counsel."  Order at 1.  The Court appointed the Capital Habeas Unit, and more

specifically appointed "David B. Autry and Assistant Federal Public Defender, Eastern District

of California Tivon Schardl" as counsel for Mr. Barrett (Minute Order filed 4/3/2008 (Doc. 374)

in Case No. CR-04-115-JHP).  Although the Court did not appoint the entire FDO from the

Eastern District of California to this case from the Eastern District of Oklahoma, the February 27

Order cited the fruits of Judge Payne's independent investigation to imply that the Federal

Defender had accepted appointment to Mr. Barrett's case without specifying the Capital Habeas

Unit or Mr. Schardl.

Judge Payne specifically relied upon the FDO Web site's identification of 37 attorneys at

branches in Sacramento and Fresno, Order at 1-2, although he knew or reasonably should have

known that only a fraction of those attorneys worked in the Capital Habeas Unit ("CHU") in

Sacramento.  Indeed, the Web site specifies that the CHU is in Sacramento.

Judge Payne acknowledged, "It should be noted that this Court had the assistance of the

Federal Public Defender of the Northern and Eastern District of Oklahoma's assistance in

locating a Federal Public Defender's office willing to accept appointment in this matter." Order

at 2 n.1. Judge Payne's note omits some of the circumstances surrounding the appointment of

counsel. In response to a request, Mr. Schardl wrote Federal Defender Julia O'Connell on March

26, 2008 that "the Federal Defender for the Eastern District of California, has authorized me to

inform you that our *Capital Habeas Unit* is able to represent Mr. Barrett." Letter from Tivon

Schardl to Julia O'Connell dated 3/26/2008 (emphasis added). The letter goes on to specify Mr.

Schardl's qualifications for appointment. Following the submission of that letter, and with no

other contact between Mr. Schardl and the court, Judge Payne specifically substituted David

Autry and Mr. Schardl as counsel for Mr. Barrett. Thus, it was disingenuous for Judge Payne to

represent in the February 27 Order that "the Federal Defender in the Eastern District of

California" had "accept[ed] appointment to this case," Order at 2, such that any of the 37

attorneys working in the FDO were available to represent Mr. Barrett.

Judge Payne's indisputable violation of Rule 2.9(C) in search of a factual basis to deny

Mr. Barrett's motion constitutes sufficient grounds for disqualification. However, the February

27 Order contains additional evidence of bias, or the appearance of bias, against Mr. Barrett.

Judge Payne cited as the second ground for denying Mr. Barrett relief that "according to the

Motion, the Government opposes tolling the statute of limitations." Feb. 27 Order at 2. Judge

Payne omitted the fact that *after* Mr. Barrett filed his motion the Government filed a response in

which it did not oppose relief. The third ground Judge Payne cited for denying relief was "the

Government's response contain[ing] numerous citations to cases in which the courts have found

equitable tolling was not appropriate." *Ibid.* Judge Payne omitted the Government's statement

that the circumstances presented in Mr. Barrett's motion fit within cases where the courts found

tolling *was* appropriate.  Together Judge Payne's independent search for a factual basis upon which to deny the motion and his selective references to the motion and response – including only things negative to Mr. Barrett and omitting the statement of both parties' counsel in his favor – reflect a bias, or the appearance of bias, against Mr. Barrett's pursuit of relief.

Any reasonable person fully informed of Rule 2.9(C), and Judge Payne's conduct would question Judge Payne's impartiality in this matter.  Judge Payne sought *ex parte* information regarding the matter pending before him and relied upon that information to deny Mr. Barrett relief without giving Mr. Barrett prior notice or an opportunity to be heard.  He also presented a distorted picture of the facts that would make the information he obtained appear more persuasive than it would have been if the circumstances had been described accurately and completely.  Therefore, Judge Payne is disqualified from presiding over this case and must recuse himself.  28 U.S.C. §§ 455(a) & (b)(1) (disqualification required where judge has "personal knowledge of disputed evidentiary facts concerning the proceeding").

### 4.    *Conclusion*

The foregoing evidence is sufficient to establish that Judge Payne is biased against Mr. Barrett (or in favor of the Government), or that he has prejudged aspects of Mr. Barrett's claims. While Judge Payne may in fact not be biased against Mr. Barrett, due process requires recusal where there is a sufficient appearance of bias.  *Taylor*, 418 U.S. at 501 (citing and quoting *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964)), and *In re Murchison*, 349 U.S. 133, 136 (1955).  The circumstances of this case more than meet that test.

**B.      Recusal is Required Under 28 U.S.C. § 455(b) Due to Judge Payne's Status as a Witness**

A judge is disqualified from proceedings and must recuse himself where the judge "is to the judge's knowledge likely to be a material witness of the proceeding," 28 U.S.C. § 455(b)(5)(iv), or where the judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).  Claim 1 of Mr. Barrett's Motion to Vacate asserts in relevant part that Judge Payne applied his own standards rather than those set forth in the Judicial Conference's *Guidelines for the Administration of the Criminal Justice Act and Related Statutes* ("CJA Guidelines") when choosing counsel to appoint to represent Mr. Barrett. Claims 1, 2, and 3 also assert in relevant part that Judge Payne's selection of Roger Hilfiger to represent Mr. Barrett, and Judge Payne's rejection of John Echols's resourceful approach to the case in favor of Mr. Hilfiger's less expensive approach to the case was prejudicial to Mr. Barrett.

The grounds upon which Judge Payne rejected the recommendations of two Federal Defenders in order to appoint Mr. Hilfiger, and some of the grounds upon which Judge Payne rejected Mr. Echols's requests for funds are not part of the trial record.  Mr. Barrett relies upon the declarations of witnesses to Judge Payne's statements including those of former Federal Defender Paul Brunton, current Federal Defender Julia O'Connell, and John Echols.  To the extent the Government disputes those statements, Judge Payne is likely to be a material witness and his personal knowledge – gained in an administrative rather than judicial capacity – is likely to be in dispute.

Title 18 U.S.C. § 3005 provides that in a capital case the court shall "assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases . . .. In

22

assigning counsel under this section, the court shall consider the recommendation of the Federal

Public Defender organization." Pursuant to the Judicial Conference's *Guidelines for the*

*Administration of the Criminal Justice Act and Related Statutes* ("CJA Guidelines") the Federal

Defender and the court should take into account "the facts and circumstances of the case to

determine the qualifications which may be required to provide effective representation." CJA

Guidelines ¶ 6.01 (B)(1).  Courts are encouraged to appoint counsel who "are well qualified, by

virtue of their prior defense experience, training and commitment, to serve as counsel in this

highly specialized and demanding litigation." *Id.*

In this case, Judge Payne expressed a desire to appoint the Federal Defender to represent

Mr. Barrett in his federal trial proceedings. When the Federal Defender's office received notice

that Judge Payne intended to appoint it to represent Mr. Barrett, the office informed Judge Payne

that it could not adequately represent Mr. Barrett because of its limited resources and current

involvement in a death penalty case.  Exh. 67 to Mot. to Vacate (Decl. Julia O'Connell).  Two

Federal Defenders and an Assistant Federal Defender recommended that Judge Payne appoint

John D. Echols – who effectively represented Mr. Barrett in his two state court trials – and

Robert Nigh – a Tulsa attorney with significant federal death penalty experience.  *Id.*; Exh. 34 to

Mot. to Vacate (Decl. John D. Echols).  The Federal Defender Office made this recommendation

because it believed that these two attorneys were qualified to try the case effectively as an

alternative to the Federal Public Defender.  Exh. 67.

Judge Payne initially appointed John Echols to the case.  In appointing Echols, Judge

Payne stated that "he wanted the case tried quickly and that this should be no problem because

[Echols] had handled Kenny's state case."   Exh. 34. Judge Payne, however, declined to appoint

Robert Nigh and instead appointed Roger Hilfiger, the former United States Attorney for the Eastern District of Oklahoma. Exhs. 67 & 34.[4] Judge Payne's rationale for this appointment was not based on factors recognized by the Judicial Conference or national indigent defense organizations as indicative of an attorney's qualifications to provide effective representation. Rather, Judge Payne stated that it seemed that the federal death penalty cases that were being filed in Oklahoma were being prosecuted in the Eastern District and because of that, "if counsel from the Eastern District were appointed, that lawyer or lawyers could then take other death penalty cases filed in the Eastern District in the future." Exh. 67. Judge Payne thus admitted that he intended to appoint less qualified counsel in Mr. Barrett's case as a means of giving local attorneys experience so that a local panel could be formed to provide representation in capital cases. Exhs. 34 & 67. This admission created a conflict between the court's interests, counsel's interests and Mr. Barrett's interests in a vigorous, independent defense. *See generally Woods v. Georgia,* 450 U.S. 261 (1981).

The situation deteriorated further when Judge Payne effectively forced Mr. Echols off the case (discussed *supra*) and elevated Roger Hilfiger to first chair. At that point, Judge Payne appointed Bret Smith to second chair. Mr. Smith had no capital experience whatsoever.

---

[4] In its minute order, the Court first stated that the substitution of Mr. Hilfiger for Mr. Nigh was by agreement with the Federal Defender. When the Federal Defender wrote to Judge Payne asking that the Court's order reflect the Federal Defender's objection to the substitution, Magistrate Judge Shreder entered an amended minute order specifying that Mr. Echols had been appointed at the request of the Federal Defender and Mr. Hilfiger had been appointed at the direction of the Court. (Decl. John D. Echols, Filed as Exh. 34 to Mot. to Vacate).

As stated *supra*, the information Judge Payne obtained and the opinions he expressed regarding the appointment, provisioning, and performance of Mr. Barrett's counsel occurred when Judge Payne was acting in an administrative rather than a judicial capacity.

In order to determine whether the process by which Judge Payne appointed counsel was appropriate, the conduct of Judge Payne is at issue. Accordingly, further factual inquiry before a different factfinder is necessary to resolve this claim, for reasons of both actual bias and the appearance of impropriety. *Murchu v. United States,* 926 F. 2d 50, 57, 59 (1st Cir. 1991) (remanding to different district court judge because "further factual inquiry is necessary to resolve this claim [of alleged judicial misconduct], and that, to avoid any appearance of impropriety, the matter should be decided by another factfinder").

## IV.  REQUEST FOR EVIDENTIARY HEARING

Should Judge Payne not disqualify himself on the grounds of actual bias, prejudice, appearance of partiality or because he is a material witness, Mr. Barrett requests that an evidentiary hearing on this Motion be conducted before another judge. Because Judge Payne is a material witness to some of the factual matter alleged in this Motion, due process requires that at least the Motion to Recuse or Disqualify be referred to another judge for a hearing. *Murchu v. United States,* 926 F. 2d 50, 57 (1st Cir. 1991).

## V.  CONCLUSION

WHEREFORE, for the foregoing reasons, Mr. Barrett respectfully seeks an order disqualifying and recusing Judge James H. Payne from any further participation in this matter, and requests this Court to enter such further order as is necessary to cause another Judge to be assigned to hear all issues that remain to be decided and for such other relief as this Court deems

25

just and proper. Should Judge Payne not disqualify himself, Mr. Barrett requests that an

evidentiary hearing on this Motion be conducted before another judge.

DATED:        May 28, 2009

                                                Respectfully submitted,

                                                /s/ David B. Autry
                                                DAVID B. AUTRY, OBA# 11600
                                                Attorney at law
                                                1021 N.W. 16th Street
                                                Oklahoma City, Oklahoma 73106-6405
                                                Telephone: 405-521-9600


                                                DANIEL J. BRODERICK
                                                Federal Defender

                                                /s/ Tivon Schardl
                                                TIVON SCHARDL, Fla. Bar No. 73016
                                                Assistant Federal Defender
                                                801 I Street, 3rd Floor
                                                Sacramento, California 95814
                                                Telephone: 916-498-6666

                                                Attorneys for Movant
                                                KENNETH EUGENE BARRETT

## CERTIFICATE OF GOOD FAITH

I hereby certify, pursuant to 28 U.S.C. § 144, that the foregoing motion and the supporting affidavit of Mr. Barrett have been submitted in good faith.


                                                /s/ Tivon Schardl
                                                TIVON SCHARDL

DATED:        May 28, 2009

26

## CERTIFICATE OF SERVICE

This will certify that, on today's date, this motion was served upon the United States by filing via ECF.

/s/ Tivon Schardl
TIVON SCHARDL

DATED:        May 28, 2009