## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH EUGENE BARRETT )<br> )<br>*Petitioner*, )<br> )<br>v. )<br> )<br>UNITED STATES OF AMERICA )<br> )<br>*Respondent.* ) | Case No. CV-09-00105-JHP |

### RESPONSE TO PETITIONER'S MOTION TO DISQUALIFY
### AND RECUSE UNITED STATES DISTRICT COURT JUDGE JAMES H. PAYNE
### <u>FROM FURTHER PARTICIPATION IN THIS MATTER</u>

Now comes the United States of America and files this response in opposition to Barrett's

Motion to Disqualify the Honorable James H. Payne.

The evidence of purported prejudice and bias identified by Barrett does not remotely rise to

a level that would justify, much less require, the Court's recusal from adjudicating Barrett's motion

under 28 U.S.C. § 2255 ("§ 2255 Motion").

Barrett advances three bases for disqualification: (1) that the Court improperly engaged in

*ex parte* communications with the prosecution and failed to properly disclose those communications

to the defense; (2) that the Court made rulings under the Criminal Justice Act and cannot impartially

adjudicate the propriety of its own decisions; and (3) that the Court improperly denied a request for

additional time to file the § 2255 Motion based on an independent investigation of facts. (Mot. to

Disqual. and Recuse, filed May 29, 2009, at 6-25)  None of the grounds relied upon are timely

presented or would lead a reasonable person to question the impartiality of this Court.

A.  <u>The Motion is Untimely</u>

A party alleging judicial bias should move for recusal, and "must do so in a timely fashion."

*United States v. Nickl*, 427 F.3d 1286, 1297 (10th Cir. 2005) (citing *United States. v. Kimball*, 73

F.3d 269, 273 (10th Cir.1995)).  The Tenth Circuit has not specifically defined timeliness within the

meaning of § 455, but requires a party to act promptly once it knows of the facts on which it relies in its motion. *Willner v. Univ. of Kan.*, 848 F.2d 1023, 1028-29 (10th Cir.1988), *cert. denied*, 488 U.S. 1031 (1989); *see also Levy v. Levitt*, 3 Fed.Appx. 944, 951 (10th Cir. 2001) (unpublished) (applying timeliness rule under § 455(b)) (copy of opinion attached as Appendix A).

Barrett contends that each of his stated grounds for recusal are "individually or collectively sufficient" to merit recusal (Mot. at 6), but he has never previously sought disqualification of the judge despite long-term access to the records upon which he bases his arguments. Barrett's first sub-claim, that the court supposedly engaged in improper *ex parte* communications with the prosecution, is premised on a transcript that has been available to the defense since 2006, as it was quoted in the defendant's opening brief to the Tenth Circuit. Defendant/Appellant's Brief at 65-66, *United States v. Barrett*, 496 F.3d 1079, 1116-17 (10th Cir. 2007) (No. 06-7005.) (available at   2006 WL 3099220); *see also* Dckt. in ED OK case 6:04-cr-115-JHP, entry # 319 (reflecting receipt of sealed transcript on April 24, 2006).) Barrett's second sub-claim, that the Court's rulings and remarks under the Criminal Justice Act demonstrate bias, have been known to him since before trial. And his third sub-claim, that the Court improperly denied a request for equitable tolling, is based entirely on an Order filed February 27, 2009.

Despite the availability of the underlying facts giving rise to the Motion – which Barrett claims would lead any reasonable person to question the Court's impartiality – he did not address the issues for years, as to the first two sub-claims and for months as to the third. Barrett's lack of prompt attention to his recusal request should bar its consideration. *Willner*, 848 F.2d at 1028-29. At a minimum, Barrett's belated identification of these issues undermines his argument that the facts patently demonstrate prejudice on the part of this Court.

B.  The Motion Lacks Merit

None of Barrett's stated grounds satisfy the applicable standards for recusal. A court must recuse itself if "sufficient factual grounds exist to cause a reasonable, objective person, knowing all

the relevant facts, to question the judge's impartiality." *United States v. Erickson*, 561 F.3d 1150, 1169 (10th Cir. 2009); *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000). As the Supreme Court has noted, "[n]ot *all* unfavorable disposition towards an individual (or his case)" amounts to bias or prejudice. *Liteky v. United States*, 510 U.S. 540, 550 (1994) (emphasis in original). Bias and prejudice "connote a . . . disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess." *Id.* An opinion or view held by a judge based on information received in earlier proceedings is "not subject to deprecatory characterization as 'bias' or 'prejudice.'" *Id.* at 551. A judge bears ". . . as much obligation . . . not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992) (internal quotes omitted). Denials of recusal requests are reviewed for abuse of discretion and upheld "unless . . . arbitrary, capricious, whimsical, or manifestly unreasonable." *Higganbotham v. Okla. ex rel. Okla. Transp. Comm'n*, 328 F.3d 638, 645 (10th Cir. 2003); *see United States v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006).

    1. <u>Allegedly Improper Ex Parte Contact</u>

Barrett relies on non-binding guidelines to advance his claim that this Court improperly engaged in *ex parte* communications with the government and failed to make necessary disclosures to the defense. Specifically, Barrett complains that this Court's conduct during and after a September 13, 2005 ex parte hearing "violated" the American Bar Association's Model Code of Judicial Conduct Canon 2, Rule 2.9, because it was held despite the lack of an emergency, involved matters of substance and did not result in full disclosure to the defense. Barrett further argues that the lack of disclosure placed him at an unfair disadvantage in obtaining witness information, but ignores the fact that the Tenth Circuit already found that he timely received the requisite disclosure. *See United States v. Barrett*, 496 F.3d 1079, 1116-17 (10th Cir.2007).

Barrett fails to demonstrate that the Court was bound by, or even aware of, the ABA's rule. The ABA's Model Code created no "legally enforceable duties." *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003). Indeed, the Judicial Conference's own Code of Conduct for United States Judges is merely "aspirational." *In re Charge of Judicial Misconduct*, 91 F.3d 1416, 1417-18 (10th Cir. 1996). "The fact that a judge's conduct violates the [Judicial Conference's] Canons . . . does not necessarily mean that it constitutes judicial misconduct." *Id.* at 1418.

The Judicial Conference's Canon applicable to the Court at the time of trial, unlike the ABA rule cited by Barrett, provided only the most general direction concerning *ex parte* communications, and did not dictate full disclosure:

> A judge should accord to every person who is legally interested in a proceeding, or the person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* communications on the merits, or procedures affecting the merits, of a pending or impending proceeding.

Code of Conduct for United States Judges, Canon 3A(4) (2000).

Barrett makes no attempt to argue that this Court ran afoul of the Judicial Conference's aspirational Canon, nor could he do so successfully. He does not, and cannot, show that this Court's *ex parte* hearing was not authorized by law, given that it concerned discussions about potential threats to witnesses whose identities were to be disclosed under 18 U.S.C. § 3432. Indeed, "where the government fears that disclosing a list of its witnesses would pose a threat to their safety, *ex parte* communications between the court and the government may be appropriate in determining whether or not the list should be provided." *United States v. Napue*, 834 F.2d 1311, 1318 (7th Cir. 1987); *see also United States v. Lee*, 374 F.3d 637, 652 (8th Cir. 2004) (noting in dicta that Fed. R. Crim. P. 16(d) authorizes *ex parte* communications in the context of § 3432). Accordingly, there is no basis upon which to conclude that this Court's actions would subject it to any "disciplinary proceedings or public obloquy," as Barrett claims. (Mot. at 13)

Barrett also fails in arguing that this Court, by failing to disclose information about the *ex parte* hearing, led the defense to forgo a meritorious continuance request under § 3432. Section 3432, requiring disclosure of witnesses at least three days ahead of a death penalty trial, was unquestionably honored in this case. *United States v. Barrett*, 496 F.3d at 1116-17 (10th Cir. 2007). Accordingly, Barrett's argument that the Court somehow misled him into relinquishing a continuance amounts to a complaint that he was deprived of a basis for seeking an unfair advantage and a needless delay. The record, moreover, undermines two of Barrett's fundamental factual claims: that during the *ex parte* hearing the Court indicated it would deny a government motion to seal witness identities that the Court failed to disclose a rejection of the Government's motion to seal witness identities and also implied a belief that the government's duty to disclose witnesses had already attached under § 3432. (Mot. at 9 & 11.) In fact, the Court began the hearing by noting it had reached no conclusion about the commencement of trial for § 3432 purposes and ended the hearing with an extended discussion about the safety of witnesses before advising that it would take the matter of record sealing under advisement. (Tr. 9/13/05 Hr'g at 4-5, 20-23.) The Court did not hide any fact or finding from the defense, nor did it deny the defense any procedural or substantive right under the law.

Given all the relevant facts, no objective person would have a reason to question the objectivity of the Court.

2. <u>CJA Voucher Request Rulings</u>

Barrett also fails in his argument that this Court's pre-trial rulings under the Criminal Justice Act ("CJA") were tantamount to non-judicial employment requiring recusal under 28 U.S.C. § 455(b)(3).[1] He likewise fails to show that the Court's comments in denying various CJA requests

---

[1]Section 455(b)(3) requires recusal whenever a judge "has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy."

demonstrate prejudgment of the various claims in his § 2255 Motion.

Barrett's argument equating CJA rulings with non-judicial employment under § 455(b)(3) finds no basis in the law. If accepted, his theory would necessarily preclude any judge who granted or denied a CJA voucher from subsequent involvement in a criminal case. Barrett provides no authority for his outlandish conclusion, nor could he do so. His principal authority, *United States v. Gonzales*, does not arise in the context of a recusal motion, but rather in litigation over media access to CJA records. In restricting media access, the *Gonzales* court announces that the *granting* of voucher requests is "purely administrative." *United States v. Gonzales*, 150 F.3d 1246, 1255 (10th Cir. 1998). But the court did note an exception: "grounds for a later appeal might be created by the denial of funds for expert witnesses, investigators, or other services relating to an adequate defense. In that latter sense, perhaps, the court at most is acting in a quasi-judicial capacity in the CJA process." *Id.*

At no point did *Gonzalez* consider, much less announce, that the granting or denying of CJA requests amounted to conflicting employment under § 455(b)(3). Such a conclusion would fly in the face of the CJA's text, which requires that ". . . the court shall make determinations relating to reimbursement of expenses." 18 U.S.C. § 3006A(d)(1). CJA determinations may be administrative in nature, but they still must be made by a judge. Thus, the Eighth Circuit – rejecting Barrett's theory – held that a judge was not disqualified under § 455(b) "from handling the contempt claim of an attorney simply because he reviewed the voucher claims of said attorney for an indigent client under the CJA." *In re Snyder*, 734 F.2d 334, 343 (8th Cir. 1984), *reversed on other grounds*, 472 U.S. 634 (1985). In fact, the liberal construction of § 455(b)(3) urged by Barrett is at odds with the Tenth Circuit's "strict" interpretation of the statute. *United States v. Gipson*, 835 F.2d 1323, 1326 (10th Cir. 1988).

The denial of CJA voucher requests about which Barrett complains fell outside the letter and spirit of § 455(b)(3). If, in the course of those rulings, this Court expressed unflattering views of

6

a former defense attorney or that attorney's theory of the case, those statements do not require recusal:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Liteky v. United States*, 510 U.S. 540, 555 (1994).  Barrett does not identify any remark that indicates this Court is incapable of fair judgment in this matter.  To the extent Barrett further complains that this Court's decisions about the appointment of counsel should disqualify it from hearing a § 2255 Motion which challenges those decisions, his position finds no support in the law. *See* 28 U.S.C. § 2255, ¶ 1 ("A prisoner in custody under sentence of a court established by Act of Congress ... may move the court which imposed the sentence to vacate, set aside or correct the sentence."); *see United States v. Erickson*, 561 F.3d 1150, 1169 (10th Cir. 2009) (noting that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"); *United States v. DeClerck*, 252 Fed.Appx. 220, 222-23 (unpublished) (noting the wisdom of permitting the trial court to consider any subsequent motion under § 2255).

The facts at issue would not cause an objective person reason to question the objectivity of this Court.

3. <u>Court's Knowledge of Current Counsel</u>

In his final bid to demonstrate judicial bias, Barrett again relies upon an inapplicable ABA judicial Canon, this time arguing that the guideline should have precluded this Court from an independent "investigation" of defense counsel in determining whether to extend equitable tolling to the filing of his § 2255 Motion.  As discussed above, neither the Judicial Conference's Code of Conduct for United States Judges, nor the ABA model code, were binding on this Court's rulings

or actions. Significantly, the Judicial Conference's "aspirational" Code of Conduct, unlike the ABA's model code, contains no ban on independent investigation.

Regardless of any limitations on this Court's authority to independently explore facts, its "investigation," had little bearing on the denial of equitable tolling in this case. A fair reading of the challenged Order demonstrates that the Court denied the request for additional time on the basis of its conclusion that the defense, as led by Mr. Autry, "should be fairly close to completing any motion they intend to file," given the amount of time already available to Barrett in this matter. (Ord. 2/27/09 at 3.) As a preface to its ruling, the Court did note certain facts about the size of co-counsel's office. Those facts were found on a public website maintained by co-counsel's employer. To the extent the Court later alluded to those facts in its ruling, it did so only in pointing out that Mr. Schardl could have sought the assistance of his colleagues before seeking to delay the filing of the § 2255 Motion. (Ord. 2/27/09 at 3.) Neither the facts gleaned from the website, nor the conclusions drawn from them, were critical to the Court's Order. No aspect of that order demonstrates misconduct or prejudice.

Barrett's subsidiary complaints about the Court's Order also fail to evince prejudice. Barrett argues that the Order inaccurately suggested that co-counsel could have sought the assistance of any attorney in his office, rather than just those employed in its habeas unit. If the Order, in that regard, somewhat overstates the number of attorneys available to assist Mr. Schardl, it does not undermine the still-undisputed finding that co-counsel could have sought *some* colleague's help before requesting delay of the § 2255 Motion. The Order, according to Barrett, also misinterpreted the government's response concerning the request for delay. Even if the Court did err, those errors do not amount to a demonstration of bias. *See F.J. Hanshaw Enters. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1145 (9th Cir. 2001)

The irony here is that rather than demonstrating bias against the defendant, the Court's Order protects him from potentially forfeiting his rights under § 2255. While Barrett expends a great deal

of energy criticizing the Order as an attack on his defense, the ruling appears aimed at precluding a jurisdictional bar to the § 2255 Motion. Indeed, the Order goes so far as to identify a method by which Barrett could satisfy the jurisdictional limitation, but still file a subsequent and improved motion, as Barrett has since done. (Ord. 2/27/09 at 4 n.4.)

In short, the allegations advanced by Barrett, taken as true, wholly fail to establish bias or prejudice within the meaning of 28 U.S.C. §§ 144 and 455. The United States therefore respectfully asks the Court to deny Barrett's Motion to Disqualify and Recuse United States District Court Judge James H. Payne from Further Participation in this Matter.

Respectfully submitted,

SHELDON J. SPERLING
United States Attorney
Eastern District of Oklahoma


s/     Christopher J. Wilson
CHRISTOPHER J. WILSON, OBA # 13801
Assistant United States Attorney
United States Attorney's Office
1200 West Okmulgee
Muskogee, OK 74401
(918) 684-5100
Fax (918) 684-5150


s/     Jeffrey B. Kahan
JEFFREY B. KAHAN, PA Bar #93199
Trial Attorney
U.S. Department of Justice
1331 F Street, N.W.; Rm. 345
Washington, D.C. 20530
Tel: (202) 305-8910

## CERTIFICATE OF SERVICE

I, hereby certify that on 14th day of July, 2009, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

David B. Autry, Attorney for Petitioner
Tivon Schardl, Attorney for Petitioner

s/   Christopher J. Wilson
Assistant United States Attorney
