3 Fed.Appx. 944

Page 1

3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)), 2001 DJCAR 1141
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)))**

**C**

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter. See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Tenth Circuit Rule 32.1. (Find CTA10 Rule 32.1)

United States Court of Appeals,
Tenth Circuit.
Robert J. LEVY and John M. Levy, Plaintiffs-Appellees,
v.
Edward M. LEVITT, Defendant-Appellant.
**No. 98-1360.**

Feb. 26, 2001.

Former partners and joint venturers sued other partner and joint venturer for contribution pursuant to their partnership and joint venture agreements. The district court granted plaintiffs' motion for summary judgment with respect to their breach of contract and capital contribution claims and denied summary judgment for defendant. Defendant appealed. The Court of Appeals, McKay, Circuit Judge, held that: (1) under Colorado law, plaintiffs could recover on breach of contract claim, though they failed to include a specific claim for a partnership accounting; (2) defendant was estopped from arguing that dissolution occurred beyond the period of limitations; (3) defendant had not been released; (4) plaintiffs were not limited to paying defendant's capital contributions and then buying out his interest; (5) district court did not deny defendant due process when it ordered the parties to submit simultaneous briefs consolidating all outstanding motions for summary judgment; and (6) recusal of district judge was not required.

Affirmed.

West Headnotes

**[1] Joint Adventures 224 🗝5(1)**

224 Joint Adventures
   224k3 Mutual Rights, Duties, and Liabilities of Parties
      224k5 Actions Between Parties
      224k5(1) k. In General. Most Cited Cases

**Partnership 289 🗝108**

289 Partnership
   289III Mutual Rights, Duties, and Liabilities of Partners
      289III(C) Actions Between Partners
         289k102 Grounds of Action and Form of Remedy
            289k108 k. Previous Accounting or Settlement. Most Cited Cases
Under Colorado law, partners and joint venturers could recover on breach of contract claim against another partner and joint venturer, though plaintiffs failed to include a specific claim for a partnership accounting, where the partnership was dissolved, and all partnership business had concluded, before plaintiffs brought suit, and where the joint venture existed for the sole purpose of managing the investment in a single piece of real property.

**[2] Limitation of Actions 241 🗝13**

241 Limitation of Actions
   241I Statutes of Limitation
      241I(A) Nature, Validity, and Construction in General
         241k13 k. Estoppel to Rely on Limitation. Most Cited Cases
Under Colorado law, partner and joint venturer was estopped from arguing that dissolution occurred, for limitations purposes, on June 9, 1988, when he de-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

3 Fed.Appx. 944                                        Page 2
3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)), 2001 DJCAR 1141
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)))**

clared to the other partners and joint venturers that "It's over," where he claimed partnership losses on his 1988, 1989, and 1990 tax returns, and on February 9, 1990, he signed a "Consent and Ratification" regarding the sale of the building owned by the joint venture in which he declared four separate times that he was a partner and a joint venturer.

**[3] Partnership 289 ⚷11**

289 Partnership
    289I The Relation
        289I(A) Creation and Requisites
            289k4 Community of Interest in Profits and Losses
                289k11 k. Sharing Profits, But Not Losses. Most Cited Cases
Under Colorado law, an individual cannot acquire the benefits of partnership without simultaneously assuming its corresponding liabilities.

**[4] Release 331 ⚷5**

331 Release
    331I Requisites and Validity
        331k5 k. Agreements to Release. Most Cited Cases
Where partner and joint venturer had full opportunity to sign a proposed release submitted by the other partners and joint venturers and refused to do so, his negotiations with the others over a mutual release in return for ratification of sale of joint venture asset did not constitute an implied release of his obligations on the notes to both the lenders and to the other partners and joint venturers.

**[5] Joint Adventures 224 ⚷4(1)**

224 Joint Adventures
    224k3 Mutual Rights, Duties, and Liabilities of Parties
        224k4 In General
            224k4(1) k. In General. Most Cited Cases

**Partnership 289 ⚷72**

289 Partnership
    289III Mutual Rights, Duties, and Liabilities of Partners
        289III(A) Firm Property and Business
            289k72 k. Capital of Firm. Most Cited Cases
Under Colorado law, partners and joint venturers had the right to collect from the other partner and joint venturer the capital contributions that latter failed to provide, rather than pursuing the remedy provided in the partnership and joint venture agreements, which allowed them to pay the other's capital contributions and then buy out his interest. West's C.R.S.A. § 7-60-118(1)(a).

**[6] Constitutional Law 92 ⚷4011**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(E) Civil Actions and Proceedings
            92k4007 Judgment or Other Determination
                92k4011 k. Summary Judgment. Most Cited Cases
    (Formerly 92k315)

**Federal Civil Procedure 170A ⚷2535**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)3 Proceedings
                170Ak2535 k. Presentation of Case in General. Most Cited Cases
District court did not deny defendant due process when it ordered the parties to submit simultaneous briefs consolidating all outstanding motions for summary judgment, on theory this prevented defendant from presenting rebuttal evidence, where the parties had submitted nine separate briefs detailing various motions for summary judgment, which were followed by the opposing parties' respective responses; the court's order was an appropriate attempt to manage its caseload. Fed.Rules

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

3 Fed.Appx. 944

Page 3

3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)), 2001 DJCAR 1141
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)))**

Civ.Proc.Rule 56, 28 U.S.C.A.; U.S.Dist.Ct.Rules D.Colo., Rule 7.1(H).

**[7] Judges 227 ⚷⟿49(1)**

227 Judges
   227IV Disqualification to Act
      227k49 Bias and Prejudice
         227k49(1) k. In General. Most Cited Cases
That the district judge was impatient with the parties' numerous briefs and unheeding to defendant's pleas for exoneration from liability did not rise to the level of judicial bias or prejudice, warranting recusal. 28 U.S.C.A. § 455(b).

**[8] Judges 227 ⚷⟿51(2)**

227 Judges
   227IV Disqualification to Act
      227k51 Objections to Judge, and Proceedings Thereon
         227k51(2) k. Time of Making Objection. Most Cited Cases
A claim of judicial bias stemming from over nine years of judicial administration was not timely. 28 U.S.C.A. § 455(b)(1).

**[9] Federal Courts 170B ⚷⟿698.1**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(G) Record
         170Bk698 Defects and Objections
            170Bk698.1 k. In General. Most Cited Cases
Court of Appeals would decline to review defendant's challenge to the district court's award of attorney fees, where defendant failed to provide the court with the documents he referenced in his one-sentence justification.

**\*946** Before SEYMOUR, McKAY, and LUCERO, Circuit Judges.

ORDER AND JUDGMENT FN*

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir.R. 36.3.

McKAY, Circuit Judge.

I. Background

**\*\*1** In this diversity action under Colorado law, Plaintiffs sue Defendant for contribution pursuant to their partnership and joint venture agreements. In 1983, the parties formed Tri L Partners (Tri L), an equally-owned partnership, and Tejon-Kiowa Associates (Tejon-Kiowa), a joint venture owned by Tri L and the parties individually. Tejon-Kiowa was formed to acquire and develop certain real estate-the Giddings Building-in Colorado Springs, Colorado. In order to fund the purchase of the building, Plaintiffs and Defendant obtained two separate loans for which they were liable individually, as joint venturers of Tejon-Kiowa, and as general partners of Tri L.

The partnership and joint venture soon began losing money. In July 1987, Defendant stopped making payments to fund the ongoing deficiencies of the joint venture and partnership. However, Plaintiffs continued to make payments on Defendant's behalf, as allowed under the partnership and joint venture agreements. These payments were initially classified as capital payments made by Defendant with offsetting loans from Plaintiffs to Defendant; later they were reclassified as loans from Plaintiffs to Defendant.

Despite his nonpayment, Defendant continued to serve for several months as managing partner of the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

3 Fed.Appx. 944
3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)), 2001 DJCAR 1141
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)))**

partnership. In addition, Defendant made payments on a junior debt against the Giddings Building, received monthly reports on the partnership and joint venture, and claimed partnership deductions on his federal income tax returns for 1987-89. Defendant states that he told Plaintiffs "It's over" on June 9, 1988; nevertheless, he continued to indicate a willingness to pay the sums he owed and even stated an interest in purchasing Plaintiffs' shares in the partnership.

On January 4, 1990, Tejon-Kiowa sold the Giddings Building and gave the proceeds to Tejon-Kiowa's creditors. Plaintiffs then personally paid the balance of Tejon-Kiowa's debts, including Defendant's share of the loss. Defendant endorsed a Consent and Ratification approving the Giddings Building Deed and was **\*947** released from liability to the banks on the two notes. Defendant specifically referred to himself in the Consent as a partner of Tri L and joint venturer of Tejon-Kiowa. Plaintiffs and Defendant also discussed signing a mutual release of all parties from the obligations incurred under payment of the bank notes in exchange for Defendant's endorsement of the Consent and Ratification; however, Defendant found Plaintiffs' release draft unsatisfactory and refused to sign it.

Plaintiffs, by letter of October 24, 1990, demanded that Defendant pay the money he owed or they would dissolve the partnership and joint venture. When they received no substantive response, Plaintiffs dissolved Tejon-Kiowa and terminated Tri L on December 31, 1990, pursuant to the provisions of their respective agreements. On August 22, 1991, Plaintiffs filed suit against Defendant for amounts owed under the partnership and joint venture agreements.

**\*\*2** Nearly a decade of litigation followed, during which the parties filed nine separate motions for summary judgment and Defendant asserted more than twenty different defenses to liability. The district court repeatedly attempted to resolve or simplify the issues presented. On November 5, 1993, the court struck the parties' previous briefs and required both parties to submit simultaneous briefs in support of their existing summary judgment motions. Important to this appeal, Defendant moved for summary judgment as to the date in which the partnership and joint venture were dissolved and his release from liability to Plaintiffs. Plaintiffs moved for summary judgment on their claims for breach of contract and capital contribution and against all of Defendant's defenses, including the dissolution date and release. On January 19, 1995, the court granted Plaintiffs' motion for summary judgment with respect to their breach of contract and capital contribution claims and denied summary judgment for Defendant on his numerous defenses. On August 12, 1998, the court entered judgment against Defendant for Plaintiffs' attorney fees and costs.

On appeal, Defendant asserts that the district court erred in granting summary judgment on Plaintiffs' breach of contract, dissolution date, and contribution claims. In addition, Defendant alleges violations of due process and requests that we set aside Plaintiffs' award of attorney fees.

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). When applying this standard, we view the evidence and draw inferences therefrom in the light most favorable to the non-moving party. *See id.*

II. Partnership Accounting, Dissolution

[1] Defendant first claims that the district court

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

3 Fed.Appx. 944

Page 5

3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)), 2001 DJCAR 1141

**(Not Selected for publication in the Federal Reporter)**

**(Cite as: 3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)))**

erred in entering summary judgment in favor of Plaintiffs on their breach of contract claim. Defendant contends that Plaintiffs' action must be dismissed because Plaintiffs failed to include a specific claim for a partnership accounting, as required by *Boner v. L.C. Fulenwider, Inc.,* 32 Colo.App. 440, 513 P.2d 730, 732 (Colo.Ct.App.1973). The *Boner* court declared the general rule that individual members of a partnership "cannot maintain an action for damages against another member unless there has been an accounting." *Id.* However, Colorado courts have **\*948** enumerated several exceptions to the *Boner* rule. The Colorado Supreme Court has held that "where a partnership has been dissolved, or where its business has been concluded, or where a partnership exists for a single venture or special purpose ... the rule does not apply." *Morris v. Redak,* 124 Colo. 27, 234 P.2d 908, 914 (Colo.1951).

**\*\*3** In the instant case, although the parties dispute the exact date of dissolution, both concur that the partnership was dissolved before Plaintiffs brought suit. In addition, prior to this litigation all partnership business had concluded with the dissolution and sale of the partnership's property. Finally, the partnership and joint venture existed for only one purpose: to manage the investment in a single piece of real property. Thus, by any of these three exceptions, Plaintiffs were not required to make a specific claim for accounting under Colorado law.[FN1]

> FN1. We further note that some years after this suit was instigated, Colorado adopted § 405 of the Uniform Partnership Act, which allows a partner to maintain actions against other partners without an accounting to enforce the partner's rights under the partnership agreement. *See*COLO.REV.STAT. § 7-64-405 (2000).

Defendant next claims that a genuine issue of material fact existed as to the exact date of dissolution of the Tri L partnership. He asserts that his declara-

tion to the Plaintiffs that "It's over" acted to dissolve the partnership on June 9, 1988, as opposed to December 31, 1990, the date in which Plaintiffs formally acted to dissolve both the joint venture and the partnership. The earlier dissolution date was essential to Defendant's statute of limitations defense.[FN2]

> FN2. The Colorado Court of Appeals has recently ruled that a two-year catch-all statute of limitations applied to a withdrawing partner's action for partnership accounting because the amount due from accounting was not capable of ascertainment by reference to partnership agreement or by simple computation derived from agreement. *See Tafoya v. Perkins,* 932 P.2d 836, 838 (Colo.Ct.App.1996). The district court had held that the applicable time frame for Plaintiffs to bring suit in this action under Colorado law was six years. *See* Order of May 27, 1993 (App. at 51-57).

[2] The district court found that Defendant claimed partnership losses on his 1988, 1989, and 1990 tax returns.[FN3] In addition, on February 9, 1990, Defendant signed a "Consent and Ratification" regarding the sale of the Giddings Building in which he declared four separate times that he was a partner of Tri L and a joint venturer of Tejon-Kiowa. The district court cited *In re S & D Foods, Inc.,* 144 B.R. 121, 159 (Bankr.D.Colo.1992), for the proposition that a party is estopped from denying the existence of a partnership where he has held himself out as a partner by executing documents in behalf of the partnership. The court further noted that under Colorado law, a party holds himself out as a partner if he claims partnership losses on his tax returns. *See Roberts v. Roberts,* 113 Colo. 128, 155 P.2d 155, 157 (Colo.1945). Thus, the court held, Defendant was estopped from arguing that dissolution occurred on June 9, 1988.

> FN3. As Defendant points out, the court

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

3 Fed.Appx. 944
3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)), 2001 DJCAR 1141
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)))**

erred in making this finding. It should have determined that such losses were claimed in 1987, 1988, and 1989. Since Defendant endorsed the Consent and Ratification as a partner in 1990, the error was harmless.

[3] On appeal, Defendant contends that *Roberts* is inapposite because, in contrast to the defendant in *Roberts,* he does not deny the existence of a partnership, only that his status as a partner was changed through dissolution. However, Defendant asserts a distinction without a meaningful difference. While *Roberts***\*949** dealt specifically with an individual denying the existence of a partnership, its principle is equally applicable to individuals denying their status in an existing partnership. The essential rule of *Roberts* is that an individual cannot acquire the benefits of partnership without simultaneously assuming its corresponding liabilities. Colorado courts have affirmed this rule since at least 1892: "It is well settled that where a person, with his knowledge and consent, has been held out to the person having a claim or to third parties as a partner, liability as a partner is fastened upon him." *Butler v. Hinckley,* 17 Colo. 523, 30 P. 250, 252 (Colo.1892). Defendant cannot deny his status as a partner of Tri L for a period in which he induced the Internal Revenue Service and two banks to believe that he had the right, as a partner, to receive tax refunds and manage partnership property. This inducement of third parties to change position detrimentally in reasonable reliance on the inducing party's actions is the very purpose for estoppel. *Cont'l W. Ins. Co. v. Jim's Hardwood Floor Co., Inc.,* 12 P.3d 824, 829 (Colo.Ct.App.2000).

**\*\*4** Since Defendant was estopped from denying his status as a partner after June 9, 1988, and presented no other evidence refuting Plaintiffs' claim that dissolution occurred on December 31, 1990, the court held that December 31, 1990, was the proper dissolution date. We agree.

III. Release and Contribution

[4] Defendant next claims that the court erred in granting summary judgment against him on his release from liability defense. Defendant maintains that in exchange for ratification of the Giddings Building deed, he was released from liability on the two bank notes as to both the banks and Plaintiffs. Plaintiffs point out that Defendant did not also sign the mutual release on the indebtedness that they proffered to him. Nevertheless, Defendant argues that his negotiations with Plaintiffs over a mutual release in return for the Giddings ratification constituted an implied release of his obligations on the notes to both the banks and to Plaintiffs. However, Defendant fails to substantiate his inventive argument. Defendant had full opportunity to sign Plaintiffs' proposed release and refused to do so. In addition, as the district court held, a release of his indebtedness to the banks did not relieve him of liability to his partners under the partnership and joint venture agreements. Viewing the evidence in the light most favorable to Defendant, there is no triable issue concerning Defendant's release claim.

[5] Defendant next contests the district court's grant of summary judgment on Plaintiffs' contribution claim. The court found that Defendant admitted failing to make capital contribution payments in breach of the partnership and joint venture agreements. In addition, Defendant did not dispute that, pursuant to the terms of the joint venture agreement, Plaintiffs made capital contributions on his behalf until dissolution and termination of the partnership and joint venture. Nevertheless, Defendant argues that Plaintiffs did not follow the contribution procedures described in the partnership and joint venture agreements, which allow Plaintiffs to pay Defendant's capital contributions and then buy out his interest. Defendant claims that he should have been bought out under these procedures instead of held liable for his breach. However, as the district court noted, the joint venture agreement also states that "nothing in the agreement is intended to limit

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

3 Fed.Appx. 944

3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)), 2001 DJCAR 1141
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)))**

the rights 'at law or by statute or otherwise' of any party aggrieved by the agreement's breach." App. at 243. The court also **\*950** observed that under Colorado law, a partner "shall contribute toward the losses whether of capital or otherwise sustained by the partnership according to his share in the profits." COLO.REV.STAT. § 7-60-118(1)(a). The court then held that section 118(1)(a) conferred upon Plaintiffs the right to collect the capital contributions that Defendant failed to provide. Defendant presented no genuine issue of material fact for the court to decide. In addition, Defendant identifies no error in the court's reasoning under Colorado law, nor does he present evidence indicating a mandated hierarchy of Plaintiffs' remedies for his breach. Thus, the court did not err in granting Plaintiffs' motion for summary judgment on their contribution claim.

IV. Due Process

**\*\*5** [6] Defendant next claims that the district court denied him due process when it ordered the parties to submit simultaneous briefs consolidating all outstanding motions for summary judgment. Defendant contends that the simultaneous briefing procedure prevented him from presenting rebuttal evidence in accordance with Fed.R.Civ.P. 56, since he had no opportunity to respond to Plaintiff's brief after its submission. However, Defendant misconstrues the purpose and use of the simultaneous briefs. The parties had submitted nine separate briefs detailing various motions for summary judgment, which were followed by the opposing parties' respective responses. This was an unwieldy load. The district court struck the nine summary judgment briefs and ordered each of the parties to submit a single consolidated brief that organized and condensed the arguments that each had already made. The court did not deny Defendant the right to respond to Plaintiffs' arguments; Defendant had already done so, followed by which both parties were required to consolidate their previous briefs.

The court's act was a common and appropriate attempt to manage its caseload in accordance with local rules.FN4 Defendant was not prejudiced by this unremarkable consolidated briefing procedure.

> FN4. D.C.COLO.L.R. 7.1(H) states: "[B]riefs and Motions shall be concise. A verbose, redundant, ungrammatical, or unintelligible brief or motion may be stricken or returned for revision, and its filing may be grounds for imposing sanctions. Limitations may be imposed on the length of any brief or motion."

Defendant also alleges that he was denied due process because the initial district court judge in charge of this action "had a personal bias or prejudice against both parties within the meaning of 28 U.S.C. § 455(b)(1) such that he should have disqualified himself years ago." (Br. Aplt. at 43). Defendant "constructively infer[s]" this bias by pointing out the number of times that trial dates were rescheduled, the court's order for simultaneous briefing, its rejection of Defendant's arguments, and even the judge's retirement before this case had concluded.

However, the Supreme Court, in discussing § 455(b)(1), has stated that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). In addition,

opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.... Not establishing bias or partiality ... are expressions of impatience, dissatisfaction, annoyance, and even anger, that **\*951** are within the bounds of what imperfect men and women, even

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

3 Fed.Appx. 944

3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)), 2001 DJCAR 1141
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)))**

after having been confirmed as federal judges, sometimes display.

*Id.* at 555-56; *see also United States v. Young,* 45 F.3d 1405, 1415 (10th Cir.), *cert. denied,* 515 U.S. 1169, 115 S.Ct. 2633, 132 L.Ed.2d 872 (1995).

[7][8] At most, Defendant has shown that the district judge was impatient with the parties' numerous briefs and unheeding to Defendant's pleas for exoneration. This did not rise to the level of judicial bias or prejudice under § 455(b). Even if it did, the remedy for judicial prejudice is a motion for recusal that "must be timely filed," and a party must act promptly in filing its motion once it knows of the facts on which it relies. *Willner v. Univ. of Kan.,* 848 F.2d 1023, 1028-29 (10th Cir.1988), *cert. denied,* 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989). Defendant's belated claim of judicial bias stemming from over nine years of judicial administration is certainly not timely.

V. Attorney Fees

**\*\*6** [9] Lastly, Defendant argues that the award of attorney fees to Plaintiffs should be set aside. Defendant's one-sentence justification directs this court to peruse three of his previous filings and alleges that Plaintiffs did not prove their entitlement to attorney fees. However, Defendant fails to provide this court with the documents he references. "It is not this court's burden to hunt down the pertinent materials. Rather, it is [Defendant's] responsibility as the appellant to provide us with a proper record on appeal." *Rios v. Bigler,* 67 F.3d 1543, 1553 (10th Cir.1995). We thus decline to review Defendant's challenge to the district court's award of attorney fees. *See Knowlton v. Teltrust Phones, Inc.,* 189 F.3d 1177, 1182 (10th Cir.1999) (failure to provide adequate record requires court to disregard challenges to district court's ruling on sanctions).

For the foregoing reasons, the judgment of the dis-trict court is AFFIRMED.

C.A.10 (Colo.),2001.
Levy v. Levitt
3 Fed.Appx. 944, 2001 WL 184230 (C.A.10 (Colo.)), 2001 DJCAR 1141

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.