## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

KENNETH EUGENE BARRETT,       )
                                          )

                    Petitioner,   )
                                          )

vs.                                     )      Case No. 09-CIV-105-JHP
                                          )

UNITED STATES OF AMERICA,     )
                                          )

                    Respondent.  )

## <u>ORDER</u>

This post-conviction federal death penalty case, in which a motion under 28 U.S.C. § 2255 has been filed, comes before the Court on Petitioner's Motion to Disqualify and Recuse the undersigned judge from further participation in this matter (Doc. 45). The pending motion is brought pursuant to 28 U.S.C. §§ 144 and 455 and alleges that the actions and/or rulings of the undersigned judge during the pendency of the federal death penalty case and immediately prior to the filing of the § 2255 motion indicate a judicial bias which should disqualify said judge from presiding over this post-conviction proceeding. Petitioner asserts three grounds for disqualification of the undersigned judge: (1) violations of rules of judicial conduct; (2) judge will be a material witness to many of the facts and circumstances that comprise the basis of his motion to vacate; and (3) violations of canons of judicial ethics by conducting independent investigation on the internet during the course of ruling on Petitioner's motion to toll the statute of limitations in this matter. On July 13, 2009, the Government filed its Response to Petitioner's Motion to Disqualify (Doc. 51), in which it

urges this Court to deny the Motion because "[n]one of the grounds relied upon are timely presented or would lead a reasonable person to question the impartiality of this Court." Petitioner did not file a Reply.

A.  Request to disqualify pursuant to 28 U.S.C. § 144

Title 28 U.S.C. § 144 provides as follows:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

In a § 144 motion, a court is not called upon to decide the truth of any allegations of bias.  The only question before the Court under this section is whether a "party" has filed a "timely and sufficient affidavit" and a "certificate of counsel of record stating that it is made in good faith."  *United States v. Battle*, 235 F.Supp.2d 1301, 1340 (N.D. Ga. 2001).  Not one, but two declarations[1] are attached to the motion as well as a certificate of counsel that the motion is made in good faith.  Neither of the declarations, however, were made or filed by a "party" as required by § 144.  Furthermore, "conclusions, rumors, beliefs and opinions are not sufficient to form a basis for disqualification."  *United States v. Burger*, 964 F.2d 1065,

---

[1]Pursuant to 28 U.S.C. § 1746, unsworn declarations signed under penalty of perjury are permitted whenever any law requires a sworn affidavit.

1070 (10th Cir. 1992). Finally, "[t]he doctrine of incorporation by reference has no place in a § 144 affidavit." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).

Although Petitioner's Motion to Disqualify indicates it is incorporating "by specific reference the averments made on pages 17 through 42 of his Motion to Vacate and all exhibits cited therein"[2] and "all allegations of Claim 5 and all exhibits cited therein"[3] and "the averments made on pages 17 through 247 of his Motion to Vacate (Doc. 2) and all exhibits cited therein,"[4] the Court is aware that the voluminous § 2255 motion (397 pages plus 195 multi-page exhibits) contains numerous allegations that the trial court violated Petitioner's due process rights during the course of the trial proceedings. *See*, Doc. No. 2 at pp. 2-3; 17-43; 238-249; 305-308; 309-311; 345. Despite the fact Petitioner's Motion to Disqualify states that his motion "stems from [this Court's] administrative and *ex parte* conduct, not his judicial rulings,"[5] most of the allegations of bias center around the Court's decisions (1) regarding appointment of counsel; (2) relating to the approval of an initial budget, (3) relating to the treatment of, at most, two CJA[6] vouchers submitted by John Echols, who subsequently requested leave to withdraw from this case; and (4) other rulings made during the course of the proceedings. The Petitioner/Defendant did not personally sign

---

[2]*See*, Doc. 45 at p. 6.

[3]*Id.*, at p. 8.

[4]*Id.*, at p. 14.

[5]*See*, Doc. 45 at p. 6.

[6]CJA refers to the Criminal Justice Act, 18 U.S.C. § 3006A.

a verification with respect to the § 2255 motion; rather, it was signed by his attorney on his

behalf and it recites, in pertinent part, the following:

> I am authorized by Kenneth Eugene Barrett to file the foregoing motion to vacate, set aside, or correct the sentence, and for a new trial made pursuant to 28 U.S.C. § 2255 and Rule 33 of the Federal Rules of Criminal Procedure. I am filing the motion on Mr. Barrett's behalf. . . .
> . . . . . I declare that the contents of the foregoing Motion are true except for those matters based upon information and belief, and I believe the latter matters to be true. . . . . I make this verification pursuant to Rule 2(b)(5) of the Rules Governing Section 2255 Proceedings because these matters are more within my knowledge than Mr. Barrett's knowledge.
> I declare, under penalty of perjury, that the foregoing is true and correct.
>
> /s/ Tivon Schardl

*Id.*, at p. 396-397.

To the extent that § 144 is explicit that only one affidavit is allowed, this Court finds

neither the declarations attached to the Motion to Disqualify or to the Motion to Vacate are

sufficient to satisfy the statutory requirements of a single affidavit by a "party." Further,

adverse rulings of the court are not legal grounds, under § 144, for disqualification. *Martin

v. United States*, 285 F.2d 150, 151 (10th Cir. 1960). Because a sufficient affidavit has not

been filed by a "party" stating facts showing bias against the Petitioner as required by § 144,

Petitioner's Motion to Disqualify based on 28 U.S.C. § 144 is denied.

B.  Request to disqualify pursuant to 28 U.S.C. § 455

Title 28 U.S.C. § 455 provides, in relevant part:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

\* \* \* \* \* \*

(3) Where he has served in a governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy; . . . . . . .

28 U.S.C. § 455.  Additionally, a judge shall disqualify if he knows it is likely that he will be a material witness in the proceeding.  28 U.S.C. § 455(5)(iv).

In *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994), the United States Supreme Court made it clear that judicial rulings almost never constitute a valid basis for a bias or partiality motion and opinions formed by the judge on the basis of events occurring in the course of judicial proceedings do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Rather, "[a] judge's ordinary efforts at courtroom administration" are immune from attack for judicial bias or partiality.  *Id.*, U.S. at 556.  A court called upon to consider a request to disqualify under § 455 must decide "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."  *United States v. Burger*, *supra.*  Under this section, the court does not have to presume the factual allegations are true nor is the judge limited to the facts presented by the challenging party.  *Hinman v. Rogers*, *supra.*  The court may consider all the circumstances, both public and non-public to rebut an inference of partiality.  *Id.*  See also, *State of Idaho v.*

*Freeman*, 507 F.Supp. 706 (D.C. Ida. 1981) in which the court stated when considering a claim of bias under § 455:

> Hidden facts indicating partiality may at any time come into public view and therefore are legitimate elements of an appearance test; and hidden facts tending to rebut an inference of partiality are presumably in the judge's power to reveal once public suspicion of his partiality in a given instance has been aroused.

*Id.*, at 721.

In addition to the general grounds asserted for disqualification of the undersigned judge, Petitioner asserts three specific actions taken in this case which he claims are "individually or collectively sufficient" to require this Court to recuse. First, Petitioner alleges the Court engaged in improper *ex parte* communications with the prosecutors. Second, Petitioner asserts administrative decisions made by the Court in approving a budget can not be separated from the claims raised in his § 2255 motion. Finally, Petitioner argues the Court's ruling denying his request to toll the statute of limitations was improper and, therefore, when added to the first two claims of judicial misconduct establish the court's bias or lack of impartiality. The Court will consider each of these allegations individually.

1. *Allegations of ex parte communications*

Petitioner claims that the Court's conduct during and after a September 13, 2005 *ex parte* hearing "violated" the American Bar Association's Model Code of Judicial Conduct (hereinafter "Model Code") Canon 2, Rule 2.9 because it was held despite the lack of an emergency, involved matters of substance and did not result in full disclosure to the defense.

The Government argues a court is not bound by the Model Code and that Petitioner has failed to establish that the challenged *ex parte* hearing was not authorized by law.

On September 9, 2005, the Government filed a Sealed Motion for Delaying the Production of Witness Names.[7]   This motion requested permission to delay the disclosure of the names and addresses of certain witnesses until the Friday prior to their scheduled testimony.  *Id.*, at p. 1.  The motion asserted the Court could, pursuant to 18 U.S.C. § 3432, "make a finding by a preponderance of the evidence that the list of veniremen and witnesses need not be provided to the defendant in a capital case where the life or safety of any person may be jeopardized."  *Id.*, at pp. 1-2.  Despite the fact the defendant was in custody, the Government's motion alleged, in pertinent part:

> Defendant's actions which underlay (sic) the crimes for which he is charged, were lethally violent.  He intentionally shot and killed one officer and wounded another.  He also created substantial risk of injury to additional officers as well as citizens in the immediate area, including his own son.  He displayed little regard to his own safety as well.
> Various of defendant's know (sic) associates in the drug business likewise have displayed violent tendencies and are commonly associated with firearms.  In communications with some of these associates, Barrett threatened potential witnesses.  He was heard to advise one person that the informant for his search warrant need (sic) to be "taken care of."  He advised other persons that he intended or expected to be involved in a shoot-out with law enforcement officers.  He willingly pursued that course of action despite his admitted expectation that he may die doing so.
> On several occasions before September 24, 1999,k (sic) defendant threatened or committed acts of violence towards law enforcement officers.  On one occasion, defendant ran a roadblock with a vehicle and nearly hit two law enforcement officers.  On another occasion, an officer approached defendant's residence.  Defendant, confronted the officer, holding a firearm in a ready

---

[7]Doc. 186 filed in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP.  This document was unsealed by minute order entered on May 30, 2006.

position.  Defendant also threatened to burn the residences of his neighbors and threatened to shoot their animals.  Defendant's violent tendencies were so substantial that the sheriff of Sequoyah County had directed his officers not to answer calls at defendant's residence without backup.  Defendant's known threats of violence were the basis for the no-knock search warrant herein and the decision to call the Oklahoma Highway Patrol tactical team for service of the warrant.

*Id.*, at p. 5.  The government's motion also implied that the Court's actions deciding to utilize an anonymous jury selection process as well as authorizing the use by the United States Marshal of a stun belt on the defendant during the trial proceedings, added support to the government's "articulable concern that defendant poses a current and credible threat to others." *Id.*, at p. 3.

Based solely upon the government's allegations that Petitioner/Defendant had suggested that the informant on the search warrant needed "to be taken care of," the Court was obligated to hold an *ex parte* hearing to ascertain the basis for the government's safety concerns and to determine whether the government could prove "by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person."  18 U.S.C. § 3432.  *See also, United States v. Napue*, 834 F.2d 1311, 1318 (10th Cir. 1988) (recognizing *ex parte* hearing between the court and the government is appropriate to determine whether or not the government will be required to provide a witness list where government has raised concerns regarding disclosure).   Although *ex parte* hearings should be avoided whenever possible, *id.*, one must question how a court would ever be able to consider a government claim that disclosure of a witness's identity would jeopardize that witness's life without holding an *ex parte* hearing.

A reading of the entire *ex parte* hearing reveals that the Court had not prejudged anything. At most, the transcript reveals the Court's frustration that the Government was just now disclosing a problem that the Court felt should have been addressed much sooner in the course of the proceedings. Specifically, the Court began the proceedings by noting that the Government's motion was filed late the day before, after the Court had just finished a full day of juror death qualification proceedings, by inquiring:

> . . . . why this motion was not filed much, much earlier. We have had at least two, maybe three pretrials. Every time the Court has inquired about the status of discovery, I have been told it's moving along fine without problem. This issue is a - - my research suggests it is of utmost importance for several reasons. One, as pointed out by the government's motion, they are concerned about the safety of potential witnesses.

*See*, Vol. I of Transcript of Hearing held on 9/13/05 filed in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP, at p. 3.[8] The Court did, however, ask the government to address when the trial started in light of its filing a list of witnesses on the prior Friday. The Court emphasized, however, that it was

---

[8]In preparing this Order, the Court became aware that the transcript contained within the Court files for September 13, 2005, only contained the first sealed hearing held on that day. The cover page for that transcript identified the transcript as "Transcript of Sealed Hearing on Government's Motion Before the Honorable James H. Payne United States District Judge, September 13, 2005." This transcript was filed on April 25, 2006 in *Unites States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP.

When the court reporter was asked to provide the Court with a copy of the transcript for the second sealed hearing held on September 13, 2005, the Court was advised that the two sealed hearings held on September 13, 2005 were contained in two separate volumes, labeled on the cover pages as "Transcript of Hearing on Government's Motion for Order Delaying the Production of Witness Names and Request for Protective Order Before the Honorable James H. Payne United States District Judge September 13, 2005 Volume I of II" and "Transcript of Hearing on Government's Motion for Order Delaying the Production of Witness Names and Request for Protective Order Before the Honorable James H. Payne United States District Judge September 13, 2005 Volume II of II." Volume I of II appears to be identical to the transcript filed with the Court Clerk on April 25, 2006 with the exception of the cover page. Volume II of II was apparently never filed with the Court Clerk. Accordingly, in order to ensure the entire transcript of both of the sealed hearings held on September 13, 2005 are on file in this case, the Court hereby directs the Court Clerk to file these two transcripts in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP simultaneously with the filing of this Order. Finally, the Court would note that the minutes for September 13, 2005 indicate the Court unsealed these hearings by agreement of counsel at the conclusion of the second hearing.

..... concerned, at the very least, about the government's requirements to put on a preponderance of the evidence to demonstrate the concerns outlined in the motion for order delaying the production of witness names. I would advise the government that it's - - the Court has some concerns as to why this did not happen at a time when it could have been addressed more leisurely and comfortably. We are now here a few minutes before nine with the jurors coming in with only a few minutes to address this issue. So, I'm interested, first, in knowing from the government when does the trial start. I'm not so interested in excuses why it hasn't been done before, although that troubles me that we couldn't - - because if we had only had one pretrial, I would understand it, but I have had status conferences and pretrials. You could have filed this under seal weeks ago. As I say, I'm - - I don't want to waste time about what we could have done. I want to address where you think we are now and what evidence you have to support the delay in producing the names of these witnesses.

*Id.*, at pp. 5-6.

After the government advised the Court that it had been in contact with defense counsel regarding it's witness list and the names of those persons deleted from the filed list, the Court indicated it was reassured that there had been discussions with defense counsel. The Court did, however, advise the government it was still concerned if the government failed in establishing by a preponderance of the evidence that revealing these witnesses' names would put their lives in jeopardy, what problems would arise with those witnesses' testimony. *Id.*, at p. 7. At that point, the government advised the Court that all counsel had been "operating under the inference that the trial begins on or after the 26th." *Id.* Furthermore, government counsel advised the Court that defense counsel was aware of "essence of the testimony of the witnesses"; that the witnesses were "all associates of Mr. Barrett's, associates or family." The government then proceeded to argue the merits of their motion. *Id.*, at pp. 12-20. After hearing the government's evidence, the Court said ". . . what you are telling me is nothing - -

you have no evidence of anyone being threatened that is on your witness list now. You are saying if we list them, we are afraid they will be threatened?" *Id.*, at p. 21. Additionally, the Court asked why the government had not addressed whether the witnesses could be protected if their names were revealed. *Id.*, at p. 22. After hearing the government's response, the Court indicated it would take the matter under advisement since it needed to proceed with juror qualification proceedings. *Id.* at p. 24. Once in the courtroom, the Court indicated it was "continuing with the individual juror qualification for purposes of Stage I proceedings." Tr. of Individual Juror Qualification for Purposes of Stage One Proceedings held on September 13, 2005 in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP, at p. 252. Before starting, however, the Court gave both sides an opportunity to address any issues they felt the Court needed to address. At that time, the following record was made:

> MR. SPERLING: Briefly, Your Honor. As we have noted, we have informed defense counsel of the nature of the proceeding that was the subject of the hearing this morning. We're working in the direction of an agreement by which we will make witnesses available to defense counsel and/or their investigator. I anticipate that that will be done next week. And we have talked very candidly, I think, without - - although we have not specific names, we've talked very candidly about the substance of testimony. We have also indicated to both Mr. Hilfiger and Mr. Smith that we will make a proffer - -

> THE COURT: Well, let me - - before we proceed with much further discussion of that matter, that was a sealed hearing. Is that what you're speaking of?

> MR. SPERLING: Yes, Your Honor.

> THE COURT: And, of course, we're not - - this is a public proceeding, although there's no one in the courtroom that I detect. The sound system is on. And I think that further discussion of that matter should be - - I'm obviously interested in hearing about it, but I think it should be a sealed proceeding.

MR. SPERLING: I appreciate your caution, Your Honor.

THE COURT: I'll make time for that during the day.

*Id.*, at pp. 252-253. After this colloquy, the jury panel entered the courtroom and the Court

continued with death qualification of the jury. At the end of the day's proceedings, the Court

took a five minute recess, sealed the courtroom and proceeded to deal with the issues raised

at the beginning of the day. *Id.*, at p. 535. Specifically, the following record was made:

> THE COURT: Let the record reflect the Court is in session again in U.S.A. versus Kenneth Eugene Barrett, CR-04-115. The record should reflect that the defendant is present with counsel and the Government's counsel is present.
>
> It came to the Court - - this Court's attention Monday morning, just before the Court started the hearing on selection of jurors, or doing what we refer to as the death penalty qualification, that the Government had filed a motion requesting that their motion be filed under seal. I looked at the motion and granted the motion, the motion to file under seal, and later in the day, started examining the actual motion, and then into the evening yesterday, examining it, and decided, after looking at it, that it was necessary to set the matter for a sealed hearing first thing this morning, at which time the U.S. Attorney appeared and made a presentation on what was entitled Government's Motion for Order Delaying the Production of Witness' Names. That hearing was concluded. Then, as we started to begin the hearing for qualification of death qualified jurors, it was my understanding the U.S. Attorney desired to make an announcement, and at that point, I stopped the proceeding because I was concerned about the sealed issue.
>
> And, so, I want to make inquiry of the Government at this time, if you desire to proceed with this matter in the presence of defense counsel, and do you desire that this matter continue to be sealed?
>
> MR. SPERLING: I think we can proceed with defense counsel. I think where we were at - - and I'm doing my best, Your Honor, to recall where we were when we stopped - - when I - - I'm not sure exactly what thought I was - -
>
> THE COURT: I'll tell you where I was, is I was - - because of the nature of the pleading, I was concerned about security issues. And, so, that's why I thought it appropriate to stop and wait to hold this hearing at a time when we

12

had more time to think about it. And the nature of the announcement you were about to make, it sounded like there had been some discussion with defense counsel. And that's about as much as the Court knows.

MR. SPERLING: Okay. I'm willing for the matter to be unsealed. And here is where we are, Your Honor. I would really like to give this some additional thought, because we want to expeditiously identify the witnesses to defense counsel. We have attendant causes for concern. And, you know, I'm just thinking a bit aloud now, but I would want the Court's standard admonition with regard to contacting witnesses. We are working in the direction of either making the witnesses available in our office, or providing information such that the investigator for the defense can contact them and locate them. I'd really like to give this some thought this evening, before we come up with an explicit plan, but I think in one way or another, we're prepared, in the very near future, to do one of those two things.

THE COURT: From the defense?

MR. HILFIGER: Well, I don't have much more to say about - - I mean, we have talked about it, and they've made some offer, and I think that that's a workable solution.[9]

Vol. II of Tr. of Hearing held on September 13, 2005 filed in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP, pp. 26-28.

The next day, before the Court could issue a formal ruling on the government's motion, the parties announced to the Court that they had reached an agreement regarding these witnesses. Specifically, after indicating that it looked like the Court would complete the death qualification process by the end of the week, the following colloquy occurred:

THE COURT: . . . . . Let me - - the motion that we discussed at the end of yesterday, that was filed under seal, is it necessary to seal the courtroom in regard to that matter?

---

[9]At this point in the proceedings, defense counsel raised other matters of concern with the Court and no further discussion of disclosure of witnesses was held.

MR. SPERLING: It is not, and we have an announcement with regard to - - Your Honor, I believe we have reached an agreement whereby on Monday, we will give to the defense the names of these seven, their places of abode, criminal history, and any deals or promises that may have been made in exchange for their prospective testimony. We have also - - we are also working in the direction of making them available in our office next Thursday or Friday.

There are two incarcerated witnesses - - and I have also discussed this with counsel - - I don't know why we can't commit to telling them, you know, when they're here, they'll be brought here by writ, and then making them available in that manner.

THE COURT: Mr. Hilfiger, any comment?

MR. HILFIGER: That's what I understand, and at this time, we don't have any objection to that. That should be sufficient time, based on what we talked about yesterday, on the jurors that we sort of - -

THE COURT: I mean, Monday may be the last day. I think that if everything goes well, if we have a decent - - I think we had 52 total, and - - I don't want to get overly optimistic, but, I mean, if we - - in the next two days, we'll have to pause, and I'll give you both an opportunity to give me your assessment. We do have jurors coming next week, if we think we need them, but if we have a reasonable number the next two days, we may be satisfied with what we have by the end of the week. But I would think, at the very most, Monday would be sufficient.

MR. HILFIGER: That's what I was sort of thinking, about being able to talk to the witnesses next Thursday.

THE COURT: So, it's my understanding that the Government is disclosing - - this will be the last of the witness disclosures; is that correct?

MR. SPERLING: I believe so, Your Honor.

THE COURT: Okay. And that's what the defense understands?

MR. HILFIGER: That's what I understand, yes.

THE COURT: The Court, unless I hear different, has sealed the original pleading. Unless there is an application otherwise, that will remain sealed. I don't know of any reason why it should or shouldn't but until I receive an

application, it will remain sealed.  But as I understand it, the witnesses' names will be turned over to the defendant on Monday?

MR. SPERLING: Yes, Your Honor.

(PAUSE)

THE COURT: The clerk has brought to my attention, in regard to the matters filed under seal that has to do with an application for a writ - - unless you file some - - and I'll ask the U.S. Attorney to advise the Court and the clerk by the close of business tomorrow, as to whether that should remain sealed, unless you know now.

MR. SPERLING: Until Monday, we would ask at this time that that remain under seal until Monday.  We can work with the Marshall (sic) service. I presume that the fact that it is under seal would not obviate our talking with them.

THE COURT: No.

MR. SPERLING: We can still talk with them, in order to give them that notice.

THE COURT: I'm just trying to clear up the record, to see if it should be - - if the announcement you've made today resolves everything that is under seal.

MR. SPERLING: I think it does, but we need to wait until Monday.  We want to have an opportunity to talk with the witnesses and to encourage them to show up here.

THE COURT: Well, I'll leave it unexecuted.  If you will notify the Court and the clerk by the end of the close of business on Monday.

Tr. of Individual Juror Qualification for Purposes of Stage One Proceedings held on

September 14, 2005 filed in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-

JHP, at pp. 840-843.

Other than citing to Model Rule 2.9, Petitioner has not cited any authority to establish that the Court could not hold an *ex parte* hearing on the government's motion. Furthermore, in light of the fact that the names of these witnesses were disclosed to defense counsel on September 19, 2005, and the actual selection of jurors did not commence until September 26, 2005,[10] any actions taken by this Court in relation to the *ex parte* hearing did not prejudice the defendant's rights under § 3432 in any way. Simply looking at what occurred as it unfolded, the Court was focused on the immediate legal proceedings (*i.e.*, death qualification of the jurors) before ruling upon the issues contained in the government's motion to delay disclosure of witnesses. Once an announcement was made that counsel had discussed those issues and had reached an agreed resolution, there was nothing left for the Court to decide. Therefore, this Court finds no reasonable person would harbor doubts about the judge's impartiality in light of the facts of this particular case.

## 2. *Budget and CJA Voucher Rulings*

Next, Petitioner alleges the Court's administrative decisions "express opinions prejudging the merits of the relevant claims" and therefore, pursuant to 28 U.S.C. § 455(b)(3), the Court is required to recuse. Specifically, Petitioner argues this Court's opinions "expressed in [its] administration of funds under the Criminal Justice Act cannot be separated from the issues that must be decided in Mr. Barrett's claims." Doc. 45, at p. 14. In support of this allegation, Petitioner incorporates two declarations, one from John Echols and one

---

[10] *See*, *United States v. Barrett*, 496 F.3d 1079, 1116-17 (10th Cir. 2007).

from Julia O'Connell.[11]  The gist of these two declarations is that the Court did not strictly follow the recommendations of the Federal Public Defender in the appointment of counsel in this case and did not automatically approve all claims submitted by defense counsel.  Initially, the Court attempted to appoint the Federal Public Defender for the Northern and Eastern Districts of Oklahoma but the Federal Public Defender felt his office could not accept the case due to their prior obligations to represent a capital eligible defendant in *United States v. Edward Leon Fields*, Case No. CR-03-73-RAW, also pending in the Eastern District of Oklahoma.  *See*, Doc. 1, Exhibit 67 -  Declaration of Julia O'Connell, at p. 1.  The Federal Public Defender recommended the appointment of John Echols and Rob Nigh[12] of Tulsa.  *Id.* After considering the recommendation of the Federal Public Defender as required by 18 U.S.C. § 3005, the Court appointed Mr. John Echols as lead counsel and Mr. Roger Hilfiger as co-counsel.  Mr. Echols had represented Mr. Barrett in two state court trials arising from the same set of facts as those underlying the federal indictment.  *Id*.  Mr. Echols did not, however, have any federal capital trial experience.[13]  On the other hand, Mr. Hilfiger had served as United States Attorney for the Eastern District of Oklahoma, had previously tried a federal capital case in the Eastern District of Oklahoma in which the jury decided against

---

[11]These declarations are labeled Exhibit 34 and 67.  When referring to these Exhibits, the Court will refer to them as Doc. 1, Exh. 34 or 67.  Any page references to these two exhibits will refer to the page numbers at the bottom of the exhibits' pages as opposed to the page number given by the CM/ECF system on the top of these pages.

[12]It should be pointed out that Mr. Nigh had a conflict of interest and when asked to accept appointment in this proceeding declined because of his conflict.

[13]*See* Doc. 310, Tr. of Sealed Budget Hearing on December 9, 2004 filed in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP, at p. 3.

imposing the death penalty against his client, and had an office in Muskogee (the location of the United States District Court for the Eastern District of Oklahoma).[14]

Additionally, Petitioner argues, "in the course of his administrative decisions, [this Court] expressed distrust of John Echols, Mr. Barrett's former counsel, whose request for investigative and expert assistance are now at issue."[15]  Doc. 45, at p. 15.  What Petitioner fails to acknowledge is that after Mr. Echols was allowed to withdraw at his request,[16] this Court repeatedly encouraged defense counsel to submit supplemental budget requests if they felt they needed additional funding.[17]  The budget was not carved in stone but as the definition implies was an estimate of what might reasonably be required.  Additionally, the record is

[14]*Id.*, at pp. 3-4.  *See also*, *United States v. James Norwood Hutching, et al.*, Case No. CR-92-32-FHS (E.D.Okla.).

[15]It should be noted that Mr. Echols filed only two CJA vouchers in Petitioner's criminal case.  The first voucher covered fees and expenses from October 20, 2004 thru January 31, 2005, CJA Voucher No. 0505060000012.  The second voucher covered fees and expenses from February 1, 2005 thru February 28, 2005, CJA Voucher No. 05056000014.  Mr. Echols was allowed to withdraw on May 5, 2005.  The trial did not begin until September 26, 2005.  Prior to approving payment on these vouchers as well as two CJA vouchers submitted by Mr. Hilfiger, this Court referred all four vouchers to the magistrate judge.  In a very thorough report and recommendation, the magistrate judge found an adjustment of time claimed by the attorneys was necessary due, in part, because of "striking similarities between the substance of pleadings" filed in Petitioner's criminal case and the substance of pleadings filed in a state court case in which Mr. Echols was involved.  *See*, Doc. 106 filed in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP, at p. 3.  On May 5, 2005, this Court entered an order affirming the magistrate's report and recommendation regarding defense counsel's CJA vouchers, as well as ruling upon several other *ex parte* defense motions.  Doc. 128 filed in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP.  See also, Doc. 38, Sealed Order Regarding Ex Parte Motion for approval of "Pre-Authorization" Budget for the Defense signed by Magistrate Judge Steven P. Shreder and filed on January 19, 2005 in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP detailing procedures to follow in submitting a proposed litigation budget and in submission of vouchers.

[16]Doc. 113, Tenth Ex Parte Motion Concerning the Funding of Mr. Barrett's Defense filed on April 6, 2005 and Doc. 128, Order filed May 5, 2005.  Both of these documents were filed in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP.

[17]*See*, Doc. 321, Transcript of Sealed Telephone conference held on May 5, 2005 in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115 (Court advised Mr. Hilfiger that it was granting Mr. Echols Motion to Withdraw and advised counsel he would be given an opportunity to inform the Court of the effect of this decision on the trial schedule, the budget and anything else to do with the case); Doc. 318, Transcript of Sealed Ex Parte Budget Hearing held on October 3, 2005 in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP (Court advised defense counsel that after granting Mr. Echols Motion to Withdraw the Court had indicated that an amended budget request would be considered but no amended budget was ever filed.  Counsel were again encouraged to advise the Court of any supplemental budget requests they might have; but counsel advised the Court that they felt the budget was sufficient for everything including all of the experts that they needed).  *See also*, Doc. No. 128, Order regarding funding issues filed on May 5, 2005 in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP.

clear that the Court encouraged defense counsel on numerous occasions to file amended budget requests and/or to advise the Court if it needed to amend its budget as the case proceeded. Furthermore, the defendant clearly did not seek recusal in a timely fashion as it relates to his allegations that the Court showed "distrust of Mr. Echols" and, therefore, this Court finds this allegation to be untimely. *See*, *United States v. Nickl*, 427 F.3d 1286, 1297 (10th Cir. 2005) (citing *United States v. Kimball*, 73 F.3d 269, 273 (10th Cir. 1995)( Party seeking recusal must do so in a timely fashion.)

Petitioner does not cite and this Court has not found any cases to establish that a judge who makes administrative budget decisions during the course of criminal proceedings is "serv[ing] in a governmental employment" capacity "as counsel, adviser or material witness" as those terms are used in 28 U.S.C. § 455((b)(3). To the extent the record establishes that counsel did not use the entire budget approved by this Court, Petitioner has failed to establish that this Court, in approving an initial litigation budget[18] and in ruling on the two CJA vouchers submitted by John Echols, demonstrated an opinion on the merits of the claims contained in his Motion to Vacate. It is not unheard of for a district court judge to appoint a licensed attorney to represent a criminal defendant and then during the course of ruling on an ineffective assistance of counsel claim in a subsequent § 2255 action for that same judge to find that counsel appointed by the court rendered ineffective assistance of counsel. Until the Court considers each of the allegations in a § 2255 case, along with the evidence presented to support those allegations, the Court has no way of prejudging the claims. Simply not

---

[18]Doc. 97 in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP.

following the recommendation of the Federal Public Defender does not establish that the Court has already decided any of the issues in this case.

### 3. *Court's decision regarding tolling of statute of limitations*

Finally, Petitioner argues this Court conducted "independent investigation" to use as a basis for denying Petitioner's motion to toll the statute of limitations. In support of this allegation, Petitioner cites Canon 2, Rule 2.9(C) of the Model Code for the proposition that independent investigation of facts by a judge is improper. The full text of the Rule relied upon states: "A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed." *Id.* Without citing any authority to establish that the Model Code is binding on this Court, Petitioner argues this Court's judicial finding that it had appointed the Federal Public Defender's Office for the Eastern District of California, and thereafter, relying upon the information contained on the public website of the Federal Public Defender's office[19] establishes bias or creates the appearance of bias toward Petitioner. As acknowledged by the government, the information which this Court took "judicial notice" of had no bearing on this Court's ultimate legal conclusion that there was no legitimate basis to authorize tolling of the statute of limitations in light of the specific facts considered by the Court. This was not a case where lead counsel died and no one else knew anything about the case. Rather, this is a case

---

[19]Without trying to address all of the trivial points raised regarding the specific language of this Court's Order filed on February 27, 2009 (Doc. 397), this Court would note that 18 U.S.C. § 3005 authorizes a district court to appoint "Federal Public Defender organizations" as opposed to individual attorneys within such an organization and this Court's written appointment order clearly envisioned that a Federal Public Defender organization was being appointed herein. *See*, Doc. 371, filed in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP.

where **lead counsel**, David Autry, had absolutely no medical concerns or other issues which were brought to the attention of this Court. Furthermore, lead counsel was aware for several months prior to requesting the Court toll the statute of limitations that he might need to take a more active role in preparation of petitioner's pleadings. Finally, whether or not the government felt tolling was appropriate, this Court had to make a legal decision regarding this issue. While petitioner and/or defense counsel may disagree with the legal decision made by this Court, the Supreme Court has made it clear that judicial rulings rarely constitute a valid basis for bias or partiality motions. *Liteky*, *supra*. *See also*, *Martin v. United States*, *supra*. Despite Petitioner's allegations, Petitioner has failed to establish that this Court's "impartiality might reasonably be questioned" or that this Court has any "personal knowledge of disputed evidentiary facts concerning the proceeding."

For the reasons set forth herein, this Court finds Petitioner has failed to establish, based upon the allegations in his Motion to Disqualify, either that a reasonable person knowing all of the facts would question this Court's impartiality, 28 U.S.C. § 455(a)) that this Court has a personal bias or prejudice against Petitioner or "personal knowledge of disputed evidentiary facts concerning this proceeding," 28 U.S.C. § 455(b)(1); or that this Court "has served in governmental employment and in such capacity participated as counsel, advisor or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case or controversy." 28 U.S.C. § 455(b)(3). Additionally, this Court does not anticipate being a witness in any proceedings in this case. 28 U.S.C. § 455 (5)(iv).

Accordingly, Petitioner's Motion to Disqualify based on 28 U.S.C. § 455 (Doc. 45) is hereby denied.

## CONCLUSION

For the reasons stated herein, it is the Order of this Court that Petitioner's Motion to Disqualify (Doc. 45) is hereby denied.

It is so ordered on this _11th_ of September, 2009.

James H. Payne
United States District Judge
Eastern District of Oklahoma