# DECLARATION OF DR. JEANNE RUSSELL

I, Jeanne Russell, declare the following:

I have a doctorate degree in education and counseling psychology, and am in private practice in Tulsa, Oklahoma. In the past and currently, I have consulted with counsel in capital murder cases as an expert witness, and have testified as an expert witness to my examination of capital clients in the state courts of Oklahoma.

In 2002 I was retained as an expert witness by the defense to conduct a risk assessment of Kenneth Eugene Barrett in connection with his state case in Sequoyah County, Oklahoma. A risk assessment, such as I performed on Mr. Barrett, involves a systematic review of past aggressive behavior, including the surrounding circumstances, and the use of testing instruments that are used to predict the likelihood of the subject being future danger to himself or others. That was the focus of my assessment. I did not evaluate Mr. Barrett's

1

neuropsychological functioning or focus on his psychological make-up, as the referral request was specific to risk assessment. The instruments I used were solely for the purpose of conducting this assessment.

In 2003 I evaluated Mr. Barrett and wrote a report of my findings, which was provided to the lawyers who represented Mr. Barrett in the Oklahoma state courts. I did not have to testify in the state case because Mr. Barrett was acquitted of first degree murder, and there was no penalty phase.

In mid-August, 2005, I received a telephone call from Bret Smith who introduced himself to me as an attorney representing Mr. Barrett in a federal criminal trial arising out of the same incident that was the subject of the state trial. He said the federal defense lawyers wanted to use me as a mitigation investigator for the federal trial. Based on my involvement in other capital cases, I informed Mr. Smith there was not time to complete a mitigation investigation, and as a

2

doctor of education and not a mitigation investigator I was not in a position to perform that role.

Mr. Smith asked me for a copy of my report on Mr. Barrett, indicating that he did not have a copy at the time. He asked that I help with the federal case. I informed him I could not conduct a new evaluation but could provide a copy of my previous data as there was not sufficient time or financial resources available for a new report and testimony. Mr. Smith sent me a follow-up letter dated August 16, 2005, regarding our telephone conversation. I understood at the time that Mr. Barrett's trial was then less than one month away. After our initial contact, I had several brief telephone conversations with Mr. Smith, and he came to my office on one occasion and discussed the case with me.

Subsequent to our discussion, I updated the risk assessment previously conducted on Mr. Barrett in connection with his state case. The report I signed on September 15, 2005 was mostly

Sep 23 09 01:31p    Jeanne  Russell, Ed.D    (918) 728-8387    p.5

based on the records from the 2003 assessment. In addition, I conducted some research on the effects of trauma on memory. It was my understanding that the prosecution would call an expert witness in this regard to explain gaps and inconsistencies in the testimony of law enforcement officers who participated in the raid on Mr. Barrett's house and rebuttal testimony may be required. This was the extent of my "investigation."

I was not called to testify at the federal trial. I am not certain why I was not called to testify, but my impression was that the defense did not want to "open the door" to rebuttal testimony from Dr. Randal Price, who did a risk assessment for the government.

It is my understanding that I was approved to conduct this evaluation primarily because I had worked on the state case, and therefore would not have to bill many hours. Mr. Smith informed me that there would be no approval for a

4

comprehensive mitigation investigation, even if there was time to do one, and even if I was qualified to do such an investigation. Bret Smith told me that the court provided very limited resources to the defense for the purpose of hiring experts or investigators.

From my work in the state case, I had various materials relating to Mr. Barrett's background. Based on Mr. Smith's comments and his description of materials he had, it is my belief that the federal attorneys did not have access to much of the material, including interviews of background witnesses that had been done in connection with the state prosecution.

In my experience in capital cases mitigation investigation and evaluation includes extensive interviewing, assessment and preparation. The mitigation investigator or investigators usually begin early in the case and gather educational, social, medical, jail, prison, psychological and other pertinent records on the client and his family. The client's background and

5

family history are also thoroughly investigated.   This did not occur in Mr. Barrett's 2005 case for the reasons previously expressed.    As stated, I did not perform such an investigation in connection with Mr. Barrett's federal case, and was not capable of performing or qualified to perform such an investigation, even if I had been approached immediately after Mr. Barrett was charged in federal court.

I have been informed that as a result of the investigation done following Mr. Barrett's conviction in federal court, evidence has been uncovered that Mr. Barrett has been diagnosed with bipolar disorder, and on neuropsychological tests shows impairment in his prefrontal and temporal cortices. I have been told that family and friends described him as mentally ill and paranoid.

I did not write this declaration.   The information contained in this declaration is based on what I told one of Mr. Barrett's current lawyers, David Autry, during telephone

6

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**


**KENNETH EUGENE BARRETT,**          )
                                     )
                    *Movant,*        )
                                     )
**v.**                               )          **Case No. 6:09-cv-00105-JHP**
                                     )
**UNITED STATES OF AMERICA,**        )
                                     )
                 *Respondent.*   )


---

**EXHIBIT 56**

**TO KENNETH EUGENE BARRETT'S**

**AMENDED MOTION PURSUANT TO 28 U.S.C. § 2255**

---

conversations and an in-person interview I had with him.   I have carefully reviewed this declaration, and it says what I told Mr. Autry during our conversations.

I declare, under penalty of perjury, that the foregoing 1-page declaration is true and correct.

Executed by me this 23 day of September, 2009, in Tulsa County, Oklahoma.

Dr. Jeanne Russell, Ed.D.

7