**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

|  |  |  |
|---|---|---|
| KENNETH EUGENE BARRETT, | ) | |
| | ) | |
| *Movant,* | ) | |
| | ) | |
| v. | ) | Case No. 6:09-cv-00105-JHP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent.* | ) | |

**EXHIBIT 90**

**TO KENNETH EUGENE BARRETT'S**

**AMENDED MOTION PURSUANT TO 28 U.S.C. § 2255**

## DELCARATION OF PAUL RICKIE LUNSFORD

I, Paul Rickie Lunsford, declare the following:

I am a friend of Kenneth Barrett and had known him seven or eight years at the time the police raided his shack in 1999. I am married and have two children with my current wife and two other children by a former runner up to Miss California. I grew up in California in the Bakersfield area and lived in many place in Central California and in the Mammoth Lakes area, which is how I got my Oklahoma nickname, "California Rick."

I am a former baker and cake decorator, a trade I practiced both here in Oklahoma and in California. I baked the cakes for the grand openings of the Wal-Mart super centers in Fort Smith, Arkansas. One of the cakes was an exact replica of the store, about twelve feet long and five-feet high. Every shopper got a piece of the store. I decorated Kenny's birthday cake every year. If I ever needed him, he was always there. There are a lot of people, but few characters and Kenny's a character. Kenny was trustworthy.

I first met Kenny when I brought him my 1992 Ford Escort, a hatchback, to him to repair. I cannot recall what was wrong with it or what Kenny charged, but Kenny had a reputation in the community as an excellent mechanic who was fair. At the time, I lived about a half-mile down the road from Kenny. Kenny and I developed a friendship. Some time prior to the raid, I set up a listening device in Kenny's garage, a security monitor so that Kenny could hear in the house if someone broke in. There were never any other listening devices on the grounds. Kenny set up the motion sensor light at the back door of the house himself. These devices were not to detect police; they were like anyone's burglar alarm.

1

I was at Kenny's house from noon on September 22, 1999 through 9:00 P.M. on September 23, 1999. On 9/22/08, at about noon, I went by Kenny's to drop off a truck I was selling to Kenny. The truck was a 1964 Chevy Custom Cab. I sold it for $1500, some cash, a stereo, and a 30-30. I remained at Kenny's for the next 33 hours. I parked the truck in front of the garage.

Kenny and I stayed up for the next 33 hours; we were doing methamphetamine. During this time, there were a lot of people coming and going to Kenny's. Monk Sanders never came by during that 33-hour period. However, others, including Travis Crawford, came by to do drugs, which he often did. In the late afternoon, on September 23, 2008, Kenny, a few others, and I were standing near the fence to Kenny's property. Travis came over from his parents' place and asked Kenny if he had seen the white SUV with tinted windows that went by, which was of particular note because it had gone down a dead end road and not yet returned. Travis said he thought they were police.

Kenny did not trust Travis at all; Travis made him nervous. Travis was pretending to watch Kenny's back, but Kenny knew better. Kenny was not nervous about the police. He was nervous about Travis. Travis is a real flaky person who was a police informant. Kenny shrugged Travis off and Travis went back to his house. Once Travis had left, Kenny told us that anyone who wanted to leave could. Kenny said, "Hey, you guys might want to leave because the car that drove by was cops." Kenny was concerned the police would come by his place and that we would all get in trouble because we were all holding drugs. Kenny opened the gate to let out anyone out who wanted to go. There were three or four of us. The others left, but I remained with Kenny. Kenny re-locked the

2

gate and we went back to the house or the garage without our seeing the SUV again.

Kenny never said anything about going down in a blaze of glory. Kenny would not say that or want that. That was not who Kenny was.

Kenny had a case pending at the time. I knew about the case because once Kenny had borrowed my phone to call his lawyer. I knew Kenny had a case, but I never heard that there was a warrant out for Kenny.

I left about three hours before they raided Kenny's place. Toby, Kenny's son, was the only one still there besides Kenny. Toby was living there at the time.

I knew Travis Crawford and Cindy Crawford. They acted as if they would do anything if their freedom were threatened and therefore their ability to get dope.

I have never been interviewed before or during Kenny's trial by an investigator or defense attorney working on Kenny's behalf.

An investigator working on Kenny's case asked me about Kenny, our friendship, what I knew about the raid, and Travis and Cindy Crawford. After I told him what I knew, he asked if I would give a written statement. He showed me this declaration and asked me to read it carefully. I have and it says what I told the investigator during our meetings. If I had been asked to testify about the same things at Kenny's trial this declaration is what I would have said.

I declare, under penalty of perjury, that the foregoing 3 page declaration is true and correct.

Executed by me this _26_ _FeB_ day of 2009, in _SeQuoyAh_ County, Oklahoma.

3

Paul Rickie Lunsford

4