**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **KENNETH EUGENE BARRETT,** | ) | |
| | ) | |
| *Movant,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:09-cv-00105-JHP** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Respondent.* | ) | |

---

**EXHIBIT 112**

**TO KENNETH EUGENE BARRETT'S**

**AMENDED MOTION PURSUANT TO 28 U.S.C. § 2255**

---

Declaration of LAUREN COHEN BELL, Ph.D., regarding sentencing dynamics in federal death penalty cases.

1. I am currently Associate Professor of Political Science and Associate Dean of the College at Randolph-Macon College in Ashland, Virginia, where I have been a faculty member since September 1999. Among the subjects I teach are public policy, judicial process, constitutional law, and research methodology.

2. In my research, I regularly perform quantitative analysis of data and rely on the Statistical Package for the Social Sciences (SPSS) to organize and analyze such data. The use of quantitative analysis in social science and the use of SPSS in particular is an integral part of the research methodology course I teach. I have authored or coauthored a total of 21 books, book chapters, and peer-reviewed articles and have presented nearly 30 academic papers at scholarly meetings. I am a member of the editorial board of *Justice System Journal* and a regular manuscript reviewer for *American Politics Research,* Routledge Publishers, *Journal of Politics*, Congressional Quarterly Press, Longman Publishers, Cambridge University Press, *Law and Society Review, American Journal of Political Science, Justice System Journal, Judicature, Political Studies Quarterly,* and *PS: Political Science and Politics.*

3. Between August 2006 and August 2007, I served as one of four United States Supreme Court Fellows. I was posted at the U.S. Sentencing Commission where I worked closely with the Office of Research and Data on the design and implementation of the Commission's 2007 study of the effect of minor offenses on the calculation of offenders' criminal history scores.

4. I hold Masters and Ph.D. degrees in political science from the University of Oklahoma's Carl Albert Congressional Research and Studies Center. A copy of my *curriculum vitae* is attached.

5. I have been asked to conduct an analysis of federal capital prosecutions focusing on the dynamics of death sentencing in cases involving white victims in comparison with the dynamics of death sentencing in cases not involving white victims.

6. In order to conduct these analyses, I was provided with data maintained by Kevin McNally on behalf of the Federal Death Penalty Resource Counsel Project. I used SPSS to create a database of 403 cases authorized and completed as capital prosecutions by the U.S. Department of Justice between 1989 and August 2008. For purposes of analyzing sentencing dynamics, I excluded from the analysis six cases: one in which the charged offense was treason and there were no identified victims; and five in which there were mass numbers of victims. (These were large-scale terrorist attacks: the Oklahoma City bombing, the September 11 attack, and the bombing of two U.S. embassies in Africa.) The cases were excluded because where there is either no victim or where there are mass casualties it is not possible to isolate a white victim effect on sentencing. This is consistent with the way other researchers have addressed issues of race and gender in sentencing. This left 397 authorized capital prosecutions for analysis.

7. I used statistical procedures generally applied in the analysis of quantitative data to assess whether the death penalty was imposed differently in cases involving defendants who killed white victims as opposed to victims of other races: descriptive statistics provide a "snapshot" of the characteristics of the data; crosstabulations show how two variables interact with one another; and chi-square analysis provides an indicator of whether an

2

observed relationship occurs by chance or because of a systematic interaction between the two variables.

8. My analysis, as reflected in the charts below, demonstrates that defendants who kill white victims receive the death penalty at a substantially higher rate than defendants whose victims are not white and that this correlation between white victims and death sentencing is highly statistically significant, systematic, and not the result of chance.

9. The data used in the analysis have the following characteristics:

| Condition of Interest | Number of Cases | |
|---|---|---|
| All Authorized Cases | 403 | |
| Authorized Cases Involving Victim | 402 (see paragraph 6, above) | |
| Authorized Cases Excluding Mass Killings | 397 (see paragraph 6, above) | |
| Death Penalty Imposed | 60 | |
| Death Penalty Not Imposed | 337 | |
| White Victim (WV) | 146 | |
| No WV | 251 | |
| Sentencing Trial Completed | 182 | |
| Sentencing Trial Involving WV | | 75 |
| Sentencing Trial, No WV | | 107 |
| Death Penalty Imposed, WV | | 37 |
| Death Penalty Imposed, No WV | | 23 |

10. The results of the chi-square analysis for cases involving a white victim are as follows: Table 1 summarizes the analysis of death sentences among the set of 397 authorized federal capital cases. As explained in paragraph 6, this includes all but six authorized prosecutions. Table 1 indicates that defendants in cases involving a white victim were

3

sentenced to death 25.3 percent of the time (in 37 of 146 cases). Defendants in cases not involving a white victim were sentenced to death 9.2 percent of the time (in 23 of 251) cases. Thus, a defendant charged with killing a white victim was nearly three times (2.75) more likely to be sentenced to death than a defendant charged with killing a victim who was not white. These results are statistically significant at the $p<.001$ level, indicating that the probability that this relationship has been observed by chance is essentially zero.

**Table 1: Relationship between the Presence of White Victim (WV) and the Imposition of a Death Sentence – All Authorized Cases Except Mass Casualties (N=397)**

| Data Source | Condition (N) | Percent (Formula) |
|---|---|---|
| Set of All Cases (N =146) with White Victim | Death-Sentenced (37) | 25.3 (37 of 146) |
| | Non-Death Sentenced (109) | 74.7 (109 of 146) |
| Set of All Cases (N=251) with no White Victim | Death-Sentenced (23) | 9.2 (23 of 251) |
| | Non-Death-Sentenced (228) | 90.8 (228 of 251) |
| Set of All Cases (N=60) Involving a Death Sentence | Cases with White Victim (37) | 61.7 (37 of 60) |
| | Cases with no White Victim (23) | 38.3 (23 of 60) |
| Set of All Cases (N=337) Not Involving a Death Sentence | Cases with White Victim (109) | 32.3 (109 of 337) |
| | Cases with no WV (228) | 67.7 (228 of 337) |

11. Table 2 looks at the smaller set of authorized capital cases that proceeded through to a capital sentencing trial. It indicates that among those for whom life or death decisions were made by judges or juries, defendants in cases involving a white victim received a death sentence 49.3 percent of the time (in 37 of 75 cases). Defendants in cases where there was no white victim were sentenced to death 21.5 percent of the time (in 23 of 107

4

cases). A defendant in a federal capital trial thus was almost two-and-one-third (2.29) more likely to be sentenced to death in a case involving a white victim than a defendant in a case in which there was no white victim. These results are also statistically significant at the $p<.001$ level, indicating the probability that this relationship has been observed by chance is essentially zero.

**Table 2: Relationship between the Presence of White Victim (WV) and the Imposition of a Death Sentence – Sentencing Trial Cases Only (N=182)**

| Data Source | Condition (N) | Percent (Formula) |
|---|---|---|
| Set of All Cases (N =75) with White Victim | Death-Sentenced (37) | 49.3 (37 of 75) |
| | Non-Death Sentenced (38) | 50.7 (38 of 75) |
| Set of All Cases (N=107) with no White Victim | Death-Sentenced (23) | 21.5 (23 of 107) |
| | Non-Death-Sentenced (84) | 78.5 (84 of 107) |
| Set of All Cases (N=60) Involving a Death Sentence | Cases with White Victim (37) | 61.7 (37 of 60) |
| | Cases with no White Victim (23) | 38.3 (23 of 60) |
| Set of All Cases (N=122) Not Involving a Death Sentence | Cases with White Victim (38) | 31.1 (38 of 122) |
| | Cases with no WV (84) | 68.9 (84 of 122) |

12. After reviewing the results of these analyses, it is clear that there is a robust correlation between the presence of a white victim and the imposition of a death sentence. Social scientists consider a result to be robust when changing the assumptions undergirding an analysis would be unlikely to affect its results, which is the case here. Cases in which there is white victim represent 36.7 percent of all authorized prosecutions (146 of 397) and 41.2 percent of authorized prosecutions completing a penalty phase trial (75 of 182);

5

however they represent 61.7 percent of death sentences (37 of 60). These results are highly statistically significant. The generally accepted standard for statistical significance in political science research is $p<.05$, meaning the probability that the results occurred by chance is less than five percent. In the case of these analyses, the findings are statistically significant at a higher level of $p<.001$, meaning the probability they occurred by chance is less than one-tenth of one percent, or one in one thousand. Given the robust quality of these findings, it is my opinion to a reasonable degree of scientific certainty that this correlation of more severe sentencing outcomes and white victims is unlikely to disappear even in the presence of other potentially explanatory variables.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 3rd day of October, 2008.

Lauren Cohen Bell

6

Appendix: SPSS Output Used to Generate the Foregoing Analysis

**Case Processing Summary**

| | Cases | | | | | |
|---|---|---|---|---|---|---|
| | Valid | | Missing | | Total | |
| | N | Percent | N | Percent | N | Percent |
| Death Penalty Imposed * race2 | 397 | 100.0% | 0 | .0% | 397 | 100.0% |

**Death Penalty Imposed * race2 Crosstabulation**

| | | | White Victim | | |
|---|---|---|---|---|---|
| | | | No | Yes | Total |
| Death Penalty Imposed | No | Count | 228 | 109 | 337 |
| | | % within Death Penalty Imposed | 67.7% | 32.3% | 100.0% |
| | | % within race2 | 90.8% | 74.7% | 84.9% |
| | Yes | Count | 23 | 37 | 60 |
| | | % within Death Penalty Imposed | 38.3% | 61.7% | 100.0% |
| | | % within race2 | 9.2% | 25.3% | 15.1% |
| Total | | Count | 251 | 146 | 397 |
| | | % within Death Penalty Imposed | 63.2% | 36.8% | 100.0% |
| | | % within race2 | 100.0% | 100.0% | 100.0% |

**Chi-Square Tests**

| | Value | df | Asymp. Sig. (2-sided) | Exact Sig. (2-sided) | Exact Sig. (1-sided) |
|---|---|---|---|---|---|
| Pearson Chi-Square | 18.834[b] | 1 | .000 | | |
| Continuity Correction[a] | 17.594 | 1 | .000 | | |
| Likelihood Ratio | 18.134 | 1 | .000 | | |
| Fisher's Exact Test | | | | .000 | .000 |
| Linear-by-Linear Association | 18.787 | 1 | .000 | | |
| N of Valid Cases | 397 | | | | |

a. Computed only for a 2x2 table

b. 0 cells (.0%) have expected count less than 5. Minimum expected count is 22.07.

7

**Case Processing Summary**

| | Cases | | | | | |
|---|---|---|---|---|---|---|
| | Valid | | Missing | | Total | |
| | N | Percent | N | Percent | N | Percent |
| Death Penalty Imposed * race2 | 182 | 100.0% | 0 | .0% | 182 | 100.0% |

**Death Penalty Imposed * race2 Crosstabulation**

| | | | White Victim | | |
|---|---|---|---|---|---|
| | | | No | Yes | Total |
| Death Penalty Imposed | No | Count | 84 | 38 | 122 |
| | | % within Death Penalty Imposed | 68.9% | 31.1% | 100.0% |
| | | % within race2 | 78.5% | 50.7% | 67.0% |
| | Yes | Count | 23 | 37 | 60 |
| | | % within Death Penalty Imposed | 38.3% | 61.7% | 100.0% |
| | | % within race2 | 21.5% | 49.3% | 33.0% |
| Total | | Count | 107 | 75 | 182 |
| | | % within Death Penalty Imposed | 58.8% | 41.2% | 100.0% |
| | | % within race2 | 100.0% | 100.0% | 100.0% |

**Chi-Square Tests**

| | Value | df | Asymp. Sig. (2-sided) | Exact Sig. (2-sided) | Exact Sig. (1-sided) |
|---|---|---|---|---|---|
| Pearson Chi-Square | 15.463[b] | 1 | .000 | | |
| Continuity Correction[a] | 14.229 | 1 | .000 | | |
| Likelihood Ratio | 15.422 | 1 | .000 | | |
| Fisher's Exact Test | | | | .000 | .000 |
| Linear-by-Linear Association | 15.378 | 1 | .000 | | |
| N of Valid Cases | 182 | | | | |

a. Computed only for a 2x2 table

b. 0 cells (.0%) have expected count less than 5. Minimum expected count is 24.73.

8