**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **KENNETH EUGENE BARRETT,** | ) | |
| | ) | |
| *Movant,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:09-cv-00105-JHP** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Respondent.* | ) | |

---

**EXHIBIT 113**

**TO KENNETH EUGENE BARRETT'S**

**AMENDED MOTION PURSUANT TO 28 U.S.C. § 2255**

---

## DECLARATION OF KEVIN McNALLY REGARDING TESTIMONY
## IN *UNITED STATES V. TAYLOR* (E.D. TN No. 1:04-CR-00160-1)

1. I currently serve as the Director of the Federal Death Penalty Resource Counsel Project [FDPRC]. I have served as a Resource Counsel since the inception of the Resource Counsel Project in January, 1992. The Project is funded and administered under the Criminal Justice Act by the Office of Defender Services of the Administrative Office of the United States Courts. We assist court-appointed and defender attorneys charged with the defense of capital cases in the federal courts.[1]

2. My responsibilities as Federal Death Penalty Resource Counsel include the monitoring of federal capital prosecutions throughout the United States in order to help ensure the delivery of adequate defense services to indigent capital defendants in such cases. This effort, in turn, includes the collection of data on a wide variety of topics regarding federal capital cases, including decisions by the Attorney General to seek or not seek the death penalty and decisions by juries or judges whether to impose the death penalty. This includes the factual scenario, allegations and evidence, the number of homicide victims, the race or ethnic background of the defendant and the victim(s) and the statutory and non-statutory aggravating and mitigating circumstances alleged and found by the jury.

3. In order to carry out the duties entrusted to me, I maintain a comprehensive list of federal death penalty prosecutions and information regarding Department of Justice allegations in these

---

[1]The work of the Federal Death Penalty Resource Counsel Project is described in the report prepared by the Subcommittee on Federal Death Penalty Cases, Committee on Defender Services, Judicial Conference of the United States, FEDERAL DEATH PENALTY CASES: RECOMMEN-DATIONS CONCERNING THE COST AND QUALITY OF DEFENSE REPRESENTATION (May, 1998), at 28-30. www.uscourts.gov/dpenalty/1COVER.htm. The Subcommittee report "urges the judiciary and counsel to maximize the benefits of the Federal Death Penalty Resource Counsel Project ..., which has become essential to the delivery of high quality, cost-effective representation in death penalty cases ..." *Id.* at 50.

cases. I accomplish this by reviewing dockets and downloading and obtaining indictments, pleadings of substance, notices of intent to seek or not seek the death penalty, by reviewing transcripts, reviewing media accounts of trials, reviewing DOJ press releases and by telephonic or in-person interviews with defense counsel or consultation with chambers. This information is regularly updated, and is checked for accuracy with defense counsel. The Project's information regarding federal capital prosecutions has been relied upon by the Administrative Office of the United States Courts, by the Federal Judicial Center and by various federal district courts.

4. I have been asked by appointed counsel for Rejon Taylor to testify before the jury regarding the federal death penalty and issues of race and fairness, including statistics regarding the race of the defendant and victim, the facts and circumstances, the allegations of statutory and non-statutory aggravating circumstances, the jury findings and the results in other federal death penalty cases.

5. Since 1988, the Attorney General has authorized a capital prosecution against 403 defendants as to whom the capital prosecution has been completed, to the extent that a decision imposing or rejecting the death penalty has been made by the Attorney General and/or a jury or a judge. FDPRC has determined the race and gender of the defendants and victims as to each of these 403 "authorized" capital defendants. Additionally, FDPRC has determined the number of homicide victims attributable to each defendant. This information is captured in a report previously filed with the Court [Docket Entry 701, Exhibit B], along with the defendant's name, the district and the indictment number. FDPRC has obtained and reviewed the Notice of Intent to seek the Death Penalty and the jury findings regarding aggravating and mitigating circumstances in these cases.

6. Each of these 403 defendants is categorized in the report by a descriptive name relating to the disposition of the case. The categories, which FDPRC uses in our database, are as follows: "Acquittal," "Authorization withdrawn," "Awaiting resentencing or retrial," "Clemency," "Death Row," "Death Sen Vac & AW," "Dismissal after notice by judge," "Executed," "Guilty plea," "Incompetent after authorization," "Innocent," "Killed or died after authorization," "Lesser included conviction" and "Life sentence."

7. "Acquittal" means that the jury found the defendant not guilty of the capital charge.

8. "Authorization withdrawn" means that the Attorney General withdrew the request for the death penalty either before or during trial.

9. "Awaiting resentencing or retrial" means that the defendant received a sentence of death, but an appellate court has ordered a retrial or resentencing which has not yet occurred.

10. "Clemency" means that the President granted clemency to an individual who was sentenced to death.

11. "Death Row" means that a person is under a sentence of death and is awaiting appellate or post-conviction review.

12. "Death Sentence Vacated and Authorization Withdrawn" (Death Sen Vac & AW) means that a death sentence was reversed by an appellate court and the Attorney General withdrew the request for the death penalty.

13. "Dismissal after notice by Judge" means that a Judge has declined to permit the government to seek the death penalty, due to a legal reason.

14. "Executed" means that the sentence of death was carried out.

15. "Guilty plea" means that a plea agreement involving a non-death sentence (usually life)

- 3 -

was approved by the Attorney General and accepted by the Court, either before or during trial.

16. "Incompetent after authorization" means that the Court found the defendant incompetent, after the Attorney General authorized a capital prosecution.

17. "Innocent" means that the government moved to dismiss the capital count and either prosecuted another individual or the prosecutor admitted he/she was unable to prove the capital charge.

18. "Killed or died after authorization" means that the individual was killed or committed suicide after the Attorney General had authorized a capital prosecution before or during a trial.

19. "Lesser included conviction" means that the jury did not find a statutorily required aggravating circumstance or the required mental state threshold.

20. "Life sentence" means that the jury, or in two cases a judge, sentenced the defendant to life in prison.

21. 110 of the 403 individuals reached a plea agreement with the government that was accepted by the Court. The Attorney General withdrew the request for the death penalty as to an additional 57 individuals for various reasons.

22. 188 of the 403 individuals were tried by a jury or judge.

23. The numerical distribution of these cases is as follows:

| | |
|---|---|
| Acquittals | 13 |
| Authorization withdrawn | 48 |
| Authorization withdrawn at trial | 9 |
| Death sentence | 61 |
| Dismissal of notice by judge | 24 |
| Guilty pleas | 110 |
| Incompetent | 2 |
| Innocent | 3 |
| Killed/Died | 3 |
| Lesser included | 3 |

− 4 −

| | |
|---|---|
| Life sentence | <u>127</u> |
| **Total** | **403** |

24. One defendant of the 403 "authorized" defendants described above was charged with espionage and there was no homicide victim.

25. Five of the 403 defendants were accused of acts of mass murder/terrorism/bombing and were tried by a jury. These individuals were Timothy McVeigh and Terry Nichols (the Oklahoma City bombing), Mohamed Rashed Al'Owhali and Khalfan Khamis Mohamed (the African Embassy bombings) and Zacarias Moussaoui (convicted of participation in the September 11, 2001 attack on the World Trade Center in New York).

26. In cases with multiple murders, if one homicide victim is white, the case is coded as involving a white victim.

27. In the attached report, "M" means male, "F" means female, "W" means white, "H" means Hispanic, "B" means African-American, "A" means Asian, "NA" means Native American, "I" means Indian and "O" means other.

28. I provided the attached data set to Lauren Cohen Bell, Ph.D., and requested that she provide an expert opinion as to whether the race of the victim(s), in particular white victims, in federal capital cases has a statistically significant effect on the death sentencing rate. Her analysis is attached. It indicates that defendants who kill a white victim or victim(s) are nearly three times as likely than other capital defendants to be sentenced to death, that the race of the victim is "highly statistically significant" and that the likelihood that this occurs by chance is "essentially zero."

29. I am able to testify regarding the facts and circumstances of the following cases: *United States v. Anthony Jones* (D. MD CR No. WMN-96-0458); *United States v. Terry Lynn Nichols* (D. CO No. 96-CR-68-M); *United States v. Khalfan Khamis Mohamed and Mohamed Rashed Daoul*

- 5 -

*Al'Owhali* (S.D. NY No. S6 98 CR 1023); *United States v. Mariano Martinez* (C.D. CA No. 99-83-(A)-DT); *United States v. William and Rudy Sablan* (D. CO No. 00-CR-531); *United States v. Zacarias Moussaoui* (E.D. VA No. 01-CR-455); *United States v. Michael* O'Driscoll (M.D. PA No. 4-CR-01-277); *United States v. Barry Byron Mills, Tyler Davis Bingham, Wayne Bridgewater and Henry Michael Houston* (C.D. CA No. 02-00938-GHK); *United States v. Kenneth McGriff* (E.D. NY No. 04-966 (ERK)) and *United States v. Ellis Mosher* (E.D. TX No. 1:06 CR 00101-TH). I would testify that each of these individuals were sentenced by a jury to life in prison without release and that all are housed at ADX Florence, the so-called federal "Supermax" prison. This information was obtained from the Bureau of Prisons website. http://www.bop.gov/iloc2/LocateInmate.jsp (last viewed on October 3, 2008).

30. *United States v. Anthony Jones* (D. MD CR No. WMN-96-0458) involved multiple (six) killings: one in '94, four in '96, one in '97. Authorization was granted to seek the death penalty for three murders, including an allegation that Jones ordered his step-brother killed from jail because he feared he was about to become a government witness. Jones also ordered the murder, by the victim's own bodyguards, of a rival Baltimore drug dealer who had earlier attempted to arrange the murder of Mr. Jones. Numerous other homicides, attributed to Jones, were alleged in aggravation. Murder for hire was alleged as an aggravating circumstance. Jones was convicted in 1998, sentenced to life without release. Eight co-conspirators were involved in multiple murders but did not face the death penalty. Jones was sent to the "Control Unit" at "super-max," ADX in Florence, Colorado, where he is under severe communication restrictions for 10 years. The defendants and victims were black.

31. *United States v. Terry Lynn Nichols* (D. CO No. 96-CR-68-M) involved Timothy McVeigh's co-defendant in the Oklahoma City bombing case. He was sentenced in 1998 to life imprisonment in federal court and faced the death penalty in state court where he was also sentenced to life in prison. McVeigh was executed.

32. *United States v. Khalfan Khamis Mohamed and Mohamed Rashed Daoul Al'Owhali* (S.D. NY No. S6 98 CR 1023) involved foreign national accomplices of Usama bin Ladin, the organizer of two bombings of American embassies in Africa. The August 7, 1998 bombings in Kenya and Tanzania killed 224 people, including 12 Americans. More than 5,000 people were injured. Al-'Owhali is a Saudi citizen who was arrested in Nairobi after the bombing. Mohamed and Al'Owhali are members of al-Qaida, an international terrorist organization, led by bin Laden, who has repeatedly issued various "fatwahs" against the United States. A co-defendant stabbed a jail guard in the eye and caused brain damage during an escape attempt.

33. *United States v. Mariano Martinez* (C.D. CA No. 99-83-(A)-DT) involved defendants in one of three related multiple murder Mexican Mafia prosecutions. "Chuy" Martinez, 41, was a "drug kingpin," the head of a narcotics organization. There were a total of four murders and 13 conspiracies to commit murder charged. Three men, one a drug dealer and two innocent bystanders, all Hispanic, were killed in a Monticello autobody shop. Martinez orchestrated the killings using a walkie-talkie. Max Torvisco, once Martinez's right hand man, obtained a plea agreement. He admitted ordering 140 murders. Wiretaps show Martinez ordering numerous murders.

34. *United States v. William and Rudy Sablan* (D. CO No. 00-CR-531) involved an inmate killing - an evisceration stabbing of cellmate (in their cell). The aftermath of the murder was recorded on videotape. The letter "S" was written on the cell wall in the victim's blood and his organs

- 7 -

removed and held up for the guards to see. The defendants are foreign nationals, Pacific Islanders, "Chmorran", from Saipan. The victim is Hispanic. The defendants, cousins, were doing federal time for a hostage-taking in Guam. William had a 20 year history of violent crime.

35. *United States v. Zacarias Moussaoui* (E.D. VA No. 01-CR-455) involved a foreign national and co-conspirator in the September 11, 2001 terrorist attack on the World Trade Center and Pentagon which killed over 3,000 and resulted in four airline crashes in New York, Pennsyvlania and Washington, D.C. Moussaoui is French of Moroccan descent and is a member of al-Qaida. He was in jail on September 11 after suspicious actions at a Minnesota flight school. There were victims of many nationalities and races.

36. *United States v. Michael* O'Driscoll (M.D. PA No. 4-CR-01-277) the stabbing and killing of an inmate at USP - Allenwood in 1997. There were half a dozen correctional officers who witnessed the end of the stabbing. Both the defendant and victim are white.

37. *United States v. Barry Byron Mills, Tyler Davis Bingham, Wayne Bridgewater and Henry Michael Houston* (C.D. CA No. 02-00938-GHK) were charged in a racketeering indictment of 40 members and associates of the Aryan Brotherhood [AB] for a string of murders and violent attacks allegedly designed to expand the power of the white racist prison gang, which was founded at San Quentin state prison in 1964. Authorities say the gang has about 100 members. In 1980, the federal faction of the AB formed a three-man "Commission" to oversee AB members in federal prisons, and, in 1993, the Federal Commission formed a "Council" to oversee the day-to-day activities of the federal faction. 17 murders were alleged. Multiple (at least six) murders occurred since 1996. Twenty-seven defendants initially were eligible for the death penalty. Mills and Bingham made all major decisions involving the criminal activities of the federal faction. Mills was

also charged with personally committing one murder and involvement in numerous murders. AB members who were selected to face the death penalty were: McIntosh, Knorr, Sahakian, McElhiney, Littrell, Bridgewater, Terflinger, Schwyhart, Houston, Griffin, Chance, Stinson, Mills and Bingham. Mills and Bingham were sentenced to life in prison in 2006, as were Bridgewater and Houston at a separate trial in 2007. The Attorney General dropped the remaining capital prosecutions against the Aryan Brotherhood.

38. *United States v. Kenneth McGriff* (E.D. NY No. 04-966 (ERK)) involved Kenneth "Supreme" McGriff, the leader of a notorious Queens-based drug gang, "The Supreme Team," that operated in the 1980's. He went to prison after pleading to a Continuing Criminal Enterprise and receiving a 12-year sentence. Upon his release, he resumed drug trafficking. McGriff and co-defendants were charged with two VICAR murders that took place in 2001. All involved are African-American.

39. *United States v. Ellis Mosher* (E.D. TX No. 1:06 CR 00101-TH) involved a 1998 inmate killing at Beaumont FCI.

40. I am also able to testify as to the facts and circumstances of other cases involving the murder of a government informant or witness which have resulted in a life sentence after trial. I previously listed these cases in a declaration filed of record [DE 701, Ex. A, paragraph 7]. Descriptions of the facts and circumstances of these cases have also been previously filed of record [DE 701, Ex. C].

41. I am able to produce the Notice of Intent to Seek the Death Penalty (which contains the Government's allegation of statutory and non-statutory aggravating circumstances) and the jury

findings of statutory and non-statutory aggravating circumstances and statutory and non-statutory mitigating circumstances in all these cases.

42.  I am able to testify as to the race of all of these capital defendants and their victims, the number and nature of aggravating and mitigating circumstances and the number of homicide victims in all of these cases.

43.  Rejon Taylor's date of birth is September 15, 1984 and the date of the capital offense is August 6, 2003.  Therefore, Mr. Taylor was 18 years old at the time of the homicide.  If the capital crime had occurred 11 months earlier, Mr. Taylor would not have been eligible for the death penalty.  18 U.S.C. §3591(a).  *See Roper v. Simmons,* 543 U.S. 551 (2005).

44.  No federal capital defendant who was 18 at the time of the capital offense has been sentenced to death for a single homicide.

45.  No federal capital defendant has been sentenced to death in a prosecution involving a struggle for a gun leading to a shooting or a factual scenario similar to that.

46.  The information detailed herein is maintained in the ordinary course of business of the Federal Death Penalty Resource Counsel Project and is accurate to the best of my knowledge, ability and belief.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of October, 2008.

Kevin McNally
Federal Death Penalty Resource Counsel

- 10 -