**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **KENNETH EUGENE BARRETT,** | ) | |
| | ) | |
| *Movant,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:09-cv-00105-JHP** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Respondent.* | ) | |

---

**EXHIBIT 118**

**TO KENNETH EUGENE BARRETT'S**

**AMENDED MOTION PURSUANT TO 28 U.S.C. § 2255**

---

## DECLARATION OF RICHARD H. BURR

Richard H. Burr, under penalty of perjury, declares the following:

### *Qualifications and Experience of Declarant*

1.      I am an attorney in private practice in Houston, Texas.  My practice has been devoted entirely to the trial, appellate, and post-conviction representation of defendants in capital cases since 1979.  I have represented persons in well over one hundred capital cases in twelve states and in the federal courts during this time.  Although my work has been heavily oriented toward post-conviction and habeas corpus proceedings, I have been trial counsel in three capital prosecutions, including *United States v. Timothy James McVeigh*, No.  96-CR-68 (D. Colo.) (the Oklahoma City bombing case), where I was lead counsel for the penalty phase and for penalty-related work.  I have argued two capital cases in the Supreme Court of the United States, *Ford v. Wainwright*, 477 U.S. 399 (1986), and *Selvage v. Lynaugh*, 494 U.S. 108 (1990), and served as co-counsel on two others, *Hitchcock v. Dugger*, 481 U.S. 393 (1987), and *Tennard v. Dretke*, 542 U.S. 274 (2004).

2.      Because of my experience, I have been retained by the Office for Defender Services of the Administrative Office of the United States Courts, along with eight other similarly experienced attorneys, to serve through the Federal Death Penalty Resource Counsel project as an advisor and consultant to court-appointed and federal defender attorneys engaged in the defense of capital cases in the federal courts.  Through this project, I work extensively with counsel appointed to represent people charged in federal capital cases.  In a report by the Subcommittee on Federal Death Penalty Cases of the Committee on Defender Services of the Judicial Conference of the United States, FEDERAL DEATH PENALTY CASES: RECOMMENDATIONS CONCERNING THE COST AND QUALITY OF DEFENSE REPRESENTATION (May, 1998) – which was

adopted by the Judicial Conference – the work of our project was found to be "essential to the delivery of high quality, cost-effective representation in death penalty cases...." *Id.* at 50.

3.    I have been asked by the attorneys for Kenneth Barrett to recount my contact with trial counsel for Mr. Barrett in my role as resource counsel.

4.    I first heard from John Echols, who was appointed initially as lead counsel for Mr. Barrett, on October 21, 2004.  Mr. Echols and I discussed the case, which was at that point pre-indictment, and focused primarily on the Department of Justice death penalty authorization process and case budgeting.  In connection with this, Mr. Echols recounted at length his previous representation of Mr. Barrett on state charges arising from the same incident and stressed that his mitigation investigation in the state case was not at all adequate.  He was emphatic about the need to secure enough mitigation investigative and expert resources to develop mitigation fully.

5.    In this first telephone call, I also learned from Mr. Echols that Roger Hilfiger had been appointed co-counsel.  This was of concern to me, because my project, through the federal defender, had recommended to the Court appointment of Rob Nigh, an experienced and excellent death penalty defense attorney from Tulsa, as co-counsel with Mr. Echols.  I was concerned that Mr. Hilfiger had not had much federal death experience and believed that since the circumstances of Mr. Barrett's offense created a high risk of a death sentence, both of Mr. Barrett's counsel needed to bring considerable death penalty experience and a history of quality work in such cases.[1]  To my knowledge, Mr. Hilfiger did not meet those criteria.

---

[1]One of the responsibilities of Federal Death Penalty Resource Counsel is to assist federal defenders in their statutory duty under 18 U.S.C. § 3005 to recommend to the district courts appointment of counsel in federal capital prosecutions.  As this responsibility has been elaborated in the Volume 7 of the *Guidelines for the Administration of the Criminal Justice Act and Related Statutes*, Chapter 6.01(B)(1), "Ordinarily, 'learned counsel' (see 18 U.S.C. § 3005) should have distinguished prior experience in the trial, appeal, or post-conviction review of federal death penalty cases, or distinguished prior experience in state death penalty trials, appeals or post-conviction review that, in combination with co-counsel, will assure high-quality representation."

6.      Following this phone call, I arranged for my project to send a letter of introduction, along with a CD of materials, to both Mr. Echols and Mr. Hilfiger.  The letter introduced me as resource counsel and explained the kind of assistance that we offered.

7.      Over the course of November, December, and January, I communicated by email or telephone with Mr. Echols several times.  The contacts were always initiated by Mr. Echols and focused on particular issues – experts or investigators that he needed, motions that he was filing, and his ongoing relationship with co-counsel, which was not developing very well in that he perceived Mr. Hilfiger to be unable or unwilling to take on his share of the work on the case.

8.      In February, March, and April, 2005, I had numerous contacts with Mr. Echols. He had set up a secure website for the case documents and provided access for me to the website.  He was interested in my views about all the work he was doing – often needing more time from me than I was able to offer.  I consulted most heavily on difficulties he was having with the Court in getting his budget requests funded adequately.  In the course of this period, I provided four declarations for Mr. Echols in support of his budget submissions to the Court concerning various aspects of attorney services, expert and investigative services, and the use of jury experts in federal capital cases.

9.      The declarations I provided to Mr. Echols in April 2005 responded to a case budgeting order the Court entered on March 18, 2005, and the report and recommendation of the Magistrate Judge that Mr. Echols should not be compensated for time spent seeking authorization for funds.  I informed the Court that Mr. Barrett's case was the only federal death penalty case in which Federal Death Penalty Resource Counsel were aware of a defense attorney being denied compensation for seeking funds.  I informed the Court that the March 18 order was contrary to the other budgeting orders the project was familiar with, and contrary to the

3

governing state and judiciary policies, in that the order infringed upon counsel's ability to exercise independent professional judgment. I informed the Court that its cuts to Mr. Barrett's budget were unique in the experience of the project and that the Court's estimate of the time reasonably necessary for Mr. Barrett's representation was far below projections made by the Spencer Committee. I advised the Court that the non-attorney funds Mr. Barrett had been granted were far below those courts granted other similarly situated defendants. I also informed the Court that the Defender Services Committee had recently reaffirmed the principle that generalized concerns about the judiciary's budget should not be met by cutting back on reasonable and necessary requests for defense funding.

10.     Over this same period of time, Mr. Echols expressed increasing frustration over the difficulties he was having with securing court approval for his case budget, and with Mr. Hilfiger's continuing lack of involvement in the ongoing work on the case. For these reasons, Mr. Echols was quite worried that he would not be able to prepare Mr. Barrett's case effectively by the then-scheduled trial date.

11.     Finally, on April 7, 2005, Mr. Echols filed a motion to withdraw as counsel, expressing to me his belief that he was not serving Mr. Barrett well since he seemed unable to secure adequate funding for investigation and experts, was getting very little help from Mr. Hilfiger, and was unable to get the substantive work done on the case that very much needed to be done.

12.     The Court granted Mr. Echols' motion to withdraw on May 11, 2005. The Court then designated Mr. Hilfiger lead counsel and appointed Bret Allan Smith as co-counsel.

13.     Thereafter, I never heard from Mr. Hilfiger or Mr. Smith.

14.     I did have an incidental contact with Mr. Hilfiger in late August 2005. I sent an

4

email to a federal death penalty defense list serve requesting information on turnaround time for payment of CJA 30 and CJA 31 vouchers. On August 29, 2005, Mr. Hilfiger responded with information concerning his experience on such time. I emailed him back asking him to bring me up to date on the case and offering my assistance. However, I never heard back from Mr. Hilfiger.

15. At that point in time, I had approximately 50 active federal capital cases that were assigned to me as resource counsel. Because of this caseload, and because I also had a very heavy caseload of capital cases in which I was appointed counsel, I was unable to be as proactive as I would liked to have been. When I did not hear back from Mr. Hilfiger, I did not continue to press him. My experience at that time was that my work had more effect with lawyers who wanted to consult with me. My work had little effect with lawyers who did not respond to my overtures to provide assistance. Thus, my triage decision then was to focus on those attorneys who wanted my assistance. Mr. Hilfiger was not one of those attorneys.

Under penalty of perjury, I declare that the representations made in the foregoing declaration are true and correct.

Richard H. Burr

Signed March 3, 2009.

5