**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

KENNETH EUGENE BARRETT,            )
                                   )
                        Petitioner, )
                                   )
v.                                 )            Case No. CV-09-00105-JHP
                                   )
UNITED STATES OF AMERICA,          )
                                   )
                       Respondent. )

**PETITIONER'S MEMORANDUM IN RESPONSE**
**TO THE COURT'S ORDER FILED SEPTEMBER 23, 2009 (Doc. # 69)**

**1.    Background.**

On September 11, 2009, this Court entered an order taking under advisement the Government's Motion to Unseal Document Nos. 16, 23, 24, 25, 46, 50 51, 57, 107, 113, 116, 118, 232, 274, 301, 310, 316, 321, a sealed letter dated 2/28/05, and the transcript filed on 2/15/06 of an *ex parte* budget hearing held on 3/22/05 in *United States v. Kenneth Eugene Barrett*, Case No. CR-04-115-JHP.  The Court withheld ruling in order to give Petitioner an opportunity either to withdraw claims to which these documents would be relevant or propose a protective order that would give counsel for the Government access to them.  *See Bittaker v. Woodford*, 331 F.3d 715 (9th Cir.) (*en banc*), *cert. denied*, 540 U.S. 1013 (2003).

On September 22, 2009, Petitioner timely filed a Notice of Intention Not to Abandon any of his Claims.  Petitioner also requested and filed a proposed protective

Pet's Resp. 9/23/09 Order                1                Case No. CV-09-00105-HJP

order.  Doc. # 68.

On September 23, 2009, this Court raised a concern regarding a clause in paragraph 3 of the proposed protective order which provided that the sequestration and embargo provisions would apply to the identified documents "unless Mr. Barrett or his counsel previously made the information public."  The Court indicated that if information was made public the document containing that information would not remain sealed.  The Court directed Petitioner "to advise this Court by September 30, 2009, as to each of the documents identified in numbered paragraph 2 on page 14 of this Court's Order of September 11, 2009 (Doc. 67) whether any of the listed documents have previously been disclosed by either the Petitioner or his counsel to any other person or entity."  Order (Doc. 69) at 2.

This memorandum is timely filed and is subject to Claim 1 in Mr. Barrett's Petition and the related motion that the Honorable James H. Payne is disqualified and should have recused himself from further proceedings in this matter.  By filing this response in accordance with this Court's order, Mr. Barrett does not waive his objections to this Court.  Mr. Barrett's counsel are preparing a petition for a writ of mandamus regarding Judge Payne's disqualification, but have been unable to complete and file that petition before the due date for this response.

**2.      Objection to Court's Framing of Legal Issue.**

The Court's Order of September 23, 2009 suggests that if Petitioner made public some information that is protected by the attorney-client privilege or work-product

doctrine, Petitioner waived those protections for any and all information in the same document even if that information was not disclosed.  Order at 2.  Such a ruling would be inconsistent with *Bittaker* and Federal Rule of Evidence 502(a).

*Bittaker* holds that the waiver forced on former defendants by the necessity of enforcing constitutional trial rights in a post-conviction proceeding extends no farther than that which is necessary to the litigation of those rights.  331 F.3d at 719-21.  The documents the Government seeks contain information that is, at a minimum, protected by the stringent rules covering opinion work-product.  *See* Order (Doc. 67) at 8; Order (Doc. 69) at 1.

Rule 502(a) sets limits on waivers occasioned by the "disclosure of a communication or *information* covered by the attorney-client privilege or work-product protection."  Fed. R. Evid. 502 (emphasis added).  The use of the word "information" was a conscious decision as reflected in the repeated use of the phrase "communication or information" throughout the Advisory Committee Notes.  The rule is intended to facilitate the disclosure of documents without raising the "concern that any disclosure (however innocent or minimal) will operate as a subject matter waiver of all protected communications or information."  Fed. R. Evid. 502 Advisory Committee Notes.   Were this Court to rule that the disclosure of some protected information works a subject matter waiver of all undisclosed, protected information in the same or other documents, that ruling would contravene Rule 502.

The conditions in which the rule compels a waiver of undisclosed,

protected information do not obtain in this case.  Rule 502(a) provides the following:

> When the disclosure [of a privileged communication or protected information] is made in a Federal proceeding . . . and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceedings only if:
>
> > (1)  the waiver is intentional;
> >
> > (2)  the disclosed and undisclosed communications or information concern the same subject matter; and
> >
> > (3)  they ought in fairness to be considered together.

Fed. R. Evid. 502(a).  The use of the conjunction indicates that all three conditions must be met for a compelled waiver of undisclosed information.  In this case, none of the conditions has been met.

First, in the present case, any waiver is either implied as the court said in *Bittaker*, and therefore not intentional, or compelled by the pleading requirements of Rule 2 of the Rules Governing Section 2255 Cases, and not "intentional" within the meaning of the rule.

Second, as shown in the following section, the information Petitioner disclosed was limited to that which is required by Rule 2 and the subject matter of his claims.  Petitioner did not disclose work-product information unrelated to the specific unreasonable acts and omissions of his counsel, or rulings of the court that constitute the subject matter of his claims.

Third, fairness does not require public disclosure of the relevant documents,

as the Court proposes, because a *Bittaker* protective order is based upon the fairness principle and therefore gives the Government a fair opportunity to consider anything in the sealed documents. While the fairness principle is satisfied through the protective order now at issue, it is far from clear that this principle would require that the undisclosed information be considered with the disclosed information. The Supreme Court has long rejected the idea that a respondent faced with the deficient performance of trial counsel as to one aspect of the case "can lift counsel's performance back into the realm of professional acceptability" by focusing on a different subject matter. *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1987).

Petitioner's intention in drafting the proposed protective order was to provide an efficient mechanism for the Government to obtain and rely upon properly sealed documents where access is necessary pursuant to *Bittaker*. The clause that raised the Court's concern is commonly used in capital post-conviction protective orders issued pursuant to *Bittaker*. It enables the respondent to reference matter contained in the public pleadings, where those pleadings disclose protected information (as Mr. Barrett's do), while preserving the protections that should be afforded undisclosed, protected information. This clause, to which the Government does not object (*see* Doc. 73), obviates the inefficient, costly, and time-consuming task of redacting undisclosed, protected information when unsealing documents that contain both disclosed and undisclosed, privileged or protected communications or information.

Should this Court refuse to retain the identified documents under seal,

Petitioner respectfully requests that the Court either (a) order the documents redacted so that only previously disclosed information is publicly accessible, or (b) certify this matter for interlocutory appeal pursuant to *Bittaker*.  28 U.S.C. § 1292(b).

3.      **List of Previously Disclosed Documents and Information.**

Of the documents listed in this Court's September 11 Order, only the sealed letter dated February 28, 2005 has been shown to a person or entity outside Petitioner's legal team.  That document was filed as Exhibit 65 to Petitioner's initial and amended § 2255 motions.  Petitioner's counsel should have brought this to the Court's attention earlier, but overlooked it.  Counsel apologize for any inconvenience to the Court or opposing counsel.

The following table shows the extent to which information contained in other listed documents was made public in the Petition.[1]  No document has been shown to anyone outside Petitioner's counsel.

| Docket No. in Criminal Case | Disclosed Information and Citation to Amended Petition |
|---|---|
| 16 | Not referenced in pleading; no information public.  *The document should remain under seal, and all its contents should be sequestered and embargoed under the proposed protective order.* |
| 23 | "The court later rescinded this limitation and permitted counsel to obtain the transcripts they had been seeking since January 2005.  (*See* Doc. 23.)" Amended Pet. at 30.  *This statement does not reveal any work-product.  The document should remain under seal, and all its contents should be sequestered and embargoed under the proposed protective order.* |
| 24 | Not referenced in pleading; no information public.  *The document should remain under seal, and all its contents should be sequestered and embargoed under* |

---

1      The same information was presented in Mr. Barrett's initial and amended petition.  As Petitioner had a right to file the amended petition, Fed. R. Civ. P. 15, that is the operative pleading, and page references in the table are to that document (Doc. # 70).

| Docket No. in Criminal Case | Disclosed Information and Citation to Amended Petition |
|---|---|
|  | *the proposed protective order.* |
| 25 | Not referenced in pleading; no information public. *The document should remain under seal, and all its contents should be sequestered and embargoed under the proposed protective order.* |
| 46 | "On January 31, 2005, Mr. Barrett's counsel filed a detailed, 10-page, budget proposal. (Doc. 46.)" Amended Pet. at 22. *The fact that counsel filed a document does not reveal any of the content of the document. Therefore, nothing of the content of Doc. 46 has been made public by Petitioner, and the entire document should remain under seal. All its contents should be sequestered and embargoed under the proposed protective order.* |
| 50 | "The trial court did not merely deny funds to Mr. Barrett's defense, it interjected into the funding denial a false impression of the evidence that would be admitted at trial. The court denied 75 percent of the time and one hundred percent of the in-court assistance trial counsel requested from a ballistics and crime scene reconstruction expert. (*Compare* Doc. 50 at 7 *with* Order filed 3/18/05 at 3.)" Amended Pet. at 27-28.<br><br>"The record shows Mr. Echols filed lengthy budget requests describing the specific needs of the defense and, most, but not all the time, describing with particularity the experts he sought to hire and the work they would perform. (Docs. 50, 51.)" Amended Pet. at 33.<br><br>"In February 2005, Mr. Hilfiger informed Mr. Echols, and Mr. Echols informed the court, that Mr. Hilfiger believed he would need to spend 160 hours assembling and reviewing the files and records related to the case. (Doc. 50 at 4; Exhibit 64 at 1 n.1.)" Amended Pet. at 35.<br><br>"Prior to trial, Mr. Echols sought authorization to retain an independent expert on tact-team methods and procedures, Dr. George Kirkham. (Doc. 50.)" Amended Pet. at 156. Same at 157.<br><br>"The denial of travel funds – which were essential in this case – may have been due in part to counsel erroneously informing the court that Mr. Barrett had 'not lived in numerous locales.' (Doc. 50.)" Amended Pet. at 208.<br><br>"Trial counsel were aware that expert testimony regarding the mind's response to threats such as an unmarked S.U.V. barreling towards one's cabin was important so that the jury could understand Mr. Barrett's reactions. (Doc. 50.) Trial counsel were aware that Mr. Barrett 'used drugs and suffered significant head injuries during his life,' and that this history indicated a need for an 'expert in diagnosing organic brain disorders.' *Ibid.* Trial counsel were aware |

| Docket No. in Criminal Case | Disclosed Information and Citation to Amended Petition |
|---|---|
| | that the 'defense need[ed] to engage an expert capable of assessing the likelihood that Mr. Barrett suffers from any identifiable psychological or physiological deficits, including possible organic brain disorders, affecting his judgment and ability to respond cognitively in a crisis setting.' *Ibid.*" Amended Pet. at 211.<br><br>"Mr. Barrett's counsel demonstrated the need for a psychologist to assist in preparation of the defense. (See Order filed 3/18/05 (Doc. 97) at 3.) Counsel sought this expert for purposes similar to those envisioned by the Government in retaining Jim Horn. (See Doc. 50 at 5-6.) Counsel informed the court that a psychologist could not be retained for less than $150.00 per hour, and estimated 60 hours would be needed (Doc. 50 at 5-6), but the court limited the defense to 40 hours at $100.00 per hour." Amended Pet. at 271.<br><br>"Mr. Barrett sought the assistance of a mental health expert who was competent to diagnose organic brain dysfunction. (Doc. 50 at 8.) Counsel justified this request with the findings of prior investigations, including that Mr. Barrett had used drugs known to cause brain damage, and that he had suffered significant head injuries during his life. (*Ibid.*)" Amended Pet. at 272<br><br>"Mr. Barrett's counsel, in consultation with a mitigation specialist, Federal Death Penalty Resource Counsel, and the Federal Defender, concluded that a mitigation specialist would require more than 333 hours and $5,000.00 in travel costs. Counsel and the mitigation specialist based this estimate on the knowledge gained in a preliminary investigation conducted before Mr. Barrett's first state-court trial. (Docs. 50, 107.)" Amended Pet. at 272.<br><br>"Mr. Barrett sought 300 hours of investigative assistance at a rate of $50 per hour. (Doc. 50 at 4.)" Amended Pet. at 273.<br><br>"Mr. Barrett's counsel requested the assistance of an expert, Edward E. Hueske, to assist in responding to the Government's evidence, performing up to 80 hours work, billed at a rate of $200.00 per hour, in addition to $1,000.00 for lodging, travel and incidentals. (Doc. 50 at 7.)" Amended Pet. at 274.<br><br>"trial counsel sought funds to retain Dr. George Kirkham, a criminologist, sworn law enforcement officer, and expert in police tactics. (Doc. 50 at 5.) Counsel informed the court that Dr. Kirkham charged a flat rate for pretrial review and preparation, and that he would need to travel from his residence in Florida. (*Ibid.*)" Amended Pet. at 277. |

| Docket No. in Criminal Case | Disclosed Information and Citation to Amended Petition |
|---|---|
| | *This document and all exhibits thereto should remain under seal and those portions not quoted herein should be subject to the sequestration and embargo provisions of the proposed protective order.* |
| 51 | "Mr. Barrett's trial counsel requested funds to investigate and develop evidence for the defense." Amended Pet. at 26.<br><br>"Mr. Hilfiger himself had informed Mr. Echols and the court that it would take him as second-chair 300 hours to prepare for trial, *not* including court hearings, legal research and preparation of pleadings and briefs. (Doc. 51 at 4.)" Amended Pet. at 36.<br><br>"In addition to the outright denial of psychiatric assistance, the trial court arbitrarily denied funding for all expert and investigative resources that were necessary for Mr. Barrett to receive adequate representation. (*Compare* Doc. 51 *with* Order filed 3/18/05 (Doc. 97).)" Amended Pet. at 271.<br><br>*This document and all exhibits thereto should remain under seal and those portions not quoted herein should be subject to the sequestration and embargo provisions of the proposed protective order.* |
| 57 | "As stated in Claim 1, *supra*, and Claim 3, *infra*, the trial court denied Mr. Barrett resources regularly afforded similarly situated capital defendants, and which were deemed necessary in the independent professional judgment of his trial counsel. (*See also* Docs. 50, 51, 57, 97, 128; Exhibit 34; Exhibit 118.)" Amended Pet. at 206-207. *This reference does not disclose any specific, protected information contained in Doc. 57. The document should remain under seal, and all its contents should be sequestered and embargoed under the proposed protective order.* |
| 107 | "As Mr. Burr stated to the court at the time, the FDPRC collects 'data on the initiation and prosecution of federal capital cases, and on the defense services provided in such cases.' (Decl. Richard Burr re attorney compensation dated 4/4/05 and filed as Exh. B to Doc. 107.)" Amended Pet. at 24.<br><br>Pages 25-26 of the Amended Petition contain a long quotation from Exhibit A (Decl. Richard Burr) to Doc. 107.<br><br>Page 27 of the Amended Pet contains a long quotation from Exhibit C (Decl. Richard Burr) to Doc. 107.<br><br>"'Mr. Burr informed the court at the time that Mr. Barrett's request for a mitigation specialist was "well below average," and "no federal court ha[d] failed to provide expenses for mitigation specialists' work.' (Decl. Richard H. |

| Docket No. in Criminal Case | Disclosed Information and Citation to Amended Petition |
|---|---|
| | Burr dated 4/4/05, Exh. C to Doc. 107.)  Where this court denied funds for experts to travel as part of their work on Mr. Barrett's defense, Mr. Burr found that '[t]ravel expenses - lodging, meals, and transportation - are always provided, as are any other expenses incidental to the expert's ability to provide services.' (*Id.*)  Where this court permitted Mr. Barrett's counsel to retain only one mental health expert, regardless of the circumstances, the FDPRC found, the 'standard practice in federal capital cases is to provide the services of more than one mental health expert.' *Id.*"  Amended Pet. at 28-29.<br><br>"In light of the information known or available to Mr. Barrett's trial counsel, prevailing norms of capital defense practice required that they consult with experts whose training and experience were appropriate to addressing Mr. Barrett's history and the needs of the litigation.  The appropriate experts included a medical doctor who could diagnose and explain the functional impact of Mr. Barrett's mental disorders, a neuropsychologist who could determine the location, nature and severity of Mr. Barrett's probable brain dysfunction, and a mitigation specialist qualified to gather data in a manner consistent with the clinical protocols of mental health professionals when considering social history and medical information in the course of forming their opinions.   (Decl. Richard H. Burr dated 4/4/05, filed as Exh. C to Doc. 107, at 4, 8.)"  Amended Pet. at 269-70.  This is information regarding the prevailing professional norms of capital defense practice that Federal Death Penalty Resource Counsel provided to the court.<br><br>"Trial counsel informed the trial court that the court's refusal to permit more than one mental health professional to assist in Mr. Barrett's defense was contrary to law, the Judicial Council's Guidelines for the administration of the Criminal Justice Act, and the practice of district courts in numerous other federal death penalty cases with similar circumstances.  (Docs. 107, 112; Exhibit 53.)  "The standard practice in federal capital trials is to provide the services of more than one mental health expert."  (Decl. Richard H. Burr, filed as Exh. C to Doc. 107.)"  Amended Pet. at 270.<br><br>"the court had been informed that this reduced hourly rate was 30-60% below the hourly rate of $150-250 authorized by federal courts for such services in death penalty cases.  (Exh. C to Doc. 107, at 8.)"  Amended Pet. at 271.<br><br>"Mr. Barrett specifically sought the assistance of a psychologist who had assisted in the preparation for trial, and testified in the penalty trials, of other federal death penalty defendants.  (Doc. 107.)  That psychologist had been compensated in other similar cases at a rate of $270.00 per hour, and counsel advised the court that he could complete his work in 30 hours.  (*Id.* at 3-4.)" |

| Docket No. in Criminal Case | Disclosed Information and Citation to Amended Petition |
|---|---|
|  | Amended Pet. at 271-72.<br><br>"Mr. Barrett's counsel, in consultation with a mitigation specialist, Federal Death Penalty Resource Counsel, and the Federal Defender, concluded that a mitigation specialist would require more than 333 hours and $5,000.00 in travel costs. Counsel and the mitigation specialist based this estimate on the knowledge gained in a preliminary investigation conducted before Mr. Barrett's first state-court trial. (Docs. 50, 107.)" Amended Pet. at 272.<br><br>Page 273 of the Amended Petition contains one long and one short quotation from the declaration of Richard Burr filed as Exhibit C to Doc. 107.<br><br>*This document and all exhibits thereto should remain under seal and those portions not quoted herein should be subject to the sequestration and embargo provisions of the proposed protective order.* |
| 113 | "On April 6, 2005, Mr. Echols also moved to withdraw as counsel for Mr. Barrett citing five circumstances that prevented him from providing effective representation: (1) the trial was less than four months away; (2) no final budget had been approved that was adequate to prepare a defense; (3) the denial of compensation for budgeting and expert consultation placed an unreasonable burden on counsel; (4) Mr. Hilfiger had not done any significant work on the case; (5) the requirements of the March 18 order impaired counsel's exercise of independent professional judgment. (Doc. 113.)" Amended Pet. at 32.<br><br>"The budget submitted for Mr. Barrett's defense had been prepared by Mr. Echols, and was informed by his extensive knowledge of the background of the case, including that many investigative and expert tasks had not been completed during the state proceedings, and that only preliminary work had been done to prepare for a penalty trial. (Exhibit 64; Exhibit 34; Doc. 113; Exhibit 118.)" Amended Pet. at 209.<br><br>*This document and any exhibits thereto should remain under seal and those portions not quoted herein should be subject to the sequestration and embargo provisions of the proposed protective order* |
| 116 | Not referenced in pleading; no information public. *The document should remain under seal, and all its contents should be sequestered and embargoed under the proposed protective order.* |
| 118 | Page 31 of the Amended Petition contains a long quotation from a declaration of Richard Burr that was filed as an exhibit to Doc. 118. *The information contained in the quotation relates to the practice in other cases, and no work-* |

| Docket No. in Criminal Case | Disclosed Information and Citation to Amended Petition |
|---|---|
| | *product information in this case. Therefore, there has been no public disclosure of protected information from this document and it should remain under seal.* |
| 232 | Not referenced in pleading; no information public. *The document should remain under seal, and all its contents should be sequestered and embargoed under the proposed protective order.* |
| 274 | Not referenced in pleading; no information public. *The document should remain under seal, and all its contents should be sequestered and embargoed under the proposed protective order.* |
| 301 | Not referenced in pleading; no information public. *The document should remain under seal, and all its contents should be sequestered and embargoed under the proposed protective order.* |
| 310 | Not referenced in pleading; no information public. *The document should remain under seal, and all its contents should be sequestered and embargoed under the proposed protective order.* |
| 316 | Not referenced in pleading; no information public. *The document should remain under seal, and all its contents should be sequestered and embargoed under the proposed protective order.* |
| 321 | Not referenced in pleading; no information public. *The document should remain under seal, and all its contents should be sequestered and embargoed under the proposed protective order.* |

**4.      Conclusion**

For the foregoing reasons, those set forth in Petitioner's Response in Opposition to the Government's Motion to Unseal, the reasons set forth for sealing the relevant documents in *United States v. Kenneth Barrett,* No. 04-cr-115-JHP, and elsewhere in these proceedings, Petitioner respectfully requests that this Court issue the proposed protective order. In the event this Court does not enter the protective order, Petitioner requests that this Court order all undisclosed, protected information contained in any document the Court unseals to be redacted. In the event this Court declines to

protect or retain under seal any work-product information, Petitioner requests the Court

stay these proceedings and certify this case for interlocutory appeal.

DATED:   September 30, 2009

Respectfully submitted,

/s/ David B. Autry
DAVID B. AUTRY, OBA #11600
Attorney at law
1021 N.W. 16th Street
Oklahoma City, Oklahoma 73106-6405
Telephone:  405-521-9600

DANIEL J. BRODERICK
Federal Defender

/s/ Tivon Schardl
TIVON SCHARDL, Fla. Bar No. 73016
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone:  916-498-6666

Attorneys for Defendant
KENNETH EUGENE BARRETT