**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:09-cv-00105-JHP** |
| | ) | |
| **KENNETH EUGENE BARRETT,** | ) | |
| | ) | |
| *Defendant.* | ) | |

---

**REDACTED EXHIBIT 156**

**TO KENNETH EUGENE BARRETT'S**

**SECOND AMENDED MOTION PURSUANT TO 28 U.S.C. § 2255**

---

THE OKLAHOMA STATE COURTS NETWORK

| Home | Courts | Court Dockets | Legal Research | Calendar | Help |

The information contained in this report is provided in compliance with the Oklahoma Open Records Act,    . Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

| | |
|---|---|
| State of Oklahoma ex rel., Oklahoma Bar Association, Complainant, | No. SCBD - 5338 (Disciplinary Rule 6) |
| vs. | Filed: 10/18/2007 |
| David M. Littlefield, Respondent. | Appealed from: |

## Parties

Littlefield, David M , Respondent
Oklahoma Bar Association , Complainant

## Attorneys

**Attorney**

Green, Mark(Bar # 3570)
P.O. Box 2362
Muskogee, OK 74402

Hubbard, Janis(Bar # 14641)
PO BOX 53036
OKLAHOMA CITY, OK 73152

Pickett-Iski, Carol(Bar # 11471)
100 North Second Street
P.O. Box 636
Eufaula, OK 74432

Reheard, Deborah Ann(Bar # 12448)
PO BOX 636
EUFAULA, OK 74432

**Represented Parties**

Oklahoma Bar Association

Littlefield David M

Littlefield David M

## Events

| Event | Party | Docket | Reporter |
|---|---|---|---|

## Lower Court Counts and Other Information

| Count | Case Number | Statute | Crime | Special | Sentence | Judge | Reporter |
|---|---|---|---|---|---|---|---|
| - | | - | | | | | |

## Docket

REDACTED

| Date | Code | Entry Date | Serial # |
|---|---|---|---|
| 10-18-2007 | CASE | 18 Oct 2007 14:07:08:000 | 1846119 |
| | | DISCIPLINARY RULE 6 INITIAL FILING | |

10-18-2007 TEXT   18 Oct 2007 14:28:45:527                                      1846127
             LETTER DATED 10-16-07 TO CJ FROM MARK GREEN


10-18-2007 TEXT   18 Oct 2007 14:27:49:247                                      1846129
             ENTRY OF APPEARANCE BY JANIS HUBBARD

10-18-2007 TEXT   18 Oct 2007 14:28:59:870                                      1846130
             NOTICE OF SELECTION AND APPT OF TRIAL PANEL AND NOTICE OF SETTING AND
             NOTICE OF HEARING

10-18-2007 TEXT   23 Oct 2007 11:47:11:630                                      1846131
             AFFIDAVIT FOR PROOF OF SERVICE OF COMPLAINT

10-23-2007 TEXT   23 Oct 2007 11:48:21:720                                      1846747
             ENTRY OF APP OF REHEARD & ISKI FOR RSPDNT, LITTLEFIELD

11-09-2007 TEXT   09 Nov 2007 13:34:14:843                                      1850073
             ORDER CONTINUING HEARING

01-02-2008 TEXT   02 Jan 2008 15:39:23:370                                      1857639
             TRIAL BRIEF OF COMPLAINANT

01-08-2008 TEXT   08 Jan 2008 15:24:01:740                                      1858486
             JOINT MOTION FOR PROTECTIVE ORDER

01-10-2008 TEXT   10 Jan 2008 14:38:58:157                                      1858907
             ORDER GRANTING JOINT MOT FOR PROTECTIVE ORDER (PRT)

02-07-2008 TEXT   07 Feb 2008 16:16:50:387                                      1863364
             "REPORT OF PRT" (FILED UNDER SEAL)

02-07-2008 TEXT   07 Feb 2008 16:18:36:053                                      1863365
             "APPLIC TO ASSES COSTS" (FILED UNDER SEAL)
                            REDACTED

05-28-2008 TEXT    28 May 2008 14:35:04:387                                        1882179

JE:ORDER WINCHESTER CJ, BRIEFING SCHEDULE CMPLNT'S BRIEF IS DUE 6-16-08, RSPNDT'S BRIEF S/B FILED NOT MORE THAN FIFTEEN DAYS AFTER CMPLNT'S BRIEFIS FILED. CMPLNT MAY REPLY W/N 10 DAYS AFTER RSPNDT'S BRIEF IS FILED C/CJ, ATTYS, NP

07-10-2008 TEXT    10 Jul 2008 15:45:04:590                                        1889847

COMPLAINANT'S WAIVER OF REPLY BRIEF ****FILED UNDER SEAL****

Report Generated by The Oklahoma Court Information System at

End of Transmission.

**REDACTED**



## THE OKLAHOMA STATE COURTS NETWORK

| Home | Courts | Court Dockets | Legal Research | Calendar | Help | |

The information contained in this report is provided in compliance with the Oklahoma Open Records Act, . Use of this information is governed by this act, as well as other applicable state and federal laws.

### IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

| State of Oklahoma ex rel., Oklahoma Bar Association, Complainant, | No. SCBD - 5338 (Disciplinary Rule 6) |
|---|---|
| vs. | Filed: 10/18/2007 |
| David M. Littlefield, Respondent. | Appealed from: |

## Parties

Littlefield, David M , Respondent
Oklahoma Bar Association , Complainant

## Attorneys

| Attorney | Represented Parties |
|---|---|
| Green, Mark(Bar # 3570)<br>P.O. Box 2362<br>Muskogee, OK 74402 | |
| Hubbard, Janis(Bar # 14641)<br>PO BOX 53036<br>OKLAHOMA CITY, OK 73152 | Oklahoma Bar Association |
| Pickett-Iski, Carol(Bar # 11471)<br>100 North Second Street<br>P.O. Box 636<br>Eufaula, OK 74432 | Littlefield David M |
| Reheard, Deborah Ann(Bar # 12448)<br>PO BOX 636<br>EUFAULA, OK 74432 | Littlefield David M |

## Events

| Event | Party | Docket | Reporter |
|---|---|---|---|

## Lower Court Counts and Other Information

| Count | Case Number | Statute | Crime | Special | Sentence | Judge | Reporter |
|---|---|---|---|---|---|---|---|
| - | | - | | | | | |

## Docket

REDACTED

| Date | Code | Entry Date | Serial # |
|---|---|---|---|
| 10-18-2007 | CASE | 18 Oct 2007 14:07:08:000 | 1846119 |
| | | DISCIPLINARY RULE 6 INITIAL FILING | |

10-18-2007 TEXT  18 Oct 2007 14:28:45:527                                    1846127
             LETTER DATED 10-16-07 TO CJ FROM MARK GREEN

10-18-2007 TEXT  18 Oct 2007 14:27:49:247                                    1846129
             ENTRY OF APPEARANCE BY JANIS HUBBARD

10-18-2007 TEXT  18 Oct 2007 14:28:59:870                                    1846130
             NOTICE OF SELECTION AND APPT OF TRIAL PANEL AND NOTICE OF SETTING AND
             NOTICE OF HEARING

10-18-2007 TEXT  23 Oct 2007 11:47:11:630                                    1846131
             AFFIDAVIT FOR PROOF OF SERVICE OF COMPLAINT

10-23-2007 TEXT  23 Oct 2007 11:48:21:720                                    1846747
             ENTRY OF APP OF REHEARD & ISKI FOR RSPDNT, LITTLEFIELD

11-09-2007 TEXT  09 Nov 2007 13:34:14:843                                    1850073
             ORDER CONTINUING HEARING

01-02-2008 TEXT  02 Jan 2008 15:39:23:370                                    1857639
             TRIAL BRIEF OF COMPLAINANT

01-08-2008 TEXT  08 Jan 2008 15:24:01:740                                    1858486
             JOINT MOTION FOR PROTECTIVE ORDER

01-10-2008 TEXT  10 Jan 2008 14:38:58:157                                    1858907
             ORDER GRANTING JOINT MOT FOR PROTECTIVE ORDER (PRT)

02-07-2008 TEXT  07 Feb 2008 16:16:50:387                                    1863364
             "REPORT OF PRT" (FILED UNDER SEAL)

02-07-2008 TEXT  07 Feb 2008 16:18:36:053                                    1863365
             "APPLIC TO ASSES COSTS" (FILED UNDER SEAL)   REDACTED

05-28-2008 TEXT   28 May 2008 14:35:04:387                                    1882179

    JE:ORDER WINCHESTER CJ, BRIEFING SCHEDULE CMPLNT'S BRIEF IS DUE 6-16-08,
RSPNDT'S BRIEF S/B FILED NOT MORE THAN FIFTEEN DAYS AFTER CMPLNT'S
BRIEFIS FILED. CMPLNT MAY REPLY W/N 10 DAYS AFTER RSPNDT'S BRIEF IS FILED
C/CJ, ATTYS, NP

07-10-2008 TEXT   10 Jul 2008 15:45:04:590                                    1889847

    COMPLAINANT'S WAIVER OF REPLY BRIEF ****FILED UNDER SEAL****

Report Generated by The Oklahoma Court Information System at

End of Transmission.

**REDACTED**

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

| | | |
|---|---|---|
| STATE OF OKLAHOMA ex rel.<br>OKLAHOMA BAR ASSOCIATION,<br>Complainant, | )<br>)<br>)<br>) | |
| vs. | )<br>) | OBAD # 1729<br>SCBD #5338 |
| DAVID M. LITTLEFIELD,<br>Respondent. | )<br>)<br>) | |

**FILED**
SUPREME COURT BAR DOCKET
STATE OF OKLAHOMA

OCT 2 3 2007

MICHAEL S. RICHIE
CLERK

## ENTRY OF APPEARANCE

COME NOW Deborah A. Reheard and Carol Iski of Reheard Law Office, and enter their appearance in the above-entitled and numbered cause as co-counsel for the Respondent herein.

Respectfully submitted,

DEBORAH A. REHEARD, OBA #12448
**CAROL ISKI, OBA #11471**
**Reheard Law Office**
100 N. Second Street
P.O. Box 636
Eufaula, OK 74432
(918) 689-9281/FAX (918) 689-9285
ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of October, 2007, a true, correct and exact copy of the above and foregoing instrument was mailed to:

Janis Hubbard
First Assistant General Counsel
Oklahoma Bar Association
1901 N. Lincoln
P.O. Box 53036
Oklahoma City, OK 7315

Janis Grant-Johnson
Presiding Master
623 N. Porter, Suite 400
Norman, OK 73071

Roger Scott
Lawyer Member
525 S. Main, Suite 1111
Tulsa, OK 74103

Dale Cabbiness
Lay Member
P.O. Box 1603
Edmond, OK 73083-1603

Mark Green
218 W. Okmulgee
Muskogee, OK 74401

Deborah A. Reheard
Carol Iski

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

FILED
SUPREME COURT BAR DOCKET
STATE OF OKLAHOMA

OCT 1 8 2007

MICHAEL S. RICHIE
CLERK

FILED
SEP 2 8 2007
Office Of Chief Justice
Bar Docket

|                                         |     |
|-----------------------------------------|-----|
| STATE OF OKLAHOMA ex rel.               | )   |
| OKLAHOMA BAR ASSOCIATION,               | )   |
|                                         | )   |
| Complainant,                            | )   |
|                                         | )   |
| v.                                      | )   |
|                                         | )   |
| DAVID M. LITTLEFIELD,                   | )   |
|                                         | )   |
| Respondent.                             | )   |

OBAD #1729

SCBD # 5338

## COMPLAINT

The Complainant, State of Oklahoma ex rel. Oklahoma Bar Association, for its claim against the Respondent, David M. Littlefield, alleges and states:

1.     The Respondent is a member of the Oklahoma Bar Association and is licensed to practice law by the Supreme Court of the State of Oklahoma. The Respondent was so licensed at all times relevant to this Complaint.

2.     To the best knowledge, information, and belief of the Complainant, the Respondent has committed specific acts which constitute professional misconduct in violation of the Oklahoma Rules of Professional Conduct, ("ORPC"), 5 O.S. 2001, Ch. 1, App. 3-A, and the Rules Governing Disciplinary Proceedings, ("RGDP"), 5 O.S. 2001, Ch. 1, App. 1-A, and are cause for professional discipline as provided in the RGDP. These standards of conduct, adopted and enforced by the Supreme Court of the State of Oklahoma, provide guidelines by which all attorneys are to practice law in Oklahoma.

3.     These proceedings are begun pursuant to Rule 6, RGDP.

4.     The official Oklahoma Bar Association roster address of the Respondent is: David M. Littlefield, OBA # 5461, 218 W. Okmulgee, Muskogee, OK 74401.

## COUNT I

5.    On August 3, 2007, the Respondent entered an Alford Plea to Count 2: Child Abuse by Injury in violation of 10 O.S. § 7115(A) in the District Court of Muskogee County, Case No. CF-2007-363.

6.    The Respondent received a two (2) year deferred sentence, along with court costs, and un-supervised probation.

7.    By letter dated May 11, 2007, the Office of the General Counsel notified the Respondent that an investigation pertaining to his Alford Plea in Case CF-2007-363 was being opened and that the Respondent had twenty (20) days to respond.

8.    The Respondent, through counsel, did timely respond to the Office of the General Counsel generally denying the allegations and asserting the Fifth Amendment.

9.    The Respondent's misconduct thereby violates the mandatory provisions of Rule 8.4(b), ORPC, and Rule 1.3, RGDP, and warrants the imposition of professional discipline.

WHEREFORE, premises considered, the Complainant, Oklahoma Bar Association, prays that the Respondent, David M. Littlefield, be disciplined as this Court finds equitable and proper, and such other relief as this Court finds appropriate.

Done at the direction of the Professional Responsibility Commission, this the _28th_ day of September, 2007,

_____
Mark W. Dixon, Chairman
Professional Responsibility Commission

AND                                    REDACTED

-2-

Janis Hubbard, OBA #14641
First Assistant General Counsel
Oklahoma Bar Association
1901 N. Lincoln, P.O. Box 53036
Oklahoma City, Oklahoma 73152
(405) 416-7007

ATTORNEY FOR COMPLAINANT

## CERTIFICATE OF MAILING

The undersigned hereby certifies that on the ___28th___ day of September, 2007, a true and correct copy of the foregoing Complaint was mailed, by certified mail and restricted delivery, to: David M. Littlefield, Respondent, ████████████ Muskogee, OK 74401 ; and by regular mail to: Ronald Main, Professional Responsibility Tribunal Chief Master, ████████████ Tulsa, OK 74105-6251 and Mark Fredrick Green, Attorney for Respondent, P.O. Box 2362, Muskogee, OK 74402.

Janis Hubbard

**REDACTED**

**IN THE SUPREME COURT OF THE STATE OF OKLAHOMA**

**BEFORE THE PROFESSIONAL RESPONSIBILITY TRIBUNAL**

**FILED**
SUPREME COURT BAR DOCKET
STATE OF OKLAHOMA

**JAN - 8 2008**

MICHAEL S. RICHIE
CLERK

| | | |
|---|---|---|
| STATE OF OKLAHOMA ex rel. | ) | |
| OKLAHOMA BAR ASSOCIATION, | ) | |
| Complainant, | ) | |
| | ) | |
| vs. | ) | OBAD # 1729 |
| | ) | SCBD #5338 |
| DAVID M. LITTLEFIELD, | ) | |
| Respondent. | ) | |

**JOINT MOTION FOR PROTECTIVE ORDER**

1.      Respondent stands accused of violating the Rules of Professional Conduct based upon his arrest and a felony charge filed against him in the District Court of Muskogee County, State of Oklahoma.

2.      That felony case has been disposed of through an Alford plea by the Respondent in a brief deferred sentence.  Now, this case has been dismissed and the Respondent's record expunged pursuant to Title 22 *O.S.* §19.  This expungement included the court record, the district attorney's record, and law enforcement record.

3.      The Expungement Order filed in the District Court of Muskogee County, State of Oklahoma was entered after the filing of this Complaint.  The parties have agreed that the record which is now expunged is necessary to be presented to the Office of the General Counsel, the Professional Responsibility Tribunal and the Court.  Due to the Expungement Order of the District Court, the parties submit that it is appropriate for court documents relating to the charge and disposition of this case should be filed with the Court under protective seal so these documents are not disclosed to the public or anyone not a party to these disciplinary proceedings, member of the Professional Responsibility Tribunal or the Court. REDACTED

4.      Title 22 *O.S.* §19 sets forth a procedure for the District Court to unseal the record for a legitimate purpose following notice of hearing.  Respondent agrees that the records which

were ordered sealed by the District Court, may be made a part of this record without order from the District Court of Muskogee County with the provision that those records be filed under seal with this Court. Specifically, the documents include: the Docket Sheet, Information, Summary of Facts, Deferment, transcript of Guilty Plea, letters regarding Treatment Plan, Journal Entry of related case involving the Treatment Plan through the Department of Human Services, Order of Expungement, the transcript of these proceedings, and the Report of the Trial Panel if reference is made therein to specific facts known only from the expunged documents.

5.      Further, there are Joint Stipulations of the parties that include facts known only from facts derived from these expunged records. In addition, the Joint Stipulations and the information contained in the documents set forth above make specific references to minors and in order to protect their privacy and identity, these documents should be sealed from public view. Therefore, the Joint Stipulations are included in this motion to file under protective seal.

6.      Respondent submits that filing these records under protective seal is necessary to protect the interest of the Respondent and in keeping with the mandate, intent, and spirit of Title 22 *O.S.* §19.

7.      The documents subject to this protective order shall be placed in an envelope, sealed, clearly marked with the caption and number of this case, and clearly marked with the legend: "This envelope contains confidential information and is subject to a Protective Order of the Professional Responsibility Tribunal." Copies of these documents, similarly marked, may be presented to members of the Professional Responsibility Tribunal or the copies may be transmitted by email, using reasonable precaution, to members of the Professional Responsibility Tribunal in advance of the hearing in this matter. The parties will proceed with the intention that these documents will be considered and treated as protectively sealed from the public until final order of the Court.                          **REDACTED**

**WHEREFORE**, above premises considered, the parties jointly move this Court to enter a

2

protective order sealing court documents which will be submitted as part of the record in this case

and for such other and further relief which may be entitled in law and in equity.

Respectfully submitted,

**JANIS HUBBARD, OBA #14641**
First Assistant General Counsel
Oklahoma Bar Association
1901 N. Lincoln
P.O. Box 53036
Oklahoma City, OK 73152
(405) 416-7057/FAX (405) 416-7003
ATTORNEY FOR COMPLAINANT

**DEBORAH A. REHEARD, OBA #12448**
**CAROL ISKI, OBA #11471**
**Reheard Law Office**
100 N. Second Street
P.O. Box 636
Eufaula, OK 74432
(918) 689-9281/FAX (918) 689-9285
ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I hereby certify that on the _8th_ day of January, 2008, a true, correct and exact copy of the above and foregoing instrument was mailed to:

Janis Grant-Johnson
Presiding Master
623 N. Porter, Suite 400
Norman, OK 73071

Steve Dobbs
Lawyer Member
100 N. Broadway, Ste. 2500
Oklahoma City, OK 73102-8805

Dale Cabbiness
Lay Member
P.O. Box 1603
Edmond, OK 73083-1603

Mark Green
706 West Okmulgee Street
P.O. Box 2362
Muskogee, OK 74401

REDACTED
Janis Hubbard

3

**FILED**

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA
STATE OF OKLAHOMA

OCT 18 2007

MICHAEL S. RICHIE
CLERK

**FILED**

OCT 17 2007
Office Of Chief Justice
Bar Docket

STATE OF OKLAHOMA ex rel.           )
OKLAHOMA BAR ASSOCIATION,           )
                                    )
            Complainant,            )
                                    )
vs.                                 )        OBAD # 1729
                                    )
DAVID M. LITTLEFIELD,               )
                                    )
            Respondent.             )

**# 5338**

## ANSWER

COMES NOW the Respondent, David M. Littlefield, and for his answer to the Complaint filed by the State of Oklahoma ex rel. Oklahoma Bar Association, alleges and states:

1.    That Respondent admits the allegations contained in paragraph 1 of the Complaint.

2.    That Respondent denies the allegations contained in paragraph 2 and demands strict proof thereof.

3.    That Respondent admits the allegations contained in paragraph 3 of the Complaint.

4.    That Respondent admits the allegations contained in paragraph 4 of the Complaint.

5.    That Respondent admits the allegations contained in paragraph 5 of the Complaint.

6.    That Respondent admits the allegations contained in paragraph 6 of the Complaint.

7.    That with regard to paragraph 7, Respondent admits that he was notified by the Office of the General Counsel of an investigation, however the investigation did not pertain to his Alford Plea as it had not been entered at that time.

**REDACTED**

8.    That Respondent admits the allegations contained in paragraph 8 of the Complaint.

9.    That Respondent denies the allegations contained in paragraph 9 and demands strict proof thereof.

MITIGATION

As to mitigation, Respondent offers the following:

1.    That Case No. CF-07-363 is now dismissed; the Respondent is no longer on probation nor does he have a criminal conviction. A certified copy of the Order of Expungement is attached hereto as Exhibit A.

2.    That Respondent did not admit the allegations contained in paragraph 2 as he entered an Alford Plea. The Alford Plea was entered as the result of the lenient plea agreement, the prosecution's agreement to dismiss any allegations against Respondent's spouse, and the fact that this disposition prevented the continued mental and emotional distress upon Respondent's ten-year old son who would have been called to testify. Further, the Respondent had been suspended without pay from his job with the United States Attorney's Office for the Eastern District of Oklahoma and final determination as to his job status would not be made until after the case was final, thus causing severe financial problems and requiring a speedy resolution to the case.

3.    That Respondent has taken significant steps toward resolution in that he has completed several types of counseling relevant to the social and domestic issues in this matter.

4.    That Respondent's family unit was restored less than a month and a half after the information for the case was filed.

**REDACTED**

WHEREFORE, Respondent prays that the Court dismiss this action as same is without merit.

MARK GREEN, OBA #3570
P. O. Box 2362
Muskogee, OK 74402
(918) 683-0309 Telephone
(918) 687-5964 Telecopier

## CERTIFICATE OF SERVICE

I, Mark Green, hereby certify that on the _____ day of _____, 2007, a true and correct copy of the foregoing was served in the following manner and on the following:

___X___ U.S. Mail _____ Facsimile _____ Hand-delivery

Janis Hubbard
Oklahoma Bar Association
P. O. Box 53036
Oklahoma City, OK 73152

MARK GREEN

**REDACTED**

**IN THE SUPREME COURT OF THE STATE OF OKLAHOMA**
**BEFORE THE PROFESSIONAL RESPONSIBILITY TRIBUNAL**

| | | |
|---|---|---|
| STATE OF OKLAHOMA ex rel. | ) | |
| OKLAHOMA BAR ASSOCIATION, | ) | |
| | ) | |
| Complainant, | ) | |
| | ) | |
| v. | ) | OBAD #1729 |
| | ) | |
| DAVID M. LITTLEFIELD, | ) | |
| | ) | |
| Respondent. | ) | |

**NOTICE OF SELECTION AND APPOINTMENT OF TRIAL**
**PANEL AND NOTICE OF SETTING AND NOTICE OF HEARING**

Pursuant to the provisions of Rule 11.3, Rules Governing Disciplinary Proceedings,

5.O.S. 1995, Ch. 1, App. 1-A, notice of selection of trial panel and notice of setting hearing are

hereby given, to-wit:

1.      That:

Janis Grant-Johnson
Presiding Master
623 North Porter, Suite 400
Norman, Oklahoma 73071

Roger Scott
Lawyer Member
525 South Main, Suite 1111
Tulsa, Oklahoma 74103

Dale Cabbiness
Lay Member
P. O. Box 1603
Edmond, Oklahoma 73083-1603

are hereby appointed to serve as the Trial Panel and Janis Grant-Johnson shall serve as Presiding
**REDACTED**
Master in the above disciplinary proceeding.

2.      That his proceeding is set for trial on **Wednesday, November 14, 2007, at 9:30 a.m.** at the main floor conference room of the Oklahoma Bar Association, 1901 North Lincoln Boulevard, Oklahoma City, Oklahoma.  **All motions, including those for continuance, should be addressed to the Presiding master appointed above.**

Done this ___2ᵈ___ day of ___Oct.___, 2007.

_Ronald Main_
Ronald Main
Professional Responsibility Tribunal
Chief Master

**REDACTED**

CERTIFICATE OF MAILING

The undersigned hereby certifies that on the $\underline{5^{th}}$ day of October, 2007, a true and correct copy of the foregoing Notice of Hearing was mailed, by U.S. Mail, postage prepaid, to: Janis Grant Johnson, PRT Presiding Master, 623 North Porter, Suite 400, Norman, OK 73071; Roger Scott, Lawyer Member, 525 South Main, Suite 1111, Tulsa, OK 74103; Dale Cabbiness, Lay Member, PO Box 1603, Edmond, OK 73083-1603; Mark Fredrick Green, Attorney for Respondent, P.O. Box 2362, Muskogee, OK 74402; and by certified mail to David M. Littlefield, Respondent, ██████ ██████ Muskogee, OK 74401.

Janis Hubbard

**REDACTED**

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

FILED
SUPREME COURT BAR DOCKET
STATE OF OKLAHOMA
OCT 18 2007
MICHAEL S. RICHIE
CLERK

| | | |
|---|---|---|
| STATE OF OKLAHOMA, *ex rel.* | ) | |
| Oklahoma Bar Association, | ) | |
| | ) | |
| Complainant, | ) | |
| | ) | OBAD # 1729 |
| v. | ) | |
| | ) | SCBD # |
| DAVID M. LITTLEFIELD, | ) | |
| | ) | |
| Respondent. | ) | |

# 5338    FILED
OCT 03 2007
Office Of Chief Justice
Bar Docket

## AFFIDAVIT FOR PROOF OF SERVICE OF COMPLAINT

| | |
|---|---|
| STATE OF OKLAHOMA | ) |
| | ) ss: |
| COUNTY OF OKLAHOMA | ) |

I, Dana Shelburne, of lawful age, being first duly sworn, on oath, aver and state that I am an employee of the Oklahoma Bar Association; that, in accordance with 12 O.S. 2001, §2004(C)(2)(b), the formal Complaint filed with this Court was mailed on September 28, 2007, by certified mail, return receipt requested and restricted delivery, to the Respondent, David M. Littlefield, ███████████ Muskogee, OK 74401; that the Complaint was received on behalf of Respondent on October 1, 2007, (a copy of the postal scanned image of the recipient information is attached hereto as Exhibit "A").

Further affiant saith not.

_Dana Shelburne_

Dana Shelburne
Oklahoma Bar Association
P.O. Box 53036
Oklahoma City, OK 73152
REDACTED
(405) 416-7007

1

Subscribed and sworn to before me this 3rd day of October, 2007.

_____
NOTARY PUBLIC

My Commission Expires:

TRACY SANDERS
Notary Public in and for the
State of Oklahoma
Commission #05001876
My Commission expires 2/22/2009

Commission #_____

## CERTIFICATE OF MAILING

The undersigned hereby certifies that on the 3rd day of October, 2007, a true and correct copy of the foregoing Proof of Service of Complaint was mailed to: Respondent, David M. Littlefield, ████████████ Muskogee, OK 74401; and Mark Fredrick Green, Attorney for Respondent, P.O. Box 2362, Muskogee, OK 74402.

_____
Janis Hubbard

**REDACTED**


**UNITED STATES**
**POSTAL SERVICE.**

OBAD #1729
Littlefield

Date: 10/02/2007

Dana Shelburne:

The following is in response to your 10/01/2007 request for delivery information on your Certified item number 7108 2133 3934 1174 9709. The delivery record shows that this item was delivered on 10/01/2007 at 11:41 AM in MUSKOGEE, OK 74401. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:

74401

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service

**REDACTED**


**EXHIBIT**
A

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

BEFORE THE PROFESSIONAL RESPONSIBILITY TRIBUNAL

| | | |
|---|---|---|
| STATE OF OKLAHOMA ex rel. | ) | **FILED**<br>SUPREME COURT BAR DOCKET<br>STATE OF OKLAHOMA |
| Oklahoma Bar Association, | ) | |
| | ) | **NOV - 9** 2007 |
| Complainant, | ) | |
| | ) | MICHAEL S. RICHIE |
| v. | ) | OBAD #1729    CLERK |
| | ) | |
| DAVID M. LITTLEFIELD, | ) | SCBD #5338 |
| | ) | |
| Respondent. | ) | |

ORDER CONTINUING HEARING

By agreement of the parties, it is hereby ordered that the hearing on the merits previously set for Wednesday, November 14, 2007, at 9:30 a.m., is hereby continued to Friday, January 11, 2008 at 9:30 a.m. The hearing will be held at the Oklahoma Bar Center in Oklahoma City, Oklahoma, 1901 N. Lincoln Blvd.

DONE this 7th day of November, 2007.

_____
Janis Grant-Johnson, Presiding Master

**REDACTED**

1

## CERTIFICATE OF MAILING

The undersigned hereby certifies that on the ___9th___ day of November, 2007, a true and correct copy of the foregoing instrument was mailed to: Respondent, David M. Littlefield, ███████ ███████ Muskogee, OK 74401; Deborah Ann Reheard, Attorney for Respondent, P.O. Box 636, 100 N 2nd St., Eufaula, OK 74432; Janis Grant-Johnson, PRT Presiding Master, 623 N. Porter, Ste. 400, Norman, OK 73071; Roger R. Scott, PRT Lawyer Member, 525 S. Main, Suite 1111, Tulsa, OK 74103; and Dale Cabbiness, PRT Lay Member, P.O. Box 1603, Edmond, OK 73083.

_Janis Hubbard_
Janis Hubbard

**REDACTED**

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

BEFORE THE PROFESSIONAL RESPONSIBILITY TRIBUNAL

| | | |
|---|---|---|
| STATE OF OKLAHOMA *ex rel.* Oklahoma Bar Association, | ) ) ) | |
| Complainant, | ) ) | |
| v. | ) ) | OBAD #1729 |
| DAVID M. LITTLEFIELD, | ) ) | SCBD #5338 |
| Respondent. | ) ) | |

**FILED**
**SUPREME COURT BAR DOCKET**
**STATE OF OKLAHOMA**

**JAN = 2 2008**

**MICHAEL S. RICHIE**
**CLERK**

## TRIAL BRIEF OF COMPLAINANT

Complainant, State of Oklahoma *ex rel.* Oklahoma Bar Association, for its claim against the Respondent, David M. Littlefield (hereinafter "Respondent"), respectfully submits this Trial Brief to the Professional Responsibility Tribunal ("PRT"). Allegations of violations of the Oklahoma Rules of Professional Conduct[1], (hereinafter "ORPC"), and the Rules Governing Disciplinary Proceedings[2], (hereinafter "RGDP"), have been made against the Respondent. The matter is currently set for hearing on Friday, January 11, 2008.

## SUMMARY OF FACTS

On May 11, 2007, the Complainant requested from the Respondent a response to a newspaper article describing the Respondent's arrest on April 26, 2007 on felony charges while employed as an Assistant United States Attorney. On July 2, 2007, the Complainant

**REDACTED**

---

[1] 5 O.S. 2001, Ch. 1, App. 3-A.

[2] 5 O.S. 2001, Ch. 1, App. 1-A.

1

received a letter from counsel for the Respondent stating a general denial, asserting his client's Fifth Amendment right, and that he was not specifically addressing any allegation.

On August 3, 2007, the Respondent entered an Alford Plea to one (1) count of Child Abuse by Injury in violation of 10 O.S. § 7115(A) in the District Court of Muskogee County, Case No. CF-2007-363. The Respondent received a two (2) year deferred sentence, along with court costs, and un-supervised probation.

On September 28, 2007, the formal Complaint was filed. Not withstanding the two year deferred sentence ordered at the plea on August 3, 2007, the criminal case has been dismissed and expunged since the filing of the Complaint.

## AUTHORITY AND APPLICABLE CASE LAW

The conduct described in the Complaint violates the mandatory provisions of Rule 8.4(b), ORPC, and Rule 1.3, RGDP, and constitutes grounds for professional discipline. Discipline on this Alford plea[3] is comparative to a *nolo contendere* plea, and is appropriately imposed. It is well established that professional discipline is appropriate in cases

---

[3] *North Carolina v. Alford*, 400 U.S. 25 at 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1969):
The fact that his plea was denominated a plea of guilty rather than a plea of nolo contendere is of no constitutional significance with respect to the issue now before us, for the Constitution is concerned with the practical consequences, not the formal categorizations, of state law. Thus, while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime. Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt. [Footnotes omitted.]

2

constituting a *nolo contendere* plea and where a sentence has been deferred.[4]  Also, professional discipline is appropriate in cases where a deferred sentence has run its term and the case has been dismissed and expunged.[5]  Further, professional discipline is appropriate in cases involving conduct outside of the attorney-client relationship.  In *State ex rel. Okla. Bar Ass'n v. Burns*, 2006 OK 75, ¶ 24, 145 P.3d 1088, the Court explains, in pertinent part:

> The counts of the complaint brought against respondent do not concern questions regarding the quality of his professional practice or his conduct within the attorney-client relationship. His professional competence and honesty are not placed in question here and are not germane to issues concerning the quantum of appropriate professional discipline. This Court has recognized that discipline may be imposed for occurrences outside the professional setting and attorney-client relationship. (Footnotes omitted.)

Rule 8.4(b), ORPC[6], states that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on that person's fitness as a lawyer.  Rule 1.3, RGDP[7],

---

[4]  *State ex rel. Oklahoma Bar Ass'n v. Bradley*, 1987 OK 78, ¶¶ 19-22, 746 P.2d 1130.

[5]  *State ex rel. Oklahoma Bar Ass'n v. Maddox*, 2006 OK 95, ¶ 4, 152 P.3d 204.

[6] Rule 8.4 Misconduct

It is professional misconduct for a lawyer to:
 . . .
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 . . .

[7] Rule 1. 3 Discipline for Act Contrary to Prescribe Standards of Conduct

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

3

states that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on that person's fitness as a lawyer. In the case, *State ex rel. Oklahoma Bar Ass'n v. Aston*, 2003 OK 101, ¶¶11-12, 81 P.3d 676, the Court explained, in pertinent part:

> We have said that the phrase "fitness to practice law" encompasses more than an absence of detriment to specific clients. . . . Rule 1.3 states that a lawyer may be disciplined when he or she commits an act that is contrary to the prescribed standards of conduct and would reasonably be found to bring discredit upon the legal profession. In 1999 we said that three convictions (two misdemeanors and a felony) for driving while under the influence of alcohol showed a pattern of repeated offenses indicating indifference to legal obligations.

The pivotal issue to be determined in this case is whether the Respondent's conduct seriously adversely reflects on his fitness to practice law, Rule 8.4(b), RGDP, and if the act would reasonably be found to bring discredit upon the legal profession, Rule 1.3, RGDP. If so, it shall be grounds for disciplinary action. The Complainant argues that the Respondent's conduct does adversely reflect on the Respondent's fitness as a lawyer and brought discredit upon the legal profession.

The landmark cases addressing the Rule 6, RGDP, versus the Rule 7, RGDP, standard of "facially demonstrating unfitness to practice law" are *State ex rel. Oklahoma Bar Ass'n v. Armstrong*, 1990 OK 9, 791 P.2d 815 and *State ex rel. Oklahoma Bar Ass'n v. Armstrong*, 1992 OK 79, 848 P.2d 538. In *Armstrong*, 1990 OK 9, ¶ 8, the Court explained conviction of some crimes will facially show unfitness to practice law, while others will not. This principle is recognized in the *Comments* to Rule 8.4(b), ORPC, describing the offenses indicating a lack of characteristics relevant to the practice of law, that states:

**REDACTED**

> Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense

4

of willful failure to file an income tax return. However, some kinds of offense carry no such implication. ... Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. **Offenses involving violence**, dishonesty or breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation. [Emphasis added.]

Does the crime of Child Abuse by Injury indicate a lack of those characteristics relevant to law practice? The *ABA/BNA Lawyers' Manual on Professional Conduct*, 7/18/01, page 229 [Criminal Conduct] §101:301-304 discusses the Model Rules and states: "Under each scheme, it is the **underlying conduct** - as opposed to a conviction for such conduct - that forms the basis for the ethics violation." Regarding conduct addressed by ethics rules, it states:

Thus, although "[t]o some extent, every criminal act shows lack of support for our laws and diminishes public confidence in lawyers, thereby reflecting adversely on a lawyer's fitness to practice," *In re White*, 815 P.2d 1257, 1265 (Or. 1991), not all criminal conduct violates the ethics rules. According to *White*, "[e]ach case must be decided on its own facts. There must be some rational connection other than the criminality of the act between the conduct and the actor's fitness to practice law. Pertinent considerations include the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct. (Emphasis added.)

A review of the elements of Child Abuse by Injury will assist in this determination.

The elements are described at 10 O.S. § 7115(A) stating:

Any parent or other person who shall willfully or maliciously engage in child abuse shall, upon conviction, be guilty of a felony punishable by imprisonment in the custody of the Department of Corrections not exceeding life imprisonment, or

5

by imprisonment in a county jail not exceeding one (1) year, or by a fine of not less than Five Hundred Dollars ($500.00) nor more than Five Thousand Dollars ($5,000.00), or both such fine and imprisonment. As used in this subsection, "child abuse" means the willful or malicious abuse, as defined by paragraph 1 of subsection B of Section 7102[8] of this title, of a child under eighteen (18) years of age by another, or the act of willfully or maliciously injuring, torturing or maiming a child under eighteen (18) years of age by another. (Footnote added.)

The instant bar discipline case involving child abuse may be a case of first impression before the Oklahoma Supreme Court. There is strong public policy against child abuse. In bar discipline matters in cases from other states, *Magrid* and *Principato, infra,* discussed below, some Courts have considered their state legislation against domestic abuse. Regarding Oklahoma legislation against child abuse, the Oklahoma Child Abuse Prevention Act was added in 1984 as 63 O.S. 2001 § 1-227. The Office of Child Abuse Prevention also was created in 1984. The web page for the Office of Child Abuse Prevention states, in part:

> The intent of the Child Abuse Prevention Act is...
> • that a comprehensive approach for the prevention of child abuse and neglect be developed for the state and used as a basis of funding of programs and services;
> • that multidisciplinary and discipline-specific training on child abuse and neglect and domestic violence be available to professionals with responsibilities affecting children, youth, and families; and
> • that the Office of Child Abuse Prevention within the Oklahoma State Department of Health establish a comprehensive statewide approach towards the prevention of child abuse and neglect.

---

[8] Section 7102: <u>Public Policy - Protection of Children - Definitions</u>

B. Except as otherwise provided by and used in the Oklahoma Child Abuse Reporting and Prevention Act: **REDACTED**

1. "Abuse" means harm or threatened harm to a child's health, safety or welfare by a person responsible for the child's health, safety or welfare, including sexual abuse ...

6

Evidence will be admitted at trial that will demonstrate a *prima facie*[9] case that is clear and convincing evidence the acts were committed by the Respondent[10] Further, the evidence to be presented will provide the PRT with the facts surrounding the incident that resulted in the felony charge. These facts can then be considered to determine whether or not the crime of Child Abuse by Injury falls into the categories of offenses indicating a lack of those characteristics relevant to law practice, along with any possible mitigation evidence.

The Complainant argues that the Respondent should be professionally answerable for this offense as it indicates a lack of those characteristics relevant to law practice. The crime the Respondent pled to involved an act of willfully or maliciously engaging in child abuse. Physically assaultive behavior can be found to reflect adversely on a lawyer's fitness to practice law. *People v. Musick*, 960 P.2d 89, 92 (Colo. 1998). (Copy attached.) In an Iowa case, *Comm. on Professional Ethics and Conduct v. Lapointe*, 415 N.W.2d 617 (Iowa 1987) (copy attached), the Supreme Court of Iowa stated, at 619, that:

---

[9] *State ex rel. Oklahoma Bar Ass'n v. Bradley*, 1987 OK 78, ¶ 19, 746 P.2d 1130 (we find no reason in a disciplinary action to not allow a deferred sentence to be admitted as evidence that certain acts or commission were committed by the respondent, particularly as they relate to acts alleged in the complainant filed by the Bar Association).

[10] *State ex rel. Oklahoma Bar Ass'n v. Rogers*, 2006 OK 54, ¶ 9 and ¶ 14, 142 P.3d 428 (clear and convincing evidence is 'that measure or degree of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.' ... The victim of the accident reported to the police that Respondent had left the scene and Respondent was eventually apprehended six blocks away. This conduct is the basis for the Complainant's charge that Respondent violated Rule 8.4(c), and we find that under the circumstances of this case, Respondent's conviction for leaving the scene of a motor vehicle accident with property damage, which he caused due to his driving while intoxicated, constitutes clear and convincing evidence of conduct involving dishonesty for which discipline is warranted pursuant to Rule 8.4(c) ...).

7

> Notwithstanding the relaxed mores of contemporary society, no one can seriously contend that our community tolerates such conduct. ... Because assaultive behavior was illegal and morally reprehensible, it necessarily reflect on fitness to practice law.

The Complainant argues the Respondent's conduct seriously adversely reflects on his fitness to practice law, Rule 8.4(b), and such act would reasonably be found to bring discredit upon the legal profession, Rule 1.3, RGDP. Further, the Complainant argues the Respondent should be professionally answerable for this offense as it demonstrates disrespect for the law and rule of law.

Once it is determined that the crime of Child Abuse by Injury falls into a category for which the Respondent should be professionally answerable, the question becomes: What is the most appropriate discipline in this matter? The Court considers each disciplinary matter on a case by case basis considering the different offenses and mitigating circumstances to impose discipline fairly and consistently.

Since there is no Oklahoma case with similar facts, we first look the *ABA/BNA Lawyers' Manual on Professional Conduct*, 6/17/92, pages 29-30 [Standards for Imposing Lawyer Sanctions] §01:828 (hereinafter "ABA Standards") states, under 5.1 Failure to maintain Personal Integrity, at 5.12, §01:827, page 29:

> Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11[11] and that seriously adversely reflects on the lawyer's fitness to practice. (Footnote added.)

---

[11] Disbarment is generally appropriate when:

(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

8

The ABA Standards in considering whether a private reprimand is appropriate explain that a private censure, because it does not inform the public about a lawyer's misconduct, "should be used only when the lawyer is negligent, when the ethical violation results in little or no injury to a client, the public, the legal system, or the profession, and when there is little or no likelihood of repetition." ABA Standard 2.6, *Commentary.*

Discipline should be imposed fairly and consistently. Therefore, the Court considers each situation on a case by case basis considering the different offenses and mitigating circumstances. A search of Oklahoma law reveals no prior case with similar facts of Child Abuse by Injury. Therefore, a review of an Oklahoma case and a few cases outside of Oklahoma, some more egregious and some may be less egregious than the instant case, that may assist in an analysis is presented.

In *State ex rel. Okla. Bar Ass'n v. Foster,* 2000 OK 4, 995 P.2d 1138, Foster was publicly reprimanded and admonished for his misconduct involving his entering a plea of *nolo contendere* to the charge of assault with the intent to commit a felony and received a five-year deferred sentence. Foster unlawfully, wilfully, and feloniously touched a minor child under the age of eighteen (18) years, with the intent to commit the felony of procuring obscene and indecent photographs. The only issue before the Court involved Foster viewing the minor's breasts and inappropriate comments made to the minor following the incident.

In the New Jersey case, *In the Matter of Magid,* 655 A.2d 916, 139 N.J. 449 (N.J. 1995) (copy attached), Magid was charged with attempting to cause bodily injury by punching his victim in the head and face area causing a black eye, knocking her to the ground and kicking her in the neck, head, REDACTEDack, causing other bruising. *Id.* at 451. At the time of the incident, Magid was the First Assistant Prosecutor of Gloucester County.

9

The victim was also employed by the Gloucester County Prosecutor's Office. The two had been dating for several months. As a result of this incident, Magid was discharged from his position in the prosecutor's office. Magid pleaded guilty and was placed on probation for one year and fined $300.

This is the first case, along with *Principato, infra,* the Supreme Court of New Jersey considered appropriate professional discipline to be imposed on an attorney convicted of a domestic violence act. The Supreme Court of New Jersey determined in *Magid,* at 455:

> [Magid's] conduct was a serious violation of RPC 8.4(b). But for the fact that we have not previously addressed the appropriate discipline to be imposed on an attorney who is convicted of an act of domestic violence, and that respondent did not engage in a pattern of abusive behavior, respondent's discipline would be greater than the public reprimand we hereby impose. We caution members of the bar, however, that the Court in the future will ordinarily suspend an attorney who is convicted of an act of domestic violence.

The Supreme Court of New Jersey considered Magid's position as First Assistant Prosecutor. The New Jersey Court stated in *Magid,* at 455:

> Attorneys who hold public office are invested with a public trust and are thereby more visible to the public. Such attorneys are held to the highest of standards. 'Respondent's conduct must be viewed from the perspective of an informed and concerned private citizens and be judged in the context of whether the image of the bar would be diminished if such conduct were not publicly disapproved.' *In re McLaughlin,* 105 N.J. 457, 461, 522 A.2d 999 (1987) (citation omitted).

In the New Jersey case, *In the Matter of Principato,* 655 A.2d 920, 139 N.J. 456 (N.J., 1995) (copy attached), Principato was charged with simple assault on his client with whom he had developed a romantic relationship. Principato admitted to going to this

**REDACTED**

client's home where he yelled and used profanity. The Haddon Township Municipal Court

10

also found he turned over the mattress on which his client was sitting and, with his client pinned behind the mattress, "Mr. Principato lost control of himself, possibly because she was ending this relationship.... [H]e began to pummel her against the mattress, he never hit her skin directly, but he did pummel the mattress forcefully at least 10 or 15 times ... the matter lasted at least 10 seconds." *Id.* at 459. Further, the court found that "although the client did not sustain serious injuries, she was in fear for her life, suffered pain, and suffered a scratch on her arm." *Id.* at 459. Principato received a public reprimand.

The Supreme Court of New Jersey addressed domestic violence offenses stating in *Principato*, at 461:

> Unlike many other 'victimless' disorderly persons offenses, domestic violence offenses always involve victims, often-times vulnerable and defenseless. The public must be assured that the legal profession is concerned about domestic violence.

In the Indiana case, *In the Matter of Walker*, 597 N.E.2d 1271 (Ind., 1992) (copy attached), Walker visited the victim's home after having consumed several alcoholic beverages. They discussed their deteriorating relationship. This discussion evolved into an argument. During the ensuing argument, Walker straddled the victim, slapped her several times, and hit her in the face with a closed fist cutting her lip. As Walker was leaving the residence, he forcibly took the telephone from the victim's nine-year old daughter and pushed her. The incident was reported to the police but the incident report was lost and was not introduced in evidence.

At the time of the incident, Walker was the Chief Deputy Prosecuting Attorney for Elkhart County. The prosecutor, who was also Respondent's law partner, advised the victim that she had a right to a special prosecutor. She declined but requested that Walker receive REDACTED

11

counseling, pay her medical bills, pay for her daughter's counseling and have no further

contact with her. Walker met all of these requests. The incident was reported in the local

press. Walker received considerable publicity on this incident.

Walker argued no professional misconduct occurred. His argument was that "the

physical altercation was the culmination of a private, adult relationship, and that the battery

'arose instantaneously' after provocation." *Id.* at 1272. The Supreme Court of Indiana

stated, at 1272:

> The circumstances presented by the findings reveal an act of
> domestic violence. This admittedly criminal conduct is not and
> did not remain a private matter. We are not persuaded by the
> claim of provocation, nor are we comforted by the fact that the
> grievant's daughter, also a victim of Respondent's conduct,
> recovered after some counselling sessions. Respondent's
> position as deputy prosecutor requires even stricter scrutiny of
> this conduct. As was stated in the *Matter of Oliver* (1986), Ind.,
> 493 N.E.2d 1237, Respondent's duty to conform his behavior to
> the law does not arise solely out of his status as an attorney. As
> an officer charged with the administration of the law,
> Respondent's behavior has the capacity to bolster or damage
> public esteem for the system. Were those whose job it is to
> enforce the law break it instead, the public rightfully questions
> whether the system itself is worthy of respect. The damage this
> incident has undoubtedly brought to the public's esteem will be
> addressed only if Respondent is held accountable.

Further, the Supreme Court of Indiana explained the conduct reflects upon the

attorney's fitness as a lawyer stating, at 1272:

> Also, Respondent's conduct reflects upon his fitness as a lawyer
> and constitutes a violation of Rule 8.4(b). Not every violation
> of the penal code reflects upon an attorney's suitability as a
> practitioner. *See, Matter of Oliver, supra.* The issue is whether
> there exists a nexus between the misconduct and the
> Respondent's duties to his clients, the courts, or the legal
> system. *Matter of Oliver, supra.* Another important
> assessment is the impact of the conduct on the public's
> perception of Respondent's fitness as a lawyer. *Matter of Roche*

12

(1989), Ind., 540 N.E.2d 36. As a part-time prosecutor, Respondent inevitably encounters domestic assaults, and this incident calls into question his ability to zealously prosecute or to effectively work with the victims of such crimes. As a part-time practitioner, Respondent's effectiveness with his own clients or with adversaries in situations involving issues of domestic violence is compromised by his own contribution to this escalating societal problem. In both his capacities, we believe the perception of his fitness is tainted.

The Supreme Court of Indiana suspended Walker for sixty (60) days.

In the instant case, the Respondent's arrest and the charges against him were made public in numerous news reports. It is reasonable to conclude from the written news reports the Respondent received some portion of the publicity due to his position as an Assistant United States Attorney. He resigned his position prior to entering his Alford plea.

In an Iowa case, *Comm. on Professional Ethics and Conduct v. Patterson*, 369 N.W.2d 798 (Iowa, 1985) the Supreme Court of Iowa stated, at 801, that:

Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude. ... Paraphrasing what we wrote in *Committee on Professional Ethics and Conduct v. Bromwell*, 221 N.W.2d 777, 779 (Iowa 1974), when those licensed to operate the law's machinery knowingly violate essential criminal statutes, there inexorably follows an intensified loss of law persons' respect for the law.

The purpose of disciplinary proceedings is not to inflict punishment on the offending lawyer but to safeguard the interests of the public, the judiciary and the legal profession. Responsibilities of this Court in the discipline process also include maintaining confidence in the profession by the public and deterring the commission of similar acts in the future by the offending lawyer and other members of the bar.[12]

**REDACTED**

---

[12] *State ex rel. Okla. Bar Ass'n v. Wilburn,* 2006 OK 50, ¶ 11, 142 P.3d 420.

13

In conclusion, the Complainant argues the Respondent's conduct lacked of those characteristics relevant to law practice since the crime involves an attempt of violence and demonstrates disrespect for the law. The Complainant further argues the Respondent's conduct seriously adversely reflects on his fitness to practice law, Rule 8.4(b), and the act would reasonably be found to bring discredit upon the legal profession, Rule 1.3, RGDP, and demonstrates grounds for disciplinary action. Therefore, the Complainant argues that the Respondent should be professionally answerable for his conduct and that professional discipline is necessary and appropriate.

WHEREFORE, premises considered, Complainant, Oklahoma Bar Association, prays that the Respondent, David M. Littlefield, be disciplined as this Court finds equitable and proper, and for such other relief as this Court finds appropriate.

Janis Hubbard
Assistant General Counsel, OBA #14641
Oklahoma Bar Association
1901 N. Lincoln, P.O. Box 53036
Oklahoma City, Oklahoma 73152
(405) 416-7007
ATTORNEY FOR COMPLAINANT

**REDACTED**

14

## CERTIFICATE OF MAILING

The undersigned hereby certifies that on the 2nd day of January 2008, a true and correct copy of the foregoing Trial Brief of Complainant was mailed, by regular mail, to: Deborah A. Reheard, Attorney for Respondent, P.O. Box 636, 100 N. 2nd St., Eufaula, OK 74432, Mark Green, Attorney for Respondent, P.O. Box 2362, Muskogee, OK 74402; Janis Grant-Johnson, PRT Presiding Master, 623 N. Porter, Ste. 400, Norman, OK 73071; Roger R. Scott, PRT Lawyer Member, 525 S. Main, Suite 1111, Tulsa, OK 74103; and Dale Cabbiness, Ph.D., PRT Lay Member, Box 1603, Edmond, OK 73083-1603.

Janis Hubbard

**REDACTED**

15

Page 89

**960 P.2d 89**

**98 CJ C.A.R. 2655**

**The PEOPLE of the State of Colorado, Complainant,**
**v.**
**John D. MUSICK, Jr., Attorney-Respondent.**

**No. 97SA210.**

**Supreme Court of Colorado,**
**En Banc.**

**May 26, 1998.**
**Rehearing Denied June 22, 1998.**

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

Frascona, Joiner and Goodman, P.C., Joseph Adams Cope, Louise Culberson-Smith, Boulder, for Attorney-Respondent.

PER CURIAM.

In this lawyer discipline case, a hearing panel of the supreme court grievance committee sent the findings and recommendation of a hearing board back for further consideration in light of the objections filed by the respondent and the complainant. The hearing panel then approved the board's supplemental findings, but modified the board's recommendation of discipline from a three-month suspension to a suspension of one year and one day. The respondent has excepted to the findings and recommendation. We now accept the hearing panel's recommendation and suspend the respondent for one year and one day.

Page 90

I.

The respondent was admitted to practice law in Colorado in 1970. He is also licensed to practice law in California and Hawaii. Following a three-day hearing, the board made the following findings by clear and convincing evidence. The respondent takes issue with most of these findings.

The respondent and Victoria Johnson lived together first in Aspen, Colorado and then in Los Angeles from October of 1988 to October of 1993. In February 1992, the respondent physically assaulted Johnson inside their Los Angeles apartment. The board found that the assault resulted in multiple soft tissue contusions, but no serious injury. The parties reconciled.

On a combination vacation and business trip to Hawaii in May 1993, the respondent again physically assaulted Johnson in their hotel room. Her injuries were minor. At one point during the assault, he threatened to throw Johnson out of the window of their room on the sixteenth floor. He

also restrained her with a belt throughout the night so that she could not leave.

Finally, in October 1993, the respondent physically assaulted Johnson in Los Angeles. The assault resulted in no actual injuries, although it caused her pain.

The Code of Professional Responsibility governs the 1992 assault, but the Rules of Professional Conduct apply to the 1993 assaults. In its initial report, the hearing board stated:

The Board was not presented with any evidence that Respondent's temper which resulted in the physical attacks had affected his law practice or clients in any way. To the contrary, all evidence presented to the Board indicated that throughout the relevant time he had a very successful practice with well-satisfied clients. The Board concluded that the three physical assaults were isolated incidents not involving a fixed pattern of misbehavior. The behavior at issue can find redress in the criminal and civil laws. The Board found that the physical attacks were directly related to the tumultuous and dysfunctional relationship in which the Respondent and Ms. Johnson were involved and were entirely situational. The Board concluded that it was highly unlikely that the temper exhibited by the Respondent which gave rise to the physical attacks on Ms. Johnson would adversely affect his clients. Therefore, the Board concludes that the physical attacks on Ms. Johnson were not a violation of disciplinary Rule 1-102(a)(1) [violating a disciplinary rule] or DR 1-102(A)(6) [engaging in conduct adversely reflecting on the lawyer's fitness to practice] of the Code of Professional Responsibility or Rules 8.4(a) [violating the rules of professional conduct] and 8.4(h) [engaging in conduct adversely reflecting on the lawyer's fitness to practice] of the Rules of Professional Conduct.

The hearing board did find, however, that the respondent's physical assaults violated C.R.C.P. 241.6(3) (violating the highest standards of honesty, justice, and morality) and C.R.C.P. 241.6(5) (violating the criminal laws of a state). Following a remand by the hearing panel for further consideration in light of the objections filed by the parties, the hearing board filed supplemental findings of fact and recommendation.

As part of its findings and conclusions, the board affirmed evidentiary rulings involving the admission of medical records and tape recordings of telephone messages and conversations. The board found the medical record admissible under CRE 803(4). The respondent objected to the admissibility of tape recordings and transcriptions of telephone messages he left for Johnson and tapes of telephone conversations between the respondent and Johnson. These tape recordings were presumably made in California. In his objections to the report of the hearing board, the respondent raised, for the first time, that the tape recordings of his conversations with Johnson were not admissible because of a California statute that prohibited the introduction into evidence of a recording of a confidential communication made without the consent of all the parties to the conversation. See Cal.Penal Code § 632 (West 1988 & Supp.1998).

We need not address the question of whether this California statute should be applied

Page 91

in a lawyer discipline proceeding in Colorado. [1] The hearing board properly found that by failing to contemporaneously object on this basis at the hearing, the respondent waived the objection. [2]

The respondent also alleged that he could not be found to have violated either C.R.C.P. 241.6(3) or C.R.C.P. 241.6(5) since those rules were not specifically pleaded in the complaint. The hearing board agreed and withdrew those findings. However, the hearing board also

reconsidered whether the respondent's conduct adversely reflected on his fitness to practice law, in violation of DR 1-102(A)(6) and Colo. RPC 8.4(h):

The Board concluded that the physical attacks by Respondent on Victoria Johnson were the result of a very critical failure of judgment and evidence a contempt for the law which is at odds with the Respondent's duty to uphold the law. The Board concludes that the conduct reflects adversely on the Respondent's judgment and duty to uphold the law.

In reaching this conclusion, the board quoted from People v. Senn, 824 P.2d 822 (Colo.1992):

It is preeminently the business of the criminal justice system to punish violations of the laws. While the respondent's misconduct [committing offense of prohibited use of weapon in a domestic altercation] did not directly arise from the practice of law, disciplinary proceedings supplement the work of the criminal courts to maintain respect for the rule of law and protect the public. The respondent's conduct on the morning of September 14 was the result of a very critical failure of judgment and we believe it evinced a contempt for the law which was at odds with the respondent's duty to uphold the law.

824 P.2d at 824-25 (citations omitted).

The complaint also charged the respondent with misconduct relating to his use of an American Express card issued on an account for which Johnson was ultimately liable. The board found that these charges had not been proved by clear and convincing evidence and dismissed that count.

II.

The hearing board recommended that the respondent be suspended for three months and that he be ordered to engage in mental health counseling for the personal and emotional problems that led to his physical attacks. The hearing panel approved the board's supplemental findings. However, the panel modified the board's recommendation of a three-month suspension to suspension for one year and one day, "because a shorter suspension would be unduly lenient under the facts of this case." In addition, the panel modified the recommendation of mental health counseling to a requirement that the respondent complete a certified domestic violence treatment program as a condition of reinstatement. See § 18-6-802, 6 C.R.S. (1997). The respondent filed exceptions to the panel's action.

The respondent's first contention is that "isolated instances of minor assault" outside of the context of a law practice can never be considered conduct that adversely reflects on the fitness to practice law, especially when the respondent was not charged with violating any criminal laws. In particular, the complaint filed against the respondent did not charge such a violation. The respondent is correct that in other lawyer

Page 92

discipline cases involving assault, violation of a criminal law REDACTED was also charged. See, e.g., Senn, 824 P.2d at 823.

However, we have never held that a complaint must charge a violation of the criminal law before physically assaultive behavior can be found to reflect adversely on a lawyer's fitness to

practice law. As we said People v. Crossman, 850 P.2d 708 710-11 (Colo.1993), "[w]e agree with the Supreme Court of Florida that '[i]mproprieties that directly and intentionally harm others always are serious offenses in the eyes of this Court.' Florida Bar v. Samaha, 557 So.2d 1349, 1350 (Fla.1990) (emphasis in original)." People v. Brailsford, 933 P.2d 592, 595 (Colo.1997), we observed that "the actual nature of [the attorney's] conduct [which resulted in a guilty plea to third-degree sexual assault] is more important for disciplinary purposes than the statutory label put on it." We suspended Brailsford for one year and one day following his conviction for the third-degree sexual assault of his wife. See id. at 596.

In a similar way, we deem the actual nature of the respondent's violent assaultive behavior in this case on multiple occasions more significant than the presence or absence of a criminal charge. Assault on another person is malum in se. People v. Washburn, 197 Colo. 419, 424 n. 3, 593 P.2d 962, 965 n. 3 (1979) ("It is the nature of this offense which gives rise to this issue; the bulk of criminally proscribed behavior is not reasonably subject to the defense of: 'my conduct was not wrong.' Homicide, assault, kidnapping, sexual assault, arson, burglary, and robbery are all malum per se, and protestations by the accused that such conduct is blameless is irrational."); In re Ruffalo, 390 U.S. 544, 555, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (White, J., concurring) ("Even when a disbarment standard is as unspecific as the one before us, members of a bar can be assumed to know that certain kinds of conduct, generally condemned by responsible men, will be grounds for disbarment. This class of conduct certainly includes the criminal offenses traditionally known as malum in se. It also includes conduct which all responsible attorneys would recognize as improper for a member of the profession."). Such conduct on the part of an officer of the court is very serious indeed. The fact that the respondent's misconduct was not directly related to his practice of law is only one factor to be taken into account, but is not a determinative factor.

The respondent also contends that the recommended discipline is excessive and that his conduct warrants no more than a private censure. People v. Knight, 883 P.2d 1055, 1056 (Colo.1994), we suspended Knight for 180 days with the additional requirement that he petition for reinstatement and demonstrate that he had not participated in any further acts of domestic violence. Knight was convicted of the third-degree assault of his wife over a three-day period. Id. Knight pleaded guilty to third-degree assault and the court imposed a deferred judgment and sentence conditioned upon his completion of a thirty-six week domestic violence counseling program and a twenty-four month period with no criminal offenses. Knight self-reported his conviction, and the hearing board found that at the time of the hearing he had completed the domestic violence counseling program and had not engaged in any other acts of domestic violence. Id. Of particular importance to the present case, we noted that Knight had taken steps toward rehabilitation but, as we said People v. Wallace, 837 P.2d 1223[, 1224] (Colo.1992):

We do not minimize the importance of the steps toward rehabilitation that the respondent has already taken, nor are we unmindful of the consequences flowing from a suspension as opposed to private discipline. Our primary duty in attorney discipline cases, however, is to protect the public from unfit practitioners, and the respondent's multiple acts of violence are indicative of a "dangerous volatility which might well prejudice his ability to effectively represent his clients' interests given the pressures associated with the practice of law." In re Nevill, 39 Cal.3d 729, 217 Cal.Rptr. 841, 845, 704 P.2d 1332, 1336 (1985).

883 P.2d at 1056. The most striking difference between Knight and the present case is not the degree of injury inflicted or threatened, but the complete absence of evidence

Page 93

that the respondent has taken any steps whatsoever to rehabilitate himself or even to recognize

that he has a problem. See ABA Standards for Imposing Lawyer Sanctions 9.22(g) (1991 & Supp.1992) (ABA Standards ) (refusing to acknowledge the wrongful nature of conduct is an aggravating factor for purposes of determining the proper level of discipline). The hearing board found that the physical assaults actually occurred, by clear and convincing evidence. We decline to regard the respondent's failure to take any steps toward rehabilitation as a legitimate exercise of a defense to the charges of misconduct.

The three separate physical assaults constitute a pattern of misconduct, which is also an aggravating factor. See id. at 9.22(c). In addition, at the time of the hearing in this case in June 1996, the respondent had not been previously disciplined. On August 22, 1996, a hearing panel of the supreme court grievance committee sent the respondent a letter of admonition for violating Colo. RPC 1.9(a) in his representation of a client whose interests were materially adverse to a former client. This court affirmed that determination in Musick v. People, No. 96SA462 (Colo. Apr. 1, 1997) (unpublished order). See ABA Standards 9.22(a) (prior discipline is an aggravating factor).

In mitigation, the respondent cooperated in the disciplinary proceedings, see id. at 9.32(e); he was experiencing personal or emotional problems at the time of the misconduct, see id. at 9.32 (c); and he has an otherwise good character or reputation in the legal community, see id. at 9.32 (h). However, the fact that the respondent has a good reputation is of less importance in a case such as this. Acts of domestic violence, like sexual assaults, "commonly occur in secret and remain unknown to the public until the victim complains." People v. Bertagnolli, 922 P.2d 935, 939 (Colo.1996).

Taking the seriousness of the offenses together with the aggravating and mitigating factors, we conclude that a long, rather than short, period of suspension is necessary. In addition, as People v. Wotan, 944 P.2d 1257, 1264 (Colo.1997), we believe that the respondent must be required to demonstrate that he has been rehabilitated and is once again fit to practice law before he may be reinstated. The respondent must therefore undergo reinstatement proceedings. In addition, because he has shown no inclination to undergo appropriate therapy voluntarily, we agree with the hearing panel that the respondent should complete a certified domestic violence treatment program as a condition of reinstatement. Accordingly, we accept the hearing panel's recommendations. At least one member of the court would have accepted the hearing board's recommendation of a three-month suspension.

III.

John D. Musick, Jr., is hereby suspended from the practice of law for one year and one day, effective thirty days after the date of this opinion. Musick shall not be reinstated until he has petitioned for reinstatement pursuant to C.R.C.P. 241.22(b)-(d). In addition, as a condition for reinstatement, the respondent must demonstrate that he has completed a certified domestic violence treatment program. See § 18-6-802, 6 C.R.S. (1997). Finally, Musick is ordered to pay the costs of this proceeding in the amount of $4,108.11 within ninety days after the date on this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920-S, Dominion Plaza, Denver, Colorado 80202.

HOBBS, J., does not participate.              **REDACTED**

------------------

1 We do note that other courts have declined to apply California's statutes to determine admissibility of similar tape recorded evidence. United States v. Little, 753 F.2d 1420, 1434-35 (9th Cir.1984) (holding that tape

recordings made in conformity with federal law but in violation of Cal.Penal Code § 632 were admissible in federal prosecution); Roberts v. Americable Int'l, Inc., 883 F.Supp. 499, 503-04 (E.D.Cal.1995) (federal statute permitting a party to a conversation to intercept the conversation, not California statute prohibiting intentional recording of confidential communications without consent of all parties, applied to admissibility of employee's interception of conversations in employment discrimination action in federal court). The respondent has not asserted that the tapes were made in violation of Colorado law.

2 The respondent has provided no reasonable explanation for his failure to object at the hearing on this California state law ground, especially since he indicates that he is licensed to practice law in California.

**REDACTED**

**Page 617**
**415 N.W.2d 617**
**COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,**
**v.**
**Joseph R. LAPOINTE, Respondent.**
**No. 87-1136.**
**Supreme Court of Iowa.**
**Nov. 25, 1987.**

James E. Gritzner and Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for complainant.

James P. McGuire of McGuire & O'Bryan, Mason City, for respondent.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO, and NEUMAN, JJ.

LAVORATO, Justice.

After a bench trial, the district court found attorney Joseph R. Lapointe guilty of assault, a serious misdemeanor, and tampering with a witness, an aggravated misdemeanor. The two convictions resulted in a temporary suspension of Lapointe's license to practice law on December 19, 1986, and later led to this disciplinary proceeding.

The Grievance Commission found that Lapointe violated Iowa Code of Professional Responsibility for Lawyers DR 1-102(A)(1) (violating disciplinary rule), (5) (engaging in conduct prejudicial to the administration of justice), (6) (engaging in any other conduct adversely reflecting on his fitness to practice law), and EC 1-5 (failing to refrain from all illegal and morally reprehensible conduct). The commission recommended a one-year suspension "with credit given for the time that his license has been suspended."

Page 618

Lapointe is a sole practitioner who has been practicing law in Mason City since his admission to the bar in 1978. He has a general law practice with approximately twenty percent of his work devoted to criminal defense.

For several years leading up to the events triggering the filing of criminal charges against Lapointe, he had been intimately involved with Ramona Nava. On the evening of February 21, 1986, the couple attended a county bar association party. After several hours of heavy drinking by Lapointe, the two left the party for Lapointe's home. There, Ramona found a match book cover with a woman's name and telephone number written inside. The discovery led to an argument during which Lapointe struck Ramona in the stomach and face. The blow to the face resulted in a cut above Ramona's eye.

Ramona refused Lapointe's offer to take her to the hospital. Instead, she left and proceeded to a bar the couple frequented. From there, a friend and bar maid drove Ramona to the hospital where she received six stitches in the cut. The three then returned to the bar, where two police officers on routine patrol saw Ramona's condition and interviewed her. Later, she signed a statement about the incident at the police station.

The next afternoon Lapointe telephoned Ramona inquiring about her condition. During the course of the conversation, Lapointe asked whether she would file criminal charges. Ramona said she would not but neglected to tell **REDACTED** him she had been interviewed by the police. Lapointe also offered to pay whatever damages upon which the two could agree, suggesting that

he would either borrow the money or make monthly payments. He suggested that she contact a lawyer for advice as to the amount of any settlement. Later that evening, Lapointe learned from people at the bar that Ramona had been interviewed there by the police.

Several weeks later, the couple reconciled and resumed their relationship. In the weeks that followed, the two talked frequently about the events of February 21. In the meantime, a criminal complaint charging aggravated assault and false imprisonment was filed against Lapointe.

In the latter part of April, Lapointe learned of an impending grand jury proceeding concerning the pending complaint. Before the grand jury convened, Lapointe saw statements Ramona had given to the county attorney. Lapointe felt that the statements cast him in a bad light and concluded that the statements were prompting the authorities to take a "hard line attitude" against him. Lapointe confronted Ramona about these statements. She expressed regret and told Lapointe she had said many of the things in an effort to get back at him for what he had done.

After several conversations with Ramona about these statements and her upcoming grand jury testimony, Lapointe prepared a two-page document carrying the heading "Mona, these are the most important things to remember." He insists the document is true and was prepared at Ramona's request to help her remember her testimony before the grand jury. Lapointe prepared and gave the document to Ramona several days prior to her appearance before the grand jury.

The document suggests Ramona give testimony that the blows were struck in self-defense. Such testimony would nullify the false imprisonment charge, which was based on Ramona's statements to the authorities that Lapointe had locked her in his home shortly before she was assaulted. In one part of the document, Lapointe emphasizes that Ramona should make it clear to the grand jury that his

offer of money was in no way conditioned on her refusal to press charges or testify. In another part of the document, Lapointe urges Ramona to tell the grand jury that in her previous statements to the authorities she "exaggerated and stretched the truth." Toward the end of the document, Lapointe suggests that Ramona should stress the good things that have happened to her because of their relationship and should leave the grand jury with the impression that despite what has happened, they love each other and plan to live their lives together.

Page 619

Ramona ultimately testified before the grand jury, which returned a four-count indictment against Lapointe. The case was tried without a jury with Ramona as the State's main witness. The court found Lapointe guilty of assault causing bodily injury, in violation of Iowa Code section 708.2(2) (1985), and tampering with a witness, in violation of Iowa Code section 720.4. Lapointe received a thirty-day sentence and actually spent twenty-six days in jail. He appealed the tampering conviction but not the assault conviction, and his appeal is pending.

It is not surprising that Lapointe readily admits the assault. However, he vigorously denies he is guilty of tampering. Regardless of the outcome of the tampering appeal, he concedes, as he must, that the commission may consider all of his actions in determining his fitness to practice law. See Committee on Professional Ethics & Conduct v. Kraschel, 260 Iowa 187, 198-99, 148 N.W.2d 621, 628 (1967) (" 'Acquittal of a member of the bar following trial of a criminal indictment is not res judicata in a subsequent disciplinary proceeding based on substantially the same charge or conduct. Not only are the parties different but the purposes of the two proceedings are different.' ") (quoting In re Pennica, 36 N.J. 401, 418, 177 A.2d 721, 730 (1962)); Annotation, Effect of Acquittal or Dismissal in Criminal Prosecution as Barring

REDACTED

Disciplinary Action Against Attorney, 76 A.L.R.3d 1028 (1977).

Despite Lapointe's characterization of his assault as a "crime of passion, a brief and sudden episode without any premeditation or time for reflecting," we agree with the commission that such conduct violated DR 1-102(A)(1), (5), (6), and EC 1-5. The conduct was, without question, illegal because a criminal law was admittedly violated. See EC 1-5. It could also be described as "morally reprehensible." See id. Notwithstanding the relaxed mores of contemporary society, no one can seriously contend that our community tolerates such conduct. See Committee on Professional Ethics & Conduct v. Patterson, 369 N.W.2d 798, 801 (Iowa 1985) (three-month suspension for assaultive behavior considered morally reprehensible in violation of EC 1-5).

Because Lapointe's assaultive behavior was illegal and morally reprehensible, it necessarily reflects on his fitness to practice law. See DR 1-102(A)(6). It likewise reflects prejudicially on the administration of justice. See DR 1-102(A)(5). We are convinced that "when those licensed to operate the law's machinery knowingly violate essential criminal statutes, there inexorably follows an intensified loss of lay persons' respect for the law." Patterson, 369 N.W.2d at 801. A showing that DR 1-102(A)(5) and (6), disciplinary rules, were violated necessarily establishes violation of DR 1-102(A)(1), which prohibits a violation of a disciplinary rule.

The question whether Lapointe's actions following the assault constitute unethical conduct presents a closer question. Admittedly, in many conversations, Lapointe discussed with Ramona the facts in relation to the criminal charges against him and prepared, for her use before the grand jury, the ill-advised "refresher" document. We express no opinion whether such conduct constitutes a criminal violation of our witness tampering statute. Nevertheless, after our careful review of the record, we are convinced the commission was correct in

concluding such conduct did violate DR 1-102(A)(1), (5), (6), and EC 1-5.

It is interesting to note that Lapointe, in answering the committee's request for admissions, admits these actions violated EC 1-5 but denies they violated DR 1-102(A)(1), (5), and (6). The commission certainly could rely on the admission in reaching its decision. See Committee on Professional Ethics & Conduct v. Cody, 412 N.W.2d 637, 638 (Iowa 1987); see also Iowa R.Civ.P. 127, 128.

Several facts support a reasonable inference that Lapointe intended to influence Ramona's testimony and minimize the chances that he would be indicted. These include Lapointe's expertise in the criminal area; his persistence in talking with Ramona about the criminal charges while at the same time offering her restitution; and his self-serving statements in the document,

Page 620

which were clearly designed to destroy Ramona's credibility and to dilute, if not completely meet, the charges against him. Such attempts by Lapointe to influence a witness to "assist in chilling or hindering [his] prosecution," Committee on Professional Ethics & Conduct v. Halleck, 325 N.W.2d 117, 118 (Iowa 1982), were clearly improper and, in our view, had a prejudicial impact on the administration of justice, in violation of DR 1-102(A)(5), and thus reflected adversely on his fitness to practice law, in violation of DR 1-102(A)(6). See Halleck, 325 N.W.2d at 118 (fourteen-month suspension for conviction of witness tampering in violation of DR 1-102(A)(1), (3), (4), (5), and (6)) ("The vice in this case was not in offering restitution but in using it as a leverage to attempt to influence the witness to assist in chilling or hindering the prosecution of respondent's client.").

REDACTED

Because we conclude Lapointe's conduct subsequent to the assault violated disciplinary rules, the same conduct also constitutes a

Committee On Professional Ethics and Conduct of the Iowa State Bar Ass'n v. Lapointe, 4 N.W.2d 617 (Iowa, 1987)

violation of DR 1-102(A)(1), which we earlier said prohibits a violation of a disciplinary rule.

The commission found that Ramona deliberately set out to cause Lapointe difficulty with the authorities in an effort to "get even" with him. Although the record certainly supports the finding, her efforts do not excuse his unprofessional conduct. In short, he must be disciplined. Whatever sanction we do impose should be sufficient to deter others and to indicate to the public that "the courts will maintain the ethics of the profession." Halleck, 325 N.W.2d at 118.

We agree with the committee's recommendation that Lapointe's license to practice law should be suspended with credit given for the time his license has already been suspended; however, we are convinced the period of suspension should be not less than fourteen months rather than twelve as recommended by the committee. We therefore suspend Lapointe's license to practice law in the courts of this state indefinitely, with no possibility of reinstatement for a period of fourteen months from December 19, 1986. This suspension shall apply to all facets of the practice of law. See Iowa Sup.Ct.R. 118.12. Upon application for reinstatement, Lapointe shall have the burden to prove he has not practiced law during the period of suspension and that he meets the requirements of Iowa Supreme Court Rule 118.13. We caution Lapointe that any hearing on an application for reinstatement will be at least sixty days after the filing of such application. See Iowa Sup.Ct.R. 117. Costs are assessed to Lapointe pursuant to Supreme Court Rule 118.22.

LICENSE SUSPENDED.

**REDACTED**



Page 449

### 139 N.J. 449

### 655 A.2d 916

### In the Matter of Lawrence G. MAGID, An Attorney at Law.

### Supreme Court of New Jersey.

### Submitted Jan. 18, 1995.
### Decided March 31, 1995.

Robyn M. Hill, Chief Counsel, submitted a recommendation for discipline on behalf of Disciplinary Review Bd.

Maressa, Goldstein, Birsner, Patterson, Drinkwater & Oddo, Berlin, for respondent.

PER CURIAM.

This disciplinary proceeding arose from a Motion for Final Discipline Based Upon a Criminal Conviction filed by the Office of Attorney Ethics (OAE) before the Disciplinary Review Board (DRB), seeking final discipline of Lawrence Magid, pursuant to

Page 451

Rule 1:20-6(c)(2)(i). That motion was based on respondent's conviction of simple assault, in violation of N.J.S.A. 2C:12-1a(1).

The DRB found that respondent had engaged in unethical conduct. Four members recommended that respondent be publicly reprimanded. Two members would have imposed a private reprimand. Our independent review of the record leads us to accept the DRB's recommendation.

I

Respondent was admitted to the bar in 1969. At the time of the assault he had been an attorney with the Prosecutor's Office of Gloucester County for more than sixteen years. The DRB accurately sets forth the relevant facts in its Decision and Recommendation:

On September 28, 1993, a complaint was filed in Woodbury Heights Municipal Court charging respondent with the disorderly persons offense of assault, in violation of N.J.S.A. 2C:12-1a(1). The complaint charged respondent with attempting "to cause bodily injury to [K.P.], specifically by punching her in the head and face area causing a black eye, knocking her to the ground and kicking her in the neck, head, and lower back, causing other bruising". The incident in question occurred on the evening of September 25, 1993 at Badges, a private club in Woodbury Heights, frequented by law enforcement personnel. At the time of the incident, respondent was the First Assistant Prosecutor of Gloucester County. The victim, [K.P.] was also employed by the Gloucester County Prosecutor's Office and had been dating respondent for several months. As a result of this incident, respondent was discharged from his position in the prosecutor's office.

On December 7, 1993, respondent pleaded guilty to assaulting [K.P.]. The plea was taken by Superior Court Judge Robert W. Page, sitting as Municipal Court Judge for the Woodbury Heights Municipal Court.

At sentencing on February 7, 1993, Judge Page placed respondent on probation for a period of one year, fined him $250, and administered a $50 violent crime penalty. As conditions of probation, Judge Page required that respondent have no contact with [K.P.] and be responsible for any medical expenses incurred by her. He also directed respondent to continue treatment with his psychiatrist and remain drug- and alcohol-free during the course of his probation.

[Citations to Exhibits omitted].

II

A criminal conviction is conclusive evidence of guilt in a disciplinary proceeding. R. 1:20-6(c) (1). The sole issue to be

Page 452

determined is the extent of discipline to be imposed. R. 1:20-6(c)(2)(ii); In re Lunetta, 118 N.J. 443, 445, 572 A.2d 586 (1989); In re Goldberg, 105 N.J. 278, 280, 520 A.2d 1147 (1987); In re Tuso, 104 N.J. 59, 61, 514 A.2d 1311 (1986). In determining appropriate discipline, we consider the interests of the public, the bar, and the respondent. In re Litwin, 104 N.J. 362, 365, 517 A.2d 378 (1986); In re Mischlich, 60 N.J. 590, 593, 292 A.2d 23 (1977). The appropriate discipline depends on many factors, including the "nature and severity of the crime, whether the crime is related to the practice of law, and any mitigating factors such as respondent's reputation,[655 A.2d 918] his prior trustworthy conduct, and general good conduct." In re Lunetta, supra, 118 N.J. at 445, 446, 572 A.2d 586; In re Kushner, 101 N.J. 397, 400-01, 502 A.2d 32 (1986). Although we do not make an independent examination of the underlying facts to ascertain guilt, we do consider them relevant to the nature and extent of discipline to be imposed. In re Goldberg, supra, 105 N.J. at 280, 520 A.2d 1147; In re Rosen, 88 N.J. 1, 438 A.2d 316 (1981).

III

Respondent's conviction of the disorderly persons offense of simple assault is clear and convincing evidence that he has violated RPC 8.4(b) (by committing a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer). The primary purpose of discipline is not to punish the attorney but to preserve the confidence of the public in the bar. We judge each case on its own facts. In re Kushner, supra, 101 N.J. at 400, 502 A.2d 32.

That respondent's misconduct did not directly involve the practice of law or a client is of little moment. It is well-established that the private conduct of attorneys may be the subject of public discipline. In re Bock, 128 N.J. 270, 274, 607 A.2d 1307 (1992). The reason for that rule is

not a desire to supervise the private lives of attorneys but rather that the character of a man is single and hence misconduct revealing a deficiency is not less

**REDACTED**

Page 453

compelling because the attorney was not wearing his professional mantle at the time. Private misconduct and professional misconduct differ only in the intensity with which they reflect upon

fitness at the bar. This is not to say that a court should view in some prissy way the personal affairs of its officers, but rather that if misbehavior persuades a man of normal sensibilities that the attorney lacks capacity to discharge his professional duties with honor and integrity, the public must be protected from him.

[In re Mattera, 34 N.J. 259, 264, 168 A.2d 38 (1961).]

IV

Both this case and In re Principato, 139 N.J. 456, 655 A.2d 920 (1995), also decided today, involve acts of domestic violence. The national spotlight is focused on domestic violence. Between three and four million women each year are battered by husbands, partners, and boyfriends. Domestic Violence: Not Just A Family Matter: Hearing Before the Subcomm. on Crime and Criminal Justice of the House Comm. on the Judiciary, 103rd Cong., 2nd Sess. (June 30, 1994) (statement of Senator Joseph Biden, Jr.). The New Jersey Legislature has found that

domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses or cohabitants; that a significant number of women who are assaulted are pregnant; that victims of domestic violence come from all social and economic backgrounds and ethnic groups; that there is a positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence. It is therefore, the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide.

[ N.J.S.A. 2C:25-18].

Based on those findings, the Legislature enacted one of the toughest domestic violence laws in the nation. N.J.S.A. 2C:25-17 to -33. During the last decade the number of complaints filed in New Jersey courts has increased from 13,842 in fiscal year 1984 to 55,639 in 1994, an increase of 302 percent. Dana Coleman, Domestic violence charges explode by 302% in decade, New Jersey Lawyer, Feb. 13, 1995, at 1 (citing the Administrative Office of the Courts).

Page 454

V

We have not yet addressed the appropriate discipline to be imposed on an attorney convicted of an act of domestic violence. There are few reported attorney ethics cases that involve acts of domestic violence. In re Nevill, 39 Cal.3d 729, 217 Cal.Rptr. 841, 704 [655 A.2d 919] P.2d 1332 (1985) (disbarring attorney who was convicted of voluntary manslaughter of his wife whom he shot ten times); In re Knight, 883 P.2d 1055 (Colo.1994) (holding that attorney's conviction of third-degree assault of his wife that arose from three days of severe beatings warranted six-month suspension); In re Wallace, 837 P.2d 1223 (Colo.1992) (imposing three-month suspension from practice of law on attorney who assaulted his girlfriend more than once and who on one occasion entered plea of guilty to assault); In re Walker, 597 N.E.2d 1271 (Ind.1992) (imposing six-month suspension on part-time prosecutor for physically assaulting his female companion and her daughter); In re Runyon, 491 N.E.2d 189 (Ind.1986) (disbarring attorney who forced entry into former wife's apartment, struck former wife with club, held her at gunpoint and who additionally was convicted of three felony counts of possession of unregistered firearms); Committee on Professional Ethics and Conduct of the Iowa State Bar Association v. Patterson, 369 N.W.2d 798

(Iowa 1985) (imposing three-month suspension from practice of law on attorney convicted of assault for severely beating his girlfriend for two hours while her four-year-old son was at home and aware of the assault).

Respondent's assault was an isolated incident on an otherwise unblemished professional record. Unlike Nevill, Knight and Wallace, there is no pattern of abusive behavior. And unlike Wallace, Runyon and Patterson, the actual assault lasted for a very short period of time. Moreover, the intense negative publicity has drastically affected respondent's career. As a result of this incident, respondent lost his long-term position in the Prosecutor's Office. Other mitigating factors also existed at the time of the assault, such as respondent's son's critical illness and his troubled

Page 455

relationship with K.P. However, those mitigating factors neither excuse the attack nor obviate the necessity for public discipline.

Acts of violence are condemned in our society. As we stated In re Principato, supra, 139 N.J. 456, 461, 655 A.2d 920, 922, "Unlike many other 'victimless' disorderly persons offenses, domestic violence offenses always involve victims, often-times vulnerable and defenseless." The Legislature was particularly concerned that police and judicial personnel be trained "in the procedures and enforcement of this act, and about the social and psychological context in which domestic violence occurs." N.J.S.A. 2C:25-18. It is therefore important that victims of domestic violence understand that prosecutors, as members of law enforcement, are sensitive to their problems. As a prosecutor respondent must combat acts of domestic violence, not commit them. This "incident calls into question his ability to zealously prosecute or effectively work with the victims of such crimes." In re Walker, supra, 597 N.E.2d at 1271 (Ind.1992).

Attorneys who hold public office are invested with a public trust and are thereby more visible to the public. Such attorneys are held to the highest of standards. "Respondent's conduct must be viewed from the perspective of an informed and concerned private citizens and be judged in the context of whether the image of the bar would be diminished if such conduct were not publicly disapproved." In re McLaughlin, 105 N.J. 457, 461, 522 A.2d 999 (1987) (citation omitted).

Respondent's conduct was a serious violation of RPC 8.4(b). But for the fact that we have not previously addressed the appropriate discipline to be imposed on an attorney who is convicted of an act of domestic violence, and that respondent did not engage in a pattern of abusive behavior, respondent's discipline would be greater than the public reprimand we hereby impose. We caution members of the bar, however, that the Court in the future will ordinarily suspend an attorney who is convicted of an act of domestic violence.

Page 456

Respondent shall reimburse the Disciplinary Oversight Committee for appropriate administrative costs.

For public reprimand--Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN, and COLEMAN--7.

Opposed --None.

[655 A.2d 920] ORDER

It is ORDERED that LAWRENCE MAGID of WOODBURY, who was admitted to the bar of this State in 1969, is hereby publicly reprimanded; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs incurred in the prosecution of this matter.

**REDACTED**

**REDACTED**

Page 456

## 139 N.J. 456

## 655 A.2d 920, 63 USLW 2671

## In the Matter of Salvatore PRINCIPATO, an Attorney at Law.

## Supreme Court of New Jersey.

### Submitted Jan. 18, 1995.
### Decided March 31, 1995.

Robyn M. Hill, Chief Counsel, submitted a recommendation for discipline on behalf of Disciplinary Review Bd.

Saverio R. Principato, Camden, submitted a letter in lieu of brief on behalf of respondent.

Page 458

PER CURIAM.

This disciplinary proceeding arose from a Motion for Final Discipline Based Upon a Criminal Conviction filed by the Office of Attorney Ethics (OAE) before the Disciplinary Review Board (DRB), seeking final discipline of Salvatore Principato, pursuant to Rule 1:20-6(c)(2)(i). That motion was based on respondent's conviction of simple assault, in violation of N.J.S.A. 2C:12-1a (1).

The DRB found that respondent had engaged in unethical conduct, and recommended that respondent be privately reprimanded. Our independent review of the record leads us to conclude that respondent has been guilty of unethical conduct. However, we believe that a public reprimand more appropriately reflects the seriousness of respondent's misconduct.

I

Respondent was admitted to the bar in 1983. Prior to this present incident, he had an unblemished professional career. On February 14, 1992, a former client, J.M., filed [655 A.2d 921] a complaint against respondent in Haddon Township Municipal Court, charging him with simple assault, a disorderly persons offense. Respondent was tried and found guilty as charged. He was fined $200, assessed $25 in court costs and directed to pay a $50 violent crimes penalty.

In August of 1992 a representative of SOLACE (Services for Victims of Domestic Violence) informed the OAE of respondent's conviction. The OAE initiated a review that resulted in the filing of the Motion for Final Discipline. While the OAE review was ongoing, J.M. on February 8, 1993 filed with the District IV Ethics Committee an ethics grievance against respondent, alleging in addition to the criminal conviction respondent's ethical impropriety in having represented her in a matrimonial action and commencing an affair with her during that representation. The OAE did not conduct an investigation of the allegations contained in J.M.'s grievance but filed the Motion for Final Discipline only on the basis of respondent's criminal conviction for simple assault.

Page 459

Thus, our inquiry and examination is limited to the facts underlying that criminal conviction.

On February 1990, J.M. was referred to respondent by a battered women's shelter for advice on filing a domestic violence complaint against her then husband. J.M. decided not to file the complaint. She had no further contact with respondent until approximately one year later when she contacted respondent concerning a problem she was having at work. Respondent gave J.M. advice that he characterized as "a common sense approach and ... not ... legal advice per se."

Subsequently, a social relationship, which evolved into a sexual relationship, developed between respondent and J.M. On April 11, 1991, J.M. telephoned respondent. In hysterics, she related that her husband had taken her daughter and run off. Although respondent realized the impropriety of maintaining both a sexual and professional relationship with J.M., he indicated "my normal protective instincts kind of kicked in and I wanted to help her." Respondent accepted a retainer of $2,500 on April 19, 1991 and represented J.M. in custody and divorce proceedings. Respondent acknowledged that he continued seeing J.M. on an intimate basis through July 1991.

On August 2, 1991, respondent went to J.M.'s home. There, respondent admitted to yelling and using profanity. The Haddon Township Municipal Court found in addition that respondent overturned the mattress on which J.M. was sitting and, with J.M. pinned behind the mattress, "Mr. Principato lost control of himself, possibly because she was ending this relationship.... [H]e began to pummel her against the mattress, he never hit her skin directly, but he did pummel the mattress forcefully at least 10 or 15 times ... the matter lasted at least 10 seconds." The court found that although J.M. did not sustain serious injuries, she was in fear for her life, suffered pain, and suffered a scratch on her arm.

Respondent remained attorney of record for J.M.'s divorce action until the case was taken over by her new attorney in

Page 460

November 1991. However, respondent apparently took no further action on behalf of J.M. after August 2, 1991.

II

A criminal conviction is conclusive evidence of guilt in a disciplinary proceeding. R. 1:20-6(c)(1). Therefore, respondent's conviction of the disorderly persons offense of simple assault is clear and convincing evidence that he has violated RPC 8.4(b) (by committing a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer). The sole issue to be determined is the extent of discipline to be imposed. R. 1:20-6(c)(2)(ii); In re Lunetta, 118 N.J. 443, 445, 572 A.2d 586 (1989); In re Goldberg, 105 N.J. 278, 280, 520 A.2d 1147 (1987). In determining appropriate discipline, we consider the interests of the public, the bar, and the respondent. In re Litwin, 104 N.J. 362, 365, 517 A.2d 378 (1986). The primary purpose of discipline is not to punish the attorney but to preserve the confidence of the public in the bar. The appropriate discipline depends on many factors, including the "nature and severity of the crime, whether the crime is related to the practice of law, and any mitigating factors such as respondent's [655 A.2d 922] reputation, his prior trustworthy conduct, and general good conduct." In re Lunetta, supra, 118 N.J. at 445, 446, 572 A.2d 586; In re Kushner, 101 N.J. 397, 400-01, 502 A.2d 32 (1986).

III

Although the assault itself was not related to respondent's legal practice, respondent assaulted his client. An attorney in his relations with a client is bound to the highest degree of fidelity and good faith. To the public he is a lawyer whether he acts in a representative capacity or otherwise. In re Gavel, 22 N.J. 248, 265, 125 A.2d 696 (1956). Public policy requires strict adherence to that rule. The fact that respondent was involved with his client in a sexual relationship exacerbates the problem. We have warned attorneys that sexual relationships with clients jeopardize

Page 461

the attorney-client relationship and have the strong potential to involve the attorney in unethical behavior. In re Liebowitz, 104 N.J. 175, 179, 516 A.2d 246 (1985). In that case we held that sexual misconduct with an assigned client warranted a public reprimand.

For the first time in this case and In re Magid, 139 N.J. 449, 655 A.2d 916 (1995), also decided today, we address the appropriate discipline to be imposed on an attorney who is convicted of domestic violence. In enacting the Prevention of Domestic Violence Act of 1991, N.J.S.A. 2C:25-17 to -33, the Legislature recognized that "domestic violence is a serious crime against society" that affects people "from all social and economic backgrounds and ethnic groups." N.J.S.A. 2C:25-18. The policy of New Jersey is "that violent behavior will not be excused or tolerated." N.J.S.A. 2C:25-18. Unlike many other "victimless" disorderly persons offenses, domestic violence offenses always involve victims, often-times vulnerable and defenseless. The public must be assured that the legal profession is concerned about domestic violence.

IV

To be admitted to the bar, an applicant "must possess a certain set of traits--honesty and truthfulness, trustworthiness and reliability, and a professional commitment to the judicial process and the administration of justice." In re Matthews, 94 N.J. 59, 77, 462 A.2d 165 (1983). We described those traits as the fundamental norms that control the professional and personal behavior of attorneys. Ibid. Acts of domestic violence violate those fundamental norms.

There are few reported attorney ethics cases that involve acts of domestic violence. In re Nevill, 39 Cal.3d 729, 217 Cal.Rptr. 841, 704 P.2d 1332 (1985) (disbarring attorney who was convicted of voluntary manslaughter of his wife whom he shot ten times); In re Knight, 883 P.2d 1055 (Colo.1994) (holding that attorney's conviction of third-degree assault of his wife that arose from three days

Page 462

of severe beatings warranted six-month suspension); In re Wallace, 837 P.2d 1223 (Colo.1992) (imposing three-month suspension from practice of law on attorney who assaulted his girlfriend more than once and who on occasion entered plea of guilty to assault); In re Walker, 597 N.E.2d 1271 (Ind.1992) (imposing six-month suspension on part-time prosecutor for physically assaulting his former client/girlfriend and her daughter); In re Runyon, 491 N.E.2d 189 (Ind.1986) (disbarring attorney who forced entry into former wife's apartment struck former wife with club, held her at gunpoint and who additionally was convicted of three felony counts of possession of unregistered firearms); Committee on Professional Ethics and Conduct of the Iowa State Bar Association v. Patterson, 369 N.W.2d 798 (Iowa 1985) (imposing three-month suspension from practice of law on attorney convicted of assault for severely beating his girlfriend for two hours while her four-year-old son was at home and aware of assault).

Respondents in the those cases all committed acts of domestic violence that resulted in serious bodily injury to the victim. Additionally, in Nevill, Knight and Wallace, there was a pattern of abusive behavior. Respondent's actions did not result in any physical injury to J.M., other than a scratch on her finger. Moreover, both the municipal court and the DRB found several mitigating factors. We agree. The municipal court observed that no serious harm was done; that [655 A.2d 923] respondent had no prior history of misconduct; that "the character and attitude of the defendant indicate he is unlikely to commit another offense"; and that there was no indication that respondent's representation of J.M. was adversely affected by their personal relationship. In fact, according to J.M.'s own testimony, respondent's legal representation of her was excellent.

The DRB in its Decision and Recommendation also acknowledged that there were mitigating factors:

First, respondent recognized that he used poor judgment in becoming personally involved with [J.M.]. He acknowledged his wrongdoing in assaulting [J.M.] and was contrite for what he had done. Second, his conduct was aberrational and is highly unlikely to recur. The Board is also mindful of the impact that the negative

Page 463

publicity generated by respondent's case has had on his career (See, e.g., exhibit C to OAE's brief). Moreover, the incident occurred nearly three years ago. The Board has taken these factors into account and has further considered respondent's previous unblemished ethics record.

New Jersey has a strong public policy against domestic violence. Respondent's assault on J.M., a particularly vulnerable client, referred to him by a battered women's shelter, was a serious violation of RPC 8.4(b). But for the fact that we have not previously addressed the appropriate discipline to be imposed on a lawyer who is convicted of an act of domestic violence, and that respondent's offense was an isolated incident and did not present a pattern of abusive conduct, respondent's discipline would be greater than the public reprimand we hereby impose. We caution members of the bar, however, that the Court in the future will ordinarily suspend an attorney who is convicted of an act of domestic violence.

We direct that respondent reimburse the Disciplinary Oversight Committee for administrative costs.

For public reprimand--Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN--7.

Opposed--None.

### ORDER

It is ORDERED that SALVATORE PRINCIPATO of CAMDEN, who was admitted to the bar of this State in 1983, is hereby publicly reprimanded; and it is further

ORDERED that the entire record of this matter be made REDACTED a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs incurred in the prosecution of this matter.

**REDACTED**

**REDACTED**

Page 1271

**597 N.E.2d 1271**

**In the Matter of Max K. WALKER, Jr.**

**No. 20S00-9006-DI-405.**

**Supreme Court of Indiana.**
**Aug. 21, 1992.**

R. Michael Parker, Barnes & Thornburg, Elkhart, for respondent.

Shelden Breskow, Executive Secretary, Indiana Supreme Court Disciplinary Com'n, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

DISCIPLINARY ACTION

PER CURIAM.

The Respondent, Max K. Walker Jr., was charged in a disciplinary complaint with violations of Rules 8.4(a), 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct for Attorneys at Law. The hearing officer appointed in this case tendered his findings of fact which were not challenged by the parties. He declined to reach a conclusion as to whether Respondent's conduct violated the Rules of Professional Conduct, which is the issue argued by the parties and now before us for determination.

The unchallenged findings establish that Respondent represented the grievant in her dissolution of marriage action which was concluded in December, 1982. Shortly thereafter, they developed a personal relationship which lasted until 1987 when it began to deteriorate.

On March 5, 1987, Respondent visited the grievant's home after having consumed several alcoholic beverages. They discussed their deteriorating relationship, which discussion evolved into an argument. The grievant asked Respondent to leave her house and walked into her bedroom, expecting him to leave. Instead, Respondent followed her into the bedroom. In the course of the ensuing argument, the grievant suggested that the Respondent should "go (and have sex)" with a woman with whom he had cocktails with earlier. Respondent then straddled the grievant, slapped her several times, and hit her in the face with a closed fist cutting her lip. As Respondent was leaving the residence, he forcibly took the telephone from and pushed the grievant's nine-year old daughter. The incident was reported to the police but the incident report was lost and was not introduced in evidence.

At the time of the incident, Respondent was Chief Deputy Prosecuting Attorney for Elkhart County. The prosecutor, who was also Respondent's law partner, advised the grievant that she had a right to a special prosecutor. She declined but requested that Respondent receive counselling, pay her medical bills, pay for her daughter's counseling and have no further contact with her. All of these requests were met. The incident was reported in the local press and Respondent received considerable publicity.

Respondent urges this Court to conclude that no professional misconduct occurred. His argument is that the physical altercation was the culmination of a private, adult relationship, and

that the battery "arose instantaneously" after provocation.

Page 1272

The circumstances presented by the findings reveal an act of domestic violence. This admittedly criminal conduct is not and did not remain a private matter. We are not persuaded by the claim of provocation, nor are we comforted by the fact that the grievant's daughter, also a victim of Respondent's conduct, recovered after some counselling sessions. Respondent's position as deputy prosecutor requires even stricter scrutiny of this conduct. As was stated in the Matter of Oliver (1986), Ind., 493 N.E.2d 1237, Respondent's duty to conform his behavior to the law does not arise solely out of his status as an attorney. As an officer charged with the administration of the law, Respondent's behavior has the capacity to bolster or damage public esteem for the system. Were those whose job it is to enforce the law break it instead, the public rightfully questions whether the system itself is worthy of respect. The damage this incident has undoubtedly brought to the public's esteem will be addressed only if Respondent is held accountable. We conclude that, as a prosecuting attorney, Respondent engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(d).

Also, Respondent's conduct reflects upon his fitness as a lawyer and constitutes a violation of Rule 8.4(b). Not every violation of the penal code reflects upon an attorney's suitability as a practictioner. See, Matter of Oliver, Supra. The issue is whether there exists a nexus between the misconduct and the Respondent's duties to his clients, the courts, or the legal system. Matter of Oliver, supra. Another important assessment is the impact of the conduct on the public's perception of Respondent's fitness as a lawyer. Matter of Roche (1989), Ind., 540 N.E.2d 36. As a part-time prosecutor, Respondent inevitably encounters domestic assaults, and this incident calls into question his ability to zealously prosecute or to effectively work with the victims of such crimes. As a part-time practitioner, Respondent's effectiveness with his own clients or with adversaries in situations involving issues of domestic violence is compromised by his own contribution to this escalating societal problem. In both his capacities, we believe the perception of his fitness is tainted.

Finally, the findings do not support the Commission's allegation that Respondent committed acts of dishonesty, deceit, or misrepresentation, nor are we inclined to find as charged that Respondent violated Rule 8.4(a).

In assessing an appropriate sanction, we note that Respondent's violent outburst occurred after Respondent was asked to and expected to leave the grievant's home. Although not charged or prosecuted, Respondent's crime had two very real victims. Respondent's position as an official charged with the duty of enforcing the very laws he violated further exacerbates his actions.

In light of the foregoing, we find that the appropriate sanction is a suspension from the practice of law, and that Respondent's reinstatement should be automatic. It is, therefore, ordered that Max K. Walker, Jr. is suspended from the practice for a sixty-day period beginning September 21, 1992. Costs of this proceeding are assessed against the Respondent.

**REDACTED**

Page 798

### 369 N.W.2d 798

## COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

### v.

## Stanford J. PATTERSON, Respondent.

### No. 84-1102.

### Supreme Court of Iowa.

### June 19, 1985.

Page 799

Frank A. Comito, Jr., and Patrick W. O'Bryan of Comito & Capps, Des Moines, for complainant.

Thomas W. Langlas of Gallagher, Langlas & Gallagher, P.C., Waterloo, for respondent.

Considered en banc.

REYNOLDSON, Chief Justice.

This is a disciplinary proceeding against an attorney, based on a serious misdemeanor conviction, "assault without intent to inflict serious injury but causing bodily injury contrary to ... section 708.2(2) of the Iowa Code." Although respondent Stanford J. Patterson entered an "Alford"-type guilty plea to this offense in Black Hawk County, there is little dispute concerning the circumstances surrounding the incident.

Respondent is a forty-nine-year-old solo practioner in Waterloo. In the fall of 1983 he met Debra Herman, age twenty-nine, when they both enrolled in a concealed weapons class at Hawkeye Institute of Technology in Waterloo. Debra was estranged from her husband; respondent and his wife recently had concluded a bitter dissolution proceeding. Respondent and Debra soon became romantically involved. When she decided to file for marital dissolution, respondent agreed to represent her and filed the action in her behalf.

On the evening of January 31, 1984, Debra had a dinner date with her husband to discuss ways of communicating about Jason, their four-year-old son who lived with Debra. The latter, apparently concerned about respondent's reaction, told him she would be with a girl friend. After dinner Debra picked up Jason at her mother's home and returned to her own house.

Respondent, using a key Debra had provided and following an established custom, was already in the home and waiting in Debra's bedroom when she put Jason to bed. When she entered the bedroom at about 10 p.m. respondent asked Debra where she had been, although he already had called her girl friend and found Debra was not with her. When Debra told respondent that she had been with her husband, he immediately began striking her and tore off her clothes. This abuse lasted approximately two hours. Jason, aroused, attempted to enter his mother's bedroom but respondent had locked the door. He ordered Debra to tell Jason to go back to bed.

Jason then attempted to call his father or the police from the kitchen telephone, but the telephone in Debra's room was off the hook. Photographs of Debra taken the following day show a badly disfigured and battered woman, a dramatic testimonial to respondent's eighteen-month instruction in the martial arts.

At about 1 a.m. respondent began to apply cold compresses to minimize Debra's swelling and bruises, and carried her to the bathroom because she could not walk as a result of the beating. Respondent and Debra testified he offered to take her from the community until she recovered, and at another time offered to take her to the hospital. He stayed throughout the night, occasionally checking Debra's pulse and temperature. Respondent consistently has denied any recollection of his actions during the two-hour incident.

In the morning when Jason's sitter came to pick him up, Debra accompanied him from the house and then left in her own car, wearing only a coat over her pajamas and a towel around her head. She went to her mother's home. The latter insisted Debra go to the hospital, and, apparently without Debra's knowledge, called the police. At the hospital the police interviewed and photographed Debra. Debra testified she had never told her family of her relationship with respondent, but later she did tell the police.

Meanwhile, respondent left the state and drove to Mayo Clinic, Rochester, Minnesota, where it appears he was examined or treated by a psychiatrist for three days on an outpatient basis. He took from Waterloo the clothing he had torn off Debra and destroyed it there. The day following the incident, after Debra returned home,

Page 800

respondent called her several times from Minnesota, wanting "to talk." Debra testified she had a telephone conversation with respondent on February 2, at which time she reported she was "being hounded by the police" for a written statement. Respondent provided her with the names of two lawyers, one of whom she retained.

Subsequently Debra refused to answer questions at a county attorney's examination, and was confined briefly to jail for contempt. At the same time the court appointed other counsel who persuaded her to respond to the questions.

Trial information was filed against respondent February 8, 1984. Respondent and Debra were married March 8, 1984. June 8, 1984, he entered his guilty plea to the charges. Thereafter Debra initiated dissolution proceedings against respondent. The decree was entered November 19, 1984, shortly before the November 29 hearing in this proceeding.

The complaint filed by the Committee on Professional Ethics and Conduct of the Iowa State Bar Association, alleged

[t]hat the acts and conduct of Respondent in violation of the Criminal Code of the State of Iowa, and the aforesaid conviction itself, constitute violations of the following

(a) Section[s] 602.10122(3) and 602.10122(4) of the Iowa Code; REDACTED

(b) EC 1-5;

(c) DR 1-102(A)(1), (5) and (6);

(d) EC 9-1;

(e) EC 9-2; and

(f) EC 9-6 of the Iowa Code of Professional Responsibility for Lawyers.

The Grievance Commission (commission) found a violation of EC 1-5 only, and recommended a reprimand. We suspend respondent's license to practice law indefinitely with no possibility of reinstatement for three months.

I. The principles we apply in these proceedings were reviewed recently <u>Committee on Professional Ethics and Conduct v. Shuminsky, 359 N.W.2d 442, 444-45 (Iowa 1984)</u>:

We review the record made before the commission de novo. We give respectful consideration to the commission's findings and recommendations although they are not binding on us. If we find the complainant has established the charges by a convincing preponderance of the evidence, we impose an appropriate sanction, considering not only the respondent's fitness to practice law, but the need to deter others from similar conduct and assure the public that courts will uphold the ethics of the legal profession. Complainant need not prove respondent was acting as a lawyer at the time of the alleged misconduct; lawyers do not shed their professional responsibility in their personal lives.

(Citations omitted.)

Iowa Code section 602.10122(3) provides that the license of an attorney may be suspended or revoked upon the ground he or she has committed "[a] willful violation of any of the duties of an attorney ... as hereinbefore prescribed." One of those duties is "[n]ot to encourage either the commencement or continuance of an action or proceeding from any motive of passion or interest." Iowa Code § 602.10112(6). We are not required here to determine whether this attorney who assaulted his dissolution action client because she went to dinner with her husband encouraged the continuance of the action from a motive of passion. Adequate ground for the discipline we impose exists within the Code of Professional Responsibility for Lawyers.

In Iowa the ethical considerations do more than illuminate the disciplinary rules; in this jurisdiction a violation of an ethical consideration alone is sufficient to support discipline. Shuminsky, 359 N.W.2d at 445; <u>Committee on Professional Ethics and Conduct v. Millen, 357 N.W.2d 313, 314-15 (Iowa 1984)</u>.

EC 1-5 provides:

A lawyer ... should refrain from all illegal and morally reprehensible conduct. Because of his position in society, even minor violations of law by a lawyer may tend to lessen public confidence in

Page 801

**REDACTED**

the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude.

A portion of the above concept finds a place in EC 9-6:

Every lawyer owes a solemn duty ... to encourage respect for the law....

Paraphrasing what we wrote Committee on Professional Ethics and Conduct v. Bromwell, 221 N.W.2d 777, 779 (Iowa 1974), when those licensed to operate the law's machinery knowingly violate essential criminal statutes, there inexorably follows an intensified loss of lay persons' respect for the law.

II. We find respondent's two-hour assault on an unresisting female constitutes a violation of EC 1-5 and EC 9-6. Based on the duration of the beating, respondent's intermittent "discussions" with Debra, coupled with his demands she divert her interceding son, we are convinced that respondent was fully conscious of what he was doing. There is little beyond his own contentions, and no professional opinion, to support respondent's claim that he lost his reason and has no recollection of the event. He stands convicted of a serious misdemeanor.

In our view, respondent's conduct is fully as morally reprehensible as accepting gifts in violation of a federal statute limiting attorney fees, Committee on Professional Ethics and Conduct v. Christoffers, 348 N.W.2d 227, 229-30 (Iowa 1984); having possession of marijuana and amphetamines, Shuminsky, 359 N.W.2d at 445; or making obscene telephone calls, Committee on Professional Ethics and Conduct v. Floy, 334 N.W.2d 739, 740 (Iowa 1983). Committee on Professional Ethics and Conduct v. Wilson, 270 N.W.2d 613, 615 (Iowa 1978).

Nor, in the circumstances of this case, can we agree with the commission's finding that respondent's conduct did not involve moral turpitude.

The term "moral turpitude" has been used in the law for centuries. It has been the subject of many decisions by the courts but has never been clearly defined because of the nature of the term. Perhaps the best general definition of the term "moral turpitude" is that it imports an act of baseness, vileness or depravity in the duties which one person owes to another or to society in general, which is contrary to the usual, accepted and customary rule of right and duty which a person should follow.

Committee on Legal Ethics v. Scherr, 149 W.Va. 721, 726-27, 143 S.E.2d 141, 145 (1965). Respondent's conduct, under the facts disclosed by this record and modern day social mores, clearly met the above definition.

It is ordered that respondent's license to practice law should be suspended indefinitely with no possibility of reinstatement for three months. This suspension shall apply to all facets of the practice of law. See Iowa Sup.Ct.R. 118.12. Upon application for reinstatement, respondent shall have the burden to prove that he has not practiced law during the period of suspension and that he meets the requirements of supreme court rule 118.13.

LICENSE SUSPENDED.

**REDACTED**