**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **KENNETH EUGENE BARRETT,** | ) | |
| | ) | |
| *Petitioner/Defendant,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:09-cv-00105-JHP** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| *Respondent/Plaintiff.* | ) | |

---

## PETITIONER'S RESPONSE TO THE ORDER
## FILED FEBRUARY 26, 2010 (DOC. 147)

---

**TABLE OF CONTENTS**

I.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   General Bases For Finding Pages Relevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  Specific Bases for Finding Pages Relevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      Exhibit 139        Medical Records for Carolyn Joseph . . . . . . . . . . . . . . . . . . . . . 6

      Exhibit 140        Medical Records for Kathy Trotter . . . . . . . . . . . . . . . . . . . . . . 6

      Exhibit 141        Medical Records for Brandie Hill . . . . . . . . . . . . . . . . . . . . . . . 7

      Exhibit 142        Medical Records for Toby Barrett . . . . . . . . . . . . . . . . . . . . . . . 8

      Exhibit 143        Medical Records for Travis Crawford . . . . . . . . . . . . . . . . . . . . 8

      Exhibit 144        Medical Records of Cynthia Crawford . . . . . . . . . . . . . . . . . . . 10

      Exhibit 145        Medical Record of Linda Riley . . . . . . . . . . . . . . . . . . . . . . . . . 12

      Exhibit 146        Mental Health Records of A.J. Barrett . . . . . . . . . . . . . . . . . . . . 12

      Exhibit 147        Medical Records of Kenneth Eugene Barrett . . . . . . . . . . . . . . . 12

      Exhibit 201        Medical Records of Gwendolyn Crawford . . . . . . . . . . . . . . . . 17

      Exhibit 202        Medical Records of Carolyn Joseph . . . . . . . . . . . . . . . . . . . . . 17

IV.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Banks v. Dretke*, 540 U.S. 668 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Brady v. Maryland*, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rompilla v. Beard*, 545 U.S. 374 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Strickler v. Greene*, 527 U.S. 263 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Quintinella*, 193 F.3d 1139 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wiggins v. Smith*, 539 U.S. 510 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*Williams v. Taylor*, 529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

### FEDERAL STATUTES

18 U.S.C. § 3592(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 2255(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Fed. R. Evid. 104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Evid. 106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Evid. 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Evid. 703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

Fed. R. Evid. 803(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Evid. 901(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Evid. 902(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Evid. 1101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Evid. 1101(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Evid. 1101(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Evid. 1101(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KENNETH EUGENE BARRETT, | ) | |
| | ) | |
| *Petitioner/Defendant,* | ) | |
| | ) | |
| v. | ) | Case No. 6:09-cv-00105-JHP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent/Plaintiff.* | ) | |

**PETITIONER'S RESPONSE TO THE ORDER
FILED FEBRUARY 26, 2010 (DOC. 147)**

Comes now, Movant/Defendant KENNETH BARRETT, by and through his undersigned

counsel, and makes the following showing in response to the Court's order (Doc. 147) filed

February 26, 2010.

**I.    Introduction**

This Court's order requires Mr. Barrett "to advise this Court, as to each page of the

exhibits which they wish to file under seal, how the medical record is relevant to the issues

contained within the motion to vacate." Order (Doc. 147) at 2. This Court's order provides that

Mr. Barrett's counsel were required to review the records submitted with his motion to vacate

"and ensure that items sought to be filed with this Court are relevant to the issues raised in the

pleadings." *Ibid*.

Prior to filing the initial Motion to Vacate (Doc. 1), Mr. Barrett's counsel reviewed all the

records that were submitted as exhibits and determined that all were relevant. Counsel

determined that the exhibits at issue here were relevant in the specific ways described *infra*.

However, counsel are unaware of any requirement to ensure that each *page* of each exhibit

proffered at the pleading stage met the evidentiary standard of relevance.

Through the sealed and other exhibits, Mr. Barrett's counsel sought first, to demonstrate Mr. Barrett's ability to prove his allegations with documentary evidence, *see* R. Gov. § 2255 Proc. 3(b); second, to give the Government an opportunity to review the sources upon which the allegations of the Motion were based, *see* R. Gov. § 2255 Proc. 7(c); third, to enable the Court to make a fully informed decision regarding an evidentiary hearing, 28 U.S.C. § 2255(b); R. Gov. § 2255 Proc. 8(a); and fourth, to streamline the proceedings without burdening anyone with unnecessary documents.

## II.    General Bases For Finding Pages Relevant

Mr. Barrett's filings were done with the understanding that exhibits to a pleading such as a § 2255 motion are in the nature of an offer of proof, *see* Fed. R. Evid. 104 – a demonstration of the *bona fides* of the averments in the motion – and that the pleading stage of a case is not evidentiary in nature.  This understanding is based in part upon Rule 4(b) of the Rules Governing § 2255 Proceedings, which calls upon the judge to make a preliminary review of the motion and "any attached exhibits" before deciding whether to order an answer, and in part upon Fed. R. Evid. 1101(e), which provides that the Rules of Evidence apply to § 2255 proceedings "to the extent that matters of evidence are not provided for in the statutes which govern procedure therein or in other rules prescribed by the Supreme Court," and in part upon common practice in similar cases.  As an offer of proof akin to those made pursuant to Fed. R. Evid. 104, the rules of admissibility do not apply.  Fed. R. Evid. 1101(d)(1) & (3).  Pursuant to Fed. R. Evid. 1101, Mr. Barrett's counsel assessed the relevance of the proffered exhibits as to both the procedural stage at which they were proffered, and the substantive issues to which they relate.

One procedural issue as to which all exhibits are relevant relates to Rule 7 of the Rules

Governing § 2255 Proceedings.  Mr. Barrett's counsel were attempting to make review of the claims more efficient, and to that end anticipated filing a motion for the record to be expanded with the pleading exhibits, as he ultimately did.  Counsel ensured that the exhibits were substantively relevant and sufficiently complete as to afford the Government "an opportunity to admit or deny their correctness," R. Gov. § 2255 Proc. 7(c), and to decide whether to seek to have the entire writing made part of the record pursuant to Fed. R. Evid. 106.  Pursuant to Fed. R. Evid. 1101(d)(3) and 1101(e), Mr. Barrett submits the rules governing admissibility do not apply to each page of a document proffered for review under Rule 7(c).  Of course, the existence *vel non* of extra-record evidence is relevant to this Court's decision whether the files and records conclusively refute Mr. Barrett's claims.  28 U.S.C. § 2255(b); R. Gov. § 2255 Proc. 8(a).

Relevance is defined as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  In the detailed discussion of the exhibits *infra*, Mr. Barrett addresses specific facts of consequence to the determination of his claims and how pages of the exhibits make them more or less probable.  In addition to these specifics, the exhibits Mr. Barrett seeks to file under seal are relevant to several general issues of consequence.

First, these exhibits were proffered in support of claims of ineffective assistance and either the suppression of exculpatory evidence, or the new discovered exculpatory evidence. Rulings on such claims frequently include determinations whether the evidence was available at the time of trial or is newly discovered.[1]  That even hostile witnesses such as Cindy and Travis

---

[1]  *See*, *e.g.*, *Rompilla v. Beard*, 545 U.S. 374, 383-84 (2005) (defense counsel acted unreasonably by failing to review readily available evidence); *Wiggins v. Smith*, 539 U.S. 510, 532-33 (2002) (same); *Williams v. Taylor*, 529 U.S. 362, 395-96 (2000) (same); *Banks v. Dretke*, 540 U.S. 668 (2004) (due process violated where prosecution failed to disclose exculpatory evidence available at time of trial); *Strickler v. Greene*, 527 U.S. 263, 282-83 (1999) (finding

Crawford made their medical records available to Mr. Barrett shows that absent government pressure such records could have been obtained by defense counsel, and that the Government's claim at the time of trial that such witnesses had an *endogenous* preference not to speak to the defense is less probably true. As to the issue of availability then there are instances where an entire file is relevant.

Second, the proffered medical records are relevant as facts and data relied upon by experts whose opinions Mr. Barrett's counsel also proffered with his Motion. *See* Fed. R. Evid. 703. Mr. Barrett's medical records and those of family members that were available at the time of trial were considered by Dr. George Woods. Exh. 117 at ¶ 14; *see also id.* at ¶¶ 23-34. To the extent Dr. Woods considered post-trial information from medical records, that they were confirming of the findings based on pre-trial information makes it more probable that this Court will find he reached the correct conclusion. Dr. Myla Young also reviewed Mr. Barrett's past medical history for risk factors, *see* Exh. 89 at ¶¶ 20, 21, 24, and his medical condition at the time of testing, in order to ensure she obtained objectively valid results, *id.* at ¶¶ 32-33.

Third, Mr. Barrett's counsel are making an offer of proof at the time of pleading. They therefore had to rely upon experience in similar cases to anticipate procedural or substantive arguments the Government might raise, and assemble exhibits based on those speculative judgments. Some records were excised more than others based on these judgments. In some exhibits extraneous parts of records and/or those containing inconsequential diagnoses that might be embarrassing to a witness were included because the document in its entirety is relevant even

---

cause for procedural default due to prosecution's failure to disclose impeachment evidence in state post-conviction proceedings).

if individual pages do not contain direct evidence of a fact at issue.[2]  For example, pages that do

not contain information independently supportive of a fact at issue were sometimes included to

place other pages in context or to establish that a record is what it purports to be, Fed. R. Evid.

901(a), or that it is part of a regularly prepared record, Fed. R. Evid. 902(11), or that it was not

requested at the time of trial.[3]  As evidence related to Mr. Barrett's background, the records of

Mr. Barrett and his family members are relevant under 18 U.S.C. § 3592(a)(1) and (a)(8).

Fourth, to the extent this Court is considering striking exhibits unless every page of the

exhibit is deemed relevant, Mr. Barrett objects that such a ruling would be erroneous.  Federal

Rules of Evidence 104(a), 104(b), 1101(d)(1) and 1101(d)(3) preclude striking exhibits

submitted as an offer of proof.  Mr. Barrett submits it would be a violation of the rules of

evidence and his due process rights for this Court to strike exhibits before preliminary questions

can be resolved such as whether the Government disputes an averment and the nature of the

dispute, and whether Mr. Barrett could establish relevance by fulfilling a condition of fact that,

due to the nature of collateral litigation, can only occur after the issues are joined through an

answer and reply.  The imposition of a page-by-page relevance requirement as to Mr. Barrett's

offer of proof is arbitrary and invidious and consistent with a pattern of this Court invoking or

applying rules to Mr. Barrett in an arbitrary or invidious manner, or as a pretext for finding fault

with his counsel.  *See* Ground 1 to 2nd Amend. § 2255 Mot.; Objections filed 12/4/10 (Doc.

---

[2]  Mr. Barrett acknowledged in his initial motion for leave to file many of these same records under seal that he sought "to protect the witnesses from breaches of their privacy unrelated to the litigation in this case."  That motion was granted.

[3]  *See Wiggins v. Smith*, 539 U.S. 510, 533-34 (2002) (holding death judgment unreliable due to defense counsel's unreasonable failure to obtain records related to defendant's background); *Williams v. Taylor*, 529 U.S. 362, 395-98 (2000) (holding death judgment unreliable due in part to defense counsel's unreasonable failure to obtain records related to defendant's background).

139).

### III.   Specific Bases for Finding Pages Relevant

**Exhibit 139**          **Medical Records for Carolyn Joseph**

Exhibit 139 consists in two pages excerpted from a larger medical file on Mr. Barrett's

maternal aunt, Carolyn Joseph.  The exhibit is relevant to Ground 2, in which Mr. Barrett alleges

his trial attorneys were ineffective for failing to conduct the thorough investigation of their

client's background that the Supreme Court repeatedly has held is required in capital cases.  As

part of his showing of prejudice, Mr. Barrett presents the opinion of Dr. George Woods who

finds that Mr. Barrett's background includes extensive evidence of a family history of mental

health problems, including bipolar disorder.  Exh. 117 at ¶¶ 23-32.  Dr. Woods's diagnosis of

Bipolar Disorder in Mr. Barrett is based in part on that family history.  Whether there is a family

history of bipolar disease or related illnesses is a matter of consequence to the determination of

the action.  Both pages of Exhibit 139, which are dated before the trial, document that Ms.

Joseph was being medicated for bipolar disorder.  Therefore Exhibit 139 tends to make it more

probable that if trial counsel had investigated Mr. Barrett's family history they would have

discovered evidence showing he suffered from bipolar disorder at the time of the offense and

trial.

**Exhibit 140**          **Medical Records for Kathy Trotter**

Exhibit 140 is another medical record of a family member who, as shown on the first five

pages of the exhibit, was diagnosed with major depression.  Exhibit 140 was proffered with

Exhibit 86, a declaration, and was considered by Dr. Woods.  See 1st Amend. Pet. at 220-21.

The entire record relates to the family member's hospitalization during a bout with major

depression.  Each page describes the circumstances that lead the family member to seek medical

treatment, see, e.g., Exh. 140 at p. 49, the manner in which doctors reached a diagnosis, and how the family member responded to treatment, including treatment with antidepressant and anti-anxiety medication. Exh. 140 at p. 42-43. The complete record shows the witness's condition was serious enough that she was hospitalized for approximate eight days. Exh. 140 at p. 8. Nearly all the pages are dated before the trial and therefore make it more probable that this Court will find there were medical records available to Mr. Barrett's counsel which could have been used to support a diagnosis or background information related to defenses or mitigation. Pages 55 through 59 of Exhibit are dated after the trial. However, they show continuing treatment for depression and anxiety. Their proffer is consistent with the rule of completeness, and are relevant in that they make it more probable that a mental health expert considering evidence of major depression in Mr. Barrett's family is correct to find a significant problem.

**Exhibit 141          Medical Records for Brandie Hill**

Exhibit 141 was proffered to show further evidence that Mr. Barrett's family members recognized the existence and impact of depression and bipolar disorder in the family. 1st Amend. Pet. at 218. It corroborates statements made in the Declaration of Brandy Hill (Exh. 77), Mr. Barrett's cousin, and was proffered for that purpose. *Ibid.* and *id.* at 242. Although this record is dated after the trial, Ms. Hill is quoted on the third page of the document to state that the problem had been ongoing for several years. Consideration of this document will make it more probable that this Court will find (a) that family members, at the time of trial, had recognized there was a family history of bipolar disorder, and (b) that the symptoms of the disease have been serious enough to impact family members' lives. As with other similar medical records, this record was relied upon by Dr. Woods to confirm that a doctor at the time of trial would have made a reliable diagnosis of major mental illness in Mr. Barrett and his family.

**Exhibit 142**          **Medical Records for Toby Barrett**

Exhibit 142 is another set of family member medical records proffered to show Dr. Woods is correct to find a persistent family pattern of mental illness. On the second through eighth, the eleventh through eighteenth, and twentieth through twenty-third pages of Exhibit 142, physicians document Mr. Barrett's son Toby experiencing symptoms of depression, mania, and Attention Deficit Hyperactivity Disorder. On the fifteenth page, which is dated in 2007, Toby Barrett relates a past diagnosis for depression. These pages, while dated after Mr. Barrett's trial, tend to make it more probable that Dr. Woods is correct in identifying a family history of bipolar disease or symptoms, and more probable that Dr. Woods is correct to diagnose Mr. Barrett with bipolar disease.

**Exhibit 143**          **Medical Records for Travis Crawford**

Exhibit 143 consists in records from various occasions on which key prosecution witness Travis Crawford sought medical treatment Mr. Barrett proffered Exhibit 143 for the purpose of showing that Travis Crawford was an unreliable witness, and to corroborate things said about Mr. Crawford by his father in the father's declaration – for example that his son has for some time been under medical treatment for neurological problems (migraine) and mental health problems. See also KEB302350[4] (reporting history of anxiety in September 2008); KEB302364 (reporting medication for anxiety and depression in January 2008); KEB502376-379 (seeking treatment for migraine and reporting in August 2007 a history of depression and current medications for anxiety and depression); KEB502383-384 (January 2007 reporting then current need for medication for anxiety). Pages KEB502405-414 are dated before the trial. They show

---

[4] Longer documents were electronically "Bates" stamped to facilitate easy reference. These numbers appear in the bottom right corner of the electronic (PDF) image of the exhibit. Due to margin limitations, these numbers may not print on all printers.

Travis Crawford seeking treatment for a repeated bout of kidney stones. Methamphetamine use is reported to cause kidney stones in some people. Pages numbered KEB502419, 421 and 423 document a history of kidney stones prior to January 2002, which corroborates that Travis Crawford was a heavy methamphetamine user long before he testified. Pages numbered KEB502390-393 document some of the effects of the long-term methamphetamine use reported in Travis Crawford's declaration and that of his father. They show that in March 2006, approximately six months after his testimony, Travis Crawford reported he was a methamphetamine user and that he had last used the drug two months earlier. In April 2006, the records show, he had five teeth extracted (tooth loss being a known consequence of chronic meth abuse), and went to the emergency room seeking pain medication but stormed out before he could be examined. These records make it more probable this Court will find that Travis Crawford was an unreliable witness who was, like all drug addicts, under constant risk of arrest and loss of access to drugs on which he was dependent. Not every page of these records contains independent evidence. For example, the first page is a cover sheet for a particular hospital visit. It is relevant, however, because it places in context the next page, on which Mr. Crawford reports a prior diagnosis for, and drug treatment for, anxiety.

As the records show, they are a complete set of records from one hospital. The set was proffered because the pages that are not independently relevant to a material fact are interspersed with pages which are relevant to such an extent that integrity of the exhibit might appear compromised if certain pages were removed. However, if the Government and this Court have no objection, Mr. Barrett could withdraw pages numbered KEB502343-346, KEB502352-354, KEB302360-363, KEB302365-68, KEB502424, KEB502370-375; KEB502380-382; KEB502386-89; KEB502415-18.

Pages numbered KEB502394-404 show Mr. Crawford going to the emergency room for a variety of complaints in a brief period all that involved seeking either muscle relaxants or pain killers or both, and Mr. Barrett submits these pages are relevant to this Court's determination whether Travis Crawford would have been willing to give false testimony to please law enforcement if doing so would have left him free on the streets to continue to use drugs.

**Exhibit 144          Medical Records of Cynthia Crawford**

Exhibit 144 was proffered in support of Ground 2 in order to demonstrate Mr. Barrett's ability to prove that a reasonable investigation of prosecution witness Cindy Crawford would have uncovered evidence that she had an impaired mental condition, which, along with her drug use, could have impeached her credibility, her ability accurately to recall and relate, and showed her to be unstable and amenable to pressure or influence from law enforcement.  1st Amend. Pet. at 90-91.  Parts of Exhibit 144 that were created prior to Ms. Crawford's trial testimony[5] show she had a history of opiate abuse and drug rehabilitation although she denied drug use (KEB503547, dated October 18, 2005), and that she had a history of emotional instability and being medicated for anxiety (KEB503546, 550, 554, 565, 568, 570, 573), depression (KEB503566, 569, 577), and Post Traumatic Stress Disorder (KEB503577, 578).

Exhibit 144 also was proffered in support of Ground 5 as newly discovered evidence and as corroboration of the declarations of Mr. Barrett's post-conviction investigators which aver (a) that absent influence from the prosecution, Ms. Crawford executed a release for defense counsel to obtain her medical records, *id.* 302 and n.55, (b) that she had long suffered from mental health problems that would lead her to misperceive events and embellish them.  *Ibid.*   In that Ms. Crawford was a key prosecution witness who testified at both stages of trial, the availability of

---

[5]  Ms. Crawford testified on October 24 and November 9, 2005.

evidence that would have impeached her credibility is a fact of consequence to the determination of Grounds 2 and 5.

Because Ms. Crawford first agreed to be interviewed and provide records to the defense then refused to review a declaration memorializing her statements, her mental condition both prior to, during, and since the time of trial may be a fact of consequence to the determination of this action.  Records dated after the time of trial show reports of PTSD (KEB503414, 423, 449-56, 457-462, 501-507, 508-511, 514, 518), and show her receiving medications for panic disorder, major depression, and antipsychotic medications.  KEB503402, 403, 407, 412, 414, 421, 429-32 (report of overdose of panic medication at KEB503430), 450, 452, 454-456, 458, 501-504, 518-520, 524-528).  Post-conviction evidence is relevant to Mr. Barrett's claims predicated upon *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.  *United States v. Quintinella,* 193 F.3d 1139, 1148 n. 9 (10th Cir. 1999).  These medical records make it more probable this Court will find Ms. Crawford felt pressured to testify favorable for the prosecution, and that she was under pressure not to cooperate with the defense, and they will make it less probable this Court will find Ms. Crawford's testimony was truthful, or that, considered cumulatively with other evidence the verdicts based in part on her testimony are worthy of confidence.

Viewed together, these records from one hospital show a pattern beginning in January 2005 in which Ms. Crawford seeks emergency treatment either for the mental health conditions mentioned *supra*, or for a variety of complaints for which she is often seeking pain medication despite x-ray and other examinations that show no injury, and reports of her opiate abuse and an addiction to pain pills (KEB503512).  This entire history is relevant to an assessment of her credibility and vulnerability to law enforcement, and her decisions first to cooperate with Mr.

Barrett's post-conviction investigation then not to participate.

If the Government does not dispute the correctness of the records, and this Court wishes to minimize the size of the exhibit the following fourteen pages could be withdrawn and the exhibit re-submitted:  KEB503521-523; KEB503542-545; KEB503581-584; KEB503594-596.

**Exhibit 145**          **Medical Record of Linda Riley**

Exhibit 145 was proffered as further documentary proof that members of Mr. Barrett's family, in this case his paternal aunt, have been diagnosed with and treated for severe anxiety and depression.  1st Amend. Pet. at 221.  This one-page excerpt from a larger record was available at the time of trial and makes it more probable that this Court will find Dr. Woods was correct to identify a family history of mental illness that could have been documented at the time of trial. *See* Exh. 117 at ¶ 26.

**Exhibit 146**          **Mental Health Records of A.J. Barrett**

Exhibit 146 documents the court-ordered commitment of Mr. Barrett's grandfather to a mental health facility in 1966.  It was proffered as one of many records documenting a history of mental illness and domestic violence in Mr. Barrett's family, as well as the family's educational, financial, social, and work background.  The entire document makes it more probable that this Court will find records related to violence, mental illness, alcoholism, low educational attainment, poverty, and family dysfunction in Mr. Barrett's background were available to defense counsel and mental health experts, but were not sought, obtained, or considered in a manner consistent with prevailing professional norms, and that these documents would have served independently or through experts as the basis for mitigation evidence.  *See*, *e.g.*, Exh. 117 at ¶ 27.

**Exhibit 147**          **Medical Records of Kenneth Eugene Barrett**

As mentioned *supra*, Mr. Barrett's medical records are relevant in part because they were relied upon by Dr. Woods and Dr. Young both to assess Mr. Barrett's condition at the time of their evaluations, and to form opinions that could be based solely upon records available at the time of trial.  *See* Fed. R. Evid. 703.  In other words, to the extent Dr. Woods and Dr. Young relied on the entirety of Mr. Barrett's medical records in aid of reaching their conclusions and diagnoses, the records are directly relevant to their findings, and offer documentary support for them.  The experts' reliance on the entirety of Mr. Barrett's medical records – both psychiatric and non-psychiatric – shows that they did not "cherry pick" the documentary record of Mr. Barrett's medical history, but took into account the entire record to inform their conclusions, as they were professionally obligated to do.  *See infra*.  Dr. Woods' and Dr. Young's reports indicate both their reliance on the records and how the records assisted in their overall evaluations of Mr. Barrett.

The Court specifically directed Mr. Barrett's counsel to address the relevance of his medical records that do not mention mental illness,[6] and that post-date the trial.  Order (Doc. 147) at 1-2.  A complete medical history is a component of a mental health assessment.  Dr. Woods mentioned in his declaration that he was applying the diagnostic criteria of the American Medical Psychiatric Association's *Diagnostic and Statistical Manual – IV – TR* ("DSM-IV-TR").  Exh. 117 at ¶¶ 61, 66, 67.  The DSM-IV-TR, like previous versions of the DSM uses a diagnostic

---

[6] E.g., Exh. Vol. 2, Exh. 147, pp. 1-7, 11, 13-18, 21-40, 43-60; Exh. Vol. III, Exh. 147, pp. 148-153, 183-237, 239, 303; Exh. Vol. IV, Exh. 147, pp. 83-146, 177-315.  These materials consist of records from Sequoyah Memorial Hospital, St. Francis Medical Center in Tulsa, where Mr. Barrett was taken after Trooper Eales was killed and Mr. Barrett was himself shot, and medical records from the period of time Mr. Barrett was in state, and then later federal custody. Any duplicate records among these materials stems from the fact that various sources from which Mr. Barrett obtained the records themselves had records from other facilities.  Duplicate records from the several sources of records were included not to burden the court with repetition, but to demonstrate how easily counsel could have acquired and reviewed the records.

method called "multiaxial assessment."

> A multiaxial system involves an assessment on several axes, each of which refers to a different domain of information that may help the clinician plan treatment and predict outcome. There are five axes included in the DSM-IV multiaxial classification:

| | |
|---|---|
| Axis I | Clinical Disorders |
| | Other Conditions That May Be a |
| | a Focus of Clinical Attention |
| Axis II | Personality Disorders |
| | Mental Retardation |
| Axis III | General Medical Condition |
| Axis IV | Psychosocial and Environmental Problems |
| Axis V | Global Assessment of Functioning |

> The use of the multiaxial system facilitates comprehensive and systematic evaluation with attention to the various mental disorders and *general medical conditions,* psychological and environmental problems, and level of functioning that might be overlooked if the focus were on assessing a single presenting problem.

DSM-IV-TR at 27. (Emphasis added) This approach is particularly relevant in the context of a capital case because 'the multiaxial system promotes the application of the biopsychosocial model" which tracks the consideration given in capital sentencing proceedings to the medical, educational, and psychosocial background of the defendant.

"General medical conditions can be related to mental disorders in a variety of ways. In some cases it is clear that the general medical condition is directly etiological to the development or worsening of mental systems and that the mechanism for this effect is psychological." *Id.* at 29. "There are other situations in which general medical conditions are recorded on Axis III because of their importance to the overall understanding or treatment of the individual with the mental disorder." *Id.* at 30. In addition, the DSM-IV-TR uses a process of "differential diagnosis" to distinguish conditions. In order to rule a diagnostic label in or out of consideration, the examiner must consider all five axes.

In a post-conviction forensic setting such as this, it is sometimes important for mental health examiners to review medical information from the period before trial and the period after trial in order to form an opinion regarding the onset of the individual's symptoms. If, for example, Dr. Young found evidence of head trauma or other medical reasons for loss of consciousness before the offense or trial, but none in the time since, that would support an opinion that the etiology of brain dysfunction lies in the pre-offense trauma. An example of this was Mr. Barrett's suicide attempt in 1986 when he shot himself in the chest with a shotgun. This incident, and the records reflecting it, are clearly relevant to an assessment of his mental condition; the suicide attempt resulted in Mr. Barrett's commitment to Eastern State Hospital.

Both pretrial and post-trial medical records are relevant to a competent examination of a defendant by psychiatric or psychological experts for a number of reasons. The records assist the examiner in determining whether the person being evaluated is on medications that could affect his response to the examination, and/or whether he is suffering from a physical condition which impairs his concentration or produces "noise" in his presentation that has to be distinguished from the signals the examiner is picking up during the evaluation. Post-trial medical records are relevant because they indicate to an examiner whether the subject has experienced trauma or other illness since the trial that could affect the person's responses.

Beyond all this, Mr. Barrett's psychiatric[7] and other medical records (*see* fn. 6) are

---

[7] *See, e.g,* Exh. Vol. II, Exh. 147, pp. 8-10, 20, 57-100 (Eastern State records); Exh. Vol. III, 1-23, 27-147 (Eastern State records; partial duplicate); Exh. Vol. III, Exh. 147, pp. 240-270, records of Wagoner Community Hospital and Bill Willis Mental Health facility, pp. 271-288 (partial duplicate of these records); Exh. Vol. III, Exh. 147, p. 289 (Social Security Disability appeal form); Exh. Vol. III, Exh. 147, pp. 290-302 (Eastern State records, partial duplication), Exh. Vol. IV, Exh. 147, p. 176 (denial of disability by Social Security Administration). The duplicate copies of various records that appear in Exhibit 147 apparently stem from the fact that various sources from which Mr. Barrett acquired the records had records from other facilities. As noted in fn. 6, duplicate copies of records were included in Mr. Barrett's submission to

directly relevant to his arguments that: 1) trial counsel were ineffective for failing to utilize appropriate expert assistance to show that Mr. Barrett was incompetent to stand trial (Ground 2, Part A(3), Ground 8); 2) trial counsel were ineffective for failing to utilize expert (and lay) witnesses to argue that, due to his severe mental illnesses and the manner in which he processes information and reacts in stressful situations, Mr. Barrett was either simply incapable of forming the required intent, particularly, but not exclusively, with respect to Count 3, or, at the worst, that his mental and emotional state made him liable for only a lesser offense or offenses which evidence also would have generally aided in rebutting the Government's theory of the case (Ground 2, Part A(2), Ground 9); 3) trial counsel were ineffective for failing to fulfill their duties to conduct a thorough and competent mitigation investigation, consult with appropriate experts, and prepare effective and complementary defenses in both the first and second stages of trial which focused on Mr. Barrett's and his family's lengthy history of mental illness (Ground 2, Part B (1)(2)); 4) that the trial court denied Mr. Barrett's rights to due process and equal protection, and his right to expert assistance under the applicable federal statutes (Ground 3 (2)(3)); 5) Mr. Barrett's physical health problems, as well as his mental illnesses, are relevant to his claim that he was improperly restrained with a stun belt during trial (Ground 7); 6) that Mr. Barrett's constitutional rights were violated due to the effects of drugs he was given, and trial counsel's failure to inquire about the effects of the drug regimen Mr. Barrett was on during trial, which contributed to the incident in which Mr. Barrett was removed from the courtroom during the penalty phase without a proper inquiry or waiver (Ground 13; Ground 18 (A)(12); and, 7) that due to Mr. Barrett's organic brain impairments and chronic and severe mental illnesses, his

---

demonstrate the ease with which trial counsel either could have acquired or reviewed the pertinent medical records.

execution would violate the Eighth Amendment (Ground 17).  The relevance of Mr. Barrett's medical records to these grounds for relief were explained in Mr. Barrett's § 2255 motion and supporting brief, and based on the Court's familiarity with those documents are not be repeated here.

**Exhibit 201**              **Medical Records of Gwendolyn Crawford**

Exhibit 201 contains medical records of Mr. Barrett's maternal first cousin, Gwendolyn Crawford.  This five-page exhibit was proffered in support of Ground 2 in order to document the prevalence of mental illness in Mr. Barrett's family. 1st Amend. Pet. at 218.  The first page of the exhibit is offered for the purpose of authentication.  The remaining pages document Mr. Barrett's cousin being treated over a period of years for tension headaches, migraine, and "nerve difficulties" that are also described as "anxiety-depression."  *See* Exh. 117 at ¶ 24.

**Exhibit 202**              **Medical Records of Carolyn Joseph**

Exhibit 202 are medical records related to the same witness as Exhibit 139 which was addressed *supra*.  Records created after the trial confirm the longstanding nature of this family member's bipolar disease either directly or based on medications.  *See* pages Bates numbered KEB505285, 292, 298, 303, and 309.  These records make it more probable this Court will find Dr. Woods' conclusions are correct and well founded.  Records created years before the trial show medications for depressive symptoms.  KEB505364, 369, and 413.  These records are relevant to Dr. Woods' diagnosis and to show that the same diagnosis could have been made at the time of trial.

Unlike Exhibit 139, Mr. Barrett's counsel proffered this hospital's records in their entirety because as a whole the record makes it more probable this Court will find that defense counsel did not seek medical records related to Mr. Barrett's family, despite the family's

willingness to notify counsel in interviews that there is a history of bipolar and other neurological disorders.  This hospital included in its records all prior releases, authorizations, and requests for records.  Bates pages KEB505355-363 reflect the request made by Mr. Barrett's post-conviction counsel.  The entire file is relevant under Fed. R. Evid. 803(7) because it shows that the hospital had the post-conviction records request, and a form prepared in response, but no request dating from the time of trial.

### IV.   Conclusion

For the foregoing reasons, and those stated in Mr. Barrett's Amended Motion to Vacate, and in his unopposed motion to file under seal, Mr. Barrett respectfully requests this Court grant the motion and file the exhibits.

DATED:   March 12, 2010

Respectfully submitted,

*/s/ David B. Autry*
DAVID B. AUTRY, OBA #11600
Attorney at law
1021 N.W. 16th Street
Oklahoma City, Oklahoma 73106-6405
Telephone:  405-521-9600

DANIEL J. BRODERICK
Federal Defender
*/s/ Joan M. Fisher*
JOAN M. FISHER, Idaho SB #2854
Assistant Federal Defender
*/s/ Tivon Schardl*
TIVON SCHARDL, Fla. Bar No. 73016
Trial & Habeas Attorney
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone:  916-498-6666

Attorneys for Defendant
KENNETH EUGENE BARRETT

**Certificate of Electronic Filing and Service**

I hereby certify that on this 12th day of March 2010 I caused the foregoing Motion to Expand the Record to be filed with the Clerk of the Court using the ECF System for filing.  A copy will be served electronically to Christopher J. Wilson, AUSA, 1200 W. Okmulgee Street, Muskogee, OK 74401, and Jeffrey B. Kahan, U.S. Dept. of Justice, 1331 F Street, NW, Washington, DC 20530.

/s/ Joan Fisher