274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.)))**

**H**

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter. See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Tenth Circuit Rule 32.1. (Find CTA10 Rule 32.1)

United States Court of Appeals,
Tenth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Ray ASHLEY, Defendant-Appellant.
**No. 06-2258.**

April 18, 2008.

**Background:** Defendant was convicted in the United States District Court for the District of New Mexico of being a felon in possession of a firearm, for which he was sentenced to 51 months of imprisonment. Defendant appealed.

**Holdings:** The Court of Appeals, Jerome A. Holmes, Circuit Judge, held that:
(1) government's failure to disclose plans of calling witnesses did not amount to a *Brady* violation;
(2) defendant waived for appellate review challenge against prohibition against mentioning first trial in open court; and
(3) sentence was reasonable.

Affirmed.

West Headnotes

**[1] Criminal Law 110 ⚷2001**

110 Criminal Law
    110XXXI Counsel
        110XXXI(D) Duties and Obligations of Prosecuting Attorneys
            110XXXI(D)2 Disclosure of Information

            110k1993 Particular Types of Information Subject to Disclosure
                110k2001 k. Other particular issues. Most Cited Cases
Government's failure to disclose three witnesses to defendant prior to retrial on charge of being a felon in possession of a firearm did not amount to a *Brady* violation, where, despite defendant's claim that knowledge of witnesses prior to retrial would have assisted the defense in impeaching their testimony, that by itself did not constitute exculpatory evidence necessary for a *Brady* violation.

**[2] Criminal Law 110 ⚷1137(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(L) Scope of Review in General
            110XXIV(L)11 Parties Entitled to Allege Error
                110k1137 Estoppel
                    110k1137(1) k. In general. Most Cited Cases
Challenge against district court's refusal to allow defendant to ask questions regarding outcome of previous trial, in prosecution for being a felon in possession of a firearm, was waived for appellate review, where, in addressing the issue before district court, rather than objecting to issue, defendant agreed that the topic should not be discussed in open court.

**[3] Sentencing and Punishment 350H ⚷95**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(E) Factors Related to Offender
            350Hk93 Other Offenses, Charges, Misconduct
                350Hk95 k. Nature, degree, or seriousness of other misconduct. Most Cited Cases

**Weapons 406 ⚷343**

406 Weapons

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

ATTACHMENT FOUR

274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.)))**

406V Prosecution

406V(H) Sentence and Punishment

406k343 k. Possession after conviction of crime. Most Cited Cases

(Formerly 406k17(8))

Imposition of 51-month sentence for being a felon in possession of a firearm was reasonable; district court noted defendant's lengthy criminal history spanning more than three decades, which included crimes on seven separate occasions, many involving firearms and some involving violence. 18 U.S.C.A. § 3553(a).

**\*694** David C. Iglesias, Office of the United States Attorney, Albuquerque, NM, Terri J. Abernathy, Office of the United States Attorney District, Las Cruces, NM, for Plaintiff-Appellee.

James W. Klipstine, Jr., Klipstine, Bowlin & Honigmann, Hobbs, NM, for Defendant-Appellant.

Before HENRY, Chief Judge, McWILLIAMS, Senior Circuit Judge, and HOLMES, Circuit Judge.

**ORDER AND JUDGMENT** FN*

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

JEROME A. HOLMES, Circuit Judge.

**\*\*1** Defendant-Appellant Richard Ashley was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to 51 months of imprisonment, the bottom of the Guidelines recommended range, and 36 months of supervised release. Mr. Ashley now challenges the district court's rulings pertaining to the disclosure and cross-examination of three witnesses and the length of his sentence. Our jurisdiction arises under 28 U.S.C. § 1291 and 18

U.S.C. § 3742(a), and we affirm.

## I. *BACKGROUND*

We report the facts in the light most favorable to the verdict. Mr. Ashley was indicted by a grand jury on the charge of being a felon in possession of a firearm. The charge arose from a trip Mr. Ashley took to Pancho Villa State Park near Columbus, New Mexico, during which Mr. Ashley showed his .22 pistol to a park ranger, Ranger Martinez, and a park volunteer. Also during that trip, a paid informant saw Mr. Ashley wearing a fanny pack that appeared to contain a pistol. The informant, who had gone to the park looking for Mr. Ashley because he had received information about him, told an Immigration and Customs Enforcement agent, Agent Spiess, that he had seen Mr. Ashley and believed he was carrying a firearm. Agent Spiess then went to Mr. Ashley's campsite, where he searched Mr. Ashley's possessions and found an unloaded .22 pistol in a dry storage box. Mr. Ashley told Agent Spiess that his son had left the pistol in the camping gear. FN1

FN1. The reported account of what Mr. Ashley told Agent Spiess is based upon the testimony of the latter. *See* Aplee. Supp.App., Vol. I, at 62 (testifying that Mr. Ashley said "[t]hat his son had left it in the camping gear."). Mr. Ashley disputed this account. He testified that he learned for the first time that the firearm was in the camping gear the evening before his encounter with Agent Spiess and the weapon had been placed there by a friend who was holding it for Mr. Ashley's son. *See id.* at 219-20, 231, 238.

Mr. Ashley was tried on the charge of being a felon in possession of a firearm. The government's main witness was Agent Spiess, who testified about the circumstances under which he found the pistol. The jury was unable to reach a unanimous verdict and a mistrial was declared.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.)))**

Mr. Ashley was retried on the charge. Six days before trial, the government provided Mr. Ashley with Ranger Martinez's name and the names of the paid informant **\*695** and park volunteer, and indicated that it planned to call all three individuals as witnesses. The government also provided Mr. Ashley with Ranger Martinez's affidavit, which summarized his anticipated testimony.

Mr. Ashley objected to the government's use of these witnesses. Principally, he argued that the government failed to disclose the witnesses in a timely manner, thus preventing Mr. Ashley from effectively preparing to explore credibility issues raised by the government's decision not to call the witnesses in the initial trial. Mr. Ashley sought a dismissal of the indictment. In the event the court was opposed to such relief, Mr. Ashley alternatively argued that the court should permit him to cross-examine the witnesses regarding their absence at the initial trial. At no point did Mr. Ashley seek a continuance to address his concerns related to the government's allegedly untimely witness disclosure.

The district court expressed its inclination to deny the motion to dismiss and ultimately did so. It permitted the government to call the witnesses and allowed the defense to cross-examine them regarding their absence at the initial trial, so long as the defense did not mention, or seek to elicit testimony concerning, the outcome of the initial trial.

**\*\*2** The jury returned a guilty verdict, and Mr. Ashley was sentenced to 51 months' incarceration. The applicable United States Sentencing Guidelines Range was 51 to 63 months. Mr. Ashley timely appealed from the district court's judgment and sentence.

## II. *DISCUSSION*

### A. *Disclosure of Witnesses*

[1] Mr. Ashley claims that the failure to timely dis-

close the identity of the three witnesses before the retrial violated his due process rights. In a motion to dismiss raised before the district court and in his briefing before this court, he has framed the issue as the suppression of material, exculpatory evidence, arguing that the government violated *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States,* 405 U.S. 150, 154-55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

"We review questions regarding the disclosure of exculpatory or impeachment evidence de novo." *United States v. Gonzalez-Montoya,* 161 F.3d 643, 649 (10th Cir.1998). To establish a *Brady* violation, Mr. Ashley must demonstrate that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material. *Id.; see also United States v. Wright,* 506 F.3d 1293, 1301 (10th Cir.2007). After thorough review of the record, we reject Mr. Ashley's disclosure challenge.

As the government correctly noted, his challenge fails at the "most fundamental level," Aplee. Br. at 11-the identification of evidence favorable to the defense. Mr. Ashley has not advanced a persuasive theory that would permit us to characterize information related to the three witnesses as exculpatory. The witnesses possessed testimony that was incriminating to Mr. Ashley, not exculpatory. Indeed, Mr. Ashley candidly acknowledged as much: "It is not Mr. Ashley's complaint that the evidence provided by these witnesses was in itself favorable to his defense. It clearly was not." Aplt. Op. Br. at 18.

Mr. Ashley's idea appears to be that the fact that witnesses the government put forward as having relevant testimony for the retrial were not called to testify in the initial trial implicates *Brady* because it raises the possibility of recent fabrication or otherwise calls the witnesses' credibility **\*696** into question. *See* Aplt. Op. Br. at 18 (citing *Brady,* stating, "It is his [Mr. Ashley's] complaint that disclosure of the evidence in a timely fashion would have, as a matter of due process, allowed him to effectively

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.)))**

attack the *credibility of the evidence* " (emphasis added)); Aplee. Supp.App., Vol. I, at 21, 153-54 (e.g., informing the district court, "Basically, ... it's our position that we should have been able to explore the possibility of the *issue of recent fabrication.*" (emphasis added)).

However, logically, there is nothing inherently exculpatory about the fact that the government did not call the witnesses in the initial trial, but elected to do so in the retrial. *Cf. United States v. Watts,* 95 F.3d 617 (7th Cir.1996) (declining to infer from the prosecution's decision not to call a witness to testify that "his testimony would have been adverse to the prosecution").[FN2] In particular, this sequence of events does not naturally suggest that the information the witnesses had to offer "changed" between the two trials.

> FN2. In *Watts,* the government did not call a witness named "Walls" to testify at the defendant's trial for possession of crack cocaine with intent to distribute. 95 F.3d at 618. He was one of only two people "who might have seen" the defendant possess the drugs. *Id.* Nevertheless, in assessing defendant's challenge to the sufficiency of the evidence, the Seventh Circuit declined to infer from the government's failure to call Walls to testify that his evidence was adverse to it (and, thus, presumably favorable to the defense). *Id.* at 619. Specifically, the court noted: "The government may have had strategic reasons for not calling Walls, or it simply may have decided that it did not need his testimony." *Id.* Similarly, we are unwilling to infer the existence of material impeachment evidence within the meaning of *Brady* and *Giglio* by engaging in a high degree of speculation about the government's litigation decision-making. In particular, we will not speculate that at the time of the initial trial the government decided not to call the three individuals at issue as witnesses be-

cause their testimony was unfavorable to its case (and, thus, presumably favorable to the defense) and then elected to call them for the retrial because their testimony "changed" for the better.

**\*\*3** Indeed, as the government noted, the answer could easily lie in the fact that a different prosecutor handled the retrial and exercised independent forensic judgment in selecting witnesses. *See* Aplee. Br. at 12 n. 8 ("The change in prosecutors is reflected in the differing presentations of the evidence."); Aplee. Supp.App., Vol. I, at 156 ("The fact that the United States did not call them is indicative, simply, of the fact that the previous prosecutor on this case must have believed there was sufficient evidence on [sic] the witnesses that were called."). We are hard-pressed, moreover, to see how the credibility of the witnesses could be called into question by the fact that *another person*-the government-changed its mind and decided to avail itself of their testimony in the retrial. The witnesses would not have had any role in this government decision, and Mr. Ashley makes no assertions to the contrary. Consequently, we are puzzled as to how *the fact of* their appearance as witnesses could cast any doubt on their veracity.

"[O]n this record we are left only with speculation and conjecture," *United States v. Nevels,* 490 F.3d 800, 804 (10th Cir.2007), concerning the alleged exculpatory nature of the evidence. That is not enough. *See United States v. Williams-Davis,* 90 F.3d 490, 514 (D.C.Cir.1996) (joining the Third and Ninth Circuits in declining to infer the existence of *Brady* material based upon speculation alone, and therefore rejecting defendant's *Brady* claim because "[e]xcept for bare speculation, ... [defendant] has nothing to suggest the existence of favorable materials"); *United States v. Santiago,* 993 F.2d 504, 506 (5th Cir.1993) (holding that defendant "failed to demonstrate a *Brady* violation" in part **\*697** because he "ha[d] not established the exculpatory nature of the allegedly suppressed evidence-his allegations are mere speculation and con-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.)))**

jecture"), *overruled on other grounds by United States v. Calverley,* 37 F.3d 160, 164 & n. 27 (5th Cir.1994) (en banc), *abrogated on other grounds by Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).

Mr. Ashley has suggested that his real concern was the timing of the disclosure-which allegedly prevented him from effectively responding to the new witnesses and their testimony. For example, when asked by the district court "[w]hat ... about [the character of] that testimony" he thought was "exculpatory," Mr. Ashley responded:

Judge, I suppose it is ... the fact that the Government had this evidence available at a previous trial and did not call these witnesses-*it's the issue of-... the fact that the defendant has not had an opportunity to appropriately and completely evaluate why* the Government would not call these witnesses at a prior trial in that regard....

Basically, ... it's our position that we should have been able to explore the possibility of the issue of recent fabrication. *And the fact that we were not able to know of this information until less than a week before trial put Mr. Ashley in a position where he was not able to adequately prepare his defense* and was, as a result of that, denied the due process of law that he is entitled to receive.

**\*\*4** Aplee. Supp.App., Vol. I, at 153-54 (emphasis added); *see* Aplt. Op. Br. at 13 (contending that Mr. Ashley was "denied the opportunity to effectively impeach critical government witnesses by the late disclosure of the nature of their testimony").[FN3]

FN3. In oral argument before us, Mr. Ashley could be understood to have advanced a somewhat different concern related to the timing of disclosure. Mr. Ashley argued that the government's allegedly belated disclosure created a situation where he "w[as] not able to address that [the prospective witnesses' testimony] *adequately to the court.* " Oral Arg. at 15:24 (emphasis added). Mr. Ashley appeared to be arguing that the government's alleged tardiness in disclosing the witnesses impaired his ability to give the district court a proper foundation for evaluating the issue and presumably granting him relief against the government's use of the witnesses. Forced to operate without adequate information, reasons Mr. Ashley, the district court erred. At no point, however, did Mr. Ashley seek a continuance to permit him to mount a more effective challenge to admission of the witness testimony. Nor has he offered any clues to us regarding what he would have done with the additional time to better prepare the record for a ruling by the district court. Insofar as Mr. Ashley's argument encompasses this judicial-relief contention, we conclude that it is untenable.

However, Mr. Ashley's "plea for earlier disclosure fails for one very simple reason: no rule of law requires it." *Watts,* 95 F.3d at 619. "There is no general constitutional right to discovery in a criminal case" and *Brady* "did not create one." *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). In particular, the Due Process Clause does not require the government to disclose before trial the names of its witnesses, just so the defense can have sufficient time to investigate their backgrounds for impeachment information. *Id.* (rejecting the notion that the Due Process Clause required the government to disclose the name of an adverse witness so the defense can "do a background check" on him "for purposes of cross-examination"); *see Nevels,* 490 F.3d at 803 ("The Supreme Court has established that no *constitutional* right to pretrial discovery of witnesses exists in non-capital cases.").

Lastly, even if Mr. Ashley had some legal basis to object to the government's allegedly untimely disclosure of the three **\*698** witnesses, on this record

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.)))**

we could not conclude that Mr. Ashley was prejudiced in his trial preparation by the alleged delay, much less denied a fair trial. *See United States v. Scarborough,* 128 F.3d 1373, 1376 (10th Cir.1997) (reasoning where "the [ *Brady* ] evidence was eventually disclosed to the defense, albeit towards the end of trial," the court focuses not on "the fact that the material, if disclosed earlier, may have affected the defense strategy" but rather "on whether earlier disclosure would have created a reasonable doubt of guilt that did not otherwise exist" (internal quotation marks omitted)). *Compare United States v. Collins,* 415 F.3d 304, 310 (4th Cir.2005) (rejecting *Brady* argument where defendant moved to dismiss charges based on government's alleged untimely disclosure, "only a few days prior to commencement of the trial," of the identities of nontestifying confidential informants, noting, "There is nothing to support Collins' assertion that these informants would have produced exculpatory information"), *and Gonzalez-Montoya,* 161 F.3d at 650 (concluding in *Brady* context that "no prejudice resulted" from government's untimely disclosure during the course of trial of material impeachment evidence, where court afforded defendant opportunity to review evidence and he declined to use the evidence in interviewing or cross-examining the witness), *with United States v. Red Elk,* 185 Fed.Appx. 716, 723 (10th Cir.2006) (unpublished) (reviewing exclusion of expert witness for alleged untimely disclosure and noting "[t]o support a finding of prejudice, the court must determine that the delay impacted the defendant's ability to prepare or present its case" (internal quotation marks and citation omitted)).

**\*\*5** As to the three witnesses, Mr. Ashley has failed to indicate "how he might have better cross-examined them or what he could have done differently at trial if he had" known the witnesses' identities "for a longer period of time before trial." *United States v. Cleaver,* 163 Fed.Appx. 622, 627 (10th Cir.2005) (unpublished), *cert. denied,* 547 U.S. 1103, 126 S.Ct. 1893, 164 L.Ed.2d 578 (2006). Although the government was not obliged to do so

under any discovery rule (*see, e.g.,* 18 U.S.C. § 3500), it had provided Mr. Ashley with Ranger Martinez's affidavit before trial, so Mr. Ashley would have confronted minimal surprises (if any) concerning the substance of this significant witness's testimony and would have been armed to conduct a thorough impeachment of him. And, importantly, Mr. Ashley never sought a continuance before trial. *See Nevels,* 490 F.3d at 804 (noting that defendant "never asked for a continuance of the trial" as a factor bearing on its conclusion that defendant "failed to establish prejudice" from allegedly untimely disclosure of witness's identity). *Cf. Collins,* 415 F.3d at 311 (rejecting *Brady* challenge brought through motion to dismiss, noting that "when his motion was denied, he did not seek a continuance"); *Watts,* 95 F.3d at 619 (upholding district court's denial of defense motion in limine, aimed at excluding government witness disclosed three days before trial; observing that "[t]here is no indication in the record" that the defendant "requested a continuance after hearing about" the witness's testimony).

Therefore, for the foregoing reasons, we reject Mr. Ashley's constitutional challenge under *Brady* and *Giglio* to the propriety of the government's disclosure of witnesses.

### B. Limitation on Cross-Examination

[2] Mr. Ashley argues that the district court impermissibly limited the scope of the cross-examination of Ranger Martinez, the park volunteer, and the paid informant. Specifically, Mr. Ashley contends that he was not allowed to cross-examine **\*699** these witnesses about whether they were called to testify in the previous trial. Mr. Ashley also argues that he should have been allowed to ask if the witnesses were known by the government before the retrial and whether they were aware of the outcome of the initial trial (i.e., the mistrial). We conclude that Mr. Ashley cannot prevail on these contentions.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.)))**

Initially, to the extent that Mr. Ashley argues that he should have been able to ask questions regarding the outcome of the previous trial, he has waived that argument. In addressing the issue before the district court, Mr. Ashley agreed with the district court that the outcome of the previous trial should not be discussed, stating, "And I agree, I don't think that it's appropriate, nor will we suggest how that other trial ended." Aplee. Supp.App., Vol. I, at 22.

This is not a situation where a challenge is forfeited because it was not timely preserved. *See United States v. Teague,* 443 F.3d 1310, 1314 (10th Cir.), *cert. denied,* 549 U.S. 911, 127 S.Ct. 247, 166 L.Ed.2d 194 (2006). Rather, this is a case where there was an "intentional relinquishment or abandonment of a known right," which amounts to a waiver. *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citation omitted). Although Mr. Ashley argues that his statement before the district court merely expressed his understanding of the district court's decision, Oral Arg. at 9:08-9:50, a careful reading of the record contradicts that view. The district court had not made its decision concerning the permissible scope of cross-examination and was specifically inquiring as to whether Mr. Ashley would find acceptable a procedure in which he could cross-examine about the prior trial, but not mention, or ask about, the trial's outcome. Mr. Ashley orally assented to that procedure. We conclude that Mr. Ashley's response waives the issue of asking about the outcome, and we will not review his challenge on appeal.

**\*\*6** Insofar as Mr. Ashley objects to a purported broader cross-examination restriction by the district court-essentially one relating to the fact of a prior trial and the circumstances surrounding the government's failure to call the three witnesses at that trial, we conclude that Mr. Ashley's challenge is misguided and reject it. Specifically, the challenge has no foundation in the record. The district court imposed no restriction relating to such cross-examination. Indeed, it specifically noted that Mr.

Ashley could inquire into such matters, and Mr. Ashley orally acknowledged the advisement.[FN4] Importantly, Mr. Ashley actually did cross-examine two of the three witnesses on the topics. *See* Aplee. Supp.App., Vol. I, at 40-41, 149. Based on our review of the record, then, we reject Mr. Ashley's claim that cross-examination was impermissibly limited.

> FN4. The district court had the following exchange with Mr. Ashley's defense counsel:
>
> > [THE COURT] But what about the solution that we don't tell them [the jurors] what the prior verdict was, but if you think it would be helpful to get into the fact that there was a prior-either you can call it a hearing, or whatever you want to, but if you decide to call it a trial, then that's fine, then you can ask questions as to why that testimony didn't come out. Is that acceptable?
> >
> > [DEFENSE] Yes, Your Honor....
>
> Aplee. Supp.App., Vol. I, at 21.

*C. Reasonableness of Sentence*

[3] Finally, Mr. Ashley argues that his sentence is disproportionate to the crime of possessing a firearm because it was inadvertent possession on a camping trip and not the kind of violent use that Congress sought to punish.

**\*700** We review a federal criminal sentence for reasonableness, giving deference to the district court under "the familiar abuse-of-discretion standard." *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 594, 169 L.Ed.2d 445 (2007); *see United States v. Smart,* 518 F.3d 800, 805 (10th Cir.2008) (noting that it is now "well settled that we review a district court's sentencing decisions solely for abuse of discretion"). Reasonableness "has both procedural and substantive components." *United States v. Atencio,* 476 F.3d 1099, 1102 (10th Cir.2007); *see*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.)))**

*Gall,* 128 S.Ct. at 597 (noting that a reviewing court "must first ensure that the district court committed no significant procedural error" and then should "consider the substantive reasonableness of the sentence").

We review a sentence's length for substantive reasonableness. *See United States v. Hamilton,* 510 F.3d 1209, 1217-18 (10th Cir.2007) ("In evaluating the substantive reasonableness of a sentence, we ask whether the length of the sentence is reasonable considering the statutory factors delineated in 18 U.S.C. § 3553(a)."), *cert. denied,* --- U.S. ----, 128 S.Ct. 1922, 170 L.Ed.2d 782 (2008). "[W]e accord a properly calculated Guidelines sentence a presumption of substantive reasonableness." *United States v. Hernandez,* 509 F.3d 1290, 1298 (10th Cir.2007); *see Gall,* 128 S.Ct. at 597 ("If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness.").

Mr. Ashley argues that the firearm was found with camping supplies when he was on a camping trip and that type of inadvertent possession does not justify the sentence imposed. More specifically, Mr. Ashley contends that his offense conduct is "vastly different from the type of conduct contemplated by Congress in enacting legislation to prevent violent acts by felons owning handguns." Aplt. Op. Br. at 22. The district court also received numerous letters from Mr. Ashley's family and friends describing his many positive characteristics. Although these facts might have led a district court to consider granting a variance, a district court is not required to reduce a sentence simply because it could have justified such a reduction. *United States v. Mares,* 441 F.3d 1152, 1161 (10th Cir.2006), *cert. denied,* 551 U.S. 1162, 127 S.Ct. 3048, 168 L.Ed.2d 757 (2007).

**\*\*7** There are a number of facts that support the reasonableness of Mr. Ashley's sentence under 18 U.S.C. § 3553(a). Mr. Ashley has a lengthy criminal history spanning more than three decades. He was convicted of crimes on seven separate occasions, many involving firearms and some involving

violence. Specifically, four of his previous convictions involved firearms, and two of those four were for essentially the same offense at issue here. One of his convictions was for felony burglary of a dwelling, an offense which ordinarily is deemed to be a "crime of violence" under federal statutes and the Guidelines.[FN5] And another offense involved a misdemeanor battery of his ex-wife, during which Mr. Ashley allegedly kicked her and threatened to do further damage to her; specifically, to "pound" her "until this thing is over." Aplee. Supp.App., Vol. II, ¶ 30 at 10 (Presentence Report).

> FN5. *See United States Sentencing Guidelines Manual § 4B1.2* (defining "crime of violence" to include "burglary of a dwelling"). *Compare* 18 U.S.C. § 16(b) (defining "crime of violence"), *with Leocal v. Ashcroft,* 543 U.S. 1, 10, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (noting that § 16(b)'s definition covers burglary "because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime").

**\*701** The district court could have reasonably determined under § 3553(a) that in light of Mr. Ashley's criminal history and characteristics, the 51-month sentence was necessary (among other things) "to protect the public from further crimes" of Mr. Ashley, "to promote respect for the law," and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C). Even if we were to accept Mr. Ashley's characterization of Congress's purpose in enacting the felon-in-possession statute, the district court could have reasonably concluded that Mr. Ashley is exactly the kind of violence-prone felon that Congress wanted to keep away from firearms.[FN6] Thus, we have no difficulty concluding that Mr. Ashley's sentence is substantively reasonable.

> FN6. We note, moreover, the district court found that Mr. Ashley had willfully obstructed justice by offering perjurious testimony at trial. This is another factor that it

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.)))**

could have reasonably found militated in favor of a within-Guidelines sentence of 51 months.

### III. *CONCLUSION*

We conclude that the district court did not err in rejecting Mr. Ashley's *Brady* challenge to the government's disclosure of three new witnesses for his retrial and in imposing limitations on the scope of cross-examination of those witnesses. Furthermore, we conclude that Mr. Ashley's sentence is substantively reasonable. Accordingly, the district court's judgment and sentence is

**AFFIRMED.**

C.A.10 (N.M.),2008.
U.S. v. Ashley
274 Fed.Appx. 693, 2008 WL 1766868 (C.A.10 (N.M.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.