# EXHIBIT  217

## Supplemental Declaration of Kathy Trotter

I, Kathy Trotter, declare as follows:

I am Kenneth Barrett's paternal first cousin.  My father is Ike Barrett.  Kenny's father is my uncle.

The investigator who helped me prepare my first declaration recently called me to ask some additional questions.

I put my heart into Kenny's state cases and offered to help out the federal lawyers too, but they never took me up on it.  I spent a lot of time with John Echols.  I've even been to his house in Jenks, outside of Tulsa, where we went through juror questionnaires together.  I also spent time with John's investigators from OIDS, Steve Leedy and Jack Stringer.  I helped them find witnesses.  I went to Arkansas with them to locate Tara Barrett, for example.

I never met Roseann Schaye or had much contact with Jack Gordon.  I didn't meet Bret Smith until the day I testified.  Roger Hilfiger never contacted me.  I would guess they asked me to testify because Kenny gave them my name, but I don't know.  They never told me what they wanted me to testify about.

Not one of the lawyers, including John Echols, ever talked to me about how important it was for the jury to get to know Kenny.  Roseann Schaye, a psychologist, I think, interviewed my father and my Aunt Elnora.  Elnora told me that Roseann told her it was to gather family history so that a jury would learn why Kenny was the way he was, understand his mental health and spare his life.  When I asked John about that, I recall he just said that

KT

Page 1 of 3

we could talk about that once it got to that point. Of course, it never did when he was on the case. I don't think my dad understood why Roseann wanted to know the things she did, but he talked to her anyway because he knew he was helping Kenny.

On several occasions, when I was with John or the investigators, I would comment about how hard Kenny's childhood was. I remember Steve Leedy once said to me, so he had a bad childhood, whatever. No one ever asked me for details or to talk about the family more. They would just kind of shrug. It was not the kind of thing that interested them.

Bret called me a few days before I testified, I think, anyway in enough time to make arrangements for someone to take care of my child. He didn't tell me to bring anything, family things, pictures, nothing. He didn't tell me what to think about, but of course I thought about what I could say that would help Kenny. I thought I would testify about how things were, so the jury could see a side of our family that wasn't as bad as the prosecution tried to make us look.

Bret asked me just a few questions when I got to Muskogee; we talked 10 or 15 minutes, tops. I can't remember what he asked me, but I was shocked when he asked me completely different questions when I was on the witness stand and none of the same ones he asked me before. The questions he asked didn't seem important; it was nothing to help the jury understand Kenny. I said in my first declaration that I thought my testimony was pointless. I'll say it again.

At the time of the trial, the lawyers never said that Kenny didn't want the family's help or for us not to testify about our lives and what we knew about our family history. If they had told me that, it wouldn't have been true. I talked to Kenny all the time. He wanted help from his family and friends. In a way, this was the closest our family had ever been—we would have

KT

Page 2 of 3

done anything to save Kenny's life, but nobody asked us to.  None of the lawyers ever asked for family records or for help in getting them, which I'm very good at because of my job serving process and because I know everyone over at the courthouse.

The only thing I know that Kenny and his attorneys disagreed about was some of the witnesses Kenny wanted to call and some he didn't that they did.  I know this from Kenny.  He asked me to try and get the lawyers to listen.  John Echols didn't want to hear it and neither did Bret Smith, who I must have told when he called me to testify.  Also, maybe during the guilt phase I had called him for Kenny, but he didn't listen.  And as I said, I called and offered to help before the trial began.  I can't remember who I talked to, but they never called me to ask me if I knew something or to do anything.

After my recent phone interview, the investigator called me back and read a draft of this declaration.  We fixed a couple of things on the phone and then he mailed it to me.  He asked me to read it carefully to make sure it is accurate.  I have and it is.

I declare, under penalty of perjury, that the foregoing 3-page declaration is true and correct.  Executed by me this __17th__ day of June 2010, in Sequoyah County, Oklahoma.

Kathy Trotter

KT