# EXHIBIT  218

**Supplemental Declaration of Leonard Post**
**re Supplemental Declaration of Toby Barrett**

I, Leonard Post, do declare:

I conducted a telephonic interview with Toby Barrett before drafting his supplemental declaration. I then called Mr. Barrett and slowly read the draft back, making minor edits suggested by him as we went along.

I then had the Federal Defender's office send Mr. Barrett his declaration via US Postal Service, Priority Mail, Postage Prepaid along with a prepaid self addressed Federal Express return envelope. Unfortunately, the declaration reached Mr. Barrett on the day he had already left for his bi-weekly shift on an oil rig in the Gulf of Mexico. He will be returning to his home in Sallisaw, Oklahoma, on July 1, 2010.

I have attached an unsigned copy of his declaration to mine. It is a true and correct copy of the one sent Mr. Barrett and the one he has agreed to sign on July 1st because it is truthful rendition of what we discussed and what was read to him.

I declare, under penalty of perjury, that this 1-page declaration is true and correct. Executed by me, this 29 day of June 2010 in New York County, New York.

Leonard Post
NYS Investigator's License #11000145413

## **Supplemental Declaration of Toby Barrett**

I, Toby Barrett, declare the following:

I am Kenny Barrett's son, his only child.

I signed a declaration early last year. The investigator who interviewed me many times to gather the information for that declaration called me on June 5, 2010 and told me he had a few more questions for me.

He asked me if Mr. Hilfiger spoke to me about my family history. I told him that Mr. Hilfiger spoke to me once, for a very short time, but it wasn't about my family. Mr. Hilfiger told me he wasn't sure if he was going to call me to testify.

The investigator then read me the following paragraph, which he said was from my previous declaration and asked me if it was accurate. I said that it was.

"I spoke to Mr. Hilfiger once, I'm not sure where, and asked him if he was going to want me to testify at the trial. He said he was weighing whether it would be helpful for my dad or not, but that he expected I would. He never asked me about my father's mental problems, my home life or about me or my mom. I never spoke to him again."

Mr. Hilfiger never talked to me about his plans for defending my dad or for saving my dad's life. I can't remember where we spoke or put a time to it except that it was sometime before my dad's federal trial.

I spoke to Mr. Echols, my father's state lawyer, once for a very short time. It was before my dad's first trial. It might have been in court. It might have been somewhere else. I don't remember it being arranged, but it could have been. I can't remember one thing we talked about. It could have been just small talk. We never talked about my family. To the best of my

TB                                                                                      Page 1 of 2

recollection, nobody ever talked to me about my family in regards to my father's case until the investigator who gathered the information for these declarations did.

The investigator asked me if I had spoken to Bret Smith, Roseanne Schaye or Jack Gordon. If I did I don't recall it. I felt bad that I couldn't remember talking to them so I asked the investigator if they were saying that they had talked to me and he said no, that he hadn't heard that they were saying that. I felt better.

I have talked to my dad many times since he was arrested. He never once said he didn't want my help or for the family not to get involved in the case. None of the lawyers ever told me he said that. I have never heard him say he didn't want the family to get involved in his defense or in saving his life. My grandma, my dad's mother, never told me that he didn't want her involved either. I always felt just the opposite, that he wanted our help. I didn't know how to help him. I don't think anybody in the family did.

The investigator called me again a few days after this last interview and read this to me. I told him it was accurate. Then he sent it to me to read over. I have read it carefully and it says what I said to the investigator.

I declare, under penalty of perjury, that the foregoing 2-page declaration is true and correct.

Executed by me this _____ day of July 2010, in Sequoyah County, Oklahoma.

_____
Toby Barrett