**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| KENNETH EUGENE BARRETT, | ) | |
| | ) | |
| Petitioner/Defendant, | ) | DEATH PENALTY CASE |
| | ) | |
| vs. | ) | Case No. 6:09-cv-00105 JHP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent/Plaintiff. | ) | |

---

**PETITIONER'S MOTION TO ALTER OR AMEND JUDGMENT
(Doc. Nos. 214, 216) and BRIEF IN SUPPORT**

---

DANIEL J. BRODERICK, #89424
Federal Defender
TIVON SCHARDL, Fla. Bar No. 73016
Assistant Federal Defender
JOAN M. FISHER, Idaho Bar No. 2854
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: (916) 498-5700

DAVID B. AUTRY, OBA #11600
Attorney at Law
1021 N.W. 16th Street
Oklahoma City, Oklahoma 73106-6405
Telephone: (405) 521-9600

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STANDARD GOVERNING APPLICATION OF FED. R. CIV. P. 59(e) . . . . . . . . . . . 3

III. THE COURT'S OPINION DEMONSTRATES JUDGE PAYNE'S INABILITY TO ADJUDICATE CLAIMS WITHOUT BIAS OR PARTIALITY SUCH THAT HE SHOULD HAVE RECUSED HIMSELF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A. The Court Has Treated Mr. Barrett Different From Similarly Situated Litigants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B. The Court Evidenced Its Bias Towards Mr. Barrett In Its Written Opinion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. THE COURT COMMITTED LEGAL ERROR BY ENGAGING IN SUBJECTIVE ANALYSIS AND NOT ALLOWING FOR FACTUAL DEVELOPMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A. The Court Erred by Failing to Conduct an Evidentiary Hearing . . . . . . . . . . . . . 10

    B. Specific Examples of the Court's Wrongful Use of Subjective Analysis or its Own Recollection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        1. Judicial Interference with Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

V. THIS COURT ERRED BY DENYING MR. BARRETT A CERTIFICATE OF APPEALABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Petitioner's Motion to Alter or Amend Judgment
(Doc. Nos. 214, 216) and Brief in Support
-i-
Barrett v. United States
Case No. 6:09-cv-00105-JHP

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Abdul-Kabir v. Quarterman*, 553 U.S. 233 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Aron v. United States*, 291 F.3d 708 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Barefoot v. Estelle*, 463 U.S. 880 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Bracy v. Schomig*, 286 F.3d 406 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.*, 680 F.3d 1194 (10th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . 3

*Ellis v. United States*, 313 F.3d 636 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Florida v. Nixon*, 543 U.S. 175 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Fontaine v. United States*, 411 U.S. 213 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hicks v. Town of Hudson*, 390 F.2d 84 (10th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Murchison*, 349 U.S. 133 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lavespere v. Niagra Machine & Tool Works*, 910 F.2d 167 (5th Cir. 1990) . . . . . . . . . . . . . . 3, 4

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988) . . . . . . . . . . . . . . . . . . . . 16

*Liteky v. United States*, 510 U.S. 540 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Machibroda v. United States*, 368 U.S. 487 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Massaro v. United States*, 538 U.S. 500 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Miller-El v. Cockrell*, 537 U.S. 322 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Mills v. Maryland*, 486 U.S. 367 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Moreno v. Dretke*, 450 F.3d 158 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Murchu v. United States*, 926 F.2d 50 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Porter v. McCollum*, ___ U.S. ___, 130 S. Ct. 447 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Slack v. McDaniel*, 529 U.S. 473 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Smith v. Texas*, 543 U.S. 37 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Stead v. United States*, 67 F. Supp. 2d 1064 (D.S.D. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Taylor v. Hayes*, 418 U.S. 488 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tennard v. Dretke*, 542 U.S. 274 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Townsend v. Sain*, 372 U.S. 293 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*Tumey v. Ohio*, 273 U.S. 510 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Becker,* 109 Fed. Appx. 264, 268, 2004
WL 1949154 at *3 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States v. Duran-Salazar,* 307 Fed. Appx. 209, 211, 2009
WL 74476 at *2 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Greenspan*, 26 F.3d 1001 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Lopez*, 100 F.3d 113 (10th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Pearson*, 203 F.3d 1243 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Ringer*, 139 Fed. Appx. 969, 973, 2005
WL 1666105 at * 4 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Weeks*, 653 F.3d 1188 (10th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ward v. Village of Monroe*, 409 U.S. 57 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Warren v. American Bankers Insurance*, 507 F.3d 1239 (10th Cir. 2007) . . . . . . . . . . . . . . . . . 3

*White v. New Hampshire Department of Employment Sec.*, 455 U.S. 445 (1982) . . . . . . . . . . . . 3

*Wiggins v. Smith*, 539 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Williams v. Taylor*, 529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wilson v. Sirmons*, 536 F.3d 1064 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wood v. Georgia*, 450 U.S. 261 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

## FEDERAL STATUTES

28 U.S.C. § 2253(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 22

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 2254(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

28 U.S.C. §2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 25

28 U.S.C. § 2255, ¶ 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

28 U.S.C. § 2255(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

28 U.S.C. § 2255, filed December 24, 2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 455(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 59 (e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| KENNETH EUGENE BARRETT, | ) | |
| | ) | |
| Petitioner/Defendant, | ) | DEATH PENALTY CASE |
| | ) | |
| vs. | ) | Case No. 6:09-cv-00105 JHP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent/Plaintiff. | ) | |

---

**PETITIONER'S MOTION TO ALTER OR AMEND JUDGMENT
(Doc. Nos. 214, 216) and BRIEF IN SUPPORT**

---

Petitioner/Defendant, Kenneth Eugene Barrett, through undersigned counsel and pursuant

to Fed. R. Civ. P. 59 (e), moves to alter or amend the Court's Opinion and Order (Doc. 214) and

Judgment (Doc. 216)[1] entered in this case on August 16, 2012.  In support of this Motion, Mr.

Barrett states the following:

## I.    INTRODUCTION

Contrary to this Court's assertion otherwise,[2] Mr. Barrett submits the Amended Motion to

Vacate, Set Aside or Correct a Sentence Pursuant to 28 U.S.C § 2255, filed December 24, 2009,

presented a myriad of factual and legal issues.  Mr. Barrett supported his factual averments with

over 200 exhibits.  Pursuant to Rule 7 of the Rules Governing § 2255 Proceedings, this Court

---

[1]    Unless otherwise noted, cites to "Doc." refer to documents in Case No. 09-cv-105-JHP.

[2]    "While the record in this case appears voluminous, other than being a death penalty
proceeding this was not a complex case."  (Doc. 214 at p. 21).

expanded the record to include many of those exhibits.  Pursuant to the Court's order Mr. Barrett supported his Motion with legal arguments in a separately filed brief.  This Court's summary disposition of the claims overlooked or misapprehended issues of fact and law.   Therefore, it is appropriate that this Court reconsider, alter or amend its opinion and judgment.

This Court ruled on Mr. Barrett's Motion on August 16, 2012, in a 191 page Opinion. (Doc. 214).  In its Opinion, this Court failed to acknowledge or impartially evaluate the strength of evidence and argument presented by Mr. Barrett; instead, the Court made conclusory determinations that resulted in serious, substantial and troubling errors of law and fact.  In purporting to resolve without a hearing matters involving the District Judge's administrative actions, his motivations in carrying out those actions, and the influence of those actions on Mr. Barrett's counsel and defense, this Court lacked impartiality.

This Motion to Alter or Amend will focus on three areas.  First, the Motion will address Judge James H. Payne's demonstrated inability to judge impartially the credibility of witnesses who have testified in declarations about his off-the-record statements, and to address in other ways the motivations and effects of his own administrative actions.  Second, the Motion will discuss the Court's failure to allow for factual development of Mr. Barrett's claims as the law requires, instead engaging in a subjective analysis of the evidence presented.  This issue will be discussed along with the Court's wrongful denial of Mr. Barrett's request for an evidentiary hearing.  Finally, Mr. Barrett will address the Court's refusal to grant a Certificate of Appealability (COA),  pursuant to 28 U.S.C. § 2253(c), as to each of his claims,

Mr. Barrett submits, with respect to each of the claims discussed herein, that the Court has committed either manifest errors of law or fact or failed to recognize or fully consider the

Petitioner's Motion to Alter or Amend Judgment
(Doc. Nos. 214, 216) and Brief in Support                    2                    Barrett v. United States
                                                                                 Case No. 6:09-cv-00105-JHP

arguments that Mr. Barrett presented in his § 2255 Motion. Mr. Barrett emphasizes, however, that in the instant Motion he is not addressing each and every claim that he set forth in his § 2255 Motion. Mr. Barrett continues to assert that all claims brought forth in his § 2255 are meritorious. Mr. Barrett's decision not to address any particular claim in this Motion constitutes neither a waiver nor a withdrawal of that claim.

## II.    STANDARD GOVERNING APPLICATION OF FED. R. CIV. P. 59(e)

The Supreme Court has noted that Fed. R. Civ. P. 59(e) was adopted "to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982) (internal quotations omitted); *see also Warren v. American Bankers Ins.,* 507 F.3d 1239, 1245 (10th Cir. 2007) ("the purpose of Rule 59 is to provide the district court an opportunity to correct its own errors"). A Rule 59(e) motion is appropriate "to correct manifest errors of law or to present newly discovered evidence." *Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc.,* 680 F.3d 1194, 1200 (10th Cir. 2011) (citations omitted). A district court's failure to notice or consider arguments or authorities that justify relief also constitutes an appropriate ground to grant a motion to amend judgment if these failures affected the correctness of the court's decision. *See, e.g., Hicks v. Town of Hudson,* 390 F.2d 84, 87-88 (10th Cir. 1967).

A district court has broad discretion to grant a motion to alter or amend judgment. *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 174 (5th Cir. 1990) (*overruled on other grounds*). Moreover, Rule 59(e) does not set forth any particular grounds for relief. *Id.* Rather,

Petitioner's Motion to Alter or Amend Judgment
(Doc. Nos. 214, 216) and Brief in Support                          3                          Barrett v. United States
Case No. 6:09-cv-00105-JHP

Rule 59(e) relief is appropriately considered after weighing relevant circumstances on a case-by-case basis. *Id.*

### III. THE COURT'S OPINION DEMONSTRATES JUDGE PAYNE'S INABILITY TO ADJUDICATE CLAIMS WITHOUT BIAS OR PARTIALITY SUCH THAT HE SHOULD HAVE RECUSED HIMSELF

Throughout these proceedings Mr. Barrett has objected to Judge Payne attempting to adjudicate claims that involve his administrative and other extra-judicial actions. These issues were documented in Mr. Barrett's Motion to Disqualify and Recuse filed on May 29, 2009. (Doc. 45). In that Motion, Mr. Barrett set forth his claims that the Court *inter alia*: 1) engaged in *ex parte* communications with prosecutors; 2) made administrative decisions to Mr. Barrett's disadvantage, including decisions regarding approval of funds for his case; and 3) relied on evidence outside of the record. The Court denied those allegations and denied Mr. Barrett's motion. (Doc. 66). In doing so, the Court stated that its earlier actions regarding counsel and defense resources did not reflect any prejudgment of Mr. Barrett's claims. *Id.* at 19. However, the Court's opinion rejecting Grounds 1 and 3 relies extensively on its prior rulings as virtually *ipso facto* dispositive of Mr. Barrett's allegations. Opinion (Doc. 214) at 22-34.

As stated in the opinion of Professor Monroe H. Freedman, appended hereto as Exhibit A, this Court's decision presents evidence that would cause any reasonable person to question its impartiality. Recusal was required prior to adjudication. 28 U.S.C. § 455(a). Professor Freedman is perhaps this Nation's foremost authority on the law of lawyers' and judicial ethics. *See* App. A to Exh. A. After reviewing the relevant allegations and this Court's manner of evaluating them, Professor Freedman concluded that recusal was required prior to adjudication. The opinion should be withdrawn.

Petitioner's Motion to Alter or Amend Judgment
(Doc. Nos. 214, 216) and Brief in Support                    4                    Barrett v. United States
Case No. 6:09-cv-00105-JHP

The fair trial guarantees of the Due Process Clause of the Fifth Amendment encompass a litigant's right to have "a neutral and detached judge" preside over judicial proceedings. *Ward v. Village of Monroe*, 409 U.S. 57, 62 (1972). In *In re Murchison*, 349 U.S. 133 (1955), the Supreme Court stated:

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. . . . Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, "justice must satisfy the appearance of justice."

*Id.* at 136 (citations omitted). So important is this constitutional guarantee that its denial is not subject to the harmless error rule. *See, e.g., Tumey v. Ohio*, 273 U.S. 510 (1927); *Bracy v. Schomig*, 286 F.3d 406, 414 (7th Cir. 2002) ("There is no harmless error analysis relevant to the issue of judicial bias.").

Title 28 § 455(a) provides that disqualification of a United States judge is warranted not only when there is actual bias or prejudice but also when "his impartiality might reasonably be questioned." The goal of Section 455(a) is to avoid even the appearance of partiality. *See Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995). "The test in this circuit is 'whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.'" *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993) (citations omitted); see also *United States v. Greenspan,* 26 F.3d 1001, 1005 (10th Cir. 1994) (the statute imposes on the trial judge "a continuing duty to ask himself what a reasonable person, knowing all the relevant facts, would think about his impartiality").

Whether recusal is required is determined by an objective standard that considers what a reasonable person might believe.  As summarized by the Supreme Court:  "[W]hat matters is not the reality of bias or prejudice but its appearance.  Quite simply and quite universally, recusal was required [pursuant to § 455(a)] whenever 'impartiality might be questioned.'"  *Liteky v. United States*, 510 U.S. 540, 548 (1994) (citation omitted).  A judge has a continuing duty to recuse under § 455(a) if sufficient factual grounds exist to question the judge's impartiality.  *United States v. Pearson,* 203 F.3d 1243, 1277 (10th Cir. 2000) (*citing Cooley,* 1 F.3d at 992–93).

Here, recusal is required because a reasonable person would expect a court to treat all similarly situated litigants the same.  That has not happened in this case.  The Court has treated Mr. Barrett differently by erecting unreasonable barriers throughout the filing process and by exhibiting bias throughout the written opinion.

### A.    The Court Has Treated Mr. Barrett Different From Similarly Situated Litigants

Mr. Barrett submits that this Court's recent evaluation, without a hearing, of witness accounts of off-the-record discussions with Judge Payne continues a well documented pattern of this Court making rulings on matters in which it has an unacknowledged interest or bias.  The decision is similar to the one vacated in *Murchu v. United States*, 926 F.2d 50, 57 (1st Cir. 1991), where the court held a sentencing judge should not adjudicate factual allegations involving off-the-record conversations with the judge.  *See also Ellis v. United States*, 313 F.3d 636, 641-42 (1st Cir. 2002) (trial judge was correct to recuse himself from consideration of 2255 motion's claim of judicial bias and improper conduct).

Among the indicia of bias in this Court's decision is the false and denigrating characterization of Mr. Barrett's claims, *e.g.*, Opinion (Doc. 214) at 22, and attacks on his counsel. As shown in the material considered by Professor Freedman, these gestures are the culmination of a pattern. Previously, this Court arbitrarily required that Mr. Barrett use the form proscribed by Rule 2(c) of the Rules Governing Section 2255 Proceedings to file his § 2255 Motion, file the Motion and Brief in Support separately, and ask leave of court to file pleadings in excess of 25 pages. These have not been imposed on other similarly situated persons. *See* Exh. B (Decl. Tivon Schardl and Appendix thereto, attached). While purporting to be concerned about the volume of Mr. Barrett's pleadings and the time consumed by amendments, this Court required months of unnecessary work splitting factual averments from legal arguments into two lengthy documents no other similarly situated person in this District was required to file for the preceding decade or more. Reasonable people would consider the Court's contradictory actions evidence of partiality against Mr. Barrett or his counsel.

On September 25, 2009, Mr. Barrett filed an Amended Motion to Vacate, Set Aside or Correct Sentence Pursuant to § 2255. (Doc. 70). On September 29, 2009, this Court entered an order to show cause why the court should allow Mr. Barrett to amend his § 2255 Motion. (Doc. 74). On October 6, 2009, the Court conducted a hearing on its show cause order that began with the Court reading from a prepared statement detailing numerous criticisms of Mr. Barrett's pleadings and his counsel. (Doc. 85, Tr. 10/6/09 Hr'g at pp. 3-13). In particular, the Court chastised Mr. Barrett's counsel for failing to use a standard form to file the motion, for filing a pleading in excess of 25 pages without leave of court, for filing both the motion and brief in support in the same pleading, and for failing to use the exact language set forth in Rule 2 of the

Rules Governing § 2255 Motions in the verification. *See id.* The Court also complained about the form of Mr. Barrett's requests to seal exhibits and requests for discovery and an evidentiary hearing. *See id.* The Court berated Mr. Barrett's counsel as follows:

> While this Court doesn't question the rules that require courts to construe *pro se* litigants complaints liberally due to their lack of legal training, this is not such a case. Rather, this Court appointed counsel who were represented to this Court as being well-qualified death penalty practitioners. If this Court were dealing with a *pro se* petitioner, it would understand that the petitioner had difficulty understanding the court rules and procedures. Yet, this Court is concerned that counsel does not seem to understand the implications of the statute of limitations issues, or that they must comply with the rules governing Section 2255 proceedings and the local rules of this court.

*Id.* at p. 7. The Court then ordered Mr. Barrett to re-file his § 2255 Motion in 20 days on the standard form and file a Brief in Support of the Motion 60 days thereafter. *See id.* at p. 11.

Mr. Barrett showed this Court's statements misrepresented the standard practice before this Court in the similarly situated context of capital habeas petitions filed pursuant to 28 U.S.C. § 2254. Exh. B.

This Court's CM/ECF treats § 2254 and § 2255 cases as the same. The practice of § 2254 petitioners represented by experienced counsel is consistent with the object and purpose of the drafters of the form who intended it as an "[a]dministrative convenience" that would minimize the number of "lengthy and often illegible petitions, arranged in no logical order" submitted by prison inmates who have no right to counsel. R. Gov. § 2254 Cases 2, Advisory Committee Notes. That the form is primarily intended for use by those proceeding *pro se* is confirmed in the instructions to the form available on this Court's website which cautions those under sentence of death that they are entitled to counsel, implying that they should not file the form on their own behalf.

Petitioner's Motion to Alter or Amend Judgment
(Doc. Nos. 214, 216) and Brief in Support                    8                    Barrett v. United States
                                                                                  Case No. 6:09-cv-00105-JHP

There is no rationale explanation for the Court requiring Mr. Barrett to file his § 2255

Motion on the *pro se* form while not requiring others to do so.

**B.      The Court Evidenced Its Bias Towards Mr. Barrett In Its Written Opinion**

Mr. Barrett acknowledges that judicial rulings are in most instances immune from

challenge under § 455. *Liteky*, *supra*. However, as in *Murchu*, where a judge purports to

evaluate the credibility of witnesses – in this case including two third-parties, the Federal

Defenders for the Northern and Western Districts of Oklahoma – without a hearing, there is at

least an appearance of bias that requires recusal. Exh. A. In its Opinion, the Court continually

disparages Mr. Barrett and his counsel.

First, the Court complains throughout the opinion regarding the fact that Mr. Barrett

"expanded the record to voluminous proportions." Opinion (Doc. 214) at p. 1, 20. The Court

stated:

> Despite the similarities in the "dump-it-all-in" approach which has been taken in
> this case with *pro se* filings, this is not a case in which the original and amended
> timely filed motions were filed by a *pro se* litigant and the subsequent amendment
> was filed after the statute of limitations expired. Rather, all of the pleadings filed
> by the petitioner herein were filed by counsel who were presented to this court as
> "extremely well-qualified" in federal habeas litigation. *In the opinion of this*
> *court, many of the documents have not been submitted in a good faith attempt to*
> *direct the court to the legitimate issues in this case, but rather as a way to slow*
> *the disposition process*.

(Doc. 214 at p. 152, n.209) (emphasis added). This Court conversely required Mr. Barrett to file

a petition and brief other similarly situated petitioners were not required to file.

There is no basis in the record for this Court's assertion that the case is simpler than other

federal death penalty cases. This is a federal death penalty case in which there were two prior

state court jury trials. The record of the federal jury trial below consists of almost 6000 pages,

notwithstanding pretrial proceedings.  Following the trial, there was an appeal in the United

States Court of Appeals for the Tenth Circuit.  Yet, despite this record, not only does the Court

complain about the size of the pleadings, the Court is annoyed that Mr. Barrett failed to ask for

leave to file his § 2255 Motion in excess of twenty-five pages. The Court's characterization of

this case is evidence of bias against finding error in the administrative actions of Judge Payne

prior to trial.

Recusal is required where a judge has become so embroiled in conflicts with counsel that

a reasonable person would think compromised the judge's ability to be impartial.  *Taylor v.

Hayes*, 418 U.S. 488, 501 (1974).  This Court previously required Mr. Barrett's counsel to

perform tasks not required of similarly situated counsel.  This Court required Mr. Barrett's

counsel to file a lengthy brief justifying the filing of sealed documents or redactions.  The Court

accepted those documents for filing then found they or others were not filed in good faith.  The

Court's recent summary finding came without notice of specifics and with no prior notice of the

concern or opportunity to be heard.  Such a summary finding, alone or viewed together with the

other examples described in the record, would lead a reasonable person to question this Court's

impartiality.

## IV.    THE COURT COMMITTED LEGAL ERROR BY ENGAGING IN SUBJECTIVE ANALYSIS AND NOT ALLOWING FOR FACTUAL DEVELOPMENT

### A.    The Court Erred by Failing to Conduct an Evidentiary Hearing

Mr. Barrett requested an evidentiary hearing in this case in his § 2255 Motion (Doc. 95 at

pp. 400-401) and then filed a separate request for an evidentiary hearing on March 1, 2010 (Doc.

Petitioner's Motion to Alter or Amend Judgment
(Doc. Nos. 214, 216) and Brief in Support                    10                    Barrett v. United States
Case No. 6:09-cv-00105-JHP

150), which the Court denied on March 29, 2010. (Doc. 157). This Court's denial of an evidentiary hearing constituted a manifest error of law.

The standard for granting an evidentiary hearing in a § 2255 case is set out in 28 U.S.C. § 2255, which states: "Unless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255, ¶ 2; *accord United States v. Lopez,* 100 F.3d 113, 119 (10th Cir.1996). As the plain text of the statute makes clear, there is a presumption in favor of holding an evidentiary hearing in a § 2255 proceeding: "*Unless* the motion and the files and the records of the case *conclusively show that the prisoner is entitled to no relief*, the court *shall . . .* grant a prompt hearing thereon . . ." (emphasis added).

Indeed, Congress intended that the standard for obtaining an evidentiary hearing in a § 2255 proceeding be a liberal one, a fact which is borne out by the legislative history of this statute. Prior to the passage of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), the standard governing the granting of evidentiary hearings in federal court for both §§ 2254 and 2255 proceedings was set out by *Townsend v. Sain*, 372 U.S. 293, 312 (1963): "Where the facts are in dispute, the federal court in habeas corpus *must* hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." (Emphasis added).

When Congress passed AEDPA, it made revisions to both § 2255 and § 2254, but those revisions differed as to the evidentiary hearing provisions of the respective statutes. With respect to § 2254 proceedings, Congress legislatively modified the *Townsend* standard and severely

limited a federal district court's discretion to even grant an evidentiary hearing on a § 2254 petition. *See* 28 U.S.C. § 2254(e)(2). The stated rationale for this change was that in a § 2254 proceeding, a petitioner has purportedly already had the opportunity for an evidentiary hearing as part of the state court post-conviction proceedings, so principles of comity and federalism required deference to findings of fact made by the state courts.

Congress however, placed no such similar limitations on the standard for granting an evidentiary hearing in § 2255 proceedings, as is evident by comparing the text of § 2254(e) with § 2255. *See Stead v. United States*, 67 F. Supp. 2d 1064, 1074 n.5 (D.S.D. 1999) ("Although the AEDPA modified, to some extent, the *Townsend* standard for obtaining evidentiary hearings in 28 U.S.C. § 2254 cases, Congress made no parallel changes in § 2255 practice and evidently chose to leave intact the *Townsend* standard and to create a discrepancy between the right to a hearing in § 2254 and § 2255 cases."). As a result, Mr. Barrett's request for an evidentiary hearing is governed by the more liberal pre-AEDPA standard articulated in *Townsend*, which states that an evidentiary hearing must be granted if there are disputed issues of fact in the proceeding. This is even more so on claims which ordinarily cannot be resolved on the extant record because the allegation involves events and occurrences that took place outside the courtroom. *See Massaro v. United States*, 538 U.S. 500, 504-06 (2003).

The United States Supreme Court addressed the standard in this context in *Machibroda v. United States*, 368 U.S. 487 (1962). There, the Court remanded for an evidentiary hearing to determine whether the movant's plea was involuntary because it was allegedly induced by promises made by the prosecuting attorney as to the length of the sentences that would be imposed. *Id.* at 489. The movant and the prosecutor filed conflicting affidavits on the factual

matter of whether such promises were made.  368 U.S. at 490-91, 492.  The district court decided

-- without a hearing -- that the movant's allegations were false and denied the § 2255 motion.  *Id.*

at 492.  The Supreme Court held that the district court did not act in conformity with the

provisions of § 2255.  As the Court stated:

> This was not a case where the issues raised by the motion were conclusively
> determined either by the motion itself or by the "files and records" in the trial
> court.  The factual allegations contained in the petitioner's motion and affidavit,
> and put in issue by the affidavit filed with the Government's response, related
> primarily to purported occurrences outside the courtroom and upon which the
> record could, therefore, cast no real light.  Nor were the circumstances alleged of a
> kind that the District Judge could completely resolve by drawing upon his own
> personal knowledge or recollection.

368 U.S. at 494-95.  The Court further noted:  "'The Government's contention that [movant's]

allegations are improbable and unbelievable cannot serve to deny him an opportunity to support

them by evidence.  On this record it is his right to be heard.'"  *Id.* at 495 (citation omitted); *see*

*also United States v. Weeks,* 653 F.3d 1188, 1206 (10th Cir. 2011) (overturning district court's

denial of evidentiary hearing because petitioner's allegations regarding the voluntariness of his

plea and effectiveness of counsel, taken as if true, would entitle him to relief); *United States v.*

*Duran-Salazar,* 307 Fed. Appx. 209, 211, 2009 WL 74476 at *2 (10th Cir. 2009) (overturning

district court's denial of evidentiary hearing, finding that "it may be that [defendant] cannot

ultimately prevail; however, the allegations in his motion coupled with the difficulty the jury had

in reaching a verdict are sufficient to entitle him to a hearing"); *United States v. Ringer*, 139 Fed.

Appx. 969, 973, 2005 WL 1666105 at * 4 (10th Cir. 2005) (overturning district court's denial of

evidentiary hearing, finding "it is impossible to tell whether [defendant] should prevail on his

Petitioner's Motion to Alter or Amend Judgment
(Doc. Nos. 214, 216) and Brief in Support          13          Barrett v. United States
                                                              Case No. 6:09-cv-00105-JHP

ineffective assistance of counsel claim without the aid of an evidentiary hearing"); *United States v. Becker,* 109 Fed. Appx. 264, 268, 2004 WL 1949154 at *3 (10th Cir. 2004) (same).

Moreover, every inference must be drawn in Mr. Barrett's favor, particularly where, as here, Mr. Barrett has pled facts that, if true, would entitle him to relief, and yet, the district court has not granted an evidentiary hearing. See 28 U.S.C. § 2255 ¶ 2; *Townsend v. Sain*, 372 U.S. 293, 312-13 (1963) (requiring a hearing in federal habeas proceedings where the petitioner has alleged facts which, if proven, would entitle him to relief and where the district court has not resolved the merits of the factual dispute in a full and fair hearing); *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (vacated for an evidentiary hearing where, on the record, the court could not conclude "with the assurance required by the statutory standard 'conclusively show' that under no circumstances could the petitioner establish facts warranting relief under § 2255."); *Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002) ("The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only allege – not prove –  reasonably specific, non-conclusory facts that, if true, would entitle him to relief.").

Consistent with all the aforementioned statutory authority and legal precedent, this Court must vacate its denial of the § 2255 motion, allow discovery and grant an evidentiary hearing or alternative means of factual development in order that a factual record can be made as to Mr. Barrett's claims.

> **B.**     **Specific Examples of the Court's Wrongful Use of Subjective Analysis or its Own Recollection**
>
> **1.**     **Judicial Interference with Defense**

In denying Mr. Barrett's claim regarding judicial interference with defense counsel (Petitioner's Grounds 1 and 3), the Court found that Mr. Barrett did not show that the Court's decisions regarding appointment of counsel or funding deprived him of his constitutional rights. (Doc. 214 at p. 35). The Court gave no credence to the evidence Mr. Barrett submitted in support of this claim. Moreover, the Court improperly used its own subjective analysis or its own recollection in making this determination.

First, the Court addressed Mr. Barrett's claim that it showed preferential treatment to Mr. Hilfiger over Mr. Echols. The Court stated that it authorized a higher payment to Mr. Hilfiger because he was "assuming the role of lead counsel" and "this court encouraged [Mr. Hilfiger and Mr. Smith] to submit an amended budget request solely because, unlike Mr. Echols, they were unfamiliar with intimate details surrounding the previous state court trials." (Doc. 214 at p. 31).

The Court's reliance on these types of statements in denying Mr. Barrett's claim exceeds the scope of what it may properly rely upon in terms of its own recollections in adjudicating this claim. The underlying rationale is that a § 2255 court is empowered to take judicial notice of events that that same court observed in the course of presiding over the original criminal trial. However, this Court's explanations, or in its words, "observations," *id*., regarding its reasoning why it paid Mr. Hilfiger more money than Mr. Echols are not statements about events that did or did not occur at the trial, but rather findings that the Court is making about itself. These "observations" were never vetted in the record of the case, because the first time that the Court raised them was in its written Opinion. Mr. Barrett should be permitted to make appropriate inquiries of the Court so that this issue can be adequately developed on the record. This is the

Petitioner's Motion to Alter or Amend Judgment
(Doc. Nos. 214, 216) and Brief in Support                    15                    Barrett v. United States
Case No. 6:09-cv-00105-JHP

exact situation in which an evidentiary hearing is appropriate.  At such a hearing it would be inappropriate for Judge Payne to preside.  Exh. A; *Murcha, supra*.

This Court employed similarly flawed methods when discussing the budget for investigation: "[This] court, in carrying out its administrative functions in this case, attempted to get counsel to focus on exactly what would be needed in the way of experts in order to ensure that the requests were reasonable and necessary to provide fair compensation."  Opinion (Doc 214) at 32.  The Court is not relying on evidence in the record or even its own recollection; instead, the Court is giving an opinion or reason for its actions.  The Court is, in effect, testifying.  The extra-record accounts of witnesses to this Court's subjective views prior to trial, at a minimum, raise a material factual dispute as to whether Judge Payne's principle concern was financial as opposed to the interests of the defendant, *see Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864-65 (1988), and whether his expressed fiscal concern unduly influenced Mr. Hilfiger's acts and omissions, *see Wood v. Georgia*, 450 U.S. 261, 272-73 (1981).

Another example of this Court's erroneous reliance upon its subjective knowledge to adjudicate claims supported by the testimony of witnesses appears when it discusses why it made the decisions it did in appointing counsel.  Opinion (Doc 214) at 33 (stating, for example, that it considered that "Mr. Hilfiger and Mr. Smith were both active members of the CJA defense panel for the Eastern District of Oklahoma").  The Court is once again defending its actions rather than making factual determinations, and using its defense as a rationale for denying Mr. Barrett's claim.

Contrary to § 2255(b) and *Machibroda*, this Court either ignored or discredited the evidence Mr. Barrett presented in support of his claims without a hearing and, at times, in

reliance upon this Court's subjective view of its own motives.  For example, Mr. Barrett

submitted the declaration of Susan Otto, the Federal Public Defender for the Western District of

Oklahoma (Doc. 95, Petitioner's Exh. 54).  In her declaration, Ms. Otto set forth the

qualifications necessary to serve as lead counsel for a defendant in a federal capital case and her

interactions with the Court regarding appointment of counsel in this case.  The Court summarily

dismissed the Federal Defender's opinion as "ludicrous."  (Doc. 214 at p. 24, n.62).  This Court

substituted its own opinion that "Mr. Hilfiger was clearly 'learned in the law applicable to capital

cases,'" without stating a basis for that opinion.  *Id.* at p. 24.

Mr. Barrett also submitted the declaration of John Echols.  In a manner materially

indistinguishable from the actions of the district court in *Machibroda,* this Court opined that Mr.

Echols should have been able to try the case with little resources because "the underlying

incident had been the focus of two prior state court trials, [so] counsel should have been able to

utilize the factual investigations completed in the earlier cases." *Id.* at p. 32.  The Court gave no

indication that it considered Mr. Echols' statement:

> I explained to Judge Payne at the time that there were significant tasks that needed
> to be undertaken to prepare the case adequately for another trial.  For example,
> while the preliminary investigation begun by Roseann Schaye had identified
> certain evidence and avenues of investigation regarding potential mental state
> guilt and penalty phase defenses, significant additional investigation and expert
> consultation remained to be done.  Similarly, questions regarding the existence
> and role of a confidential informant in this case had not been resolved to my
> satisfaction by the conclusion of the state proceedings.  The federal authorities'
> decision to prosecute Mr. Barrett in a capital case therefore made it imperative for
> me to investigate the practices of the District 27 Drug Task Force including, but
> not limited to, their cultivation and reliance on purported informants or "snitch"
> witnesses.

(Doc 95, Petitioner's Exh. 34, Echols Decl. at p. 3).

Similarly, the Court jumped to the conclusion or improperly inferred that "[i]t became apparent very early in the budgeting of this case that Mr. Echols was attempting to be compensated for items that were improper." Opinion (Doc. 214) at p. 141. The Court made no such finding on the record at the time. Rather, the Court apparently relied upon Mr. Echols' inquiry as to whether he could seek compensation for traveling time if his assistant is reading to him in the car. *Id.* at 141-42. The Court fails to explain, however, how Mr. Echols' inquiries to the Court as to what activities are reimbursable constitute "attempts at improper compensation." Indeed, it would seem that if Mr. Echols was attempting to obtain improper compensation, the last thing he would do is ask the Court whether it was a proper expense.

Nor does the Court recognize Mr. Echols' account of compensation, as recited in his declaration:

> For example, payment vouchers I sent in for legal research would be cut in half. The judge believed I did not need to do much if any research on federal death penalty law because I was "learned counsel." The same was true for research I did on search and seizure issues. Simply stated, my fee requests and budgeting requests were not being approved, or were being approved for far less than the time I devoted to tasks that I and Federal Death Penalty Resource Counsel believed were reasonably necessary to prepare the case for trial.

(Doc 95, Petitioner's Exh. 34, Echols Decl. at p. 5).

Mr. Barrett submitted declarations from expert counsel regarding the prevailing professional norms in federal death penalty cases, cited and quoted numerous standards adopted by bar organizations, and provided evidence of the norms for compensation in federal death penalty cases. Although this Court received the declarations in evidence pursuant to Rule 7 of the Rules Governing § 2255 Proceedings, it then refused to consider them on grounds that they contained hearsay and did not cite the record in this case. Opinion (Doc. 214) at 177. Neither of

Petitioner's Motion to Alter or Amend Judgment
(Doc. Nos. 214, 216) and Brief in Support                    18                    Barrett v. United States
                                                                                   Case No. 6:09-cv-00105-JHP

those grounds has any basis in the law of ineffective assistance of counsel or § 2255(b).

Evaluation of ineffective-assistance claims requires consideration of objective evidence of

reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984). This Court did not

mention these guidelines for reasonableness and instead appeared to rely upon one judge's

subjective view of what was reasonable for this case.

In addition, the Court based its determination regarding prejudice on a subjective,

incomplete, and false evaluation of the proffered mitigation evidence. Opinion (Doc. 214) at

180-89. Except in its application of the improper "nexus" requirement discussed *infra*, this

Court did not expressly consider the vast majority of the mitigation Mr. Barrett proffered.

Without addressing the substance of the evidence favorable to Mr. Barrett, the Court did discuss

a portion of the mental health evidence. The Court states Mr. Barrett "failed to establish that the

introduction of this evidence [of his mental health problems] would not have been more negative

than positive," because it would have been accompanied by evidence of Mr. Barrett's drug use.

*Id.* at 188. There is no evidence in the record that evidence of Mr. Barrett's drug use (a) would

have introduced anything the jury did not already know, or (b) would have been considered

negatively by jurors. The Court appears to accept the proposition that the evidence would be

viewed negatively based upon the *ipse dixit* of the Government's lawyers, *id.* at 187, or the

conveniently stated opinion of trial counsel while simultaneously denying Mr. Barrett any

opportunity to cross-examine them. *Id.* at 188. As shown in the attached declaration of Scott E.

Sundby, the supposition that jurors would have placed negative value on evidence of Mr.

Barrett's drug use is demonstrably false. Exh. C.

*Strickland* requires reviewing courts to "proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision" whether to impose a death sentence. *Strickland*, 466 U.S. at 695. The Supreme Court and Tenth Circuit have relied upon scientific studies of juror decisionmaking in similar situations to ascertain the probable value evidence proffered in post-conviction proceedings. *Florida v. Nixon*, 543 U.S. 175, 192 (2004); *Wilson v. Sirmons*, 536 F.3d 1064, 1095 n.4 (10th Cir. 2008). This Court eschewed a search for objective evidence.

The Court also erroneously characterized the mitigation proffer as inconsistent, or in conflict, with the evidence presented at trial. Opinion (Doc. 214) at 180. The Court recounts the evidence presented at trial – omitting the damaging evidence the Government presented on cross-examination that Mr. Barrett diffused or rebutted in his post-conviction filings – and recounts the jurors' votes on mitigating circumstances. *Id.* at 180-85. Contrary to precedent requiring a cumulative evaluation of that evidence and the evidence Mr. Barrett proffered with his petition, *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000), this Court's discussion of the post-conviction evidence it did consider (much was ignored) contains no cumulative weighing. Opinion (Doc. 214) at 185-89. Rather, the Court states that many of the records that Mr. Barrett submitted "could have been used by the government to totally negate the jury's findings" in mitigation. *Id.* at 185. As Professor Sundby explains that analysis is based on an erroneous understanding of how jurors actually view such evidence. Exh. C.

In addition, the Supreme Court has held it is unreasonable – even after affording the petitioner an evidentiary hearing – to conduct a prejudice analysis in the manner of this Court's analysis. *Porter v. McCollum*, ___ U.S. ___, 130 S. Ct. 447, 455 (2009). If it is unreasonable for

a state court to reduce to irrelevance mitigation proffered in post-conviction after supposedly "negative" evidence had been tested in an adversarial hearing, there can be no question of this Court's error, given that its decision was limited to whether "the motion and the files and records of the case conclusively show[ed]" Mr. Barrett was not entitled to relief.  28 U.S.C. § 2255(b).

The Supreme Court's decision in *Porter* pointed to the relevance of Eighth Amendment law in a *Strickland* prejudice analysis, in particular the requirement that a capital sentencing jury must be permitted to consider any relevant mitigating factor.  130 S. Ct. at 454-55.  This Court violated that principle when it faulted Mr. Barrett for failing "to establish any nexus between the suffering of his relatives and any viable theory of mitigation."  Opinion (Doc. 214) at 188.  As a factual matter, the assertion is refuted by the record including, *inter alia*, Pet. Exh. 117.  As a legal issue, the Supreme Court has held it is error for a court to require such a nexus when evaluating the mitigation value of evidence.  *Abdul-Kabir v. Quarterman*, 553 U.S. 233, 246 (2007); *Smith v. Texas*, 543 U.S. 37, 45 (2004) (citing rejection of nexus notion in *Tennard v. Dretke*, 542 U.S. 274, 287 (2004)).  To the extent this Court's reference to a "viable theory of mitigation" referred to the supposed relative value of Mr. Barrett's proffered evidence compared with evidence the Government might have argued, its decision was contrary to *Strickland* and *Porter*.  To the extent this Court had in mind distinguishing between the theories of mitigation Mr. Barrett proffered and some unspecified understanding of mitigation that this Court subjectively considers "viable" its analysis was contrary to *Strickland* and the Eighth Amendment law discussed in *Abdul-Kabir* and *Tennard*.  As Professor Sundby points out in his attached declaration, this Court's view of what constitutes a viable theory of mitigation has no basis in objective fact.  Exh. C.

Petitioner's Motion to Alter or Amend Judgment
(Doc. Nos. 214, 216) and Brief in Support                21                Barrett v. United States
                                                                          Case No. 6:09-cv-00105-JHP

Professor Sundby points out another assumption underlying this Court's opinion that is both legally and factually wrong. This Court repeatedly adverts to supposition about how "the jury" would view mitigation evidence in its deficient performance analysis, Opinion (Doc. 214) at 187-88, and in its prejudice analysis. *Id.* at 188. As Professor Sundby points out, both *Mills v. Maryland*, 486 U.S. 367 (1988) and empirical findings of the Capital Jury Project support considering whether any individual jurors would have been moved by mitigation evidence. Exh. C. *Strickland* progeny that this Court did not mention also plainly require reviewing courts to consider whether "there is a reasonable probability that at least one juror would have struck a different balance" based upon the cumulative effect of the mitigation evidence adduced at trial and in post-conviction proceedings. *E.g.*, *Wiggins v. Smith*, 539 U.S. 510, 537 (2003).

## V.    THIS COURT ERRED BY DENYING MR. BARRETT A CERTIFICATE OF APPEALABILITY

At the conclusion of its 191-page opinion, the Court states "petitioner has failed to make a 'substantial showing' of the denial of any constitutional rights. 28 U.S.C. § 2253 (c)(2). Therefore, pursuant to Rule 11 of the Rules Governing § 2255 Proceedings, this court declines to issue a certificate of appealability." (Doc. 214 at p. 190). The denial of a Certificate of Appealability (COA) under these circumstances violates the governing law.

Under the "substantial showing of the denial of a constitutional right" standard of 28 U.S.C. §2253(c)(2), a petitioner need only "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (internal citations and quotation marks omitted). The *Barefoot* standard

was reaffirmed in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) and in *Miller-El v. Cockrell*, 537 U.S. 322 (2003). *Miller-El*, reaffirmed that a COA should be allowed when the petitioner's case is "debatable," or the issues could be "resolved in a different manner," or when the case "deserve[s] encouragement to proceed further." *See id*. at 336.

As illustrated above, the issues described herein are certainly debatable. Indeed, the Court wrote 191 pages to address the issues. Certainly, in those pages, this Court took on the "debate." Moreover, while this Court has yet to be convinced of the merits of any of Petitioner's claims, given this Court's treatment of the issues, it cannot say that "jurists of reason" could not resolve them differently.

And, in that regard, *Miller-El* is significant. It states that "a COA does not require a showing that the appeal will succeed.":

> The holding in *Slack* would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner has already failed in that endeavor.
>
> ***
>
> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

*Miller-El*, 537 U.S. at 336-38 (internal quotation marks and citations omitted).

In capital cases, "the nature of the penalty is also a proper consideration in determining whether to issue a certificate of appealability." *Barefoot,* 463 U.S. at 893. Because this case

Petitioner's Motion to Alter or Amend Judgment
(Doc. Nos. 214, 216) and Brief in Support                  23                  Barrett v. United States
Case No. 6:09-cv-00105-JHP

involves the death penalty, "any doubts as to whether a certificate of appealability should issue must be resolved in [petitioner's] favor." *Moreno v. Dretke*, 450 F.3d 158, 163 (5th Cir. 2006).

Given that this is a federal capital case and the issues presented are easily debatable among reasonable jurists, this Court committed error by failing to issue a COA on the claims Mr. Barrett brought in his § 2255 Motion.

## VI.    CONCLUSION

For the foregoing reasons, Mr. Barrett requests that the Court provide the following relief:

1.    Enter an Order of Disqualification and Recusal and any other necessary Order so that this matter is assigned to another judge; or in the alternative,

2.    Order the Government to Respond to this Motion;

3.    Permit Mr. Barrett to file a Reply Memorandum;

4.    Entertain oral argument on this Motion, including the Recusal issue;

5.    Grant Mr. Barrett's request for leave to conduct discovery and for an evidentiary hearing to resolve any outstanding factual disputes in his § 2255 Motion;

6.    Alter or Amend its Judgment to award relief to Mr. Barrett by vacating his convictions or sentences on each of the above described grounds, individually or collectively; or,

7.    Should the Court not grant Mr. Barrett relief from his convictions and sentence, then Mr. Barrett requests that the Court award a COA to all the claims brought forth in his § 2255 Motion.

DATED: September 13, 2012.

Respectfully submitted,

/s/ David B. Autry
**DAVID B. AUTRY**, OBA #11600
Attorney at law
1021 N.W. 16th Street
Oklahoma City, Oklahoma 73106-6405
Telephone: 405-521-9600

Petitioner's Motion to Alter or Amend Judgment
(Doc. Nos. 214, 216) and Brief in Support                    24                    Barrett v. United States
                                                                                  Case No. 6:09-cv-00105-JHP

DANIEL J. BRODERICK
Federal Defender

/s/ Tivon Schardl
**TIVON SCHARDL**, Fla. Bar No. 73016
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: 916-498-6666

/s/ Joan M. Fisher
**JOAN M. FISHER**, IDA Bar No. 2854
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: 916-498-6666

Attorneys for Defendant/Petitioner
**KENNETH EUGENE BARRETT**

## CERTIFICATE OF SERVICE

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was electronically filed on September 13, 2012. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Jeffrey B. Kahan: jeffrey.kahan@usdoj.gov

Christopher J. Wilson: Chris.Wilson@usdoj.gov

/s/ Joan M. Fisher
Signature of Movant's Attorney

Petitioner's Motion to Alter or Amend Judgment          Barrett v. United States
(Doc. Nos. 214, 216) and Brief in Support          25          Case No. 6:09-cv-00105-JHP