# EXHIBIT A

**Monroe H. Freedman**
**Professor of Law**
**Hofstra University Law School**
**320 West 38th Street, New York, NY 10018**

**lawmhf@hofstra.edu** **Telephone: 212-564-8111**
**Fax: 212-564-8877**

September 7, 2012

Tivon Schardl, Esquire
Trial & Habeas Counsel
Federal Defender for the Eastern District of California
801 I Street, 3rd Floor
Sacramento, CA 95814

Dear Mr. Schardl,

This letter is in response to your request for an expert opinion regarding lawyers' and judges' ethical issues that have arisen in the §2255 petition in *Kenneth Eugene Barrett v. United States*.

Introduction

My qualifications as an expert on lawyers' and judges' ethics are set forth in Appendix A to this letter, and a standard resume is in Appendix B. In brief, I have qualified as an expert on lawyers' and judges' ethics in federal and state courts throughout the country; testified as an expert witness on behalf of the U.S. Department of Justice; written extensively on both lawyers' and judges' ethics, including judicial disqualification; and received the American Bar Association's Michael Franck Award, which is the highest award the ABA gives for professionalism.

Facts

In preparing this opinion, I have reviewed the following documents relating to this case: Amended Motion for Collateral

Relief, to Vacate, Set Aside, or Correct Sentence, and for a New Trial, pp. i-xxii, 1-21 (Filed 09/25/09); Declaration of Counsel in Support of Petitioner's Notice Regarding Amended Petition Filed Pursuant to Court Order (Executed 11/30/09); Petitioner's Brief in Support of Second Amended §2255 Motion and in Support of Petitioner's Motion for Evidentiary Hearing and Motion for Record Expansion, pp. I-vii, 125-141 (Filed 03/01/10); Opinion and Order, pp. 2-35 (Filed 08/16/12); Notes for MHF prepared by Tivon Schardl, Esquire (Received by me 8/30/12); Capital Habeas Cases Filed in the Eastern District of Oklahoma Between January 1, 1998 and March 2009 (Received by me 9/5/12); United States v. Kenneth Barrett, E.D., Okl. Case No 04-cr-JHP Defense Expert & Investigative Resources (Received by me 9/5/12).

These documents reveal substantial factual disagreements among Judge James H. Payne, witnesses who spoke with Judge Payne off the record prior to trial, and present counsel for Mr. Barrett, on issues that are critical to this §2255 proceeding. These disagreements relate to whether Judge Payne has demonstrated partiality against counsel and/or their client, or has created the appearance of partiality against counsel and/or their client; whether Judge Payne's administrative decisions relating to the appointment, compensation, and provision of resources for defense counsel, John D. Echols and Roger Hilfiger, prejudiced Mr. Barrett because of an overriding concern for fiscal and administrative concerns, or appears to have done so; whether Judge Payne earlier demonstrated partiality against John D. Echols, who was Mr. Barrett's original lead counsel in his trial, or appears to have done so; whether Judge Payne improperly appointed Roger Hilfiger second chair and then lead counsel to represent Mr. Barrett in his trial, or appears to have done so; and whether Mr. Hilfiger had a conflict of interest and, as a result of that conflict, sought to curry favor with Judge Payne in ways that rendered his representation of Mr. Barrett incompetent and a denial of Mr. Barrett's Sixth Amendment right to the effective assistance of counsel.

It would not be appropriate for me to attempt to resolve those disputed facts and to render an opinion on the issues. That will require a hearing before an impartial judge in a §2255 hearing. What follows, therefore, is my opinion as an expert on judicial ethics regarding whether Judge Payne should have attempted to resolve those questions himself without a hearing; whether Judge Payne can preside at such a hearing; or whether the Federal Disqualification Statute, 28 U.S.C. §455, mandates his recusal.

Opinion

In brief, it is my opinion that Judge Payne was required by 28 U.S.C. §455 to recuse himself from participating in this proceeding before attempting to adjudicate any of the disputes to which he is a party. My opinion is not based on a conclusion that Judge Payne has prejudiced Mr. Barrett's trial because of bias against Mr. Barrett and/or his counsel. That issue can only be decided by impartial resolution of disputed facts. It is not necessary to resolve any disputed facts, however, to conclude that (1) Judge Payne could not and cannot lawfully adjudicate whether he himself has prejudiced Mr. Barrett, and (2) Judge Payne could not and cannot lawfully adjudicate whether Mr. Hilfiger failed to provide Mr. Barrett with the effective assistance of counsel because of a desire to ingratiate himself with Judge Payne.

Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality *might* reasonably be *questioned*."[1] What the statute requires, therefore, is not that a reasonable person conclude that a judge is in fact partial, but that a

[1]Emphasis added. See also, Code of Conduct for U.S. Judges, Canon 3C(1): "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned."

reasonable person might have questions about the judge's impartiality. In discussing the perspective of a reasonable person, the Supreme Court has referred to both "the public" and to "the skeptic."[2] A member of the public or, certainly, a skeptic, might question whether Judge Payne can impartially adjudicate a dispute to which he is a party.

Also, the Supreme Court has recognized that members of the public too often have "suspicions and doubts" about the integrity of judges.[3] Congress enacted §455(a), the Court explained, to eliminate such suspicions and doubts and to avoid the appearance of impropriety "whenever possible."[4] Moreover, under §455, the obligation of recusal is "upon the judge himself, rather than requiring recusal only in response to a party affidavit."[5]

The clearest instance of the appearance of impropriety is when a judge is, in effect, deciding his own case. Moreover, as the Federal Judicial Center has said, "When the judge is the actual trier of fact, the need to preserve the appearance of impartiality is especially pronounced."[6]

---

[2] *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860 and 865, n.12, 108 S.Ct. 2194, 2203 and 2205, n.12 (1988).

[3] *Liljeberg v. Health Services Acquisition Corp*., 486 U.S. 847, 864, 108 S.Ct. 2194, 2205 (1988).

[4] *Id*. at 864-865 and 2205.

[5] *Liteky v. United States*, 510 U.S. 540 (1994).

[6] Federal Judicial Center, Judicial Disqualification: An Analysis of Federal Law 15 (2d ed., 2010).

For example, in *In re Murchison*[7] the Supreme Court reversed a conviction on due process grounds where a state judge had held a defendant guilty of contempt for conduct before a prior grand jury proceeding where the same judge had presided. The judge had had no pecuniary interest in the case, nor was there any showing, or even any contention, that the judge had become embroiled in the case, or that he had been in any way biased.[8] Nevertheless, the Supreme Court held that "to perform its high function in the best way, 'justice must satisfy the appearance of justice.'"[9]

That standard of the appearance of justice has since been enacted by Congress in §455(a). The Federal Judicial Center has explained that "The justification for making *perceived* partiality a grounds for disqualification is at least twofold. First, regardless of whether judges are partial in fact, *public perceptions* of partiality can undermine confidence in the courts. Second, disqualifying judges for outward manifestations of what could reasonably be construed as bias obviates making subjective judgment calls about what is actually going on inside a judge's heart and mind."[10]

Accordingly, this opinion has not purported to determine "what is actually going on inside [Judge Payne's] heart and mind." Rather, the issues here are whether there is an appearance of partiality in Judge Payne's having adjudicated critical factual disputes to which he is himself a party, without holding a hearing, and whether there

---

[7] 349 U.S. 133, 75 S.Ct. 623 (1955).

[8] 349 U.S. at 141, 75 S.Ct. at 623 (Reed, J., dissenting).

[9] 349 U.S. at 136, 75 S.Ct. at 625, quoting *Offutt v. United States*, 348 U.S. 11, 14.

[10] Federal Judicial Center, Judicial Disqualification: An Analysis of Federal Law 17 (2d ed., 2010) (emphasis added).

would be an appearance of partiality if Judge Payne were to adjudicate those critical factual disputes, to which he is himself a party, in a §2255 hearing.

Conclusion

For the reasons given above, Judge Payne has been required by 28 U.S.C. §455(a) to avoid "suspicions and doubts" about his impartiality by recusing himself from participation in this §2255 proceeding, because a reasonable person might question Judge Payne's impartiality in resolving disputes to which he is himself a party.

Sincerely yours,

/s/
Monroe H. Freedman
Professor of Law

# APPENDIX A

**MONROE H. FREEDMAN**

320 West 38th Street, #2523
New York, N.Y., 10018
212-564-8111

See also listings in WHO'S WHO IN AMERICA
WHO'S WHO IN AMERICAN LAW
WHO'S WHO IN THE WORLD

**EDUCATION**

A.B., 1951, Harvard College (cum laude; honors thesis, magna cum laude)
LL.B., 1954, Harvard Law School
LL.M., 1956, Harvard Law School (Faculty Fellowship)

**FACULTY POSITIONS**

Hofstra Law School, Dean, 1973-1977; Professor of Law, 1973-present
Hofstra Law School, Lichtenstein Distinguished Professor of Legal Ethics, 1989-2003
Georgetown Law Center, Visiting Professor of Law, 2007-present
George Washington Law Center, Professor of Law, 1958-1973
Cleveland-Marshall Law School, Baker-Hostetler Professor of Law, 1992
Harvard Law School, Faculty Assistant and Faculty Fellow, 1954-1956
Harvard Law School, Lecturer on Legal Ethics and Trial Instructor, Trial Advocacy Workshop, 1978-2010

**GOVERNMENT POSITIONS**

Executive Director, United States Holocaust Memorial Council, 1980-1982 (Presidential appointment, under the chairmanship of The Honorable Elie Wiesel)
Consultant, United States Commission on Civil Rights, 1960-1964
Legislative Consultant, Senator John L. McClellan, 1959 (drafted major part of Landrum-Griffin Act)

[Continued]

**LAW PRACTICE AND PROFESSIONAL ACTIVITIES (SELECTED)**

Qualified as an expert witness in state and federal court proceedings and before Judiciary Committees of United States Senate and House of Representatives
Expert on legal ethics for the United States Department of Justice, 1978
Senior Fact-Finder, Rochester Institute of Technology (to investigate and report on CIA involvement at RIT) (1991)
Reporter, American Lawyer's Code of Conduct, 1979-1981
Associate, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, 1956-1958
Director, Stern Community Law Firm, Washington, D.C., 1970-1971
Director, Criminal Trial Institute, D.C., 1965-1966
Special Litigation Counsel, ACLU, 1971-1973
Consultant (litigation), Neighborhood Legal Services Program, 1970
Consultant, Association of the Bar of the City of New York, Special Committee on Courtroom Conduct, 1972
Arbitrator, American Arbitration Association, 1964-present (Service Award, 1986)
Associate Director, Institute for the Study of Legal Ethics, 1995-present
Columnist ("Cases and Controversies"), American Lawyer newspapers, 1990-1996 (over 60 columns published)
Martindale Hubbell rating: a v
Television: CBS 60 Minutes, CNN Moneyline, C-Span, CNN Late Edition, CNN Burden of Proof, CBS News/Dan Rather, Donahue, Court TV, The O'Reilly Factor, Hannity & Colmes, Fox News Live, Powerplay

Bar Admissions (Selected)

Massachusetts, 1954
Pennsylvania, 1957
District of Columbia, 1960
New York, 1978
United States Court of Appeals for the District of Columbia Circuit, 1960
Second Circuit, 1968
Ninth Circuit, 1982
Eleventh Circuit, 1986
Federal Circuit, 1987
Supreme Court of the United States, 1960

[Continued]

**OFFICES IN PROFESSIONAL AND CIVIC ASSOCIATIONS (SELECTED)**

Governing Board, District of Columbia of Bar, 1972-1973 (resigned upon moving to New York)
Chairman, Legal Ethics Committee, D.C. Bar, 1974-1976; member, 1974-1980
Chairman, Committee on Professional Responsibility, Society of American Law Teachers, 1974-1980
Chairman, Committee on Professional Disciplinary Standards and Procedures, Federal Bar Association, 1969-1970
Vice Chairman, Ethical Considerations Committee, ABA Criminal Justice Section, 1987-1990
Co-Chair, Ethics Advisory Committee, National Association of Criminal Defense Lawyers, 1991-1993
National Board, American Civil Liberties Union, 1971-1980
National Advisory Council, American Civil Liberties Union, 1980-present
Committee on Professional Responsibility, Association of the Bar of the City of New York, 1986-1990
Committee on Professional and Judicial Ethics, Association of the Bar of the City of New York, 1991-1992
Ethics Committee, Criminal Justice Section, New York State Bar Association, 1990-1992
Committee on Legal Education and Admission to the Bar, New York State Bar Association, 1987-1989
Committee on Model Rules of Professional Conduct, D.C. Bar, 1983-1986
Executive Committee and Governing Board, Society of American Law Teachers, 1976-1979
Associate Director, Institute for the Study of Legal Ethics, 1995-present
Ethics Advisory Committee, United States District Court for the Eastern District of New York, 1994-1996
Ethics Advisor to the Chair, ABA Criminal Justice Section, 1993-1995
Advisory Council, The Appleseed Foundation, 1996-present
Panel of Acadmic Contributors, Black's Law Dictionary, 2002-present
Members Consultative Group, ALI, Restatement of the Law Governing Lawyers, 1989-1999
American Law Institute, (Elected) (Life Member)

[Continued]

**HONORS, GRANTS, AND LECTURESHIPS (SELECTED)**

ABA Michael Franck Award for Professional Responsibility (1998), for "outstanding contributions to the field of professional responsibility" and "a lifetime of original and influential scholarship in the field of lawyers' ethics."
Howard Lichtenstein Distinguished Professor of Legal Ethics, Hofstra University (1989-2003)
Martin Luther King Humanitarian Award (1986) (for "decades of work to advance human dignity and social justice")
Lehman-Laguardia Award for Civic Achievement (1996)
Baker-Hostetler Chair in Law, Cleveland-Marshall Law School (1992)
Annual Award, Black Law Students Association (1987)
Award of Merit, District of Columbia Bar (1979) (for "exceptional performance as a member of the Legal Ethics Committee")
First Annual Wickwire Lecturer on Legal Ethics and Professional Responsibility, Dalhousie Law School, Canada (1992)
President's Commendation Award, National Association of Criminal Defense Lawyers (1992)
Pope John XXIII Lecture, Catholic University Law School (1978)
Dedication of Symposium Issue of Hofstra Law Review, vol. 6, no. 3, part II (1978)
Dedication of Crystal, Professional Responsibility (2d ed., 2000) (Aspen Law & Business): "To Monroe Freedman, who has so often led the way."
Certificate of Merit, American Bar Association (1976) (for "distinguished contribution to public understanding of the American legal system")
Certificate of Special Acknowledgment, Wisconsin Department of Justice (1988)
Ford Foundation grant to establish and direct the Criminal Trial Institute, Washington, D.C. (1965-1966)
Stern Family Fund grant to establish and direct the Stern Community Law Firm, a public interest law firm, Washington, D.C. (1970-1971)
Ford Foundation Research Fellowship in Legal Ethics (1973)
Life Fellow, American Bar Foundation
Honorary Fellow, American Board of Criminal Lawyers (2003–)
Faculty Fellowship, Harvard Law School (1954-1956)

[Continued]

**HONORS (Continued)**

New York State Bar Association Sanford D. Levy Award "in recognition of your extraordinary contribution to the field of professional ethics through a body of work that spans four decades" (2005)
New York State Bar Association Award for Dedication to Legal Scholarship and Public Service (1997)
New York State Bar Association Award for Outstanding Contributions to Criminal Law Education (2006)
Distinguished Faculty Award, Hofstra University (2007)

**PUBLICATIONS**

**Books**

LAWYERS' ETHICS IN AN ADVERSARY SYSTEM (1975) (ABA Gavel Award Certificate of Merit as an "outstanding" contribution to the field, 1976)
UNDERSTANDING LAWYERS' ETHICS (1st ed., 1990)
UNDERSTANDING LAWYERS' ETHICS (4th ed., 2010) (with Abbe Smith)
CONTRACTS (West Pub. Co., 1973)
TEACHER'S MANUAL, CONTRACTS (265 pp.) (West, 1978) (with Professor Alan Resnick)
CONTRACTS: AN INTRODUCTION TO LAW AND LAWYERING (photocopied)
GROUP DEFAMATION AND FREEDOM OF SPEECH (Greenwood, 1995) (ed., with Professor Eric Freedman)

**Articles Published In (Selected)**

ABA Journal
Georgetown Law Journal
George Washington Law Review
Hofstra Law Review
Journal of Legal Education
Journal of the Legal Profession
Michigan Law Review
NYU Law Review
Ohio State Law Review
Pennsylvania Law Review
Stanford Law Review
Texas Law Review
Yale Law Journal

**PEER EVALUATIONS**

Lawrence Fox, Email to the ABA Board of Governors (2008)

> Monroe Freedman [is] the conscience of our profession.

[Continued]

David Luban, THE GOOD LAWYER 10 (1984):

> [O]ne cannot emphasize too strongly [Freedman's] influence on discussions of legal ethics.

Ralph Temple, 13 Jour. of the Legal Profession 233 (1988):

> [Monroe Freedman's] thinking, writing and lectures ... have been the primary creative force in legal ethics today, both in the practice of law and in legal education.

William Simon, 27 Hofstra L. Rev. 1 (1998):

> Suppose you had to pick the two most influential events in the recent emergence of ethics as a subject of serious reflection by the bar. Most likely, you would name the Watergate affair of 1974 and the appearance a few years earlier of an article by Monroe Freedman.... Of the two events, Watergate is the most famous, but ... the least important.

Steven Lubet, 34 Hofstra L. Rev. 673 (2006):

> Monroe Freedman ... is one of the few people, maybe the only person, who has actually managed to change the entire discourse in a field of legal studies.

Alan Dershowitz, 34 Hofstra L. Rev. 748 (2006):

> I regard [Monroe Freedman] as the Holmes and Brandeis of Legal Ethics.

Frank H. Armani (lawyer in the Buried Bodies Case), The Professional Lawyer, 2007 Symposium Issue, 19, 25:

> [M]y guiding light and only ray of hope was the writings of Monroe Freedman. He was the only one that made any sense....

Ronald Rotunda, 34 Hofstra L. Rev. 1337 (2006):

> If we had to pick the one person who first created modern legal ethics as a serious academic specialty, it would be Monroe Freedman.

# APPENDIX B

# QUALIFICATIONS OF MONROE H. FREEDMAN AS AN EXPERT WITNESS ON LAWYERS' AND JUDGES' ETHICS

1. My name is Monroe H. Freedman. I am a Professor of Law, and the former Dean, of Hofstra University School of Law, Hempstead, New York, 11550.

2. My qualifications as an expert witness on lawyers' ethics are set forth more fully in paragraphs 3-34 below. In brief:

(a) I have qualified as an expert witness on lawyers' and judges' ethics in state and federal courts and before the Judiciary Committees of the United States Congress, and have served as a consultant and expert witness on lawyers' ethics for the United States Department of Justice.

(b) Honors that I have received include the American Bar Association's Michael Franck Award for Professional Responsibility. This is the highest award conferred by the ABA for professional responsibility, and was given for "outstanding contributions to the field of professional responsibility" and "a lifetime of original and influential scholarship in the field of lawyers' ethics."

(c) For over a third of a century, I have taught and consulted on lawyers' and judges' professional responsibilities. I currently teach lawyers' ethics at Hofstra Law School and, since 1978, have lectured annually on lawyers' ethics at Harvard Law School. I have also been a Visiting Professor of Law at Georgetown Law Center since 2008.

(d) My earlier book, LAWYERS' ETHICS IN AN ADVERSARY SYSTEM (1975), received the American Bar Association's Gavel Award Certificate of Merit. The *Harvard Civil Rights/ Civil Liberties Law Review* called it one of the few "monumental contributions to legal education in the past generation."

(e) My current book is UNDERSTANDING LAWYERS' ETHICS (4th ed., 2010) (with Abbe Smith). *The Professional Lawyer*, published by the ABA's Center for Professional Responsibility, called the 1990 edition "thoughtful and eloquent," "rich with practical examples," and "idealistic in the best sense of the word."

(f) My testimony, books, and/or articles have been relied upon by numerous courts, including the United States Supreme Court.

(g) An article in *The Journal of the Legal Profession* concludes:

> [Monroe Freedman's] thinking, writing and lectures ... have been the primary creative force in legal ethics today, both in the practice of law and in legal education.

Additional peer comments are in paragraph 34, below.

## QUALIFICATIONS AS AN EXPERT WITNESS

3. My name is Monroe H. Freedman. I am a Professor of Law, and the former Dean, at Hofstra University School of Law, Hempstead, New York, 11550.

4. I was Dean of the Hofstra University Law School from 1973-1977. From 1989 to 2003, I was the Lichtenstein Distinguished Professor of Legal Ethics at Hofstra Law School. I resigned the Lichtenstein Chair in 2003 so that my colleague in the ethics field could be appointed to it.

5. I have qualified as an expert witness on lawyers' ethics in federal and state proceedings throughout the country; before a Judicial Investigative Committee of the Eighth Circuit Judicial Council; before a Disciplinary Hearing Board of the United States Air Force; and before the Judiciary Committees of the United States Senate and House of Representatives.

6. I have served as a consultant and expert witness on lawyers' ethics for the United States Department of Justice.

7. I was the first Chairman of the Legal Ethics Committee of the District of Columbia Bar. By unanimous vote of the members of the Committee, I served as Chairman for two terms.

8. I have also been a member of the Committee on Legal Education and Admission to the Bar of the New York State Bar Association; a member of the Committee on Professional Responsibility of the Criminal Justice Section of the New York State Bar Association; Vice Chairman of the Ethical Considerations Committee of the ABA Section on Criminal Justice; Chairman of the Committee on Professional Responsibility of the Society of American Law Teachers (four terms); Chairman of the Committee on Professional Disciplinary Standards and Procedures of the Federal Bar Association; Co-Chairman of the Ethics Advisory Committee of the National Association of Criminal Defense Lawyers; Ethics Adviser to the Chair of the ABA Section on Criminal Justice; a member of the Committee on Professional Responsibility of the Association of the Bar of the City of New York; a member of the Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York; and a member of the Board of Governors of the District of Columbia Bar.

9. My first ethics book, LAWYERS' ETHICS IN AN ADVERSARY SYSTEM (1975), received the American Bar Association's Gavel Award Certificate of Merit. The ABA Certificate refers to the book

as "outstanding" in its examination of "the most difficult ethical problems a lawyer faces." About three dozen favorable reviews of the book appeared, including those in the *ABA Journal* ("scholarly ... powerful"), *ABA Litigation* ("thorough and scholarly"), and the *George Washington Law Review* ("undoubtedly, the best book published in the field of legal ethics"). In the *Harvard Civil Rights/Civil Liberties Law Review*, Professor Norman Dorsen called the book one of the few "monumental contributions to legal education in the past generation."

10. My current book is UNDERSTANDING LAWYERS' ETHICS (4th ed., 2010) (with Abbe Smith). It has been required reading at law schools including Harvard Law School, the University of California at Berkeley, and the Georgetown Law Center; is assigned and/or recommended at other law schools; has been used in training programs for the bar in Canada; and is being translated into Chinese. *The Professional Lawyer*, published by the ABA Center for Professional Responsibility, calls the book "thoughtful and eloquent" and "idealistic in the best sense of the word, pragmatic, but not cynical, and rich with practical examples." The *Massachusetts Law Review* adds that the book is "a 'must' for every desk, bench, and briefcase."

11. Selections from my writings on lawyers' ethics are part of the assigned reading at most law schools in the United States and in law schools in Canada.

12. My testimony, books and/or articles have been cited by numerous courts, including the Supreme Court of the United States, the New York Court of Appeals, the Supreme Courts of Alaska, Arizona, Colorado, Illinois, Maryland, and New Jersey, the Court of Appeals of New Mexico, the Court of Criminal Appeals of Texas, the District of Columbia Court of Appeals, the United States District Court for the Southern District of New York, and the United States Courts of Appeals for the First, Eighth, and Ninth Circuits.

13. My article on The Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions has been excerpted and reprinted over four dozen times.

14. The following is a partial list of my articles on lawyers' professional responsibilities:

The Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions, 64 Mich. L. Rev. 1469 (1966)

Reprint or excerpt permission requested:

Hall & Kamisar, Modern Criminal Procedure (1966)
Hazard & Koniak, The Law and Ethics of Lawyering (1989)
Morgan & Rotunda, Professional Responsibility (all editions)
Schwartz & Wydick, Problems in Legal Ethics (1988)
Aronson, Devine & Fisch, Problems, Cases and Materials in Professional Responsibility (1985)
Kamisar, LaFave & Israel, Criminal Procedure (1980)
Countryman, Finman & Schneyer, The Law in Modern Society (1976)
Bishin & Stone, Law, Language, and Ethics (1972)
Kadish & Paulsen, Criminal Law and its Processes (1975)
Kaufman, Problems in Professional Responsibility (1976)
1 ABA Litigation 26 (Winter, 1975)
National Conference on Teaching Professional Responsibility (1977)
Kaplan, Criminal Justice (1978)
Tanford, The Trial Process (1983)

Lempert & Saltzburg, A Modern Approach to Evidence (1984)
Arthur & Shaw, Readings in Philosophy of Law (1984)
Berch, Introduction to Legal Method (1985)
Allen & Kuhns, Constitutional Criminal Procedure (1985)
Summers et al., Law: Its Nature, Functions, and Limits (3d ed.,1986)
Elliston & Davis, Ethics and the Legal Profession (1986)
Delisle & Stuart, Learning Canadian Criminal Procedure (1986)
Katsh, Taking Sides (1986)
Schroder, Ethics and the Practice of Law (1988)
Callahan, Ethical Issues in Professional Life (1988)
Sharpe, Canadian Civil Procedure: Cases and Materials (3d ed.,1988)
Shaw, Moral Issues in Business (1989)
Fairbanks, Fact, Value, Policy: Critical Thinking in Argument (1993)
Tuedio & Trujillo, Professional Ethics in a Free-Market System (1990)
The Legal Profession and Professional Responsibility (University of Pennsylvania Law School, Center on Professionalism, 1990)
D. Rhode, Professional Responsibility: Ethics by the Pervasive Method (1994)
Luban & Rhode, Legal Ethics (1995)
Zitrin & Langford, Legal Ethics in the Practice of Law (1995)
N. Crystal, Professional Responsibility in the Practice of Law (1995)
Wettick, Course Materials on Professional Responsibility (1997)
Swift, The Lawyer's Role in the American Legal System (1997)

Acker & Brody, Criminal Procedure: A Contemporary Perspective (1998)
Avery & Konefsky, Introduction to Law and Perspectives (1998)
Hazard, Koniak, & Cramton, The Law and Ethics of Lawyering (3d ed., 1999)
May, Snow & Bolte, Legal Philosophy: Multiple Perspectives (2000)
Hatch, Arguing in Communities: Reading and Writing Arguments in Context (2002)
Kaufman & Wilkins, Problems in Professional Responsibility (4th ed., 2002)
Koniak & Cohen
Moliterno, Cases and Materials on the Law Governing Lawyers (2d ed., 2003)
Holdstein, Challenging Perspectives (2005)
Coquillette, Real Ethics for Real Lawyers (2005)
Youngstown State Univ., Professional Ethics (2006)
Performances from "Oscar" Winning Litigators: Ethical Conundrums in Criminal Cases (N.Y. City Bar, 2007)
Moralnosc a Profesjonalizm (Morality and Professionalism), ed. Wlodzimierz Galewicz (Universitas Publishing House, Cracow, Poland, 2008)

Book Review: Carlin, Lawyers' Ethics: A Study of the New York City Bar, 16 Amer. U.L. Rev. 177 (1966)

Professional Responsibility of the Prosecuting Attorney, 55 Geo. L. Jour. 1030 (1967)

Reprinted or excerpted:

3 Crim. L. Bull. 544 (1967)

Kaplan, Criminal Justice (1978)
Hall, Kamisar LaFave & Israel, Modern Criminal Procedure

Professional Responsibility of the Civil Practitioner: Teaching Ethics in the Contracts Course, 21 Jour. Legal Ed. 569 (1969)

Reprinted or excerpted:

41 U. Colo. L. Rev. 303 (1969)
Education in the Professional Responsibilities of the Lawyer (ed., Weckstein) (1969)

Where the Bodies Are Buried: The Adversary System and the Obligation of Confidentiality, 10 Crim. L. Bull. 979 (1974)

Reprinted:

ABA, Adversarial Justice: The American Approach to Adjudication (1988)
Shaw, Moral Issues in Business (1989)
Windt & Francis, Ethical Issues in the Professions (1989)
Shaw, Taking Sides: Clashing Views on Controversial Legal Issues (1988)
J. Arthur & W.H. Shaw, Readings in Philosophy of Law (1984)
Berman & Geiner, The Nature and Functions of Law (4th ed., 1980)
Shaw & Shapiro, Readings in the Philosophy of Law (2013)

A Civil Libertarian Looks at Securities Regulation, 35 Ohio St. L. Jour. 280 (1974)

Reprinted or excerpted:

Schwartz, Lawyers and the Legal Profession (1979)

Judge Frankel's Search for Truth, 123 U. Pa. L. Rev.1060 (1975)

Reprinted or excerpted:

National Conference on Teaching Professional Responsibility (1977)
Morgan & Rotunda, Professional Responsibility (all editions)
Schroeder, Ethics and the Practice of Law (1988)
Luban & Rhode, Legal Ethics (1995)
Levine, Doernberg, & Nelken, A Civil Procedure Anthology (1998)
P.G. Haskell, Why Lawyers Behave As They Do (1997)

Solicitation of Clients: For the Poor, Not the Privileged, Juris Doctor (Apr., 1971)

Advertising and Solicitation by Lawyers: A Proposed Redraft of Canon 2 of the Code of Professional Responsibility, 4 Hofstra L. Rev. 183 (1976)

Advertising and Solicitation: The Professional Obligation to Chase Ambulances, LAWYERS' ETHICS IN AN ADVERSARY SYSTEM (1975)

Reprinted:

Nader & Green,Verdicts on Lawyers (1976)
Callahan, Ethical Issues in Professional Life (1988)

Solomon, Martin, & Vaught, Ethics for Professionals (2009)

Counseling the Client: Refreshing Recollection or Prompting Perjury? ABA Litigation 35 (Spring, 1976)

Reprinted or excerpted:

ABA, The Litigation Manual (all editions)
Tanford, The Trial Process (1983)
Twerski & Henderson, Products Liability: Problems and Process (Teacher's Guide) (3d ed., 1997)
Berke, Professional Responsibility of Criminal Law (1999)

The Life-Saving Exception to Confidentiality: Restating the Law Without the *Was*, the *Will Be*, or the *Ought to Be*, 29 Loyola (L.A.) L. Rev. 1631 (1996)

Are There Public Interest Limits on Lawyers' Advocacy? 11 Social Responsibility 31 (1976)

Reprinted:

2 Jour. Legal Prof. 47 (1977)

Prior Restraints on Freedom of Expression by Defendants and Defense Attorneys, 29 Stan. L. Rev. 608 (1977) (with Janet Starwood)

Revised and reprinted:

Criminal Defense Techniques (Matthew Bender) (with S. Kahan)

<u>For a New Rule</u> [on the former government lawyer's conflict of interest], 63 ABA Jour. 724 (1977)

<u>Reprinted or excerpted</u>:

Morgan & Rotunda, Professional Responsibility (1984)

<u>The Loss of Idealism -- By Whom, And When?</u> 53 N.Y.U. L. Rev. 658 (1978)

<u>Personal Responsibility in a Professional System</u>, 27 Cath. U.L. Rev. 191 (1978) (Pope John XXIII Lecture)

<u>Reprinted or excerpted</u>:

7 ABA Human Rights 28 (1978)
Roscoe Pound/ATLA Found., Ethics and Advocacy (1978)
Wolfman & Holden, Ethical Problems in Federal Tax Procedure (1981)
Pirsig & Kirwin, Professional Responsibility (1984)
Luban, The Ethics of Lawyers (1994)
Cochran & Collett, Cases and Materials on the Rules of the Legal Profession (1996)

<u>Removal and Discipline of Federal Judges</u>, 31 Mercer L. Rev. 681 (1980)

<u>The Securities and Exchange Commission Enforcement Program</u>, 38 Wash. & Lee L. Rev. 781 (1981) (with S. Sporkin)

<u>The Kutak Model Rules vs. The American Lawyer's Code of Conduct</u>, 26 Vill. L. Rev. 100 (1981)

Lawyer-Client Confidences and the Constitution, 90 Yale L. Jour. 1486 (1981)

Reprinted or excerpted:

Dorsen & Gillers, Regulation of Lawyers: Problems of Law and Ethics (1985)

Are the Model Rules Unconstitutional? 35 U. Miami L. Rev. 174 (1981)

Lawyer-Client Confidences -- The Model Rules' Radical Assault on Tradition, 68 ABA Jour. 428 (1982)

Reprinted:

26 Boston Bar Jour. 10 (April, 1982)

Arguing the Law in an Adversary System, 16 Ga. L. Rev. 821 (1982)

The Model Rules: Improved but Unworthy of Adoption, 69 ABA Jour. 866 (1983)

Reprinted:

54 Okla. Bar Jour. 1681 (1983)

Confidentiality in the Lawyer-Client Relationship, The Neb. Humanist (Fall, 1984)

Lawyer-Client Confidences Under the Model Rules: Ethical Rules Without Ethical Reason, 3 Crim. Justice Ethics 3 (Summer/Fall, 1984)

The Guilty Plea Problem, X Social Resp. 32, 37 (1984)

Undercover Operations Against Lawyers and Judges, 9 Jour. Legal Prof. 73 (1980)

Does Incrimination by Counsel Deny Effective Assistance? ABA Barrister 13 (Fall, 1985)

Reprinted:

Nat'l L. Jour. 13 (11/4/85)

The Professional Responsibility of the Law Professor: Three Neglected Questions, 39 Vand. L. Rev. 275 (1986)

Reprinted or excerpted:

Student Law News 8 (11/87)
36 Law Rev. Dig. 26 (1986)
86 L.A. Daily Jour. Rpt. 16 (8/22/86)

The Ethics of Advocacy in the Advocacy of Ethics, 1 New L. Book Rev. 1 (1986)

The Aftermath of Nix v. Whiteside: Slamming the Lid on Pandora's Box, 23 Crim. L. Bull. 25 (1987)

Reprinted or adapted:

__ Social Resp. (1986)
1 Hofstra L. Mag. 8 (1987)
Schwartz & Wydick, Problems in Legal Ethics (1988)

Advances in Prosecutors' Ethics, 1 ABA Crim. Just. __ (Winter, 1987)

Reprinted:

14 CACJ Forum 9 (July/Aug., 1987)

Legal Ethics and the Suffering Client, 36 Cath. U.L. Rev. 331 (1987)

Reprinted:

Paris & Taslitz, Introductory Constitutional Criminal Procedure: A Lawyering Perspctive (Foundation Press, 1997)

Two Fables for Lawyers, ABA Jour. 57 (May, 1, 1988)

Client Confidences and Client Perjury: Some Unanswered Questions, 136 U. Pa. L. Rev. 1939 (1988)

Reprinted:

1 Crim Prac. L. Rev. ___ (1989)
J.G. Carr, Criminal Law Review--1990
Hazard & Koniak, The Law and Ethics of Lawyering (1990)

The Lawyer As Hired Gun, II Memphis Bar Forum 6 (1988)

Reprinted:

4 Wash. Lawyer 22 (Mar./Apr., 1990)
Ariz. Atty. 11 (Aug./Sept., 1990)
N.Y. State Bar Jour. 48 (Nov., 1990)
396 Laches 32 (Oakland Cty. Bar Assn., Mich. 1997)

The Need for a Rule 11 for Judges, 128 F.R.D. 437 (1990) (Delivered at the plenary session of the 1989 Federal Circuit Judicial Conference, Wash., D.C.)

Ethical Ends and Ethical Means, 41 Jour. Legal Education 55 (1991)

Excerpted:

J. Levy & J.E. Moliterno, Ethics of the Lawyer's Work (1993)
J.E. Moliterno, Ethics of the Lawyer's Work (2003)

Law in the 21st Century, 60 Fordham L. Rev. 503 (1992)

Disqualification of Judges, 58 Brooklyn L. Rev. 1063, 1078 (1993)

Atticus Finch -- Right and Wrong, 45 Ala. L. Rev. 473 (1994)

Reprinted:

EBSCO (pub.), Critical Insights (2008)

Excerpted:

David R. Papke, et al., Law and Popular Culture (2007)

Quoted:

Malcolm Gladwell, The Courthouse Ring: Atticus Finch and the limits of Southern liberalism (Aug. 10, 2009)

Kaye Scholer -- Overzealous or Overblown? 35 S. Tex. L. Rev. 601 (1994)

John T. Noonan, Jr.: Exemplar of Ethical Conduct, 11 Jour. of Law & Religion 1001 (1995)

But Only If You Know, Chapter 10 in R.J. Uphoff (ed.), Ethical Problems Facing the Criminal Defense Lawyer – Practical Answers to Tough Questions (ABA, 1995)

Reviewed, ABA Criminal Justice: "There exists no better choice of authority [than Monroe Freedman] to help you answer the ethical dilemma(s) surrounding client perjury, and he delivers in this book."

Translation into Japanese being prepared by the Japan Federation of Bar Associations for publication in Japan

The Lawyer's Moral Obligation of Justification, 74 Tex. L. Rev. 111 (1995)

Legal Ethics from a Jewish Perspective, 27 Tex. Tech. L. Rev. 1131 (1996)

Reprinted:

Baker & Floyd (eds.), Believing and Practicing: Meditations on Faith and the Law (1998)

The Life-Saving Exception to Confidentiality: Restating the Law Without the *Was*, the *Will Be*, or the *Ought to Be*, 29 Loyola (L.A.) L. Rev. 1631 (1996)

The Trouble with Postmodern Zeal, 38 Wm. & Mary L. Rev. 63 (1996)

The Threat to Judicial Independence by Criticism of Judges -- A Proposed Solution to the Real Problem, 25 Hofstra L. Rev. 729 (1997)

Religion Is Not Totally Irrelevant to Legal Ethics, 66 Fordham L. Rev. 1299 (1998)

The Ethical Danger of "Civility" and "Professionalism," 6 Crim. Justice Jour. 17 (1998)

Reprinted:

396 Laches 22 (1999)

Caveat Lector: Conflicts of Interest of ALI Members in Drafting the Restatements, 26 Hofstra L. Rev. 641 (1998)

Our Constitutionalized Adversary System, 1 Chapman L. Rev. 57 (1998)

Ethics, Truth, and Justice in Criminal Litigation, 68 Fordham L. Rev. 1371 (2000)

How Lawyers Act in the Interests of Justice, 70 Ford. L. Rev. 1717 (2002)

Professional Discipline of Prosecutors, 30 Hofstra L. Rev. 121 (2002)

The Professional Obligation to Raise Frivolous Issues in Death Penalty Cases, 31 Hofstra L. Rev. 1167 (2003)

Excerpted:

D.J. Meador, T.E. Baker, & J.E. Steinman, Appellate Courts – Structure, Function, Processes, and Personnel

Duck-Blind Justice: Justice Scalia's Memorandum in the *Cheney* Case, 18 Georgetown Jour. Legal Ed. 229 (2004)

An Ethical Manifesto for Public Defenders, 39 Valparaiso L. Rev. 911 (2005)

In Praise of Overzealous Representation – Lying to Judges, Deceiving Third Parties, and Other Ethical Conduct, 34 Hofstra L. Rev. 771 (2006)

Henry Lord Brougham – Written by Himself, 19 Georgetown Jour. Legal Eths. 1213 (2006)

Henry Lord Brougham and Zeal, 34 Hofstra L. Rev. 1319 (2006)

Erroneous Disclosure of Damaging Information, 14 Geo. Mason L. Rev. 179 (2006)

Judicial Impartiality in the Supreme Court – The Troubling Case of Justice Stephen Breyer, 30 Okla. City Univ. L. Rev. 513 [2007]

The Buried Bodies Case: Alive and Well after Thirty Years, ABA, The Professional Lawyer, 2007 Symposium Issue

Henry Lord Brougham – Advocating at the Edge for Human Rights, 36 Hofstra L. Rev. 311 (2007)

Reprinted:

Oregon Law Institute, Continuing Legal Education (2008)

Ethical Issues in Handling Veterans' Claims, 22 Vet. App. Reporter cxxvii (2008)

Getting Honest About Client Perjury, 21 Georgetown Jour. Legal Ethics 133 (2008)

Reprinted:

14 Verdict 21 (October, 2008)
Institute of Chartered Financial Analysts of India, Prosecutorial Misconduct (ed., Dr. G. Radha Kalyani) (2009)

What Ever Happened to the Search for Truth?, 60 Mercer L. Rev. 851 (2009)

Misunderstanding Lawyers' Ethics, 108 Mich. L. Rev. 925 (2010) (with Abbe Smith)

The Cooperating Witness Who Lies – A Challenge to Defense Lawyers, Prosecutors, and Judges, 2 Ohio State Jour. Crim. L. 739 (2010)

The Influence of the American Lawyers' Code of Conduct on ABA Rules and Standards, 38 Hofstra L. Rev. 927 (2010)

Client-Centered Lawyering – What It Isn't, 40 Hofstra.L. Rev. 349 (2011)

A Critique of Philosophizing About Lawyers' Ethics, 25 Georgetown Journal of Legal Ethics 91 (2012).

15. From 1990-1996, I wrote a monthly column, *Cases and Controversies*, in the Legal Times and several other newspapers throughout the country. Commenting in the Georgetown Journal of Legal Ethics, Professor Thomas Morgan called the columns "tough, imaginative essays." Columns have been reprinted or excerpted in Gellhorn, Byse, Strauss, Rakoff & Schotland, Cases and Materials on Administrative Law (9th ed., 1995); The Lawyer As Professional (Eds., Floyd & Newton, 1991); D. Rhode, Legal Ethics by the Pervasive Method (1993); T.D. Morgan & R. Rotunda, Problems and Materials on Professional Responsibility (6th ed., 1995; 7th ed., 2000) (two columns); N. Crystal, Professional Responsibility in the Practice of Law (1995); Cochran & Collett, Cases and Materials on the Rules of the Legal Profession (1996) (two columns); C.D. Johnson, Understanding to Kill a Mockingbird (1994); Zitrin & Langford, Legal Ethics in the Practice of Law (2d ed., 2001); and Rhode & Luban, Legal Ethics (3d ed., 2001) (two columns); and Professor Stephen Gillers has asked permission to reprint a column in Regulation of Lawyers: Problems of Law and Ethics. In addition, two of the columns have been the subject of the *At the Bar* column in the New York Times, another has been reprinted in the Congressional Record, one was appended to a Pennsylvania Bar Ethics Opinion, and others have been quoted or cited in law reviews, including the Yale Law Journal. Yale Professor Harold Bloom has reprinted one of my columns (on Atticus Finch) in his 2003 book on Harper Lee's To Kill a Mockingbird.

16. For forty-five years, I lectured annually on lawyers' professional responsibilities at Harvard Law School, where I also served as an instructor on litigation skills.

17. I have taught a course and/or a seminar on lawyers' professional responsibilities for over 40 years, and am invited to speak several times each year on lawyers' and judges' ethics at bar association meetings, judicial conferences, and law schools throughout the United States and abroad. Judicial conferences include: the Federal

Circuit Judicial Conference; the New York State Judicial Conference; the District of Columbia Judicial Conference; the Council of State Intermediate Appellate Court Chief Justices; the Annual Conference of Judges in Tennessee; the Judicial Conference of the U.S. Court of Appeals for Veterans' Affairs, and the Annual Conference of Judges in Florida. I have also given the keynote address at several conferences, including an annual meeting of the National Organization of Bar Counsel, and have spoken innumerable times at American Bar Association conferences.

18. The Wisconsin Department of Justice retained me to give a three and one-half hour lecture to 160 state prosecutors, including the Attorney General of Wisconsin, on prosecutors' ethical responsi-bilities. Also, the Office of the United States Attorney for the Southern District of Florida and the Office of the State Attorney for Dade County retained me to chair a two-hour ethics seminar for federal and state prosecutors.

19. The Administrative Office of the Illinois Courts retained me to address (in two sessions) all 1,000 Illinois state judges, on judicial ethics.

20. I have been a Consultant on professional responsibility to the Special Committee on Courtroom Conduct of the Association of the Bar of the City of New York; Consultant on professional responsibility to the United States Legal Services Corporation; and was awarded a Ford Foundation Travel-Study Grant to study lawyers' professional responsibilities in the United States, Canada, Scotland, and England.

21. Although I had then been living in New York for ten years, I was appointed in 1983-1986 to serve on the District of Columbia Bar's Special Committee (the Jordan Committee) to make recommendations regarding adoption of the ABA's proposed Model Rules of Professional Conduct. I was also a member of the

Committee's Subcommittee on Special Rules for Prosecutors. In 1997, I was invited to address the Supreme Judicial Court of Massachusetts on the state's proposed new rules on confidentiality.

22. As Reporter to the Roscoe Pound Foundation, I was the principal draftsman of the American Lawyer's Code of Conduct. Parts of this code have been the basis for rules adopted in other codes, including the Rules of Professional Conduct in New York; the Rules of Professional Conduct in Washington, D.C., the ABA Standards Relating to the Prosecution Function, the ABA's Model Rules of Professional Conduct, and the ALI's Restatement of the Law Governing Lawyers.

23. I held the Baker-Hostetler Chair in Law at Cleveland-Marshall Law School during the spring semester of 1992, teaching a course and giving lectures on lawyers' and judges' ethics.

24. I delivered the Inaugural Annual Wickwire Lecture in Legal Ethics and Professional Responsibility at Dalhousie University, Nova Scotia, Canada, in 1992, and numerous bar lectures and keynote addresses throughout the United States.

25. I was the Director of the Criminal Trial Institute in Washington, D.C., in 1965-1966. In the Institute we used and developed techniques for training trial advocates that have since become standard in the National Institute for Trail Advocacy and similar programs. The Institute was the first such program to include lawyers' ethics as part of the training program.

26. I have conducted trial and appellate litigation in several state and federal courts and before administrative agencies.

27. I have been admitted to the bars of New York, the District of Columbia, Massachusetts, Pennsylvania, the Interstate Commerce Commission, the United States District Court for the District of

Columbia, the United States District Court for the Southern District of New York, the United States District Court for the Eastern District of New York, the United States Court of Appeals for the District of Columbia Circuit, the United States Court of Appeals for the Second Circuit, the United States Court of Appeals for the Ninth Circuit, the United States Court of Appeals for the Eleventh Circuit, the United States Court of Appeals for the Federal Circuit, and the Supreme Court of the United States.

28. I have been elected to membership in the American Law Institute, and served on its Consultative Group on the Law Governing Lawyers.

29. I served as an elected a Fellow of the American Bar Foundation. A Fellow is one whose "public and private career has demonstrated outstanding dedication to the welfare of the community [and] the traditions of the profession."

30. I have been elected an Honorary Fellow of the American Board of Criminal Lawyers.

31. I have received the 2005 Sanford D. Levy Award from the New York State Bar Association "in recognition of your extraordinary contribution to the field of professional ethics through a body of work that spans four decades"; a New York State Bar Association Award for Dedication to Legal Scholarship and Public Service (1997); a New York State Bar Association Award for Outstanding Contributions to Criminal Law Education (2006); an Award of Merit from the District of Columbia Bar; a President's Commendation Award from the National Association of Criminal Defense Lawyers; the Martin Luther King Humanitarian Award (1986); the Lehman-LaGuardia Award for Civic Achievement (1996); and the ABA's Michael Franck Award for Professional Responsibility (1998), which cited "outstanding contributions to the field of professional responsibility" and "a

lifetime of original and influential scholarship in the field of lawyers' ethics."

32. I received an A.B., 1951, LL.B., 1954, and LL.M., 1956, at Harvard University.

33. I have been listed for many years in Who's Who in American Law, Who's Who in America, and Who's Who in the World.

34. Peer comments on my work in lawyers' and judges' ethics include the following:

Lawrence Fox, in an email to the ABA House of Delegates (2008):

> Monroe Freedman [is] the conscience of our profession.

Ralph Temple, 13 Jour. of the Legal Profession 233 (1988):

> [Monroe Freedman's] thinking, writing and lectures ... have been the primary creative force in legal ethics today, both in the practice of law and in legal education.

David Luban, THE GOOD LAWYER 10 (1984):

> [O]ne cannot emphasize too strongly [Freedman's] influence on discussions of legal ethics.

William Simon, 27 Hofstra L. Rev. 1 (1998):

> Suppose you had to pick the two most influential events in the recent emergence of ethics as a subject of serious reflection by the bar. Most likely, you would name the Watergate affair of 1974 and the appearance a few years earlier of an article by Monroe Freedman.... Of the two

> events, Watergate is the most famous, but ... the least important.

Steven Lubet, 34 Hofstra L. Rev. 673 (2006):

> Monroe Freedman ... is one of the few people, maybe the only person, who has actually managed to change the entire discourse in a field of legal studies.

Alan Dershowitz, 34 Hofstra L. Rev. 748 (2006):

> I regard [Monroe Freedman] as the Holmes and Brandeis of Legal Ethics.

Frank H. Armani (lawyer in the Buried Bodies Case), The Professional Lawyer, 2007 Symposium Issue, 19, 25:

> [M]y guiding light and only ray of hope was the writings of Monroe Freedman. He was the only one that made any sense....

Ronald Rotunda, 34 Hofstra L. Rev. 1337 (2006):

> If we had to pick the one person who first created modern legal ethics as a serious academic specialty, it would be Monroe Freedman.