Page 1

Not Reported in F.Supp.2d, 2010 WL 2775402 (W.D.N.C.)
**(Cite as: 2010 WL 2775402 (W.D.N.C.))**

**H**

Only the Westlaw citation is currently available.

United States District Court, W.D. North Carolina,
Asheville Division.
Richard Allen JACKSON, Petitioner,
v.
UNITED STATES of America, Respondent.

Civil No. 1:04cv251.
Criminal No. 1:00cr74.
July 13, 2010.

West KeySummary**Criminal Law 110 ⚷1891**

110 Criminal Law
　110XXXI Counsel
　　110XXXI(C) Adequacy of Representation
　　　110XXXI(C)2 Particular Cases and Issues
　　　　110k1891 k. Preparation for Trial.
Most Cited Cases

Defense counsel's investigation into the scientific basis of the Government's theory that the defendant tortured his victim with a stun gun was not deficient performance, as required to support a claim of ineffective assistance of counsel, in a trial for capital murder. Counsel secured both the appointment of a forensic pathologist and a mathematician to counter the Government's evidence that a stun gun was used on the victim. Counsel also moved for the appointment of a forensic anthropologist to testify that the alleged stun gun marks actually were the result of insect infestations and moved to subpoena the forensic pathologist who testified at the defendant's state capital trial that the marks were not stun gun marks. The cross-examination of the Government's expert showed that the defense experts had assisted counsel as to the manner in which to approach stun gun evidence. Futhermore, counsel had consulted a forensic entomologist who opined that the marks on the victim's body were consistent with post-mortem insect activity colonizing a corpse, which information was used during cross-examination. U.S.C.A.

Const.Amend. 6.

M. Gordon Widenhouse, Jr., Rudolf, Widenhouse & Fialko, Chapel Hill, NC, Shelagh Rebecca Kenney, Durham, NC, for Petitioner.

Jeffrey Bradford Kahan, United States DOJ, Capital Case Unit, Washington, DC, Richard Lee Edwards, United States Attorney, Asheville, NC, for Respondent.

***ORDER***
MARTIN REIDINGER, District Judge.
**\*1 THIS MATTER** is before the Court on the Petitioner's Request for Certificate of Appealability [Doc. 54.].

**PROCEDURAL HISTORY**[FN1]

> FN1. A more complete procedural history can be found in the Court's Order denying Petitioner's § 2255 Motion to Vacate. [Doc. 47].

The Petitioner's conviction and sentence of death became final on November 17, 2003. *Jackson v. United States of America,* 540 U.S. 1019, 124 S.Ct. 566, 157 L.Ed.2d 434 (2003) (petition for writ of *certiorari* denied). In 2004, the Petitioner filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, which was denied on June 19, 2009. [Doc. 47]. His Motion to Alter or Amend Judgment was denied on August 26, 2009. [Doc. 52]. The Petitioner filed the pending Request for Certificate of Appealability on October 26, 2009 and the Government responded on January 6, 2010. [Doc. 54; Doc. 60]. The Petitioner's Reply was filed on January 25, 2010. [Doc. 63]. The Petitioner seeks leave to appeal the denial of some of the claims which were asserted in the § 2255 motion. [Doc. 47].

**STANDARD OF REVIEW**
Orders denying a motion pursuant to § 2255

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ATTACHMENT THREE

Not Reported in F.Supp.2d, 2010 WL 2775402 (W.D.N.C.)
**(Cite as: 2010 WL 2775402 (W.D.N.C.))**

are not appealable unless a court issues a certificate of appealability (COA). 28 U.S.C. § 2253(c)(1). A COA may issue only if the Petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" and that any dispositive procedural ruling by the district court is also debatable. *Miller–El v. Cockrell,* 537 U.S. 322, 336–38, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), *quoting Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

### DISCUSSION
### I. Denial of an evidentiary hearing

The Petitioner claims that the Court [FN2] erred by failing to grant him an evidentiary hearing but does not identify the claims as to which a hearing was required. [Doc. 54, at 4]. He argues generally that the Court's failure to hold an evidentiary hearing is a matter about which "reasonable jurists could debate' or is 'adequate to deserve encouragement to proceed further." [*Id.* (citation omitted) ].

> FN2. This case was reassigned to the undersigned when Hon. Lacy H. Thornburg retired.

It is first noted that the denial of an evidentiary hearing is not a dispositive procedural ruling. *United States v. Dixon,* 208 Fed.Appx. 257 (4th Cir.2006), *certiorari denied* 552 U.S. 933, 128 S.Ct. 327, 169 L.Ed.2d 231(2007) (declining to issue certificate of appealability as to claim that court should have conducted evidentiary hearing on § 2255 motion); *accord, United States v. Michael,* 141 Fed.Appx. 208 (4th Cir.2005); *Garcia v. United States,* 2007 WL 1652537 (W.D.N.C.2007).

In order to obtain a COA, the Petitioner must show that "reasonable jurists would find the district court's assessment of [a] *constitutional* claim [ ] debatable or wrong.' " *Miller–El,* 537 U.S. at 338 (citation and internal quotation marks omitted) (emphasis provided). A petitioner's right to an evid-

entiary hearing in connection with a motion pursuant § 2255 is governed by the statute which provides that a hearing is not required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Petitioner's argument is based on his conclusion that the statutory scheme presumes that a hearing will be granted. To the contrary, the statute does not provide for a hearing in every case and, as noted by the Court, "[i]n this case, it is particularly compelling that almost every allegation of ineffective assistance or other ground for relief is refuted by the contemporaneous record." [Doc. 52, at 4].

**\*2** In concluding that a hearing was not required, the Court stated:

As the Court which presided over all pretrial proceedings as well as the trial of the action, the undersigned is uniquely qualified to compare the contentions of ineffective assistance of counsel with the contemporaneous conduct and statements of counsel. Moreover, concerning the other issues raised in this motion, it is clear from the pleadings, files and records that the Petitioner is not entitled to any relief; therefore, the [Court] concludes that a hearing is not required. "A § 2255 motion 'can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."

[Doc. 47, at 22–24] (citations omitted).

Although the Petitioner has argued that he should have been given an evidentiary hearing, he has not identified a constitutional right tied to the failure to hold a hearing. In fact, the Petitioner has not identified the issues as to which he claims a hearing was necessary. "If no constitutional violation is asserted, the non-constitutional claims are only considered to the extent that they are connec-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ATTACHMENT THREE

Not Reported in F.Supp.2d, 2010 WL 2775402 (W.D.N.C.)
**(Cite as: 2010 WL 2775402 (W.D.N.C.))**

ted to a claim on which a COA is granted." *Alix v. Quarterman,* 309 Fed.Appx. 875, 878 (5th Cir.2009), *certiorari denied* ––– U.S. ––––, 130 S.Ct. 364, 174 L.Ed.2d 52 (2009); *United States v. Hadden,* 475 F.3d 652, 660 n. 5 (4th Cir.2007) (rejecting COA because the alleged errors under § 2255 were not of constitutional dimension); *Dixon,* 208 Fed. Appx. at 257 (refusing to issue COA based on court's failure to conduct hearing on § 2255); *United States v. Squillacote,* 183 Fed.Appx. 393 (4th Cir.2006) (granting COA as to claim that hearing in § 2255 proceeding should have been held on issue of whether prisoner had been denied the right to testify at trial). The Petitioner having failed to establish either, no COA may issue.

**II. Exclusion of affidavits**

The Petitioner seeks a COA on the issue of whether the Court improperly refused to consider six affidavits offered in support of the 22 ineffective assistance of counsel claims raised in his § 2255 motion.[FN3] Most of the affidavits were those of attorneys who had prior experience litigating capital cases.[FN4]

> [FN3]. The affidavits were attached as exhibits to the Petitioner's supplemental memorandum in support of his motion to vacate. [Doc. 17, at Exhibits. 6, 15, 28, 34, 36, 85].

> [FN4]. The Petitioner also contends that the Court excluded the affidavits of trial counsel from consideration. [Doc. 54, at 10]. This is a misstatement of the record. Judge Thornburg made reference to these affidavits of trial counsel in his decision regarding the § 2255 Motion when adjudicating the Petitioner's allegations of ineffectiveness and concluded that they either did not support his allegations or were contradicted by the contemporaneous record.

The Petitioner first claims that the Court made an erroneous procedural ruling by excluding the affidavits. That ruling, however, is not a dispositive procedural ruling and thus, there is no issue of whether reasonable jurists could find the ruling debatable. *Slack,* 529 U.S. at 484–85; 28 U.S.C. § 2246 (granting discretion to habeas court to consider affidavits).

The Petitioner also claims that the exclusion of these affidavits deprived him of the ability to show ineffective assistance of counsel. Whether the Petitioner has established a valid Sixth Amendment ineffective assistance claim is a mixed question of fact and law. *U.S. v. Nicholson,* 475 F.3d 241, 248 (4th Cir.2007) (citation omitted). The attorneys who provided the affidavits relied at least partially on facts outside the record of these proceedings.[FN5] Indeed, the attorneys offered their opinions on the reasonableness of trial counsel's actions and drew the legal conclusion that counsel were ineffective. The Court concluded that the affidavits were excludable because they presented legal conclusions on an ultimate issue of law.

> [FN5]. For example, one of the affiants relates experiences he had with one of Jackson's trial counsel in an unrelated capital trial. [Doc. 17 Ex. 85 ¶¶ 21–26.]

**\*3** Although not designated as such by the Petitioner, it is evident that he relies on these affiants as experts in the field of capital litigation. An expert's opinion on an issue of law, in this case whether counsel were ineffective, may be excluded from consideration of the merits of an issue. *United States v. McIver,* 470 F.3d 550, 562 (4th Cir.2006), *certiorari denied* 550 U.S. 936, 127 S.Ct. 2276, 167 L.Ed.2d 1094 (2007) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible"). Furthermore, "when an expert witness is not in a better position than the fact finder to render an opinion on a matter, [for example the reasonableness of counsel's actions,] it is not error to exclude that [expert] witness' testimony." *Noland v. French,* 134 F.3d 208, 217 (4th Cir.1998), *certiorari denied* 525 U.S. 851, 119 S.Ct. 125, 142 L.Ed.2d 101 (1998). Moreover, to the extent that trial counsel

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ATTACHMENT THREE

Not Reported in F.Supp.2d, 2010 WL 2775402 (W.D.N.C.)
**(Cite as: 2010 WL 2775402 (W.D.N.C.))**

made strategic decisions, "the reasonableness of a strategic choice is a question of law to be decided by the court, not a matter subject to factual inquiry and evidentiary proof." *Provenzano v. Singletary,* 148 F.3d 1327, 1332 (11th Cir.1998), *rehearing denied* 162 F.3d 100 (11th Cir.1998). The affiants were therefore in no better position than the Court to assess the adequacy of trial counsel's performance.

Additionally, the Court found the attorneys, through the affidavits, did not provide true expert opinions because their opinions were based on subjective opinion instead of statements of fact. As the Court noted:

> Statements in affidavits filed years after the trial do not create credibility issues when trial counsel's documented contemporaneous statements show the contrary because, in that event, the allegations do not warrant relief pursuant to § 2255 . Such documented contemporaneous statements include, for example, vouchers submitted by trial counsel which show the [voluminous] amount of time spent in trial preparation.

[Doc. 52, at 10].

For the foregoing reasons, the Court concludes that the Petitioner is not entitled to the issuance of a COA on this issue.

### III. Stun gun evidence

In Claim III of his Motion to Vacate, the Petitioner alleged that trial counsel were ineffective for failing to investigate adequately and challenge the scientific basis for a government witness's testimony regarding the Petitioner's use of a stun gun during the crime. In Claims IV and V, he alleged that counsel were ineffective for failing to challenge the admissibility of the government witness's testimony.

### A. Investigation of stun gun theory

The Petitioner argued that trial counsel conducted an inadequate investigation into the scientific basis of the Government's theory that Petitioner tortured the victim with a stun gun. The Court concluded that trial counsel conducted a reasonable investigation of the Government's stun gun theory. The Petitioner now claims that reasonable jurists would find this ruling debatable.

**\*4** As noted by the Court in its decision, trial counsel secured the appointment of both a forensic pathologist and a mathematician to counter the Government's evidence that a stun gun was used on the victim. Additionally, counsel moved for the appointment of a forensic anthropologist to testify that the alleged stun gun marks actually were the result of insect infestations. That request was denied, as was counsel's motion to subpoena the forensic pathologist who testified at the Petitioner's state capital trial and who was expected to testify at the federal trial that the marks were not stun gun marks. The fact that the Court denied counsel's requests for experts is not ineffective assistance of counsel. See, *e.g., Moore v. Reynolds,* 153 F.3d 1086, 1099 (10th Cir.1998), *certiorari denied* 526 U.S. 1025, 119 S.Ct. 1266, 143 L.Ed.2d 362 (1999) ("Whittaker filed a motion for funds to hire a mental health expert, but the trial court denied that request. Moore offers no explanation in his habeas petition concerning how Whittaker could have discovered and presented this information without receiving the requested funds."); *Barnes v. Johnson,* 184 F.3d 816 (5th Cir.1999), *certiorari denied* 528 U.S. 974, 120 S.Ct. 421, 145 L.Ed.2d 329 (1999).

Indeed, the questioning by trial counsel on cross-examination of the Government's expert, Dr. Robert Stratbucker, clearly showed that the defense experts had assisted trial counsel as to the manner in which to approach the stun gun evidence. For example, although not provided any funds with which to do so, counsel consulted a forensic entomologist who opined that the marks on Karen Styles' body were consistent with post-mortem insect activity and that he did not see any marks on her body "inconsistent with the natural process of insects colonizing a corpse." [Doc. 49 Ex. 3: Byrd Aff. ¶¶

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ATTACHMENT THREE

Not Reported in F.Supp.2d, 2010 WL 2775402 (W.D.N.C.)
**(Cite as: 2010 WL 2775402 (W.D.N.C.))**

7–10]. This information, as well as that received from the other experts, was used during cross-examination.

The Court cannot find, in light of these efforts on the part of trial counsel, that reasonable jurists could debate that counsel were ineffective as to this preparation and investigation.

**B. Admissibility of expert testimony**

The Petitioner also alleged that counsel failed to challenge the scientific basis of Dr. Stratbucker's testimony under *Daubert.*FN6 The record shows otherwise.

> FN6. *Daubert. v. Merrill Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

In addition to hiring and/or consulting the experts referenced in the previous section of this Order, counsel moved twice for a *Daubert* hearing to challenge two potential Government stun gun experts. The Government ultimately decided to call a third expert, Dr. Stratbucker. Prior to his testimony, the Court conducted a *Daubert* hearing at which trial counsel challenged the validity of Dr. Stratbucker's opinion, arguing that it was based only upon review of photographs, not a review of the victim's body; the opinion relied on testimony from the state trial, and the opinion was not reliable under *Daubert.* Counsel also argued that the Government had failed to meet its burden under *Daubert* because it had failed to produce the testimony and documentary evidence upon which Dr. Stratbucker had relied to form his opinion.

**\*5** The record shows that trial counsel did in fact challenge the scientific basis for Dr. Stratbucker's opinion and used the information received from defense experts to attack Dr. Stratbucker on cross-examination.

The Petitioner also alleged that counsel failed to "aggressively" pursue a pretrial *Daubert* hearing, as opposed to a hearing at the time of trial. As this Court has noted previously, trial counsel twice moved for a pre-trial *Daubert* hearing. However, as was the custom of the trial Court, the hearing was deferred until the time of trial. Counsel were not ineffective for failing to raise a third motion for a pre-trial *Daubert* hearing in the face of guaranteed rejection by the Court.

The Court finds that no COA should issue as to these claims.

**IV. Claims related to the investigation and presentation of mitigating evidence at sentencing**

Petitioner seeks a COA for a number of ineffective assistance of counsel claims related to the mitigation defense presented during the sentencing phase of the trial. Each raises a specific allegation of ineffectiveness, but all allege that counsel conducted an inadequate mitigation investigation.

**A. The Petitioner's biological sister**

The Petitioner seeks to appeal the Court's rejection of his claim that trial counsel were ineffective for not discovering, obtaining, and passing on to his mental health experts all mitigating evidence regarding the Petitioner's biological sister. He argues that this information was critical for a complete assessment of his mental health. However, none of the post-conviction affidavits provided by the Petitioner's mental health experts states how additional information about his sister would have affected their diagnoses of the Petitioner or altered their proposed testimony. Claudia Coleman, Ph.D., the Petitioner's forensic psychologist and neuropsychologist at trial, merely stated that the additional information about the Petitioner's sister would have been "relevant" to her evaluation. [Doc. 17: Ex. 9, Coleman Aff. ¶ 13.] Dr. Seymour Halleck, the Petitioner's forensic psychiatrist, makes no mention of the Petitioner's biological sister in his affidavit. [*Id.* at Ex. 16]. Pamela Laughon, Ph.D., a psychologist who was the Petitioner's mitigation investigator at trial, does not refer to the additional information about the Petitioner's sister in her post-conviction affidavit. [*Id.* at Ex. 25]. In short, the Petitioner has failed to provide any factual support for the allega-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ATTACHMENT THREE

Not Reported in F.Supp.2d, 2010 WL 2775402 (W.D.N.C.)
**(Cite as: 2010 WL 2775402 (W.D.N.C.))**

tions made in this claim. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (to require counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.").

The Petitioner also seeks to appeal the Court's rejection of his claim that counsel were ineffective for failing to introduce evidence of his biological sister's mental health problems. At the sentencing trial, this Court refused to allow lay testimony about the sister's mental health problems unless the defense also presented expert testimony establishing a link between the Petitioner's alleged mental conditions and those of his sister. This holding was affirmed on direct appeal. *United States v. Jackson,* 327 F.3d 273 (4th Cir.2003), *certiorari denied* 540 U.S. 1019, 124 S.Ct. 566, 157 L.Ed.2d 434 (2003). In the Motion to Vacate, the Petitioner argued that several of his mental health experts had the necessary information to establish such a link and trial counsel rendered ineffective assistance by not presenting their testimony. The Court rejected the claim because trial counsel had made a strategic decision not to present expert mental health testimony at the penalty phase in order to avoid damaging rebuttal testimony from the Government's mental health expert.

**\*6** Prior to trial, the Government provided notice, in writing, that during the penalty phase of the trial, it would introduce mental health evidence only to rebut mental health evidence introduced by the Petitioner during his case-in-chief. [Criminal Case No. 1:00cr74, at Doc. 33.] On April 19, 2001, the Government and defense counsel entered into a consent order pursuant to which the report of the Government's mental health expert, Dr. Park Dietz, and the videotapes of his interviews with Petitioner were disclosed to defense counsel. [*Id.,* at Doc. 132]. After reviewing Dr. Dietz's report, watching the videotapes of his interviews with the Petitioner, and discussing the report with at least one of the de-

fense experts, trial counsel, on May 8, 2001, withdrew their notice of intent to offer evidence of mental condition during the penalty phase of the trial. [*Id.,* at Doc. 177]. It is evident from that very intentional act that trial counsel concluded the mitigating mental health evidence would not have outweighed the damaging impact of Dr. Dietz's testimony, report, and interview tapes offered by the Government in rebuttal.

As he did in his habeas claim, Petitioner labels as "unfounded" counsel's fear that expert testimony showing a genetic connection between the siblings' mental health issues would open the door to rebuttal from government mental health experts. Petitioner made no attempt in his Motion to Vacate to support this conclusory accusation with actual evidence or citation to law. Nor does he make up for that deficiency here. For these reasons the Court will not issue a COA based on this issue. *Sanders v. United States,* 314 Fed.Appx. 212 ——2 (11 th Cir.2008) (decision not to call witness "was strategic, and we will not second guess it."); *Chandler v. United States,* 218 F.3d 1305, 1314 n. 14 (11 th Cir.2000) ("calling some witnesses and not other is 'the epitome of a strategic decision.' "); *United States v. Jenkins,* 132 Fed.Appx. 743 (10th Cir.2005) (declining to issue certificate of appealability as to counsel's strategic decision regarding examination of witness).

**B. The failure to conduct adequate mitigation investigation**

The Petitioner contends that because his trial counsel conducted an inadequate mitigation investigation they were unable to make reasoned, strategic decisions about whether to offer expert mental health testimony or to call witnesses in addition to Sally Jackson, the Petitioner's mother.

To prepare for sentencing, trial counsel requested and received a mitigation specialist, Pam Laughon, Ph.D., who conducted the mitigation investigation. She uncovered a great deal of medical and social information about the Petitioner's biological family. See, *American Bar Association Guidelines*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ATTACHMENT THREE

Not Reported in F.Supp.2d, 2010 WL 2775402 (W.D.N.C.)
**(Cite as: 2010 WL 2775402 (W.D.N.C.))**

*for the Appointment and Performance of Counsel in Death Penalty Cases* 11.4.1(C), 11.8.3(F.2), 11.8.6(B), 11.8.6 cmt.; 1.1 cmt. 5.1.1(A.v), 11.4.1. (1989) (ABA Guidelines); 1 ABA Standards for Criminal Justice 4–4.1, cmt. P.4–55 (2d ed.1982). It was not unreasonable for counsel to rely on Dr. Laughon to discover potential witnesses and to conduct interviews. She was a professional and an expert in her field, and she had worked competently with both defense attorneys on previous occasions. "It is certainly within the 'wide range of professionally competent assistance' for an attorney to rely on properly selected experts." *Fields v. Brown,* 431 F.3d 1186, 1205 (9th Cir.2005), *certiorari denied* 552 U.S. 1314, 128 S.Ct. 1875, 170 L.Ed.2d 752 (2008), *quoting Harris v. Vasquez,* 949 F.2d 1497, 1525 (9th Cir.1990), *certiorari denied* 503 U.S. 910, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992).

**\*7** Additionally, trial counsel hired a forensic psychiatrist, a future dangerousness expert, and a neuropsychologist. Counsel subpoenaed the Petitioner's records from the United States Navy, the North Carolina Department of Corrections, the Buncombe County Detention Facility, the North Carolina Department of Social Services, the Juvenile Court for Buncombe County, the Blue Ridge Mental Health Center, and the Buncombe County Health Department. *ABA Guidelines.* The Court denied counsel's request to subpoena the Department of Social Services' records for the Petitioner's biological mother and sister. Counsel nonetheless obtained the Petitioner's academic records, reviewed the mitigation evidence offered at the state trial and consulted with the Petitioner's state trial attorneys. Counsel interviewed the Petitioner's adoptive mother, biological mother, relatives of both mothers and some of his foster parents. His mitigation specialist and mental health experts interviewed others, including the adoptive parents of the Petitioner's biological sister.

The Petitioner's complaint is that counsel failed to discover all of the potentially mitigating evidence. The Supreme Court, however, has never held that counsel's mitigation investigation must be anything but reasonable and it has not laid down a requirement that counsel must uncover every available piece of mitigating information about a defendant. See, *e.g., Rompilla v. Beard,* 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005); *Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Neither this trilogy of cases nor *Strickland* requires "defense counsel to 'investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing.' " *Gray v. Branker,* 529 F.3d 220, 228–29 (4th Cir.2008), *certiorari denied* 129 S.Ct. 1579, 173 L.Ed.2d 678 (2009), *quoting Wiggins,* 539 U.S. at 533. "Instead, [the cases] impose[ ] upon counsel 'a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *Id.* In light of the investigative efforts taken by trial counsel, the Court finds that there is no reasonably debatable issue with respect to the adequacy of counsel's mitigation investigation. *See Strickland,* 466 U.S. at 687.

**C. Lay witness testimony**

Next, the Petitioner seeks to appeal the Court's rejection of his claim that trial counsel unreasonably decided to call only one lay witness, Sally Jackson, at sentencing. As with his other ineffective assistance of counsel claims, the Petitioner first alleged that counsel's mitigation investigation was inadequate. The Petitioner, however, failed to identify any mitigating evidence uncovered during postconviction proceedings which was unknown to trial counsel. Instead, the Petitioner merely presented all of the evidence to which various lay witnesses potentially could have testified, had they been called.

**\*8** Most of this information is found in the reports of the Petitioner's mental health experts and mitigation specialist. Consequently, Petitioner failed to provide factual support for his allegation that counsel's investigation was inadequate.

The crux of this claim is the decision by trial

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ATTACHMENT THREE

Not Reported in F.Supp.2d, 2010 WL 2775402 (W.D.N.C.)
**(Cite as: 2010 WL 2775402 (W.D.N.C.))**

counsel to offer lay mitigation testimony only through Sally Jackson, the Petitioner's adoptive mother. After having conducted a reasonable mitigation investigation, counsel lined up a number of lay witnesses who could have testified about the Petitioner's life prior to his adoption by the Jacksons or who could have corroborated Sally Jackson's testimony about the Petitioner after his adoption. [Doc. 17, Ex. 4: Belser Aff. ¶ 19; Ex. 25: Laughon Aff. ¶ 14; Ex. 27: Lindsey Aff. ¶ 26.]. Counsel also had intended to call at least one of the adoptive parents of the Petitioner's biological sister. To do so, however, would have required that counsel present expert mental health testimony which, in turn, would have opened the door to damaging rebuttal testimony from the Government's mental health expert. For these and other reasons presented in the Court's § 2255 decision, counsel made the strategic decision not to call any lay witnesses other than Sally Jackson.[FN7] The Court concluded that trial counsel's decision was a reasoned and strategic one. [Doc. 47, at 70–77]. The rejection of these claims does not create a reasonably debatable issue. Indeed, on direct appeal the Fourth Circuit found Mrs. Jackson's testimony "was broad-ranging, and the conclusions that could have been made [concerning mitigation] covered everything from Jackson's childhood, his disabilities, his mental condition, his intelligence, his remorse, his ability to hold jobs, his social deficiencies, and more." *Jackson,* 327 F.3d at 293–94.

> FN7. For example, counsel were rightfully wary of calling witnesses concerning the Petitioner's life with the Jacksons. During his state court trial, it appears that such evidence of an upper middle class lifestyle backfired.

## V. Failure to secure additional experts for trial

The Petitioner argued in the § 2255 motion that trial counsel should have provided all mitigating evidence to his mental health experts because, had they done so, those experts would have diagnosed him differently resulting in additional experts in the

fields of early childhood development and developmental disorders. This argument overlooks the strategic decision made by trial counsel not to inject the Petitioner's mental health into the sentencing phase of the trial in order avoid the damning testimony of Dr. Dietz and the videotape of his interview with the Petitioner.

Moreover, during post-conviction proceedings, the Petitioner moved the Court for the appointment of an expert in early childhood development and developmental disorders. In refusing that request, the Court pointed out that each of the following previously appointed experts had been qualified to testify to such matters: Seymour Halleck, Pam Laughon, Mark Cunningham, and Claudia Coleman. [Doc. 47, at 97].

Dr. Halleck stated that he had reviewed at least a portion of the Petitioner's mental health records. Dr. Coleman, the Petitioner's forensic psychologist and neuropsychologist, testified that her review of subsequent records confirmed her diagnosis of a developmental disorder. Neither of the Petitioner's trial counsel stated they would have changed their strategy regarding presentation of expert mental health testimony had they had a firm diagnosis of autism or any other developmental disorder.

**\*9** The Petitioner's argument rests on the speculative assumption that had trial counsel moved during pre-trial proceedings for the appointment of additional experts, the Court would have granted those motions. That assumption is highly unlikely in light of the Court's previous appointment of three mental health experts and a mitigation specialist with a doctorate in psychology. As previously noted by the Court, any one or more of these witnesses had the expertise to testify regarding the impact of biological factors and early childhood experiences on mental development. Reasonable jurists would not find the Court's handling of these claims debatable or wrong.

## VI. Sally Jackson

The Petitioner also claimed that trial counsel

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ATTACHMENT THREE

Not Reported in F.Supp.2d, 2010 WL 2775402 (W.D.N.C.)
**(Cite as: 2010 WL 2775402 (W.D.N.C.))**

failed to collect all available mitigating evidence from Sally Jackson, their sole penalty phase witness. Had they done so, Petitioner contends, counsel would have discovered a wealth of mitigating evidence that was critical to his mental health experts in performing their evaluations.

The evidence the Petitioner claims should have been elicited is that the Petitioner was afraid of the dark as a child; he had a heightened sensitivity to light; he spoke in an extremely loud voice when excited; he could only calm down after being given a stimulant [sic]; and his behavior during high school was so aberrant that his father began to have a drinking problem. None of the Petitioner's mental health experts mentioned this evidence in their post-conviction affidavits and none of them claimed the evidence was crucial to their ability to accurately diagnose Petitioner. Indeed, the evidence appears merely cumulative and when weighed with all of the other mitigating evidence against the aggravating evidence, there is no reasonable probability that the undiscovered evidence would have changed the jury's verdict. *Wiggins,* 539 U.S. at 534 .

**VII. Absence of a mental health defense**

The Court rejected the Petitioner's argument in the § 2255 motion that trial counsel were ineffective for electing not to present a mental health defense at sentencing. As has been discussed previously, the decision not to offer expert mental health testimony was a reasoned, strategic one.

Prior to trial, the Government provided notice, in writing, that during the penalty phase of the trial, it would introduce mental health evidence only to rebut mental health evidence introduced by the Petitioner during his case-in-chief. [Case No. 1:00cr74, Doc. 33.] By early December 2000, trial counsel had obtained the appointment of a forensic psychiatrist, Dr. Seymour Halleck, who evaluated Petitioner in January, February and March, 2001. In March 2001, when the Government indicated that it might present evidence at sentencing of the Petitioner's propensity for future dangerousness, coun-

sel moved for the appointment of another mental health expert, Dr. Mark Cunningham. That motion was granted on March 15, 2001. [*Id.* at Doc. 89].

**\*10** During pre-trial preparation, trial counsel decided not to offer a mental health defense. At a pre-trial hearing on April 6, 2001, however, counsel indicated that they were reevaluating that decision in light of the Government's service of a subpoena on one of the mental health experts who had testified at the Petitioner's state capital trial. [Case No. 1:00cr74, Mot. Hr'g Tr. 4–5, April 6, 2001, filed under seal Aug. 6, 2001]. That expert would have testified that at the time of the crime, the Petitioner had the capacity to form the specific intent to commit the crime of premeditated murder. In addition, the Government had disclosed new evidence physically linking the Petitioner to the victim's murder. As a result of these developments, counsel sought and was granted, the appointment of another mental health expert, Dr. Claudia Coleman. [*Id.,* at Doc. 123–1].

On April 19, 2001, the Government and defense counsel entered into a consent order pursuant to which the report of the Government's mental health expert, Dr. Park Dietz, and the videotapes of his interviews with the Petitioner were disclosed to defense counsel. [*Id.,* at Doc. 132]. On May 3, 2001, the Government filed a notice advising the Court that Dr. Dietz's final interview with Petitioner would take place on May 6, 2001. [*Id.,* at Doc. 169–1]. After reviewing Dr. Dietz's report, watching the videotapes of his interviews with Petitioner, and discussing the report with at least one of their defense experts, counsel, on May 8, 2001, withdrew their notice of intent to offer evidence of mental condition during the penalty phase of the trial. [*Id.,* at Doc. 177]. In other words, any benefit which might have been attained by a mental health defense during sentencing was greatly outweighed by the evidence on the videotapes and Dr. Dietz's potential testimony. Trial counsel made the strategic decision not to offer a mental health defense at sentencing in order to avoid the introduction of that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ATTACHMENT THREE

Not Reported in F.Supp.2d, 2010 WL 2775402 (W.D.N.C.)
**(Cite as: 2010 WL 2775402 (W.D.N.C.))**

evidence and the Court's rejection of this claim does not create a debatable issue for reasonable jurists. *Sanders,* 314 Fed.Appx. 212 at ——2; *Chandler,* 218 F.3d at 1314; *Jenkins,* 132 Fed.Appx. at 743.

### VIII. Experts in post-conviction proceedings

As previously noted, the Petitioner was provided with some experts in the prosecution of his Motion to Vacate but was denied others. The Petitioner argues that this denial of expert assistance deprived him of the effective assistance of counsel to pursue the Motion to Vacate. [Doc. 54, at 56–57.] Where there is no constitutional right to counsel, however, there can be no deprivation of effective assistance. *See Wainright v. Torna,* 455 U.S. 586, 587–88, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982). There is no constitutional right to counsel in post-conviction proceedings. *Pennsylvania v. Finley,* 481 U.S. 551, 555–56, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989). Consequently, there can be no Sixth Amendment deprivation of the effective assistance of post-conviction counsel. *Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Since the Petitioner has not identified a constitutional right which is at stake, no COA may issue.

**\*11** Moreover, access to the assistance of experts to litigate a § 2255 action is provided by statute, not the Constitution. 18 U.S.C. § 3599(a)(2). FN8 To obtain a COA, Petitioner must show that "reasonable jurists would find the district court's assessment of [a] *constitutional* claim[ ] debatable or wrong." *Miller–El,* 537 U.S. at 338 (citation and internal quotation marks omitted) (emphasis added). The Petitioner has not stated a constitutional claim.

> FN8. At the time that Petitioner filed his motions, the appointment of experts in a § 2255 motion was governed by 21 U.S.C. § 848(q)(4)(B)(9), which was repealed in 2006.

### IX: Newly discovered evidence

After filing the § 2255 motion, the Petitioner moved for leave to amend, claiming that he was entitled to a new trial and/or sentencing because of newly discovered evidence that he had an accomplice in his murder of Karen Styles. It is axiomatic that for evidence to be newly discovered, it must have been unknown to the defendant at the time of the relevant legal proceeding. *In re Williams,* 364 F.3d 235, 240 n. 3 (4th Cir.2004), *certiorari denied* 543 U.S. 999, 125 S.Ct. 618, 160 L.Ed.2d 457 (2004) (" 'The traditional definition of newly discovered evidence is evidence discovered since the trial [.]' ") (citation omitted). If Jackson had an accomplice, he would have been aware of that fact at the time of trial.

The Petitioner also claimed that the victim had been taken from Pisgah National Forest to another location and then returned to the federal national forest. Again, the Petitioner, who confessed to raping and murdering the victim within the Pisgah National Forest, would have been aware of that fact. Consequently, the evidence at issue in this claim, if true, cannot be newly discovered.

The Court's ruling on this issue does not present a constitutional claim about which reasonable jurists could debate.

### X: Double jeopardy

Finally, the Petitioner claimed that his federal conviction and death sentence violated the Double Jeopardy Clause of the United States Constitution due to his previous prosecution in state court. The Fourth Circuit Court of Appeals rejected an identical claim raised by Petitioner on direct appeal. *Jackson,* 327 F.3d at 295 (4th Cir.2003) ("Unless and until the Supreme Court overrules its existing precedents, we are bound to conclude that the federal prosecution under federal law is not barred by the fact that the defendant was previously tried and convicted under State law on the basis of the same facts."). Consequently, the Court relied on procedural bar to reject this claim. Petitioner has failed to show that the Court's rejection of this claim on pro-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ATTACHMENT THREE

Not Reported in F.Supp.2d, 2010 WL 2775402 (W.D.N.C.)
**(Cite as: 2010 WL 2775402 (W.D.N.C.))**

cedural grounds created a debatable issue among reasonable jurists. *United States v. Linder,* 552 F.3d 391, 397 (4th Cir.2009), *certiorari denied —— U.S. ——, 130 S.Ct. 736, 175 L.Ed.2d 514 (2009)* (" 'It is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal.' ") (citation omitted). Consequently, no COA may issue.

### CONCLUSION

The Court finds that the Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Miller–El,* 537 U.S. at 336–38 (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong) (citations omitted). As a result, the Court declines to issue a certificate of appealability. Rule 11(a), *Rules Governing Section 2255 Proceedings for the United States District Courts.*

### ORDER

**\*12 IT IS, THEREFORE, ORDERED** that Petitioner's Request for a Certificate of Appealability [Doc. 54] is hereby **DENIED.**

W.D.N.C.,2010.
Jackson v. U.S.
Not Reported in F.Supp.2d, 2010 WL 2775402 (W.D.N.C.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ATTACHMENT THREE