**DAVID AUTRY**, OBA No. 11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
(405) 521-9600
(405) 521-9669 [fax]
dbautry77@gmail.com

**HEATHER E. WILLIAMS**, CA Bar 122664
Federal Defender
**JOAN M. FISHER**, Idaho Bar No. 2854
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA 95814
(916) 498-5700
(916) 498-5710 [fax]
Joan_Fisher@fd.org

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KENNETH EUGENE BARRETT, | ) | |
| | ) | |
| Petitioner, | ) | **CAPITAL CASE** |
| | ) | |
| v. | ) | Case No. 6:09-cv-00105-JHP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **RESPONSE TO** |
| | ) | **GOVERNMENT'S MOTION** |
| Respondent, | ) | **FOR PSYCHIATRIC** |
| | ) | **EVALUATION OF** |
| | ) | **DEFENDANT** |
| _____ | ) | |

Response to Governments Motion For
Psychiatric Evaluation of Defendant                              *Barrett v. USA*
                                          OKED Case No. 6:09-cv-00105-JHP

**TABLE OF CONTENTS**

I.    INTRODUCTION .............................................................................................................. 1

II.   BACKGROUND................................................................................................................. 1

III.  PETITIONER'S RESPONSE TO THE GOVERNMENT'S MOTION TO COMPEL
PSYCHIATRIC EVALUATION OF MR. BARRETT................................................................. 4

   A.   Any New Psychiatric Testing by the Government Using New Experts on Any Issues
   During this Advanced Stage of Post-Conviction Proceedings Would Violate the Sixth
   Amendment to the U.S. Constitution......................................................................................... 4

      1.    Declarations by Dr. Woods and Dr. Young on the Basis of Prior Testing of Petitioner
      Substantiate Petitioner's Claim that Trial Counsel Failed to Perform their Sixth  Amendment
      Duty to Adequately Investigate, Prepare, and Present Mitigating Evidence ........................... 4

      2.    Deficiency And Prejudice Analysis of Ineffective Assistance of Counsel Claims Under
      *Strickland*: Barrett Is Constitutionally Entitled to Offer New Mitigating Evidence During
      Post-Conviction Proceedings While the Government Remains Severely Limited it What is
      Permitted to Present ................................................................................................................. 10

      3.    In Addition to Clearly Established and Controlling Federal Law, the Principle of
      Fairness Enshrined in Decades of U.S. Supreme Court Jurisprudence Also Prohibits New
      Testing of Mr. Barrett by the Government ............................................................................... 14

   B.   If the Court Permits the Government's New Proposed Expert to Testify—Even Without
   New Testing, Solely on Basis of the Written Record Alone—The Important Principle of
   Judicial Economy Will Be Imperiled ....................................................................................... 16

   C.   In the Event of Any Retesting by Respondent. Mr. Barrett Should be Afforded the
   Presence of Counsel During Evaluation, and the Government Should be Subjected to Video
   Monitoring Protocols, to Guard Against Additional Possible Constitutional Violations........... 17

      1.    If the Court Allows Any New Testing by New Experts, Mr. Barrett Should be Afforded
      Presence of Her Counsel to Ward Against Sixth Amendment and Fifth Amendment
      Violations  and to Help to Ensure Reliability of Results as Demanded by the Eighth
      Amendment ............................................................................................................................... 17

      2.    If the Court Permits New Examinations by Respondent's New Expert, it Should Also
      Allow  Videotaped Monitoring of the Evaluation to Shield Against Constitutional Violations
      and  Enhance Reliability of the Results.................................................................................... 19

IV. CONCLUSION.................................................................................................................. 19

Response to Governments Motion For
Psychiatric Evaluation of Defendant                    i                    *Barrett v. USA*
OKED Case No. 6:09-cv-00105-JHP

## TABLE OF AUTHORITIES

**Federal Cases**

*Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) .............................................................. 16

*Eddings v. Okla.*, 455 U.S. 104 (1982) ...................................................................................... 19

*Engle v. Isaac*, 456 U.S. 107 (1982) ......................................................................................... 17

*Estelle v. Smith*, 451 U.S. 454 (1981) ...................................................................................... 20

*Hooks v. Workman*, 689 F.3d 1148 (10th Cir. 2012) ....................................................... 12, 13, 17

*Lockett v. Ohio*, 438 U.S. 586 (1978) .................................................................................. 18, 20

*McCleskey v. Zant*, 499 U.S. 467 (1991) ................................................................................... 18

*McKoy v. North Carolina*, 494 U.S. 433 (1990) ........................................................................ 19

*Morrison v. Stephenson*, 244 F.R.D. 405 (S.D. Ohio 2007) ....................................................... 21

*Porter v. McCollum*, 130 S. Ct. 447 (2009) ........................................................................ *passim*

*Purvis v. Crosby*, 451 F.3d 734 (11th Cir. 2006) .................................................................. 17, 18

*Robinson v. Schriro*, 595 F.3d 1086 (9th Cir. 2010) .................................................................. 8, 9

*Rompilla v. Beard*, 545 U.S. 374 (2005) ............................................................................ 4, 8, 14

*Sears v. Upton*, 130 S. Ct. 3259 (2010) ............................................................................. *passim*

*Smith v. Mullin*, 379 F.3d 919 (10th Cir. 2004) .................................................................. 13, 17

*Strickland v. Washington*, 466 U.S. 668 (1984) ............................................................. 4, 7, 8, 11

*United States v. Barrett*, 797 F.3d 1207 (10th Cir. 2015) ............................................................ 1

*Wiggins v. Smith*, 539 U.S. 510 (2003) .............................................................................. *passim*

*Williams v. Taylor*, 529 U.S. 362 (2000) ........................................................................... *passim*

**Federal Statutes**

21 U.S.C. § 848 ......................................................................................................................... 3

21 U.S.C. § 848(n)(8) ................................................................................................................ 9

28 U.S.C. § 2255 ............................................................................................................. 1, 3, 13

## I.    INTRODUCTION

The government has moved to compel Mr. Barrett to submit to a battery of psychiatric examinations by its requested new expert, Dr. Steven Pitt, on November 18, 2016. The government has supplied no apposite authority in support of its request. Respondent's request for testing by Dr. Pitt violates the Sixth Amendment to the U.S. Constitution. Given the many shortfalls in its Penalty Phase case, the government now seeks to amass new statutory and non-statutory aggravating evidence: this is expressly forbidden by binding constitutional precedent. Accordingly, the Court should enter an Order prohibiting new testing of Mr. Barrett by Respondent.

## II.    BACKGROUND

At the guilt phase of the proceedings, the government sought to remedy the central weakness of two state court trials, where juries failed to convict Mr. Barrett of first-degree murder due to a lack of intent to kill. The government introduced testimony from seven informant witnesses in order to secure a conviction.  This testimony was also critical to the government's case in aggravation at the Penalty Phase.  *See, e.g.,* 27 RT 5414:23-5415:6 (prosecutor Sperling arguing against "leniency" at the Penalty Phase; acknowledging "the difference in the [state and federal] cases" was the aggravating testimony of the seven Guilt Phase snitches, and admitting "[the government] required their testimony" at the federal prosecution to secure a death sentence).

Testimony by all seven of these witnesses has been thoroughly discredited by witness recantation and unimpeachable documentary evidence of deals they received in exchange for false testimony. Also at the Penalty Phase of the proceedings, the government presented aggravating evidence from several witnesses on future dangerousness—including Stanley Philpot, Johnny

Philpot, Cindy Crawford, and Charles "Monk" Sanders—in order to secure a death verdict.[1]

Testimony by these witnesses of Mr. Barrett's future dangerousness was tenuous and has also

been discredited; the government's case in aggravation now stands in tatters.

Trial counsel, however, failed to contest the  lack of credible aggravating evidence during

the Penalty Phase. Trial counsel also failed to perform its constitutional duty to investigate,

prepare, and   present mitigating evidence on Mr. Barrett's mental health and social history despite

clear   indications of Petitioner's troubled family background and cognitive impairments.

Accordingly,   Petitioner was sentenced to death on a single count for the offense of capital murder,

pursuant  to 21 U.S.C. § 848.

Upon institution of § 2255 proceedings, investigation by the defense uncovered an

abundance of classic mitigating evidence neglected by trial counsel. For instance, opinions by

Myla H. Young, Ph.D., and Dr. George Woods, M.D. demonstrate the grossly incomplete and

inaccurate portrait of Petitioner presented at the   Penalty Phase due to the earlier lack of

mitigation investigation: 1) Dr. Woods reviewed  Petitioner's family background and diagnostic

history, including Mr. Barrett's exposure to high levels of  neurotoxins in *utero* due to his

mother's alcohol abuse; his early trauma due to early childhood neglect and physical abuse by his

parents; and his vast   intergenerational family history of major mood disorders, mental illness, and

chemical   dependence; 2) clinical interviews by Dr. Woods confirmed that Mr. Barrett suffered

from post-traumatic stress disorder (PTSD), bipolar disorder, and executive dysfunction

---

[1] Testimony by the government's witnesses was so weak to begin with, that Assistant United States Attorney Michael Littlefield flailed about in trying to persuade the jury of Mr. Barrett's future dangerousness: in desperation, he argued that petitioner deserved to die because he threw a food tray in prison and "hit [a guard] in the testicles with a [baked] potato." 27 RT 5349-50. Apparently, an errant russet potato "show[ed] [Barrett's] willingness to commit assaultive behavior upon authorities in a correctional setting" and rendered him worthy of a sentence of death. *Id.*

syndrome; and 3) neuropsychological testing by Dr. Young confirmed Applicant's brain damage and dysfunction across several areas, including his intellectual functioning, attention and concentration, memory and learning, language, and executive functioning. In light of these findings, Dr. Young concluded that Mr. Barrett's "experiences significant brain damage and consequent brain dysfunction primarily of prefrontal and temporal cortices," with etiologies of his brain damage including "possible prenatal developmental abnormality, drug use/abuse and traumatic brain injuries." Declaration of George Woods, M.D. ("Woods Declaration"); Declaration of Myla H. Young, Ph.D., ABPN ("Young Declaration") at ¶66, 36.

Dr. Woods and Dr. Young therefore advance classic mitigating evidence that should have formed the heart of trial counsel's investigation for the Penalty Phase—information concerning Mr. Barrett's PTSD; brain damage with possible etiologies of his mother's prenatal alcohol abuse, of repeated head trauma, and of his own drug and alcohol abuse; other cognitive impairments; and his hereditary inheritance of mental illness.

Confronted with this evidence in support of Petitioner's preexisting Sixth Amendment claim due to failure to present mitigating evidence, the government has asked to engage in a barrage of new psychiatric examinations using a new expert (Doc 253) to ostensibly uncover new aggravating evidence in order to compensate for the obvious shortcomings of its prior Penalty Phase case. Most importantly, the government has ignored clear U.S. Supreme Court authority. This issue remains a Sixth Amendment question governed by clearly established federal law. *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005); *Porter v. McCollum*, 130 S.Ct. 447 (2009); and *Sears v. Upton*, 130 S.Ct. 3259 (2010). Accordingly, rules of civil procedure and evidentiary findings that would have been at issue in sentencing are

Response to Governments Motion For
Psychiatric Evaluation of Defendant          3          *Barrett v. USA*
                                             OKED Case No. 6:09-cv-00105-JHP

"need[less]" to a just resolution of this federal  constitutional claim, which must be disposed of in accord with binding Sixth Amendment  authority. *See Wiggins*, 539 U.S. at 536. The government lacks any authority to engage in  new psychiatric testing using its new expert during post-conviction proceedings   that are far removed from its earlier presentation of aggravating evidence at the Penalty Phase of the trial.  Mr. Barrett cannot be compelled to be available for another psychiatric examination by Respondent.  He is therefore forced to file this response in opposition to the Government's Motion to Compel a Psychiatric Evaluation (Doc 253).

### III. PETITIONER'S RESPONSE TO THE GOVERNMENT'S MOTION TO COMPEL PSYCHIATRIC EVALUATION OF MR. BARRETT

**A. Any New Psychiatric Testing by the Government Using New Experts on Any Issues During this Advanced Stage of Post-Conviction Proceedings Would Violate the Sixth Amendment to the U.S. Constitution**

**1. Declarations by Dr. Woods and Dr. Young on the Basis of Prior Testing of Petitioner  Substantiate Petitioner's Claim that Trial Counsel Failed to Perform their Sixth  Amendment Duty to Adequately Investigate, Prepare, and Present Mitigating Evidence**

Declarations by Dr. Woods and Dr. Young submitted to this Court in 2009  support Petitioner's arguments that trial counsel failed in its constitutional duty to investigate   and present mitigating evidence during the original Penalty Phase of the proceedings.    Accordingly, resolution of the Government's request to engage in new psychiatric interviews and new psychiatric testing by its proposed new expert in response to these opinions remains governed squarely by *Strickland v. Washington,* and other landmark cases that have interpreted its dictates to evaluate ineffective assistance of counsel claims due to failure to investigate mitigating evidence. *See Williams v. Taylor*, 529 U.S. at 363 ("*Strickland* provides sufficient guidance for resolving virtually all ineffective assistance claims . . . .").

Trial counsel Hilfger and Smith performed a grossly inadequate  investigation prior

Response to Governments Motion For
Psychiatric Evaluation of Defendant              4                                *Barrett v. USA*
                                                                      OKED Case No. 6:09-cv-00105-JHP

to the Penalty Phase of the original proceedings. In derogation of professional norms, trial counsel failed to hire a mitigation specialist. ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003) 4.1.A.1 to 2 (capital defense team should include a "mitigation specialist" and someone "qualified . . . to screen . . . for the presence of mental or psychological disorders or impairments . . . ."); Ex. 56 at 1-2 (Dr. Jeanne Russell's work restricted to future dangerousness, not mitigation); Ex. 67 (Declaration of Julia O'Connell; Hilfiger calling Federal Defender's Office less than three months before Penalty Phase seeking mitigation assistance, referred to Dick Burr, Federal Death Penalty Resource Counsel); Ex. 118 (Declaration of Richard Burr; "neither Mr. Hilfiger nor Mr. Smith ever approached me for assistance as resource counsel in Mr. Barrett's case;" after Burr offered his assistance to Mr. Hilfiger, he "never heard back . . . ."). No one  employed by trial counsel was charged with preparing a case in mitigation for the Penalty Phase.

Despite tell-tale red flags of brain dysfunction, physical abuse,  familial mental illness, gross neglect during childhood, head injuries, paranoid personality disorder, suicidal behavior, trauma, and other cognitive  impairments, trial counsel presented scant witnesses—ineffectively prepared—before urging a naked plea for mercy during closing arguments at the Punishment Phase. Smith inexplicably emphasized the government's worst aggravating evidence—that Mr. Barrett had ostensibly beaten his ex-wife—and incoherently faulted Deputy Eales for accepting a high risk profession, before mentioning (in passing, for mere seconds) his sole "mitigating" evidence. 27 RT 5385:2-13, 5394:12-15. Mr. Barrett accepted responsibility for Deputy Eales' death, "is a father . . . . a loved son, and a step-son," and on that basis alone the jury should not serve as an instrument of death. 27 RT 5397:23-5398:12, 5399:13-16.

Smith failed to investigate and present evidence of Mr. Barrett's gross childhood neglect,

Response to Governments Motion For
Psychiatric Evaluation of Defendant          5                              *Barrett v. USA*
                                                           OKED Case No. 6:09-cv-00105-JHP

mental illness, and severe brain damage—including the possible consequences of alcohol abuse by his mother during gestation and his history of head trauma with confirmed loss of consciousness—and other classic evidence that should have anchored their case in mitigation. *See, e.g., Wiggins*, 539 U.S. at 535 (ineffective assistance due to failure to investigate and present mitigating evidence that revealed both the nature and full extent of troubles suffered by petitioner, including early abuse, custodial care provided by an alcoholic, and other excruciating life history); *Porter*, 130 S.Ct. at 455-56 (ineffective assistance due to failure to perform reasonable investigation and present evidence of petitioner's troubled history, including post-traumatic stress disorder, childhood history, brain abnormality, and limited schooling); *Sears*, 130 S.Ct. at 3262-67 (ineffective assistance due to failure to investigate and later present new evidence of "'significant' mental and psychological impairments" alongside original mitigating evidence in Penalty Phase, including struggles in school, learning disability, frontal lobe abnormalities due to chemical abuse and traumatic experiences, and difficulty in suppressing impulses). Given trial counsel's failure to probe potentially powerful mitigating evidence of childhood neglect, early physical abuse, trauma, intergenerational mental illness, and other troubled life history like Mr. Barrett's shotgun-suicide attempt that stared them in the face, the failure to investigate was not a reasonable decision nor was the decision based on sufficient investigation that would have rendered further investigation unnecessary. *Strickland*, 466 U.S. at 691; *Wiggins*, 539 U.S. at 525.

In addition to trial counsel's constitutionally inadequate investigation of mitigating evidence, Hilfiger and Smith also failed to prepare their own witnesses for the Penalty Phase. The family members who testified at sentencing all now attest that the attorneys' preparation

Response to Governments Motion For
Psychiatric Evaluation of Defendant          6                              *Barrett v. USA*
                                                          OKED Case No. 6:09-cv-00105-JHP

consisted of five-minute interviews before taking the stand, and none were asked about Mr. Barrett's background, family history, or history of mental illness. These witnesses' unprepared testimony in mitigation served as further confirmation that trial counsel had already rendered   ineffective assistance due to Hilfiger and Smith's failure to pursue mitigating evidence, or their   inability to make reasonable decisions that would have rendered such investigations unnecessary   as required by the Constitution and controlling U.S. Supreme Court authority. *See, e.g., Williams*, 529 at 396; *Wiggins*, 539 U.S. at 533-38; *Rompilla*, 545 U.S. at 387-93; *Porter*, 130 S.Ct. at 452-6; *Sears*, 130 S.Ct. at 3265-7; *Strickland*; 466 U.S. at 691. On  the basis of trial counsels' profound constitutional inadequacies and shortfalls, Mr. Barrett was   sentenced to death.

Subsequent declarations by Drs. Young and Woods substantiate Mr. Barrett's claim that Hilfiger and Smith rendered ineffective assistance of counsel by failing to adequately present classic mitigation evidence. *See Robinson v. Schiro*, 595 F.3d 1086, 1111-12 (9th Cir. 2010) (ineffective assistance due inadequate investigation into "classic mitigating evidence," such as petitioner's troubled background, unstable and sometimes abusive upbringing, cognitive impairments, and non-violent nature). In part, this constitutional claim is premised on the psychiatric assessment of Dr. Woods and the neuropsychological   testing of Dr. Young; together, along with the documentary record and affidavits by family members, friends, and acquaintances secured by current  counsel, these findings show the nature and extent of classic mitigating   evidence that should have been presented to the jury at sentencing. *See Robinson*, 595 F.3d at 1111-12; *See, e.g.*, Young Declaration; Woods Declaration; and Declarations of Phyllis Crawford, Carolyn Joseph, Mark Dotson, Brandy Hill, Travis Crawford, Nona Reich, Isaac Barrett, Linda Riley, Kathy Trotter, Warren Dotson, Gelene Dotson, Ernest Barrett, Steve Barrett, Abby Stites, Toby Barrett, Alvin Hahn, Shawn Hill, Ruth Harris, Janice Sanders, and

Response to Governments Motion For
Psychiatric Evaluation of Defendant              7                                   *Barrett v. USA*
                                                                    OKED Case No. 6:09-cv-00105-JHP

Rick Lunsford.

Confronted with the richness of Mr. Barrett's new mitigating evidence, Respondent has requested new psychiatric testing out of grave concern for its tenuous and now thoroughly discredited case in aggravation: 1) at the time of sentencing, two jurors concluded that Mr. Barrett would not present a future danger to society despite trial counsel's ineffectiveness in rebutting aggravating evidence; 2) the government's case in aggravation was ever precarious, given that six jurors found Sheriff Johnny Philpot's beating of Mr. Barrett was an additional mitigating factor, despite the prosecution's strained arguments that this act of police brutality somehow evinced Mr. Barrett's future dangerousness, *see, e.g.*, 27 RT 5345:12-5346:3; 3) the statutory aggravating factor of substantial planning and premeditation has been discredited by the documentary record, impeachment witnesses, and multiple recanting witnesses, who now say that Mr. Barrett never said he intended to kill police, *see, e.g.,* 21 U.S.C. § 848(n)(8) (substantial planning and premeditation); 27 RT 5340:16-5341:19 (prosecution arguing substantial planning and premeditation based largely on testimony of Karen Real, Charles "Monk" Sanders, Brandie Price, Randy Turman, including prior statements about killing police); Decl. of Sean Hill (Real not reliable, and informed on her boyfriend and those close to her to get favorable treatment); Decl. of Charles "Monk" Sanders (repudiating trial testimony about Mr. Barrett's ready access to weapons and threats to kill police; "I lied about Kenny Barrett when I testified in the federal trial because of threats made against me and my family by U.S. Attorney Mike Littlefield and because of promises he made . . . . I had no personal knowledge of anything Ken was doing in the two or three weeks prior to the raid on the house . . . ."); Decls. of Sean Hill and Brandy Hill (Brandie Price's statements about going to the Barrett residence where she allegedly observed weapons and overheard threatening statements

Response to Governments Motion For
Psychiatric Evaluation of Defendant          8                          *Barrett v. USA*
OKED Case No. 6:09-cv-00105-JHP

about police were not credible; Price's purported route to the Barrett residence is not possible to traverse; Price thoroughly dishonest and would say and do anything for drugs; Randy Turman also not reliable and "as low as you get"); File in Sequoyah Case No. CF-02-477 (circumstantial evidence of Turman as informant who received deal in exchange for testimony against Mr. Barrett; outstanding charges against Turman dropped "in the best interest of justice" only after trial testimony, despite Turman's swearing that said charges had "been taken care of" at trial); and 4) central, non-statutory aggravating evidence of future dangerousness stands wholly discredited by impeachment witnesses or mitigated by the principal witnesses themselves, *see, e.g.*, 27 RT 5348:7-11, 5416:22-24 (prosecution's arguments that Mr. Barrett allegedly pressed a shotgun against Cindy Crawford's leg for refusing the sleep with him when she was in presence of her brother, Richie Barrett); Decl. of Richie Barrett (Cindy Crawford's shotgun story was fabricated out of whole cloth; it never happened), and Decls. of Roger Crawford, Mike Mackey, Brandy Hill, Sean Hill, Carolyn Joseph, Gwendolyn Crawford (extrinsic evidence of Cindy Crawford's complete unreliability); 27 RT 5346:4-20 (prosecution arguing domestic violence against Abby Stites as proof of future dangerousness); Decl. of Abby Stites (discord in marriage was due to mental health issues, and Mr. Barrett's mother subverted Mr. Barrett's attempts to get psychiatric care in inpatient facility).

With this current paucity of aggravating evidence, any new testing of Mr. Barrett by the government would serve as an open invitation to Respondent to unfairly amass new aggravating evidence in lieu of securing narrow rebuttal testimony on mitigation. The government will be irresistibly compelled to deviate from developing limited, responsive testimony to Petitioner's mitigation experts given the tattered state of its former case in aggravation, thereby inevitably

Response to Governments Motion For
Psychiatric Evaluation of Defendant          9                          *Barrett v. USA*
                                                          OKED Case No. 6:09-cv-00105-JHP

confusing the present issue before the court—mitigation—with aggravation and future dangerousness. As well, any new psychiatric examinations by  Respondent patently violate binding constitutional authority and should be disallowed on such grounds.

### 2. Deficiency And Prejudice Analysis of Ineffective Assistance of Counsel Claims Under  *Strickland*: Barrett Is Constitutionally Entitled to Offer New Mitigating Evidence During Post-Conviction Proceedings While the Government Remains Severely Limited it What is Permitted to Present

When evaluating ineffective assistance claims due to failure to present mitigating evidence under *Strickland*, petitioners must demonstrate that counsels' performance   was deficient and that such performance prejudiced that defense. *Strickland*, 466 U.S. at 687. Deficient performance is  measured against an "objective standard of reasonableness" informed by professional norms. *Strickland*, 466, U.S. at 688 (ABA Standards, though not dispositive, "are guides to determining   what is reasonable); *Wiggins*, 539 U.S. at 521. Professional norms at the time of Petitioner's trial required his attorneys—at a bare minimum—to "conduct thorough and independent investigations relating to the issue[] of . . . penalty." ABA Guidelines for the Appointment of Defense Counsel in Death Penalty Cases 10.7 (rev. 2003).

To establish prejudice, petitioner must show that there is a reasonable probability that, but for counsels' unprofessional errors, the results of the proceedings would have been different. *Id.* at 694. A reasonable probability is one that proves sufficient to undermine confidence in the outcome. *Id*. In assessing prejudice, courts must  "consider 'the totality of the available mitigation evidence—both that adduced at trial, and the   evidence adduced in the habeas proceeding' and 'reweig[h] it against the [original] evidence in  aggravation" presented during the penalty phase of the trial. *Porter*, 130 S.Ct. at 454-55 (citations omitted); *accord Williams*, 529 U.S. at 397-98; *Sears*, 130  S.Ct. at 3266; *Wiggins*, 539 U.S. at 536 ("in assessing prejudice, the court reweighs the [original] evidence in aggravation against the totality of available mitigating evidence . . . .");

Response to Governments Motion For
Psychiatric Evaluation of Defendant                    10                    *Barrett v. USA*
OKED Case No. 6:09-cv-00105-JHP

see also Hooks v. Workman, 689 F.3d 1148, 1202 (10th Cir. 2012) (same; "[t]o assess prejudice arising out of counsel's errors at a capital-sentencing proceeding, we must 'reweigh the [original] evidence in aggravation against the totality of available mitigating evidence;'" prejudice shown where new, post-conviction evidence of "chaotic, tragic upbringing" and organic brain damage outweighed that State's original case presented at trial consisting of three aggravators); Smith v. Mullin, 379 F.3d 919, 941-44 (10th Cir. 2004) (same; concluding prejudice shown where original mitigating evidence and new mitigating evidence of troubled background and brain damage adduced during post-conviction outweighed the original nine aggravating factors previously found by jury at trial).

The Tenth Circuit Court of Appeals follows Strickland's bar on the introduction of new evidence  by the Government: in analyzing prejudice, courts consider only the original evidence presented in   aggravation during the penalty phase against the totality of a Petitioner's mitigating evidence—including new mitigating evidence solely from Petitioner's psychiatric experts during post-conviction proceedings—to determine if there is a reasonable probability that at least one juror would have struck a different balance. Smith, 379 F.3d at 944.

The government is not entitled to conduct new psychiatric tests using a new expert  as part of this Court's evaluation of Mr. Barrett's Sixth Amendment claim. The Court is bound to consider Petitioner's previously undiscovered mitigating evidence—including conclusions from psychiatric   experts presented during § 2255 proceedings showing post-traumatic disorder, bi-polar disorder, attention and memory deficits, and other cognitive impairments—and to evaluate these assessments alone alongside the government's original evidence in aggravation. See Hooks, 689 F.3d at 1205-08  (ineffective assistance where the petitioner supplied new conclusions from an expert during post-conviction proceedings—showing organic brain damage to frontal lobes due

Response to Governments Motion For
Psychiatric Evaluation of Defendant          11                        Barrett v. USA
                                                        OKED Case No. 6:09-cv-00105-JHP

to head trauma—against the backdrop of aggravating evidence presented by the government  at the original penalty phase); *see also Sears,* 130 S.Ct. at 3262-67 (ineffective assistance  where recently uncovered evidence of Petitioner's "'significant' mental and psychological  impairments" due to trauma and chemical abuse, first presented by two psychiatrists for  Petitioner during post-conviction proceedings, was considered along with mitigating   evidence originally presented at trial; no new experts by government when the evaluating court  speculates on the effects of newly presented mitigating evidence); *Rompilla*, 545 U.S. at 377-93 (recounting post-conviction proceedings; five experts from defense, including two new specialists adducing mitigating evidence of organic brain damage during post-conviction, juxtaposed against old aggravating evidence originally posed during penalty phase of trial by one prosecution expert; no new aggravating evidence, no new government experts, and no new testing by the prosecution during post-conviction proceedings despite marked disproportion of experts in favor of Petitioner); *Wiggins*, 539 U.S. at 516-18   (ineffective assistance where court recounted new mitigating evidence advanced by Petitioner   during post-conviction proceedings—including life history by licensed social worker   certified as expert— absent new experts from government).

At most, the government may present the very same experts originally used at trial to incorporate Petitioner's experts' assessments on mitigation and then abnegate their earlier findings that Petitioner poses a future danger to  society. *See Williams*, 529 U.S. at 370-71 (after incorporating new mitigating evidence presented during habeas proceedings on childhood mistreatment, abuse, neglect, and on possibly organic cognitive impairments, same experts used by the government at trial may reject prior findings of future dangerousness). If no experts previously testified for the government at trial—as in the instant matter—the government is not allowed to now remediate its original case in aggravation. Petitioner is merely asserting his

constitutional right to effective assistance of counsel by demonstrating that there is a reasonable probability that at least one juror would have struck a different balance had the totality of mitigating evidence been presented to a jury. It is staggeringly unfair to permit the opposition, in response, to exploit his trial counsels' constitutional deficiencies and prejudicial shortcomings in mitigation by allowing new proposed government experts to stockpile unrelated aggravating evidence on other material issues necessary to support a death verdict—including statutory and non-statutory aggravators and circumstances of the offense for which Petitioner was convicted. *See Williams*, 529 U.S. at 397-98; *Wiggins*, 539 U.S. at 536; *Porter*, 130 S.Ct. at 454-55; *Sears*, 130 S.Ct. at 3266. The government seeks to conflate the original trial court proceeding with a brand new Penalty Phase, consisting of completely new evidence concerning future dangerousness, the mechanics of the crime and facts supporting death eligibility. This is clearly improper, as the present inquiry is much narrower—confined strictly to mitigation. *See Id.*

Alternatively, the Court might allow the government to present testimony by new experts—*if* it meets its burden of showing that they satisfy all requirements posed by the Federal Rules of Evidence and *Daubert*—but only to narrowly review Petitioner's experts' final reports on mitigation and to opine on their methodology and conclusions without the aid of new psychiatric testing. *See Porter*, 130 S.Ct. at 450-52 (ineffective assistance where Petitioner presented two new psychiatric experts on post-traumatic disorder during state post-conviction proceedings, and two new government experts narrowly testified on statutory mitigating circumstances on the basis of their review of the record; no new testing by government); *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-92 (1993). In such circumstances, the U.S. Supreme Court does not allow any such testimony by the State to covertly augment the original evidence in aggravation at trial: instead, the ballast on the aggravating side of the scale remains

Response to Governments Motion For
Psychiatric Evaluation of Defendant         13                              *Barrett v. USA*
                                                                OKED Case No. 6:09-cv-00105-JHP

"appropriately reduced" and the inquiry centers upon whether there is a reasonable probability that at least one juror would have struck a different balance if presented with all old and new mitigating evidence. *Porter,* 130 S. Ct. at 453-55.

Overwhelmingly, the *Strickland* line of cases dictates that new psychiatric testing of any kind is not permitted to be performed by the government's proposed new expert at this stage of the proceedings as part of this court's evaluation of Petitioner's ineffective assistance claim. The court may not consider a whisper of new evidence in aggravation: constitutionally, it must consider the totality of Petitioner's new mitigating evidence about post-traumatic stress, physical abuse, intergenerational mental illness, and other mental impairments along with all original evidence in mitigation. *Porter*, 130 S.Ct. at 454-55; *Williams*, 529 U.S. at 397-98; *Wiggins*, 539 U.S. at 536; *Sears*, 130 S.Ct. at 3266. At most, the government may present its new expert to review the written conclusions of Drs. Young and Woods—on a highly limited basis, *if* scientifically reliable, relevant, and helpful to the specific question of mitigation—and reflect on their methodology and professional opinions. *See Porter*, 130 S.Ct. at 450-52. The Constitution does not countenance indiscriminate new testing by the government at this late stage of the proceedings.

**3.  In Addition to Clearly Established and Controlling Federal Law, the Principle of Fairness Enshrined in Decades of U.S. Supreme Court Jurisprudence Also Prohibits New Testing of Mr. Barrett by the Government**

Again, clearly established and controlling federal law under the *Strickland* line of cases demands that no new aggravating evidence be interjected into the proceedings in response to Mr. Barrett's assertion of ineffective assistance of counsel. This clearly-established and controlling rule has been applied for well over a decade by the U.S. Supreme Court, and it also has been dutifully applied by the Tenth Circuit Court of Appeals. *Williams*, 529 U.S. at 397-98 (when

assessing prejudice, courts must "evaluate the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding" and "reweig[h] it against the [original] evidence in aggravation" presented during the penalty phase of the trial); *Wiggins*, 539 U.S. at 536 (same; no new aggravating evidence); *Porter*, 130 S.Ct. at 454-55 (same; no new aggravating evidence); *Sears*, 130 S.Ct. at 3266 (same; no new aggravating evidence); *Hooks*, 689 F.3d at 1202 (same; no new aggravating evidence); *Smith*, 379 F.3d at 941-44 (same; no new aggravating evidence).

Although the government now demands testing of the Petitioner, any such examinations would violate the overarching precept of fairness enshrined in several decades of U.S. Supreme Court jurisprudence. The principle of finality transparently informs post-conviction proceedings: certain things both parties would like are no longer permitted, but governing U.S. Supreme Court authority protects both the government and Petitioner in a co-equal fashion. *See, e.g., Engle v. Isaac,* 456 U.S. 107, 135 (1982) (principle of finality informs concepts of cause and prejudice); *Purvis v. Crosby*, 451 F.3d 734, 741-43 (11th Cir. 2006) (concluding "[t]he principle that collateral review is different from direct review resounds throughout [U.S. Supreme Court] habeas jurisprudence").

Here, *Strickland's* prejudice analysis disallows new evidence in aggravation from the government in response to ineffective assistance of counsel claims due to failure to mitigate under *Williams*, just as complementary procedural default rules employ the very same prejudice analysis to limit Mr. Barrett from introducing unrelated, defaulted legal issues in later motions to vacate. *See Id.*; *see, e.g., Williams*, 529 U.S. at 537-8 (no new aggravating evidence for government in post-conviction); *cf., e.g.*, *McClesky v. Zant,* 499 U.S. 467, 493 (1991) (citations omitted) "[w]e have held that a procedural default will be excused [only] upon a showing of

cause and prejudice . . . .”). The proceedings become increasingly final, but parity, fairness, and fundamental justice are preserved through the operation of off-setting bars: no unrelated new evidence for the government, no unrelated, defaulted legal issues for Petitioner.

**B. If the Court Permits the Government's New Proposed Expert to Testify—Even Without New Testing, Solely on Basis of the Written Record Alone—The Important Principle of Judicial Economy Will Be Imperiled**

The principle of judicial economy would be woefully undermined by allowing new experts from the government to infiltrate the upcoming evidentiary hearing. The U.S. Constitution zealously safeguards Mr. Barrett's entitlement to present as much mitigating evidence as possible—virtually without limit—in order to prevent wrongful execution of those with lesser moral culpability. *See, e.g., Lockett v. Ohio*, 438 U.S. 586, 604 (1978).

Supreme Court jurisprudence emphasizes, time and time again, the insistent constitutional imperative that all mitigating evidence must be considered in capital contexts. *Id; Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982); *McKoy v. North Carolina*, 494 U.S. 433, 435 (1990). Whether or not the government's proposed expert is permitted to testify at the evidentiary hearing, there is no conceivable constitutional authority for now curtailing Mr. Barrett's right to introduce additional new mitigating evidence. —*i.e.,* evidence submitted to demonstrate ineffective assistance of counsel due to failure to investigate and present new mitigating evidence. Virtually all reviewing courts recognize that admitting rebuttal testimony by new government experts at this late stage—even without new testing—poses too great a constitutional danger, proves practically impossible to administer, and represents false judicial economy.

**C. In the Event of Any Retesting by Respondent. Mr. Barrett Should be Afforded the Presence of Counsel During Evaluation, and the Government Should be Subjected to Video Monitoring Protocols, to Guard Against Additional Possible Constitutional Violations**

    **1. If the Court Allows Any New Testing by Experts, Mr. Barrett Should be Afforded Presence of His Counsel to Ward Against Sixth Amendment and Fifth Amendment Violations and to Help to Ensure Reliability of Results as Demanded by the Eighth Amendment**

For the foregoing overriding constitutional reasons, the Court should deny any additional psychiatric or other examinations of Mr. Barrett by Respondent. In the event the Court permits any such interviews and testing, however, Petitioner requests the Court to allow one of his attorneys, their agents, or another appropriate member of his post-conviction team to be present during any evaluation conducted by the government's expert(s). Without benefit of counsel, new testing by the government would serve as an open invitation for Respondent's expert(s) to manipulate Mr. Barrett and amass new aggravating evidence or other incriminating matter in derogation of the Sixth Amendment and the Fifth Amendment of the U.S. Constitution. *See, e.g., Porter*, 130 S.Ct. at 454-55 (citations omitted); *Williams*, 529 U.S. at 397-98; *Wiggins*, 539 U.S. at 536; *Sears*, 130 S.Ct. at 3266; *see also See Estelle v. Smith*, 451 U.S. 454, 462-63, 64-65, 68-69 (1981) (Fifth Amendment violation; "[w]e can discern no basis to distinguish between the guilt and penalty phases of respondent's capital murder trial so far as protection of the Fifth Amendment privilege is concerned;" "[t]he Fifth Amendment privilege is 'as broad as the mischief against which it seeks to guard.'"). Moreover, because an expert may interpret an inmate's uncooperative or hostile behavior as evidence that the inmate is malingering and, therefore, possesses a rational understanding of his predicament, it is also essential that Mr. Barrett's counsel be present to facilitate any such evaluation for purposes of ensuring the heightened reliability of findings required by the Eighth Amendment. *Cf. Lockett*,

Response to Governments Motion For
Psychiatric Evaluation of Defendant      17      *Barrett v. USA*
OKED Case No. 6:09-cv-00105-JHP

438 U.S. at 604 (noting that the "qualitative difference between death and other penalties calls for a greater degree of reliability" in death penalty proceedings). Counsel's presence may reduce or alleviate his possible anxiety or opposition to testing that could otherwise lead to invalid results.

A court should weigh concerns that third-party observers in the examination room could undermine the integrity of testing. However, such concerns should not lead it to impose an automatic prohibition on all third-party observers. Instead, a court should consider the specific circumstances of each case, and then exercise its discretion to allow third-party observation. *See, e.g.*, *Morrison v. Stephenson*, 244 F.R.D. 405, 406-07 (S.D. Ohio 2007). The primary consideration should be whether the third party's presence would facilitate or detract from the validity or fairness of any such testing. *See* American Psychological Association, Statement on Third Party Observers in Psychological Testing and Assessment: A Framework for Decision-Making (2007) at 4 ("The overall goal of any situation surrounding the formal psychological evaluation of an individual is to maximize the assessment conditions to complete the most valid and fair evaluation in order to obtain the best data possible"). For example, if an examinee is highly anxious or disruptive in while being tested, and if a third-party observer would mollify the examinee, then to proceed without the third-party observer could undermine the validity of any testing results. APA Statement at 2; *see id.* at 1 ("[I]n some cases, the presence of a third party may help develop and sustain rapport in order to facilitate validity"). The presence of counsel would help to ward against questioning by experts that risk further violations of the Sixth Amendment and the Fifth Amendment. As long as counsel for Petitioner takes steps, in consultation with Respondent's experts, to facilitate fairness of the testing and minimize any distraction his presence may cause, the Court should allow Mr. Barrett's counsel to attend any

Response to Governments Motion For
Psychiatric Evaluation of Defendant                18                                    *Barrett v. USA*
                                                        OKED Case No. 6:09-cv-00105-JHP

examination that the court might order.

**2. If the Court Permits New Examinations by Respondent's New Expert, it Should Also Allow Videotaped Monitoring of the Evaluation to Shield Against Constitutional Violations and Enhance Reliability of the Results**

In the event of any new testing by Respondent, counsel for Mr. Barrett does not oppose

the Government's request to order videotaping of the expert evaluation by Dr. Pitt to facilitate

resolution of Petitioner's claims.

## IV. CONCLUSION

For the aforesaid reasons, the government's Motion to Conduct a Psychiatric

Evaluation of Defendant (Doc 253) should be denied.

DATED:  November 23, 2016                    Respectfully submitted,

                                             /s/ *David Autry*
                                             **DAVID AUTRY**, OBA No. 11600
                                             Attorney at Law

                                             /s/*Joan M. Fisher*
                                             **JOAN M. FISHER**, Idaho Bar No. 2854
                                             Assistant Federal Defender

**CERTIFICATE OF ELECTRONIC SERVICE AND DELIVERY**

This is to certify that on this 23rd day of November, 2016, I caused the foregoing

Petitioner's Response to the Government's Motion to on for Leave to Conduct Discovery and

Memorandum and Authorities to be filed with the Clerk of the Court using the ECF System for

filing, with service via CM/ECF to be made to Christopher J. Wilson, AUSA, Jeffrey B. Kahan,

U.S. Department of Justice, and to all counsel of record.  To counsel's knowledge, there are no

non-ECF registrants who are counsel in this case.


/s/ Joan M. Fisher
JOAN M. FISHER