**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **KENNETH EUGENE BARRETT**, | ) | |
| | ) | |
| Petitioner/Defendant, | ) | |
| | ) | Case No. CV-09-00105-JHP |
| v. | ) | |
| | ) | |
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Respondent/Plaintiff. | ) | |

**GOVERNMENT'S MOTION TO EXCLUDE PROPOSED WITNESSES**

---

**MARK F. GREEN**
United States Attorney
Eastern District of Oklahoma

CHRISTOPHER J. WILSON, OBA # 13801
Assistant United States Attorney
520 Denison Avenue
Muskogee, OK 74401
Telephone: (918) 684-5100
FAX: (918) 684-5150


JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Unit
U.S. Dept. of Justice
1331 F Street, NW; 6th Fl.
Washington, DC 20530
Telephone: (202) 305-8910
FAX: (202) 353-9779

**GOVERNMENT'S MOTION TO EXCLUDE PROPOSED WITNESSES**

**TABLE OF CONTENTS**

PROCEDURAL HISTORY.................................................................................................. 2

ARGUMENT ................................................................................................................... 2

THE COURT SHOULD LIMIT BARRETT TO WITNESSES WHO CAN TESTIFY ABOUT
FOREGONE PENALTY PHASE EVIDENCE.......................................................................... 2

    A.   Proposed Witnesses with Knowledge of Guilt Phase Issues ........................................... 4

    B.   Proposed Witnesses to Current Mental Health Opinions................................................. 7

    C.   Proposed Witnesses Whose Testimony Does not Relate Back to an Existing Claim.... 10

    D.   Proposed Witnesses Whose Testimony Does not Relate to Any Current Issue............. 12

CONCLUSION.............................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Bobby v. Van Hook*, 558 U.S. 4, 7, 10-12 (2009) ........................................................... 13

*Bonfillo v. United States*, Civil no. 15-1015, 2016 WL 6124487 (W.D. Pa. Oct. 20, 2016).......... 3

*Breechen v. Reynolds*, 41 F.3d 1343 (10th Cir. 1994).................................................... 8

*Cullen v. Pinholster*, 563 U.S. 170 (2011)................................................................. 3

*Dean v. United States*, 278 F.3d 1218 (11th Cir. 2002)................................................. 11

*Mayle v. Felix*, 545 U.S. 644 (2005)...................................................................... 11

*Strickland v. Washington*, 466 U.S. 668 (1984) ....................................................... 8, 13

*Thomas v. Gilmore*, 144 F.3d 513 (7th Cir. 1998)......................................................... 8

*United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007)................................................. 2

*United States v. Barrett*, 797 F.3d 1207 (10th Cir. 2015)................................... 2, 3, 8, 13

*United States v. Basham*, 561 F.3d 302 (4th Cir. 2009) .................................................. 3

*United States v. Espinoza-Saenz*, 235 F.3d 501 (10th Cir. 2000)........................................ 11

*United States v. Francischine*, 512 F.2d 827 (5th Cir. 1975) ............................................ 3

*United States v. Guerrero*, 488 F.3d 1313 (10th Cir. 2007) ............................................ 10

*United States v. Lujan*, 603 F.3d 850 (10th Cir. 2010)................................................... 3

*United States v. McVeigh*, 153 F.3d 1166 (10th Cir. 1998).............................................. 3

*United States v. Weeks*, 653 F.3d 1188 (10th Cir. 2011) .............................................. 11

*United States v. Willis*, 202 F.3d 1279 (10th Cir. 2000)............................................... 10

*Wiggins v. Smith*, 539 U.S. 510 (2003).................................................................. 3

**Statutes**

18 U.S.C. § 3593............................................................................................. 3

28 U.S.C. § 2255 ................................................................................................. 2, 3, 4, 5, 10

**Rules**

Federal Rule of Criminal Procedure 12.2 ...................................................................... 9

Federal Rule of Evidence 401 ...................................................................................... 3

Local Civil Rule 7.1(g) ................................................................................................ 1

Local Criminal Rule 12.1 ............................................................................................. 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KENNETH EUGENE BARRETT**, | ) | |
| | ) | |
| Petitioner/Defendant, | ) | |
| | ) | Case No. CV-09-00105-JHP |
| v. | ) | |
| | ) | |
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Respondent/Plaintiff. | ) | |

### GOVERNMENT'S MOTION TO EXCLUDE PROPOSED WITNESSES

**COMES NOW** the United States of America, by and through undersigned counsel and respectfully moves this Court to issue an order excluding Paul Gordon, Edward Hueske, George Kirkham, Charles Sanders, Janesse Thomas, Mike Mackey, Billy Poindexter, Dewey Padgett, Hon. John Garrett, Erin Bigler, Thomas Kosten, Deborah Miora, Thomas Reidy, Pablo Stewart, Gaylan Warren, Richard Burr, Julia O'Connell, Susan Otto, Gary Philpot, John Philpot, Amanda Grizzle and Christine Calbert as witnesses for the upcoming evidentiary hearing in this matter. The government also urges the Court to order Barrett to provide an offer of proof, so that it can determine the relevance and timeliness of testimony from proposed witnesses Dale Anderson, Isaac Barrett, Tamara Bedwell, Faust Bianco, Courtney Burke, Cindy Crawford, Martin Daggs, Sharon Greenfeather, Robert Gude, Scharlette Holdeman, Judy House, Gary Nelson, Steven Sinyard, Geoffrey Standing Bear, Ellen Stovell, Jan Walkingstick and Randy Weaver. Pursuant to Local Civil Rule 7.1(g) and Local Criminal Rule 12.1, government counsel consulted by e-mail with Barrett's attorney, David Autry, who opposes this motion.

1

## PROCEDURAL HISTORY

Barrett's was convicted of three homicide offenses he committed when a state police tactical unit attempted to serve a warrant at his home.  The trial jury recommended a death sentence that this Court imposed, and the Tenth Circuit Court of Appeals affirmed the judgment on appeal.  *United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007), *cert. denied*, 552 U.S. 1260 (2008).  This Court subsequently denied § 2255 relief on all grounds.  Doc. 214.  On appeal, the Tenth Circuit denied relief as to all guilt-phase issues, but remanded for an evidentiary hearing to determine whether trial counsel, Roger Hilfiger and Bret Smith, ineffectively failed to investigate and present evidence about Barrett's background and mental health.  *United States v. Barrett*, 797 F.3d 1207, 1232 (10th Cir. 2015).

In accordance with this Court's scheduling order (Doc. 246), Barrett provided the government with a list of 71 proposed witnesses for appearance at the evidentiary hearing (Ex. 1), by declaration or live testimony.  The government respectfully asks this Court to issue an order that limits Barrett to witnesses who can offer testimony relevant to the issue on remand.  Barrett's attorneys object to this request.

## ARGUMENT

### THE COURT SHOULD LIMIT BARRETT TO WITNESSES WHO CAN TESTIFY ABOUT FOREGONE PENALTY PHASE EVIDENCE

This Court has noted the limited nature of the hearing contemplated by the Tenth Circuit, explaining that it "expects to hear live testimony from trial counsel whose conduct is at issue but otherwise encourages the submission of written exhibits in lieu of live testimony."  Doc. 246.  The hearing has one purpose: "to determine what evidence could have been presented at the

sentencing phase of Petitioner's trial in 2005 and whether Petitioner was prejudiced as a result of a lack of presenting that evidence in his trial." Doc. 248. More specifically, the Court has observed "The Tenth Circuit has not allowed this evidentiary hearing for the purpose of trying to resurrect issues which have been fully resolved." Doc. 279 at 1 (further noting that questions regarding intent are irrelevant to the upcoming hearing).

Despite the narrow scope of the upcoming hearing, Barrett appears intent upon calling witnesses who can only offer irrelevant testimony. The Federal Rules of Evidence generally apply to evidentiary proceedings under 28 U.S.C. § 2255. *United States v. Francischine*, 512 F.2d 827, 829 (5th Cir. 1975); *see Bonfillo v. United States*, Civil no. 15-1015, 2016 WL 6124487, *7 (W.D. Pa. Oct. 20, 2016). While the upcoming § 2255 hearing concerns the presentation of evidence at a capital penalty phase proceeding, relevance remains a threshold concern, despite the liberal evidentiary provision of the Federal Death Penalty Act, 18 U.S.C. § 3593(c). *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010). Relevance has the same meaning under § 3593(c) as it does under Federal Rule of Evidence 401. *Lujan*, at 854. (citing *United States v. McVeigh*, 153 F.3d 1166, 1212-13 (10th Cir. 1998) and *United States v. Basham*, 561 F.3d 302, 331-32 (4th Cir. 2009)). Specifically, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the [information]." Fed. R. Evid. 401.

As the Tenth Circuit recognized in this case, "'as a general rule counsel has a duty to pursue leads indicating a defendant's troubled background and diminished mental capacity.'" *Barrett*, 797 F.3d at 1223 (quoting *Wiggins v. Smith*, 539 U.S. 510, 523-25 (2003). However, "'[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the

3

variety of circumstances faced by defense counsel or the range of legitimate decisions.'" *Id.* (citing *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011)).

    A.  <u>Proposed Witnesses with Knowledge of Guilt Phase Issues</u>

It appears that Barrett intends to call nine witnesses who can offer testimony relevant only to guilt phase issues that have been disposed of during the course of this litigation. Specifically, Barrett proposes to call Paul Gordon, Edward Hueske, George Kirkham, Charles Sanders, Janesse Thomas, Billy Poindexter, Mike Mackey, Dewey Padgett, and the Honorable John Garrett. Ex. 1. This Court has recognized that guilt phase evidence is inconsequential to the upcoming hearing, and it should bar witnesses who cannot offer relevant testimony.

    Paul Gordon was an Oklahoma Highway Patrol investigator who criticized his agency's tactical entry on Barrett's property, which gave rise to the homicide in this case. Though Gordon did not testify in this trial, the defense frequently alluded to him. *See e.g.*, Tr. 3:630, 632; 4:686, 812, 816; 5:1071, 1075, 1119-20, 1129, 1142-43; 6:1204, 1291-94, 1297-98, 1325, 1329-30; 7:1549, 1559; 17:4040-41, 4047-51. Barrett later proffered Gordon in support of a failed motion to supplement his § 2255 motion and in his first motion to file a second or subsequent § 2255 motion. Doc. 201; 10th Cir. case no. 16-7035 Doc. 01019619073. At no time, has Barrett suggested the Mr. Gordon has knowledge of the defendant's mental health or social history.

Edward Hueske is a crime scene reconstruction expert, who consulted with Barrett's defense during his state trials. During the federal trial, this Court authorized the defense to hire Hueske, but they elected not to do so, prompting a claim of ineffective assistance of counsel. Doc. 95 at 127-39. Barrett has never suggested that Hueske has personal knowledge of him, and

there exists no reason to suspect that he can offer any information about the defendant's mental health or social history.[1]

George Kirkham is a police tactics expert.  As with Hueske, this Court authorized funds to hire Kirkham, but the defense elected to forgo his testimony, prompting a guilt-phase § 2255 claim of ineffective assistance of counsel.  Doc. 95 at 139-43.  According to Barrett, Kirkham will "address the mitigating circumstance of law enforcement's failure to adequately consider the emotional instability of a known meth user with other evident mental health issues in the planned execution of the search warrant."  Doc. 280 at 3.  Barrett also proffers Kirkham "to address the mitigating circumstance of law enforcement's failure to adequately consider the emotional instability of a known meth user with other evident mental health issues."  *Id.*  But Barrett did not offer a mitigator based on the alleged errors of the Tact team, and no so such omission is at issue on remand.  Barrett offers no reason to believe that the proposed witness can offer any relevant testimony about his mental health, social history, or communications with counsel.

Charles Sanders, the confidential informant described in the state search warrant affidavit, testified that Barrett often had methamphetamine at his residence and that he had observed Barrett sell methamphetamine from his residence.  Tr. 11: 2511, 2515, 2520-22, 12: 2631-33.  Sanders further testified that Barrett knew of the warrant for his arrest, kept firearms, and had threatened to kill law enforcement officers if they attempted to serve the warrant.  According to Sanders, Barrett said that he hoped the first people through his door were either Sheriff Philpot or Drug Task Force Agent Frank Lloyd.  Tr. 11: 2515.  Barrett's § 2255 motion

---

[1] Barrett did not list Hueske in his written summary of anticipated expert testimony (Doc. 208).  If he intends to offer Hueske as an eyewitness to some factual matter, perhaps related to counsel's performance, the government objects that the testimony will relate back to the sole timely-presented issue remaining in this case.  *See generally*, *infra*, § C; 28 U.S.C. § 2255(f).

made frequent reference to Sanders, but never indicated that the putative witness had any knowledge of his mental health or social history. Indeed, Barrett complained at length that his trial attorneys failed to adequately impeach Sanders or otherwise establish his lack of reliability. *See e.g.* Doc. 95 at 44-47, 81-108. Barrett provides no hint why he would present a witness whose testimony he has previously attempted to undermine, and nothing in the record indicates that Sanders could provide meaningful insight into the issues before the court – the defendant's social history and mental health.

Janesse Thomas was offered in the § 2255 motion as someone who could impeach and contradict Sanders. Doc. 95 at 266. This Court disposed of that issue, which the Court of Appeals neither considered nor revived. Doc. 214; *see* Doc. 279 at 1-2. As to the existing issues, Ms. Thomas is an unlikely witness. She became acquainted with Barrett in the mid-1990s, occasionally received drugs him, and last saw him about a year before the murder. Doc. 174 Ex. 3. She is not a mental health expert and knew the defendant briefly during his adulthood. It does not appear that she can offer any testimony about the defendant's social history or emotional well-being.

Barrett proffered Billy Poindexter as a witness who could have impeached Charles Sanders. Doc. 95 Exh. 76. Poindexter's declaration provides no hint that he had any acquaintance with Barrett, Barrett's family, or Barrett's mental health. *See id.* Barrett did not rely on Poindexter's declaration in the claim that gave rise to the upcoming hearing. *See* Docs. 95 at 185-42, 149 at 102-25, 178 at 69-112. Seemingly, Poindexter lacks any relevant knowledge of the issues before this Court.

Like Thomas and Poindexter, Michael Mackey was offered in the § 2255 motion as someone who could impeach a guilt phase trial witness. Specifically, Barrett offered Mackey to

6

impeach Cindy Crawford. Doc. 95 Ex. 88. It appears Mackey ranches cattle in Alva, Oklahoma, and has no known connection to the defendant's family or any expertise in mental health. As such, it does not appear he can offer any testimony relevant to the pending issues.

In the § 2255 motion, Barrett proposed that Dewey Padgett, a barber in Sallisaw, could testify about the defendant's mental state as a possible defense to the substantive charges. Doc. 95 at 56 (citing Doc. 95 Exh. 79). Padgett's declaration does not, however, offer any insight into Barrett's mental health or social history. Doc. 95 Exh. 79. Rather, it offers lay opinions about the conduct of the police raid and the subsequent federal prosecution of the defendant. *Id*. Assuming those opinions provided some support for the claim in which Barrett cited them, they certainly provide no insight into the issues remaining in the case. Moreover, the declaration indicates that the witness could offer little more than hearsay accounts of any relevant fact.

Judge John Garrett presided over Barrett's two state trials regarding the Eales homicide. According to Barrett's Motion to Amend his § 2255 action, Judge Garrett could have provided character testimony about two guilt phase witnesses, Charles Sanders and Clint Johnson. Doc. 201. Barrett also argued that Garrett could have offered testimony that would have led this Court to deny a request for the defendant to wear a stun belt during trial. None of the knowledge Barrett has attributed to the state court judge concerns the penalty phase generally, or the issues before this Court specifically. Certainly, there is no reason to believe that Judge Garrett would have presided over the murder trials of a personal acquaintance or, by extension, any reason to think that he has any knowledge of the defendant's mental health or social history.

The Court should exclude the irrelevant testimony of Gordon, Hueske, Kirkham, Sanders, Thomas, Poindexter, Mackey, Padgett, and Garrett.

B. Proposed Witnesses to Current Mental Health Opinions

7

Barrett intends to call several expert witnesses who can offer opinion that was not available to trial counsel or event § 2255 counsel at the time they filed their last of four § 2255 motions. *Cf*. Docs. 1, 2, 70 & 95. Specifically, Barrett proposes to call Erin Bigler, Thomas Kosten, Deborah Miora, Thomas Reidy, and Pablo Stewart. Ex. 1; Doc. 280. The proposed witnesses will offer testimony about present-day evaluations and opinions that Barrett has never claimed were available to trial counsel or constitutionally necessary for his case.

To establish that counsel's performance was deficient, Barrett must establish counsel made errors so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this test, the Court determines "not what is prudent or appropriate, but only what is constitutionally compelled." Doc. 214 at 136 (quoting *Breechen v. Reynolds*, 41 F.3d 1343, 1365 (10th Cir. 1994)). Under the Constitution, "[a] reasonable investigation is not . . . the investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources but also with the inestimable benefit of hindsight, would conduct." *Id*. at 144 citing *Thomas v. Gilmore*, 144 F.3d 513, 515 (7th Cir. 1998)).

In its opinion remanding this case, the Court of Appeals found that trial counsel did not present potentially persuasive mental health evidence and "apparently did little to investigate [Barrett's] background or mental health." 797 F.3d at 1224, 1225. As such, the Tenth Circuit ordered resolution of three discrete questions: did counsel have indications that they should undertake a mental health investigation, did Barrett resist the presentation of evidence about his upbringing, and did counsel make an informed decision to portray Barrett as a beloved family member, rather than a mentally ill product of a dysfunctional home? *See id*. at 1226-29. The Tenth Circuit also asked this Court to determine the likely impact of mental health and social

8

history evidence identified in the § 2255 motion in light of the government's response. *Id*. at 1229-32.

The Tenth Circuit did not ask this Court to undertake a dress rehearsal for a wholly reconceived penalty phase trial as presented by defense attorneys unburdened by budget constraints or Rule of Criminal Procedure 12.2. In line with its limited mandate, this Court has recognized the existing mental health evaluations performed by Bill Sharp, Myla Young and George Woods. Doc. 279 at 2-3. But the Court has also stated that it does not believe contemporaneous evaluations provide "any insight . . . regarding mitigating evidence which was available to counsel at the time of Petitioner's criminal trial." *Id*. at 3.

Nonetheless, Barrett proposes that Erin Bigler would testify to his neuropsychological functioning, cognitive impairment, history of head trauma, and/or brain damage . . . . [and possibly] etiologies of Mr. Barrett's brain damage." Doc. 280 at 2. Thomas Kosten would testify about "review of Mr. Barrett's psychiatric, medical, and substance abuse histories; his social history; his review of prior evaluations of Mr. Barrett; and/or his own clinical evaluation of Mr. Barrett." *Id*. at 4. Deborah Miora would testify about "Barrett's psychological and neuropsychological functioning at the time of the offense" based on the opinions of Myla Young, Bill Sharp and George Woods. *Id*. Thomas Reidy would testify about a risk assessment of Barrett and "opine on the validity of various measures and techniques used in violence risk assessment as related to predicting "future dangerousness" in a prison context." *Id*. at 4-5. Pablo Stewart would opine about Barrett's ability to "perceive, understand, assess or evaluate and make judgments under the conditions at issue." *Id*. at 5.

Using these new experts, it appears Barrett intends to exploit the evidentiary hearing to present irrelevant opinion testimony meant to fortify existing theories or blunt the impact of

government-sponsored testimony.  Barrett seems anxious to reiterate existing opinions about his mental health, reduce the impact of his drug abuse on mitigation evidence, and blunt the psychopathy diagnosis offered by a government expert.[2]

The Tenth Circuit did not remand this case to determine if counsel could have presented a stronger case given the advantages of infinite resources, infinite time and infinite hindsight.  The only existing claim stems from a failure to call Myla Young and George Woods.  The trial record provides no reason to believe counsel would have reason to have retained or presented Bigler, Kosten, Miora, Reidy, or Stewart.  Accordingly, their putative testimony appears irrelevant, and the Court should exclude it.

C.  Proposed Witnesses Whose Testimony Does not Relate Back to an Existing Claim

Barrett intends to call Gaylan Warren, who would offer testimony about facts in support of untimely claims or facts that would render existing claims untimely.  Ex. 1; Doc. 280.  As such, this Court should bar Warren's testimony.  Additionally, several other listed witnesses have no apparent involvement in the issue before this Court, which should require an offer of proof that their testimony is relevant and relates back to the remaining habeas claim.

The Antiterrorism and Effective Death Penalty Act of 1996 imposes a one-year period of limitations in which federal prisoners may seek collateral relief from criminal judgments.  28 U.S.C. § 2255(f); *United States v. Willis*, 202 F.3d 1279, 1280 (10th Cir. 2000). The limitation period begins on the date the Supreme Court denies a defendant's petition for writ of certiorari from a direct appeal. *Willis*, 202 F.3d at 1280-81.  The limitation period bars untimely amendments that add new claims to an initial § 2255 motion.  *United States v. Guerrero*, 488

---

[2] With one expert, Reidy, Barrett seeks to adduce evidence to rebut a dangerousness aggravator that the jury rejected at trial.  *See* Trl. Doc. 258 at 13-18.

F.3d 1313, 1316 (10th Cir. 2007).  The limitation period is not an absolute bar to revisions: §

2255 movants may make untimely amendments that relate back to existing claims.  *United States*

*v. Espinoza-Saenz*, 235 F.3d 501, 504-05 (10th Cir. 2000).  An amendment that "clarifies or

amplifies" an existing claim relates back to the original motion.  *United States v. Weeks*, 653

F.3d 1188, 1206 n.12 (10th Cir. 2011) (quoting *Espinoza– Saenz*, 235 F.3d at 505); *see also*

*Mayle v. Felix*, 545 U.S. 644, 655 (2005) (holding amendments relate back "if the original and

amended pleadings arise out of the same conduct, transaction, or occurrence").  Thus, a proposed

amendment may not introduce a new theory based on facts different from those underlying

existing issues.  *See Dean v. United States*, 278 F.3d 1218, 1221 (11th Cir. 2002).

Gaylan Warren is a criminologist in the State of Washington.  Barrett proposes that he

will testify about "matters in mitigation regarding perception and response time in shooting

incidents, inconsistent testimony presented in the purported execution of a nighttime search

warrant . . . and whether or not emergency lights as described as described by some of the

witnesses would have, in fact, served as notice."  Doc. 280 at 6.  The testimony described bears

no meaningful relation to the issue on remand – whether trial counsel ineffectively investigated

and presented evidence of Barrett's mental health and social history.  Instead, it appears to

support theories this Court has already rejected.  Alternatively, the proposed testimony would

alter the existing claim in a manner that introduces a new theory based on facts different from

those in the existing issue.

Additionally, several other listed witnesses have no apparent connection to Barrett's

claim of ineffectiveness, as the defendant did not identify them in support of the contention.  *See*

Docs. 95 at 185-242, 149 at 102-25, and 178 at 69-112.  Specifically, Barrett has named Dale

Anderson, Isaac Barrett, Tamara Bedwell, Faust Bianco, Courtney Burke, Cindy Crawford,

11

Martin Daggs, Sharon Greenfeather, Robert Gude, Scharlette Holdeman, Judy House, Gary Nelson, Steven Sinyard, Geoffrey Standing Bear, Ellen Stovell, Jan Walkingstick and Randy Weaver.  This Court should require an offer of proof to determine whether those individuals can offer relevant testimony that relates back to the existing issue.

D.  Proposed Witnesses Whose Testimony Does not Relate to Any Current Issue

This Court should bar the testimony Richard Burr, Julia O'Connell, Susan Otto, Gary Philpot, John Philpot, Amanda Grizzle and Christine Calbert, who can testify to facts and opinions that do not relate to any issue before the Court.  Ex. 1; Doc. 280.  Unlike the other witnesses at issue in this motion, these seven appear to have knowledge about counsel or penalty phase evidence.  Nonetheless, the testimony of the aforementioned seven still will not illuminate the narrow ineffectiveness claim before the Court.

Richard Burr is a criminal defense attorney who provided a declaration in support of Barrett's § 2255 motion.  *See* Doc. 95 Exh. 118.  The declaration recounted Burr's working relationship with Barrett's former attorney, John Echols, and his low opinion of Mr. Hilfiger.  *Id*. at 2-3.   The declaration also provided a hearsay account of Mr. Echols's frustrations over the pre-trial budgeting process and Burr's efforts to support requests for the authorization of funding.  *Id*. at 3-4.  The declaration recounts Mr. Echols's departure from the case, and the fact that Messrs. Hilfiger and Smith did not thereafter seek Burr's assistance.  *Id*. at 4-5.  According to Barrett, Burr will "also testify to his familiarity with the community standards of prevailing professional norms in the defense of capital clients" around the time of the defendant's trial.  Doc. 280 at 2-3.

Mr. Burr's relationship with trial counsel is not an issue in this case, nor is his opinion about the prevailing professional norms of practice for this district.  After impliedly relying on

Burr's declaration, the Tenth Circuit found that trial counsel "also apparently did little to investigate [Barrett's] background or mental health through his family." 797 F.3d at 1225. The circuit court held, "Typically, this kind of superficial investigation would constitute deficient performance." *Id.* The court then remanded the case for consideration of the reasons why trial counsel elected to present a case in mitigation largely devoid of mental health or social history evidence and – assuming a showing of deficient performance under the circumstances – what prejudicial impact their tactics might have had. *Id.* at 1226-32.

The remand order obviates the need for Burr's putative testimony about his lack of contact with trial counsel or any supposed local norms of practice. The seminal authority in all ineffective assistance claims eschews the application of specific rules of practice:

> [T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like, *e.g.*, ABA Standards for Criminal Justice 4–1.1 to 4–8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

*Strickland*, 466 U.S. at 688-89; *see Bobby v. Van Hook*, 558 U.S. 4, 7, 10-12 (2009).

In view of *Strickland* and the Tenth Circuit's existing evaluation of counsel's performance, the Court has no need of evidence concerning Burr's opinions about prevailing professional norms. Furthermore, there exists no dispute whether trial counsel consulted with Burr. The government has never attempted to contradict Burr's statements in that regard. *See e.g.*., Doc. 174. Counsel had no professional obligation to seek the views of more experienced defense attorneys, and the Tenth Circuit has already made clear that the investigation undertaken and case presented would constitute deficient performance were it not a product of circumstance.

13

Those circumstances form the crux of the questions raised by the Tenth Circuit. Given that Burr insists that he did not consult with counsel before trial, he appears uniquely unqualified to provide even second-hand evidence about the relevant influences on counsel's strategies.

Ms. O'Connell is a federal public defender. According to a declaration she provided in support of Barrett's § 2255 motion, O'Connell turned down an appointment to represent the defendant based on her existing workload. Doc. 95 Exh. 67 at 1-2. She further declared that she provided Burr's contact information to Mr. Hilfiger after he left her a message that suggested he had underestimated the time and resources necessary for a complete mitigation investigation. *Id*. at 3-4. Ms. O'Connell's scant knowledge of this trial counsel's preparations would not shed light on any issue before the Court. Her decision to decline an appointment in this matter has no relevance, and her brief correspondence with Mr. Hilfiger does not inform the issues at bar. Indeed, Ms. O'Connell appears ignorant of the fact that Burr and Hilfiger were acquainted before her introduction. *See* Doc. 95 Exh. 118 at 2-3. Because Ms. O'Connell did not participate in the trial defense and appears to lack any knowledge about the circumstances that informed trial counsel's decisions, her testimony would not assist the Court.

Ms. Otto is also a federal public defender. According to a declaration she provided in support of the § 2255 motion, she advised this Court to appoint Robert Nigh, Gary Peterson or John Echols as trial counsel in this matter. Doc. 95 Exh. 54 at 2-4. Ms. Otto also recounted the Court's responses to her suggestions. Her recollection of the process by which Messrs. Smith and Hilfiger were appointed does not bear on their investigation and presentation of any mitigation evidence, much less that concerning mental health and social history. Because Ms. Oto did not participate at trial and has no apparent knowledge about the defendant or the bases of trial counsel's actions, her testimony would not assist the Court.

John and Gary Philpot were law enforcement officials in Sequoyah County during Barrett's residence there. *See* Trl. Tran. 8:1764 (noting Gary Philpot was chief of the Sallisaw Police Department), 8:1788-89 (noting John Philpot was sheriff of Sequoyah County). While John Philpot's mistreatment of the defendant formed the basis of a mitigating factor (*see* Trl. Doc. 258 at 21, 24 & 27), Barrett never relied on either brother as a witness to his mental health or social history. *See* Docs. 95 at 185-42, 149 at 102-25, 178 at 69-112. Given that the Court took evidence at trial about John Philpott's relationship with Barrett, there exists no reason to further explore the issue. Moreover, Barrett does not suggest that either Philpot brother possesses special knowledge about his family or mental health, much less trial counsel's tactical decision making. As such, it does not appear that either Philpot brother could offer the Court any relevant testimony.

Amanda Grizzle and Christine Calbert were custodians of records at law enforcement agencies in Sequoyah County who provided Barrett with declarations concerning the fate of certain documents. Doc. 95 Exhs. 40 & 42. Barrett has never relied on either individual as a witness to his mental health or social history (*cf*. Docs. 95 at 185-42, 149 at 102-25, 178 at 69-112) and there exists no basis in reason to suspect that they could offer meaningful testimony about those issues or the tactics of trial counsel.

## **CONCLUSION**

Based on the foregoing, the government respectfully urges this Court to exclude the testimony of Paul Gordon, Edward Hueske, George Kirkham, Charles Sanders, Janesse Thomas, Mike Mackey, Billy Poindexter, Dewey Padgett, Hon. John Garrett, Erin Bigler, Thomas Kosten, Deborah Miora, Thomas Reidy, Pablo Stewart, Gaylan Warren, Richard Burr, Julia O'Connell, Susan Otto, Gary Philpot, John Philpot, Amanda Grizzle and Christine Calbert and to require an offer of proof as to Dale Anderson, Isaac Barrett, Tamara Bedwell, Faust Bianco, Courtney Burke, Cindy Crawford, Martin Daggs, Sharon Greenfeather, Robert Gude, Scharlette Holdeman, Judy House, Gary Nelson, Steven Sinyard, Geoffrey Standing Bear, Ellen Stovell, Jan Walkingstick and Randy Weaver.

Dated: January 30, 2017:

Respectfully submitted,

MARK F. GREEN
United States Attorney
Eastern District of Oklahoma

/S/ *Christopher J. Wilson*
CHRISTOPHER J. WILSON, OBA # 13801
Assistant United States Attorney
520 Denison Avenue
Muskogee, OK 74401
Telephone: (918) 684-5100
FAX: (918) 684-5150

/S/ *Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Unit
U.S. Dept. of Justice
1331 F Street, NW; 6th Fl.
Washington, DC 20530
Telephone: (202) 305-8910
FAX: (202) 353-9779

## CERTIFICATE OF ECF FILING AND DELIVERY

I, hereby certify that on January 30, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  A Notice of Electronic Filing will be sent via the Court's ECF system to the following counsel of record for the Petitioner/Appellant:

Mr. David B. Autry dbautry44@hotmail.com
Ms. Joan M. Fisher Joan_Fisher@fd.org
Mr. Tivon Schardl Tim_Schardl@fd.org

/S/ *Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Unit

17