**DAVID AUTRY**, OBA No. 11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
Telephone:    (405) 521-9600
Facsimile:    (405) 521-9669
E-mail:        dbautry77@gmail.com

**HEATHER E. WILLIAMS**, CA Bar #122664
Federal Defender
**JOAN M. FISHER**, ID Bar #2854
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA 95814
Telephone:    (916) 498-6666
Facsimile:    (916) 498-6656
E-mail:        Joan_Fisher@fd.org

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KENNETH EUGENE BARRETT, | ) | **CAPITAL CASE** |
| | ) | |
| Petitioner, | ) | CASE NO. 6:09-cv-00105-JHP |
| | ) | |
| v. | ) | **OPPOSED MOTION TO** |
| | ) | **RECUSE AND DISQUALIFY** |
| UNITED STATES OF AMERICA, | ) | **THE COURT, AND BRIEF IN** |
| | ) | **SUPPORT** |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, Kenneth Eugene Barrett, moves to recuse and disqualify the Hon. James H. Payne, United States District Judge, from further participation in this case.  This motion is being filed under the authority of 28 U.S.C. § 455, the due process clause of the Fifth Amendment, and the Eighth

Opposed Motion to Recuse and
Disqualify the Court, and Brief in
Support                                        1                    *Barrett v. United States*,
                                                                   OK-ED No. 6:09-cv-00105-JHP

Amendment to the United States Constitution.[1]

The due process clause of the Fifth Amendment guarantees litigants the right to a neutral and detached judge. *Ward v. Village of Monroe,* 409 U.S. 57, 62 (1972); *In re Murchison,* 349 U.S. 133 (1959). Where a judge is not neutral and detached, structural error occurs. *Tumey v. Ohio,* 273 U.S. 510 (1927). Title 28 U.S.C. § 455(a) provides that a judge should recuse where "the impartiality of the judge might reasonably be questioned." *See also, Liteky v. United States,* 510 U.S. 540, 548 (1994). Even the appearance of partiality is to be avoided. *Nichols v. Alley,* 71 F.3d 347, 351 (10th Cir. 1995). "The test in this circuit is 'whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.'" *United States v. Cooley,* 1 F.3d 985, 993 (10th Cir. 1993) (citations omitted). Under § 455(a), a judge has "continuing duty to ask himself what a reasonable person, knowing all the relevant facts, would think about his impartiality." *United States v. Greenspan,* 26 F.3d 1001, 1005 (10th Cir. 1994).

At a minimum, the court has evinced the appearance of partiality in its discovery order. Indeed, certain language in that order shows the court has already pre-judged the performance prong of the *Strickland* test to Petitioner's detriment. *Strickland v. Washington*, 466 U.S. 668 (1984). This is one of the key issues the evidentiary hearing is supposed to resolve. The court has made a finding of fact rejecting Mr. Barrett's ineffectiveness claim before a scrap of evidence has been introduced at the hearing. The following language from the court's discovery order would lead any reasonable person to harbor significant doubts about the court's impartiality:

---

[1] The Eighth Amendment is relevant to this motion because capital cases require a heightened degree of reliability. Woodson v. North Carolina, 428 U.S. 280, 305 (1976). This obviously extends to a heightened need for reliable fact-finding by a neutral and detached judge.

Opposed Motion to Recuse and
Disqualify the Court, and Brief in
Support                                    2                          *Barrett v. United States*,
                                                                    OK-ED No. 6:09-cv-00105-JHP

> First, trial counsel did not have sufficient time to find all of the mitigating evidence that post-conviction counsel has provided and they would not have been able to locate all of the mitigating evidence which post-conviction counsel has now accumulated within the amount of time between the filing of the indictment and the criminal trial.  Second, the prosecutor would have been required to rebut whatever evidence trial counsel put on in a very short amount of time (with the exception of expert testimony), *i.e.*, overnight in many instances." (Doc. 269, pp. 12-13)

How does the court know this, before any evidence has been heard at the hearing ordered by the Tenth Circuit?  It is not evident from the pleadings filed in the § 2255 action.  The court's peremptory finding against Mr. Barrett as to *at least* the performance prong of the *Strickland* test raises the clear inference that it learned of this disputed "fact" from an extra-judicial source, and not during the course of the proceedings,  *Liteky,* 510 U.S. at 550-51, 555 (stating that generally, but not exclusively, disqualification for bias under § 455(a) must stem from an "extra-judicial" source).

Moreover, the record in the underlying criminal case shows this disputed fact, which the court has in effect already found in favor of the government, is incorrect.  *United States v. Barrett,* No. CR-04-115-JHP.  Mr. Barrett was charged by complaint on September 23, 2004.  (Doc. 1)  On October 25, 2004, he made his initial appearance on the complaint, represented by John Echols *and Roger Hilfiger.* Mr. Echols and Mr. Hilfiger were appointed to represent Mr. Barrett that same day.  (Doc. 5)  The grand jury indictment was returned on November 9, 2004.  (Doc. 9)  Although the notice of intent to seek the death penalty was not filed until February 15, 2005 (Docs. 59, 60), it was known all along, as a practical matter, that this would be a death penalty case.  The only reason this case was brought in federal court was in an effort to secure the equivalent of a first-degree murder conviction and the death sentence the state prosecutors had failed to achieve.  After Mr. Echols was allowed to withdraw and Mr. Hilfiger was elevated to first chair as learned counsel, Bret Smith was appointed on May 13, 2005.  (Doc. 130)  The court continued jury selection to August 29, 2005, with trial set for September 2005.  (Doc. 142)  The jury was sworn and the trial proper commenced on September 26, 2005.  Therefore, by

Opposed Motion to Recuse and
Disqualify the Court, and Brief in
Support                                                            3                                    *Barrett v. United States*,
OK-ED No. 6:09-cv-00105-JHP

the time trial started on September 26, 2005, Mr. Hilfiger had been on the case for 11 months from the time of his appointment on October 25, 2004. Although Mr. Smith was not appointed until May, 2005, Mr. Barrett had the assistance of Mr. Echols until this time.

Certiorari was denied following Mr. Barrett's direct appeal on March 26, 2008. (Doc. 363) Following appointment in late March, 2008, habeas counsel David Autry and Tivon Schardl entered their appearances on April 1, 2008 and April 2, 2008, respectively. (Docs. 372, 373) On March 16, 2009, habeas counsel filed the initial § 2255 petition and exhibits, including the reports of mental health experts and lay mitigation witnesses that will be the subject of the evidentiary hearing. (Docs. 403, 404) A corrected § 2255 petition was filed on March 17, 2009. (Doc. 405)

Thus, trial counsel, including Mr. Hilfiger, had been on Mr. Barrett's case continuously for a period of 11 months before the jury was sworn and the trial began. At the time the § 2255 petition with the "omitted" mitigating evidence that is the subject of the evidentiary hearing was filed, habeas counsel had been on the case approximately 11 and one-half months. It goes without saying that before the habeas mitigation investigation could commence, counsel had to review the voluminous record, engage the services of investigators and experts, and the like. So, in actuality, the mitigating evidence Mr. Barrett contends could have been discovered with due diligence and a reasonable investigation before trial was compiled by habeas counsel in well-less than 11 months.

Beyond this, while disqualification for bias or the appearance of bias must *generally* be grounded in an "extra-judicial" source (which circumstances plainly indicate was the basis for the above-quoted remark from the court's discovery order), disqualification for bias or its appearance may also be grounded from remarks by a judge in judicial proceedings which reveal an "excessive bias."

> A favorable or unfavorable predisposition can also deserve to be characterized
> as "bias" or "prejudice" because, even though it springs from the facts adduced
> or the events occurring at trial, it is so extreme as to display a clear inability to

Opposed Motion to Recuse and
Disqualify the Court, and Brief in
Support                                4                                *Barrett v. United States*,
OK-ED No. 6:09-cv-00105-JHP

render fair judgment.

*Liteky*, 510 U.S. at 555.

Because the court's above-quoted comment from its discovery order shows the court has already made up its mind and reached conclusions on trial counsel's ineffectiveness, at least as to *Strickland's* performance prong, which would in effect lead to a finding that trial counsel were not Ineffective. it has already demonstrated a clear inability to render fair judgment, or the appearance of an inability to do so.

But that is not all.  This court has also evinced a disqualifying bias or the appearance of an inability to render fair judgment to any reasonable observer in its interference with defense counsel and its denial of necessary expert assistance from Dr. Pablo Stewart.  The court initially believed that it would have to disburse funds from the court's own "purse" for Dr. Stewart to be retained.  When this turned out not to be the case, because Dr. Stewart was going to be paid from funds available to the Federal Public Defender for the Eastern District of California, the court denied Dr. Stewart access to Mr. Barrett at USP Terre Haute because Mr. Barrett already had too many experts.  The court was also under the mistaken impression that anything Dr. Stewart could glean would only be relevant to Mr. Barrett's mental state in 2016-2017, not to his mental state in 1999 at the time of the offense or at the time of the federal trial in 2005.[2] The following remarks from various orders of the court are pertinent here:

> Petitioner claims this Court's order denying the requested mental health examination, which will undoubtedly focus upon Petitioner's current mental health as opposed to his mental health of September 24, 1999, is a denial of his rights ... .
> ...

---

[2] After some wrangling, the court did permit Dr. George Woods, who has been one of Mr. Barrett's mental health experts throughout these habeas proceedings, access to Mr. Barrett at the prison. Barrett v. United States, No. CV-09-00105-JHP. (Doc. 288)

Opposed Motion to Recuse and
Disqualify the Court, and Brief in
Support                                5                                *Barrett v. United States*,
OK-ED No. 6:09-cv-00105-JHP

> Moreover, this is not a case where the defendant has never been examined by any psychiatric or mental health experts. Rather, according to the record herein, Petitioner has been examined by mental health professionals hired by counsel on, at least four separate occasions." [footnote omitted]

(Doc. 279, p. 4)

> Further, while the government indicates this Court has "exercised its discretion to permit the retention of Dr. Stewart as a mental health expert," this Court has not previously ruled on the retention of Dr. Stewart.

(Doc. 276, pp. 1-2)

> This Court believes the testing and examination of Petitioner which has occurred over the past fourteen (14) years is more than sufficient to adequately address the issues in the upcoming evidentiary hearing. Therefore, Petitioner's motion is **denied**. (emphasis in original)

(Doc. 276, p. 2)

> While counsel have stated the examination will not be duplicative, this Court is not convinced that the evaluation would not be a repeat of previous evaluations. Furthermore, as this Court has tried to communicate previously, *see* Dkt. #s 248 and 276, this Court does not believe a psychological evaluation conducted fourteen years after the shooting in this case, provides any insight to the Court regarding mitigating evidence which was available to counsel at the time of Petitioner's criminal trial in this Court. As a result, Petitioner's Motion to Reconsider Expedited Motion for Order of Access to Petitioner by Mental Health Expert (Dkt. #277) is **denied**." (emphasis in original)

(Doc. 279, pp. 3-4)

Yet, even though the court denied Dr. Stewart access to Mr. Barrett to conduct an examination, it granted the government's motion to have him examined by an expert of their choosing at this late date, Dr. Steven Pitt, D.O. (Doc. 269, pp. 12-15) The obvious question arises: if, according to the court's analysis, Dr. Stewart would be unable to find anything pertinent to Mr. Barrett's mental state at the "relevant time," how could Dr. Pitt, who conducted his examination in January, 2017, do so in order to rebut Mr. Barrett's mitigating mental health evidence? Under the authority cited above, this stark anomaly in treatment of the defense and the government raises both

Opposed Motion to Recuse and
Disqualify the Court, and Brief in
Support                                          6                          *Barrett v. United States*,
                                                                            OK-ED No. 6:09-cv-00105-JHP

the *appearance* of partiality and the *fact* of actual bias, as any reasonable observer knowing all the facts and circumstances would conclude.

Based on the foregoing argument and authority, the court should recuse and disqualify itself from further participation in Mr. Barrett's case.

## Certificate of Conference

Mr. Barrett's counsel conferred with opposing counsel in an effort to resolve this issue. The government opposes this motion.

DATED this 1st day of February, 2017

RESPECTFULLY SUBMITTED,

/s/ *David Autry*
DAVID AUTRY

/s/ *Joan M. Fisher*
JOAN M. FISHER

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

Opposed Motion to Recuse and
Disqualify the Court, and Brief in
Support                                7                          *Barrett v. United States*,
OK-ED No. 6:09-cv-00105-JHP

## CERTIFICATE OF GOOD FAITH

David Autry and Joan M. Fisher, counsel for Kenneth Eugene Barrett, hereby certify, pursuant

to 28 U.S.C. § 455, that the foregoing motion to recuse and disqualify the Hon. James H. Payne is

being submitted in good faith.

/s/ *David Autry*
DAVID AUTRY

/s/ *Joan M. Fisher*
JOAN M. FISHER

Opposed Motion to Recuse and
Disqualify the Court, and Brief in
Support                                    8                          *Barrett v. United States*,
                                                                      OK-ED No. 6:09-cv-00105-JHP

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

This is to certify that on this 1st day of February 2017, I caused the foregoing instrument to be filed with the Clerk of the Court using the ECF System for filing, with electronic service to be made via CM/ECF to Christopher J. Wilson, AUSA, Jeffrey B. Kahan, U.S. Department of Justice, and to all counsel of record.  To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.

/s/ *Joan M. Fisher*
JOAN M. FISHER

Opposed Motion to Recuse and
Disqualify the Court, and Brief in
Support                                     9                          *Barrett v. United States*,
                                                                      OK-ED No. 6:09-cv-00105-JHP