**DAVID AUTRY**, OBA No. 11600
1021 N.W. 16th Street
Oklahoma City, OK 73016
Telephone:    405) 521-9600
Facsimile:    (405) 521-9669
E-Mail:        dbautry77@gmail.com

**HEATHER E. WILLIAMS**, CA Bar # 122664
Federal Defender
**JOAN M. FISHER**, ID Bar # 2854
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA 95814
Telephone:    (916) 498-6666
Facsimile:    (916) 498-6656
E-mail:        joan_Fisher@fd.org

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF OKLAHOMA

KENNETH EUGENE BARRETT,     )
           )    CASE NO. 6:09-cv-00105-JHP
        Petitioner,     )
           )    **RESPONSE TO GOVERNMENT'S**
v.                   )    **MOTION TO EXCLUDE PROPOSED**
           )    **WITNESSES**
UNITED STATES OF AMERICA,     )
           )
        Respondent.     )
_____ )

       Petitioner, Kenneth Eugene Barrett, submits the following as his response to the

government's motion to exclude proposed witnesses.  (Doc. 289)

1. **Expert mental health witnesses – Drs. Erin Bigler, Thomas Kosten, Deborah Miora, Thomas Reidy and Pablo Stewart.**

       Petitioner takes each of the government's arguments for excluding these witnesses in turn.

None is persuasive.

Response to Government's Motion to
Exclude Proposed Witnesses           1           *Barrett v. United States*,
OK-ED 6:09-cv-00105-JHP

The government states, "Barrett intends to call several expert witnesses who can offer opinion that was not available to trial counsel or event [sic] § 2255 counsel at the time they filed their ... petitions." (Doc. 289, p. 8)  Along the same lines, the government argues "the only existing claim" respecting whether trial counsel were ineffective for failing to introduce mitigating mental health evidence concerns whether they should have retained *two specific* experts, Drs. Woods and Young.  ("The only existing claim stems from a failure to call Myla Young and George Woods.")(Doc. 289, p. 10)

The government goes on to claim Petitioner offers no reason why trial counsel would have had the time and resources to hire *specific experts* Drs. Erin Bigler, Thomas Kosten, Deborah Moira, Thomas Reidy and Pablo Stewart.  (Doc. 289, p. 10)

These arguments are both disingenuous and beside the point.

Petitioner has never argued counsel were ineffective for failing to engage the services of *specific* experts Dr. George Woods and Dr. Myla Young.  Nor does he argue now that counsel erred in failing to retain *specific* experts Drs. Bigler, Kosten, Miora, Reidy and Stewart.  In remanding the case for an evidentiary hearing, the Tenth Circuit *never* framed the issue as whether counsel performed in a constitutionally deficient manner by failing to hire, specifically, Drs. Woods and Young.  Nor did it limit Mr. Barrett's evidence at the hearing it ordered to the testimony of Drs. Woods and Young (a now-impossibility in light of the fact she is deceased). The court never stated that Mr. Barrett could not present the testimony of other mental health experts to corroborate the doctors who previously examined Mr. Barrett, (or rebut government mental health testimony), experts who  add weight to his claim that counsel should have and could have introduced compelling mental health mitigating evidence at trial.  *United States v.*

*Barrett,* 797 F.3d 1207, 1223-1231 (10th Cir. 2015).

The argument has always been that because counsel failed to conduct a professionally reasonable investigation, they failed to discover, develop, and present mitigating mental health evidence of *the types* found by Drs. Woods and Young. It is believed Drs. Bigler, Kosten, and Stewart can corroborate and explicate certain aspects of Drs. Woods's and Young's findings. Their testimony is therefore relevant because it makes more likely than not the mitigating mental health evidence Mr. Barrett will present at the evidentiary hearing is credible.[1] The types of evidence these expert witnesses can offer are precisely the kinds the Tenth Circuit discusses at length in its opinion remanding the case. *Barrett,* 767 F.3d at 1223-1231.

In a similar vein, the government complains Petitioner, through these witnesses, is attempting to "fortify existing theories" about his mental health identified by Drs. Woods and Young. (Doc. 289, p. 9) This is not an argument for exclusion. That is the whole point. As noted, the testimony of the experts the government seeks to exclude are intended to support and further explain Mr. Barrett's *pre-existing* chronic and long-standing mental and organic impairment, and is for that reason relevant by definition. The testimony will aid in

---

[1] The government's characterization of the proposed testimony from Drs. Bigler, Kosten and Stewart shows the relevance of these witnesses to Mr. Barrett's argument that trial counsel were ineffective for failing to investigate and introduce the mitigating mental health evidence identified in his post-conviction filings. ("Erin Bigler would testify to his [Mr. Barrett's] 'neuropsychological functioning, cognitive impairment, history of head trauma, and/or brain damage ... [and possibly] etiologies of Mr. Barrett's brain damage.' ... Thomas Kosten would testify about 'review of Mr. Barrett's psychiatric, medical, and substance abuse histories; his social history; his review of prior evaluations of Mr. Barrett; and/or his own clinical evaluation of Mr. Barrett.' ... Pablo Stewart would opine about Barrett's ability to 'perceive, understand, assess or evaluate or make judgements under the conditions at issue.'... ." (Doc. 289, p. 9) These summaries alone show the speciousness of the government's arguments that the testimony of these witnesses go to Mr. Barrett's "current mental state." Clearly, as the government notes and we asserted, they relate back to the findings of Drs. Woods and Young re Mr. Barrett's mental state at the time of offense.   (Doc. 289, pp. 7-8).

demonstrating counsel performed deficiently in failing to marshal the kinds of evidence these witnesses could offer. The evidence the government wants excluded would not have been "unavailable" to trial counsel had they conducted the type of investigation the Sixth Amendment requires in a capital case. Nor were the types of evidence that could be offered through these witnesses "unavailable" to habeas counsel, because they are in harmony with the mental health evidence presented in the § 2255 petition.

The above-stated government arguments miss the mark entirely with respect to the proposed testimony Drs. Miora and Reidy. Because Dr. Young is deceased, Dr. Miora has been brought aboard to validate her testing. In so doing, Dr. Miora will add to the persuasiveness of Dr. Young's findings, and can blunt any attacks on them that might be offered by a government expert. Dr. Miora's testimony is relevant to material issues in the case. Fed.R.Evid. 401.

Should Petitioner's motion in limine to exclude the testimony of Dr. Randall Price (Doc. 305) be denied, Dr. Reidy will serve as a rebuttal witness to Dr. Price's use of the PCL-R to brand Mr. Barrett as having anti-social personality disorder (or psychopathy). (Doc. 268, unsealing for a limited purpose Dr. Price's report and video-tape of his examination). The government makes Petitioner's point for him by arguing that Dr. Reidy "will blunt the impact of government-sponsored testimony." (Doc. 289, pp. 9-10). That *is* Mr. Barrett's specific intention. In making his case that counsel were ineffective in the second-stage because they failed to develop and introduce mitigating mental health evidence, Mr. Barrett is required to show the findings of any government expert, such as Dr. Price, are either incorrect or entitled to little or no weight on balance. He is entitled to rebut the testimony of Dr. Price, since the Tenth Circuit stated that Price's report, which was still under seal at the time of the appellate proceedings, might furnish "devastating" evidence undercutting Petitioner's mental health mitigating evidence.

*United States v. Barrett,* 797 F.3d at 1232.  And, faced with Dr. Price's testimony at trial, any reasonable defense counsel would have sought expert assistance to refute it rather than simply challenging it via cross-examination. Preventing Mr. Barrett from rebutting Dr. Price's testimony would result in an incomplete and slanted picture, unfairly skewing the determination of deficient performance, prejudice per se in favor of the government.

Attempting to frame the issue as one of what counsel with "infinite" time and resources could have done is another straw-man argument.[2]   (Doc. 289, p. 10) Yet again, the question is whether trial counsel were ineffective for failing to investigate and introduce the types of mental health mitigating evidence identified by Drs. Woods and Young, regardless of which experts (or how many) ultimately testify at the evidentiary hearing.

This argument echoes the suggestion in the court's scheduling order, where it prejudged the performance prong of the *Strickland* test, opining that trial counsel would not have had the time to marshal the mitigating mental health evidence presented in the § 2255 petition.  (Doc. 270)  The timeline of trial counsels' representation and habeas counsels' representation of Mr. Barrett shows otherwise.  (Doc. 294)

Echoing the court's earlier misplaced finding, the government argues the expert witnesses it wants barred from testifying can only offer opinions on Petitioner's *current* mental health, not his mental health at the time of the offense or the time of trial.  (Docs. 271, 276, 279, Doc. 289 p. 8)  Even assuming purely for the sake of argument there was merit to this observation, the government's position amounts to a concession that its own psychiatric expert, Dr. Steven Pitt, D.O., should be excluded as a witness.  Dr. Pitt did not examine Mr. Barrett

---

[2] The government made a similar argument in the Tenth Circuit to the findings of Drs. Woods and Young.  (Respondent's Brief, p. 60)  It was rejected.  *Barrett,* 797 F.3d at 1223-1231.

until January 2017.  Using the government's logic, Mr. Barrett's motion in limine to exclude, among other evidence, Dr. Pitt's testimony, should be granted.  (Doc. 304)  Contrary to the belief of the court and the government, the witnesses the government wants excluded will testify to matters relating to the "relevant" time period, not just Mr. Barrett's "current" mental health, as explained above.

Finally, Mr. Barrett is not seeking to "undertake a dress rehearsal for a wholly reconceived penalty phase trial."  (Doc. 289, p. 9)  He is simply trying to present the court with all relevant mitigating evidence bearing on his mental health and organic deficits in support of his ineffective assistance claim.  The types of evidence to be introduced through these witnesses are, in the cases of Drs. Bigler, Kosten, Miora, Reidy and Stewart, exactly the type of evidence discussed in the Tenth Circuit's opinion.  *Barrett,* 797 F.3d at 1223-1231.  Dr. Miora is testifying in the place of Dr. Young, a plainly reasonable step.  Dr. Reidy will be a rebuttal witness to Dr. Price so a complete and accurate picture will be presented.  Neither the government nor the court gets to make strategic decisions for counsel in the presentation of what is inarguably relevant evidence, based on the Tenth Circuit's opinion.

### 2.  Attorney witnesses – Julia O'Connell, Richard Burr and Susan Otto.

The government argues Ms. O'Connell, the Federal Defender for the Northern District of Oklahoma, can offer only irrelevant evidence because her "scant knowledge of ... trial counsel's preparations would not shed light on any issue before the Court."  It also says that because she "did not participate in the trial defense and appears to lack any knowledge about the circumstances that informed trial counsel's decisions, her testimony would not assist the Court." (Doc. 289, p. 14)

Ms. O'Connell will testify, in part, about Mr. Hilfiger contacting her regarding the

mitigation investigator her office had used in another federal capital case. Because Mr. Hilfiger was contacting her with little time available before trial, she told him it was too late in the day to begin a competent second-stage investigation, and suggested he contact Federal Resource counsel Richard Burr. (Doc. 95, Exh. 67) This evidence is relevant to Mr. Barrett's claim that trial counsel were ineffective, and failed to develop the "omitted" mitigating evidence featured in his post-conviction filings, because they had not begun to take elementary steps to prepare for a penalty phase until it was too late to do a professionally reasonable investigation. It is a piece of the puzzle. Ms. O'Connell is aware of the professional standards that applied then to counsel in a capital case, as well as the nature and scope of a reasonable investigation. (Doc. 95, Exh. 67)

In his brief to the Tenth Circuit, Mr. Barrett argued Ms. O'Connell's statements were evidence of counsel's lack of preparation and investigation, and thus ineffectiveness. (Petitioner's Tenth Cir. brief, p. 60, n. 35) The Tenth Circuit did not discount Mr. Barrett's reliance on Ms. O'Connell's declaration. In fact, the court referred to it in its opinion. Whatever arguments the government may have made that her account was irrelevant were rejected. This makes Ms. O'Connell's testimony on this point relevant. *Barrett,* 797 F.3d at 1225.

The same analysis applies to Ms. O'Connell's rationale for not accepting an appointment in Mr. Barrett's case and her opinion regarding the appointments ultimately made by the court. This is relevant background information, which helps shed light on the deficient representation Mr. Barrett received at trial. The Tenth Circuit did not discount these aspects of Ms. O'Connell's declaration when it relied on it in its opinion.

That Ms. O'Connell was allegedly not aware of some previous acquaintance between

Response to Government's Motion to
Exclude Proposed Witnesses                                 7                          *Barrett v. United States*,
                                                                                    OK-ED 6:09-cv-00105-JHP

Richard Burr and Mr. Hilfiger goes to the weight, not the admissibility of her testimony. It might be a proper subject for cross-examination. Ms. O'Connell's and Mr. Burr's testimony is linked. She says that when she was contacted late in the day by Mr. Hilfiger, she referred him to Mr. Burr. Mr. Burr says he never heard from Mr. Hilfiger on the matters he discussed with Ms. O'Connell. (Doc. 95, Exhs. 67, 118)

Susan Otto's recommendations to this court as to who were appropriate counsel to represent Mr. Barrett at trial are relevant for the same reason Ms. O'Connell's testimony is. (Doc. 95, Exh. 54, Doc. 289, p. 14) Ms. O'Connell's and Ms. Otto's proposed testimony carries additional weight because the court is required to at least have input from the Federal Defender's Office when making appointments in capital cases.

As noted, Richard Burr can give relevant testimony about his lack of communication with Mr. Hilfiger after Mr. Hilfiger contacted Julia O'Connell. This is mentioned specifically by the Tenth Circuit. It was relevant to the court's analysis, making Mr. Burr's testimony on this point unquestionably relevant. *Barrett,* 797 F.3d at 1225.

While the Tenth Circuit may not have mentioned explicitly the other matters Mr. Burr addresses in his declaration, it did not deem them irrelevant to any argument made by the government. Mr. Burr is being called both as an expert on the generally accepted standards – *i.e.,* prevailing professional norms - that must be met by counsel in a capital case, the extent of his personal familiarity of this case before trial, and based on what he has learned of counsel's investigation, preparation, and presentation at the penalty phase, whether, in his professional opinion, their performance was professionally reasonable. He will also discuss whether the various justifications offered by trial counsel for their acts and omissions are professionally reasonable for a lawyer in a capital case. (Doc. 95, Exh. 118, Doc. 289, pp. 12-14)

The government is correct that the ABA Standards for the performance of counsel in a death penalty case are not determinative.  (Doc. 289, p. 13)  However, they are relevant guides in assessing the constitutional adequacy of attorney performance, as the Tenth Circuit recognized in Mr. Barrett's case.  *Barrett,* 797 F.3d at 1224 (citing portion of ABA Standards dealing with mitigation specialists as relevant, but noting strict adherence to this or any other ABA Standard is not mandated, citing *Bobby v. Van Hook,* 558 U.S. 4, 7, 9 (2009)).  *See also, Young (Julius) v. Sirmons,* 551 F.3d 942, 957 (10th Cir. 2008), *relying on Wiggins v. Smith,* 539 U.S. 510, 523 (2003).

Therefore, Mr. Burr's testimony regarding the trial lawyers' performance as measured against the standards in the field of capital defense is relevant, though not dispositive.  The government states no valid ground for excluding Mr. Burr's testimony.  The court can either accept or reject, or accept in part and reject in part, his testimony.  The government's objection goes to the weight of the testimony, not admissibility.  Mr. Burr's testimony is relevant because, in conjunction with other testimony, what he has to offer makes it more probable than not that trial counsel rendered a constitutionally deficient performance in the penalty phase.

The government overlooks that death penalty expert attorney testimony is routinely admitted as relevant evidence in similar cases. *E.g., Fanaro v. Warden, Hocking Corr. Facility,* No. 2:10- CV-1002, 2012 WL 3638691, at * 2 (S.D. Ohio, Aug. 23, 2012); *Compton v. Hartley,* No. 07-CV-02363-WYD, 2009 WL 3052290, at * 28 (D. Colo. Sept. 22, 2009); *Gutierrez v. Davis*, No. SA-09-CA-543-FB, 2016 WL 4079546, at * 17 (W.D. Tex. July 29, 2016).  Indeed Mr. Burr's declaration states that he has testified as an expert lawyer on questions of ineffective assistance of counsel before.  (Doc. 95, Exh. 118)

### 3. Other witnesses[3]

Among the other witnesses the government wants excluded, Mr. Barrett

responds specifically to the following:

**a. Paul Gordon** – Mr. Gordon conducted or assisted in conducting the internal affairs

investigation into the Highway Patrol raid on Mr. Barrett's property.  He found many flaws,

including "going in dark," and other tactics which increased the likelihood of a violent

response from the target, Mr. Barrett.  (Doc. 199-201)  The government argues in part his

testimony should be excluded because it goes only to first stage issues and was not subject to

the scope of the Tenth Circuit's remand order.  (Doc. 289, p. 4)

**b. George Kirkham** – Dr. Kirkham is an expert on police tactics and procedure who, in

a declaration provided to the court with the § 2255 petition, analyzed the raid on Mr. Barrett's

property.  Like Mr. Gordon, Dr. Kirkham found flaws in its planning and execution, which

unnecessarily (and significantly) increased the chances of a violent response.  (*E.g.,* Doc. 95, pp.

139-143)  The government makes the same objections to Dr. Kirkham's testimony as it does to

Mr. Gordon's.  Dr. Kirkham's testimony is relevant to the mitigating factors relating to the

circumstances of the offense, the penalty phase intent factors, and residual doubt in the same

way Mr. Gordon's does.

In his brief to the Tenth Circuit, Mr. Barrett tied the types of evidence Mr. Gordon and

Dr. Kirkham could give to the mitigating mental health evidence to argue counsel had failed to

marshal evidence bearing on both the first- and second-stage intent factors the jury had to find.

---

[3] This response does not address specifically witnesses Edward Hueske, Dewey Padgett, Hon. John Garrett, Gaylan Warren, Johnny Philpot, Amanda Girzzle, Christine Calbert, Mike Mackey, Dale Anderson, Tamera Bedwell, Faust Bianco, Courtney Burke, Cindy Crawford, Robert Gude, Scharlette Holdman, Judy House, Gary Nelson, Steven Sinyard, Geoffrey Standing Bear, Ellen Stovall, Jan Walkingstick, and Randy Weaver.

(*E.g.*, Petitioner's Brief, pp. 41-43)   While the appellate court rejected the issue as to the first stage argument, *Barrett*, 797 F.3d at 1214-1215, it did not explicitly foreclose it as relevant to the penalty phase. In fact, the Tenth Circuit placed particular emphasis on Dr. Young's findings of how Mr. Barrett's organic and mental impairments would have prevented him from accurately processing and responding appropriately to rapidly unfolding events (such as the law enforcement raid on his property).  *Barrett,* 797 F.3d at 1230.  Because the identified flaws in the execution of the raid tie directly into Mr. Barrett's mental state and would tend to undermine the penalty phase intent factors, it is appropriate mitigating evidence for this hearing.  The Tenth Circuit did not rule it out of bounds.

Beyond that, the testimony is relevant to this Court's determination of prejudice.  As the Tenth Circuit observed,

> To assess that probability, we consider the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the [§ 2255] proceeding—and reweigh it against the evidence in aggravation." *Porter,* 130 S.Ct. at 453–54 (brackets and internal quotation marks omitted). This is a "probing and fact-specific analysis," which "will necessarily require a court to 'speculate' as to the effect of the new evidence." *Sears,* 561 U.S. at 955–56, 130 S.Ct. 3259. But we need not be certain that the omitted evidence would have changed the outcome of the proceeding: it is sufficient if confidence in the outcome has been undermined. *See Byrd,* 645 F.3d at 1168.

*Barrett,* 797 F. 3d at 1229.  The testimony of Gordon and Kirkham is relevant to both the deficient performance and prejudice prongs of *Strickland v. Washington,* 466 U.S. 668 (1984).

   **c.  Charles Sanders, Janesse Thomas, and Billy Poindexter**  – The government argues the proposed testimony of these witnesses goes only to a first stage issue, because Sanders testified in the guilt-innocence stage of trial and was the confidential informant on the no-knock, nighttime search warrant that led to the law enforcement raid on Mr. Barrett's

property.  (Doc. 289, pp. 5-6)

This overlooks that Sanders – who has since recanted his trial testimony – also testified as a penalty phase witness, presumably as to Mr. Barrett's intent.  Intent factors were among the critical issues the jury had to resolve in selecting punishment.  Evidence which could have been discovered with reasonable diligence that  impeached the credibility of Sanders's second-stage testimony, including that of witnesses who could testify to his poor reputation for veracity (such as Ms. Thomas and Mr. Poindexter) is therefore relevant.  (Doc. 95, Exhs. 76, 266)

d.  **Isaac Barrett** – The government asks for an offer of proof of the proposed testimony of Mr. Isaac Barrett.  To avoid duplicating the record, counsel would point the government to Isaac Barrett' declarations. (Doc. 95, Exh. 84, Suppl. Exh. 208, *see* Doc. 299)  Isaac Barrett has testimony to give on Mr. Barrett's upbringing, a history of evident mental illness on the paternal side of Kenneth Barrett's family, and the dysfunctionality (including patterns of abuse in various forms) of the family.  All these matters are clearly relevant, and were discussed in the Tenth Circuit opinion.  *Barrett*, 767 F.3d at 1229.  Mr. Isaac Barrett's testimony is relevant because it touches on matters regarding Petitioner's background and history that are mentioned specifically by the Tenth Circuit.

e.  **Martin Daggs** – Mr. Daggs, a bail bondsman, testified as a penalty phase witness for the defense.  In addition to the testimony he offered at trial, counsel should have and could have elicited testimony from him that it was common practice to have bonds forfeited for alleged failures to appear, but that the forfeitures were often not executed so as to hold something "in addition" over a defendant's head.  Had counsel conducted a professionally reasonable interview of Mr. Daggs, he could have testified that if a warrant was going to be

executed on Mr. Barrett, he could have gone out and simply picked Mr. Barrett up without any difficulty. Mr. Daggs's testimony complements the mitigating testimony of Paul Gordon and George Kirkham by casting doubt on the propriety and necessity for a police raid that was ill-advised and was executed in a manner that increased the chances of a violent response, especially by someone with Mr. Barrett's mental health and organic brain impairments.

      **f. Sharon Greenfeather** – Ms. Greenfeather is a genetically-related family member of Mr. Barrett. She can testify she is bipolar, her mother and brother were schizophrenic, and her daughter is bipolar with psychotic episodes. Her brother committed suicide in a circumstance so similar to Mr. Barrett's attempted suicide as to be uncanny. One of Ms. Greenfeather's late sisters was psychotic, and another sister was bipolar and on disability most of her life. This evidence is relevant to Mr. Barrett's claim that trial counsel performed deficiently, to his prejudice, in not investigating and presenting evidence of his mental health and his family's mental health. The mental health history of the family indicates that Mr. Barrett's problems have a genetic component. The Tenth Circuit stated evidence of this sort is relevant to Mr. Barrett's claim. *Barrett,* 767 F.3d at 1229.

### 4. Conclusion

      Based on the above argument and authority, the government's motion in limine to exclude certain witnesses should be denied, particularly with respect to the witnesses discussed. When relevance turns on a condition of fact, the court "shall admit" the evidence subject to submission of evidence sufficient to fulfill the condition. Fed.R.Evid. 103(b).

      The government has failed to show that the witnesses (and the evidence they will offer) addressed in this are subject to exclusion.

Response to Government's Motion to
Exclude Proposed Witnesses           13           *Barrett v. United States*,
OK-ED 6:09-cv-00105-JHP

DATED this 8th day of February 2017

RESPECTFULLY SUBMITTED,

/s/ *David Autry*
DAVID AUTRY

/s/ *Joan M. Fisher*
JOAN M. FISHER

Attorneys for Petitioner
KENNETH EUGENE BARRETT

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

This is to certify that on this 8th day of February, 2017, I caused the foregoing instrument to be filed with the Clerk of the Court using the ECF System for filing, with electronic service to be made via CM/ECF to Christopher J. Wilson, AUSA, Jeffrey B. Kahan, U.S. Department of Justice, and to all counsel of record.  To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.

/s/ Joan M. Fisher
JOAN M. FISHER