**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

KENNETH EUGENE BARRETT,    )
        )
    Petitioner/Defendant,    )
        )    Case No. CV-09-00105-JHP
  v.    )
        )
UNITED STATES OF AMERICA,    )
        )
    Respondent/Plaintiff.    )

## REPLY IN SUPPORT OF GOVERNMENT'S MOTION TO EXCLUDE PROPOSED WITNESSES

**COMES NOW** the United States of America, by and through undersigned counsel and respectfully submits this reply in support of its motions (Doc. 289 & 290) for an order excluding witnesses and requiring an offer of proof as to others.  The government declines to reiterate the arguments in its motion, but incorporates them by reference.

## PROCEDURAL HISTORY

On appeal from the denial of relief under 28 U.S.C. § 2255, the Tenth Circuit Court of Appeals remanded this case for an evidentiary hearing to determine whether trial counsel, Roger Hilfiger and Bret Smith, ineffectively failed to investigate and present evidence about Barrett's background and mental health.  *United States v. Barrett*, 797 F.3d 1207, 1232 (10th Cir. 2015). This court entered a scheduling order (Doc. 246), under which Barrett provided the government with a list of 71 proposed witnesses (Doc. 289, Ex. 1).  The government moved to exclude several of those witnesses and for offers of proof as to other (Doc. 289) and offers this reply to Barrett's response in opposition (Doc. 323).

## ARGUMENT

### THE COURT SHOULD LIMIT BARRETT TO WITNESSES WHO CAN TESTIFY ABOUT FOREGONE PENALTY PHASE EVIDENCE

The upcoming hearing has one purpose: "to determine what evidence could have been presented at the sentencing phase of Petitioner's trial in 2005 and whether Petitioner was prejudiced as a result of a lack of presenting that evidence in his trial." Doc. 248.  Moreover, the hearing should not permit Barrett "to resurrect issues which have been fully resolved." Doc. 279 at 1.

Despite the limitations on the hearing, Barrett seeks to call a litany of mental health witnesses whom he first identified after the deadline for discovery motions and years after he alleged the underlying ineffectiveness claim in reference to the findings by three specific experts. From the outset of this litigation, Barrett has clearly alleged that trial counsel were ineffective for omitting the findings of George Woods and Myla Young, as corroborated by Bill Sharp.  Doc. 95 at 230-42; *see* Doc. 178 at 72 (chiding the government for "not present[ing] any competent evidence disputing the opinions of" Woods and Young); *id*. at 75 (same); *id*. at 101 (specifically tying claimed ineffectiveness to the diagnoses of Sharp, Woods and Young).  After the Court denied relief, Barrett sought, and received, a certificate of appealability based on an allegation that this Court ignored the diagnoses of Woods and Young.  10th Cir. Doc. 01019181996 at 79-80.  At the conclusion of the appeal, the Tenth Circuit issued an opinion that assumed the veracity of Woods, Young and Sharp, but questioned the impact of evidence the government might have presented in response.  797 F.3d at 1229-32.  In short, Barrett confined his ineffective assistance of counsel claim to the diagnoses of Woods, Young and Sharp, resulting in a Tenth Circuit's opinion that relied on their diagnoses.  The appellate court's consideration was cabined

by the record and the certificate of appealability, and its mandate is no broader than the claims presented to it. *See generally* 28 U.S.C. § 2253 (noting the specificity of certificates of appealability); *Carter v. Hopkins*, 151 F.3d 872, 874 (8th Cir.1998) (holding "review is limited to the issues specified in the certificate of appealability").

Furthermore, Barrett's lengthy list of proposed experts may illustrate that attorneys with unfettered time and budgets can present unlimited mental health evidence, but it does not inform the pending Sixth Amendment question – whether trial counsel provided minimally competent representation. "The [*Strickland*] test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir.1992). "[A] petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir.2000) (en banc). Thus, a showing that counsel could have conducted a more thorough investigation that might have borne fruit does not establish ineffectiveness. *See Burger v. Kemp*, 483 U.S. 776, 794 (1987). "A reasonable investigation is not . . . the investigation that the best criminal defense lawyer in the world, blessed not only with unlimited time and resources but also with the inestimable benefit of hindsight, would conduct." *Thomas v. Gilmore*, 144 F.3d 513, 515 (7th Cir. 1998).

The cavalcade of putative witnesses will not inform any pertinent legal question, and Barrett cannot demonstrate that trial counsel could have presented mental health evidence, as he proposes here, without providing the government with a meaningful opportunity to develop rebuttal evidence. During the litigation of this case, trial counsel had to comply with Federal Rule of Criminal Procedure 12.2. But in this proceeding, Barrett first alluded to his new experts after the deadline for discovery requests had passed. Such actions will evade both the letter and

3

spirit of Rule 12.2, which would have otherwise permitted the government to undertake an investigation of the new experts' findings, including any necessary examination of Barrett himself. *See generally* Doc. 269 at 9. In the upcoming § 2255 proceedings, the Court should assess trial counsel in accordance with the circumstances in which they represented Barrett.

In regard to the new mental health witnesses, Barrett takes particular pains to defend the proposed testimony of Dr. Miora. He argues that Dr. Miora will "validate" the findings of the late declarant, Dr. Young. But he also claims that the witness "will *add* to the persuasiveness of Dr. Young's findings." Doc. 323 at 4 (emphasis added). The latter, more expansive, description of Dr. Miora's proposed testimony reflects Barrett's initial summary, which asserted that she would "testify about Mr. Barrett's psychological and neuropsychological functioning at the time of the offense. . . . based on the methods and opinions described in the declarations of Myla Young, Ph.D., Bill Sharp, Ph.D., and George Woods, M.D." Doc. 280 at 4. Barrett also stated that Dr. Miora could testify "whether and how testing methods and results other than neuropsychological tests bear on an assessment of Mr. Barrett's psychological . . . functioning." *Id*. Barrett appears intent on expanding Dr. Miora's role beyond that of a "validating" witness. He seeks a free hand to offer opinions based on Dr. Young's techniques, leavened with obviously novel testimony that those findings were incomplete. In essence, Barrett asks this Court to permit Dr. Miora's testimony because she will not disagree, entirely, with Dr. Young. If Barrett simply sought to utilize Dr. Miora as a hearsay conduit for the findings of Dr. Young, he would not run afoul of the limitations on this proceeding. See Fed. R. Evid. 702. But the Court should not permit him to engage in litigation by surprise, altering his claim and the evidence underlying it at the eleventh hour. *See* 28 U.S.C. § 2255(f); *United States v. Willis*, 202 F.3d 1279, 1280 (10th Cir. 2000).

4

Similarly, Barrett proffers Thomas Reidy as a rebuttal witness to the diagnosis of a retained government expert, Randall Price who diagnosed the defendant as a psychopath.  Barrett has never accused trial counsel of ineffectiveness for failure to prepare rebuttal to Dr. Price. Rather, he claimed that counsel should have presented the diagnoses of Dr. Young and Dr. Woods, and that their failure to do so likely prejudiced the outcome of the trial.  This Court should not permit Barrett to remanufacture his claim with a belated new theory, simply because it relates to the issue of mental health.   Barrett cannot show the requisite relation back to demonstrate the timeliness of his radically amended claim.  28 U.S.C. 2255(f); *United States v. Guerrero*, 488 F.3d 1313, 1316 (10th Cir. 2007).

Barrett also insists that his Court should permit the testimony of three attorneys, Richard Burr, Julia O'Connell, and Susan Otto, because their opinions and recollections have some bearing on the issue of ineffectiveness.  Barrett goes so far as to observe that the Tenth Circuit relied on Ms. O'Connell's declaration in remanding this case for evidentiary development. Barrett's observation underscores the government's point, the issues as framed by the Tenth Circuit obviate the need for the testimony of these witnesses.  The Court of Appeals directed this Court to determine what counsel did, why they did it, and what impact their actions or omission may have had.  *See Barrett*, 797 F.3d at 1223-32.  In contrast, the putative attorney witnesses can only offer testimony about counsel's appointment, the timing of their investigation, and whether – as a matter of opinion – counsel's actions were reasonable.  Such evidence cannot assist this Court now that the Tenth Circuit has determined that counsel's actions, if unjustified and unexplained, would not pass muster under the first prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984); see Barrett, 797 F.3d at 1225 (observing that "[t]ypically, this kind of superficial investigation would constitute deficient performance.").

Barrett also argues that this Court should permit the testimony of Paul Gordon and George Kirkham, because the Tenth Circuit did not reject an argument that those witnesses might offer penalty phase evidence. Doc. 323 at 10-11 (citing Petitioner's Brief at 41-43). Barrett appears mistaken. In his Tenth Circuit opening brief, Barrett divided his claims of ineffective assistance of counsel into those concerning the guilt phase (10th Cir. case no. 12-7086, Doc. 01019181996 at 13-51) and those concerning the penalty phase (*id*. at 51-89). In the section concerning the guilt phase, Barrett features Kirkham's foregone testimony in a section entitled "Lack of an Independent Defense Police Procedures Expert." *Id*. at 16. Barrett's brief last mentioned Kirkham on page 26 and lacks any mention of Paul Gordon. In his reply brief, Barrett followed a similar pattern, discussing Kirkham only in reference to guilt phase issues (10th Cir. case no. 12-7086, Doc. 01019274910 at 6-11), and alluding to Paul Gordon only as a declarant prepared to contradict some trial testimony (*id*. at 2 n.1). Given that Barrett did not alert the Tenth Circuit to the supposed probity of Gordon and Kirkham's testimony on penalty phase issues, the opinion's silence should not imply an acknowledgement of their relevance. By the same token, this Court should not permit Barrett to use the upcoming hearing to explore, without justification, issues that were previously rejected by this Court and the Tenth Circuit.

Barrett also argues that the Court should permit Charles Sanders to testify, despite the government's argument that the defense has relied upon the witness only to assert guilt-phase claims. By way of rejoinder, Barrett observes that Sanders recanted his guilt-phase testimony, alluding to a declaration attached to a request to file a second and successive § 2255 motion, which the Tenth Circuit rejected in a published opinion. *In re Barrett*, 840 F.3d 1223 (10th Cir. 2016). In denying the requested relief, the Tenth Circuit expressed unstinting skepticism of the recantation:

> Sanders's declaration falls far short of a prima facie showing of "clear and convincing evidence that no reasonable factfinder would have found [Defendant] guilty of the offense[s] of conviction," as required by § 2255(h)(1). Postconviction recantations are to be viewed with "extreme suspicion" and "ha[ve] long been disfavored as the basis for a claim of innocence." [Citation.] And in any event the recantation is quite limited in scope; and the testimony from other witnesses, as well as physical evidence, independently substantiates the gist of the recanted testimony.

*Id*. at 1229.

Even if the Tenth Circuit's opinion permitted reliance on Sanders's recantation, Barrett fails to explain how it might assist in assessing the efforts of trial counsel in investigating and presenting mitigation evidence. While Barrett accurately notes that Sanders testified during the penalty phase, he gives no hint how even a wholesale retraction of that evidence would impact the upcoming hearing. The government briefly offered Sanders's testimony to support the allegation that the defendant had threatened violence to others, as a factual basis for a future dangerousness aggravator. Tr. 22:4586-90. The jury rejected future dangerousness (Trl. Doc. 258), undermining any likelihood that Sanders could offer anything of value to the defense at this juncture.

Somewhat inexplicably, Barrett also proffers Janesse Thomas and Billy Poindexter as witnesses who could testify to Sanders's poor reputation for veracity. As demonstrated, Sanders's veracity played no role in the decision to impose the death penalty, since the jury rejected the only factor about which he testified. Barrett now offers to sponsor Sanders as a witness, regarding a recantation the Tenth Circuit rejected, but simultaneously seeks to present two witnesses who will impugn his credibility. Evidence designed to sow doubt about a witness who had no impact on the penalty phase will not inform the question of counsel's performance.

Barrett also argues that bail bondsman Martin Daggs could offer relevant testimony that "he could have gone out and simply picked Mr. Barrett up without difficulty." The putative testimony is speculative and irrelevant. Whether Barrett was amenable to arrest under different conditions does not alter the fact that the defendant intentionally killed a state trooper under circumstances presented here. Barrett can only establish mitigation on the basis of his character, his, record, or the circumstances of this crime. 18 U.S.C. § 3592(a)(8) (permitting mitigators based on circumstances of the offense); *Oregon v. Guzek*, 546 U.S. 517, 525-26 (2006) (defining constitutionally required mitigation as any aspect of the defendant's character or record and any circumstance of the crime). In these circumstances, the police entered Barrett's land with legal authority, and the defendant fired on them without any of his own. It would not profit the defense to offer a second-hand opinion that Barrett would not have committed the crime if he had not encountered the victim. Such evidence, even if believed, amounts to nothing more than a truism applicable to any offense.

The government withdraws its request for an offer of proof regarding Isaac Barrett, in view of Barrett's response. However, the government objects that Barrett's offer of proof with regard to Sharon Greenfeather is inadequate to demonstrate relevance. The fact that Greenfeather is "genetically related" to Barrett hardly demonstrates that her experience and that of her immediate family have any bearing on the issues at hand. To the extent Ms. Greenfeather is a relatively close relation of the defendant, it appears her testimony is cumulative to that of many other named witnesses.

## CONCLUSION

Based on the foregoing, the government respectfully urges this Court to exclude the testimony of Paul Gordon, Edward Hueske, George Kirkham, Charles Sanders, Janesse Thomas, Mike Mackey, Billy Poindexter, Dewey Padgett, Hon. John Garrett, Erin Bigler, Thomas Kosten, Deborah Miora, Thomas Reidy, Pablo Stewart, Gaylan Warren, Richard Burr, Julia O'Connell, Susan Otto, Gary Philpot, John Philpot, Amanda Grizzle, Christine Calbert and Dale Anderson, Sharon Greenfeather, and to require an offer of proof as to Tamara Bedwell, Faust Bianco, Courtney Burke, Cindy Crawford, Martin Daggs, Robert Gude, Scharlette Holdeman, Judy House, Gary Nelson, Steven Sinyard, Geoffrey Standing Bear, Ellen Stovell, Jan Walkingstick and Randy Weaver.

Dated: February 15, 2017:

Respectfully submitted,

MARK F. GREEN
United States Attorney
Eastern District of Oklahoma

/S/ *Christopher J. Wilson*
CHRISTOPHER J. WILSON, OBA # 13801
Assistant United States Attorney
520 Denison Avenue
Muskogee, OK 74401
Telephone: (918) 684-5100
FAX: (918) 684-5150

/S/ *Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Unit
U.S. Dept. of Justice
1331 F Street, NW; 6th Fl.
Washington, DC 20530
Telephone: (202) 305-8910
FAX: (202) 353-9779

## CERTIFICATE OF ECF FILING AND DELIVERY

I, hereby certify that on February 15, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  A Notice of Electronic Filing will be sent via the Court's ECF system to the following counsel of record for the Petitioner/Appellant:

Mr. David B. Autry dbautry44@hotmail.com
Ms. Joan M. Fisher Joan_Fisher@fd.org
Mr. Tivon Schardl Tim_Schardl@fd.org

/S/ *Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Unit