IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

KENNETH EUGENE BARRETT,          )
                                 )
        Petitioner/Defendant,    )
                                 )   Case No. CV-09-00105-JHP
    v.                           )
                                 )
UNITED STATES OF AMERICA,        )
                                 )
        Respondent/Plaintiff.    )

GOVERNMENT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

**COMES NOW** the United States of America, by and through undersigned counsel and, pursuant to this Court's scheduling order, respectfully submits the following proposed findings of fact and conclusions of law.

The government premises its proposed findings of fact and conclusions of law on the issues as framed by the Tenth Circuit, in its opinion remanding this case for evidentiary development. The Court of Appeals began with a summary of the issue, noting that Barrett claimed "that his trial attorneys were ineffective by failing to properly investigate his background and mental health in preparation for the penalty phase of his case." *United States v. Barrett*, 797 F.3d 1207, 1223 (10th Cir. 2015).

Courts review claims of ineffective assistance of counsel under the two prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a movant must show that counsel's performance ''fell below an objective standard of reasonableness as measured by prevailing professional norms.'' *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011) (internal quotation marks omitted). Generally, counsel must pursue "leads indicating a

1

defendant's troubled background and diminished mental capacity." *Barrett*, 797 F.3d at 1223 (citing *Wiggins v. Smith*, 539 U.S. 510, 523-25 (2003)); *see also Hooks v. Workman*, 689 F.3d 1148, 1201 (10th Cir.2012) (''Counsel has a duty to conduct a thorough investigation—in particular, of mental health evidence—in preparation for the sentencing phase of a capital trial.'' (internal quotation marks omitted)).  However, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions.'' *Cullen v. Pinholster*, 563 U.S. 170 (2011).  Next, a movant must show prejudice, meaning ''there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'' *Rushin*, 642 F.3d at 1302 (internal quotation marks omitted).

In assessing the performance prong, the Tenth Circuit found that, as portrayed by Barrett, the "kind of superficial investigation" conducted by trial counsel into mental health and social history would generally constitute deficient performance.  *Barrett*, 797 F.3d at 1225.  The court of appeals stopped short of finding Barrett had satisfied the first prong of *Strickland* in light of three arguments advanced by the government.  *Id*. at 1225-26.  The issues on remand are defined by the court's frustration with the factual record underlying those arguments.  Thus, within the context of the performance prong, this Court must determine why trial counsel mounted a seemingly perfunctory investigation into the defendant's mental health and social history.  *Id*. at 1226-27.  In particular, the court must determine if counsel omitted the investigation because there were no outward indications that one was warranted (*id*.), if Barrett barred his attorneys from presenting mental health or social history evidence (*id*. at 1227-28), and if counsel made an informed choice to present an alternative mitigation theory – that Barrett was simply a beloved family member (*id*. at 1228-29).  Assuming the court finds that Barrett has shown inadequate

performance, it must determine whether the investigation and evidentiary presentation prejudiced the defendant, in view of the allegations made in the § 2255 motion. *Id*. at 1229-32.

The government believes the evidence will establish the following facts:

A.   Defense Investigation of Mental Health Evidence

1. John Echols and others who represented the defendant in a pair of murder trials prosecuted in state court, arising from the same incident at issue in the federal trial, undertook investigative efforts on behalf of Barrett.  After his appointment as lead counsel, Roger Hilfiger visited Mr. Echols's home and retrieved several boxes.  Mr. Hilfiger believed those boxes contained Mr. Echols's files in the Barrett case.  Mr. Hilfiger also received several boxes of material related to the Barrett case, and believes they came directly from the Oklahoma Indigent Defense System.

2. Trial counsel's file (as provided to the government in discovery on December 21, 2016) contained an October 3, 2002 report from psychologist Bill Sharp, diagnosing the defendant with, inter alia, multiple substance abuse dependencies, a learning disorder, attention deficit/hyperactivity disorder, avoidant personality disorder, paranoid personality disorder, and organic impairment relative to tremor and long term memory difficulty.

3. According to Sharp's report, the concern about possible neurological issues stemmed from an observation that Barrett had a hand tremor and difficulty recalling some events in the distant past.

4. Trial counsel file contained a June 14, 2002 memorandum from psychologist Peter Rausch to defense investigator Steve Leedy concerning a review of Barrett's mental health history.  While finding Barrett's history indicated "polysubstance dependency and

mix personality disorder," the memo recommends against the pursuit of a mental health defense: "As far as how can this help his defense? It probably can not. Essentially Mr. Barrett is someone with poor coping skills, which leads him to act immaturely and abuse substances. Others, such as a jury, would probably see him simply as a drug addict."

5. Trial counsel's file contained an October 31, 2003 affidavit from psychologist Faust Bianco, attesting that he had performed neuropsychological testing on Barrett and found no evidence of brain damage.

6. Trial counsel's file contained a July 13, 2003 report from psychologist Kathy LaFortune which reported on personality testing:

> The clinical scales indicated that Mr. Barrett is having many interpersonal difficulties. He is hostile a great deal of the time, and easily angered. He is prone to displaying this anger physically and can be perceived by other as intimidating. Further, he is reckless to the point where he can be dangerous to himself or to others. He is moderately cautions [sic] and guarded around others, and is therefore somewhat closed off to interpersonal relationships. Because of this relational style, he has alienated himself from others. He feels as though he lacks the support and concern of others but perceives that this has little to do with his actions. He is currently unlikely to change any of his behaviors, because he is generally satisfied with himself and does not think he needs adjustment.

The report specifically rejected a diagnosis of post-traumatic stress disorder, and recommended that defense counsel not engage a mental health expert.

7. Trial counsel's file contained a December 15, 2003 risk assessment report from psychologist Jeanne Russell, which reported Barrett was not, then, exhibiting symptoms

of a major mental illness.  While finding Barrett was at low risk for future aggression in a prison setting, the report noted a long history of self-reported substance abuse.  It also observed that Mr. Barrett has led a generally irresponsible lifestyle.

8.  Trial counsel's file contained a September 15, 2005 risk assessment report from psychologist Jeanne Russell.  The report contains a much longer recitation of Barrett's drug use than the one written in 2003, and notes daily use of cocaine and methamphetamine in the five years leading up to the instant offense.  The report again notes that Barrett did not display any symptoms of a major mental illness, but did have issues with paranoia and impulsiveness.  The report observed that drug use exacerbated Barrett's impulsiveness.  The report concluded "Mr. Barrett's *risk* for future aggression may increase if he were to return to a community setting, resume regular use of drugs such as Methamphetimine, acquire a firearm and maintain a perception of harassment and negative interactions with law enforcement officers. However, even in this setting, it is important to note, that Mr. Barrett is unlikely to seek out potential victims."

9.  Dr. Russell's reports contained brief social histories of Barrett's families, including but not limited to a recitation of his parents' divorce, their permissive household, the family's frequent moves, and his mother's substance abuse.

10. After Barrett gave notice that he might present mental health evidence through Jeanne Russell, the government retained J. Randall Price, who conducted a battery of tests on the defendant.  Price concluded that Barrett did not have organic brain damage.  He diagnosed Barrett as suffering from "mild depressive tendencies and long-standing difficulty with alcohol and drug abuse, both which are consistent with his history. Testing also indicates traits consistent with an antisocial and paranoid personality

disorder.  Mr. Barrett has low frustration tolerance, poorly controlled anger, shallow and superficial relationships and chronic suspiciousness of others. . . . His constellation of emotional and behavioral traits results in unpredictable and violent outbursts of violence."  Price also diagnosed Barrett as a psychopath.

11. Dr. Russell dissuaded trial counsel from presenting mental health evidence, because she believed it would invite damaging government rebuttal.

12. Trial counsel interviewed several of Barrett's relatives, none of whom reported that the defendant had suffered significant head injuries or had exhibited any symptoms of mental illness that led them to question his competence or to suspect that he had a significant mental health condition.

13. Trial counsel's file contained documents pertaining to Barrett's mental health treatment history.

B.   Defense Investigation of Social History Evidence

14. Trial counsel's file contained a memorandum from defense investigator Steve Leedy summarizing interviews with Gelene Dotson (Barrett's mother), Gwen Holt (Barrett's cousin), Tracy Swearingen (Barrett's friend), Sallisaw Police Chief Gary Philpott, Sequoyah County Sheriff John Philpott, Steve Smith (Barrett's friend), Pawhuska bondsman Fred Green, Ernie Barrett (Barrett's father), Doris Barrett (Barrett's stepmother), Diane Hamilton (Barrett's friend), Ruth Harris (Barrett's aunt), Abby Stites (Barrett's ex-wife), Steve Barrett (Barrett's brother), Debra Thompson (Barrett's friend), Toby Barrett (Barrett's son), and Phyllis Crawford (Barrett's aunt).  Several of the interviews include historical information about Barrett's upbringing, including recollections of family dysfunction and substance abuse.

15. Trial counsel's file contained reports of interviews by Roseann Schaye of Carolyn Joseph (Barrett's aunt), Elnora Long (Barrett's great aunt), Gelene Dotson, Linda Riley (Barrett's aunt), Ruth Harris (Barrett's aunt), Tracy Swearingen, Richard Barrett, and the defendant. Those reports recount, at least in part, Barrett's social history, including information about family dysfunction and substance abuse. According to her interview report, Linda Riley stated that she suffered from bipolar disorder and recognized some of her symptoms in the defendant.

16. Trial counsel's file contained other interview reports concerning Janice Sanders, Phyllis Crawford, Roger Crawford and Tommy Sanders.

17. Janice Sanders reported that Barrett had once threatened to shoot her.

C.   Trial Counsel's Interactions with Barrett

18. Trial counsel had regular contact with Barrett.

19. Based on their contact with Barrett, neither trial attorney suspected that he suffered from a significant mental illness.

20. Barrett repeatedly insisted that he did not want trial counsel to mount a mitigation case based on sympathy for him or evidence of his childhood.

21. Barrett insisted that trial counsel minimize the amount of testimony elicited from relatives, particularly his son, mother, and ex-wife.

22. While Barrett was generally cooperative with counsel he was insistent about the omission of evidence concerning his family and sympathy for him.

23. Trial counsel possessed medical records from the night of the murder. The records indicated that Barrett was under the influence of marijuana and methamphetamine.

24. Trial counsel did not want to premise their mitigation case on Barrett's drug use because they did not believe the jury would find such evidence sympathetic.

D.    The Government's Mental Health Evidence

25. The government has retained a psychiatrist, Steven Pitt, D.O. who will testify that he evaluated Barrett on January 19, 2017, and determined that he does not suffer from any major mental illnesses, including bipolar disorder, though he will acknowledge that Barrett had a dysfunctional upbringing and that several family members reportedly have mental illnesses.  Dr. Pitt will further testify that Barrett suffers from polysubstance abuse disorder and that he appears to be a psychopath.

26. The government has again retained J. Randall Price, who will testify in conformity with this previously filed report (Trl. Doc. 237), that he diagnosed Barrett as a psychopath, along with other findings summarized in the government's filing docketed in this case as no. 321.

The government believes the evidence will support the following conclusions of law:

1.    Barrett's trial counsel possessed ample investigatory material upon which to make a sound tactical choice to omit mental health evidence from the mitigation case.

2.    Barrett's trial counsel made a tactical decision, based on the desire to maintain a rapport with the defendant, to omit family history evidence that was personally odious to the defendant.

3.    Barrett's trial counsel possessed ample investigatory material upon which to make an informed decision to portray Barrett as a beloved family member, rather than the victim of familial dysfunction.

8

4. Trial counsel's strategy did not prejudice the outcome of trial because the defense lacked, and still lacks, credible evidence that Barrett suffers from a significant mental illness, and a decision to present evidence of family dysfunction would have neutralized the chosen mitigation strategy, portraying Barrett as a beloved family member.

Dated: February 16, 2017:

Respectfully submitted,

MARK F. GREEN
United States Attorney
Eastern District of Oklahoma

/S/ *Christopher J. Wilson*
CHRISTOPHER J. WILSON, OBA # 13801
Assistant United States Attorney
520 Denison Avenue
Muskogee, OK 74401
Telephone: (918) 684-5100
FAX: (918) 684-5150

/S/ *Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Unit
U.S. Dept. of Justice
1331 F Street, NW; 6th Fl.
Washington, DC 20530
Telephone: (202) 305-8910
FAX: (202) 353-9779

## CERTIFICATE OF ECF FILING AND DELIVERY

I, hereby certify that on February 16, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  A Notice of Electronic Filing will be sent via the Court's ECF system to the following counsel of record for the Petitioner/Appellant:

Mr. David B. Autry dbautry44@hotmail.com
Ms. Joan M. Fisher Joan_Fisher@fd.org
Mr. Tivon Schardl Tim_Schardl@fd.org

/S/ *Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Unit