**DAVID AUTRY**, OBA No. 11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
Telephone:     (405) 521-9600
Facsimile:     (405) 521-9669
E-mail:          dbautry77@gmail.com

**HEATHER E. WILLIAMS**, CA Bar #122664
Federal Defender
**JOAN M. FISHER**, ID Bar # 2854
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, California  95814
Telephone:     (916) 498-6666
Facsimile:     (916) 498-6656
E-mail:          Joan_Fisher@fd.org

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH EUGENE BARRETT,<br><br>                    Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | CASE NO. CV-09-00105-JHP |

**PETITIONER'S COMBINED
RESPONSE IN OPPOSITION
TO THE GOVERNMENT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT
AND BRIEF IN SUPPORT OF OPPOSITION**

**TABLE OF CONTENTS**

RESPONSE IN OPPOSITION ........................................................................................ 1

BRIEF ........................................................................................................................... 1

I.     STATEMENT OF DISPUTED FACTS ............................................................... 1

ANALYSIS .................................................................................................................. 14

II.    LEGAL STANDARDS ...................................................................................... 14

    A.    Summary Judgment ..................................................................................... 14

    B.    Ineffective Assistance of Counsel ............................................................... 15

III.   THE GOVERNMENT FAILED TO SUSTAIN ITS BURDEN ...................... 15

    A.    The Motion is Facially Defective ................................................................ 15

    B.    The Government Failed to Show the Absence of a Dispute of Material Fact ................... 16

    C.    The Government's Motion is Barred by the Law of the Case .......................................... 21

CONCLUSION ............................................................................................................. 22

CERTIFICATE OF ELECTRONIC SERVICE AND DELIVERY ............................................ 23

## TABLE OF AUTHORITIES

**Federal Cases**

*Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007) ............................................................ 19

*Adickes v. S.H. Kress & Co.* 398 U.S. 144 (1970) ............................................................ 15, 16

*Adler v. Wal-Mart Stores*, 144 F.3d 664 (10th Cir. 1998) ............................................... 14

*Alcala v. Woodford*, 334 F.3d 862 (9th Cir. 2003) ........................................................... 17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................... 14, 16

*Bd. of Governors of Fed. Reserve Sys.v. Dimension Fin. Corp.*, 474 U.S. 361 (1986) .. 19

*Boyde v. California*, 494 U.S. 370 (1990) ......................................................................... 19

*Brown v. Sternes*, 304 F.3d 677 (7th Cir. 2002) ............................................................... 21

*Carmell v. Tex.*, 529 U.S. 513 (2000) ........................................................................... 9, 13, 14

*Casey v. Frank*, 346 F. Supp. 2d 1000 (E.D. Wis. 2004) ............................................... 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................ 14

*Garrison v. Bd. of Cty. Comm'rs*, No. CIV-09-441-JHP, 2011 WL 483994
(E.D. Okla. Feb. 7, 2011) ................................................................................................. 14, 16

*Littlejohn v. Trammell*, 704 F.3d 817 (10th Cir. 2013) ................................................... 20

*Martin v. Rose*, 717 F.2d 295 (6th Cir. 1983) ................................................................. 20-21

*Mason v. Texaco, Inc.*, 948 F.2d 1546 (10th Cir. 1991) .................................................. 21

*Mayes v. Gibson*, 210 F.3d 1284 (10th Cir. 2000) .......................................................... 20

*Mitchael v. Intracorp, Inc.*, 179 F.3d 847 (10th Cir. 1999) ............................................ 16, 17

*Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190 (10th Cir. 2002) ................................. 15, 16

*Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181 (10th Cir. 1995) .......................................... 21

*Rompilla v. Beard*, 545 U.S. 374 (2005) ....................................................................... 9, 22

*Strickland v. Washington*, 466 U.S. 668 (1984) ............................................................ 6, 9, 17

*Tennard v. Dretke*, 542 U.S. 274 (2004) ........................................................................ 19

*United States v. Barrett*, 797 F.3d 1207 (10th Cir. 2015) ............................................... 6, 18, 21

*United States v. Monsisvais*, 946 F.2d 114 (10th Cir. 1991) .......................................... 21

*United States v. Purkey*, 428 F.3d 738 (8th Cir. 2005) ................................................... 19-20

*Wiggins v. Smith*, 539 U.S. 510 (2003) .......................................................................... 6, 22

*Williams v. Taylor*, 529 U.S. 362 (2000) ....................................................................... 19, 22

*Wilson v. Sirmons*, 536 F.3d 1064 (10th Cir. 2008) ....................................................... 20


**Federal Statutes**

18 U.S.C. § 3593(e) (2012) .............................................................................................. 20


**Other**

American Bar Association, *Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, 31 Hofstra L. Rev. 913, 1015-27 (2003) ..................................... 8, 9

**RESPONSE IN OPPOSITION**

Petitioner, Kenneth Eugene Barrett, by and through undersigned counsel, hereby responds in opposition to the government's Motion for Partial Summary Judgment (Doc. 347) filed under seal on February 23, 2017. In summary, the Motion is frivolous; the Motion is facially, factually and legally defective under Fed. R. Civ. P. 56(c) and LCvR 56.1(b), the decision of the Tenth Circuit in this case, the law-of-the-case doctrine and the governing substantive law; the Motion is interposed for the improper purpose of interfering with Petitioner's preparation for the hearing scheduled to begin in two weeks as prohibited in Fed. R. Civ. P. 56(h); this Opposition, while more than sufficient to demonstrate the Motion's baselessness, is necessarily subject to amendment under Fed. R. Civ. P. 56(d) and basic notions of due process because this Court, without giving Mr. Barrett notice or an opportunity to be heard, has drastically shortened the time for Mr. Barrett to respond such that this Response is due well before Mr. Barrett's expert can produce his report.

**BRIEF**

## I.    STATEMENT OF DISPUTED FACTS

The government's Motion fails to comply with Fed. R. Civ. P. 56(c)(1) and LCvR 56.1(b) which requires the following:

> The brief in support of a motion for summary judgment (or partial summary judgment) shall begin with a section stating the material facts to which the movant contends no genuine dispute exists. The facts shall be set forth in concise, numbered paragraphs.

Due to the government's flagrant disregard for the law, Mr. Barrett is unable to comply with LCvR 56.1(c) which requires that this Brief "begin with a section responding, *by*

*correspondingly numbered paragraph* [*sic*], to the facts that the movant contends are not in dispute and shall state any fact that is disputed" (emphasis in original). Due to the government's noncompliance LCvR 56.1(b), in combination with the Motion being filed while counsel are extremely busy preparing for the upcoming hearing, and the Court's order denying Mr. Barrett a reasonable amount of time to respond, it would be unfair, unjust and an abuse of discretion for this Court to find that any omission on Mr. Barrett's part constitutes an admission under LCvR 56.1(e), the application of which depends upon compliance with LCvR 56.1(b).

1.      The Motion seems to turn on the government's contention that a table prepared by Petitioner's counsel establishes that neither trial counsel had access to the report, or the findings contained in the report, of psychologist Bill Sharp because the table supposedly shows the report was in the possession of state trial investigator Steve Leedy, and not federal trial counsel. Mot. 2, citing Mot. Ex. 1; *id.* at 5, citing same. However, it is unclear what the government's position is because the Motion fails to provide a consistent description of the fact the government claims is material and undisputed. It variously states the issue as whether trial counsel "had access to" Dr. Sharp's report, Mot. 3 & 5; whether counsel "'<u>obtained</u> a copy,'" *id.* at 4 (quoting Doc. 95 at 191 with emphasis added); whether Sharp's report put trial counsel "'<u>on notice</u> that Mr. Barrett suffered from extreme paranoia and long-term memory problems,'" *ibid.* (emphasis by government); whether trial counsel "had the benefit of Dr. Sharp's observations," *id.* at 5; whether anyone had a duty to "transmit the Sharp report" to trial counsel, *id.* at 5; and whether "trial counsel were unaware of Dr. Sharp's findings," *id.* at 6 (emphasis added), regardless of whether they obtained his report. Due to the government's inconsistency and its failure to comply with Rule 56(c) and LCvR 56.1(b), Mr. Barrett lacks fair notice of what fact the government considers material and whether that fact is genuinely in dispute.

a. The Motion fails at the first hurdle because the government itself disputes that Mot. Ex. 1 establishes anything. A dispute exists where "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The government itself objects to the admissibility of its Mot. Ex. 1, which is Mr. Barrett's Hr'g Ex. 267, on grounds of "Lack of Authentication, Relevance, Competence." Jt. Stmt. (Doc. 340) at 36. Even in the Motion, the government avoids endorsing its own exhibit as proof, stating that it merely "*purports to identify* the sources of documents that Barrett disclosed as counsel's files." Mot. 2 (emphasis added). Indeed, the government does not rely on a fact at all, but on counsel's representation, from which the government infers that "it *appears* Barrett is *prepared to confirm* . . . that Messrs. Smith and Hilfiger never had access to" the report. Mot. 2-3 (emphasis added). *See also id.* at 5 ("[a]t present . . . it appears that Barrett's factual assertion" about Sharp "was mistaken"). The government cannot sustain its burden of showing the absence of a disputed issue of material fact while playing fast and loose with the issue of materiality and simultaneously contending that its primary piece of evidence merely purports to establish something "[a]t present," but that the exhibit is incompetent evidence.

b. The evidence shows the government vastly understates the extent of trial counsel's ignorance. Trial counsel did not state in their declarations that they were merely unaware of Dr. Sharp's *report*, they stated that were "not familiar with Dr. Sharp" *or* his report. Doc. 175 Ex. 11 at ¶ 10; Doc. 175, Ex. 12 at ¶ 12. Yet Dr. Russell, who the government contends was trial counsel's psychological expert

for the penalty phase, mentioned Dr. Sharp throughout her reports. Mot. Exs. 3, 4.

2.    Mr. Barrett contends, and the Motion appears to concede, that trial counsel had access to the information in Dr. Sharp's report that would have put reasonably competent trial counsel on notice that they should investigate Mr. Barrett's mental health for purposes of the penalty phase. The Motion endorses evidence that shows the following:

a.  It is undisputed that Dr. Sharp did his preliminary evaluation and drafted his report in September 2002, which is years before either federal counsel were appointed to represent Mr. Barrett.

b.  It is undisputed that both Mr. Hilfiger and Mr. Smith knew, or should have known based on the materials available to them, *see*, *e.g.*, Case No. CR-04-115-P, Doc. 46 at 7, Doc. 50 at 8, and Case No. CV-09-105-JHP, Doc. 95 Ex. 64, that the Oklahoma Indigent Defense System ("OIDS") had provided expert and investigative assistance to John Echols, and that investigator Leedy was the custodian of at least some of those records. Doc. 95, Ex. 64 at 2.

c.  It is undisputed that federal trial counsel had access to the OIDS files in that they could have obtained them from Mr. Leedy, if they had only asked for them. Mot. 5, citing Doc. 95 Ex. 111 (Decl. Steve Leedy); Doc. 95 Ex. 111 at 2 (explaining that files were available during Mr. Hilfiger's representation).

Thus, even if trial counsel did not obtain Dr. Sharp's report, based on the trial record and the exhibits attached to or cited in the Motion, there can be no genuine dispute that trial counsel had ready access to the report.

3.    Similarly, the Motion and exhibits appended to it *disprove* the government's assertion that there is no genuine dispute regarding whether trial counsel had actual knowledge

of Dr. Sharp's findings. It is undisputed that trial counsel Hilfiger and Smith had actual possession of the 2003 report of Jeanne Russell that was prepared under the aegis of OIDS. Mot. 6; Mot. Ex. 3.

    4.    The government contends that Dr. Russell's report "would not have alerted the lawyers to the need to investigate mental health generally or Dr. Sharp's findings." Mot. 6.

    a.  First, the assertion is vague. However, based on the government's earlier statements, it appears the government contends it is undisputed that Dr. Russell's report did not put trial counsel on notice that Dr. Sharp found "'Mr. Barrett suffered from extreme paranoia and long-term memory problems.'" Mot. 5 (quoting Doc. 95 (Amended § 2255 Mot.) at 191). The following aspects of Dr. Russell's reports actually *disprove* the government's claim:

      i.  Dr. Russell reviewed the "Psychological Evaluation completed by Dr. Bill Sharp." Mot. Ex. 4 (2003 Russell Report) at 2.

      ii.  Dr. Russell's report states that she administered no tests of intellectually functioning, but that "[t]ests of intellectual functioning fall in the average range." *Id.* at 3 & 4. These references, together with the reference to Dr. Sharp, put any reader on notice that Dr. Sharp administered some tests of intellectual functioning.

      iii.  Dr. Russell's 2005 report, prepared at the request of federal trial counsel, added a list of the tests Dr. Sharp administered. Mot. Ex. 3 at DISC 008235.

      iv.  Regarding the specific allegation of paranoia that the government asserts trial counsel lacked notice of, Mot. at 5, Dr. Russell's 2003 report says the

following at p. 9:

Dr. Sharp described Mr. Barrett as being extremely paranoid during his initial interview. Prior hospital records indicate some evasiveness while talking to doctors. In addition, Mr. Barrett reports withdrawing and isolating behaviors prior to his arrest. He indicated he rarely left his home and would ask family members to pick up needed items when in town.

    v. Dr. Russell repeated this paragraph in the 2005 report she prepared for trial counsel. Mot. Ex. 3 at DISC 008241.

b. Second, the government fails to provide evidence of how trial counsel would have reacted, Fed. R. Civ. P. 56(c), and that is unknowable because, as the government concedes, trial counsel lacked the knowledge necessary to form a strategic plan at the time of trial. *See United States v. Barrett*, 797 F.3d 1207, 1228 (10th Cir. 2015).

c. Third, the issue under the substantive law is how a reasonable attorney would have responded to the information contained in Dr. Russell's report. *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984); *Wiggins v. Smith*, 539 U.S. 510, 527-28 (2003).

    i. That determination must be based on the prevailing norms of capital defense practice. *Wiggins*, 539 U.S. at 524. The Supreme Court also has held that whether an attorney responded reasonably to the circumstances is a mixed question of fact and law. *Strickland*, 466 U.S. at 698. Therefore the government cannot sustain its burden by relying on the prosecutor's *ipse dixit*. However, the Motion presents no evidentiary basis for this Court to find it would be consistent with prevailing professional norms to ignore the information trial counsel had. Consequently, the Motion fails to establish any fact. Fed. R. Civ. P. 56(c).

    ii. However, as shown in Paragraph 8, *infra*, Mr. Barrett is prepared to present evidence that under prevailing professional norms, a reasonable attorney would have sought expert assistance following receipt of the information in Dr. Russell's report regarding Dr. Sharp.

5.    The government contends it is a "fact that Barrett places responsibility for the operative document at the feet of an investigator, rather than former counsel." Mot. 5. That assertion is false. Moreover, the government makes up an *allegation* not a material fact within the meaning of Fed. R. Civ. P. 56. The government's assertion is an attempt to construct a straw-man argument about Mr. Barrett's claim. Mr. Barrett has always asserted, as did this Court in its budgeting order, that federal trial counsel had an obligation to obtain the files on the case from OIDS.

    a. *See* Doc. 95 at 189 ("declarations of John Echols, Jack Gordon, and Steve Leedy (Exhibits 34, 82 and 111), show Mr. Hilfiger failed to undertake a reasonable investigation before concluding that no additional funds were needed to prepare for either stage of trial"); *ibid.* (Leedy declaration shows trial counsel failed to "familiarize[] *himself* with the results of an earlier mitigation investigation") (emphasis added).

    b. The transcript of the September 9, 2005, status hearing further demonstrates that the government is attempting to distract the Court with straw arguments. Trial counsel Smith stated at the time that he and Mr. Hilfiger were looking for the OIDS work product related to mitigation. Tr. Sept. 9, 2005, Hr'g at 43. The United States Attorney accurately described that as "the eleventh hour." *Id.* at 38.

    c. State second-stage counsel Jack Gordon has submitted a declaration contradicting

trial counsel's assertions at the September 9, 2005, hearing. Doc. 95, Ex. 82.

d. Trial counsel themselves, as well as this Court and the prevailing professional norms, American Bar Association, *Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, 31 Hofstra L. Rev. 913, 1015-27 (2003), Guideline 10.7 & commentary, placed the onus on trial counsel to obtain OIDS's files many months before September 2005.

6. The government contends that "Echols had investigated mental health, apart from his receipt of Sharp's findings, and received reports that Barrett did not have brain damage or any other mitigating condition." Mot. 5. Again, the government is attempting to distract the Court with an immaterial fact, or alleged facts. First, Mr. Echols's representation is not at issue. Second, the government places its interpretation on the information provided to Mr. Echols, but Mr. Echols and Mr. Barrett dispute the significance of that information.

a. Mr. Echols advised Mr. Hilfiger and this Court that, based on the work done before the two state trials the defense needed to retain an "expert in diagnosing organic brain disorders" (Case No. CR-04-115-P, Doc. 46 at 7, Doc. 50 at 8):

> Mr. Barrett is known to have used drugs and suffered significant head injuries during his life. The defense needs to engage an expert capable of assessing the likelihood that Mr. Barrett suffers from any identifiable psychological or physiological deficits, including possible organic brain disorders, affecting his judgment and ability to respond cognitively in a crisis setting.

b. Mr. Echols advised this Court and Mr. Hilfiger that the prior psychological work to which the Motion refers was among the things he considered. Doc. 95 Ex. 64 at 2.

7. The government urges this Court to reject the decision of the Tenth Circuit, contending that Dr. Russell's report "would not have alerted the lawyers to the need to

investigate mental health generally or Dr. Sharp's findings, notwithstanding the Court of Appeals' concerns to the contrary." Mot. 6. The government cites, and in its next paragraph selectively quotes from Dr. Russell's 2003 report. *Ibid.* Whether Dr. Russell's report would have alerted trial counsel to the need to investigate mental health must be assessed based on prevailing professional norms. *Strickland*, 466 U.S. at 690-91; *Wiggins*, 529 U.S. at 524-26; *Rompilla v. Beard*, 545 U.S. 374, 380-81 (2005). This Court must make "every effort to view the facts as a defense lawyer would have at the time," *Rompilla*, 545 U.S. at 385, and yet the Court has held evidence of that perspective is irrelevant. Docs. 361, 362. The government fails to identify any evidence of a prevailing professional norm or a defense lawyer's view of the facts to support its contention that Dr. Russell's report would not have triggered additional investigation by a reasonable attorney. Therefore, the government has failed to demonstrate that the fact is a fact or that it is undisputed. Fed. R. Civ. P. 56(c).

8.      The government contends this Court is free to disregard the Tenth Circuit's decision because "Russell did not, in fact, refer to Sharp's stated concern that the defendant had suffered organic brain damage, nor did she mention a family history of depression and mental illness." Mot. 7. Here again the government changes its theory. First it alleged that Dr. Russell's report did not put trial counsel on notice that Dr. Sharp found Mr. Barrett paranoid. Now the focus has shifted to an issue that Mr. Echols identified. Again, the Motion offers nothing but a prosecutor's *ipse dixit*, whereas the Tenth Circuit remanded this case for the Court to obtain facts, guided by the governing Supreme Court cases. Nevertheless, in an abundance of caution, Mr. Barrett states the following:

    a. Mr. Barrett has demonstrated that he is preparing to present the testimony of Richard H. Burr, an indisputable expert on capital defense practices, who served

as the defense's resource counsel on this very case. Doc. 95, Ex. 118 at ¶¶ 2-4. This Court has held Mr. Burr's testimony is irrelevant. At the same time, the government is asserting an entitlement to summary judgment on an issue that Mr. Barrett can dispute with Mr. Burr's testimony.

b. This Court previously established March 3, 2017, as the date for the exchange of expert reports. Order (Doc. 270) at 2. Mr. Barrett previously filed a declaration of counsel stating that Mr. Burr due to a medical issue, Mr. Burr is unable to file his report before March 8, 2017. Doc. 341. The government did not oppose Mr. Barrett's motion. *Ibid.* In light of the government's lack of support for its claims, and its improper purpose in bringing the Motion, this Court should deny the Motion. At a minimum, this Court should defer ruling and allow Mr. Barrett time to provide his expert's report on the question whether reasonable trial counsel would have seen nothing to investigate in Dr. Russell's report. Fed. R. Civ. P. 56(d).

c. Once given an opportunity to present his evidence, Mr. Barrett will show that reasonable trial counsel would have seen the following in Dr. Russell's report as worthy of investigation:

   i. Mr. Barrett was hospitalized in Eastern State Hospital for nine to ten days due to psychiatric concerns in 1986. Mot. Ex. 3 at DISC 008234.

   ii. Mr. Barrett received an evaluation and/or treatment at Bill Willis Community Mental Health Center in 1995. *Ibid.*

   iii. Mr. Barrett was psychiatrically evaluated Wagoner Community Hospital in 1995. *Ibid.*

iv.  Mr. Barrett shot himself in the chest with a shotgun in 1986. *Ibid.*

v.  Mr. Barrett reported five arrests for Driving Under the Influence of Alcohol. *Id.* at DISC 008236-37.

vi.  Mr. Barrett "describes a series of separations from his father when his mother would simply move him and his siblings back to Oklahoma with no warning." *Id.* at DISC 008237.

vii.  Mr. Barrett "reports his father ran around with other women and his mother drank a lot, which he believes she continues to do." *Ibid.*

viii.  Mr. Barrett reported an unhealthy relationship with his mother (*ibid.*):

After his parent's [*sic*] divorce, Mr. Barrett lived primarily with his mother. He states she always worked and was gone most of the time. He describes his mother as drinking on a daily basis and reported she was often "hateful" when drinking. Overall he describes a very permissive home life explaining he never had to lie to his mother because she didn't really care what he did. He further describes times she would smoke Marijuana and use Cocaine with him and then lecture him the following day about his use. At the present time, he has little contact with his mother.

ix.  "Mr. Barrett described himself as having a short attention span which is confirmed by statements made by other relatives who were around him as a child." *Ibid*.

x.  School "records show he attended learning disabled classes in English." *Ibid.*

xi.  "In 1986, Mr. Barrett shot himself in the chest after becoming despondent about Abby refusing to return to him. He remains perplexed about this shooting, explaining he was dating someone else and his life appeared to be going well at the time. He describes the shooting as impulsive, precipitated by his 'coming down off drugs.' Mr. Barrett expresses regret

and guilt about the failure of his marriage." *Ibid.*

xii. "Mr. Barrett reported having a head injury while in grade school when he was knocked unconscious after being hit by a steel ball. As described previously, he attempted suicide in 1986 by shooting himself in the chest with a 12 gauge shotgun." *Id.* at DISC 008238.

xiii. The entirety of the two sections of report titled "Mental Health Treatment" and "Substance Abuse." *Id.* at DISC 008238-39.

xiv. Regarding Dr. Sharp's assessment: "Results indicated Mr. Barrett lacked in adequate coping mechanisms, and endorsed items that indicated abnormal concerns regarding his health. Diagnoses included substance abuse disorders and both Avoidant and Paranoid Personality Disorders." *Id.* at DISC 008240.

xv. The following three paragraphs appearing at DISC 008241:

Prior to his arrest in 1999, Mr. Barrett's family described symptoms of what they believed to be mental illness. For example, his ex-wife described him as too emotional and believed he had mental problems due to his mood swings. She further described him as suffering deep depressions during which time he couldn't go to work. His son Toby described him as having dramatic mood fluctuations and believed that he had some type of chemical imbalance. Mr. Barrett's mother also described her son as having intense emotions and dramatic mood fluctuations. As described previously, Mr. Barrett completed one serious suicide attempt in 1986. His previous suicide attempt and hospitalizations appear to reflect periods of depression and extensive substance abuse.

Although Mr. Barrett did not appear to suffer from a major thought disorder such as Paranoid Schizophrenia, there are reports indicating a history of paranoia. Dr. Sharp described Mr. Barrett as being extremely paranoid during his initial interview. Prior hospital records indicate some evasiveness while talking to doctors. In addition, Mr. Barrett reports withdrawing and isolating behaviors prior to his arrest. He indicated he rarely left his home and would ask family members to pick up needed items when in town.

Records further indicate a history of impulsiveness. However these

behaviors appear exacerbated by drug use. This is supported by the fact we have not seen this impulsiveness during his incarceration. Psychological testing revealed feelings of longstanding personal inadequacies and ineffective coping. Coping skill deficits were also acknowledged as problematic, the lack of which were described in records provided by Eastern State Hospital, an inpatient psychiatric facility previously located in Vinita, Oklahoma.

  xvi. "His mother was described by family as having a substance abuse problem

    and drinking on a daily basis." *Id.* at DISC 008241.

  xvii. The following paragraph at DISC 008241-42:

Mr. Barrett reports he began drinking and using drugs at a young age and eventually dropped out of school, failing to complete the 9th grade. Although tests of intellectual ability indicate normal intelligence, he describes a lack of interest or completion of high school. Mr. Barrett's family described him as "hyper" which they reported as present from an early age. During his previous interviews (2003), he described the need to stay busy all the time. He felt he was able to do so while living out on his land where he repaired cars, hunted and fished.

  d. Mr. Burr would testify that under the prevailing professional norms of federal capital defense work in 2005 the foregoing pieces of information would have caused any reasonable capital defense attorney to investigate Mr. Barrett's mental health.

  9. The government characterizes as "profitless" the "mental health investigation undertaken by Mr. Echols before he withdrew," and invites this Court to overrule the Tenth Circuit on that basis. Mot. 7. The portions of the trial record cited *supra* shows Echols did not view the investigation as profitless. He believed an evaluation for organic brain disorders was necessary. The government's motion fails to connect what it falsely alleges that Echols believed, without evidentiary support, Fed. R. Civ. P. 56(c), to what Mr. Hilfiger and Mr. Smith actually believed. Consequently, the government offers only a prohibited post-hoc rationalization for what it appears to admit was trial counsel's failure to investigate. *Wiggins*, *supra*, 529 U.S. at

526-27.


# ANALYSIS


## II.    LEGAL STANDARDS

### A.  Summary Judgment

As this Court has said previously:

> Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322–23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998); Fed.R.Civ.P. 56(e)(2). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. Although a district court has discretion to go beyond referenced portions of the supporting material, it is not required to do so. *Id.* at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

*Garrison v. Board of County Comrs.*, 2011 WL 483994 at *1 (E.D. Ok. Feb. 7, 2011).

## B.  Ineffective Assistance of Counsel

The Motion focuses solely on the issue of deficient performance for failure to investigate mental health. The standard, as discussed *supra*, requires that counsel's performance be judged against prevailing professional norms such as those in the ABA Guidelines.

## III.    THE GOVERNMENT FAILED TO SUSTAIN ITS BURDEN

### A.  The Motion is Facially Defective

District courts must apply local rules in a manner consistent with Rule 56. *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002). Even where a party does not respond to a motion for summary judgment within the time allotted by the local rules, it may be error to grant the motion. *Ibid*. The Tenth Circuit treats the granting of a summary judgment on grounds that it was uncontested as a sanctions issue. *Reed*, 312 F.3d at 1193. Here, the movant ignored LCvR 56.1(b) to Mr. Barrett's prejudice by failing to state in discrete paragraphs those facts it claims are material and undisputed. The government added to the prejudice by stating its central point in a variety of forms. The Court added to the prejudice by shortening the time for Mr. Barrett to respond, especially at a time when any fairminded jurist would assume Mr. Barrett's counsel were preparing for the hearing. Under these circumstances, it would be error for this Court to deem any matter asserted by the government conceded, and error to grant the government's motion at all. *Reed*, 312 F.3d at 1194.

*Reed* makes clear that the movant bears the initial burden:

> As explained by the Supreme Court in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160–61 (1970), the burden on the nonmovant to respond arises only if the summary judgment motion is properly "supported" as required by Rule 56(c). Accordingly, summary judgment is "appropriate" under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c). If the evidence produced in support of the summary judgment motion does not meet this burden, "summary judgment must be

Pet'r's Resp. Opp. Govt. MSJ                    15                    *U.S. v. Barrett*, CV-09-00105-JHP

denied *even if no opposing evidentiary matter is presented.*" *Id.* at 160 (quoting Fed.R.Civ.P. 56 advisory committee notes to the 1963 amendments) (emphasis added).

312 F.3d at 1194. The government failed to sustain that burden for the reasons stated in § I, *supra*. Dr. Russell's reports, which are the governments Motion Exhibits 3 and 4, contradict the government's central claim that trial counsel was not on notice of that Mr. Barrett displayed extreme paranoia to Dr. Sharp, and further show that Mr. Barrett's family and medical records provided extensive information alerting trial counsel to his mental health problems, including Mr. Barrett's own account of being knocked unconscious when a steel ball struck him in the head.

### B. The Government Failed to Show the Absence of a Dispute of Material Fact

As the moving party, the government has the burden of demonstrating the absence of a dispute of material fact. *Garrison*, *supra*. For the reasons stated in §§ I and III.A, *supra*, the government failed to sustain its burden. The government failed even to state the issue it claims is undisputed with sufficient clarity to call it identified much less supported. The government disputes the authenticity of the first document on which it relies. The government's own exhibits then contradict the central factual claims of the government's motion. Under these circumstances, the government presented nothing on which this Court could base summary judgment. *Cf. Mitchael v. Intracorp., Inc.*, 179 F.3d 847, 855-56 (10th Cir. 1999). The government's presentation is very similar to the non-movant's rejected submission in *Mitchael* which was described as follows:

> "[P]laintiffs (1) failed to "specifically controvert" defendants' statements of facts with denials or counter-statements that fairly met the substance of defendants' statements, (2) failed to support many of their facts with adequate citations to the record, (3) intermixed their responses and their own statements of "facts" with legal arguments and asserted inferences to

> be drawn from the facts, (4) mischaracterized much of the evidence, and (5) failed to present much of their documentary evidence in an admissible form."

179 F.3d at 856. Here, (1) the government's motions and exhibits contradict its own statements about what is admissible and what was available to trial counsel, (2) the government plays fast and loose with references to the district court and appellate records, and, (3) while failing to comply with LCvR 56.1(b), (4) the government freely intermingles its "facts" with conclusory statements on deficient performance, an issue the Supreme Court has held is a mixed question of law and fact. *Strickland*, 466 U.S. at 698.

Before the Tenth Circuit, the government argued that Mr. Barrett was not entitled to a hearing or relief under *Alcala v. Woodford*, 334 F.3d 862, 893 (9th Cir. 2003), because Mr. Barrett's family did not inform counsel that they observed evidence of mental problems. GB 37, 60. The government also contends in the Motion that Dr. Russell served as the defense psychologist for purposes of the penalty phase—a characterization the witness herself denies and that trial counsel repudiated at the time of trial—and Dr. Russell gave no indication that Mr. Barrett suffered mental problems. Mot. 6-7. These two claims contradict each other. As shown in § I, ¶ 8.c.xv, *supra*, Dr. Russell qualified her remarks about how mental health professionals had previously diagnosed Mr. Barrett with a lengthy description of the information his family provided that they viewed as evidence of his mental problems. Mot. Ex. 3 at DISC 008241.

Moreover, contrary to the government's claims about how Mr. Barrett presented his claim to the Tenth Circuit, Mr. Barrett did not base his showing on Dr. Sharp's report. Mr. Barrett asserted,

> Despite Mr. Barrett's previous documented contacts with the mental health system, of which counsel were aware (Docs. 15-27, Exh. 147; Doc. 175, Exhs. 11, 12), and despite the fact previous lead counsel had requested funds for a comprehensive mental health evaluation (Doc. 1, Exh. 34; Doc. 3, Exhs. 64-65; CrDoc. 97), counsel never employed a mental health expert

to perform this task.

AOB 61. The Tenth Circuit applied, *de novo*, the test for determining whether a petitioner is entitled to an evidentiary hearing. *Barrett*, *supra*, 797 F.3d at 1224. "That decision turn[ed] on 'whether such a hearing could enable [the movant] to prove the [motion's] factual allegations, which, if true, would entitle the [movant] to ... relief.'" *Ibid.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)).

Rather than comply with the mandate that this Court "enable" Mr. Barrett prove his factual allegations, this Court's in limine rulings bar Mr. Barrett from presenting proof, including on an issue the government raises in its summary judgment motion. The government asserts that "[i]n the absence of Sharp's findings, Russell's report would not have led reasonable counsel to perform further investigation, especially into the areas of brain damage and major mental illness, which it either ignores or refutes." Mot. 7. The government presents no evidence regarding the prevailing professional norms it claims as a measure of what reasonable counsel would do. Additionally, Mr. Barrett is prepared to present evidence that it would have been consistent with prevailing professional norms to conduct a mental health evaluation in response to Dr. Russell's report, § I, ¶ 8, *supra*. However, this Court has ruled that such evidence is not relevant. Orders (Docs. 362, 361). Either the Motion is deficient because the government fails to substantiate its claim about what reasonable counsel would do in response to Dr. Russell's information, the Motion is deficient Mr. Barrett has demonstrated an ability to present competent evidence contradicting the government's contention, or the Motion is deficient because it relies on an issue this Court has deemed irrelevant. In either case, the Motion must be denied.

The government also rests its position on a legal fallacy, namely that trial counsel only have a duty to investigate and present evidence rising to the level of a "major mental illness." Mot. 7. Assuming *arguendo* that trial counsel for Mr. Barrett believed only evidence of "major

mental illness" could serve as a mitigating factor, and that trial counsel based their failure to investigate on that belief, as the government implies, trial counsel were ineffective for basing their decision on an erroneous view of the law. *See*, *e.g.*, *Williams (Terry) v. Taylor*, 529 U.S. 362, 395 (2000) (finding counsel deficient in part because they failed to investigate records "not because of any strategic calculation but because they incorrectly thought state law barred access to such records"); *Kimmelman v. Morrison*, 474 U.S. 365, 385 (1986) (finding trial counsel's failure to request discovery deficient where based "on counsel's mistaken beliefs that the State was obliged to . . . turn over all of its inculpatory evidence"). Like the petitioner in *Williams*, it should be "undisputed that [Mr. Barrett] had a right—indeed, a constitutionally protected right— to provide the jury with the mitigating evidence that his trial counsel either failed to discover or failed to offer." *Williams (Terry)*, 529 U.S. at 393. When the Supreme Court has "addressed directly the relevance standard applicable to mitigating evidence in capital cases . . . [the Court] spoke in the most expansive terms." *Tennard v. Dretke*, 542 U.S. 274, 284 (2004). "[S]entencing juries must be able to give meaningful consideration and effect to all mitigating evidence that might provide a basis for refusing to impose the death penalty on a particular individual, notwithstanding the severity of his crime or his potential to commit similar offenses in the future." *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). When the Supreme Court has discussed mitigation, it has referred not to "major mental illness," but to the "belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to *emotional or mental **problems***, may be less culpable than defendants who have no such excuse." *Boyde v. California*, 494 U.S. 370, 382 (1990) (internal quotation marks and citation omitted) (emphasis added). In a federal death penalty case, it is error to exclude mental health testimony even if the evidence is equivocal. *United States v. Purkey*, 428 F.3d 738, 757-58

(8th Cir. 2005). That is the conception of mitigation that must underlie this Court's analysis. *Mayes v. Gibson*, 210 F.3d 1284, 1288 (10th Cir. 2000). The verdict forms appended to this Opposition show that federal jurors have found it mitigating that a defendant suffered mental health problems that did not rise to the level of a major mental illness. Ex. A at 17-19; Ex. B at 8-9; Ex. C at 7-8; Ex. D at 7-8; Ex. E at 7-9; Ex. F at 8-9, 12-13. If one juror found Mr. Barrett's emotional and mental health problems sufficiently weighty, a life sentence would be imposed. 18 U.S.C. 3593(e).

The government asserts that Mr. Barrett's claim of ineffective assistance of counsel cannot prevail because, "If trial counsel were unaware of Dr. Sharp's findings, it appears he cannot show that they acted ineffectively." Mot. 6. As shown in § I, the government's own exhibits show Dr. Russell advised trial counsel of Dr. Sharp's findings and additional evidence, such as Mr. Barrett's head injuries and suicide attempt, that any reasonable defense attorney would have followed up. As a matter of law, the government's argument fails. Trial counsel's failure to pursue red flags in Dr. Russell's report indicating evidence of organic brain damage *alone* warrants an evidentiary hearing on ineffective assistance of counsel due to failure to mitigate. *Littlejohn v. Trammell*, 704 F.3d 817, 861-67 (10th Cir. 2013) (remanding for evidentiary hearing because red flags of head injury were ignored by trial counsel;  where expert report contains red flags of physical brain damage, "we would be hard-pressed to conclude that [petitioner's] counsel was not constitutionally deficient in failing to follow up on the red flags" if they proved "worthy of belief"). *See also Wilson v. Sirmons*, 536 F.3d 1064, 1091-93 (10th Cir. 2008).

The government's exhibits show Dr. Russell mentioned Dr. Sharp repeatedly and yet trial counsel state they never heard of him. That ignorance is evidence of deficient performance.

*Martin v. Rose*, 717 F.2d 295, 296-97 (6th Cir. 1983) ("ignorance by the attorney of some of the contents of a[] . . . file" assembled by prior counsel "constituted ineffective assistance of counsel"). Trial counsel's failure to obtain prior counsel's report of Dr. Sharp findings violated the duty to reasonably investigate. *Casey v. Frank*, 346 F.Supp.2d 1000, 1014-15 (E.D. Wis. 2004) ("A lawyer must request a file [of predecessor counsel] to discover what . . . it contains"); *see also Brown v. Sterns*, 304 F.3d 677, 692 (7th Cir. 2002) (holding that an "attorney must look into readily available sources of evidence).

### C.  The Government's Motion is Barred by the Law of the Case

As previously noted, the Tenth Circuit has held that Mr. Barrett presented sufficient evidence to be entitled to a hearing that would "enable" him to prove his claim. *Barrett*, 797 F.3d at 1224. The government's motion, and this Court's in limine rulings, are intended to preclude Mr. Barrett from proving his claim. These actions are barred by the law of the case.

> The law of the case doctrine provides "'[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1553 (10th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)), *cert. denied*, 504 U.S. 910 (1992). Thus when a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal. *United States v. Monsisvais*, 946 F.2d 114, 116 (10th Cir. 1991) (citing 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice ¶ 0.404[1], at 119 (2d ed. 1991)).

*Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995).

The factual support for Mr. Barrett's claim has only grown stronger since the remand. As shown in § I, *supra*, the government makes only a sham attempt to show that the evidence is different than what the Tenth Circuit believed. To the extent the material facts are undisputed, the evidence is entirely in Mr. Barrett's favor. Trial counsel was on notice of Dr. Sharp's report and its underlying findings. Trial counsel knew Dr. Sharp had worked under the auspices of

OIDS, but they simply failed to seek the OIDS file. Contrary to the government's desperate, later-than-eleventh-hour attempt to reframe the issues, trial counsel, and only trial counsel, had a duty to obtain those files, and their failure to do so was not strategic. Mot. 5-6. Trial counsel's failure to pursue known sources of penalty phase evidence is deficient performance as a matter of law. *Rompilla*, 545 U.S. at 384-85; *Wiggins*, 539 U.S. at 522-23; *id.* at 527-28; *Williams (Terry)*, 529 U.S. at 395-96.

## CONCLUSION

For the foregoing reasons, this Court must deny the government's Motion for Partial Summary Judgment.

DATED:  February 27, 2017

Respectfully submitted,

/s/ *David Autry*
DAVID AUTRY
Attorney at Law

/s/ *Joan M. Fisher*
JOAN M. FISHER
Assistant Federal Defender

/s/ *Tivon Schardl*
Tivon Schardl
Capital Trial & Habeas Attorney

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

**CERTIFICATE OF ELECTRONIC SERVICE AND DELIVERY**

This is to certify that on this 27th day of February 2017, I caused the foregoing Petitioner's Response in Opposition to the Government's Motion for Partial Summary Judgment to be filed with the Clerk of the Court using the ECF System for filing, with service via CM/ECF to be made to Christopher J. Wilson, AUSA, Jeffrey B. Kahan, U.S. Department of Justice, and to all counsel of record.  To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.

/s/ *Tivon Schardl*
TIVON SCHARDL