**DAVID AUTRY**, OBA No. 11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
Telephone:      (405) 521-9600
Facsimile:      (405) 521-9669
E-mail:          dbautry77@gmail.com

**HEATHER E. WILLIAMS**, CA Bar #122664
Federal Defender
**JOAN M. FISHER**, ID Bar # 2854
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, California  95814
Telephone:      (916) 498-6666
Facsimile:      (916) 498-6656
E-mail:          Joan_Fisher@fd.org

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH EUGENE BARRETT, <br><br> Petitioner, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | CASE NO. CV-09-00105-JHP |

**PETITIONER'S SUR-REPLY
TO THE GOVERNMENT'S REPLY
TO PETITIONER'S RESPONSE IN OPPOSITION
TO THE GOVERNMENT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

RESPONSE TO STATEMENT OF MATERIAL FACTS ..................................................................................1

ANALYSIS ..........................................................................................................................................................21

CONCLUSION ...................................................................................................................................................25

CERTIFICATE OF ELECTRONIC SERVICE AND DELIVERY .............................................................26

## TABLE OF AUTHORITIES

**Federal Cases**

*Banker v. Gold Res. Corp.* (*In re Gold Res. Corp. Sec. Litig.*), 776 F.3d 1103 (10th Cir. 2015)  1, 3

*Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014)  ............................................................ 2

*Casey v. Frank*, 346 F. Supp. 2d 1000 (E.D. Wis. 2004) ............................................ 4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)  ............................................... 22

*City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000) ........................................... 23

*Green v. New Mexico*, 420 F.3d 1189 (10th Cir. 2005)  .................................... 3

*Martin v. Rose*, 717 F.2d 295 (6th Cir. 1983)  .................................................... 4

*Penry v. Lynaugh*, 492 U.S. 302 (1989)  .......................................................... 6

*Rhodes v. Cain*, 2014 WL 4686809 (E.D. La. Sept. 19, 2014) ......................... 4

*Rompilla v. Beard*, 545 U.S. 374 (2005) ................................................... 23

*Strickland v. Washington*, 466 U.S. 668 (1984)  .............................................. 25

*United States v. Barrett*, 797 F.3d 1207 (10th Cir. 2015) ................................... *passim*

*United States v. Poindexter*, 492 F.3d 263 (4th Cir. 2007) ............................. 2

*United States v. Pulido-Jacobo*, 377 F.3d 1124 (10th Cir. 2004) ........................... 6, 25

*Wiggins v. Smith*, 539 U.S. 510 (2003) ...................................................... 23, 24, 25

**Federal Statute and Rules**

Fed. R. Civ. P. 56(a)  ................................................................................ 22

Fed. R. Civ. P. 56(c)  ................................................................................ 3, 16

Fed. R. Civ. P. 56(c)(2) ............................................................................ 5, 10, 12, 13

Fed. R. Evid. 702  .................................................................................... 5

Fed. R. Evid. 801(d)(2) ............................................................................ 6, 25

28 U.S.C. § 2255 ..................................................................................... 1, 2, 24

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF OKLAHOMA

KENNETH EUGENE BARRETT,

            Petitioner,

vs.

UNITED STATES OF AMERICA,

            Respondent.

CASE NO. CV-09-00105-JHP

PETITIONER'S SUR-REPLY TO THE GOVERNMENT'S REPLY TO PETITIONER'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Petitioner, Kenneth Eugene Barrett, by and through undersigned counsel, makes the sur-reply ordered by this Court on March 2, 2017. *See* Doc. 375.

## RESPONSE TO STATEMENT OF MATERIAL FACTS

1. The fact that John Echols represented Mr. Barrett in state court is neither disputed nor material. Mr. Barrett makes the following three points about Reply Paragraph 1:

   a. It is frivolous and improper for the government to assert Echols's state-court representation as a material fact and to raise it in a reply given that the fact obviously was available to the government at the time it filed its Motion and Mr. Barrett's response did not raise the issue in his Response. *See Banker v. Gold Res. Corp. (In re Gold Res. Corp. Sec. Litig.)*, 776 F.3d 1103, 1119 (10th Cir. 2015).

   b. Second, the government makes no attempt to explain how this fact makes it entitled to judgment as a matter of law. This case is here on remand after a higher court determined, *de novo* and as a matter of law, that Mr. Barrett was entitled to an evidentiary hearing under the Rules Governing § 2255 Proceedings. *United States v. Barrett*, 797 F.3d 1207, 1224, 1232 (10th Cir. 2015). "When the district

court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007). Accordingly, the Tenth Circuit has already held that Mr. Barrett's claim cannot be disposed of on summary judgment because he pled and demonstrated an ability prove facts which, if proved, would entitle him to relief. *Barrett*, 797 F.3d at 1224. The government in its Reply does not dispute Mr. Barrett's contention that it must overcome the law of the case in order to prevail on its Motion. Pet'r's Resp. Opp. MSJ (Doc. 366) at 21-22. "[T]he law of the case is subject to three narrow exceptions: (1) when new evidence emerges; (2) when intervening law undermines the original decision; and (3) when the prior ruling was clearly erroneous and would, if followed, create a manifest injustice." *Bishop v. Smith*, 760 F.3d 1070, 1086 (10th Cir. 2014). The fact of Echols's prior representation cannot satisfy any of the exceptions, and the government makes no attempt to argue that it, or any of the Reply's 38 enumerated facts, satisfies an exception. The Tenth Circuit repeatedly referred to Mr. Echols's declaration, and specifically mentioned his work in preparing for the state trials, when it ordered a hearing on precisely the issue the government claims is subject to summary judgment. *Barrett*, 797 F.3d at 1227. Therefore, Reply Paragraph 1 fails to establish a material fact.

c. While a response to a properly pled motion for summary judgment must specifically respond to the factual averments of the motion, LCvR 56.1(c), there is no similar rule for replies and sur-replies. This Court's order directing Mr. Barrett specifically to respond to the government's statement of facts treats the Reply as

though it were a second motion for summary judgment. The government indicates it intends the enumerated paragraphs to serve as a second motion. Reply 2 n.1. Local Rule 56.1(a) requires leave of court before a party may file a second motion for summary judgment. The government did not request leave to have its Reply treated like a second motion, and the government offered no excuse for its acknowledged failure to comply with Fed. R. Civ. P. 56(c) and LCvR 56.1(b) when it filed the Motion. Reply 2 n.1. The Reply is twice the length of the Motion and barely mentions Mr. Barrett's Response. Due to the newly asserted, although long-available, factual and legal matter in the Reply, *see* ¶ 1.a, *supra*, this Court could not consider the Reply without affording Mr. Barrett an opportunity to respond. *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) (citing *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003)). This Court could have disregarded the Reply, *ibid.*, or rejected it as improper, *Banker*, *supra*, and, as previously noted, only this Court's Order required Mr. Barrett to respond to each of the government's stated facts, rather than making legal arguments. In light of foregoing points and authorities and (1) the obviousness of the fact and the obvious lack of materiality in Echols's state-court representation and nearly all other enumerated paragraphs in the Reply; (2) the Tenth Circuit's expressed reliance on Mr. Echols's declaration referring to his state-court work when ordering the hearing the government now seeks to escape; (3) Mr. Barrett's prior complaint that the government's non-rule-compliant Motion interfered with his counsel's preparation for the evidentiary hearing, Resp. (Doc. 366) at 1; and (4) this Court's past actions directing Mr. Barrett's counsel to

do work no other similarly situated litigant in this District had previously been required to perform (Ex. G, hereto), Mr. Barrett contends that unless this Court intends to sanction the government for its abusive practices, this Court's Order directing Mr. Barrett to respond to each factual statement serves no legitimate purpose.

2. That Steve Leedy assisted Mr. Echols in state court is not disputed. The fact is material only insofar as trial counsel Roger Hilfiger and Bret Smith were on notice of Mr. Leedy's role in investigating the case and therefore, they knew they should obtain his files. *Cf. Rhodes v. Cain*, 2014 WL 4686809 at *22 (E.D. La. Sept. 19, 2014) (ordering evidentiary hearing based on allegation post-conviction counsel was deficient for failing to obtain records from predecessor counsel); *Casey v. Frank*, 346 F.Supp.2d 1000, 1014 (E.D. Wis. 2004) ("Counsel's failure to obtain predecessor counsel's investigative reports can also violate the duty to reasonably investigate."); *Martin v. Rose*, 717 F.2d 295, 296-97 (6th Cir. 1983). The foregoing decisions, as well as the Tenth Circuit's decision in this case, precludes the government from demonstrating that the fact of Leedy's role shows it is entitled to judgment in its favor as a matter of law. In addition, the grounds asserted in Paragraphs 1.a through 1.c, *supra*, apply with equal force here, and the legal authorities cited therein are incorporated into this paragraph by specific reference as if fully set forth herein. Mr. Leedy's declaration was part of the record before the Tenth Circuit when it ordered the hearing the Motion seeks to derail.

3. Mr. Barrett makes the following responses to Reply Paragraph 3:

    a. It is undisputed that on June 21, 2002, Mr. Leedy sent Peter Rauch's memorandum to Mr. Echols. It is undisputed that Rauch reviewed records of Mr.

Barrett's mental health history. It is undisputed that the memorandum contains the words quoted in Reply Paragraph 3. However, to the extent Mot. Ex. 7 might be material, there are genuine issues related to it. Mr. Barrett disputes the government's characterization that Rauch "analyzed Barrett's mental health history." The government presents no evidence regarding Rauch's qualifications to analyze records for the purpose of reaching either a clinical or a legal conclusion about whether it is mitigating. It is far past time for the government to endorse Rauch as a witness or provide a report under Fed. R. Evid. 702 and this Court's scheduling order. Accordingly, the government has no admissible evidence supporting the validity or reliability of any opinions Rauch may have offered and therefore it has failed to show the absence of a genuine issue. Fed. R. Civ. P. 56(c)(2).

b. The government fails to show the materiality of the information in Reply Paragraph 3.

c. The government does not contend and presents no evidence that the attorneys whose effectiveness is at issue, Mr. Hilfiger and Mr. Smith, ever saw or relied upon the memorandum from Rauch, or that Mr. Echols relied upon it to reject a mental health evaluation for mitigation purposes, or that Messrs. Hilfiger and Smith relied upon such an opinion held by Echols. On the contrary, the government has presented declarations from both trial attorneys that specifically respond to Mr. Barrett's allegations, and neither attorney mentioned Rauch's memorandum. Rauch's memorandum was in Mr. Hilfiger's possession. Ex. H (Decl. Joan Fisher) at ¶ 2. Given that Mr. Hilfiger and Mr. Smith made their

declarations for the specific purpose of responding Mr. Barrett's claim of ineffectiveness for failing to pursue mental health evidence, their failures to mention Rauch should be seen as adoptive admissions by silence. *Cf. United States v. Pulido-Jacobo*, 377 F.3d 1124, 1132 (10th Cir. 2004); Fed. R. Evid. 801(d)(2).

d. There is no evidence that it would be reasonable for an attorney to rely upon Rauch. The government presents no evidence as to who Rauch is, what his qualifications are, and why any capital defense attorney would rely on him when assessing how individual capital jurors in a federal death penalty case would respond to Mr. Barrett's history of mental and emotional problems. Motion Exhibit 3 demonstrates why it would be unreasonable, as a matter of law, for an attorney to rely upon Rauch's "conclusion." The record before the Tenth Circuit showed the Court of Appeals was aware that Mr. Echols had received advice on mental health issues. *Barrett*, 797 F.3d at 1227. The record also shows that Mr. Echols concluded from his experience that Mr. Barrett should be evaluated for an organic brain disorder. Resp. (Doc. 366) at ¶¶ 6.a & 6.b. Rauch's memorandum recounts Mr. Barrett's history which is consistent with the Supreme Court's description of mitigation. *See*, *e.g.*, *Penny v. Lynaugh*, 492 U.S. 302, 319 (1989), *overruled on other grounds by*, *Atkins v. Virginia*, 536 U.S. 304 (2002). There is a handwritten note at the bottom of the memorandum indicating at least one recipient believed that further inquiry was necessary to determine whether Mr. Barrett was "likely to overreact" when intoxicated ("w/ intox"). Mot. Ex. 7 at DISC 008301. The Tenth Circuit concluded that the same records described in

Rauch's memorandum, constituted "evidence that counsel failed to make an effort 'to discover all reasonably available mitigation evidence' despite ample indication of potential mental-health problems." *Barrett*, 797 F.3d at 1227. Consequently, Reply Paragraph 3 and Mot. Ex. 7 establish, at most, that Rauch had a different *legal* opinion about Mr. Barrett's medical records than the Tenth Circuit had. In sum, based on the authorities cited herein and in Paragraph 1.b, *supra*, Reply Paragraph 3 fails to state grounds for rejecting the Tenth Circuit's order.

e. Reply Paragraph 3 demonstrates that both the Motion and Reply are improper and abusive for the reasons stated in the Response and Paragraphs 1.a and 1.c, *supra*. Obviously, the government could have made a specific factual statement based on an exhibit it attached to the Motion, but it merely cited Motion Exhibit 7 in passing. Mot. 5. Equally obviously, this Sur-reply serves only to impede the work of Mr. Barrett's counsel to prepare for the hearing and to enable the Court to rely on the reply, thereby saving the government from the facial deficiencies of its Motion.

f. Mr. Barrett would show through the type of expert that Mr. Echols sought to hire, Doc. 376-1 (Decl. Deborah Miora, Ph.D.) & Doc. 376-2 (Decl. Erin Bigler, Ph.D.), and through trial counsel's available resource counsel, Richard Burr, *see* Resp. (Doc. 366) at ¶ 8, that if trial counsel had brought the resources available to them to bear on Rauch's memorandum, there would have been no strategic reasons not to investigate further. However, this Court has already refused to hear from Mr. Barrett's witnesses, and it ordered this Sur-reply before he could obtain further expert assistance. *See* Doc. 346. For these reasons, in addition to those

cited in the preceding paragraph, the Court's order scheduling this Sur-reply fails to give Mr. Barrett a meaningful opportunity to respond.

4. Mr. Barrett does not dispute that Bill Sharp's report to OIDS contained the things stated in Reply Paragraph 4, as well as other matters that were set out in the Amended Motion to Vacate. In addition, Mr. Barrett states the following:

   a. For the reasons stated in Mr. Barrett's Response (Doc. 366), and in Paragraphs 1.a, 1.b, 1.c and 3.c, *supra*, Reply Paragraph 4 is improper and does not present a material fact. The Tenth Circuit specifically cited Sharp's report as evidence of deficient performance. *Barrett*, 797 F.3d at 1227.

   b. The following raise a genuine issue about Dr. Sharp and his report:

      i. trial counsel were on notice of Sharp's evaluation because Dr. Russell repeatedly mentioned it;

      ii. Dr. Russell specifically mentioned Dr. Sharp's observation of extreme paranoia in her 2003 report and in her 2005 report to Messrs. Hilfiger and Smith, and the government concedes that being on notice is sufficient to trigger a duty to investigate, Mot. (Doc. 347) at 5-6;

      iii. Mr. Smith stated on the record on September 9, 2005, that he knew he did not have all the mitigation investigative files from predecessor counsel;

      iv. trial counsel were on notice of Mr. Leedy's role in the state case;

      v. trial counsel could have obtained Sharp's report from Mr. Leedy but failed to so;

      vi. Dr. Sharp stated in his declaration, which was before the Tenth Circuit, that in 2005 someone asked him to fax them his report, Doc. 95 Ex. 55 at ¶

16, which was the factual basis for Mr. Barrett's allegation that trial counsel possessed the report.

5. Mr. Barrett does not dispute that on July 13, 2003, Kathy LaFortune drafted a report that stated "no mental health expert is recommended at this time," and that at some time, perhaps in August 2003, the memorandum was faxed to someone, probably Mr. Echols. The government's omission of the phrase "at this time" from the hearsay document has the potential to materially alter the import of the document, if any, and therefore, Mr. Barrett disputes the government's statement to the extent it is intended to support the proposition that LaFortune believed, and caused trial counsel to believe, there would never be a time when it would be reasonably necessary for Mr. Barrett's counsel to seek further expert assistance in preparation for a penalty trial.

   a. For the reasons stated in Paragraphs 1.a, 1.c and 3.c, *supra*, Reply Paragraph 5 is improper.

   b. To the extent the government attempts to show that only Echols possessed LaFortune's memorandum, the government's own declaration from Mr. Hilfiger undermines that contention. Mr. Hilfiger stated in his declaration that he retrieved Mr. Echols's files from Mr. Echols's house. Doc. 174 Ex. 12 at ¶ 4.

   c. In addition, the fact that LaFortune did not recommend a further mental health evaluation at that time is not material, or creates a genuine issue, for the following reasons:

      i. The government has obtained declarations from trial counsel that specifically respond to Mr. Barrett's allegations but those declarations do not mention LaFortune or any opinion the government suggests Mr.

Echols formed on the basis of LaFortune's memorandum. As stated in Sur-reply Paragraph 3.c, *supra*, their silence should be taken as an adoptive admission. In evidence that was before the Tenth Circuit, Mr. Echols mentioned LaFortune and said he formed the opinion that an expert was needed to investigate Mr. Barrett's organic brain impairments. Resp. (Doc. 366) at ¶ 2.

ii.  There is a genuine issue regarding LaFortune's statement that "no mental health expert is recommended at this time." First, her temporal qualification renders the statement ambiguous. The document itself is hearsay and the government has failed to demonstrate an ability to present admissible evidence that would resolve the ambiguity created by the temporal qualifier. Fed. R. Civ. P. 56(c)(2). Second, to the extent she expressed a legal opinion about the mitigating value of Mr. Barrett's mental health history and what it suggests, her opinion is at odds with that of the Supreme Court and Tenth Circuit, as stated in Paragraph 3.b.ii, *supra*. Additionally, the government has not endorsed LaFortune as an expert or provided any reports as required by this Court's scheduling order. Accordingly, the government is unable to prove that LaFortune is a mental health expert and that her opinions are admissible in this case or that it would be reasonable for trial counsel to have relied upon them, if they did. Fourth, in an exhibit that was part of the record before the Tenth Circuit, Mr. Echols stated that LaFortune herself was prepared to testify as a second stage witness for the defense in state court. Doc. 95 Ex. 64 at 2 &

4. From the record it appears LaFortune could have meant no *further* mental health expert was recommended *at that time* because her evaluation would have sufficed for present purposes either because it contained mitigation evidence or because further assistance could be delayed.

d. As stated in Paragraph 3.d, *supra*, this Court's previous orders excluding Mr. Barrett's experts and the scheduling of this Sur-reply undermine Mr. Barrett's ability to make a meaningful response to the Reply.

6. Mr. Barrett does not dispute that Faust Bianco executed an affidavit on October 31, 2003. Motion Exhibit 5 does not establish when Mr. Echols obtained the affidavit, although Mr. Barrett does not dispute that at some time he obtained it and it was in files he provided to Mr. Hilfiger. The government misrepresents the affidavit by omitting the temporal qualification that Dr. Bianco stated "further neurological testing is unwarranted *at this time*." Mot. Ex. 7 (emphasis added). That qualification and the following show there is a genuine issue as to the import of Bianco's affidavit and that the government is not entitled to prevail as a matter of law:

a. Reply Paragraph 6 is improper and interposed for an improper purpose for the reasons stated in Paragraphs 1.a, 1.c and 3.c, *supra*.

b. Either there is a genuine issue regarding Reply Paragraph 6, or it is not material for the reasons stated in the Response and in Paragraph 1.b, 3.b and 5.b, *supra*.

c. Mr. Barrett can establish a genuine issue and the government is not entitled to prevail as a matter of law on the basis of Reply Paragraph 6, either alone on in conjunction with its other paragraphs for the reasons stated in the preceding

paragraph and because Mr. Barrett can show that no reasonable attorney would have relied upon Bianco's affidavit to forego further testing. Those reasons include the following:

i.  Rauch's memorandum advised trial counsel to "track down that psychological evaluation that was apparently done by Dr. Bianco," in part because Rauch could not understand why "a report did not appear in his records." Mot. Ex. 7 at DISC 008301. Rauch believed that the history underlying Mr. Barrett's "development of a personality disorder may be useful in mitigation." *Ibid.*

ii.  Roseann Schaye vigorously disputed Bianco's conclusions and urged trial counsel to investigate further, and the record shows that concern was communicated to Mr. Hilfiger in writing on February 28, 2005. Doc. 95 Ex. 64 at 2 & 6.

iii.  If trial counsel had reviewed Dr. Bianco's affidavit and the opinions of Dr. Sharp, they would have been faced with three conflicting opinions on whether further evaluation was called for at the then-present time. As stated in Mr. Barrett's Response, Mr. Barrett is prepared to present testimony from attorney Richard Burr that prevailing professional norms would have called upon trial counsel to use the funds this Court made available to determine whether Mr. Barrett had a mitigating condition.

iv.  As already noted, in evidence that was before the Tenth Circuit, Mr. Echols mentioned Dr. Bianco's evaluation in the course of explaining why he believed an evaluation for organic brain impairments was necessary

before the federal trial. Doc. 95 Ex. 64 at 2.

v. If trial counsel had used the funds this Court made available for a psychological evaluation, they would have learned that Dr. Bianco failed to evaluate Mr. Barrett for the type of impairment that would most obviously be relevant to his case, namely, impaired executive functioning. Doc. 376-1 (Decl. Deborah Miora) at 7-8; Doc. 376-2 (Decl. Erin Bigler) at ¶¶ 13-14. Executive functioning is precisely the area that is alluded to in the handwritten note at the bottom of Rauch's memorandum. *Ibid.*; Mot. Ex. 7 at DISC 008301. In sum, the expert assistance this Court made available to trial counsel would have showed counsel that Dr. Bianco's failure to complete an evaluation of Mr. Barrett's executive functioning renders the third paragraph of his affidavit completely meaningless from both a legal and a neuropsychological perspective.

vi. As Rauch noted, Dr. Bianco never produced a report. Bianco's affidavit contains no statement regarding what areas of brain function he evaluated and what areas he did not evaluate, and what his findings were, in neuropsychological terms. As Dr. Bigler notes, Dr. Bianco's raw data lacks the normative scales that even a professional neuropsychologist would need to fully interpret his data. Doc. 376-2 at ¶ 9. There is no evidence that trial counsel had the knowledge of neuropsychological testing and scoring to interpret Bianco's raw data. Trial counsel could not reasonably have relied upon data that were meaningless to them.

d. To the extent the government contends that Mr. Echols did not give Mr. Hilfiger

the files containing Dr. Bianco's raw data, that contention is refuted by Mr. Hilfiger's declaration, Doc. 174 Ex. 12 at ¶ 4, and Ex. H hereto.

7. For the reasons stated in the Response (Doc. 366), Mr. Barrett disputes the government's misleadingly incomplete characterization of Dr. Russell's 2003 report. For the reasons stated in the Response and herein *supra*, Mr. Echols's receipt of Dr. Russell's 2003 report is not material and does not show the government is entitled to a judgment in its favor as a matter of law. The Tenth Circuit found the information trial counsel had from Dr. Russell supported a finding that they were ineffective. *Barrett*, 797 F.3d at 1227. For the reasons stated in Paragraphs 1.a, 1.c and 3.c, *supra*, Reply Paragraph 7 is improper and the Order requiring a Sur-reply on that paragraph serves no legitimate purpose.

8. The fact of Mr. Barrett's prior conviction and its date is not in dispute and cannot seriously be considered a material fact in the context of finding an exception to the law of the case. The fact obviously was available to the government at the time it filed the Motion and the Tenth Circuit was aware of this fact when it ordered a hearing. This paragraph demonstrates the frivolous, improper nature of the Reply and the Order requiring Mr. Barrett to respond to the enumerated paragraphs. *See* Paragraphs 1.a-c & 3.c, *supra*.

9. Same response as Paragraph 8, *supra*.

10. Same response as Paragraph 8, *supra*. Each long-available fact, well-known by the Tenth Circuit adds to the frivolousness of the Reply and the abusiveness of the Order requiring individualized sur-reply paragraphs.

11. Mr. Barrett does not dispute what is apparent from the face of the trial record. Reply Paragraph 11 is improper under the authorities cited in Paragraphs 1.a, 1.c, and 3.c. Either

there is a genuine issue as to the facts stated in Reply Paragraph 11 or the record shows Hilfiger's absence is not material because subsequent to the December 9, 2004, hearing, Mr. Echols informed Mr. Hilfiger in writing that he believed it was necessary to have Mr. Barrett evaluated for organic brain impairments. Resp. (Doc. 366) at ¶ 6; Doc. 95 Ex. 34 at 13-14. This Court later issued an order authorizing the defense to hire a psychiatrist of psychologist and that order was served on Mr. Hilfiger. As stated *supra*, the government has submitted declarations from Mr. Hilfiger and Mr. Smith regarding their failure to obtain a mental evaluation of Mr. Barrett, but those declarations failed to cite any of the information available to them from Mr. Echols. As stated *supra*, those omissions should be treated as adoptive admissions by silence.

12. Mr. Barrett does not dispute the content of the record. For the reasons stated *supra*, because that record was available to the government at the time of the Motion, Reply Paragraph 12 is improper, and because the record was before the Tenth Circuit when it ordered a hearing, it cannot serve as a basis for concluding the Tenth Circuit's order need not be followed. Finally, the record conclusively shows that trial counsel did not ask Dr. Russell to diagnose an organic brain disorder, Mot. Ex. 4, and the Tenth Circuit noted the limitations trial counsel placed on her in its decision. *Barrett*, 797 F.3d at 1225.

13. Same response as Paragraph 12, *supra*.

14. Same response as Paragraph 12, *supra*.

15. As to the trial record, Mr. Barrett gives the same response as in Paragraph 12, *supra*. To further demonstrate the frivolousness and pointlessness of the Reply, the government did not mention Mark Cunningham in its Motion and it does not mention him later in its argument. Neither this Court nor Mr. Barrett can have any idea why Reply Paragraph 15

supposedly states a material fact.

16. Same response as Paragraphs 12 and 15, *supra*. The government fails to present any good faith argument for why Mr. Echols's withdrawal or the reasons for it demonstrate that the Tenth Circuit's order should be disregarded.

17. Same response as Paragraph 16, *supra*, with the additional observation that the Court ordered Mr. Barrett to respond to a paragraph in which the government was too lazy or too indifferent to Fed. R. Civ. P. 56(c) to bother citing the order appointing Mr. Smith.

18. Mr. Barrett disputes the government's characterization of Dr. Russell's 2005 report as reflecting a "new future dangerousness assessment." Both trial counsel at the time of trial, Tr. Sept. 9, 2005, Hr'g at 41, and Dr. Russell in her report and declaration, Mot. Ex. 3 at DISC 008234, which was before the Tenth Circuit, stated that she merely "updated the risk assessment previously conducted on Mr. Barrett in connection with his state case." Doc. 95 Ex. 56 at 3. For the reasons stated above, Dr. Russell's 2005 report was known to the Tenth Circuit and therefore does not establish grounds for rejecting that court's controlling decision on whether Mr. Barrett is entitled to an evidentiary hearing on his trial counsel's failure to pursue mental health mitigation.

19. For the reasons stated in Mr. Barrett's Response, and in the Tenth Circuit's finding that Dr. Russell's reports contained sufficient information to call for further investigation, there is a genuine issue as to what was contained in Dr. Russell's reports and the significance of that information. For the reasons stated in the Response and in Paragraph 1.a, 1.b, and 1.c, *supra*, the government is not entitled titled to judgment in its favor as a matter of law based on Reply Paragraph 18 alone, or in conjunction with other facts. Additionally, Dr. Russell's reports are hearsay and the government's failure to provide

expert reports from her precludes the government from calling her as an expert witness. Therefore, under this Court's scheduling order, the government cannot now or ever show that her description of Mr. Barrett as euthymic at the time of her evaluation means the government is entitled to judgment in its favor as a matter of law.

20. Same response as Paragraph 19, *supra*.

21. Mr. Barrett disputes the government's claim that Mr. Barrett asserted that Dr. Sharp's report was "the reason" trial counsel should have investigated mental health mitigation. *See* Resp. Paras. 1, 6, 7, 8. The Tenth Circuit's decision summarizes some of the evidence Mr. Barrett relied upon to support his allegation of deficient performance. *Barrett*, 797 F.3d at 1225-28. The government's fixation on one sentence in the petition does not establish grounds for failing to hold the hearing ordered by that court.

22. Reply Paragraph 22 accurately summarizes the findings of the Tenth Circuit in ordering the hearing the government seeks to avoid. The paragraph is frivolous in its suggestion that a sentence quoted from part of the record that was before the Court of Appeals could demonstrate the court erred so gravely as to overturn the law of the case.

23. Same response as Paragraph 22, *supra*.

24. Same response as Paragraph 22, *supra*.

25. Same response as Paragraph 22, *supra*. There is a genuine dispute as to whether trial counsel obtained Dr. Sharp's report. Dr. Sharp's declaration indicates he sent it to someone representing Mr. Barrett in 2005. Doc. 95 Ex. 55 at ¶ 16. The government appears to concede in Reply Paragraphs 27 and 28 that there is a dispute on this point, noting Dr. Sharp's declaration. For the reasons stated in Paragraph 1 of the Response, the government's Motion concedes that if Dr. Sharp's report was available to trial counsel

from Mr. Leedy, given that Dr. Russell's report put trial counsel on notice of Mr. Barrett's history of mental problems and his extreme paranoia—which the government's Reply studiously ignores—there is, as the Tenth Circuit held, a genuine issue as to whether trial counsel acted reasonably. Mr. Barrett did not assert before the Tenth Circuit trial counsel had possession of Dr. Sharp's report and the Court of Appeals did not rely upon that as a fact when ordering the evidentiary hearing. Therefore, the government's questioning of the fact does not constitute grounds for ignoring the law of the case.

26. Trial counsel's avowed ignorance of Dr. Sharp is undisputed and material in that it shows trial counsel were so disengaged from Dr. Russell's work that they did not even remember a person mentioned several times in her reports who found their client "extremely paranoid."

27. Mr. Barrett disputes the government's characterization of his reply brief. Mr. Barrett asserted the same facts the government asserts here: trial counsel state they do not recall Dr. Sharp or his report and Dr. Sharp recounts faxing his report to someone in 2005. In any event, for the reasons previously stated, and those stated in Sur-reply Paragraph 28, *infra*, Reply Paragraph 27 is not material to whether this Court may refuse to hold the hearing ordered by the Tenth Circuit.

28. Mr. Barrett does not dispute the contents of the declaration he submitted from Dr. Sharp. The government has succeeded in demonstrating why there is a dispute about whether trial counsel had Dr. Sharp's report. To the extent that is a material issue, *but see Barrett*, 797 F.3d at 1224-28, *and* Response *and* ¶ 25, *supra*, there is a genuine question as to whether Dr. Sharp provided his report to trial counsel but they failed to retain a copy in their files.

29. Mr. Barrett does not dispute the record of this Court's order. It is frivolous for the government to suggest that the date of this Court's order or the fact that it denied relief is material. The Tenth Circuit was obviously aware of this Court's decision when it overturned that decision.

30. Mr. Barrett does not dispute the contents of the order the Tenth Circuit overturned but, for the reasons stated in the Response and Paragraph 1, *supra*, he contends the contents of an overturned order do not establish facts showing that the higher court erred such that this court may ignore the law of the case. The cited part of the order cites Mr. Hilfiger's declaration, prepared by the government, in which he states that he retrieved Mr. Echols's files from Mr. Echols's house. Doc. 174 Ex. 12 at ¶ 4. This affirmation of fact by the government undermines the government's present conspiracy theory that Mr. Echols did not provide his materials to Mr. Hilfiger. This Court cited Mr. Hilfiger's declaration for the proposition that the "record reflects counsel had . . . investigative materials assembled by the Oklahoma Indigent Defense System (OIDS)." Order (Doc. 214) at 145 & n. 197. However, the "record" cited was the hearsay declaration, not the trial record. In the trial record, Mr. Smith acknowledged that one week before jury selection, defense counsel were aware that they were missing material from the state court mitigation investigation. Tr. Sept. 9, 2005, Hr'g. at 43. The government cites the footnote, but omits the text, in which this Court made the legal conclusion that "Petitioner has failed to show that counsel should have contacted Steve Leedy to obtain additional materials or that counsel's failure to do so was unreasonable." *Ibid.* The omission is telling because it shows, contrary to the implication of the Motion and Reply, that the question whether trial counsel unreasonably failed to contact Mr. Leedy was fairly presented and decided

by this Court. The omission adds to the evidence that the Motion and Reply are frivolous and interposed for an improper purpose.

31. Same response as Paragraph 30, *supra*.

32. Same response as Paragraphs 1, 25, 28, and 30, *supra*. Given the concession that the Tenth Circuit remanded the case on the basis of an argument that presented what the government currently contends are the true facts, the Motion and Reply cannot present grounds for holding the Tenth Circuit was wrong.

33. Same response as Paragraph 32, *supra*.

34. Mr. Barrett does not dispute the content of the record. For the reasons stated in Paragraphs 1, 25, 28, and 30, *supra*, the government fails to establish a fact showing it is entitled to judgment as a matter of law.

35. Reply Paragraph 35 is confusing in that the subjects of the first and second sentences are not the same, but to the extent the government contends Mr. Barrett's counsel sent the government the documents referenced in Reply Paragraph 34, Mr. Barrett does not dispute the fact that he did. For the reasons states in the Paragraph 34, *supra*, that fact is not material and the government has failed to demonstrate that it is entitled to judgment as a matter of law.

36. Mr. Barrett does not dispute the Bates numbers on the pages of the documents. For the reasons states in the Response and Paragraphs 1, 3, 4, 5, 6, 7, 18-20, 25, 28, and 30, the government has failed to demonstrate the absence of a genuine issue on a material fact, or its entitlement to judgment as a matter of law.

37. Mr. Barrett does not dispute that he sent the document containing the table, but he does dispute the government's interpretation of it. As post-conviction counsel has already

explained to counsel for the government, the materials that came from Mr. Echols were in the possession of Mr. Hilfiger, and he, not Mr. Echols, gave them to post-conviction counsel. Ex. H (Decl. Joan Fisher). The government has not produced admissible evidence supporting its interpretation of the table. Trial counsel are in the best position to state what documents they were aware of and relied upon in making their decisions, if any, regarding whether to investigate Mr. Barrett's mental health. For the reasons stated in Paragraph 36, the government's Motion fails.

38. Mr. Barrett does not dispute the record of his own motions. The government fails to put forth any evidence or argument to demonstrate that Mr. Barrett's Motion in Limine is a material fact that calls into question the decision of the Tenth Circuit.

## ANALYSIS

In general, the Response and the foregoing enumerated paragraphs suffice to demonstrate the lack of merit in the government's Motion and Reply. For purposes of clarification, Mr. Barrett addresses some of the statements made in the Argument section of the Reply.

The government claims that Mr. Echols failed to disclose documents to Mr. Hilfiger or Mr. Smith, and that Mr. Barrett admits this. Reply 8, 11, 12. That is not a fact. It is the government's misinterpretation of the chart prepared by Mr. Barrett's counsel. First, the government's own declaration from Mr. Hilfiger states, "After Mr. Echols' withdrawal from the case, I went to his home and took possession of boxes of files that he had amassed during his representation of Mr. Barrett in the State case along with files that he had from the instant federal case." Doc. 174 Ex. 12 at ¶ 4. This is the same paragraph this Court relied upon to assert that Mr. Hilfiger had all of the OIDS materials, a finding the government simultaneously asserts is correct, material, and undisputed. Reply Paras. 30 and 31.

Pet'r's Sur-reply re Govt. MSJ                    21                    *U.S. v. Barrett*, CV-09-00105-JHP

Second, the chart the government relies upon does not state that the materials from Echols were never in Hilfiger's custody. On the contrary, since Mr. Barrett's position has consistently been that Mr. Echols's acts and omissions are not what is being judged for reasonableness, he would have no reason to disclose to the government files that had never been in Mr. Hilfiger's or Mr. Smith's possession.

Third, Echols stated in his declaration, which was before the Tenth Circuit, "I provided Mr. Hilfiger with access to a secure website, which had my state files in Mr. Barrett's case on a computer data base," but Hilfiger never accessed them. Doc. 95 Ex. 34 at 3.

Fourth, post-conviction counsel explained the chain of custody to government counsel over the telephone. Sur-reply Ex. H (Decl. Joan Fisher) at ¶ 2. Thus, everything from the trial record to the government's own evidence contradicts the government's current claim that Echols withheld information from Hilfiger and Smith.

Because the government only focuses on a narrow issue and does not mention the reasons the Tenth Circuit gave for ordering a hearing, it has failed to show "'there is an absence of evidence to support the nonmoving party's case.'" Reply 8 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The Response and the enumerated paragraphs of this Sur-reply demonstrate that there are no new facts or law calling into doubt the Tenth Circuit's decision.

The government undermines its Motion when it disputes that Echols put Hilfiger on notice that Leedy could provide OIDS files. Reply 9. It is the movant's burden to *prove* the *absence* of a dispute. Fed. R. Civ. P. 56(a). The government argues there can be no genuine dispute as to whether trial counsel should have sought files from Leedy because "Echols [*sic*] letter [Doc. 95 Ex. 64] only mentioned files from mitigation investigator Roseann Schaye, and would not have given notice that Leedy also possessed Dr. Sharp's mental health report." Reply

10. To review, trial counsel knew that OIDS did the mitigation investigation. They knew that Leedy was the custodian of at least some of those records. Dr. Russell put trial counsel on notice of Dr. Sharp's evaluation and mentioned Mr. Barrett's extreme paranoia. Trial counsel admitted on the record that they had not retrieved but wanted to and needed to retrieve *all* mitigation files from predecessor counsel. Trial counsel claimed they spoke to state-court penalty phase counsel Jack Gordon, but he disputes this. No one disputes that trial counsel failed to contact Leedy. The government can prevail only if, as a matter of law, trial counsel, contrary to Mr. Smith's own statements on the record, had no duty to contact Leedy. As a matter of law, trial counsel had a duty to conduct a thorough investigation of Mr. Barrett's background. *Barrett*, 797 F.3d at 1223-24. If trial counsel have an independent duty to investigate, it follows that they have a duty to obtain the investigative files prepared by predecessor counsel. *Cf. Williams (Terry) v. Taylor*, 529 U.S. 310, 395-96 (2000) (finding counsel ineffective for failing to take advantage of readily available mitigation).

Although the government's argument falls of its own weight, *Rompilla v. Beard*, 545 U.S. 374 (2005), and *Wiggins v. Smith*, 539 U.S. 510 (2003), demolish the contention that trial counsel must specifically be told to look in a file for mitigation evidence before they have a duty to investigate. In *Rompilla*, as here, there was an obvious, record-based reason to examine a file despite there being no indication that the file contained anything mitigating. *Rompilla*, 545 U.S. at 383-84. In *Wiggins*, trial counsel's actions, reflected in the record, showed they were interested in finding and presenting the type of mitigation evidence they failed to uncover because they stopped looking. *Wiggins*, 539 U.S. at 525-26. Here, the need to contact Leedy and Gordon is reflected in trial counsel's statements to the court on September 9, 2005. The *Wiggins* Court held that trial "counsel chose to abandon their investigation at an unreasonable juncture,

making a fully informed decision with respect to sentencing strategy impossible." *Id.* at 527-28. Here, trial counsel abandoned their investigation before turning to OIDS's investigator, Leedy, despite knowing they needed everything, that they didn't have it, and that Leedy was a source.

For the foregoing reasons, Mr. Barrett has not been "[d]isarmed of the argument that animated his § 2255 motion—that trial counsel actually possessed Dr. Sharp's report." Reply 10. The government concedes that Mr. Barrett's brief to the Tenth Circuit did not argue that Hilfiger and Smith had Sharp's report. Reply Para. 32. Given that Mr. Barrett prevailed despite this genuinely uncertain issue of fact, he has no reason to feel disarmed. Rather, the government has nothing that could call the Tenth Circuit's decision into question.

As stated *supra*, the government falsely claims that Mr. Barrett "does not dispute the fact that Echols did not provide the Bianco and LaFortune reports to successor counsel." Reply 12. The government never made that representation in its Motion. It merely asserted that Echols had them. As explained *supra*, the government's conspiracy theory is contradicted both by the declaration it provided from Mr. Hilfiger, and its insistence that this Court was correct when it said Mr. Hilfiger obtained all documents from predecessor counsel. Reply Paras. 30 & 31 (citing Doc. 214 at 145 & n.197, in turn citing Respondent Ex. 12 at ¶ 4.)

The twists and turns in the government's conspiracy theory only underscore the need for a hearing. Trial counsel possessed documents that raised numerous questions about Mr. Barrett's mental and emotional problems and how to investigate and present them. What remains undisputed is that neither Mr. Hilfiger nor Mr. Smith has ever said that they were aware of the contents of their own files or that the contents of those files dissuaded them from investigating Mr. Barrett's mental problems for purposes of the penalty phase. Trial counsel's failure to mention Dr. Bianco or Dr. LaFortune in response to Mr. Barrett's specific allegation that they

failed to conduct a psychiatric or neuropsychological evaluation should be viewed as an adoptive admission by silence that neither state-court consultant played any role in trial counsel's decision-making. *Cf. United States v. Pulido-Jacobo*, 377 F.3d 1124, 1132 (10th Cir. 2004); Fed. R. Evid. 801(d)(2).

The government's outrageous argument that Petitioner misled this Court trips over its own desperate, demonstrable falsity. Reply 12. The government's equally desperate contention that knowledge should be imputed to Hilfiger and Smith, Reply 13, flies in the face of the governing law that "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Under that context-dependent standard, post-hoc rationalizations constructed from records and inferences are of no weight. *Wiggins*, 539 U.S. at 526-27; *id.* at 532. It follows that if the government must rely on an imputation forbidden by the substantive law, the government is not entitled to judgment in its favor as a matter of that law. Accordingly, the Motion fails.

The foregoing 24+ pages of facts and argument demonstrate that Mr. Barrett's counsel spent considerable time preparing this court-ordered Sur-reply. As with the Response, the two business days the Court allowed for preparing this Sur-reply precluded counsel from doing more. Mr. Barrett's counsel could not speak with all the potentially relevant witnesses in order to obtain declarations that contradict the facts or implications in the Reply. For these reasons and those stated in Paragraph 1, *supra*, Mr. Barrett objects to this Court considering the Reply.

## CONCLUSION

For the foregoing reasons, this Court must deny the government's Motion for Partial Summary Judgment.

DATED:  March 6, 2017

Respectfully submitted,

/s/ *David Autry*
DAVID AUTRY
Attorney at Law

/s/ *Joan M. Fisher*
JOAN M. FISHER
Assistant Federal Defender

/s/ *Tivon Schardl*
Tivon Schardl
Capital Trial & Habeas Attorney

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

## CERTIFICATE OF ELECTRONIC SERVICE AND DELIVERY

This is to certify that on this 6th day of March 2017, I caused the foregoing Sur-reply to the Government's Reply to Petitioner's Response in Opposition to the Government's Motion for Partial Summary Judgment to be filed with the Clerk of the Court using the ECF System for filing, with service via CM/ECF to be made to Christopher J. Wilson, AUSA, Jeffrey B. Kahan, U.S. Department of Justice, and to all counsel of record.  To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.

/s/ *Tivon Schardl*
TIVON SCHARDL