DAVID AUTRY, OBA No. 11600
1021 N.W. 16th Street Oklahoma City, OK 73106
Telephone:          (405) 521-9600
Facsimile:          (405) 521-9669
E-mail:             dbautry77@gmail.com

HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
JOAN M. FISHER, ID Bar #2854
Assistant Federal Defender
801 I Street, 3rd Floor Sacramento, CA 95814
Telephone:          (916) 498-6666
Facsimile:          (916) 498-6656
E-mail:Joan_Fisher@fd.org

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

### IN THE UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH EUGENE BARRETT,<br><br>          Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>          Respondent. | CASE NO. CV-09-00105-JHP<br><br>**PETITIONER'S FOURTH PROFFER OF TESTIMONY** |

Petitioner, Kenneth Eugene Barrett, by and through undersigned counsel, hereby proffers

the declarations of Julia O'Connell, Paul Gordon, Iva Hines, Roger Crawford, Issac "Ike"

Barrett, Judy House, and Gary Nelson. This Court previously excluded their testimony.  Order,

Doc. 361 at 10 (Gordon), 11 (Issac "Ike" Barrett), 12 (O'Connell); *see also* Docs. 368 (Motion to

Exclude Hines, Crawford, House and Nelson) with 389 (Minute Order granting the same).  Mr.

Barrett further proffers the testimony of Roseanne Schaye by declaration in lieu of live testimony

PET'R'S FOURTH PROFFER
OF TESTIMONY                              1                    *Barrett v. U.S.*, CV-09-00105-JHP

because Ms. Schaye's residence in the state of Oregon is outside the reach of a subpoena.  See

Fed. R. Civ. Proc. 37(c).

The attached exhibits demonstrate that Mr. Barrett was prepared to comply with this

Court's scheduling order (Doc. 270) and minute order (Doc. 359) by presenting the witnesses'

testimony live at the hearing ordered by the Tenth Circuit.

The testimony of Julia O'Connell is relevant to the question of whether trial counsel hired

a mitigation specialist, and if so, when. *See United States v. Barrett*, 797 F.3d 1207, 1225 (10th

Cir. 2015).  During the hearing, the government adduced evidence from Roger Hilfiger

indicating that on June 29, 2005, he discussed with someone the subject of a mitigation

specialist. Mr. Hilfiger could not remember the content of the conversation memorialized in his

billing records. Federal Defender O'Connell was prepared to testify that on June 30, 2005, she

received a voice-mail message from Mr. Hilfiger in which he asked if he could consult her

mitigation specialist. To the extent the government intends to argue, based on Mr. Hilfiger's

testimony, that his billing records demonstrate that he was reasonably focused on obtaining

mitigation evidence in late June 2009, Ms. O'Connell's testimony is probative. Whereas Mr.

Hilfiger was unable to describe the content of the communication referenced in his billing

records, Ms. O'Connell could have testified that it came to nothing. Her testimony makes it more

likely that Mr. Hilfiger's conduct was unreasonable in that he did not again pursue any expert

assistance on mitigation until late August, and that was limited to rebutting future dangerousness.

*Barrett*, 797 F.3d at 1225.

If presented, Oklahoma Highway Patrol Internal Affairs Investigator assigned to

investigate the assault on Mr. Barrett's home on September 24, 1999, now retired 2d Lt. Paul

Gordon would have testified to significant factual matters including that the emergency or any

other lights likely to have identified the intruders as law enforcement were not activated and that

the Tact Team did not follow established protocol in the execution of the raid, making it likely

that Mr. Barrett did not know that the vehicles invading his property were carrying law

enforcement officers, an unquestionably mitigating factor that was not offered to support a

sentence less than death. The testimony would have been mitigating in both as showing that the

circumstances on the night of the warrant execution created by the OHP Tact Team's

unprofessional and overzealous conduct, and to show that, in light of Mr. Barrett's personal

background and mental health, Mr. Barrett's ability to perceive, understand, and exercise

judgment was seriously compromised.

Trial counsel admitted at the hearing that he was unaware that lingering doubt was a

mitigating factor.  See e.g., *Franklin v. Lynaugh*, 487 U.S. 164, 174 (1988) (finding no error in

denying instruction on residual doubt, in part, because Petitioner *was allowed to introduce*

*evidence and argue it without limitation*;) *United States v. Jackson,* 549 F.3d 963, 981 and  n.24

(5th Cir. 2008) (same).  The testimony of Paul Gordon, if presented, at a minimum, would have

raised a lingering doubt as to the merits of Mr. Barrett's intention as well as his self-defense

claim.

The declarations of Roger Crawford, Ike Barrett, Judy House and Gary Nelson include

evidence of Mr. Barrett's genetic predisposition to mental illness and substance abuse.   The

declarations of Roger Crawford and more particularly Ike Barrett show that they would have

presented substantial credible evidence that Mr. Barrett's personal background and mental health

was significantly impacted by parental alcoholism, neglect, abandonment and abuse.  The

testimony of Iva Hines would have shown that, despite his deficits and upbringing, Mr. Barrett

was a kind, generous and trusted employee.

Roseanne Schaye is a mitigation investigator hired during the state court proceedings who interviewed numerous family members and acquaintances of Mr. Barrett and discovered evidence credible leads to evidence of mitigating circumstances that would have led to a far different case in mitigation, leading in all probability to far different results.  Unlike the other witnesses whose testimony is proffered here, Ms. Schaye's testimony has not been excluded by court order at the request of the government.  Indeed the government seeks to rely on the fact Ms. Schaye's reports were in the defense file. Mr. Barrett proffers the declaration in lieu of live testimony of Ms. Schaye, however, because the witness is currently resides outside the reach of a subpoena.  See Fed. Rule Civ. Proc. 37(c).

Ms. Schaye's proffered testimony is relevant to demonstrating (a) that Mr. Barrett fully cooperated with the mitigation investigation performed in state court, *see Barrett*, 797 F.3d at 1227-28, (b) that the fruits of that state-court investigation were fully available to federal trial counsel (as Mr. Hilfiger and Bret Smith testified), and (c) therefore, trial counsel possessed, knowingly or not, a wealth of information that could have been presented in the penalty phase. The information was completely consistent with trial counsel's so-called strategy, *see Barrett*, 797 F.3d at 1228-29, and would not have raised the currently alleged tactical concerns trial counsel mentioned in their testimony.  Because Ms. Schaye was available to testify to the information contained in her reports,  it would have minimized the need to call the family members as witnesses.  *Barrett*, 797 F.3d at 1227.  Many of Ms. Schaye's reports were admitted as evidence at the hearing. Her testimony would have explained how the information in the reports was obtained and what steps could have been taken to present the information into a persuasive penalty phase case resulting in a sentence of less than death.

The evidence proffered demonstrates that the witnesses' excluded testimony would have been admissible under the Fifth and Eighth Amendments to the United States Constitution and 18 U.S.C. § 3593(c) to show that Mr. Barrett suffered from mental and emotional problems that made him less culpable and therefore supported a sentence of less than death, or even less than life. Under the same provisions, the information would have rebutted the government's evidence in aggravation, including its evidence of future dangerousness and intent. *See*, *e.g.*, *Lockett v. Ohio*, 438 U.S. 586 (1978); *Woodson v. North Carolina*, 428 U.S. 280, 303 (1976) (invalidating mandatory death-sentencing law before *Lockett* due to its "failure to allow the particularized consideration of relevant aspects of the character and record of each convicted defendant before the imposition upon him of a sentence of death"); *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982) ("the sentencer in capital cases must be permitted to consider any relevant mitigating factor"); *Skipper v. South Carolina*, 476 U.S. 1 (1986) (jury must be permitted to consider positive adjustment to jail after arrest); *Hitchcock v. Dugger*, 481 U.S. 393 (1987) (unanimously invalidating death sentence where jury was precluded by instruction from considering aspects of defendant's background that he offered in mitigation); *McCoy v. North Carolina*, 494 U.S. 433 (1990) (invalidating State's requirement that mitigating circumstances must be found unanimously); *id.* 494 U.S. at 442 ("The Constitution *requires* States to allow consideration of mitigating evidence in capital cases. Any barrier to such consideration must therefore fall.") (emphasis in original); *Tennard v. Dretke*, 542 U.S. 274, 284 (2004) (overturning Fifth Circuit standard for "constitutional relevance" of mitigation evidence on grounds it "has no foundation in the decisions of this Court"); *ibid.* (when Court has "addressed directly the relevance standard applicable to mitigating evidence in capital cases . . . [the Court] spoke in the most expansive terms"); *Smith v. Texas*, 543 U.S. 37, 44-45 (2004) (*per curiam*) (rejecting

"Texas nexus" requirement that mitigation be causally related to the offense); *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007) ("sentencing juries must be able to give meaningful consideration and effect to all mitigating evidence that might provide a basis for refusing to impose the death penalty on a particular individual, notwithstanding the severity of his crime or his potential to commit similar offenses in the future"). The use of these witnesses' accounts would have been consistent with Mr. Hilfiger's attested-to desire to present mitigation evidence that would avoid an examination of Mr. Barrett by a government mental health professional. Accordingly, the witnesses' excluded testimony is relevant to assessing deficiency and prejudice from trial counsel's unreasonable errors. *Strickland v. Washington*, 466 U.S. 668, 695 (1984).

The proffered testimony is relevant to both deficient performance and prejudice. *See Barrett v. United* States, 797 F. 3d 1207, 1225-26, 1229 (10th Cir. 2015).

DATED this 2nd day of May, 2017

RESPECTFULLY SUBMITTED,

/s/ *David Autry*
DAVID AUTRY

/s/ *Joan M. Fisher*
JOAN M. FISHER

/s/ *Tivon Schardl*
TIVON SCHARDL

/s/ *Karl Saddlemire*
KARL SADDLEMIRE

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

**CERTIFICATE OF ELECTRONIC SERVICE AND DELIVERY**

This is to certify that on this 2nd day of May 2017, I caused the foregoing

Petitioner's Proffer of Testimony to be filed with the Clerk of the Court using the ECF System

for filing, with service via CM/ECF to be made to Christopher J. Wilson, AUSA, Jeffrey B.

Kahan, U.S. Department of Justice, and to all counsel of record. To counsel's knowledge,

there are no non- ECF registrants who are counsel in this case.


/s/ *Joan M. Fisher*
JOAN M. FISHER