DAVID AUTRY, OBA No. 11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
Telephone:    (405) 521-9600
Facsimile:    (405) 521-9669
E-mail:    dbautry77@gmail.com

HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
JOAN M. FISHER, ID Bar #2854
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA 95814
Telephone:    (916) 498-6666
Facsimile:    (916) 498-6656
E-mail:    Joan_Fisher@fd.org

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH EUGENE BARRETT, <br><br> Petitioner, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | CASE NO. CV-09-00105-JHP |

## PETITIONER'S PROFFER OF TESTIMONY

## DECLARATION OF JULIA O'CONNELL

*Barrett v. U.S.*, CV-09-00105-JHP

## DECLARATION OF JULIA O'CONNELL

I, Julia O'Connell, declare the following:

I am currently the Federal Defender for the Northern and Eastern Districts of Oklahoma. I am licensed to practice law in the State of Oklahoma, the various federal district courts in Oklahoma, and the United States Court of Appeals for the Tenth Circuit.

I am familiar with issues surrounding the appointment of counsel for Kenneth Eugene Barrett in his federal capital trial in the Eastern District of Oklahoma. At the time Mr. Barrett was charged, I was an Assistant Federal Defender. Paul Brunton was the Federal Defender for the Northern and Eastern Districts. When Mr. Barrett was initially charged, we received notice that the Court intended to appoint our office to represent him. Mr. Brunton and I met with Judge Payne regarding Mr. Barrett's representation, because we did not feel our office could effectively represent Mr. Barrett, due to the fact that our office was very small and we were already appointed in another death penalty case that we were preparing for trial. *United States v. Edward Leon Fields,* No. CR-03-73-RAW. The *Fields* case was taxing our office resources and I was the only trial lawyer in the office with death penalty trial experience. We explained to Judge Payne that we did not feel it was feasible for our office to effectively represent Mr. Barrett because I was already representing Mr. Fields in his pending capital case.

Mr. Brunton and I asked that John Echols– who represented Mr. Barrett throughout his state court prosecution and had already effectively tried the case (twice)–

1

and Rob Nigh of Tulsa-- who had federal death penalty experience in the Timothy McVeigh case-- be appointed to represent Mr. Barrett. Both Mr. Echols and Mr. Nigh are highly qualified capital attorneys. Based on discussions Mr. Brunton and I had with these two lawyers, we knew they were willing to represent Mr. Barrett. We asked Mr. Echols and Mr. Nigh if they would accept appointment in the Barrett case because we knew that the government would likely seek the death penalty against Mr. Barrett, and we knew our office could not accept the case because of the other pending capital case. Thus, we wanted to get commitments from well-qualified lawyers who were willing to be appointed for Barrett's federal capital trial, so that we could assist the Court by recommending attorneys we felt the judge could rely on to try the case effectively as an alternative to the Federal Public Defender.

Judge Payne initially indicated that he wanted our office appointed, but Mr. Brunton told him that I was the only attorney in the office with capital trial experience and that I could not effectively handle two capital trials scheduled so closely to one another. This led to a discussion of the statutory requirement to appoint "learned counsel" as first chair. Judge Payne or his staff had evidently researched the issue, and the Judge explained that he felt "learned counsel" was not defined in the materials he had reviewed. Judge Payne further explained that it seemed that the federal death penalty cases that were being filed in Oklahoma were being prosecuted in the Eastern District, and he expressed the idea that if counsel from the Eastern District were appointed, that

2

lawyer or lawyers could then take other death penalty cases filed in the Eastern District in the future.

My recollection is that Judge Payne did not appoint Mr. Nigh to represent Mr. Barrett. Instead, he appointed John Echols and Roger Hilfiger, the former United States Attorney for the Eastern District, as Mr. Barrett's lawyers. Mr. Echols eventually withdrew from the case. Judge Payne elevated Roger Hilfiger to first chair and appointed Bret Smith second chair. To my knowledge, Mr. Smith had no capital experience.

On June 21, 2005, I forwarded copies of orders the district court had issued in *United States v. Fell*, No. 2:01-CR-12-01 from the District of Vermont regarding fact-specific voir dire in capital cases to Mr. Hilfiger. I sent these orders to him hoping it would impress upon him the importance of mitigation in a capital case, because I suspected that the Barrett trial attorneys were not fully versed on how to investigate and utilize mitigation evidence. At the time I sent the e-mail, neither of the Barrett attorneys had consulted with me regarding the case.

Mr. Hilfiger called my office on June 30, 2005. I was away from the office , so he left me a voice message, asking if my mitigation specialist was going to be in Muskogee in the future and whether she would be willing to meet with him to discuss mitigation. Although I do not remember the exact wording of his message, I remember that it alarmed me. I got the distinct impression that Mr. Hilfiger did not know what was expected from a defense lawyer during the punishment phase of a federal capital trial.

3

The message led me to believe Mr. Hilfiger thought "mitigation" merely entailed a short meeting with my mitigation specialist (who was in no way involved in or familiar with his client's case) within a few weeks of commencement of trial. I suspected that Mr. Hilfiger did not understand the nature, value or extent of adequate, effective death penalty mitigation. I was taken aback by Mr. Hilfiger's inquiry, because Mr. Barrett's trial was imminent, and there was not sufficient time to do an adequate mitigation investigation. At a minimum, in my opinion, it would take a mitigation investigator or investigators at least six months to conduct an adequate penalty phase investigation.

I responded by e-mail on July 3, 2005, when I returned to the office and received his message. My e-mails to Mr. Hilfiger are attached to this declaration. In my July 3 e-mail response to Mr. Hilfiger, I gave him contact information for Dick Burr, one of the federal capital resource attorneys. I gave him Mr. Burr's contact information because I knew Mr. Burr to be an extremely competent lawyer in the area of death penalty cases, and knew that he was willing to help every lawyer who sought his assistance. I do not know whether Mr. Hilfiger ever contacted Mr. Burr or any other capital resource counsel regarding a mitigation specialist. In any event, as mentioned above, since Mr. Barrett's trial was to commence shortly, there was no time for an adequate second stage investigation if it hadn't been substantially completed on June 30, even if Mr. Hilfiger had been able to secure the services of a mitigation investigator or investigators at that late date.

4

I declare under penalty of perjury that the foregoing declaration is true and correct.

Executed by me this 28 day of February , 2009, in

Tulsa County, Oklahoma.

_Julia L. O'Connell_
Julia O'Connell

5