DAVID AUTRY, OBA No. 11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
Telephone:    (405) 521-9600
Facsimile:    (405) 521-9669
E-mail:        dbautry77@gmail.com

HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
JOAN M. FISHER, ID Bar #2854
Assistant Federal Defender
TIVON SCHARDL, FL Bar #73016
Trial & Habeas Attorney
801 I Street, 3rd Floor
Sacramento, CA 95814
Telephone:    (916) 498-6666
Facsimile:    (916) 498-6656
E-mail:        Joan_Fisher@fd.org

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH EUGENE BARRETT,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | CASE NO. CV-09-00105-JHP<br><br><br>**PETITIONER'S MOTION TO EXCLUDE WITNESS STEVEN PITT** |

**TABLE OF CONTENTS**

1.  RELEVANT BACKGROUND & CENTRAL PROBLEM: THE GOVERNMENT IGNORED THIS COURT'S ORDERS ........................................................................................... 1

2.  INFORMATION THAT WAS NOT AVAILABLE AT THE TIME OF TRIAL IS NOT RELEVANT ............ 4

3.  THE GOVERNMENT'S POSITION AGAINST MR. BARRETT'S POST-CONVICTION EXPERTS ESTOPS THE GOVERNMENT FROM RELYING ON DR. PITT ............................................... 6

    3.1   The Government's Clearly Inconsistent Positions ............................................. 8

    3.2   The Government has Misled and Mocked this Court ........................................ 12

    3.3   The Government's Inconsistent Positions Give it an Unfair Advantage ....................... 14

4.  THE GOVERNMENT'S EVIDENCE IS BARRED BY FED. R. EVID. 403 ........................................ 17

5.  LCVR 7.1(F) COMPLIANCE .................................................................................. 20

6.  CONCLUSION ............................................................................................... 20

## TABLE OF AUTHORITIES

**Federal Cases**

*Darden v. Wainwright*, 477 U.S. 168 (1986) .................................................................................. 5

*Gardner v. Fla.*, 430 U.S. 349 (1977) ........................................................................................... 18

*Hitchcock v. Dugger*, 481 U.S. 893 (1996) ................................................................................. 18

*House v. Bell*, 547 U.S. 518 (2006) ............................................................................................. 16

*Kelly v. South Carolina*, 534 U.S. 246 (2002) ........................................................................... 18

*Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385 (D. Kan. 1998) ..................................................... 5

*Mathews v. Denver Newspaper Agency L.L.P.*, 649 F.3d 1199 (10th Cir. 2011) ................... 7, 15

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ..................................................... 7, 8, 12, 13, 14

*Porter v. McCollum*, 558 U.S. 30 (2009) .................................................................................. 4, 5

*Queen v. TA Operating, L.L.C.*, 734 F.3d 1081 (10th Cir. 2013) ........................................... 7, 16

*Risetto v. Plumbers & Steamfitters Local 343* , 94 F.3d 597 (9th Cir. 1996) ............................... 7

*Rompilla v. Beard*, 545 U.S. 374 (2005) ....................................................................................... 5

*Schlup v. Delo*, 513 U.S. 298 (1995) ..................................................................................... 15, 16

*Sears v. Upton*, 561 U.S. 945 (2010) ............................................................................................. 5

*Simmons v. S.C.*, 512 U.S. 154 (1994) ........................................................................................ 18

*Skipper v. South Carolina*, 476 U.S. 1 (1986) ............................................................................ 18

*Strickland v. Washington*, 466 U.S. 668 (1984) ...................................................................... 5, 16

*United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007) ........................................................... 10

*United States v. Barrett*, 797 F.3d 1207 (10th Cir. 2015) ................................................. 4, 5, 6, 15

*United States v. Troya*, 733 F.3d 1125 (11th Cir. 2013) ............................................................. 18

*Wiggins v. Smith*, 539 U.S. 510 (2003) ......................................................................................... 5

*Williams v. Taylor*, 529 U.S. 362 (2000) ...................................................................................... 5

*Wong v. Belmontes*, 558 U.S. 15 (2009) .................................................................................... 5, 9

**Federal Statutes**

18 U.S.C. § 17(a) ................................................................................................................... 4, 18-19

18 U.S.C. § 3592(a)(1) .......................................................................................................... 3-4, 18

18 U.S.C. § 3593(c) ................................................................................................................. 17, 18

28 U.S.C. § 2255(f) ....................................................................................................................... 10

**Federal Rules**

Fed. R. Crim. P. 12.2(c)(3) ........................................................................................................... 11

Fed. R. Evid. 401 ................................................................................................................ 5

Fed. R. Evid. 403 ................................................................................................ 1, 14, 17, 19

Fed. R. Evid. 703(c) ............................................................................................................ 3

COMES NOW Petitioner, KENNETH EUGENE BARRETT, by and through undersigned counsel, who moves this Court pursuant to the Tenth Circuit's remand order, this Court's prior orders, the doctrine of judicial estoppel and Fed. R. Evid. 403, to enter an order excluding testimony by Dr. Steven Pitt. This motion is based on the files and records in this case, the attached exhibits, and the following points and authorities. Together they show the government exceeded the scope of this Court's order authorizing Dr. Pitt's evaluation, his testimony is not relevant to the issue remanded for hearing, the government's use of his opinions is barred by judicial estoppel, and/or Dr. Pitt's opinions have no probative value and will result in unfair prejudice, confusion, delay, wasted time, and the presentation of cumulative evidence.

1.  **RELEVANT BACKGROUND & CENTRAL PROBLEM: THE GOVERNMENT IGNORED THIS COURT'S ORDERS**

On December 6, 2016, this Court granted the government's motion for an order requiring Mr. Barrett to submit to a mental health examination by psychiatrist Steven Pitt, D.O. Order (Doc. 269) at 12-15. This Court specified that the purpose of the examination was to enable the Court to "hear[] the evidence which the government *would have* brought forward to rebut the evidence which will be offered by petitioner" at the evidentiary hearing. *Id.* at 14 (emphasis added). *See also id.* at 14 n.6 (rejecting objection on grounds that Court is attempting to "hear[] how Petitioner's mitigating evidence *would have been* rebutted") (emphasis added). The Court made clear its goal was to "recreate portions of the trial twelve years after the trial." *Id.* at 12. *See also id.* at 10-11 (rejecting each party's motion to depose other party's experts and opting instead for procudures under Fed. R. Crim. P.); Order (Doc. 288) at 1 ("the court authorized the government to conduct a mental health evaluation of the defendant . . . to rebut defendant's mental health evidence pursuant to Fed. R. Cr. P. 12.2"); *id.* at 2 ("This Court interprets the

appellate court's order as directing this Court to ascertain these issues within the parameters of the evidence which was available to defense counsel in 2005.").

This Court made its intentions unmistakeably clear. When Mr. Barrett sought an opportunity to have Dr. George Woods see Mr. Barrett again to prepare to rebut evidence Dr. Pitt was developing based on post-trial evidence, this Court said the following:

> *Both parties* . . . are reminded that the focus of *any* mental health testimony at the upcoming evidentiary hearing should be Mr. Barrett's background and mental health at the time of his criminal trial before this Court in late 2005 as opposed to his mental health in 2017.

Order (Doc. 288) at 3 (emphasis added).

Despite the Court's specification that the purpose of Dr. Pitt's evaluation was recreating how the government would have rebutted Mr. Barrett's mental health mitigation if it had been presented at trial, the government instructed Dr. Pitt to review a selection of background materials that included much information that was not available at the time of trial. The government directed Dr. Pitt to consider records created by the federal Bureau of Prisons years after the trial in this case. Ex. A (Pitt Report) at 6 & 11. The government also instructed Dr. Pitt to consider a case Mr. Barrett filed *pro se* after he was sent to death row. *Id.* at 16 (Item 53). The government also directed Dr. Pitt to consider filings in these post-conviction proceedings, including this Court's erroneous decision to deny a hearing on the remanded claim. *Id.* at 18. Dr. Pitt expressly and repeatedly relied upon the BOP's records in forming his opinions. *Id.* at 11, 31, 60, 63-64, 67. In particular, Dr. Pitt reached his conclusions by inferring that Mr. Barrett did not have a psychiatric condition at the time of the offense because the Bureau of Prisons ("BOP") did not treat him for one in the years after his federal conviction. *Id.* at 60, 67.

In addition, the government directed Dr. Pitt to consider a report signed by Kathy LaFortune as part of her work for the Oklahoma Indigent Defense System. *See* Ex. A at 17, 34-

37. The government obtained that report through this Court's order authorizing access to the confidential files of Mr. Barrett's trial counsel. It was not considered by Dr. Woods when he formed his opinions. Therefore, Dr. Pitt would not have had access to the report at the time of trial and the government's use of it is another example of the government exceeding the scope of this Court's orders.[1]

The government's collection and use of Mr. Barrett's BOP medical records flouted this Court's discovery order. The government moved this Court for authorization to subpoena "all penal and detention facilities in which Barrett has been an inmate," and specifically to subpoena "all his mental health records." Mot. Disc. (Doc. 255) at 3. In response, this Court said the following: "Again, this information would not have been readily available to the government in the criminal trial of this matter. Therefore, for the reasons discussed herein, this request is denied." Order (Doc. 269) at 16. The government's use of the BOP mental health records, *see* Ex. A at 60 and Exhibit B to Pitt Report, and its use of the LaFortune report, are in direct conflict with this Court's Order.

The *only* psychiatric criteria Dr. Pitt relied upon to satisfy Fed. R. Evid. 703(c) were from the *Diagnostic and Statistical Manual of Mental Disorders-Fifth Edition* ("DSM-5"). Ex. A at 62-64, 67-68. Those criteria were not published until 2013, eight years after the trial in this case. Ex. B (Cover and publication page from DSM-5). And, although a proven mental health mitigating circumstance must be considered by jurors and this Court "regardless of whether the [defendant's] capacity was so impaired as to constitute a defense to the charge," 18 U.S.C. §

---

[1] The government also had Dr. Pitt review "[m]iscellaneous correspondence authored by Kenneth Eugene Barrett." Ex. A at 11 (Item 15). At this time, it is unknown whether this corresponce was wrongly disclosed from trial counsel's files, if the correspondence was written during the relevant time, or if it came from a legitimate source. Mr. Barrett reserves the right to supplement this Motion if evidence comes to light showing the correspondence was not legitimately presented to Dr. Pitt.

3592(a)(1); *Porter v. McCollum*, 558 U.S. 30, 42-43 (2009), the government asked Dr. Pitt whether "[a]t or around the time of the crime, could Barrett distinguish right from wrong," Ex. A at 6; Ex. C at 3, the standard for making out an insanity defense. 18 U.S.C. § 17(a).

In remanding for a hearing, the Tenth Circuit emphasized that "additional *current* mental-health evidence could have been offered by the government once Defendant opened the door to such evidence." *Barrett*, 797 F.3d at 1232 (emphasis in original). Specifically, the Circuit found "the government could have called Dr. Randall Price in rebuttal." *Ibid.* The Circuit said nothing about the government offering post-conviction evaluations. This Court has read the Tenth Circuit's decision very narrowly when deciding what evidence may be presented at the hearing. *E.g.*, Order (Doc. 246); Order (Doc. 269) at 2; *id.* at 4 ("the **only** issue before this court is whether or not mitigating evidence *existed* to justify a sentence less than death") (bold in original, italics added); *id.* at 8-9 ("this Court believes the scope of the hearing is extremely narrow * * * the hearing will deal solely with mitigating evidence which could have been presented during the sentencing stage of trial"); Order (Doc. 279); Order (Doc. 288) at 2.

Whereas this Court and the Tenth Circuit afforded the government a fair opportunity to present evidence it could have presented in rebuttal because it was currently available at the time of trial, the government has rejected fairness and is seeking a windfall in the form of Dr. Pitt's evaluation which is not current and could not have been presented in rebuttal because the information he relied upon (both background information and diagnostic criteria) either did not exist at the relevant time or were not available to the government.

## 2.  INFORMATION THAT WAS NOT AVAILABLE AT THE TIME OF TRIAL IS NOT RELEVANT

A psychiatric opinion based on information and diagnostic criteria that did not exist, or that could not have been considered by a government expert at the time of trial is an irrelevant

opinion. Relevance under Fed. R. Evid. 401 is based on the legal issue to which the evidence is

offered. *See*, *e.g.*, *Koch v. Koch Industries, Inc.,* 2 F. Supp. 2d 1385, 1388-89 (D. Kan. 1998)

(defining relevant evidence). The issue before this Court as to which Dr. Pitt might testify is

whether Mr. Barrett suffered prejudice from his trial counsel's failure to investigate and present

mental-health mitigation. *Barrett*, 797 F.3d at 1232. As reflected in this Court's order, that

inquiry focuses on what evidence was available at the time of trial, [2] and on the legal standards

governing the consideration of mitigation evidence. *Strickland v. Washington*, 466 U.S. 668, 695

(1984); *Porter*, *supra*, 558 U.S. at 42.

     As this Court said in denying Mr. Barrett's motion to have a psychiatric evaluation done

in 2016,

> The evidentiary hearing herein is not to decide what evidence could be
> presented about Mr. Barrett's mental health today. Rather, the sole purpose
> is to determine what evidence could have been presented at the sentencing
> phase of  Petitioner's trial in 2005 and whether Petitioner was prejudiced as
> a result of a lack of presenting that evidence in his trial.

Order (Doc. 248) at 3. *See also* Order (Doc. 288) ("Petitioner's mental health is not very useful

to this Court's determination regarding his mental health in 2005."). This Court's description of

the issue is consistent with the Tenth Circuit's statement that "additional *current* mental-health

---

[2] *Darden v. Wainwright*, 477 U.S. 168, 186 (1986) (finding no prejudice where mitigation evidence proffered in support of *Strickland* claim "would have opened the door for the State to rebut with evidence of petitioner's *prior* convictions * * * [and] his admission at trial that, although still married, he was spending the weekend furlough with a girlfriend") (emphasis added); *Williams (Terry) v. Taylor*, 529 U.S. 362, 397-98 (2000); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence."); *Rompilla v. Beard*, 545 U.S. 374, 384, 385 (2005) (repeatedly noting evidence was "readily available" to defense counsel) ; *Wong v. Belmontes*, 558 U.S. 15, 20, 24-26 (2009) (finding no prejudice because mitigation evidence proffered with claim would have opened the door to evidence of prior murder that defense counsel had succeeded in excluding); *Sears v. Upton*, 561 U.S. 945, 955-56 (2010) (holding "proper prejudice standard" requires examination of "available" evidence).

evidence could have been offered by the government once Defendant opened the door to such evidence."[3] *Barrett*, 797 F.3d at 1232 (emphasis in original).

Because the government had Dr. Pitt base his opinions on information that did not exist and was unavailable to the government at the time of trial, the government is not offering testimony that would have been or could have been presented at the time of trial. Therefore, Dr. Pitt's opinions are beyond the scope of this Court's orders, beyond the scope of the Tenth Circuit's remand, and they are not relevant.

### 3. THE GOVERNMENT'S POSITION AGAINST MR. BARRETT'S POST-CONVICTION EXPERTS ESTOPS THE GOVERNMENT FROM RELYING ON DR. PITT

This Court made its statements on the narrowness of the issue on November 15 and December 6, 2016. The government chose to have Dr. Pitt base his opinions on information that did not exist at the time of trial after this Court's pronouncements about the narrowness of the issue. *See* Ex. C (referral letter from Jeffrey B. Kahan to Steven Pitt dated January 5, 2017).

The government's decision to have Dr. Pitt rely upon information and diagnostic criteria that were not available as rebuttal at trial also came after the government first successfully argued that such information was irrelevant and inadmissible in these proceedings, although it persisted in that argument during its work with Dr. Pitt. This Court should hold the government is estopped from relying upon Dr. Pitt's recent-day conclusions.

---

[3] It would be wrong to infer from anything stated in this Motion that Mr. Barrett believes this Court was correct to have excluded his experts. It was not correct and the allowance of Dr. Pitt adds to the prejudice Mr. Barrett will suffer as a result. Each of the experts Mr. Barrett has identified was available to testify at the time of trial. Counsel's instructions to each expert specified that they should rely only on information and diagnostic methods and criteria that were available at the time of trial. *See* Ex. D (Decl. Tivon Schardl) at ¶¶ 3-4. The government's motion to exclude those experts relied upon false allegations for which the government had no good faith factual basis. For the reasons stated in § 3 of this Motion, the government's success in bringing those false allegations estops it from relying upon Dr. Pitt and his use of information and diagnostic criteria that were not available at the time of trial.

"Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Risetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). The doctrine's "purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment * * * [and] to prevent improper use of judicial machinery." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal quotation marks and citations omitted*). Accord Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1209 (10th Cir. 2011). "[J]udicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *Id.* at 750 (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). *Accord Mathews*, 649 F.3d at 1209.

The Tenth Circuit has described the application of the doctrine:

> Three factors "typically inform the decision whether to apply the doctrine [of judicial estoppel] in a particular case[]"; these factors are:

> First, a party's subsequent position must be clearly inconsistent with its former position. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled [.] Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013) (quoting with alterations *Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007)) (citation omitted). As to all three the equities in this case weigh overwhelmingly in Mr. Barrett's favor.

### 3.1    The Government's Clearly Inconsistent Positions

Mr. Barrett can easily show that the government's "later position [is] clearly inconsistent with its earlier position." *New Hampshire*, 532 U.S. at 750 (internal quotation marks omitted). The government's current position is that evidence that could not have been presented at the time of trial is relevant and appropriate in these proceedings.

The government's earlier position, taken when opposition to Mr. Barrett's experts and his motion in limine to exclude novel prosecution theories, were these:

- "[A]t this late date, nearly nine years after the judgment became final, the Court should not permit a mental health evaluation intended to smuggle a new theory into this case." Opp. Mot. Expert Access (Doc. 275) at 4.

- This Court should exclude six of Mr. Barrett's experts on grounds that they "can offer opinion [*sic*] that was not available to trial counsel or event [*sic*] § 2255 counsel at the time they filed their last four § 2255 motions." Mot. Exclude Witnesses (Doc. 289) at 8.

- Mr. Barrett's experts identified in 2016 "will offer testimony about present-day evaluations and opinions that Barrett has never claimed were available to trial counsel or constitutionally necessary for his case."[4] *Ibid.*

- In seeking to exclude Mr. Barrett's experts, the government added that this Court "has also stated that it does not believe contemporaneous evaluations provide 'any insight . . . regarding mitigation evidence that was available to counsel at the time of Petitioner's criminal trial.'" *Ibid.* (quoting Order (Doc. 279) at 3).

---

[4] The government filed its motion before Mr. Barrett could proffer these experts' opinions and the government offered no evidence for its factual averment.

- The government's motion also asserted that new experts should be excluded because "[t]he Tenth Circuit did not ask this Court to undertake a dress rehearsal for a wholly reconceived penalty phase trial . . . ." *Id.* at 9.

- "To the extent the upcoming hearing contemplates evidence that the *parties* could have introduced at Barrett's capital penalty trial, relevance remains a threshold concern . . . ." Opp. Mot. in Limine (Doc. 313) at 3 (emphasis added).

- The government's proposed evidence, including Dr. Pitt, is "not intended to introduce novel theories of aggravation." *Id.* at 4.

Everything the government said about Mr. Barrett's experts applies to Dr. Pitt. The government's reliance upon post-trial evidence and newly minted diagnostic criteria constitutes "a mental health evaluation intended to smuggle a new theory into this case," *viz.* that information created by the government post-trial refutes evaluations based on Mr. Barrett's earlier presentation. By proffering Pitt's testimony, the government is offering an "opinion that was not available to trial counsel [for the government] or event [*sic*] § 2255 counsel" at the time the government filed its answer.

As this Court said in the Order authorizing the Pitt examination, it was trying "to recreate portions of the trial twelve years after the trial." Order (Doc. 269) at 12. That limitation was appropriate, *see Wong v. Belmontes*, 558 U.S. 15, 25-26 (2009) (assessing prejudice on basis of trial court's contemporaneous ruling about scope of rebuttal), and it expressly took into account the amount of time the prosecutor would have had "to rebut whatever evidence trial counsel put on . . . ." Order (Doc. 269) at 12. This Court expressly authorized the Pitt examination because "the government would have had an opportunity to have an examination conducted to rebut the defendant's expert opinion if it had known of the expert at the time of trial." *Id.* at 14. This Court

observed that if there had been an evaluation at the time of trial "the two examinations would

have occurred close in time . . . ." Order (Doc. 288) at 2. However, just as the government argued

Mr. Barrett's counsel would not have had time to gather additional evidence, whether that

argument was accurate or not,[5] it is clear the government would not have had time to do what

Dr. Pitt has done.

Mr. Barrett gave provisional notice under Rule 12.2(b) on September 23, 2005, Doc. 208

in No. CR-04-00115-P ("Crim. Doc."), and the government requested its evaluation on the same

day. Crim. Doc. 214. At that time, the trial was underway. By order issued September 29, 2005,

this Court gave the government the week of October 10, 2005, to conduct its examination of Mr.

Barrett. Order (Crim. Doc. 216) at 4. This Court's order required the government to give Mr.

Barrett's counsel advance notice of the tests to be performed and an opportunity to object. *Id.* at

---

[5] To the extent this Court has conjectured or has predetermined that Mr. Barrett's trial counsel had less time to prepare expert reports than Mr. Barrett's post-conviction counsel, Order (Doc. 269) at 12-13, that conjecture is erroneous. The time between the indictment and the penalty phase was exactly one year, from November 9, 2004, to November 9, 2005. *United States v. Barrett*, 496 F.3d 1079, 1086, 1087 (10th Cir. 2007). That is the same amount of time Mr. Barrett had to file his post-conviction relief motion. 28 U.S.C. § 2255(f). The evidence adduced at the hearing shows trial counsel had the benefit of mitigation information and leads collected before the state trials. *See also* Order (Doc. 288) at 2. Of course, initial lead defense counsel John Echols was familiar with that information before the federal case started, an advantage post-conviction counsel did not have. The trial record shows trial counsel had the opportunity to retain a mitigation specialist to follow the state-court mitigation specialist's leads for as long as post-conviction counsel had to do so. Of course, this Court delayed for three months its ruling on counsel's motion for authorization to retain a mitigation specialist. Therefore any lack of time is attributable to this Court, which had the discretion and duty to postpone the trial if necessary to ensure Mr. Barrett was able to marshal all available mitigation evidence.

With specific reference to mental health evidence, Mr. Barrett's post-conviction counsel retained Dr. Myla Young on January 21, 2009, and they retained Dr. George Woods on January 26, 2009. Ex. D at ¶ 3. As stated in her declaration, Dr. Young conducted her testing on February 9, 10, and 11, 2009, and Dr. Woods examined Mr. Barrett on February 17 and 18, 2009. Dr. Young's declaration setting out her findings is dated March 5, 2009, and Dr. Woods's declaration is dated March 14, 2009. This Court's Order authorizing trial counsel to retain experts is dated March 18, 2005. Crim. Doc. 97. Thus, trial counsel had significantly more time to have retained experts evaluate Mr. Barrett—six months, from March 18, 2005, to September 23, 2005—than post-conviction counsel needed.

---

5. This Court's post-conviction order contained no such provision. Dr. J. Randall Price examined Mr. Barrett on October 13 and 14, 2005, and he dated his report October 26, 2005. Mr. Barrett was entitled to the government's expert's report before he decided whether to use Dr. Russell. Fed. R. Crim. P. 12.2(c)(3). The government filed Dr. Price's report on November 1, 2005, Crim. Doc. 237, and this Court disclosed to Mr. Barrett's counsel a small portion of it that same day. Crim. Doc. 238. The jury reached its liability-phase verdict on November 4, 2005. The evidentiary portion of the penalty phase began on November 9, 2005. Thus, the record from 2005 shows the government had approximately 40 days to complete its examination and submit its expert's report.

This Court gave the Dr. Pitt 45 days just to conduct his examination, Order (Doc. 269) at 14, even though this Court acknowledged that the government had far more advanced notice of Mr. Barrett's post-conviction case in mitigation than it would have had at the time of trial, *id.* at 9, 11-12. The time from the date of government counsel's letter to Dr. Pitt's report is 55 days. But the evidence indicates Dr. Pitt began his document review earlier. It is extremely unlikely that Dr. Pitt reviewed all the materials mentioned in his report, traveled to Terre Haute, Indiana, examined Mr. Barrett and returned, and drafted his 76-page report in 55 days. It is far more likely that Dr. Pitt began reviewing materials in late 2016. But even if he began work in January 2017, he took more than two weeks longer (27 percent longer) than the government had at the time of trial. Either way, the government took the position that Mr. Barrett should not be permitted to present experts who, it claimed without evidence, could not have assisted defense counsel at the time of trial. Today, the government takes the position that it can present an expert even though the record and evidence show he could not have assisted the government in the same way at the time of trial.

By having Dr. Pitt rely on evidence and diagnostic criteria that did not even exist at the time of trial, the government is offering evidence that might be admissible in a retrial after previously arguing "[t]he Tenth Circuit did not ask this Court to undertake a dress rehearsal for a wholly reconceived penalty phase trial . . . ."

Most damning, the government is relying on a present-day evaluation that could not have existed at the time of trial after invoking this Court's prior orders and stating that this Court "has also stated that it does not believe contemporaneous evaluations provide 'any insight . . . regarding mitigation evidence that was available to counsel at the time of Petitioner's criminal trial.'" Mot. Exclude Witnesses (Doc. 289) at 8 (quoting Order (Doc. 279) at 3). Because the evidence and diagnostic criteria Dr. Pitt relied did not exist at the time of trial, and he took substantially longer to conduct his evaluation than the government would have had at trial, his opinions could not have been used in rebuttal at trial. Therefore, his opinions cannot "provide 'any insight . . . regarding mitigation evidence that was available to counsel at the time of Petitioner's criminal trial.'"

### 3.2    *The Government has Misled and Mocked this Court*

The second question is "whether the party has succeeded in persuading a court to accept that party's earlier position." *New Hampshire*, 532 U.S. at 750. Given this Court's orders and the position the government took in these proceedings, this Court would have been justified in assuming that the government would not obtain an order authorizing Dr. Pitt's evaluation if the government intended to have him base his opinions on information that was not available at the time of trial. After all, this Court specifically denied the government's request to subpoena Mr. Barrett's prison mental health files because "this information would not have been readily available to the government in the criminal trial of this matter." Order (Doc. 269) at 16.

This Court, in agreeing with the government's opposition to Mr. Barrett being evaluated by Dr. Woods in 2016 said the following: "The evidentiary hearing herein is not to decide what evidence could be presented about Mr. Barrett's mental health today."[6] Yet that is exactly what the government did and in so doing it engaged in the "improper use of the judicial machinery." *New Hampshire*, 532 U.S. at 750. Unless the government believed that this Court would apply one standard for adjudicating whether an expert retained by the defense could see Mr. Barrett (the standard that limited evaluations to information available at the time of trial) and a different standard for the government itself, the government misled this Court about its position in order to get access to Mr. Barrett.

That is no small abuse of process. As this Court stated in the order authorizing the examination by Dr. Price, a court-ordered examination of this kind implicates a defendant's Fifth and Sixth Amendment rights. Order (Crim. Doc. 216) at 3, 5. By providing Dr. Pitt evidence that was not available at the time of trial—both evidence that did not exist, and evidence the government only obtained from the confidential files of Mr. Barrett's trial counsel—the government willfully flouted this Court's order stating that Dr. Pitt's evaluation was for the purpose of "hearing how Petitioner's mitigating evidence would have been rebutted" at trial. Order (Doc. 289) at 14 n.6 (emphasis added). And, if the government is allowed to present Dr. Pitt's opinion, the government's willful deviation from this Court's orders recklessly introduces prejudicial error into the record.

After repeatedly telling this Court that it did not intend to offer any new theories of aggravation at the evidentiary hearing, Opp. Mot. in Limine (Doc. 313) at 2, 3, and 4, the government is proffering through Dr. Pitt a new theory of future dangerousness. Dr. Pitt relies on

---

[6] This Court later reconsidered and allowed Dr. Woods to see Mr. Barrett again, although it did so without retreating from its earlier rationale.

six alleged incidents from 2006 to 2010 in which BOP personnel disciplined Mr. Barrett. Ex. A at 31. Despite this Court's statement that Dr. Pitt's evaluation was authorized to cover issues not covered by Dr. Price, Order (Doc. 269) at 13-14, Dr. Pitt did precisely that. Ex. A at 66-67. This evidence is inadmissible for three additional reasons beyond exceeding the scope of this Court's order. First, because future dangerousness was part of the government's case in chief, it is not proper rebuttal. Second, the information from Terre Haute obviously was not available at the time of trial. The government is doing precisely what it falsely accused Mr. Barrett of doing in its successful Motion to Exclude Witnesses: the government is smuggling a new theory into the case that would not have been available at trial. Moreover, the government is smuggling this new theory in after defeating Mr. Barrett's motion in limine by telling this Court it would introduce no new theories of aggravation. Third, as discussed in § 4, *infra*, the government's new theory should be excluded under Fed. R. Evid. 403 because it has no probative value and will trigger a mini trial of each alleged incident that Dr. Pitt relies on.

### 3.3     *The Government's Inconsistent Positions Give it an Unfair Advantage*

 "'Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken.'" *New Hampshire*, 532 U.S. at 749 (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). Thus, "[a] third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 751.

If this Court allows the government to present Dr. Pitt's present-day opinions, it will be conferring an unfair advantage on the government to Mr. Barrett's detriment by applying two

different standards based on which party would benefit. Whereas the government willfully ignored this Court's orders by having Dr. Pitt form opinions based on information that did not exist in 2005, Mr. Barrett's counsel scrupulously limited the scope of information his experts could consider to contemporaneous matter. Ex. D at ¶¶ 3-4.

In granting the government's motion, this Court precluded Mr. Barrett's experts, including Dr. Deborah Miora, who would only have presented Dr. Young's findings. This Court excluded them even though the Tenth Circuit found Dr. Young's findings "[m]ost important." *Barrett*, 797 F.3d at 1229. The Court also has precluded Mr. Barrett from offering Dr. Reidy's testimony in anticipation of Dr. Price's opinions, even though trial counsel specifically requested authorization to retain Dr. Reidy's research partner before trial. *See* Sealed Decl. Tivon Schardl (Doc. 423-2) at ¶ 3 (citing Crim. Doc. 107 at 3 and Reidy Decl. (Doc. 305-2) at ¶¶ 8, 11, 14-16). Evidence Dr. Reidy would testify to, like Mr. Barrett's other experts, is summarized in their declarations proffering their testimony. *See* Doc. 305. Mr. Barrett incorporates the contents of those declarations as exhibits to this Motion.

The Tenth Circuit reviews decisions about whether to apply judicial estoppel under an abuse-of-discretion standard. *Matthews v. Denver Newspaper Agency, LLC*, 649 F.3d 1199, 1209 (10th Cir. 2011). "It is a paradigmatic abuse of discretion for a court to base its judgment on an erroneous view of the law." *Schlup v. Delo*, 513 U.S. 298, 333 (1995). Allowing the government to rebut Mr. Barrett's expert, after concluding that he could rely only on opinions that were available at the time of trial, while allowing the government to present expert opinions that were not available at the time of trial would apply two different legal standards. Applying two different standards for the admissibility of expert testimony based on which party is offering the testimony also constitutes an abuse of discretion in that such a biased decision "exceeds the

bounds of permissible choice" or "results in a manifestly unreasonable judgment." *See Queen v. TA Operating, LLC*, 734 F.3d 1081, 1086 (10th Cir. 2013) (internal quotation marks and citations omitted).

Caselaw creates a clear distinction between claims that are strictly backward-looking, like ineffective assistance, and issues that must be resolved based on the present-day state of the evidence. In ineffectiveness cases, the Supreme Court focuses on information that was available at the time of trial. *Strickland*, 466 U.S. 668, 695-96 (1984); *cases cited in footnote 2,* supra. When considering a claim of actual innocence for the purpose of overcoming a procedural default, "the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence  that was either excluded or *unavailable at trial*." *Schlup*, 513 U.S. at 327-28 (emphasis added).[7] *Schlup* even allows a habeas court to consider, for purposes of the innocence determination, "'evidence [. . . ] alleged to have been illegally admitted (but with due regard to any unreliability of it).'" *Schlup v. Delo*, 513 U.S. 298, 328 (1995) (quoting Henry Friendly*, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 160 (1970)). No court applying *Strickland* would entertain illegally seized evidence.

Contrary to this Court's orders and the government's position throughout this litigation, the government is seeking to introduce evidence that could not and therefore would not have been available to rebut Mr. Barrett's mitigation evidence. Allowing that evidence will be prejudicial to Mr. Barrett and will entail the Court applying two different legal standards

---

[7] To further illustrate the differences between a prejudice determination and an innocence determination, when applying the prejudice standard of *Strickland*, the reviewing court must presume "that the judge or the jury acted according to law." *Strickland*, 466 U.S. at 695. But when assessing innocence, "*Schlup* makes plain that the habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks and citations omitted).

depending on which party is offering the evidence. Under these unique circumstances, this Court has no discretion to allow the government to rely upon Dr. Pitt.

### 4. THE GOVERNMENT'S EVIDENCE IS BARRED BY FED. R. EVID. 403

On February 24, 2017, this Court entered an order granting the government's Motion to Exclude Mr. Barrett's experts. Doc. 361. This Court held,

> Since the Circuit has already made a finding regarding the mental health evidence that was available to trial counsel, this Court does not intend to hear additional evidence in that regard. Certainly, this Court does not need to hear from six different mental health professionals to make a determination of the mental health evidence which was available to trial counsel nor to decide the issues which remain in this case. This Court finds the witnesses proposed by petitioner appear to involve the needless presentation of cumulative evidence and the Court will exclude such evidence pursuant to Rule 403 of the Federal Rules of Evidence.

Order (Doc. 361) at 10-11.

This Court applied against Mr. Barrett, Fed. R. Evid. 403 even though 18 U.S.C. § 3593(c) contains a different provision that applies to the penalty phase of a capital trial. The Federal Death Penalty Act affords stricter protection than the Federal Rules of Evidence by excluding information "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). There is no preclusion of cumulative evidence under § 3593(c). Nevertheless, having applied Rule 403 against Mr. Barrett, this Court must apply it to the government.

Dr. Pitt's methods and conclusions cover the same issues covered in Dr. Price's report. *Compare* Ex. A hereto (Pitt rpt.) at 37-48 & 66 n.46 (addressing evaluations by Dr. Russell and Dr. Price) *with* Sealed Ex. A to Mot. Exclude Price (Doc. 423-1) at 7-8 (also discussing Russell). *Compare* Ex. A hereto at 65-67 *with* Sealed Ex. A to Mot. Exclude Price (Doc. 432-1) at 6-9.

Dr. Pitt's reliance upon the absence of treatment at USP Terre Haute to conclude that Mr. Barrett was not mentally ill seven years before he got there means that Mr. Barrett must be given an opportunity to rebut his testimony with evidence that the mental health services at USP Terre Haute have been unreliable from 2006 to the present. *United States v. Troya*, 733 F.3d 1125, 1133 (11th Cir. 2013).[8] Dr. Pitt's reliance upon Mr. Barrett's disciplinary record at USP Terre Haute, means Mr. Barrett must have the opportunity to explain or deny each infraction the government relies upon. *Gardner v. Florida*, 430 U.S. 349, 362 (1977); *Skipper v. South Carolina*, 476 U.S. 1, 5 (1986); *Simmons v. South Carolina*, 512 U.S. 154, 165 (1994); *Kelly v. South Carolina*, 534 U.S. 246, 252-57 (2002).

This Court has already held that present-day opinions based on evidence that was not available at the time of trial has little or no probative value. Dr. Pitt's evaluation also is not probative as a matter of law. This Court's Orders, cited *supra*, repeatedly emphasized that this hearing is on mitigation, not whether Mr. Barrett had a defense to the charged crimes. In order to serve as a statutory mitigating factor, the Federal Death Penalty Act specifies that mental health problems affecting capacity need not render a defendant "so impaired as to constitute a defense to the charge." 18 U.S.C. § 3592(a)(1). Of course, Mr. Barrett was not limited to the statutory mitigating circumstances and could ask the individual jurors to reject a death sentence on grounds of any degree of impairment. *See*, *e.g.*, *Hitchcock v. Dugger*, 481 U.S. 893 (1996). Yet, as regards capacity and culpability, the government chose to ask Dr. Pitt *only* whether "[a]t or around the time of the crime," Mr. Barrett could "distinguish right from wrong[.]" Ex. A at 6; Ex. C at 3. That, of course, is the onerous standard for making out an insanity defense, 18 U.S.C.

_____

[8] 18 U.S.C. § 3593(c) ("The government and the defendant *shall* be permitted to rebut *any* information received at the [sentencing] hearing, and *shall* be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death.") (emphasis added).

§ 17(a), and not probative of whether there is a reasonable probability that a juror would have voted for a sentence less than death if mental health mitigation, in addition to all other available mitigation, had been presented at trial.

Therefore, applying Rule 403's balancing test, Dr. Pitt's testimony is inadmissible if his reliance upon records from USP Terre Haute will result in "a danger of one or more of the following": "unfair prejudice, confusing the issues . . . undue delay, wasting time." Fed. R. Evid. 403. There is more than a danger of all of these coming to pass; it is a certainty.

For the reasons previously stated in § 3, *supra*, the government's reliance upon information that was not available at the time of trial, while Mr. Barrett has (appropriately) been limited to evidence that was available at the time of trial, is unfairly prejudicial. This Court would be prejudicially applying two different standards, each one favorable to the government. From the government's position, this Court is flipping a coin while saying "heads I win, tails you lose."

From either this Court's perspective or that of the Tenth Circuit, the use of evidence that was not available at the time of trial will confuse the issues. Because Dr. Pitt exclusively relied upon diagnostic criteria that were not published until eight years after the trial in this case, at a minimum, his testimony will require extensive examination and cross-examination about the differences between those criteria and the contemporaneous standards so that the Court can give appropriate weight to the experts' opinions.

The government's reliance upon USP Terre Haute records will result in undue delay. Mr. Barrett intends to call witnesses to the various disciplinary incidents Dr. Pitt relied upon. Given this Court's prior rulings that present-day evaluations that are untethered to pre-trial evidence are uninformative, any inquiry into these incidents wastes time and resources.

### 5. LCvR 7.1(F) COMPLIANCE

Counsel for Mr. Barrett contacted opposing councel via email and advised opposing counsel of this Motion in an effort to determine whether it could be resolved informally. Counsel for the government advised that the government opposes this Motion.

### 6. CONCLUSION

This Court gave the government a fair opportunity to obtain "the evidence which the government would have brought forward to rebut the evidence which will be offered by petitioner." Order (Doc. 269) at 14. The government took unfair advantage of that opportunity and instructed its expert to form his opinions based on a process, information and diagnostic criteria that flouted this Court's efforts to recreate conditions at the time of trial. In doing so, the government produced irrelevant, non-probative, unfairly prejudicial, time-wasting testimony. For all the foregoing reasons, this Court should exclude the testimony of Steven Pitt.

DATED:     May 11, 2017          RESPECTFULLY SUBMITTED,

/s/ *David Autry*
DAVID AUTRY

HEATHER E. WILLIAMS
Federal Defender

/s/ *Joan M. Fisher*
JOAN M. FISHER
Assistant Federal Defender

/s/ *Tivon Schardl*
TIVON SCHARDL
Trial & Habeas Counsel

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

**CERTIFICATE OF ELECTRONIC SERVICE AND DELIVERY**

This is to certify that on this 11th day of May 2017, I caused the foregoing Petitioner's Motion to Exclude Witness Steven Pitt to be filed with the Clerk of the Court using the ECF System for filing, with service via CM/ECF to be made to Christopher J. Wilson, AUSA, Jeffrey B. Kahan, U.S. Department of Justice, and to all counsel of record.  To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.

/s/ *Tivon Schardl*
TIVON SCHARDL