DAVID AUTRY, OBA No. 11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
Telephone:    (405) 521-9600
Facsimile:    (405) 521-9669
E-mail:        dbautry77@gmail.com

HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
JOAN M. FISHER, ID Bar #2854
Assistant Federal Defender
TIVON SCHARDL, FL Bar #73016
Trial & Habeas Attorney
801 I Street, 3rd Floor
Sacramento, CA 95814
Telephone:    (916) 498-6666
Facsimile:    (916) 498-6656
E-mail:        Joan_Fisher@fd.org

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH EUGENE BARRETT,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | CASE NO. CV-09-00105-JHP<br><br><br>**PETITIONER'S REPLY TO THE GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO EXCLUDE EXPERT TESTIMONY FROM J. RANDALL PRICE BASED ON FAILURE TO DISCLOSE OPINIONS, REASONS AND BASES THEREFOR** |

Petitioner KENNETH EUGENE BARRETT, by and through undersigned counsel, makes

the following Reply to the government's Response in Opposition to Motion to Exclude Expert

Testimony from J. Randall Price Based on Failure to Disclose Opinions, Reasons and Bases

Therefor ("Response" or "Resp."). Mr. Barrett's Motion, filed May 9, 2017, is Doc. 425. The

government's timely filed Response, pursuant to this Court's Order shortening time, Doc. 428, is Doc. 436. For the reasons that follow, the Response raises more problems for the government than it resolves. In sum, the Response demonstrates that the government intends to rely upon Dr. Price for opinions that were not summarized in his report and that are not legitimate rebuttal in that Dr. Price will be used to rebut neuropsychological evidence that this Court excluded at the government's request.

The issue presented in Mr. Barrett's Motion to Exclude is straightforward. Rule 16(a)(1)(G) provides that "the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial on the issue of the defendant's mental condition." Fed. R. Crim. P. 16(a)(1)(G). Rule 16(a)(1)(G) specifies that the report "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Ibid.* It is undisputed that this Court's scheduling and discovery orders required the exchange of such a report. Order (Doc. 269) at 11. The government concedes that the current prosecutors received Dr. Price's 2005 report on or about December 6, 2016. Resp. 3. If the government intends to offer at the hearing any opinions from Dr. Price about how his 2005 evaluation rebuts Mr. Barrett's post-conviction experts, Rule 16(c)(2) of the Federal Rules of Criminal Procedure and this Court's discovery and scheduling orders required the government to obtain those opinions from Dr. Price and supplement his previous report with, at least, a summary of his new opinions and the bases and reasons for them.

The government responds to this straightforward proposition with a study in obfuscation. Mr. Barrett will not further waste the Court's time with the government's feigned protestations about being accused of misconduct. Suffice it to say, this Court's objective has been to recreate

conditions that would have obtained at the time of trial, Order (Doc. 269) at 12, and the government has had far more time to obtain a supplemental report from Dr. Price than it had to obtain his original report. The government has had more time to obtain a supplemental report from Dr. Price than it took the government's other expert, Steven Pitt, D.O., to produce a 76-page report purportedly based on thousands of pages of background material. Thus, the government's Response provides no basis for this Court to find good cause or excusable neglect for any delay. The government has simply rejected the idea that it should have to supplement Dr. Price's report.

The government claims Mr. Barrett filed his motion out of time, then waives that objection. Resp. 2. The government's waived objection is mistaken. Mr. Barrett's Motion is predicated on Fed. R. Crim. P. 16(c)(2), Mot. (Doc. 425) at 1, 3, 5, which expressly requires the government to "promptly disclose" "additional evidence or material" at any time "before trial" if "the other party requested, or the court ordered, its production." As stated in the Rule's title, the government is under a "Continuing Duty to Disclose." Mr. Barrett's Motion gave the government the benefit of forewarning about an objection Mr. Barrett could have waited to raise until the *voir dire* of Dr. Price. Each day that goes by without supplemental disclosures the violation continues and Mr. Barrett is more gravely prejudiced by an ever-shrinking ability to prepare to cross-examine or rebut opinions about which he has no notice. The motion is timely and will remain so through the hearing. *See United States v. Mackin*, 793 F.3d 703, 707-708 (7th Cir. 2015) (finding violation of Rule 16 prejudicial where report not provided until trial).

When fashioning a remedy for the government's failure to disclose Dr. Price's opinions, and the bases and reasons therefor, this Court must consider the degree of prejudice, what is necessary to remedy the situation and "the government's willfulness . . . and its willingness to

own up to it."[1] *United States v. Kojayan*, 8 F.3d 1315, 1318 (9th Cir. 1993); *United States v. Ivy*, 83 F.3d 1266, 1280-81 (10th Cir. 1996). The Response sets forth the government's willfulness.

The government concedes that nothing in Dr. Price's report "directly contradict[s]" the findings of Mr. Barrett's experts. Resp. at 5. The government also concedes that in order for Dr. Price's findings to be proper rebuttal, "'there must be a nexus between the purported rebuttal evidence and the evidence that the purported rebuttal evidence seeks to rebut.'" Resp. 4 (quoting *United States v. Stitt*, 250 F.3d 878, 897 (4th Cir. 2001)). Then the government engages in a little sleight of hand. It protests that Dr. Price's 2005 report could not have contradicted Mr. Barrett's post-conviction experts. Resp. 5. That is precisely why the government was required to determine, if it could, whether there is a nexus between Dr. Price's 2005 evaluation and the findings of Mr. Barrett's post-conviction experts and, if there is, to supplement his report as required by Rule 16(c)(2).

The government contends Dr. Price's testimony is proper rebuttal because "his findings 'counteract' those of Young and Woods." Resp. 5 (quoting one carefully excerpted word from *Stitt*, 250 F.3d at 897). There are at least three problems with the government's extremely weak theory of rebuttal. First, that is not what this Court authorized in 2005. Second, and relatedly, the government *concedes* that *in addition* to having a tendency to "'counteract . . . facts given in evidence by the opposing party,'" "'rebuttal evidence must be *reasonably tailored* to the evidence it seeks to refute,'" such that there is, at least, "'a nexus'" between the two. *Ibid.* (emphasis added). Third, Mr. Barrett has an absolute right to a timely statement of the bases and

_____

[1] Mr. Barrett omits the word "misconduct" from the quotation in the text, because, despite the government's protestations, Mr. Barrett had not accused the government of willful misconduct. The government is being willful, but willful ignorance is the strongest charge supported by the currently available evidence. Mr. Barrett reserves the right to amend his allegations if it turns out that the government has asked Dr. Price to opine about the findings of Mr. Barrett's experts but to withhold his opinions until he testifies. If that turns out to be the case, Mr. Barrett will seek more severe sanctions.

reasons why Dr. Price believes his findings "counteract" those of Mr. Barrett's experts—i.e. how his 2005 opinions could be considered a reasonably tailored refutation—if, in fact, he holds such a belief.

This Court's 2005 Order was consistent with the requirement that the government's evaluation be reasonably tailored to Mr. Barrett's evidence. The Order stated that the "sole purpose of the government's examination shall be to confirm or rebut mental health evidence presented by the defendant." Order (Crim. Doc. 216) at 5; Order (Doc. 269) at 13. This Court expressly gave Mr. Barrett an opportunity to "object[] to use [*sic*] of an expert, or to a particular test," and if that objection was not resolved informally, this Court said it would "set the matter for hearing." *Id.* at 5. After he obtained Dr. Price's report, Mr. Barrett timely objected to the government's proposed use of the Psychopathy Checklist-Revised ("PCL-R") to rebut the findings of the post-conviction experts. Mot. Exclude J. Randall Price (Doc. 305). Mr. Barrett specifically objected, and presented *undisputed* evidence to prove, that there is no nexus between what the PCL-R measures and the diagnoses of Mr. Barrett's experts. Mot. (Doc. 305) at 5-6 & n.2; *id.* at 11; *id.* at 12-13; Mot. Ex. B (Doc. 305-2) at 18-19; Mot. Ex. C (Doc. 305-3) at 3. Mr. Barrett incorporates by this specific reference all averments and arguments made in that motion and all facts set forth in its exhibits as if fully set forth herein. Although this Court has stated that these proceedings should recreate the conditions from 2005, this Court declined to hold a hearing on Mr. Barrett's motion.

When the government moved this Court for authorization to have Dr. Pitt examine Mr. Barrett, it stated that Dr. Pitt's examination was necessary in light of Dr. Woods's psychiatric opinion because, at most, Dr. Price "had the opportunity to obtain a neuropsychological evaluation of the defendant." Mot. (Doc. 253) at 2. The government did not mention that the

"psychopathy" finding would provide an "alternative mental health explanation" to Dr. Woods's explanation for Mr. Barrett's actions, as the government now contends. Resp. 5. On the contrary, by mentioning only the neuropsychological screening, and omitting psychopathy, the government strongly implied that it could not "counteract" Dr. Woods with Dr. Price's opinion about psychopathy. If the government knew at the time of its motion for the Pitt examination that it would rely on Dr. Price's opinion to "counteract" Dr. Woods, such that it strategically omitted that fact from the Pitt motion, then the government knew enough at that time to trigger the continuing duty to disclose under Rule 16(c)(2).

The record as it now stands leaves no doubt that the government has been playing fast and loose and denying Mr. Barrett notice of how, if at all, Dr. Price's opinions refute those of Dr. Woods. The evidence is in three forms: (1) the government's strategic omission from its motion to have Dr. Pitt examine Mr. Barrett that it intended to use of Dr. Price to rebut Dr. Woods's psychiatric opinion; (2) the undisputed evidence that there is no accepted scientific nexus between the PCL-R or "psychopathy" and Dr. Woods's conclusions; (3) the government's statement in the instant Response that it intends to offer Dr. Price's "psychopathy finding [as an] alternative mental health explanation for the defendant's violence" to that offered by Dr. Woods and Dr. Young. Resp. 5.

The government betrays the implausibility of its "counteracting" rebuttal theory when it states, in the same paragraph, that Dr. Price's 2005 report does not "directly contradict" Mr. Barrett's experts, but "his psychopathy finding provides alternative mental health explanation [sic] for the defendant's violence." Resp. at 5. In the context of psychology or psychiatry, an "alternative mental health explanation" is the same thing as a contradiction. Mental health professionals employ the process of differential diagnosis: the presence of one set of symptoms

confirms one diagnosis and disconfirms another. *See generally* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* (2000); *Comer v. Stewart*, 230 F. Supp. 2d 1016, 1031 (D. Ariz. 2002) (faulting psychiatrist for failing to consider differential diagnosis in DSM). Or, as in the case of psychopathy, which is not accepted as a differential diagnosis, it doesn't. As stated in Mr. Barrett's motion, and as the government concedes, nothing in Dr. Price's report suggests his opinion is that "psychopathy" is an "alternative mental health explanation" to Bipolar Disorder of Post-Traumatic Stress Disorder, the diagnoses that Dr. Woods testified to. If Dr. Price will testify that his opinion is a valid psychological alternative to Dr. Woods's, Mr. Barrett is entitled to a statement of the bases and reasons for that opinion. Fed. R. Crim. P. 16(a)(1)(G), 16(c)(2).

As to Dr. Young's findings, except as support for Dr. Woods's findings, Mr. Barrett was prevented from presenting her evaluation when this Court granted the government's motion to exclude any testimony from Deborah Miora, Ph.D. or Erin Bigler, Ph.D. Mot. Exclude Witnesses (Doc. 289) at 8-10; Order (Doc. 361) at 10-11. Assuming for the sake of argument the government has the right to rebut excluded evidence, Dr. Price's own report demonstrates that the government is playing fast and loose. If "psychopathy" provided an "alternative mental health explanation" to brain damage, Dr. Price certainly never said so. On the contrary, if psychopathy ruled out brain damage, or vice versa, there would have been no reason for Dr. Price to examine Mr. Barrett for both. But, as the government concedes, that is exactly what he did. The government contends Dr. Price both "rule[d] out brain damage with a screening test" and used the PCL-R to evaluate "psychopathy." Resp. 5.

All of this indicates that if Dr. Price's opinion is that his finding of "psychopathy" is a psychologically valid "alternative mental health explanation" to Bipolar Disorder or Post-

Traumatic Stress Disorder, the bases and reasons for him holding that opinion is an issue for extensive cross-examination. Under Rule 16, Mr. Barrett is entitled to notice of those bases and reasons so that he can prepare to test them. The government's Response indicates the government has no intention of providing that notice.

With regard to Mr. Barrett's neuropsychological impairments, similar arguments apply. The government concedes in its Response that Dr. Price only "screened" Mr. Barrett for neuropsychological problems. Resp. 5. The government contends it will offer the results of this screening to rebut Dr. Young's findings. However, this Court granted the government's motion to exclude testimony about Dr. Young's findings and how she reached them. Mot. Exclude Witnesses (Doc. 289) at 8-10; Order (Doc. 361) at 10-11. This Court's orders state that the government may present at the evidentiary hearing only the evidence it could have presented at trial. Order (Doc. 269) at 9. The government is only allowed to rebut evidence actually presented in the sentencing hearing. 18 U.S.C. § 3593(c). Mr. Barrett was precluded from presenting Dr. Young's findings on specific tests and evidence as to why those tests are reliable and how they measure what they measure. Under the Federal Death Penalty Act, the government would have no right to "rebut" with Dr. Price's screening instrument information the jurors could not hear.

The existing process is doubly biased against Mr. Barrett. First, this Court granted the government's motion to exclude testimony from a neuropsychologist about the tests and procedures that produced the findings the Tenth Circuit found "[m]ost important." *United States v. Barrett*, 797 F.3d 1207, 1230 (10th Cir. 2015), *cert. denied*, ___ U.S. ___, 137 S. Ct. 36 (2016). Mr. Barrett could have presented testimony from a neuropsychologist about the extent and validity of Dr. Young's testing and how her scores interrelate. Proffer of Dr. Deborah Miora (Doc. 376-1). This Court also granted the government's motion to exclude testimony Mr. Barrett

could have presented about the relative weakness of the screening instrument Dr. Price used, compared with the complete battery used by Dr. Young. Proffer of Dr. Erin Bigler (Doc. 376-2). Second, the government fails to provide the required notice of Dr. Price's bases and reasons for believing, if he does, that the screening instrument he used rebuts the full battery of tests Dr. Young used. As things stand, unless this Court grants the instant Motion, the government will be able to rebut testimony Mr. Barrett was precluded from presenting while simultaneously withholding notice of what the government's testimony will be thereby curtailing both Mr. Barrett's case in chief and his ability to cross-examine the government's expert.

Lastly, the government cannot present Dr. Price's findings and then *argue* that they "counteract" those of Mr. Barrett's experts. First, the undisputed evidence before this Court is that the PCL-R and psychopathy do not provide alternative mental health explanations to any of the conclusions of Mr. Barrett's experts. If the government is allowed to present testimony to that effect, that evidence will be subject to being stricken due to the lack of notice. In the absence of evidence of a nexus between Price's findings and those of Mr. Barrett's experts, the government's argument would be lacking an evidentiary basis, at best, and misleading at worst. It is misconduct for a prosecutor to argue conclusions without factual support in the record.[2]

---

[2] *See*, *e.g.*, *Land v. Allen*, 573 F.3d 1211, 1219-20 (11th Cir. 2009) (where no direct evidence of events at victim's home, improper for prosecution to invite the jurors to speculate on interactions between defendant and victim; "The prosecutor exceeded the bounds of appropriate conduct by claiming to describe exactly what happened, and particularly what was said, with such specificity."); *Bland v. Sirmons*, 459 F.3d 999, 1028-29 (10th Cir. 2006) (because jury did not convict defendant of felony-murder charged, predicated on robbery, improper for the prosecution to argue that the homicide was committed in the course of a robbery during penalty-phase summations); *Le v. Mullin*, 311 F.3d 1002, 1020 (10th Cir. 2002) (prosecution improperly misstated the evidence, arguing that defendant laughed after the homicide; "The Assistant District Attorney's comment was erroneous in that it mischaracterized trial testimony in order to show that [defendant] was either remorseless or actually made light of the tragic events of that day. No evidence supports this characterization of the . . . testimony."); *Miller v. Lockhart*, 65 F.3d 676, 682 (8th Cir. 1995) (prosecutor suggests without support in evidence that defendant escaped from jail before); *Tucker v. Kemp*, 762 F.2d 1496, 1507 (11th Cir. 1985) (en

And, "[i]t is unprofessional conduct for the prosecutor intentionally to . . . mislead the jury as to the inferences it may draw." *United States v. Young*, 470 U.S. 1, 8 n.5 (1985) (citation and internal quotation marks omitted); *see also United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008); *United States v. George*, 201 F.3d 370, 373-74 (5th Cir. 2000).

The government has had at least six months to have Dr. Price consider and opine on the opinions of Dr. Woods and Dr. Young and to state the reasons and bases for how his earlier opinions rebut their findings, if they do. Had the government done so, it was required by this Court's Order (Doc. 270) at 2, and Rules 12.2(c) and 16(c) of the Federal Rules of Criminal Procedure to update Dr. Price's report. The government has not submitted any supplemental disclosure from Dr. Price, and it has no intention of doing so. Consequently, Mr. Barrett lacks notice of any relevant opinions, the bases and reasons therefor, and his counsel cannot adequately prepare to cross-examine him. Accordingly, his testimony should be excluded.

WHEREFORE, this Court should enter an order precluding the government from presenting any testimony from Dr. Price as to how his opinions rebut those of Mr. Barrett's experts, and, since that is the only issue before this Court, the order should preclude him from offering any opinion testimony at all.

///

///

///

///

///

///

---

banc) (although prosecution may argue reasonable inferences from the evidence adduced at trial, prosecution's closing argument that defendant forced the victim to engage in oral sex was a "gratuitous and unsupported charge" and, therefore, "serious professional impropriety").

DATED:          May 18, 2017

                                              RESPECTFULLY SUBMITTED,

                                              /s/ *David Autry*
                                              DAVID AUTRY

                                              HEATHER E. WILLIAMS
                                              Federal Defender

                                              /s/ *Joan M. Fisher*
                                              JOAN M. FISHER
                                              Assistant Federal Defender

                                              /s/ *Tivon Schardl*
                                              TIVON SCHARDL
                                              Trial & Habeas Counsel

                                              Attorneys for Petitioner,
                                              KENNETH EUGENE BARRETT

**CERTIFICATE OF ELECTRONIC SERVICE AND DELIVERY**

This is to certify that on this 18th day of May 2017, I caused the foregoing Petitioner's Reply to the Government's Response in Opposition to Petitioner's Motion to Exclude Expert Testimony by J. Randall Price Due to Discovery Violation to be filed with the Clerk of the Court using the ECF System for filing, with service via CM/ECF to be made to Christopher J. Wilson, AUSA, Jeffrey B. Kahan, U.S. Department of Justice, and to all counsel of record.  To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.

/s/ *Tivon Schardl*
TIVON SCHARDL
