**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| KENNETH EUGENE BARRETT | ) | |
| | ) | |
|     **Petitioner,** | ) | |
| | ) | Case No. 09-CV-00105-JHP |
| **v.** | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     **Respondent.** | ) | |

**GOVERNMENT RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE WITNESS**
**STEVEN PITT**

DOUGLAS A. HORN
Acting United States Attorney

CHRISTOPHER J. WILSON
Assistant United States Attorney
1200 West Okmulgee
Muskogee, OK  74401
Telephone: (918) 684-5100
FAX: (918) 684-5150
chris.wilson@usdoj.gov


JEFFREY B. KAHAN
Trial Attorney, Capital Case Unit
U.S. Dept. of Justice
1331 F Street, NW; Rm. 656
Washington, DC 20530
Telephone: (202) 305-8910
FAX:  (202) 353-9779
Jeffrey.kahan@usdoj.gov

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 4

   I.  THE COURT SHOULD PERMIT DR. PITT'S RETROSPECTIVE OPINION
TESTIMONY, WHICH NECESSARILY RELIES ON POST-TRIAL EVIDENCE ................ 4

     A.  The Government Complied with this Court's Orders ........................................................ 4

     B.  The Government, Like the Defense Before it, Can Rely on Post-Trial Information ....... 7

     C.  The Government has not Taken Inconsistent Positions in this Case ............................... 9

   II.  DR. PITT'S TESTIMONY IS MORE PROBATIVE THAT PREJUDICIAL ................... 12

CONCLUSION ...................................................................................................................... 15

## TABLE OF AUTHORITIES

### Cases

*Cooper Indus., Inc. v. Aviall Svcs., Inc.*, 543 U.S. 157, 170 (2004) ........................................................... 5

*Davis v. Wakelee*, 156 U.S. 680, 689 (1895) ................................................................................................ 9

*Free v. Peters*, 12 F.3d 700, 703 (7th Cir. 1993) ...................................................................................... 12

*Gardner v. Florida*, 430 U.S. 349, 362 (1977) ......................................................................................... 14

*Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) ....................................................... 10

*LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998) ........................................................................ 14

*Skipper v. South Carolina*, 476 U.S. 1, 5 (1986) ....................................................................................... 14

*Teague v. Lane*, 489 U.S. 288, 310 (1989) ................................................................................................ 11

*Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1129 (10th Cir. 2009) .................................................. 5, 6

*United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007) ........................................................................... 1

*United States v. Barrett*, 797 F.3d 1207, 1232 (10th Cir. 2015) ................................................................. 2

*United States v. Frady*, 456 U.S. 152, 164 (1982) ..................................................................................... 11

*United States v. Hardy*, 762 F. Supp. 2d 849, 881 (E.D. La. 2010) ............................................................ 8

*United States v. Johnson*, 988 F.2d 941, 945 (9th Cir.1993) ..................................................................... 11

*United States v. Lee*, 274 F.3d 485, 494 (8th Cir. 2001) ............................................................................ 13

*United States v. Villargrana-Flores*, 467 F.3d 1269, 1278 (10th Cir. 2006) .................................... 9, 10, 11

*United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) ..................................................................... 11

*United States v. West-B*ey, 188 F. Supp. 2d 576, 584-86 (D. Md. 2002) ..................................................... 8

*United States v. Willis*, 202 F.3d 1279, 1280 (10th Cir. 2000) .................................................................. 11

### Statutes

18 U.S.C. § 3593 ...................................................................................................................................... 8, 13

28 U.S.C. § 2255 ..................................................................................................................................... passim

### Rules

Fed. R. Evid. 401 ......................................................................................................................................... 8

Fed. R. Evid. 403 ................................................................................................................................... 12, 14

Fed. R. Evid. 801 ....................................................................................................................................... 12

Fed. R. of Civ. Proc. 26 ............................................................................................................................... 2

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

KENNETH EUGENE BARRETT          )
                                )
        Petitioner,             )
                                )          Case No. 09-CV-00105-JHP
v.                              )
                                )
UNITED STATES OF AMERICA,       )
                                )
        Respondent.             )

GOVERNMENT RESPONSE IN OPPOSITION TO MOTION TO EXCLUDE WITNESS
STEVEN PITT

**COMES NOW** Respondent, United States of America, by and through undersigned

counsel and files this response in opposition to Petitioner's motion to exclude expert testimony

from Steven Pitt (Doc. 432).

## PRELIMINARY STATEMENT

Barrett was convicted of three homicide offenses he committed when a state police

tactical unit attempted to serve a warrant at his home. The trial jury recommended a death

sentence that this Court imposed, and the Tenth Circuit Court of Appeals affirmed the judgment

on appeal. *United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007), *cert. denied*, 552 U.S. 1260

(2008).  Barrett sought collateral relief under 28 U.S.C. § 2255.  Docs. 1, 2, 70 & 95.

Barrett appended to his motions to vacate, as Exhibits 89 and 117, declarations from two

mental health experts, Myla Young and George Woods.  Based on evaluations conducted after

trial, the putative experts retrospectively opined that Barrett's alleged mental illnesses played a

role in his commission of this murder. *See e.g*. Doc. 95 Ex. 89 at 24; Ex. 117 at 27.  Dr.

Woods's declaration specified only a single record that he reviewed – Dr. Young's declaration –

1

and otherwise provided generic descriptions of the material he considered in assessing the defendant.  Doc. 95 Ex. 117 at 5 ¶ 14 ("I also reviewed and considered the declaration of neuropsychologist, Myla Young, PhD; Mr. Barrett's institutional records, to include available academic, medical and custodial records").  Dr. Woods declared, among other things, that "Barrett, as a function of a mental disorder, believed his actions were right at the time of the police action on his property. This distorted belief was further augmented by the symptoms of his bipolar disorder, his profound depression, isolation, impaired judgment, irritable mood, and paranoid ideation."  Doc. 95 Ex. 117 at 27.  Dr. Woods further remarked that Barrett "could not understand the difference between right and wrong."  *Id*. at 27.

This Court denied § 2255 relief.  Doc. 214.  The Tenth Circuit affirmed the denial in part, but remanded the case for an evidentiary hearing regarding an allegation that trial counsel ineffectively investigated and presented evidence of Barrett's mental health and social history. *United States v. Barrett*, 797 F.3d 1207, 1232 (10th Cir. 2015).  After returning to this Court, the government filed eight discovery motions, including a request for a psychiatric evaluation by Dr. Steven Pitt.  Doc. 253.  On December 6, 2017, the Court granted the government's motions in part, including the request for a psychiatric evaluation.  Doc. 269.  In the same order, the Court denied a government motion to subpoena all of Barrett's records from courts, schools, employers, penal institutions, medical providers, mental health professionals, and the Social Security Administration.  *Id*. at 16 (denying Doc. 255).  The Court also denied a government motion for Barrett to provide expert reports under Federal Rule of Civil Procedure 26.  *Id*. at 10-11 (denying Doc. 253).

In view of the upcoming interview by Dr. Pitt, the defense sought permission for Dr. Woods to reevaluate Barrett, in order to, "determine the impact of continued structured

institutionalization on Mr. Barrett's mental health as it relates to his 2009 state of mental health." Doc. 288 (granting Doc. 285). The order expressed a concern that the government might secure an unfair advantage if its expert could comment on present-day behavior that Dr. Woods had not observed. *Id*. at 2-3. The Court, nonetheless cautioned the parties, "the focus of any mental health testimony at the upcoming evidentiary hearing should be Mr. Barrett's background and mental health at the time of his criminal trial before this Court in late 2005 as opposed to his mental health in 2017." *Id*. at 3.

In anticipation of Dr. Pitt's evaluation of Barrett, the government transmitted a letter, asking him to respond to three specific concerns:

1. At or around the time of the crime, did Barrett . . . suffer from any serious mental illness or defect?

2. Please comment on whether any mental illness or defect diagnosed in response to question 1 was a byproduct of substance abuse.

3. At or around the time of the crime, could Barrett distinguish right from wrong?

Doc. 432 Ex. C. The letter also stated that the government would "seek to rebut or impeach the defense's proffered evidence" and asked Dr. Pitt to provide "impressions and/or criticisms of the mental health findings and evaluations submitted by Barrett in this case." *Id*. Dr. Pitt authored a report, listing 77 sources of information and finding that at the time of the murder Barrett had "features of an Antisocial Personality," that he was abusing drugs, and that he "[e]xperience psychiatric symptoms that were the byproduct of substance use and *not* the result of a mental disease or defect." *See* Doc. 432 Ex. A at 6-19, 74 (emphasis original). The report also noted Dr. Pitt's finding that Barrett could distinguish right from wrong at the time of the crime. *Id*. at 73.

3

Barrett filed this motion to exclude the testimony of Dr. Pitt (Doc. 432), and this opposition follows.

<b><u>ARGUMENT</u></b>

**I.  THE COURT SHOULD PERMIT DR. PITT'S RETROSPECTIVE OPINION TESTIMONY, WHICH NECESSARILY RELIES ON POST-TRIAL EVIDENCE**

In a series of arguments, Barrett asserts that this Court should not permit Dr. Pitt to testify because he relied on information that was unavailable to the government at the time of trial. Barrett claims the government violated court orders by providing post-trial information to Dr. Pitt, and claims any opinion premised on post-trial evidence is irrelevant.  Barrett also contends the government has previously taken positions inconsistent with its intent to elicit Dr. Pitt's retrospective opinion, and that the doctrine of judicial estoppel should therefore preclude his testimony.  Mtn. 1-17.  Barrett's arguments find no support in the law or the record, and the government responds to them in turn.

A.  <u>The Government Complied with this Court's Orders</u>

Barrett claims that the government violated this Court's orders by providing its expert with information that was unavailable at the time of trial.  He states that the government's actions ran afoul of an order denying a request to subpoena records from prisons and mental health records.  Doc. 432 at 3 (citing Doc. 255).  He also asserts that the government violated an order granting a defense request for a second evaluation of the defendant in which the Court remarked "that the focus of any mental health testimony at the upcoming evidentiary hearing should be Mr. Barrett's background and mental health at the time of his criminal trial."  *Id*. at 2 (citing doc. 288).  Apart from arguing that the orders should have limited Dr. Pitt's consideration of post-trial evidence, Barrett also contends they should have precluded the expert from relying on the current edition of the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS

4

(DSM-V), which was published in 2013. Doc. 432 at 1-4. In truth, government has not violated the letter or spirit of any order, and Barrett does not establish otherwise by citing out-of-context dicta. While the government provided Dr. Pitt with information that was unavailable during trial, it sought retrospective mental health findings consistent with the issues pending before this Court.

Judicial opinions are not authority for unconsidered propositions: "Questions which merely lurk in the record [of earlier cases], neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Cooper Indus., Inc. v. Aviall Svcs., Inc*., 543 U.S. 157, 170 (2004). Statements and comments in an opinion concerning matters that are not essential to the decision amount to non-controlling dicta. *Cf. Thompson v. Weyerhaeuser Co*., 582 F.3d 1125, 1129 (10th Cir. 2009).

As Barrett observes, this Court denied a government request to serve wide-ranging subpoenas. Doc. 269 at 15. The government did not serve any subpoenas and therefore did not violate the order. The decision did not bar the government from providing its expert with the fruits of other investigative tools, and Barrett made no effort to secure such a ruling. Barrett should not succeed in attempting to transmogrify an order denying a request for subpoenas into one that cabined the bases of Dr. Pitt's opinion. *See generally Cooper*, 543 U.S. at 170.

Aware that Dr. Woods had relied on "custodial records" (Doc. 95 Ex. 117 at 5 ¶ 14), the government obtained Barrett's Bureau of Prisons ("BOP") central file by request and transmitted it to Dr. Pitt. Given that Barrett successfully resisted a request for Dr. Woods to provide a complete report of the material he considered (Doc. 259), the defense can hardly complain that the government was left to speculate as to the universe of information its expert might have to rebut. The government had no reason to suspect that the BOP files were unavailable to the

5

defendant, especially given Dr. Woods' elliptical reference to custodial records. In any event, the government provided a copy of the files to Barrett's counsel prior to Dr. Pitt's evaluation, ensuring that the defense was not placed at a disadvantage.

The government likewise heeded the Court's subsequent admonition to obtain mental health evaluations focused on the time of trial. *See* Doc. 288. The Court's dictum regarding the focus of the hearing appeared in an order that granted a defense request for a 2017 reevaluation of Barrett. *Id.* The government could have violated the order only by taking some affirmative step to block Dr. Woods's access to the defendant, and it did not do so. *Cf. Thompson*, 582 F.3d at 1129.

The order permitting a reevaluation necessarily contemplated that experts could and would rely on facts unavailable at the time of trial – the fruits of an interview of Barrett conducted more than a decade after the verdict. Barrett cannot maintain that the order barred an expert from considering post-trial evidence, given that it granted his request to collect precisely such information. By extension, he cannot show that the order limited the pool of evidence available to the government's expert. Regardless of any inference drawn from the order, the government directed its expert to focus on Barrett's mental health at the time of the crime, so it could directly respond to Dr. Woods's opinion. *Compare* Doc. 432 Ex. C; *with* Doc. 95 Ex. 117. The direction to Dr. Pitt was consistent with this Court's focus.

Not only was the Court silent as to the factual bases available to the experts, it made no effort to limit the analytical bases of their opinions. As such, the government did not violate any ruling when it transmitted an expert report that cites the DSM-V, rather than the DSM-IV-TR which was published just prior to trial. The portions of the DSM-V cited by Dr. Pitt concern bipolar disorder, antisocial personality disorder, and post-traumatic stress disorder ("PTSD"). As

Dr. Pitt will explain, with the exception of PTSD, the current edition of the DSM does not substantively alter the criteria for the aforementioned conditions from those set forth in the DSM-IV-TR. Significantly, both editions of the DSM state that evidence of substance use can foreclose a diagnosis of bipolar disorder, and Dr. Pitt will explain that Dr. Woods's failure to heed that limitation undermines the reliability of his opinion. As to PTSD, the DSM-V expands the definition of that condition – a change that presumptively benefits the defendant. Having omitted to show that Dr. Pitt's references to the DSM-V have prejudice him in any way, Barrett's argument concerning diagnostic criteria should likewise fail.

Indeed, Barrett has not shown that the government violated any aspect of any ruling by this Court, and his unsupportable allegations do not provide a basis for the exclusion of Dr. Pitt.

B. The Government, Like the Defense Before it, Can Rely on Post-Trial Information

Barrett claims that Dr. Pitt's opinion is irrelevant and inadmissible because it relies, in part, on information that did not exist, or that the government could not have obtained, at the time of trial. He premises his position on an excerpt of an order denying a continuance, in which the Court noted Barrett's intent to have Dr. Woods perform a new interview. The Court remarked: "The evidentiary hearing herein is not to decide what evidence could be presented about Mr. Barrett's mental health today. Rather, the sole purpose is to determine what evidence could have been presented at the sentencing phase of Petitioner's trial in 2005 and whether Petitioner was prejudiced." Doc. 432 at 4-6 (citing Doc. 248). While the Court's dictum noted a focus on evidence of the defendant's mental health in 2005, it did not purport to limit the factual bases of any expert opinions and does not establish the irrelevance of any retrospective mental health opinion.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the [information]." Fed. R. Evid. 401. The standard applies regardless of whether the evidence is offered under the Rules of Evidence or the Federal Death Penalty Act, 18 U.S.C. § 3593(c) ("FDPA"), like information adduced in a penalty phase trial. *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010).

Barrett cannot rely on dicta from an order denying a continuance to establish relevance. Barrett has never sought to exclude mental health opinions that draw upon post-trial evidence, nor could he plausibly do so, having premised his claim of § 2255 relief on such views. See Doc. 95 Ex. 89 & 117. In fact, Barrett recently secured the Court's permission to have Dr. Woods perform a re-evaluation, permitting the psychiatrist to collect yet more post-trial evidence. Doc. 288. Had this Court, or the Tenth Circuit, barred the experts' reliance on evidence that did not exist at the time of trial, Barrett would have had to have based his claim on interviews and testing done in 2005 or before. But the courts have never required such opinions, and the defense has never previously indicated any intent to provide them. Courts throughout the country have, however, generally demonstrated a willingness to consider retrospective mental health opinions. *See e.g. United States v. Hardy*, 762 F. Supp. 2d 849, 881 (E.D. La. 2010) (acknowledging the need for retrospective diagnoses of mental retardation in death penalty cases); *United States v. West-B*ey, 188 F. Supp. 2d 576, 584-86 (D. Md. 2002) (collecting cases regarding retrospective competency evaluations and holding "The absence of [contemporaneous medical evidence] does not compel a decision that the Court may not conduct a meaningful nunc pro tunc hearing."). Thus, the law does not bar the type of opinion Dr. Pitt will offer, and this Court has said nothing to call its relevance into question.

8

Given that Barrett based his § 2255 motion on retrospective evaluations, the government had little choice other than to respond in kind. The government's expert has reached conclusions that have a tendency to make the existence of Barrett's alleged mental health issues less probable. As such, this Court should admit them as relevant evidence.

C. The Government has not Taken Inconsistent Positions in this Case

Citing the rule of judicial estoppel, Barrett contends the government has taken inconsistent positions in this case. He observes that the government previously argued that the Court should not permit him to present new mental health theories. By extension, he asserts the Court should now bar the government from presenting any mental health opinion testimony premised on new evidence. Doc. 432 at 6-17. While Barrett seeks to bar retrospective opinion testimony, the government has never claimed the existence of such a prohibition. Rather, it successfully argued that the Court should not allow Barrett to present theories that are new to the case, not those based on new information.

Under the doctrine of judicial estoppel courts have discretion to prevent a party that successfully assumed a position in a proceeding from later taking a contrary position, "especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *United States v. Villargrana-Flores*, 467 F.3d 1269, 1278 (10th Cir. 2006) (citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). Courts consider three factors in applying the doctrine:

> First, a party's later position must be clearly inconsistent with its earlier position. Moreover, the position to be estopped must generally be one of fact rather than of law or legal theory. Second, whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.... Third, whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

9

*Id*. at 1278-79 (quoting *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005)). Judicial estoppel  is "a discretionary remedy courts may invoke to prevent improper use of judicial machinery."  *Johnson*, at 1068 (internal quotes omitted).

The government's intent to elicit a retrospective opinion from Dr. Pitt is consistent with the government's earlier positions in this case.  Furthermore, arguments that Barrett has erroneously identified as inconsistent with the government intent to call Dr. Pitt were not persuasive to the Court, nor did they prejudice the defense.

When Barrett moved for an evaluation by a mental health professional who had not previously participated in this case, the government argued that the Court should bar the defense from introducing a novel theory.  Doc. 275 (including the point heading "THE GOVERNMENT OBJECTS TO A MENTAL HEALTH EVALUTION DESIGNED TO INTRODUCE A NEW THEORY INTO THIS CASE").  In its ruling, the Court did not squarely address the government's concern about novel issues, and held "the testing and examination of Petitioner which has occurred over the past fourteen (14) years is more than sufficient to adequately address the issues in the upcoming evidentiary hearing. Therefore, Petitioner's motion is denied." Doc. 276.

Consistent with the aforementioned brief, the government later argued in a motion to exclude witnesses that the Court should bar Barrett from presenting the testimony of experts who were not only unavailable to trial counsel but never previously identified as a basis for collateral relief.  Doc. 289 at 8 (stating "The proposed witnesses will offer testimony about present-day evaluations and opinions that Barrett has never claimed were available to trial counsel or constitutionally necessary for his case").  In keeping with its concern about novel theories, the government argued the Court should not undertake the proceeding as a dress rehearsal for an

10

entirely new penalty phase trial. *Id*. at 9. The government also quoted an earlier statement by the Court regarding the apparent irrelevance of contemporaneous mental health evaluations. *Id*. at 9 (quoting Doc. 279 at 3). The government understood the quote as one of several that focused the parties on the defendant's mental health at the time of trial, but not as a bar on retrospective evaluations. In granting the motion, the Court noted that the Tenth Circuit had already made a "finding regarding the mental health evidence which was available to trial counsel," and excluded the proposed witnesses as cumulative. Doc. 361 at 10-111. The Court did not address the argument regarding the introduction of novel claims.

Thus, the government has never urged any bar on the presentation of retrospective mental health evidence, nor has the Court issued such a ruling on its behalf. Accordingly, Barrett should fail in his effort to assert judicial estoppel. *See Villargrana-Flores*, 467 F.3d at 1278-79.

Even if the Court were inclined to find that the government had successfully implied the existence of a bar on the defense's use of retrospective mental health opinions, it should not exercise its discretion to hold that arguments estop the United States from urging a different rule for itself. In § 2255 proceedings, the petitioner and government occupy fundamentally different positions: "Once the defendant's chance to appeal has been waived or exhausted, ... we are entitled to presume he stands fairly and finally convicted." *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir.1993) (quoting *United States v. Frady*, 456 U.S. 152, 164 (1982)). Accordingly, the law generally restricts the avenues available for collateral relief. *See e.g,* 28 U.S.C. § 2255(f) & (h) (barring belated or successive claims); *Teague v. Lane*, 489 U.S. 288, 310 (1989) (barring reliance on new rules of law); *United States v. Willis*, 202 F.3d 1279, 1280 (10th Cir. 2000) (noting the statutory one-year period of limitations); *Frady*, 456 U.S. at 165 (barring habeas claims omitted on appeal); *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994)

11

(barring previously litigated claims).  But the law does not likewise restrict the government's response.  Section 2255 does not impose time limits on the government's response, and it does not tie the government to any previously-litigated position.   Likewise, the courts treat the *Teague* bar on new rules as "a one-way street."  *Free v. Peters*, 12 F.3d 700, 703 (7th Cir. 1993).

Given the limited non-reciprocal limitations on the litigation of habeas cases, it would not make sense for the Court to limit the type of evidence the government could rely on to rebut Barrett's claim.  In fact, even if § 2255 petitioners were limited to contemporaneous mental health evidence, their claims would frequently place the government in the position of seeking retrospective evaluations.  Absent such latitude, the government would have little ability to rebut previously-undisclosed mental health opinions in § 2255 proceedings.

For all the foregoing reasons, this Court should reject Barrett's appeal for a discretionary invocation of judicial estoppel.

## II.  DR. PITT'S TESTIMONY IS MORE PROBATIVE THAT PREJUDICIAL

Barrett claims that the Court should exclude Dr. Pitt's testimony as more prejudicial than probative.  He argues that Dr. Pitt's testimony is cumulative of an opinion rendered at the time of trial by a government retained neuropsychologist, J. Randall Price.  He also contends that Dr. Pitt's reliance on certain facts will require a hearing about their veracity.  He further asserts that the Court has already announced a bar on retrospective mental health opinions, and he further states that Dr. Pitt's opinion concerns sanity rather than mitigation and therefore fails to inform the issues before the Court.  Doc. 432 at 17-19.  As with Barrett's earlier arguments, this one should fail for lack of factual or legal support.

The Rules of Evidence generally apply to evidentiary hearings under § 2255.  *See* Fed. R. Evid. 801.  Under Rule 403 of the Rules of Evidence, a court must exclude evidence if its

probative value is substantially outweighed by the danger of unfair prejudice. To the extent evidence is offered in a penalty phase trial, the FDPA controls its admission. 18 U.S.C. § 3593(c); *United States v. Lee*, 274 F.3d 485, 494 (8th Cir. 2001). During the penalty phase, a court may exclude evidence only "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." § 3593(c).

Barrett incorrectly argues that Dr. Pitt's testimony is cumulative to that offered by Dr. Price. The two professionals have different specialties, conducted different assessments and reached different conclusions. Dr. Price is a neuropsychologist who conducted a battery of testing on the defendant and determined, among other things, that Barrett was a psychopath. Dr. Price's assessment predated by several years the evaluations presented in support of the § 2255 motion and do not purport to refute them. In contrast, Dr. Pitt is a forensic psychiatrist who conducted an evaluation aimed at determining the reliability of Dr. Woods's diagnoses that Barrett suffered from bipolar disorder, that he suffered from post-traumatic stress disorder, and that his mental illnesses prevented him from understanding the difference between right and wrong. Dr. Pitt premised his conclusions on record review and an in-person interview of Barrett.

While Drs. Pitt and Price offer a harmonious view of the defendant, their testimony is not cumulative. Unlike Dr. Price, Dr. Pitt specifically refutes the findings of Dr. Woods. For his part, Dr. Price offers an alternative mental health explanation for Barrett's conduct that suggests the presentation of defense mental health evidence was fraught with peril.

Barrett also suggests that Dr. Pitt's consideration of facts found in the defendant's prison record will require the Court to afford him an opportunity to rebut the claimed facts, presumably resulting in otherwise unnecessary mini-trials over ancillary facts. Barrett, however, fails to cite any authority concerning his right of rebuttal in § 2255 evidentiary hearings. *See* Doc. 432 at 18

13

(citing, inter alia *Gardner v. Florida*, 430 U.S. 349, 362 (1977) and *Skipper v. South Carolina*, 476 U.S. 1, 5 (1986)).  The upcoming hearing concerns only Barrett's right to collateral relief, not the presentation of aggravating and mitigating factors to a jury and does not implicate the right of rebuttal cited by the defense.  *See generally LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998) (committing the scope of a § 2254 evidentiary hearing to the discretion of the court).  Moreover, Barrett has not shown that Dr. Pitt's opinion necessarily relies on the facts he would seek to rebut.  As such, Barrett has failed to demonstrate any right of factual rebuttal that should concern this Court.

To the extent Barrett argues that this Court has already announced a prohibition on retrospective mental health opinions that would bar Dr. Pitt's testimony, that contention fares no better under Rule 403 or the FDPA than it does on its own.  For the reasons argued in the first section of this brief, that contention should fail here.  *See, supra*, Arg. I.

Finally, Barrett unpersuasively argues that Dr. Pitt mistakenly focused his evaluation to a question of criminal insanity.  The government directed Dr. Pitt to determine Barrett's capacity to understand right and wrong because Dr. Woods had opined on precisely that subject matter.  *See* Doc. 95 Ex. 117.  The probity of Dr. Pitt's opinion is not undermined by the fact that speaks to criminal sanity, as it squarely refutes the opinion Barrett offered on his own behalf.  In any event, Dr. Pitt does not merely comment on Barrett's ability to perceive right and wrong.  He explains the errors in Dr. Woods's evaluation and a basis for rejecting the defense expert's unsound opinion.

Accordingly, Barrett has failed to identify any legal or factual basis for this Court to exclude Dr. Pitt's testimony as unduly prejudicial.

14

## CONCLUSION

Based on the foregoing reasoning and authority, the government respectfully urges this

Court to deny Barrett's motion to exclude Dr. Pitt's testimony.

Dated: May 19, 2017,

Respectfully submitted,

DOUGLAS A. HORN
Acting United States Attorney

CHRISTOPHER J. WILSON
Assistant United States Attorney
1200 West Okmulgee
Muskogee, OK  74401
Telephone: (918) 684-5100
FAX: (918) 684-5150
chris.wilson@usdoj.gov


*/S. Jeffrey B. Kahan*
JEFFREY B. KAHAN
Trial Attorney, Capital Case Unit
U.S. Dept. of Justice
1331 F Street, NW; Rm. 656
Washington, DC 20530
Telephone: (202) 305-8910
FAX:  (202) 353-9779
Jeffrey.kahan@usdoj.gov

## CERTIFICATE OF ECF FILING AND DELIVERY

I, hereby certify that on May 19, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. A Notice of Electronic Filing will be sent via the Court's ECF system to the following counsel of record for the Petitioner/Appellant:

Mr. David B. Autry dbautry44@hotmail.com
Ms. Joan M. Fisher Joan_Fisher@fd.org
Mr. Tivon Schardl Tim_Schardl@fd.org

/S/ *Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Section