DAVID AUTRY, OBA No. 11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
Telephone:    (405) 521-9600
Facsimile:    (405) 521-9669
E-mail:        dbautry77@gmail.com

HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
JOAN M. FISHER, ID Bar #2854
Assistant Federal Defender
TIVON SCHARDL, FL Bar #73016
Trial & Habeas Attorney
801 I Street, 3rd Floor
Sacramento, CA 95814
Telephone:    (916) 498-6666
Facsimile:    (916) 498-6656
E-mail:        Joan_Fisher@fd.org

Attorneys for Petitioner,
KENNETH EUGENE BARRETT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH EUGENE BARRETT, | |
| Petitioner, | CASE NO. CV-09-00105-JHP |
| vs. | **PETITIONER'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION TO CALL ADDITIONAL REBUTTAL WITNESSES** |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

Petitioner Kenneth Eugene Barrett, by and through undersigned counsel, makes the

following Response to the Government's Motion to Call Additional Rebuttal Wtnesses. The

Government's Motion is Doc. 455, filed June 16, 2017. Pursuant to this Court's order issued the

same day as the government's filing, this Response is timely.

The government's motion asks the Court to approve sandbagging the defense by identifying two expert witnesses six months after the date established by the scheduling order for identifying witnesses, and providing an expert report more than three months after the date specified in the scheduling order. The first witness is Jorge Herrera who the government claims is a neuropsychologist, but about whom the government has provided no information. Mot. (Doc. 455) at 2. The second witness is Dr. Faust Bianco, a psychologist whose connection to this case has been a matter of record since 2009 when Dr. Myla Young mentioned his testing in her declaration.

For the following reasons, the government's excuses for failing to identify these witnesses by the date specified in the scheduling order do not stand up to scrutiny and fall far short of constituting a substantial justification for failing to comply with that order. Given the short time that Mr. Barrett's counsel have to prepare to present Dr. Deborah Miora's testimony, time reduced by the need to respond to the government's groundless Motion and this Court's Minute Order, Mr. Barrett will have no opportunity to examine Dr. Herrera's report and otherwise prepare to cross-examine him. In sum, the government has been dilatory, it is seeking rescue from its own strategic decisions that were intended to give the government an unfair advantage, and were the Court to allow the late designation of two experts, it would result in actual prejudice to the defense and unnecessarily prolong these proceedings. The Motion should be denied.

**RELEVANT PROCEDURAL HISTORY**

The government's description of the relevant procedural history omits much and by those omissions presents a false narrative that is at the heart of the Motion.

On March 16, 2009, Mr. Barrett served on the government the claim now being heard by the Magistrate Judge. Mr. Barrett supported the claim with the declaration of neuropsychologist, Dr. Myla Young. Dr. Young's declaration contained a detailed description of the neuropsychological testing she did of Mr. Barrett in 2009, and the results of those tests. Young Decl. ¶¶ 26-66. Dr. Young also mentioned that she reviewed the testing Dr. Bianco did in 2000. Young Decl. ¶ 20.

The government's narrative elides the fact that Dr. Young's 2009 declaration put the government on notice that Mr. Barrett's claim was supported by neuropsychological test data and that Dr. Bianco had done neuropsychological testing in 2000.

On August 19, 2015, the Court of Appeals for the Tenth Circuit held that Mr. Barrett was entitled to an evidentiary hearing on the allegations supported by Dr. Young's testing. *United States v. Barrett*, 797 F.3d 1207, 1232 (10th Cir. 2015), *cert. denied*, ___ U.S. ___, 137 S. Ct. 36 (2016). On the issue of prejudice, the Tenth Circuit found, "Most important are the findings relating to Defendant's judgment," and first and foremost among them were the findings of Dr. Young. *Barrett*, 797 F.3d at 1230. That decision put the government on notice it would need to prepare to address Dr. Young's neuropsychological testing at the evidentiary hearing.

According to the testimony of Dr. Steven Pitt, in December 2015, the government contacted Dr. Pitt about being a witness at the evidentiary hearing. That testimony shows the government was preparing to meet Mr. Barrett's case expert-by-expert. Mr. Barrett was relying upon a psychiatrist, so the government retained a psychiatrist. Dr. Price, a neuropsychologist, had already evaluated Mr. Barrett.

On November 7, 2016, this Court issued a scheduling order directing the parties to identify and provide contact information for all evidentiary hearing witnesses no later than

December 8, 2016, Order (Doc. 246) at 2, although that date was later extended to December 13, 2016. The Court's order directed the parties to file by January 17, 2017, a statement of disputed or contested issues of fact, and to identify all witnesses and describe their expected testimony. *Id.* at 2-3. Those Orders put the government on notice that if it intended to contest the reliability of Dr. Young's test results, it needed to identify its witnesses and prepare them. If the government intended to present Dr. Bianco as an expert, the government had a date certain for naming him.

On November 18, 2016, the government timely filed several discovery motions. Docs. 250, 251, 252, 253, 254, 255, 256. Although one of those motions sought leave to conduct civil Rule 26 discovery of Mr. Barrett's experts, including depositions, the government did not specifically move for the production of Dr. Young's raw data to a neuropsychologist retained by the government. Govt. Mot. Disc. (Doc. 251). The discovery motion shows the government was aware by November 18, 2016, that Dr. Young had died and that the defense would replace her with another neuropsychologist. Govt. Mot. Disc. (Doc. 251) at 3.

In a statement of need that highlights the prejudice to Mr. Barrett of granting the instant Motion, the government insisted it needed to know the bases for Mr. Barrett's experts' opinions "and the credentials and experience" of the experts in order to meaningfully respond. *Ibid.* Four more of the government's motions sought discovery of evidence related to Mr. Barrett's mental health allegations. Docs. 252-256. These filings show the government was acutely aware of the need to prepare for a trial of Mr. Barrett's mental impairments.

The government did not move for a neuropsychological evaluation of Mr. Barrett. In its motion for an order requiring Mr. Barrett to submit to an evaluation by Dr. Pitt, a psychiatrist, the government wrote, "To date, the government has only had the opportunity to obtain a neuropsychological evaluation of the defendant." Gov. Mot. Psych. Eval. (Doc. 253) at 2. That

statement is important for at least two reasons. First, it shows the government was aware of what testing Dr. Price did before his report was released. The portion of Dr. Price's report that was made public in 2005 said only that he found Mr. Barrett was a "psychopath." "Psychopathy," to the extent it exists, is considered to be a personality trait; i.e. it is not a neuropsychological condition or diagnosis. Therefore, the government knew that Dr. Price had performed neuropsychological tests, and at least one personality test, and it likely knew that he administered three personality tests.[1] Therefore, the government's claim that Dr. Price "only" conducted a neuropsychological evaluation was false and misleading and the government had the information to know its statement was false and misleading at the time it made the statement.

Second, the government signaled to Mr. Barrett's counsel and this Court that it would rely on Dr. Price as a neuropsychologist, a different different type of expert than the psychological risk-assessor that the Tenth Circuit anticipated. *Barrett*, 797 F.3d at 1232. Although the government moved to have documents relied upon by Dr. Young unsealed and provided to Dr. Pitt, Govt. Mot. Unseal Docs. (Doc. 257) at 4, the government did not seek to have Dr. Price receive those documents.

On December 6, 2016, this Court issued a lengthy discovery order. Of particular relevance, this Court denied both parties' request to receive all of Dr. Price's test data in advance of the hearing. This Court held, "If Dr. Price is ultimately called at the evidentiary hearing

---

[1] The government has asserted that it did not have any substantive conversations with Dr. Price until December 2016. Resp. Mot. Exclude Price (Doc. 436) at 5. This Court's order authorizing Dr. Price's evaluation provided that the firewalled assistant United States Attorney was to provide defense counsel a list of the tests Dr. Price intended to administer. A letter from Dr. Price listing his proposed testing was in defense counsel's files. It may also have been provided to the local United States Attorney's office arguably without violating the spirit of the Court's order. Alternatively, the government's lawyers may have anticipated that the Court would release Dr. Price's report and telephoned him and asked him what tests he administered. In whatever way the government learned, the government knew by November that Dr. Price had performed neuropsychological tests despite that information being out of the public record.

herein, he will be required to provide any notes made during his evaluation and testing of the defendant to defense counsel *at the time of his testimony*." Order (Doc. 269) at 17 (emphasis added). Assuming the government had no greater right to notes and test data than Mr. Barrett, this Order establishes that the government had no right to receive Dr. Young's raw test data, or Dr. Miora's scoring of it, until Dr. Miora testified.

Also on December 6, 2016, this Court issued a scheduling order providing that motions in limine and motions raising *Daubert* issues were due no later than February 1, 2017. Order (Doc. 270) at 1. That Order put the government on notice that it had to identify its mental health experts and their opinions in order for Mr. Barrett to have a fair opportunity to file any motions related to them.

On December 13, 2016, the government stated that it intended to present two mental health experts, namely Dr. Pitt and Dr. Price. Mot. Cont. Hr'g (Doc. 273) at 1.

On January 3, 2017, Mr. Barrett filed and served written notice that he would present two neuropsychologists, Dr. Erin Bigler and Dr. Deborah Miora. Doc. 280. This filing put the government on notice of how Mr. Barrett would present Dr. Young's testing and her findings, and that he would rely on additional neuropsychological testimony if the government attempted to rely on Dr. Bianco's 2000 testing. These notices show that a party seeking to be diligent and comply with this Court's scheduling orders could have anticipated the opposing party's case, identified experts to meet that case, and given timely notice in order to give the other party a fair opportunity to prepare, and to ensure an orderly and efficient hearing process.

On January 30, 2017, the government moved to exclude any and all testimony from Mr. Barrett's neuropsychological experts. Mot. Exclude Wits. (Doc. 289) at 1, 8-10. This motion, in conjunction with the previously mentioned filings, shows the government made the strategic

decision not to try to confront Mr. Barrett's evidence of neuropsychological impairment head-on (so to speak), but to obtain the double strategic advantage of excluding that evidence while presenting its own neuropsychologist, Dr. Price. The government also "urge[d] the Court to order Barrett to provide an offer of proof, so that [the government could] determine the relevance and timeliness of testimony from proposed witness[] . . . Faust Bianco." *Id.* at 1. The government asserted that Dr. Bianco, its purative new expert, had "no apparent connection to Barrett's claim of ineffectiveness, as the defendant did not identify [him] in support of the contention." *Id.* at 11.

On February 16, 2017, the parties filed a joint statement in which Mr. Barrett repeated his intention to present neuropsychological testimony and the government stuck to its two experts, Dr. Pitt and Dr. Price. Doc. 340.

On February 23, 2017, the government filed a motion for partial summary judgment based, in part, on an affidavit executed by Dr. Bianco, Mot. Summ. Jdmt. (Doc. 347), Ex. 5, and in part on a memorandum discussing Dr. Bianco's work, Mot. Summ. Jdmt. (Doc. 347), Ex. 7.

On February 24, 2017, this Court granted the government's motion to exclude any neuropsychological testimony. Order (Doc. 361) at 10-11. The Court held that the motion for an offer of proof related to Dr. Bianco was moot because Mr. Barrett did not intend to offer any testimony from him. *Id.* at 9-10. The Court also directed the parties to amend their pre-hearing statements. *Id.* at 14. The government did not amend by adding Dr. Bianco as a witness.

On March 3, 2017, the date set for Mr. Barrett to provide expert witness disclosures, Mr. Barrett filed lengthy proffers for Dr. Miora and Dr. Bigler. Dr. Miora's proffer included her scoring of Dr. Young's raw test data. As noted in the government's pending Motion, these experts discussed Dr. Bianco's 2000 testing. However, these proffers were made (a) after the Court barred the witnesses' testimony so that Mr. Barrett had to proffer any evidence the

witnesses might offer, and (b) before the testimony of trial counsel on the issue of deficient performance so that Mr. Barrett had to anticipate any evidence the government might offer.

On March 29, 2017, trial counsel Bret Smith testified that he did not play an active role in planning the investigation of the penalty phase defense and he was not familiar with the testing or opinion of Dr. Bianco. On March 30, 2017, lead trial counsel Roger Hilfiger testified, and his testimony also indicated that Dr. Bianco's opinions, if he was aware of them, played no role in his decisions about what penalty phase evidence to investigate and what not to investigate.

On May 9, 2017, Mr. Barrett moved to exclude Dr. Price's testimony on grounds that the government had not complied with Fed. R. Crim. P. 16(c) by supplementing Dr. Price's 2005 report with any opinions he might have to rebut the opinions of Dr. Woods or Dr. Young. Doc. 425. On May 12, 2017, the government responded, telling this Court that "Dr. Price rule[d] out brain damage with a screening test." Resp. Mot. Exclude Price (Doc. 436) at 5. As Dr. Price's report and testimony show, he did not and could not "rule out" brain damage in Mr. Barrett because he did not even test major areas of brain function tested by Dr. Young.

On June 8, 2017, the government emailed Dr. Price's raw data to Mr. Barrett's counsel.

On June 12, 2017, the government called Dr. Price as a witness. Mr. Barrett objected to Dr. Price testifying as a neuropsychologist in rebuttal in part on grounds that Mr. Barrett had been barred from presenting a neuropsychologist in his case in chief. Magistrate Judge Shreder overruled the objection and Dr. Price testified as a neuropsychologist about the findings he made based on a neuropsychological screening battery he administered to Mr. Barrett in October 2005. However, the Magistrate Judge also indicated the Court was considering allowing the testimony of Mr. Barrett's neuropsychologist, Dr. Miora.

During his time on the stand, the government asked Dr. Price about Mr. Barrett's condition in what neuropsychologists call executive functioning, an important area of organic impairment identified by Dr. Young. As noted *supra*, Mr. Barrett had previously filed a motion seeking to exclude testimony from Dr. Price on the areas covered by Dr. Young's declaration on grounds that the government had not supplemented Dr. Price's report as required by Fed. R. Crim. P. 16(c). Mot. Exclude Price (Doc. 425). The government's response to that motion indicated the government had not asked Dr. Price to form any opinions about Dr. Young's findings. Resp. Mot. Exclude Price (Doc. 436) at 5. At the evidentiary hearing, Mr. Barrett objected to the question about executive functioning on grounds that Dr. Price's report indicated he conducted no tests of executive functioning and formed no opinions in that area. Magistrate Judge Shreder verified that Dr. Price's report contained no mention of executive functioning, and sustained Mr. Barrett's objection. These events add to the body of evidence that the government's strategy for dealing with Mr. Barrett's neuropsychological evidence has been to seek unfair tactical advantages rather than allow a timely, orderly, full and fair adversarial testing of the evidence.

On June 13, 2017, the Magistrate Judge agreed to hear Dr. Miora's testimony on June 26, 2017. At that point, the government announced in open court its intention to retain another neuropsychologist to evaluate Mr. Barrett and testify in rebuttal to Dr. Miora. Also on June 13, 2017, counsel for Mr. Barrett provided the government a paper copy of Dr. Young's raw test data. On June 15, 2017, Mr. Barrett's counsel provided counsel for the government Dr. Young's raw data in electronic form. That is far more advance notice than Mr. Barrett was allowed for Dr. Price's test data. As the record shows, Mr. Barrett identified experts who could evaluate and testify about Dr. Prices testing procedures and testing far in advance of the hearing. The

government now seeks to parlay that windfall into a further unfair advantage by designating Dr. Herrera as a new witness.

This Response follows.

## REASONS THE MOTION SHOULD BE DENIED

### A.  Mr. Barrett Has Not Had a Fair Opportunity to Respond

The government's Motion, filed Friday, June 16, 2017, was not accompanied by a request to shorten time for a response. This Court's minute order directing this Response be filed by noon, Central Time, on the following Monday issued within a few hours of the Motion being filed. Accordingly, Mr. Barrett had no notice or an opportunity to be heard regarding the timing of this Response. Obviously, the time includes at most one business day, although it also includes a holiday weekend (Fathers Day). During that time, Mr. Barrett's lead counsel was preparing for a trial. Co-counsel Joan Fisher was returning from New York after serving as faculty at a continuing legal education seminar. Assistant Federal Defender Karl Saddlemire was out of the office for a previously planned weekend. Co-counsel Tivon Schardl was responsible for arranging for Dr. Miora's contract and travel and supposed to be working with Dr. Miora to prepare to present Dr. Young's testing. Decl. Tivon Schardl.

The foregoing procedural history shows the government had since 2015 to identify an expert who could review Dr. Young's testing and be prepared to testify about her findings. Dr. Bianco has been known to the government since 2009. The government knew as early as Tuesday that it wanted to call another neuropsychologist. Since the government's Motion provides no information about Dr. Herrera, and indeed, counsel for the government called defense counsel about the motion before Dr. Herrera had been identified, the government could

have filed its motion earlier and named the expert later. This Court's Order rewards the government for its delay and correspondingly disadvantages Mr. Barrett.

Due to the inadequate time to respond, and there being no notice or opportunity to be heard regarding whether the weekend would provide an adequate time, Mr. Barrett cannot be deemed to have forfeited or waived any objections to the naming or calling of Dr. Herrera or Dr. Bianco by the government.

**B.  The Government Has Not Justified its Failure to Comply with Scheduling Orders**

The government's Motion seeks relief from this Court's scheduling orders, and reconsideration of this Court's discovery order. First, the government seeks leave to designate two neuropsychologists as new expert witnesses on June 16, 2017, although this Court ordered the parties to identify their witnesses no later than December 13, 2016. One of those witnesses, Faust Bianco, has been known to the government since 2009. The government has been aware since 2005 that another neuropsychologist, Randall Price, evaluated Mr. Barrett, and the government presented his testimony as a neuropsychologist on June 12, 2017. The government has offered no justification for failing to have Dr. Price conduct the review that it now seeks from Dr. Herrera. Second, the government seeks to present an expert report one business day before the expert's testimony rather than the ten-days' notice contemplated in the scheduling order.

The government claims that "Dr. Price could not speak to Dr. Young's subsequent testing of the defendant, because neither he nor the government had access to her data." Mot. (Doc. 455) at 3. This claim does not bear scrutiny and Mr. Barrett objects to this Court crediting the government's claim without any supporting evidence and a hearing on that evidence. The

government has failed to provide a declaration or other statement from Dr. Price to support the claim that there was nothing he could do to prepare to rebut Dr. Young's findings without her raw data. On at least two previous occasions, cited *supra*, the government misrepresented to this Court the nature of Dr. Price's work on the case or what his testimony would be, first claiming that he only did a neuropsychological evaluation, then claiming he would testify that he ruled out brain damage.

Even on its face, the government's claim does not hold up to scrutiny. Dr. Young's declaration provides a detailed description of the tests she performed, the scores she assigned, and the significance that she gave those scores. On March 3, 2017, Mr. Barrett filed a proffer of Dr. Miora's testimony that included her scoring of Dr. Young's raw data. Doc. 376-1. This Court lifted the firewall between the case prosecutors and Dr. Price on December 6, 2016. The government could have provided Dr. Young's report to Dr. Price at anytime after that. The government's failed attempt to have Dr. Price testify about executive functioning shows the government planned to have him testify in rebuttal to Dr. Young's findings without Dr. Young's raw data and without providing Mr. Barrett's counsel notice of his opinions.

Of course, the government could have looked at the Tenth Circuit's finding that Dr. Young's conclusions were "[m]ost important," and tried to cross-examine Dr. Miora about how Dr. Young reached her conclusions. (Mr. Barrett was already at a potential minor disadvantage due to the tragic and untimely death of the neuropsychologist who administered the tests.) If this Court provided the government the same access to raw data that it provided the defense, the government would have been able to see Dr. Young's raw data at the time Dr. Miora testified. The government could have had Dr. Price in court for that purpose, and then Dr. Price could have testified to any anomalies he claimed to find in the data. But the government did not want a

fair fight, so it moved to exclude that most important evidence. This Court granted that motion. Then the government presented neuropsychological rebuttal to neuropsychological evidence that had been excluded. Magistrate Judge Shreder's ruling allowing Dr. Miora to testify merely seeks to reset the balance. Thus, if the government finds itself in an awkward position now, it is only reaping the fruits of the unfair advantages it sought earlier and that this Court granted.

In at least two ways the record fails to support the government's claim that Dr. Price could not prepare. If Dr. Price had been asked to prepare to rebut Dr. Young but he was stymied by the lack of raw data, (a) the government would have filed a discovery motion asking that the data be turned over to him, and (b) the government would not have tried to ask Dr. Price about executive functioning when he testified. The government cannot credibly claim that it did not file a discovery motion because by the time it could contact Dr. Price, the time for discovery motions had past. If Dr. Price had told the government in December or January that he needed the data, the government would have had obvious, compelling grounds to seek relief from the scheduling order, namely, the lifting of the protective order. But that would have put Mr. Barrett on notice that Dr. Price was forming new opinions that the government would have been required to disclose under Fed. R. Crim. P. 16(c). As evidenced by the government's response to Mr. Barrett's motion to exclude Dr. Price for failing to comply with Rule 16(c), and the attempt to elicit unreported opinions from him at the hearing, the government had strategic reasons for not seeking the data.

The government's motion suggests that the content of Dr. Young's data, not its existence, triggered its duty to prepare for rebuttal. Mot. (Doc. 455) at 5 ("The government could not have fairly been expected to rebut Dr. Miora's opinion without the data that undermines it.") If the government's claim is true, it proves too much. The government knew in 2009 that Dr. Young

had raw data. It knew in October 2015, that there would be a hearing at which it would have to decide whether and how to rebut Dr. Young's findings. Thus, if the raw data were necessary for the government to prepare rebuttal, the government knew at the time it filed its discovery motions in November 2016 that it needed to get the data. Yet, it filed no such motion. If the government wanted an expert other than Dr. Price to review the raw data and opine on it, the government knew at least as early as December 2015, when the government contacted Dr. Pitt, that it needed to identify an expert.

As set forth *supra*, this Court did not allow Mr. Barrett's counsel to see Dr. Price's raw data until he testified. Yet Mr. Barrett's counsel were expected to prepare to meet his testimony. In the event, the government's counsel provided Dr. Price's raw data four (4) days before he testified. The government previously told this Court it would rebut Dr. Young's findings with testimony from Dr. Price that he "rule[d] out brain damage" with a limited neuropsychological screening battery. Mr. Barrett's counsel provided Dr. Young's raw data thirteen (13) days before Dr. Miora's scheduled testimony. Thus, the government's claim that it is being treated unfairly has no basis in fact, reason or law.

As to Dr. Bianco, the government claims he should testify because Dr. Miora was critical of his evaluation in her declaration. As shown in the procedural history *supra*, Dr. Miora's proffer declaration was prepared at a time when the government was claiming (without a factual basis) in its summary judgment motion that trial counsel justifiably relied upon Dr. Bianco to forego neuropsychological testing. Now that trial counsel have testified and there is no factual basis for the government's claim, it may be unnecessary for Dr. Miora to discuss Dr. Bianco at all. His work simply is not relevant to the issues that are yet to be resolved.

The government has known about Dr. Bianco's prior work since 2009, when Dr. Young mentioned him in her declaration. The government has known the details of his work since January 2017, when it obtained the relevant portions of trial counsel's files. If the government had any intention of trying to comply with the scheduling orders or to act fairly and not sandbag the defense, it would have attempted to identify him as a witness many months ago. The government's claim "that Dr. Bianco's testing . . . will provide the most relevant window into the defendant's neurological health," is unsupported, false, and very late.[2] There is no evidence that Mr. Barrett suffered any injury or disease that would have made his neuropsychological functioning different in 2000 than it was in 2005 when Dr. Price did his testing,[3] or in 2009. If it were true, and the government had a good faith basis for the claim, the government had every reason to designate Dr. Bianco as a witness months ago, and/or to give his testing to Dr. Price. As previously noted, the government relied upon Dr. Bianco's 2002 declaration in support of the motion for partial summary judgment it filed in February. There is no justification for the government naming him as a witness months later and only after the failure of its effort to obtain an unfair advantage.

This Court has repeatedly said that the hearing should give the government an opportunity to call rebuttal experts who could have been called at the time of trial. Dr. Bianco would not have been known to or available to the government at the time of trial. He served as a

---

[2] This Court may recall that in response to Mr. Barrett's motion to exclude Dr. Pitt on grounds that he relied on post-judgment information, the government maintained that a retrospective evaluation was not a problem.

[3] As previously noted, Dr. Price did not test Mr. Barrett's executive functioning. Given the importance of executive judgment in any homicide case, and especially one in which the defendant was required to react to an assault on his property and child in the middle of the night, and where the evidence created a disputed issue about when he might have become aware that the attackers were law enforcement officers, Dr. Price's decision not to test Mr. Barrett's executive functioning could have been strategic.

confidential consultant to the Oklahoma Indigent Defense System prior to the first state trial.

Memoranda submitted with the government's motion for partial summary judgment show people

at OIDS had trouble figuring out what Dr. Bianco had done and, for that reason, they were

reluctant to place much stock in his opinions. Mr. Barrett's federal trial counsel either did not

know about Dr. Bianco's opinions or did not rely upon them. The government's § 2255 counsel

only learned about Dr. Bianco because this Court gave them access to all the accumulated files

of prior defense counsel. Thus, there is no way the government could have identified Dr. Bianco

as a witness at the time of trial.

In these post-conviction proceedings, Mr.Barrett's § 2255 counsel retained Dr. Bianco as

a consultant with the stipulation that all communications between him and counsel would be

covered by the attorney-client privilege or work-product protection. Schardl Decl. As this Court

previously found, Mr. Barrett dropped any idea about calling Dr. Bianco to testify. Accordingly,

any information Dr. Bianco obtained in these federal proceedings is covered by a claim of

privilege which Mr. Barrett and his counsel hereby assert. [4]

Rule 16(f) of the Federal Rules of Civil Procedure presumes that sanctions will be

imposed when a party fails to comply with a scheduling order unless the party "substantially

justifie[s]" its noncompliance. The government moves to be rewarded for failing to comply with

this Court's scheduling orders while offering no credible, much less substantial, justification for

noncompliance. In order to comply with the spirit of Rule 16(f), the government, at a minimum,

the government must "substantially justif[y]" its failure to comply with the scheduling

orders. For the reasons stated *supra*, it has not done so. The government's attempt to disrupt the

---

[4] Upon receipt of information that the government intended to call Dr. Bianco, the undersigned counsel, Tivon Schardl, notified the government of the possible privilege issue and his intent to research that issue further.  Given the time constraints in filing this Response and supporting declaration, the research has not yet been completed and the issue remains unresolved.

hearing with the six-months-late designation of new experts should be subject to sanctions, not reward.

### C.  Mr. Barrett will Be Prejudiced if the Motion is Granted

Due to the untimely death of Dr. Young, presenting her testing and findings will require more work than would ordinarily be required. Due to the unfair exclusion of neuropsychological testimony earlier in the case, Mr. Barrett's counsel and Dr. Miora have been forced to scramble to prepare her testimony on June 26, 2017. Due to the government's untimely and groundless Motion and the unfair shortening of time for this Response, Mr. Barrett's counsel has less time to prepare.

As the government stated in one of its discovery motions, without knowing an expert's background or qualifications, a party cannot adequately prepare for cross-examination. The government has provided no information about Dr. Herrera such as his qualifications, his prior testimony, what materials he will review, what his opinions are, etc. The government proposes to provide his report on the Friday before the Monday of Dr. Miora's and Dr. Herrera's testimony. Surely, the government knows that Mr. Barrett's counsel will have to spend one of those days traveling.

If there are grounds to challenge Dr. Herrera under *Daubert*/Rule 703, or to impeach him, they cannot be ascertained prior to his proposed testimony.

### CONCLUSION

For the foregoing reasons, the government's Motion should be denied.

DATED:        June 19, 2017

                                        RESPECTFULLY SUBMITTED,

                                        /s/ *David Autry*
                                        DAVID AUTRY

                                        HEATHER E. WILLIAMS
                                        Federal Defender

                                        /s/ *Joan M. Fisher*
                                        JOAN M. FISHER
                                        Assistant Federal Defender

                                        /s/ *Tivon Schardl*
                                        TIVON SCHARDL
                                        Trial & Habeas Counsel

                                        Attorneys for Petitioner,
                                        KENNETH EUGENE BARRETT

**CERTIFICATE OF ELECTRONIC SERVICE AND DELIVERY**

This is to certify that on this 19th day of June 2017, I caused the foregoing Petitioner's Response in Opposition to the Government's Motion to Identify New Witnesses to be filed with the Clerk of the Court using the ECF System for filing, with service via CM/ECF to be made to Christopher J. Wilson, AUSA, Jeffrey B. Kahan, U.S. Department of Justice, and to all counsel of record.  To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.

/s/ *Tivon Schardl*
TIVON SCHARDL