**DAVID AUTRY**, OBA No. 11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
Telephone:     (405) 521-9600
Facsimile:     (405) 521-9669
E-mail:        dbautry77@gmail.com

HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
**JOAN M. FISHER,** ID Bar #2854
Assistant Federal Defender
**KARL J. SADDLEMIRE**, State Bar #275856
Assistant Federal Defender
**CARRIE L. WARD,** MO Bar #57581
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA 95814
Telephone:     (916) 498-6666
Facsimile:     (916) 498-6656
E-mail:        Joan_Fisher@fd.org
               Karl_Saddlemire@fd.org

Attorneys for Petitioner/Defendant,

KENNETH EUGENE BARRETT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH EUGENE BARRETT,<br><br>        Petitioner/Defendant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent/Respondent. | CASE NO. CV-09-00105-JHP<br><br>**PETITIONER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................... 1

II. THE GOVERNMENT'S OBJECTIONS ARE FATALLY FLAWED, UNSUPPORTED BY
    THE FACTUAL RECORD AND THE LAW.  THIS COURT SHOULD OVERRULE THE
    GOVERNMENT'S OBJECTIONS AND ADOPT THE  MAGISTRATE'S REPORT AND
    RECOMMENDATION IN FULL SUBJECT ONLY TO ITS SCOPE AS LAID OUT IN
    PETITIONER'S OBJECTIONS. ........................................................................... 3

    A.  The Government's Objections Are Too Broad For Review. ............................... 3

    B.  The Magistrate's Report and Recommendation is Wholly Consistent with Constitutional
        and Relevant Legal Standards. .................................................................... 3

    C.  Contrary to the Government's Objections and Argument, Judge Shreder Made Findings of
        Credibility of Both Mr. Barrett's and the Government's Experts That Amply Support the
        Finding of Prejudice. ................................................................................... 4

    D.  Respondent's Imposition of a Nexus Requirement Contravenes Clearly Established
        Federal Law, and Grossly Misinterprets Tenth Circuit Precedent on "Connecting the
        Dots" between Brain Damage and Petitioner's Behavior. Omitted Evidence of Petitioner's
        Brain Damage, and Its Attendant Effects Is Inherently Mitigating, and Explains
        Petitioner's Behavior Under Governing Law.  As Judge Shreder Concluded, Petitioner
        Was Prejudiced by Trial Counsels' Deficient Performance. ............................. 10

    E.  Respondent's Central Claim that Barrett's Behavior Was "Better Explained" by
        "Recreational Drug Use" is Baseless, as this Assertion was First Rejected by the Jury at
        Trial, Again Rejected by the Tenth Circuit on Remand, and Rejected by Judge Shreder
        after considering all of the evidence on the issue. ......................................... 16

    F.  Where, as Here, the Magistrate Judge's Findings of Fact and Conclusions of Law are Both
        Amply Supported by the Evidence Adduced at the Hearing and Consistent with the Tenth
        Circuit Remand, this Court Cannot Grant the Government's Objections Without Violating
        the Tenth Circuit's Order on Remand and Denying Mr. Barrett's Right to Due Process
        under the Fifth and Eighth Amendment's to the United States Constitution. ................... 21

III. CONCLUSION ..................................................................................................... 22

**TABLE OF AUTHORITIES**

**Federal Cases**

*Amlong v. Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230 (11th Cir. 2007) ........................... 22-23

*Anderson v. Sirmons*, 476 F.3d 1131 (10th Cir. 2007) ................................................. 14

*Byrd v. Workman*, 645 F.3d ............................................................................. 4

*Cannon v. Gibson*, 259 F.3d 1253 (10th Cir. 2001) ................................................. 13, 16

*Caro v. Woodford*, 280 F.3d 1247 (9th Cir. 2002) ................................................... 11

*Elzour v. Ashcroft*, 378 F.3d 1143 (10th Cir. 2004) ............................................. 4, 5, 7

*Frazier v. Huffman*, 343 F.3d 780 (6th Cir.2003) .................................................. 11

*Frierson v. Woodford*, 463 F.3d 982 (9th Cir. 2006) .............................................. 11

*Grant v. Trammell*, 727 F.3d 1006 .............................................................. 4, 8, 9

*Hooks v. Workman*, 689 F.3d 1148 ......................................................... 4, 12, 14, 15

*Orpiano v. Johnson*, 687 F.2d 44 (4th Cir. 1982) ................................................... 3

*Porter v. McCollum*, 558 U.S. 30 (2009) ........................................................... 4

*Proffitt*, supra, 685 F. 2d ......................................................................... 22

*Rompilla v. Beard*, 545 U.S. 374 (2005) ................................................. 4, 10-11, 12, 13

*Sears v. Upton*, 561 U.S. 945 (2010) ........................................................ *passim*

*Smith v. Mullin*, 279 F.3d 91 .................................................................... 4, 15

*Smith v. Texas*, 543 U.S. 37 (2004) (per curiam) .................................................. 10

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................................... 2, 4

*Tennard v. Dretke*, 542 U.S. 274 (2004) .................................................. 10, 12-13, 13

*United States v. Barrett*, 797 F.3d 1207 (10th Cir. 2015) .................................... *passim*

*United States v. One Parcel Real Prop.*, 797 F.3d 1057 (10th Cir. 1996) ........................... 3

*United States v. Quaintance*, 608 F.3d 717 (10th Cir. 2010) ...................................... 7-8

*Wessel v. City of Albuquerque*, 463 F.3d 1138 (10th Cir. 2006) ................................... 7

*Wiggins v. Smith*, 539 U.S. 510 (2007) ..................................................... 4, 12, 13

*Williams v. Taylor*, 529 U.S. 362 (2000) ...................................................... *passim*

*Williams, supra, Hooks v. Mullin*, 379 F.3d 919 .......................................... 4, 14, 15, 17

*Wilson v. Trammell*, 706 F.3d 1286 (10th Cir. 2013) .............................................. 4

*Wilson*, 536 F.3d at 1064 ........................................................................ 15

**State Cases**

*Cannon v. State*, 933 P.2d 926 (Okla.Crim.App. 1997) ............................................ 16

**Federal Statutes**

28 U.S. C. § 636 ................................................................................................................. 3

28 U.S.C. § 636 ................................................................................................................ 22

28 U.S.C. § 2254 ............................................................................................................... 9

28 U.S.C. § 2255 ........................................................................................................... 1, 2

**Other**

US Const. Amend. 5 ..................................................................................................... 21, 22

US Const. Amend. 8 ..................................................................................................... 21, 22

Kenneth E. Barrett, Defendant/Petitioner herein, files his Response in Opposition to the Government's Objections (Doc. 471; hereinafter "Govt's Objections") to the Magistrate's Report and Recommendation (Doc. 467). Subject to Mr. Barrett's objection to the limited scope of the relief granted, Doc. 470, the Magistrate's Report and Recommendation should be adopted *in toto*.

## I.   INTRODUCTION

On appeal from this Court's denial of Mr. Barrett's 28 U.S.C. § 2255 Motion to Vacate, the Tenth Circuit vacated the death sentence on count 3 and remanded for an evidentiary hearing on Mr. Barrett's ineffective assistance of counsel (IAC) claim for failure to investigate and present mitigating evidence. *United States v. Barrett*, 797 F.3d 1207, 1232 (10th Cir. 2015) ("*Barrett II*"). The Court found that Mr. Barrett "had presented sufficient evidence of deficient performance and prejudice to entitle him to a hearing." *Id*. at 1232. This Court, the Hon. James H. Payne, District Judge, referred the hearing to the Magistrate Judge, the Hon. Steven P. Shreder. Doc. 391. Judge Shreder heard evidence over 7-days[1] followed by submission by both parties of detailed proposed findings of fact and conclusions of law.

The Magistrate Judge issued his Report and Recommendations reciting detailed findings of fact in direct response to the observations and concerns raised by the Tenth Circuit. *See generally* Doc. 467 (hereinafter "R&R") at 3, 4, 10, 11, 13, 17, 19, 26, 27. The magistrate judge first found that Mr. Barrett's "federal trial counsel neither hired a mitigation or mental-health professional nor attempted to investigate themselves in any depth the Defendant's mental health or family background." R&R at 10. Judge Shreder found "no merit in *any of the reasons offered by the government* as justification for the failure of defense counsel to investigate the Defendant's mental health history or family background (whether by professionals or otherwise),

---

[1] March 27-30, 2017, June 12-13, 2017 and June 26, 2017.

and concluded that "the defense team rendered constitutionally deficient performance in developing a mitigation strategy." R&R at 18 (emphasis added).

The Magistrate Judge addressed in detail the evidence of both parties related to the question of prejudice under *Strickland*. R&R at 18-33. Judge Shreder found that "based on all of the evidence presented both in mitigation and in aggravation, there is a reasonable probability that the result of the penalty phase of the Defendant's trial would have been different." R&R at 33-34 (emphasis added), citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Judge Shreder concluded "Defendant's counsel were deficient in their performance, which ultimately prejudiced the Defendant, and that the Defendant is therefore entitled to relief under 28 U.S.C. § 2255 and to a new sentencing hearing." R&R at 34.

In reply, Respondent filed its Objections conceding deficiency of performance[2] and disputing prejudice as found under Judge Shreder's *Strickland* analysis. Specifically the government's objections are as follows:

"The government respectfully objects to the Court's prejudice analysis under *Strickland*." Govt's Objections at 2. "The government objects to the Court's conclusions, because Barrett's recreational drug use better explained his mental state at the time of the killing than the theories advanced by the defense." Govt's Objections at 5. The government asks this Court to "hold that the omission of mental health evidence from Barrett's penalty phase trial did not have a prejudicial impact under *Strickland*." *Id*. at 17. The government's objections are without merit and without apposite legal authority; lack specificity; conflict with the record, including the record of the evidentiary hearing; and seek a remedy that is unavailable.

---

[2] The government does, however, consistently reference the mental health evidence proffered on the question of prejudice as "the *forgone* (or *foregone*) mental health evidence" implying *a decision* by counsel explained the absence of such evidence. (Govt's Objections at 2, 4, 5, 12, 17) (emphasis added), an implication in direct conflict with the extensive findings made by the Magistrate Judge. *See, e.g., Dictionary.com,"forgone"*.

II. **THE GOVERNMENT'S OBJECTIONS ARE FATALLY FLAWED, UNSUPPORTED BY THE FACTUAL RECORD AND THE LAW. THIS COURT SHOULD OVERRULE THE GOVERNMENT'S OBJECTIONS AND ADOPT THE MAGISTRATE'S REPORT AND RECOMMENDATION IN FULL SUBJECT ONLY TO ITS SCOPE AS LAID OUT IN PETITIONER'S OBJECTIONS.**

As set out below, the government's objections are without merit. They lack specificity and are in conflict with the record, including the record of the evidentiary hearing. The government's objections lack legal support, and seek a remedy that is unavailable. The objections should be summarily rejected and overruled.

**A. The Government's Objections Are Too Broad For Review.**

This Court designated Judge Shreder under the Magistrate's Act, 28 U.S. C. § 636(b)(1) to conduct the evidentiary hearing ordered by the Tenth Circuit Court. Doc. 391. The government objects generally that Judge Shreder failed to make credibility determinations. Their objection is too conclusory to merit de novo review. See *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). "[W]hen a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations," *de novo* review by the District Court is unnecessary. *Id*. (citations omitted). Similarly the Tenth Circuit mandates that "a party's objections to the magistrate judge's report must be . . . specific to preserve an issue for *de novo* review by the district court . . . ."). *United States v. One Parcel Real Prop*., 797 F.3d 1057, 1060 (10th Cir. 1996) (adopting the firm waiver rule). This procedural bar prohibits review and the objections should therefore be rejected and overruled.

**B. The Magistrate's Report and Recommendation is Wholly Consistent with Constitutional and Relevant Legal Standards.**

The legal standard applied by the Magistrate Judge is clearly laid out in his Report. R&R at 2-3. On the issue of prejudice, the Magistrate Judge relies on the same Supreme Court precedent as cited by the Tenth Circuit. *Compare* R&R at 18-19 (citing *Sears v. Upton*, 561 U.S.

945, 955-56 (2010); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005), quoting *Strickland*, 466 U.S. at 689, 691; *Porter v. McCollum*, 558 U.S. 30, 41 (2009), quoting *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000); *Byrd v. Workman*, 645 F.3d at 1168; *Hooks v. Workman*, 689 F.3d 1148, 1202; *Wilson v. Trammell*, 706 F.3d 1286, 1306 (10th Cir. 2013)) with *Barrett II*, 797 F.3d at 1229-31 (similarly relying on *Sears*, *supra*; *Porter*, *supra*; *Byrd*, *supra*; *Wiggins v. Smith*, 539 U.S. 510, 537-38 (2007) , *Williams*, *supra*, *Smith v. Mullin*, 379 F.3d 919, 942 (10th Cir. 2004); *Grant v. Trammell*, 727 F.3d 1006, 1020-21; *Wilson*, *supra*.). The government does not dispute the legal framework set out by the Tenth Circuit in *Barrett II* or by the Magistrate Judge; in fact, their objections internally cite that same framework, recognizing these as the relevant legal precedents for the issues at hand. *See generally* Govt's Objections at 2-3

### C.  Contrary to the Government's Objections and Argument, Judge Shreder Made Findings of Credibility of Both Mr. Barrett's and the Government's Experts That Amply Support the Finding of Prejudice.

The government objects to Judge Shreder's prejudice analysis because it "did not evaluate the credibility of Barrett's mental health evidence," but "appears to have considered that testimony . . . as reliable for purposes of [its] decision." Govt's Objections at 2 -3. The government does not cite *Sears*, a Supreme Court precedent relied on by both the Tenth Circuit and Judge Shreder. This position seems to manifest a distinction between fact-finding and credibility assessments that is not supported by law. Credibility determinations *are* findings of fact. See *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). Judge Shreder's report is replete with factual findings based on the evidence presented at the hearing and weighed against *all* of the evidence leading to the ultimate conclusion of *Strickland* prejudice. *See* R&R at 32.

Judge Shreder found Mr. Barrett's expert psychiatrist, Dr. Woods, "diagnosed the Defendant with bipolar disorder and post-traumatic stress disorder, while noting that 65% of people who carry a diagnosis of chemical dependency also meet the criteria for bipolar disorder."

R&R at 22 (citations omitted). While Dr. Woods recognized on cross-examination that he was focused the only mental health expert to diagnose Mr. Barrett with bipolar disorder, he noted that Mr. Barrett was diagnosed with "organic affective disorder" in 1995, which was "an excellent diagnosis, because what they are saying is, this person has an organic brain problem and they have a mood disorder." R&R at 22. Judge Shreder noted that Woods characterized "this diagnosis as a 'more accurate diagnosis than even bipolar,'" and that the government failed to seriously challenge Dr. Woods' conclusion that Mr. Barrett suffered from a mood disorder. *See id.*

Similarly, the Court credited Mr. Barrett's new mitigating evidence of brain damage by Dr. Deborah Miora, who validated prior neuropsychological testing by the late Dr. Myla Young. Dr. Miora admitted to a solitary scoring error that elevated Mr. Barrett's performance in processing speed on the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV), from the first-percentile to the fifth-percentile: or as Dr. Miora observed, and Judge Shreder noted, the "slight difference was not significant" amounting to "bupkis." R&R at 24. The Court found test after test administered by Dr. Young to be "suggestive of brain injury." R&R at 25 (Dr. Miora validating Dr. Young's administration of executive functioning tests which placed Mr. Barrett in the first percentile, and revealed damage "in multiple areas of the brain, including 'the temporal region, the frontal region, [and] some of the front subcortical circuitry"). 561 U.S. at 946, 949-50. This evidence is directly on point with *Sears* where the Court found constitutionally ineffective performance based on an objective test performance that fell below the bottom first percentile, and the "cause of this abnormality appears[ed] to be significant frontal lobe brain damage" as a result of "several serious head injuries Sears suffered as a child, as well as drug and alcohol abuse in his teens." 561 U.S. at 50. The Supreme Court found the evidence sufficient

for relief, quoting the expert's "clear and compelling evidence" of Petitioner's "pronouncing frontal lobe pathology." *Id.,* at 949-50.

Based on evidence adduced through Dr. Miora's testimony, Judge Shreder made factual findings that confirmed evidence of brain damage and its attendant effects on *every point* for which the Tenth Circuit ordered the remand in this case. *See Barrett II*, 797 F.3d at 1230-31 (remanding for further fact-findings regarding: i) Dr. Young's findings of brain damage that inhibits Petitioner's ability to process new information, and ii) her tests on executive functioning, which revealed his "ability to reason, anticipate consequences to actions, and to respond to new information and act accordingly . . . was significantly impaired," and that "his abilities to organize, think, reason, plan, anticipate consequences of his actions and change actions as needed based on information he received from his environment" were also impaired and "would [be] further exacerbated under conditions of complexity and/or highly stressful situations"). Addressing the Tenth Circuit Court's concerns, Judge Shreder observed that Dr. Miora testified without challenge:

- that neuropsychological evaluation was implicated [in Petitioner's case] by [multiple] factors" that encompassed several possible etiologies of impairment and their prospective ties to the instant offense "including the Defendant's mother's drinking while she was pregnant with him, learning disorders in his childhood, multiple reports of head injuries, and the 1986 suicide attempt, as well as the circumstances of the offense in the present case;"

- that Mr. Barrett exhibits neurocognitive "weakness, includ[ing] problem solving, abstract reasoning, attention, planning, tasks that required him to inhibit one response in favor o[f] another, and working with information in the moment or on his feet;"

- regarding other subcategories of WAIS-IV testing, "[t]he take-away is that he has difficulty in – he shows difficulty in pressured situations where he has to visually attend to what is going on and generate a response;"

- that Mr. Barrett's performance on Dr. Young's executive functioning tests demonstrate that, based upon Petitioner's Wisconsin Card Sort Test and Short Category Test, he performs in the first percentile, and that "in extreme stress, the Defendant 'would be inclined to make errors;'"

- that Mr. Barrett suffers brain damage in "the temporal region, the frontal region, [and] some of the subcortical circuitry," evidence demonstrated that he is "moderately to severely impaired in [his] ability to inhibit responses in light of changing information, and he would perform worse when being fed information rapidly;"

- that "Defendant has brain damage" "based on [the] test data," and he was "easily overwhelmed by changing visual information;"

- "that *methamphetamine would have further distorted the Defendant's visual attention*, predicting his visual attention would likely have been worse than the test results showed with the addition of methamphetamine . . . .") (emphasis added).

R&R 23-25.

Controlling legal precedent presumes that this Court will defer to the findings and recommendations of the magistrate judge. The government's failure to address this standard of deference, coupled with the mischaracterization of Judge Shreder's many findings, renders their objections frivolous. *See, e.g., Elzour*, 378 F.3d at 1150. Great deference is due to the credibility determinations made by a judge observing a witness testifying. *Wessel v. City of Albuquerque*, 463 F.3d 1138, 1145 (10th Cir. 2006); *see also United States v. Quaintance*, 608 F.3d 717, 723

Petitioner's Response to Government's Objections
to Magistrate Judge's Report & Recommendation          7          *Barrett v. U.S.*, CV-09-00105-JHP

(10th Cir. 2010) (applying great deference to prior credibility determinations; leaving fact-findings undisturbed where Court was "able to hear [witnesses] testify, observe their demeanor on the witness stand, and consider their testimony in light of weaknesses identified" by opposition; crediting testimony that lacked "the sort of glaring inconsistencies or wild details that might render it incredible").

Further, Respondent's reliance on *Grant v. Trammel*, 727 F.3d 1006 (10th Cir. 2013), is misplaced. The government argues for an unsupported application of the law, asking this Court to find a "lack of presumed prejudice" from the significant mental health evidence presented, or that it should be given "little mitigating effect" in light of the evidence in aggravation.[3] (Govt's

---

[3] The government's arguments contain two stark omissions and thus mislead this Court in its request to overrule the magistrate judge's findings and recommendations. One, the government wholly fails to take into account the profound, newly-discovered evidence of government misconduct: specifically, that Mr. Barrett's conviction was based, at least in part, upon perjured testimony. *See e.g.,* Evidentiary Hearing ["EH"] Exhs. 17, 28; CV-09-105-JHP Doc 199, 199 Exhs. 6-15; CR-115-JHP Doc. 434; *see also, In re Barrett,* 10th Cir. Case No. 16-7035, Doc. 01019619071). Second, the government's focus on the victim impact evidence adduced at trial ignores the predicate *Williams* test. The description of the evidence in aggravation that was adduced at trial is both inaccurate and wildly exaggerated in an attempt to conflate their perception of the prejudicial impact of that evidence with its argument to now require a nexus between the mental health evidence and the *actus reas*. (See, Gov't Objections, p. 12). The government's staunch defense of the trial record is an argument that is perhaps appropriate before the newly seated jury, but it is inappropriate to answer the issue per the scope of the Tenth Circuit's remand in this case, and otherwise improperly ignores the deference owed to the magistrate judge, who reviewed the record in total, made concise factual findings and applied the correct legal standard in deciding that "there is a reasonable probability that the result of the penalty phase of the Defendant's trial would have been different." R&R at 33.

Objections at 16-17).  The panel in *Grant* did find no relief was warranted. However, *Grant* is easily distinguished from the facts in this case; the government's citation to *Grant* inadvertently demonstrates why Mr. Barrett is presumptively entitled to the remedy recommended by Judge Shreder.

*Grant* was decided under the very different and doubly deferential standard of review under 28 U.S.C. § 2254(d). *Grant*, 727 F.3d at 1016-23. The *Grant* panel weighed wholly different aggravating evidence, including an affirmative jury finding on "perhaps [the] most important" aggravator (future dangerousness), and "potent" evidence including prior violent felonies such as "kill[ing] a prison employee who was previously his friend." *Id.*  Indeed, the Tenth Circuit found lack of prejudice due to the actual absence of mitigating evidence of brain injury, prior abuse, and corrupting family members. In stark contrast, each of these categories of mitigating evidence were *firmly established* here by Mr. Barrett and *found to be facts by Judge Shreder*. R&R at 26. The defendant in *Grant* failed to obtain relief because the Court found "there is no evidence [] suggesting organic brain injuries . . . , no evidence of physical abuse before he started down the path of illegal activity, and no evidence his other family members felt the need due to difficulties of their family life to travel down a similar path . . . .". 727 F.3d at 1022.   The government's reliance on *Grant* as a basis for denial of relief in this case is disingenuous. Their faltering argument of its applicability is the best evidence that Mr. Barrett was presumptively prejudiced by his trial counsel's failure to investigate and present this evidence.

**D. Respondent's Imposition of a Nexus Requirement Contravenes Clearly Established Federal Law, and Grossly Misinterprets Tenth Circuit Precedent on "Connecting the Dots" between Brain Damage and Petitioner's Behavior. Omitted Evidence of Petitioner's Brain Damage, and Its Attendant Effects, Is Inherently Mitigating, and Explains Petitioner's Behavior Under Governing Law. As Judge Shreder Concluded, Petitioner Was Prejudiced by Trial Counsels' Deficient Performance.**

As Respondent acknowledges, its imposition of a "nexus requirement" violates clearly established federal law. Govt's Objections at 16 (citing *Tennard*, "Barrett would no doubt answer that mental health evidence need not have a nexus to the crime of conviction to have a mitigating effect"). The Supreme Court has repeatedly and unmistakably rejected any nexus requirement, holding that evidence of "impaired intellectual functioning is inherently mitigating" at the penalty phase of a capital case, regardless of whether defendant has established a nexus between his mental capacity and the crime. *Tennard v. Dretke*, 542 U.S. 274, 287-88 (2004); *see also Smith v. Texas*, 543 U.S. 37, 43-45 (2004) (per curiam) (again rejecting nexus requirement and following its prior decision in *Tennard*; "as we explained in *Tennard*, '[e]vidence of significantly impaired intellectual functioning is obviously evidence that "might serve as a basis for a sentence less than death;" "[w]e rejected the Fifth Circuit's 'nexus' requirement in *Tennard* . . . (noting that none of our prior opinions 'suggested that a[n] [impaired] individual must establish a nexus between her mental capacity and her crime . . . and holding that the jury must be allowed the opportunity to consider *Penry* evidence even if the defendant cannot establish 'a nexus to the crime'")).

In subsequent cases, the U.S. Supreme Court has found that inherently mitigating evidence of organic brain damage outweighs evidence in aggravation, even when such aggravating evidence spans several aggravators, including torture and prior violent felonies such as rape, and petitioner's substance abuse affected commission of the offense. *Rompilla v. Beard*, 545 U.S. 374, 391-93 (2005), *rev'g Rompilla v. Horn*, 355 F.3d 233, 256 n. 13 (3d Cir. 2004)

(three aggravators of murder while perpetrating felony, murder by means of torture, and significant history of violent felony convictions outweighed by previously omitted mitigating evidence of brain damage, where victim was stabbed 16 times to the head and neck, beaten with a blunt object, robbed and lit on fire; when finding prejudice, reasoning the "jury never heard" about troubled family background or from Petitioner's "mental health experts" who "when they tested, . . . found that [Petitioner] 'suffers from organic brain damage . . . significantly impairing several of his cognitive functions," and that Petitioner's "problems . . . were likely caused by fetal alcohol syndrome [and] [Petitioner's] capacity to appreciate the criminality of his conduct or to conform his conduct to the law was substantially impaired at the time of the offense"); *see also Frazier v. Huffman*, 343 F.3d 780, 797 (6th Cir.2003) (finding, in case where almost no mitigating evidence was presented, that there was prejudice based on failure to present brain injury evidence alone); *Frierson v. Woodford*, 463 F.3d 982, 990-994 (9th Cir. 2006) (inherently mitigating evidence of brain damage, along with Petitioner's learning disability and evidence that he was a "chronic lifelong substance abuser" outweighed special circumstances of premeditated murder, and murder committed during course of robbery and kidnapping); *Caro v. Woodford*, 280 F.3d 1247, 1257-58 (9th Cir. 2002) (holding omission of evidence of brain damage rendered death sentence unreliable; concluding "[Petitioner's] moral culpability would have been reduced," "by explaining that his behavior was physically compelled, and not premeditated;" and finding evidence of premeditation "was not particularly strong" in the face of countervailing evidence of brain damage).

The critical prejudice standard is simply this: a finding of prejudice is required if omitted mitigating evidence provides an alternate view that Petitioner's behavior may not have been the result of cold-blooded pre-meditation. This standard was first enunciated by the U.S. Supreme

Court in *Williams v. Taylor*, 529 U.S. at 397-98, and followed time and time again by the U.S. Supreme Court in, for example, *Rompilla*, and the Tenth Circuit in *Hooks*, *Wilson*, *Smith*, and other case law. The *Williams* standard was repeatedly and appropriately relied upon by Judge Shreder. His findings and recommendations provide a well-founded and detailed outline as to why the omitted mitigating evidence of brain damage might well have influenced the jury's appraisal of Petitioner's moral culpability.

When weighed against evidence in aggravation, the inherently mitigating evidence proves broadly "*consistent with the view*" that "*[Petitioner's] violent behavior was a compulsive reaction rather than the product of cold-blooded premeditation*." *Williams*, 529 U.S. 362, 397-98 (2000) (emphasis added); R&R 19, 32-33 (finding prejudice; citing *Porter*, quoting pin-cite to *Williams v. Taylor*); *id*. at 26 (citing *inter alia Hooks*, *Rompilla*, *Wilson*, and *Smith*, that evidence of brain damage has a "powerful mitigating effect"); *Rompilla*, 545 U.S. at 392-93 (finding prejudice; citing *Wiggins*, *supra*, quoting pin-cite to *Williams v. Taylor*); *Hooks*, 689 F.3d at 1204-07 (finding prejudice; pin-citing *Williams v. Taylor* for proposition that mental health evidence shows that "violent behavior was a compulsive reaction rather than the product of cold-blooded premeditation," and *Rompilla*).

Although Respondent repeatedly argues that "none of [Petitioner's] alleged mental conditions . . . meaningfully explain, negate or mitigate his naked homicidal conduct," the government fails to understand the *Williams* standard. Govt's Objections at 15. The *Williams* standard does not mandate a nexus requirement for omitted mitigating evidence, whereby a petitioner somehow conclusively demonstrates with mathematic certainty that petitioner's capital murder was caused by his brain damage or his other, previously neglected mental condition, *Tennard*, 542 U.S. at 287-88 (rejecting nexus requirement that Petitioner's "criminal act was

attributable to [his] severe permanent [mental] condition;" a determination of the appropriate

weight to be given mitigating evidence is not whether that evidence can provide a causal basis or

excuse for the crime of conviction, as the government would have this Court believe. Instead,

"[t]he question is simply whether the [neglected] evidence is of such a character that it might

serve as a basis for a sentence less than death"), *reversing Tennard v. Cockrell*, 284 F.3d 591,

597 (5th Cir. 2002).

A finding of prejudice under *Williams* is required if omitted mitigating evidence provides

an alternate view that Mr. Barrett's behavior may not have been the result of cold-blooded pre-

meditation. *Williams*, 529 U.S. at 397-98. Evidence of compulsion or impulse control problems

wholly distinct from evidence of premeditation satisfies this standard.[4]  The U.S. Supreme Court

made plain in Williams that such omitted mitigating evidence may also be *completely unrelated*

to a prior, affirmative jury finding of future dangerousness, and nevertheless still tip the scales in

favor of prejudice. *Id*. ("[m]itigating evidence unrelated to dangerousness may alter the jury's

selection of penalty, even if it does not undermine or rebut the prosecution's death-eligibility

case"). Prejudice is especially apparent here.  The jury sentenced Mr. Barrett to life rather than

---

[4] The U.S. Supreme Court holds that evidence of impaired intellectual functioning has inherent mitigating effect that is separate and apart from aggravation: or as the *Tennard* Court emphasized, evidence of "[i]mpaired intellectual functioning has mitigating dimension beyond the impact it has on the individual's ability to act deliberately." *Tennard*, 542 U.S. at 288. It is doubtful that any Tenth Circuit decisions failing to find prejudice by emphasizing the aggravating effect of impulse control problems from brain damage would withstand a properly-briefed challenge. *Compare Cannon v. Gibson*, 259 F.3d 1253 (10th Cir. 2001) 1253, 1276-78 (cited in *Grant v. Trammell*) (pre-dating *Tennard* and *Rompilla*) (with aggravating evidence of brutal sex attack of 84-year old and murder by torture; elderly woman was kidnapped, vaginally raped, and sodomized before being "set on fire" with gasoline poured from orange soda bottle; victim "had been burned over sixty percent of her body, but was still alive," prior to suffering "blunt force injury" to the forehead, facial bruises, and cuts prior to death) *with Tennard*, 542 U.S. at 287-88 *and Rompilla*, 545 U.S. at 391-393 (finding prejudice from omitted mitigating evidence of brain damage and troubled family background despite murder by torture), *Id*. at 397-98 (Kennedy, J., dissenting) (enumerating aggravating evidence of murder by torture that was outweighed by omitted mitigating evidence in *Strickland* calculus).

death on counts 1 and 2, and rejected the "continuing threat" aggravating circumstance on count 3. Simply put, if there is a reasonable probability that at least one juror would have struck a different balance with the aid of the previously omitted mitigating evidence, prejudice has been shown. *Wiggins*, 539 U.S. at 537-38 (2007) (citing *Williams*; finding prejudice); *Williams*, 529 U.S. at 398 (prejudice shown where omitted mitigating evidence "might well have influenced the jury's appraisal of his moral culpability").

The Tenth Circuit's standard is not exacting. Mr. Barrett must connect the dots between his mental conditional and the offense itself; *i.e.*, when his omitted mitigating evidence is "consistent with the view" that the murder may have instead resulted from something other than cold-blooded premeditation. *Williams*, 529 U.S. at 398; *see Hooks*, 689 F.3d at 1204-07; *Smith*, 379 F.3d at 942-44; *Anderson v. Sirmons*, 476 F.3d 1131, 1145-48 (10th Cir. 2007). In conformity with the Tenth Circuit's remand order, and the Supreme Court's standard in *Williams*, Judge Shreder found that Mr. Barrett's omitted mitigating evidence provided a possible explanation apart from premeditation. *See generally* R&R 18-34; *see supra* at 6-7 (laying out Judge Shreder's extensive findings regarding Dr. Miora's testimony).

In the same vein, the government's claim that Dr. Woods offered a faulty nexus that "evinced a misapprehension of the events" of the crime is misguided. Govt's Objections at 13-15. As Judge Shreder noted, Dr. Woods testified that Mr. Barrett had made statements "that he was defending himself," "which Dr. Woods attributed to his (in)ability to distinguish right from wrong." R&R at 22-23 (pin-citing Tr. March 28, 2017, at 350-51). Like Dr. Miora, Dr. Woods testified that the effects of Mr. Barrett's brain damage (and psychiatric disorders) provide a possible alternate explanation for his behavior apart from premeditation. Tr. March 28, 2017, at 350-51 (Woods cross exam; "[f]irst of all, Mr. Barrett has bipolar disorder . . . . He also has . . .

significant brain impairments. And I said before that both of those impair his ability to weigh and deliberate effectively, to understand . . . context effectively."); *see also id*. at 212, 217-20[5]; *id.* at 350-51; R&R at 22-23. Respondent's argument discounting Dr. Woods' testimony ignores the intent of the U.S. Supreme Court's Williams standard and should be dismissed.[6]

Moreover, Respondent's objection about prior jury fact-findings is self-defeating: by that logic, Mr. Barrett's jury *rejected* the future dangerousness aggravator, and *failed to find* the especially heinous, atrocious, or cruel murder aggravator, *both of which* were integral, affirmative jury findings in Tenth Circuit cases concluding that the defendants were not

---

[5] Dr. Woods' direct examination on neurological impairments and psychiatric disorders affecting behavior, including during offense; brain damage affecting Mr. Barrett's ability to inhibit stimuli and react appropriately to information, "particularly in stressful situations;" Petitioner has "comorbid" brain damage, bipolar disorder, and PTSD that "interact with each other;" "the idea of a hyperreactive response is completely consistent with both his history, his mood disorder, as well as what we would see in someone that ha[s] these kinds of brain impairments, this misperception of – of the circumstances. Once again, we talk about executive functioning, being able to weigh and deliberate, effectively weigh and deliberate. And this [offense] clearly was an example of misperceiving and not being able to effectively weigh and deliberate"). Dr. Woods testified to a possible explanation for Mr. Barrett's behavior apart from premeditation, and Judge Shreder made allied findings about Petitioner's impairments supporting his conclusion of prejudice under controlling authority.

[6] In its critique of Dr. Woods, Respondent objects that Dr. Woods "cannot . . . transmogrify a premeditated murder into some lesser offense" because—it *thrice* notes—contrary facts were previously "developed to the satisfaction of the jury." Govt's Objections at 13-15. This argument remains utterly beside the point. In case after case relied upon which Judge Shreder relied, previously omitted mitigating evidence does, in fact, change the *Strickland* calculus despite prior jury fact-findings regarding premeditated behavior; instead, mitigating evidence of the effects of brain damage outweighs prior evidence in aggravation when it meets the governing legal standard, *i.e.*, Petitioner proffers previously omitted mitigating evidence "consistent with the view" that his behavior may not have been the result of cold-blooded premeditation. *Williams*, 529 U.S. at 397-98; *compare* R&R at 26 (despite aggravating evidence, finding prejudice due to omission of new mitigating evidence, citing *inter alia Hooks v. Workman*, 689 F.3d 1148 (10th Cir. 2012); *Wilson v. Sirmons*, 536 F.3d 1064 (10th Cir. 2008), and *Smith v. Mullin,* 279 F.3d 919 (10th Cir. 2004)(internal citations omitted). In all of the cases, evidence of premeditation and unspeakable evidence in aggravation coexists with and is outweighed by new mitigating evidence of inability to inhibit responses and/or brain abnormality that may provide a different explanation for Petitioner's violent behavior, *see id.*

prejudiced. *See, e.g., Cannon*, 259 F.3d at 1257-58, 1276-78, *affm'g Cannon v. State*, 933 P.2d 926, 927 (Okla.Crim.App. 1997).

     **E.   Respondent's Central Claim that Barrett's Behavior Was "Better Explained" by "Recreational Drug Use" is Baseless, as this Assertion was First Rejected by the Jury at Trial, Again Rejected by the Tenth Circuit on Remand, and Rejected by Judge Shreder after considering all of the evidence on the issue.**

Boiled down to its essence, the government assumes that its theory that Mr. Barrett's "recreational drug use better explained his mental state at the time of the killing than the theories advanced by the defense" is sufficient to overcome trial counsels' deficiencies in the magistrate's prejudice assessment. Govt's Objections at 5. That is precisely evidence as to how Mr. Barrett's trial counsel failed him by inexusably failing to address the overarching (if unsupported) theme of the government's case in the adversarial process.

The government ignores Judge Shreder's factual findings that the jury heard extensive evidence of Petitioner's drug use at trial, found it inconsequential, and rejected the aggravator of future dangerousness. *See, e.g.*, R&R at 27 ("[T]he undersigned Magistrate Judge finds that . . . the jury did hear extensive testimony regarding Defendant's drug use and his relationship with his ex-wife during both stages of the trial") (citation omitted).

In remanding the case to the District Court, the Tenth Circuit noted, at length, all of the drug evidence previously rejected by the jury as a basis for finding any aggravating circumstance. *See, e.g., Barrett II*, 797 F.3d at 1232 ("The jury was also presented with significant evidence of Defendant's drug use, including the testimony of a drug addict that he took methamphetamine with Defendant, and the testimony of a state prison employee that Defendant self-reported first using alcohol at age 12, cocaine and heroin at age 14, and methamphetamine at age 20, and had been using marijuana, methamphetamine, heroin, tranquilizers, and other drugs up until the time of the shooting.). Relying on its own precedent,

Petitioner's Response to Government's Objections
to Magistrate Judge's Report & Recommendation     16     *Barrett v. U.S.*, CV-09-00105-JHP

the *Barrett* court suggested that this evidence of drug use would likely pale by comparison to Mr. Barrett's overwhelming mitigating evidence, which could best explain his mental condition, drug use, and behavior. *Id.* at 1232 ("Perhaps the evidence of . . . drug involvement would not have surprised the jury and presented little downside risk to Defendant's offering evidence of his mental condition. *See Smith*, 379 F.3d at 943 & n. 11 (when aggravating aspects of defendant's mental illness have already been presented to the jury, little risk to presenting the mitigating aspects as explanation for Defendant's behavior)"). In turn, after hearing all of the testimony, Judge Shreder agreed with the Tenth Circuit: the jury already heard the government's stale evidence of Petitioner's drug use and found it unpersuasive to maintain the sentence in light of the omitted mental evidence adduced at the evidentiary hearing. R&R at 27.

In concluding that Petitioner was prejudiced by trial counsels' ineffectiveness, Judge Shreder adhered to U.S. Supreme Court precedent: the *Sears* Court acknowledged that evidence of drug use proves consistent with compelling mitigation theories previously neglected. R&R at 32-33 (citing *Sears v. Upton*, 561 U.S.at 950 (advancing mitigation theory portraying Petitioner "as an individual with diminished judgment and reasoning skills," whose drug use and criminality could be attributed to his elder brother, a convicted drug dealer and user; Petitioner "may have desired to follow in the footsteps of an older brother who had shut him out of his life")).

The government's own expert, Dr. Steven Pitt conceded Mr. Barrett has genetic loading for mood disorders and mental illness, including substance abuse disorder. R&R at 32; *cf. Sears*, 561 U.S. at 949 (attributing Petitioner's brain damage to various etiologies, including substance abuse; "[f]rom an etiological standpoint, one expert explained that [Petitioner's] 'history is

replete with multiple head trauma, substance abuse, and traumatic experiences of the type expected' to lead to these significant [frontal lobe] impairments.").

The government's other expert, Dr. J. Randall Price, admitted Mr. Barrett's neuropsychological functioning was "very weak," "out of ordinary," and "abnormal;" agreeing on cross that Petitioner was elevated, "in the 75 percentile[,] . . . on the traumatic stress subscale [on the Personality Assessment Inventory], but failed to include a discussion of that in his report." R&R at 28-29. Judge Shreder relied upon evidence provided by *the government's own expert*, to identify traumatic stress, polysubstance dependence, and other etiologies, as possible bases for Petitioner's brain dysfunction. *Id.*

The jury previously rejected Petitioner's drug use as a basis for the future dangerousness aggravator. CR 115 Doc. 258 at 13-14. The Tenth Circuit indicated the jury already weighed such "not . . . surpris[ing]" evidence without learning the mitigating aspects of Petitioner's mental condition that explained his behavior. *Barrett II*, 797 F.3d at 1232. Judge Shreder agreed that the new mitigating evidence better accounted for Mr. Barrett's behavior than drugs. R&R at 27-32. The government's wearied cries of "drugs, (p. 32) drugs, and more drugs" add nothing to evidence now thrice rejected—by the jury, the Tenth Circuit, and Judge Shreder. This Court should do the same.

The government's assertion that Dr. Price's "neuropsychological testing revealed no evidence that Barrett suffered from a severe brain injury" Govt's Objections at 6, mischaracterizes the evidence. R&R at 28 (citation therein). Dr. Price testified that Mr. Barrett's test results in "attention" on the Repeated Battery for the Assessment of Neuropsychological Status (RBANS) "*could be consistent with mild traumatic brain injury*," Tr. June 12, 2017 at 871-72 (emphasis added), *see also id.*, at 868, 875 (acknowledging attention and immediate

memory problems as "something acquired that would be significant in his life"). Dr. Price also testified that Mr. Barrett evinced "significant impairment" on testing, demonstrated "a problem with attentional functioning of his brain," possessed "very weak" neurocognitive deficits and brain "abnormal[ity], and elevated scores on the PAI "traumatic stress subscale." The PK scale on the Minnesota Multiphasic Personality Inventory (MMPI) related to post-traumatic stress disorder which Dr. Price disingenuously omitted from his report.[7] *Id.* at 903, 905-06, 904, 915-18. Judge Shreder noted Dr. Price's critical concessions of Mr. Barrett's brain abnormalities, and the possible etiologies thereof, in his findings. *See supra*; R&R 28-29 (discussing Petitioner's abnormal brain and traumatic stress impairments, along with Price's diagnoses of learning disorder not otherwise specified, dysthymic disorder, and polysubstance dependence).

Similarly, Judge Shreder critically evaluated Dr. Pitt's testimony. The Court found Dr. Pitt was not qualified to opine on Petitioner's lack of brain damage, and that he was thus not persuasive when alleging Petitioner's "drug use" was a catch-all explanation in the face of the new mitigating evidence about "genetic loading," multigenerational exposure to mental illness, mood disorders, and substance abuse, and his troubled family background of mental illness and chemical dependence. R&R at 31, 32; *see also id.* at 11 (deficiency analysis; noting Mr. Barrett's history included head injuries, "a tumultuous childhood that included impermanence, violence, and substance abuse," and an "extended family history which included generations of suicide attempts, volatility, substance abuse, and other mental health problems"); *id.* at 19 (prejudice analysis; the Court noting Tenth Circuit's recitation of post-conviction evidence and further

---

[7] Dr. Price further acknowledged that he performed limited neuropsychological testing that was not specifically designed to assess executive functioning, which was of interest to the Tenth Circuit, *see, e.g.*, Tr. June 12, 2017, at 893-95; *Barrett II*, 797 F.3d at 1230-31, and that Mr. Barrett was not malingering during all testing, *see, e.g.*, Tr. June 12, 2017, at 870, 878, 881. Thus, per Price, his test results were valid, if not expansive enough to address the main question posed by the *Barrett* panel on remand. *Id.*

testimony adduced at the evidentiary hearing concerning "long family history" of "mental health problems" and "alcohol abuse," Petitioner's "early exposure to alcohol and alcohol abuse, as well as physical and emotional abuse and neglect," along with adolescent drug use).

Petitioner's drug use was mitigated in other ways — as genetic loading, as family inheritance of mental illness and related substance abuse, as childhood exposure attributable to family members and peers. *See id; Sears*, 561 U.S. at 950, 949 (acknowledging new mitigating theory of Petitioner's drug use along with various etiologies of brain damage, including chemical abuse). Here, Judge Shreder found that the government's experts simply added nothing to the *Strickland* calculus, and therefore, Petitioner's new mitigating evidence outweighed all of the government's evidence of drug use and otherwise in aggravation. R&R at 33.

Judge Shreder ultimately found "[t]he evidence potentially available to the Defendant regarding his mental health history and his family background would in all likelihood have aided substantially in mitigation, and the rebuttal evidence provided by the government would not appear to have added substantially to the calculus of aggravation . . . ." *Id.* Judge Shreder concluded, "based on *all* of the evidence presented in mitigation and in aggravation, there is a reasonable probability that the result of the penalty phase of the Defendant's trial would have been different . . . .") (citations omitted).

Judge Shreder's report makes clear he did not simply accept Petitioner's experts as reliable without scrutiny. He carefully laid out and discussed the testimony of each expert for both parties. After all testimony was adduced, Judge Shreder found that Drs. Woods and Miora were unrefuted and unimpeached; he further emphasized the potentially powerful mitigating effect this evidence would have had at Mr. Barrett's trial.

The government's attempt to reduce the events of September 24, 1999 to a direct consequence of Mr. Barrett's methamphetamine use, abuse, and addiction is not factually accurate, and this was well-known to the jury. Due to trial counsels' deficient performance, the jury was not able to view Mr. Barrett's conduct—including his drug use—through the prism of his mental health issues.  As the Tenth Circuit observed and Judge Shreder considered in its factual and legal context, the "drugs, drugs, and more drugs" explanation enhances rather than undermines a finding a prejudice because the evidence shows that Mr. Barrett's drug use was in and of itself a product of his mental illness.

**F. Where, as Here, the Magistrate Judge's Findings of Fact and Conclusions of Law are Both Amply Supported by the Evidence Adduced at the Hearing and Consistent with the Tenth Circuit Remand, this Court Cannot Grant the Government's Objections Without Violating the Tenth Circuit's Order on Remand and Denying Mr. Barrett's Right to Due Process under the Fifth and Eighth Amendment's to the United States Constitution.**

Though suggesting otherwise, the government is asking this Court to reject the Magistrate's credibility findings. By its request that this Court reverse the magistrate judge's finding of prejudice, the government seeks to have this Court reject the testimony of the experts and other witnesses laying out Mr. Barrett's mental health deficits and background.  Because the findings and conclusions are rooted in the testimony of the live witnesses at the hearing presided over by the Magistrate Judge and not this Court, rejection of those findings by this Court and denial of a new sentencing will violate Mr. Barrett's right to due process under the Fifth and Eighth Amendments to the United States Constitution.

The Federal Magistrate Act grants a district court judge the authority to refer a magistrate judge to conduct hearings and submit proposed findings of facts and recommendations. 28 U.S.C. § 636(b)(1)(B). After the magistrate judge submits the proposed findings and recommendations report, the parties may object to that report. The district court then must make

a "de novo determination" of the parts of the report to which objection was made. *Id*. at 636(b)(1). The Act grants district courts discretion to "accept, reject or modify, in whole or in part," the magistrate's proposed findings or recommendations. *Id*.

There is little question that the government's objection to the Magistrate's Report is directed at the Court's findings on credibility (or as the government's suggests by synonym, "reliability"). The government's disagreement with Judge Shreder primarily stems from differences in its biased view of the evidence rather than the standard for judging ineffective assistance of counsel claims. *See Proffitt, supra*, 685 F. 2d at 1240. The government asks this Court to reject the Judge Shreder's material credibility findings that are clearly based on the judge's observation of in-person testimony. If the court accepts the government's invitation to reject the credibility findings, it will err. *See, e.g., Amlong v. Amlong, P.A. v. Denny's, Inc*., 500 F.3d 1230 (11th Cir. 2007) (after referring the matter to a magistrate judge to conduct an evidentiary hearing, the district court may not override essential, demeanor-intensive fact-findings without hearing evidence itself or citing an exceptional justification for discarding the magistrate's findings). Moreover, by rejecting the magistrate judge's material credibility findings, the district court will be effectively denying the evidentiary hearing that the Tenth Circuit ordered. It will be a violation of Mr. Barrett's right to Due Process guaranteed by the Fifth Amendment and to be free from cruel and unusual punishment guaranteed by the Eighth Amendment to the United States Constitution. US Const. Amend. 5.; US Const. Amend. 8.

## III.    CONCLUSION

For the reasons stated herein, the government's Objections Should be Overruled, Denied and Dismissed and the Magistrate's Report and Recommendation Adopted Verbatim, subject only to Mr. Barrett's Objection to the Limited Scope of the Relief Granted (Doc. 470).

DATED:          November 26, 2018

                                   RESPECTFULLY SUBMITTED,

                                   /s/ *David Autry*
                                   DAVID AUTRY

                                   HEATHER E. WILLIAMS
                                   Federal Defender

                                   /s/ *Joan M. Fisher*
                                   JOAN M. FISHER
                                   Assistant Federal Defender

                                   /s/ *Karl J. Saddlemire*
                                   KARL J. SADDLEMIRE
                                   Assistant Federal Defender

                                   /s/ *Carrie L. Ward*
                                   CARRIE L. WARD
                                   Assistant Federal Defender

                                   Attorneys for Petitioner/Defendant,
                                   KENNETH EUGENE BARRETT

**CERTIFICATE OF ELECTRONIC SERVICE AND DELIVERY**

This is to certify that on this 26th day of November 2018, I caused the foregoing Petitioner's Response To Government's Objections To Magistrate Judge's Report And Recommendation to be filed with the Clerk of the Court using the ECF System for filing, with service via CM/ECF to be made to Christopher J. Wilson, AUSA, Jeffrey B. Kahan, U.S. Department of Justice, and to all counsel of record. To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.

/s/ *Joan M. Fisher*
JOAN M. FISHER