DAVID AUTRY, OBA No. 11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
Telephone:    (405) 521-9600
Facsimile:    (405) 521-9669
E-mail:       dbautry77@gmail.com

HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
JOAN M. FISHER, ID Bar #2854
Assistant Federal Defender
KARL SADDLEMIRE, State Bar #275856
Assistant Federal Defender
CARRIE L. WARD, MO Bar #57581
801 I Street, 3rd Floor
Sacramento, CA 95814
Telephone:    (916) 498-6666
Facsimile:    (916) 498-6656
E-mail:       Joan_Fisher@fd.org
              Karl_Saddlemire@fd.org
              Carrie_Ward@fd.org

Attorneys for Petitioner/Defendant,
KENNETH EUGENE BARRETT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH EUGENE BARRETT, | |
| Petitioner/Defendant, | CASE NO. CV-09-00105-JHP |
| vs. | **PETITIONER'S REPLY TO GOVERNMENT'S RESPONSE RE: OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| UNITED STATES OF AMERICA, | |
| Respondent/Respondent. | |

**COMES NOW** Petitioner Kenneth E. Barrett, by and through undersigned counsel,

submits the following Reply to Government's Response in Opposition to Petitioner's Objection

to the Magistrate Judge's Report and Recommendation.

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                    1          *Barrett v. U.S.*, CV-09-00105-JHP

## STATEMENT OF THE CASE

The government, claiming waiver regarding Petitioner's request for relief as to Counts I and II of his conviction and sentence, culls quotes from a "nearly 10-year-old" § 2255 motion. (Doc. 472, p. 5)[1].  Rather than recapitulating its statement of the case, the following information outlines only that information pertinent to the Government's Reply and to the specific objections contained therein.

**1.  Mr. Barrett was tried and convicted on three death eligible counts, each interwoven with the others and each alleging an intentional *mens rea*, or more: an element of premeditation or malicious aforethought.**

On February 09, 2005, the government filed the superseding indictment upon which Mr. Barrett was tried and convicted.  (Doc. 052, CR-04-115-P).

## COUNT I

Title 18, U.S.C. §§ 924(c)(1)(A) and (j), knowingly use and carry, during and in relation to, and possess in furtherance of drug trafficking crimes: to wit, possession of materials for the purpose of manufacturing methamphetamine, and possession of firearms,

"and in the course of this violation, caused the death of David Eales through the use of a firearm, such killing being murder as defined in Title 18, U.S.C., § 1111, in that it was an unlawful, willful, deliberate, malicious and premeditated killing committed with malice aforethought." (*Id*. at 2).

## COUNT II

Title 18, U.S.C., §§ 924(c)(1)(A) and (j), the use and carry of a firearm during and relation to a crime of violence and possession of a firearm in furtherance of such crime of violence.

Title 21, U.S.C. Section 848(e)(1)(B), the killing of a state law enforcement officer engaged in or on account of the performance of such officer's official duties.

---

[1] Government's Response in Opposition to Petitioner's Objection to Magistrate Judge's Report and Recommendation, Doc. 472, CV-00105-JHP, filed November 26, 2018 [hereinafter, "Doc. 472"].

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                    2                    *Barrett v. U.S.*, CV-09-00105-JHP

. . . and in the course of this violation, caused the death of David Eales through the use of a firearm, such killing being murder as defined in Title 18, U.S.C., § 1111, in that it was an unlawful, willful, deliberate, malicious and premeditated killing committed with malice aforethought."

(*Id*. at 3).

## COUNT III

Title 21, U.S.C. §848(e)(1)(B), Intentionally killing, during the commission of a drug trafficking crime, a state law enforcement officer, engaged in the performance of his official duties.

attempting to avoid apprehension and prosecution of a felony violation of Title 21, United States Code, Sections 841(a), 841(c), 843(a), 846, and 856, did intentionally kill David Eales, an officer of the Oklahoma Highway Patrol, a state law enforcement officer, while David Eales was engaged in and on account of the performance of David Eales' official duties, and such killing resulted.

(*Id*. at 4).

Each count references the same *actus reas*, occurring within at most a thirty second period in the late evening hours of September 24, 1999 (*Id*.); each count required an intentional *mens rea*, or even greater evidence of premeditation. Each count was eligible for the death penalty. (*See* Federal Death Penalty Act of 1994, 8 U.S.C, § 3591(a)(2)(A)-(D), and the Anti-Drug Abuse Act of 1988, 21 U.S.C. § 848(e)-(r); Judicial Instructions at Sentencing, Trial Transcript, Vol. 27, p. 5294-96.

**2. The post-conviction procedural history reflects multiple occasions when Petitioner raised the issues of deficient performance as to Counts I and II.**

The government's primary argument, that Petitioner has waived claims for relief as to Counts I and II, because he "never before articulated the theory that his trial attorneys' performance affected his non-capital sentences," is groundless. (Doc. 472, at 3). Even a cursory review of the record -- spanning countless thousands of pages shows that Mr. Barrett has sought post-conviction relief from all three of his convictions and sentences. The listed

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                3                *Barrett v. U.S.*, CV-09-00105-JHP

references are not all-inclusive, but rather serve to entirely disprove the government's erroneous claim of waiver without unduly burdening the Court:

a.    On March 16, 2009, Petitioner filed his first motion for collateral relief in the Eastern District of Oklahoma, District Court, IAW 28 U.S.C. §2255. (Doc. 1, Case No. CIV-09-105-JHP) [hereinafter, "§2255, Doc. 1"].  From the outset, Petitioner framed the import of lost evidence in mitigation and the dismal performance of his trial counsel: his attorneys' ineffectiveness in failing to investigate and present a mitigation case was relevant to both the guilt and penalty phases of his trial, as well as to all three of his convictions and sentences.  (*Id.* at 7-8).  Specifically, Petitioner asked he "be granted relief from his convictions and sentences."

b.    On September 25, 2009, Petitioner filed an Amended Motion for Collateral Relief, per 28 U.S.C. § 2255.  (Doc. 70, Case No. CIV-09-105-JHP) [hereinafter "Amended § 2255, Doc. 70"].  Here again, Petitioner concluded his recitation of trial counsel's ineffectiveness in mitigation, with a broad request for relief: "the numerous constitutional errors that marred Mr. Barrett's trial require that he be granted relief from his convictions and sentences." (*Id.* at 8).

c.    On December 12, 2009, Petitioner filed a second Amended Motion per 28 U.S.C. § 2255 (Doc. 95, Case No. CIV-09-105-JHP) [hereinafter "2d Amended §2255, Doc. 95"].

(1) "The [mental health] testimony that could have been developed and offered, but was not, would have refuted the Government's theory of the case as to both stages of trial regarding intent, and supported defense theory instructions and instructions on lesser included offenses." (*Id.* at  48).

(2) Citing Dr. Woods' conclusions, "Mr. Barrett's mental function was impaired at the time of the offense by psychiatric illness and significant brain damage, which prevented him from knowing or deliberating on the nature of his responses to the police incursion before he acted." (*Id.* at 49, couched as constitutional error at FN7 therein); both Counts I and II allege murder with premeditation and malicious aforethought.

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                                   4                        *Barrett v. U.S.*, CV-09-00105-JHP

(3) That the outcomes of both the trial and appeal are unreliable due to trial counsel's unreasonable failure to preserve a record of error, *i.e.*, "the misjoinder of offenses in violation of Fed. R. Crim. P. 8." (*Id*. at 179).

(4) Unreasonable Acts and Omissions Primarily Affecting the Second Stage of Trial. (*Id*. at 185). Because "[t]rial counsels' unreasonable omissions [of mental health and mitigation evidence] denied the jury a thorough understanding of the events of September 24, 1999, and denied Mr. Barrett a defense applicable to both stages of trial." (*Id*. at 194).

(5) That the missing evidence in mitigation, "was also directly relevant to refuting the statutory aggravating circumstances that Mr. Barrett *knowingly* created a grave risk of death … and committed the offense after substantial planning and premeditation." (*Id*. at 242). This special circumstance was noticed for both Counts I and II.

(6) That the court's denial of expert assistance, particularly that of a neuropsychiatrist, prejudiced Mr. Barrett in that he "could have presented substantial evidence to counter the Government's case at both stages of trial." (*Id*. at 262).

(7) That Mr. Barrett is entitled to relief from his *convictions and sentences* based on newly discovered evidence. (*Id*. at 270). The second Amended Motion specifically incorporated the facts raised above. This motion returned to the mental health issue, when it exposed the prosecutor's threats to witness Cindy Crawford, who was coached "to make Mr. Barrett appear violent and an imminent threat to those around him." (*Id*. at 284) (emphasis added).

d.   On March 1, 2010, Petitioner filed his brief in support of his Second Amended

Motion and in support of his motion for evidentiary hearing and motion for record expansion.

(Doc. 149, Case No. CIV-09-105-JHP) [hereinafter, "Doc. 149"].

(1) In the summary of the argument, Petitioner again follows his account of trial counsels' ineffectiveness in mitigation with request for total relief: "[t]he numerous constitutional errors that marred Mr. Barrett's trial require that he be granted relief from his convictions and sentences." (*Id*. at 9).

(2) Ground 2, Part A(2) failure to investigate and present evidence of . . . mental impairment (at both stages of trial) called into question evidence that Petitioner manifested the requisite intent for all three convictions and sentences;

(3) "The Court also must consider the effect the undiscovered mitigation evidence would have had on the aggravating evidence. . . the aggravating circumstances they found all related to the circumstances of the offense." (*Id*. at 151). "[T]he likelihood of a different result if the evidence had gone in is sufficient to undermine confidence in

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                    5                    *Barrett v. U.S.*, CV-09-00105-JHP

the outcome actually reached at sentencing." (*Id*. at 152) (citing *Rompilla v. Beard*, 545 U.S. at 393 (2005)).

(4) "As discussed herein and in relation to Ground 1 and Ground 2 of the Amended § 2255 Motions, the verdict in the criminal case was not the product of the adversarial testing process contemplated by the Fifth, Sixth, Eighth and Fourteenth Amendments." (*Id*. at 140).

(5) Petitioner concluded his Second Amended Motion with another request for total relief: "[f]or the foregoing reasons . . . this Court should grant the following relief: . . . 8. Vacate Petitioner's convictions and sentences and order that appropriate retrial and/or sentencing hearings be conducted." (*Id*. at 248-49).

## **ARGUMENT**

Respondent ignores the sentence-packaging doctrine in its response, although this doctrine, almost always relied upon by the government as a safeguard to protect a conviction, should be equitably applied. There is ample Supreme Court precedent that provides when deficiencies of trial counsel pervade a consolidated sentencing proceeding, relief must be applied to all adjudged sentences. This premise is discussed below, in the analysis of the sentence-packaging doctrine, and in controlling precedent, *i.e.*, *Ake v. Oklahoma,* which ordered relief on all sentences when the capital Petitioner alleged similar error in his capital sentencing case.

When the prosection alleges one act, and trial counsel presents one theory of defense at trial, it is impossible to distinguish how the errors did not infect all three sentences. The deficiencies of Mr. Barrett's trial counsel have been proven both pervasive and prejudicial, calling into question the reliability of Mr. Barrett's trial. The broadest possible relief on Mr. Barrett's sentences is appropriate.

The government's argument is analogous to the exhaustion doctrine. Federal authority on the fair presentation of claims for exhaustion purposes indicates Petitioner simply needs to state the constitutional basis for the legal claim, or call to mind the particular right protected. See Hertz and Liebman, 2 Federal Habeas Corpus Practice & Procedure 23.3 (c)(i) ("Pleading legal

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                    6                    *Barrett v. U.S.*, CV-09-00105-JHP

claims in the state courts for exhaustion purposes requires reasonable clarity and specificity. The petitioner should present the legal claim in a form that is understandable and specific enough to give the state courts a meaningful opportunity to address it…. Under the majority approach, "a claim may be 'fairly presented to the state courts … without citing chapter and verse of the Constitution if there is (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis [in factually similar situations], (c) assertions of the claims in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegations of a pattern of facts that is well within the mainstream of constitutional litigation.")

The government's argument that we have hazarded an untimely amendment does not comport with the cases cited therein.  Compare Govt's Reply at 3 (citing *United States v. Espinoza-Saenz*, 235 F.3d 501, 504-05 (10th Cir. 2000), for proposition about untimely amendment) with *United States v. Espinoza-Saenz*, 235 F.3d at 504-05 (citing circuit authority *Davenport, Pittman*, and *Craycraft*, all of which raised new grounds alleging novel error.  There is no circuit authority holding that a request for remedy is barred under this statutory provision).

I. **From the outset of Mr. Barrett's federal trial, all parties have treated the three death-eligible counts as indistinguishable, one from the other.  It is disingenuous to argue that relief is lost because Mr. Barrett's counsel failed to overburden this court with three separate briefings on all issues, when each capital charge is based upon one incident that resulted in Mr. Eales' death.**

In all capital cases, prevailing norms of defense practice dictate that "[c]ounsel should seek a theory that will be effective in connection with both guilt and penalty, and should seek to minimize any inconsistencies." (ABA Guideline 10.10.1; ABA Guidelines, 31 HOFSTRA L. REV. 913, 1059, 1065 (2003) (commentary on Guideline 10.11) ("counsel should begin to develop a theme that can be presented consistently through both the first and second phases of the trial").) (§2255, Doc. 1, at 188).  Faced with three capital counts, Mr. Barrett's trial counsel

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                             7                      *Barrett v. U.S.*, CV-09-00105-JHP

presented a unified defense. In his motion for collateral relief, Petitioner outlined the

deficiencies in trial counsels' failures to investigate evidence of mental health issues and other

evidence in mitigation as expected in a capital case:

> Because of trial counsel's abysmal failures to investigate, prepare and present anything approaching a proper case in mitigation, the prosecution was free to tell the jury that Mr. Barrett was simply a cold, calculating and unrepentant killer who had little if anything going for him in the sentencing balance. (R. 5340-42, 5402, 5404, 5405-09, 5411-13, 5420-22). Because the jury never learned of Mr. Barrett's abusive, neglected, chaotic and troubled upbringing; his lengthy history of severe mental illness; the extensive history of mental illness in his family; his low I.Q.; and, despite it all, his good and positive qualities, the prosecution had a field day depicting Mr. Barrett as a prime candidate for the death penalty. (§2255, Doc. 1, at 233).[2]

---

[2] The trial record demonstrates this approach by both parties at trial. Mr. Littlefield's closing argument, "I'm going to lump Counts One and Two together." Vol. 20, p. 4277. "What about Count 3 . . . "But it [sic] also established by all of the other drug trafficking evidence that we presented previously and I will not waste any time discussing it again. This was a drug house." Vol. 20, p. 4295. After 30 pages of rambling argument, Mr. Littlefield concludes with only, "Kenny Barrett intentionally, knowingly and with premeditation killed Rocky Eales. Six years and a month and several days, now is the time for justice. Find him guilty beyond a reasonable doubt." Vol. 20, p. 4309.

Mr. Hilfiger argued in the guilt phase, "Now, if they all sound sort of intertwined, you know, One sounds [sic] Two and Two sounds like Three and Three sounds like One, it's because they are." Vol. 20, p. 4313. "I want to tell you that the three counts do appear in the – and they're wrapped together and they all deal with the same incident." Vol. 20, p. 4372, distinguishing Count 3 only in that "Kenneth Barrett knew David Eales was a law enforcement officer at the time the shooting occurred." Vol. 20, p. 4372.

Mr. Sperling, in the government's rebuttal. "Ladies and gentlemen, time to call this and characterize it what the evidence established him to be. We've been sitting in this room for weeks now with a cold-blooded murderer." Vol. 20, p. 4375.

"[G]uilty of each of the counts, the three counts, of which he is charged. That he used and carried firearms during and in relationship to drug trafficking criminality. The success was the success that he sought, a blaze of glory. Taking as many with him as he could. It did, the firearms did, facilitate the success of his venture as he sought. The Defendant used and carried firearms during and in relationship to the murder of a highway patrolman, a violent crime, and the Defendant intentionally killed Trooper Rocky Eales." Vol. 20, p. 4402.

Sentencing phase (Vol. 27). Mr. Littlefield, arguing for the government. "You are about to begin a process of deciding what is the appropriate sentence for Kenneth Eugene Barrett. Should his sentence be death, life imprisonment without the possibility of release or a term of years to be

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                    8                    *Barrett v. U.S.*, CV-09-00105-JHP

The government's arguments serve to avoid its own responsibilities, assuming that because it failed to convince a jury of several aggravating circumstances and the jury declined to impose three death sentences, that Mr. Barrett's life was somehow not at stake for all three counts as charged.  As *Ake* contemplates, this was a capital case, period.  *Ake v. Oklahoma*, 470 U.S. 68 (1985), is directly on point in both fact and law.  In that case, the Petitioner was charged and convicted for multiple acts all arising from a single incident (in that case the murder of a couple and wounding their two children).  *Id*, at 70.  At a single sentencing phase, Petitioner Ake was sentenced to death as to both murders and 500 years' imprisonment on each of the two counts of shooting with intent to kill.  *Id*., at 73.  In ordering a total reversal of both the conviction and the sentences on all charges, including the two non-capital offenses, the Supreme Court began "by considering the pivotal role that psychiatry has come to play in <u>criminal proceedings</u>."  *Id*. At 79 (Emphasis added).

Since *Ake* was a capital case, much of the Court's discussion revolved around the heightened scrutiny and standards of practice in a capital trial.  However, the Court concluded with a total reversal on all counts, without further analysis of that decision.  In so holding, it is apparent that the constitutional violation upset the reliability of the criminal proceeding, not simply the death sentence.  *Id*. at 86-87.[3]

---

decided by the Court."  Vol. 27, p. 5331.  And most glaringly, "The death penalty is an appropriate, correct and just punishment for <u>this</u> crime and it should be your verdict."  Vol. 27, p. 5358, emphasis added).

[3] See, *Ake v. State*, 1989 OK CR 30, 778 P.2d 460 (Okla. Crim. App. 1989), on review of his retrial, the Court affirmed Mr. Ake's two life sentences and 200 years for each count of shooting with intent to kill.  This sentence embodies the original spirit of the sentence-packaging doctrine, exposing Mr. Ake to increased sentences on the shootings, whereby he was originally sentenced to 100 years per count.

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                              9                    *Barrett v. U.S.*, CV-09-00105-JHP

In Mr. Barrett's case, the impact of his counsel's errors is even more glaring. His three convictions do not merely arise from one incident. The government hedged its bets with three versions of one indivisible act, to guarantee that Mr. Barrett was somehow, someway, sentenced to death. Its failure to achieve that goal thrice over does not retroactively cure the deficiencies of Mr. Barrett's own trial counsel. It is likewise disingenuous to assume that because the jury did not return a death sentence on all three counts, that Mr. Barrett's sentences to life without the possibility of release on Counts I and II were a windfall, rather than another tragic result of his counsel's deficiencies.

As argued repeatedly throughout Mr. Barrett's post-conviction litigation, the cumulative and conflated effect of the errors that have permeated Mr. Barrett's case resulted in a manifest injustice. One murder, three convictions. One act, one alleged mindset. As argued by the government at trial, this was a drug case, enabled by guns that resulted in a murder. (See, e.g., FN 2, *supra* and Trial Transcript, Vol. 20, p. 4295. The government now seeks some kind of dividend based on the ineptitude and lethargy that permeated his trial and led to Mr. Barrett's conviction and sentences to life without the possibility of release and death. This position presumes a legal fallacy – that dividing a single episode into three separate counts somehow requires three separate legal defenses. In so doing, the government impertinently suggests that in his fight for his life, Mr. Barrett should be happy to accept the rest of his days in a federal prison, and long ago opted to waive the possibility of his release. That has never been the case.

Mr. Barrett's trial counsel were woefully ineffective. The prevailing norms at the time of his trial and the evolving perceptions on the impacts of mental health evidence, as it relates to criminal culpability, is not a doctrine specific to a death sentence. In fact, Justice Scalia, stated that "same pressure would exist, and the same risk of wrongful convictions [would continue] if

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                        10                    *Barrett v. U.S.*, CV-09-00105-JHP

horrendous death-penalty cases were converted into equally horrendous life-without-parole cases." "The lifer languishes unnoticed behind bars." (*Glossip v. Gross*, 135 S. Ct. 2726, 2747 (2015). Not only is the government's response disingenuous in its statement of the case, it is misguided in its application of the law, ignoring the intertwined charges that led to the interwoven arguments requesting relief as to all three convictions and the adjudged sentences.

Moreover, the government seems to call Mr. Barrett's post-conviction counsel ineffective for failing to raise the issue. Per the government's position, Mr. Barrett's post-conviction attorneys are ineffective in failing to file each argument thrice over, and not giving the Court a paint-by-numbers color chart leading it from each allegation of error to the appropriate and judicious relief. That simply ignores the basic premise of judicial efficiency.

II.    **Despite its argument, Mr. Barrett is not required to demonstrate that both a recommending jury and a sentencing court would both be equally swayed to impose a lesser sentence.**

At page 5 of its brief, the government argues that "Barrett would have to demonstrate a reasonable likelihood that the district court would have – in the absence of any ineffectiveness – imposed a less-than-life sentence." (improperly citing to *Strickland*, for this position, despite the test for prejudice which requires the Petitioner show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466, U.S. 668, 687 (1984). That is further defined as "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011)(internal citations omitted). The government, arguing that if the jury were to return a sentence of anything less than life without the possibility of release, the district court can and likely would dismiss that recommendation and enter sentences of life without the possibility of release. (See, Doc. 472, p. 1-2, "Following a bifurcated penalty trial, the jury recommended a

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                    11                    *Barrett v. U.S.*, CV-09-00105-JHP

death sentence for the § 848 offense and life sentences for the § 924 offenses, all of which the district court affirmed).

Only the jury matters. "Although we suppose it is possible that a jury could have heard it all and still have decided on the death penalty, that is not the test." *See*, Judge Sotomayer's dissent, *Elmore v. Holbrook*, 137 S. Ct. 3, 10 (citing *Rompilla*, 545 U.S. at 393). The government would have this court abandon the adversarial process and argues the worst of implications; they are sure that it would be a waste of this Court's time, since the Court would inevitably dismiss any jury recommendations for a sentence less than life without the possibility of release.[4]

If the Court is aligned with the current and controlling position of the U.S. Supreme Court, then it should be moved by the deeply mitigating impact of evidence of mental illness, *see, e.g., Porter v. McCollum*, 558 U.S. 30, 41 (2009), that "evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background . . . may be less culpable." (*id*., citing, *Penry v. Lynaugh*, 492 U.S. 302, 319, 109 S. Ct. 2934, (1989). The Tenth Circuit and the Supreme Court have long recognized the "powerful mitigating effect" this type of evidence may have on a sentencing case. (See, *Hooks*, 689 F.3d at 1205, citing *Rompilla* 545 U.S. at 392 (additional citations omitted). "Had the judge and jury been able to place [Mr. Barrett's] life history 'on the mitigating side of the scale,' and appropriately reduced the ballast on the aggravating side of the scale, there is clearly a reasonable probability that the advisory jury – and the sentencing judge – 'would have struck a different balance." *Porter*, 558

---

[4] As to Counts I and II, Mr. Barrett faced the maximum punishment of death, but the jury could recommend any lawful punishment, to include a term of years. As to Count III, Mr. Barrett faced the maximum punishment of death, but could have received a term of years not less than 20 years confinement. See Federal Death Penalty Act of 1994, 8 U.S.C, § 3591(a)(2)(A)-(D), and the Anti-Drug Abuse Act of 1988, 21 U.S.C. § 848(e)-(r); Judicial Instructions at Sentencing, Trial Transcript, Vol. 27, p. 5295-96.

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation    12    *Barrett v. U.S.*, CV-09-00105-JHP

U.S. at 42 (citing *Wiggins v. Smith*, 539 U.S. 510, 537 (2003).  In extending *Strickland* to require a showing that the sentencing judge would likely have been swayed to return a different result, the government proffers a test that is not supported in law.  As cited herein, both the Tenth Circuit and the U.S. Supreme Court find that the calculus to determine material error lies in whether a reasonable juror might be persuaded.  Reading *Porter* and *Wiggins*, it is thereby presumed that should defense meets it burden as to the likelihood that new evidence may sway a reasonable jurist, then a sentencing judge would likewise have struck a different balance.

### III.    The sentence-packaging doctrine requires the full remand as a procedural mandate.

The government seems to concede the applicability of the sentence-packaging doctrine, with absolutely no reference to it in its response, which is odd considering that this is the only basis for the objections raised by Mr. Barrett.  "The sentence packaging doctrine was deemed applicable when the sentences on the underlying count were interdependent." *United States v. Shue*, 825 F.2d 1111, 1114 (7th Cir. 1987).  As outlined above, Mr. Barrett is convicted of three counts of murder that were not just intertwined, but indistinguishable from each other, based on the same alleged murder, each sharing the same special circumstances that increased his punitive exposure to three death sentences.  (See, Superseding Indictment, Doc. 52, Case # CR-04-115-P).

The sentence-packaging doctrine is a "common judicial practice grounded in a basic notion" that "sentencing on multiple counts is an inherently interrelated, interconnected, and holistic process which requires a court to craft an overall sentence—the 'sentence package'—that reflects the guidelines and the relevant [18 U.S.C.] § 3553(a) factors." *United States v. Fowler*, 749 F.3d 1010, 1015 (11th Cir. 2014).  This doctrine applies whether the resentencing occurs in a § 2255 proceeding or on remand from a direct appeal.  *Id*.  What is usually a doctrine skewed to

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                    13              *Barrett v. U.S.*, CV-09-00105-JHP

favor the government and maintain the intent of the original sentence can and should be equitably applied to the benefit of a petitioner that succeeds in demonstrating a requirement for relief on his post-conviction appeal.  In this case, the counts are interdependent and Mr. Barrett's counsel ineffectively pursued a single strategy in his capital sentencing trial.  Both prosecution and defense argued for a single sentence, declining to parse out three separate arguments, making an "inherently interrelated, interconnected, and holistic" plea to Mr. Barrett's jury.  *Fowler*, 749 F.3d at 1015.  One error, found worthy of relief, equally infected Mr. Barrett's entire sentencing phase, and thereby mandates that this Court grant reconsideration of the sentences on all counts.

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                        14                        *Barrett v. U.S.*, CV-09-00105-JHP

## CONCLUSION

Based upon the arguments set forth in Petitioner's Objections, Doc. 470, and herein above, Mr. Barrett respectfully requests that this court approve the recommendations and report of the magistrate judge and further sustain Mr. Barrett's objections and thereby expand that recommendation for a new sentencing trial as to all three counts on which he stands convicted.

DATED:   December 10, 2018

RESPECTFULLY SUBMITTED,

/s/ *David Autry*
DAVID AUTRY

HEATHER E. WILLIAMS
Federal Defender

/s/ *Joan M. Fisher*
JOAN M. FISHER
Assistant Federal Defender

/s/ *Karl Saddlemire*
KARL SADDLEMIRE
Assistant Federal Defender

/s/ *Carrie Ward*
CARRIE WARD
Assistant Federal Defender

Attorneys for Petitioner/Defendant,
KENNETH EUGENE BARRETT

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                    15                    *Barrett v. U.S.*, CV-09-00105-JHP

**CERTIFICATE OF ELECTRONIC SERVICE AND DELIVERY**

This is to certify that on this 10th day of December 2018, I caused the foregoing Petitioner's Objection To Magistrate Judge's Report And Recommendation to be filed with the Clerk of the Court using the ECF System for filing, with service via CM/ECF to be made to Christopher J. Wilson, AUSA, Jeffrey B. Kahan, U.S. Department of Justice, and to all counsel of record. To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.

/s/ *Carrie L. Ward*
CARRIE L. WARD

Petr's Reply to Govt's Response re:
Objections to Magistrate Judge's Report
And Recommendation                16        *Barrett v. U.S.*, CV-09-00105-JHP